UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| DL, JB, OUL, DC, FD, and TF, | ) |
| by their parents and next friends: | ) |
| | ) |
| Tameka Ford | ) |
| 1428 Chapin Street, N.W., Apartment #1 | ) |
| Washington, DC 20009, | ) |
| | ) |
| Leah Bland | ) |
| 2413 Alabama Avenue, S.E. | ) |
| Washington, DC 20020, | ) |
| | ) |
| Elizabeth Umaña-Lazo and Darwin Lazo | ) |
| 5906 13th Street, N.W., Apartment #104 | ) |
| Washington, DC 20001, | ) |
| | ) |
| Doris Cockrell | ) |
| 1520 Butler Street, S.E., Apartment #102 | ) |
| Washington, DC 20020, | ) |
| | ) |
| Frederick and Monica Davy | ) |
| 6933 9th Street N.W. | ) |
| Washington, DC 20012, | ) |
| | ) |
| Angelique Moore | ) |
| 2436 Wagner Street, S.E., Apartment B | ) |
| Washington, DC 20020, | ) |
| | ) |
| on their own behalf and on | ) |
| behalf of a class of similarly situated individuals, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA, | ) |
| a municipal corporation | ) |
| 1350 Pennsylvania Ave, N.W., Suite #419 | ) |
| Washington, DC 20004, | ) |
| | ) |

1

|                                                        |     |
| ------------------------------------------------------ | --- |
| and                                                    | )   |
|                                                        | )   |
| CLIFFORD B. JANEY in his                               | )   |
| official capacity as Superintendent                    | )   |
| of District of Columbia Public Schools                 | )   |
| 825 North Capitol Street, N.E.,                        | )   |
| 9th Floor                                              | )   |
| Washington, DC 20002,                                  | )   |
|                                                        | )   |
| Defendants.                                            | )   |
| _____ | )   |

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiffs, on behalf of themselves and others similarly situated, bring this action under 42 U.S.C. 1983 for declaratory, injunctive and compensatory relief to challenge defendants' policies, procedures and practices of failing to identify, locate, evaluate and offer special education and related services to children with disabilities in the District of Columbia who are between the ages of three and five years old, inclusive (hereinafter "preschool children").   Defendants' actions violate the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a), implementing regulations, the Due Process Clause of the Fifth Amendment, and District of Columbia law.

2.   Named plaintiffs are current or former preschool children with sensory, emotional, physical, cognitive or language disabilities who tried to obtain special education and related services from the District of Columbia Public Schools ("DCPS") or wanted to obtain these services as preschool children, but have been denied, delayed or otherwise deprived of access to these services because of defendants' systemic failures to comply with federal and District of Columbia law.

3. The IDEA, the Rehabilitation Act, implementing regulations and District of Columbia law require that the District of Columbia offer a "free appropriate public education" ("FAPE") to children identified as disabled, including preschool children.  To that end, these laws require that District of Columbia take concrete steps to identify, locate, evaluate and offer special education and related services to all preschool children in the District of Columbia with disabilities who need these services.  This is known as the "Child Find" duty.  Defendants have a policy, pattern and practice of failing to comply with their Child Find duty.  Defendants' failures are numerous, knowing, pervasive and systemic.  Defendants' actions have caused substantial harm to hundreds of young children in the District of Columbia by jeopardizing their educational opportunities and by denying them a right to a free appropriate public education.

## JURISDICTION AND VENUE

4. This action is brought under 42 U.S.C. 1983 to enforce the IDEA, 20 U.S.C. 1400, *et seq*., and the Due Process Clause of the Fifth Amendment, and under Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a).  The Court has jurisdiction under 28 U.S.C. 1331, 1343, and 1367.  Venue is proper under 28 U.S.C. 1391.

## PARTIES

### Plaintiffs

### DL

5. DL[1] is a four-year-old boy who was born in 2001.  He resides in Washington, D.C.  He sues by his mother and next friend, Tameka Ford.

6. On information and belief, DL suffers from a disability that would qualify him for special

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials in this Complaint.

education and related services under the IDEA ("qualifying disability"). He exhibits behavioral and emotional problems, as well as speech and language delays. He is aggressive, hits, bites and fights with his teachers and with other children. He punches himself in the face repeatedly until he falls down exhausted, often lying still for long periods of time after these incidents.

7. Defendants have known that DL may have a qualifying disability since at least June 2004 and have failed to identify, locate, evaluate or offer him special education and related services.

8. When DL was three years old, he began attending Bright Beginnings, a daycare center for transitional and homeless children in the District of Columbia. Soon thereafter, he was evaluated at Georgetown Medical Center for developmental delays. The evaluations confirmed that DL needed speech, language, occupational and cognitive therapies.

9. In June 2004, Bright Beginnings convened a meeting, known as an Individualized Education Program ("IEP") meeting. The purpose of the meeting was to discuss the evaluations and to determine what type of special education services DL needed. Bright Beginnings sent a formal request to DCPS to attend the IEP meeting. DCPS refused to attend. During the meeting, the participants agreed that DL should receive speech, language, occupational therapy and counseling services.

10. In December 2004, DL was removed from Bright Beginnings. DL's mother, Tameka Ford, attempted to re-enroll DL in Bright Beginnings, but the day care would not accept him because of his behavioral problems.

11. In February 2005, Ms. Ford registered DL with DCPS at the Central Assessment Referral and Evaluations ("CARE") Center of the Office of Special Education. She requested special education and related services for DL. She gave DCPS prior evaluations of DL and signed papers

consenting to have DL evaluated by DCPS. DCPS did not act on Ms. Ford's request for special education and related services.

12. In the spring of 2005, an advocate with For Love of Children ("FLOC"), a non-profit organization that provides services to at risk families in the District of Columbia, contacted DCPS on numerous occasions to urge the District of Columbia to act on Ms. Ford's request for special education services. DCPS did not respond to these requests.

13. In the spring of 2005, Ms. Ford enrolled DL in two private preschools while waiting for DCPS to identify, locate, evaluate and offer DL special education and related services. Both preschools expelled DL for behavioral problems.

14. In June 2005, after receiving no response from DCPS, DL's *guardian ad litem* requested a due process hearing to challenge DCPS's failure to evaluate or offer special education services to DL. The hearing has not been held yet.

15. DL is not receiving any special education or related services. Defendants have failed to identify, locate, evaluate or offer a free appropriate public education to DL.

JB

16. JB is a six-year-old boy who was born in 1999. He resides with his mother, Leah Bland, and other family members in Washington, D.C. He sues by his mother and next friend, Leah Bland.

17. JB was diagnosed with autism in January 2004 and has a disability that would make him eligible for special education and related services.

18. Defendants have known since at least March 2004 that JB has a qualifying disability.

19. Nevertheless, defendants failed to identify, locate and evaluate him in a timely and adequate manner, failed to offer him any special education services during the 2004-2005 school

year, and have yet to offer him special education and related services for the 2005-2006 school year.

20.  From 2002 to 2004, Ms. Bland tried to place JB in several private preschools in the District of Columbia.  JB exhibited behavioral problems almost immediately.   He threw frequent tantrums and scratched and hit himself.  He began drooling and refused to eat.  Ms. Bland was forced to withdraw him from the preschools as a result of his behavioral problems.

21.  From 2002 to 2004, when Ms. Bland was attempting to place him in preschool, she was unaware that special education and related services were available from DCPS.  On information and belief, defendants failed to inform or notify her or the private preschools that JB attended of the availability of special education and related services.   Ms. Bland eventually learned through a private educational facility that DCPS could provide special education and related services to preschool children.

22.  In March 2004, after learning that DCPS could provide services to preschool children and after JB was diagnosed with autism by a psychiatrist, Ms. Bland registered him at Ann Beers Elementary School, which is JB's neighborhood school.  She requested special education services for JB.

23.  In the summer of 2004, DCPS conducted a speech evaluation of JB.  DCPS failed to perform other critical evaluations to assess JB's behavioral problems, even though Ms. Bland had requested these evaluations and had signed consent forms enabling DCPS to obtain information from JB's psychiatrist and from his former preschools.

24.  In November 2004, DCPS told Ms. Bland that it would conduct a psycho-educational evaluation.  DCPS did not conduct the evaluation.

25.  In December 2004, frustrated by DCPS's failure to schedule or perform a psycho-

6

educational evaluation, JB's family arranged for a private psychiatric evaluation at the Center for Autism Spectrum Disorders of Children's National Medical Center. The evaluation made extensive recommendations for intervention, including educational intervention.

26. In March 2005, DCPS performed an occupational therapy evaluation for JB.

27. In June 2005, 15 months after JB's mother requested special education for JB, defendants convened a meeting with JB's family. During the meeting, DCPS concluded that JB should be receiving special education and related services as a child with autism. Later that month, DCPS drafted an IEP, which is an educational plan that set forth the learning goals and educational services to be provided to JB. The IEP included a full-time special education program with small classes, two hours of speech language therapy weekly, and three 30-minute sessions of occupational therapy weekly.

28. DCPS has not yet implemented the IEP or offered an educational placement for JB that can provide these services. JB attends a private preschool at his mother's expense and is waiting for DCPS to offer him a placement for the 2005-2006 school year.

29. DCPS has not provided JB with appropriate compensatory education or reimbursement for the time period during which DCPS failed to identify, locate, evaluate and offer him special education and related services.

OUL

30. OUL is a three-year-old boy who was born in 2002. He resides with his parents in Washington, D.C. He sues by his mother and father, and next friends, Elizabeth Umaña Lazo and Darwin Lazo.

31. OUL's mother, Elizabeth Umaña-Lazo, speaks only Spanish. She does not speak or read

English. OUL's father, Darwin Lazo, speaks Spanish. He speaks limited English.

32. On information and belief, OUL has a qualifying disability. OUL was born prematurely at 26 weeks, weighing two pounds and one ounce, and spent four months in the neonatal intensive care unit. OUL's speech, cognitive and gross motor development are severely delayed. He is unable to walk or stand without a walker, and he wears a safety helmet, elbow braces, and leg braces when attempting to walk. He has been hospitalized at least ten times for asthma and other medical conditions. OUL receives Supplemental Security Income ("SSI") for his disabilities and health insurance through the District of Columbia Medicaid program.

33. Defendants have known that OUL has had a qualifying disability since at least March 2004.

34. In March 2004, OUL began receiving occupational, physical and speech therapy for his disabilities at the Easter Seals Child Development Center ("Easter Seals"). The therapy was provided by the D.C. Early Intervention Program ("DCEIP") of the D.C. Department of Human Services, which offers services to children with special needs until they turn three- years old.

35. In October 2004, Easter Seals convened a meeting with DCPS and OUL's parents, known as a "transition" meeting. The purpose of the meeting was to discuss how OUL would continue to receive therapy and other special education services following his third birthday because Easter Seals would no longer be able to provide these services through DCEIP once OUL turned three. During the meeting with DCPS, OUL's parents gave their consent to transition OUL to DCPS and to have him evaluated by DCPS. DCPS has not attempted to evaluate OUL.

36. Since the October 2004 meeting, OUL's parents have been searching for an appropriate program that OUL can attend once Easter Seals terminates OUL's therapy and services. DCPS

recommended that Bancroft Elementary School was a suitable program for OUL. In March 2005, OUL's father, Darwin Lazo, visited Bancroft. A Spanish-speaking service coordinator from Mary's Center for Maternal and Child Health ("Mary's Center") went with Mr. Lazo to translate because he was unable to communicate in English. Mr. Lazo determined that Bancroft was not an appropriate program because OUL needs a walker and leg braces in order to walk, and the building is only accessible by stairs.

37.  In March 2005, Mr. Lazo visited DCPS's CARE Center and registered OUL as a non-attending student. A service coordinator from Mary's Center went with him to help translate during the registration process. Staff at the CARE center told Mr. Lazo that they would contact him in the coming weeks about OUL. Defendants have not contacted Mr. Lazo about OUL or evaluated OUL as required by law. On information and belief, defendants have not screened or tracked OUL in order to identify, locate or evaluate him in the future.

38.  OUL's parents are worried that Easter Seals will terminate therapy for OUL since he is now three. OUL's parents are worried that DCPS will not provide OUL with the special education and related services that are essential to his health and well-being.

39.  Defendants have failed to identify, locate, evaluate or offer OUL special education and related services.

DC

40.  DC is almost three years old and was born in 2002. She resides with her parents in Washington, D.C. She sues by her mother and next friend, Doris Cockrell.

41.  On information and belief, DC is a preschool child with a disability that would make her eligible for services under the IDEA. DC is old enough to be evaluated by DCPS for special

education and related services and will be eligible for services from DCPS as soon as she turns three.

42. DC has had numerous evaluations that reveal potential disabilities. When she was four months old, DC began receiving developmental screenings every four to six months through Healthy Babies/Healthy Families DC ("HFDC"), which is an organization that provides social services to new families at risk in the District of Columbia. DC's last developmental screening occurred in February 2005. The screenings consistently revealed that DC has developmental delays in several areas, including speech, language, physical and cognitive delays. The Hospital for Sick Children has also evaluated DC and concluded that she suffers from significant speech and language delays.

43. Defendants have had, on numerous occasions, encounters with DC, allowing defendants to know that DC has a qualifying disability. However, defendants have failed to identify, locate, evaluate or offer DC services. For example, since the time DC was an infant, DC's parents have applied many times to defendant District of Columbia for services on behalf of their daughter, including requests for Medicaid services, day care vouchers, and early intervention services through DCEIP.

44. On information and belief, defendants have taken no steps to identify or locate DC. For example, they have not screened, tracked, or performed intake. No agency of defendant District of Columbia with whom DC has come into contact has coordinated with DCPS to identify and locate DC for special education and related services. No agency of defendant District of Columbia has informed or notified DC's parents of the availability of special education and related services through DCPS. DC's parents were not made aware of the availability of special education and related services through DCPS until informed by class counsel.

45. DC has received no special education and related services from defendants or in any

other setting.  She stays at home with her mother.  Defendants have failed to identify, locate, evaluate and offer DC special education services.

FD

46.  FD is a three-year-old boy who was born in 2001.  He resides with his parents and sisters in Washington, D.C.  He sues by his parents and next friends, Monica and Frederick Davy.

47.  FD has a disability that qualifies him for services under the IDEA.  FD was born prematurely at 29 weeks.  He was diagnosed with End Stage Renal Disease, which resulted in a renal transplant on March 31, 2004.  As a result of his premature birth, FD suffers from a number of medical conditions, including Prune Belly Syndrome (a lack of muscle tone in the abdominal area), spastic diplegia, and developmental delay.  He has also had a vesicostomy and is not toilet trained.

48.  FD exhibits significant delays in gross and fine motor skills and visual motor skills. His visual-perceptual skills, problem-solving skills, and communication skills are delayed.  FD uses a posterior walker at all times and wears ankle-foot orthoses.  He also requires a special chair to support his torso for seated work.

49.  DCPS has delayed for months in offering special education and related services to FD. When FD was two years and eight months, his mother registered him as a non-attending student at his neighborhood school and sought special education services for him from DCPS.

50.  In August 2004, FD was cleared medically to attend a group- or school- based program and began attending the Easter Seals Child Care program.  Prior to that time, he had received limited services at home through the Early Intervention Program.  DCPS staff, who observed FD while he was at the Easter Seals Child Care program, advised his mother that the program was not meeting all of his needs and that he needed higher functioning peers.

11

51. In August 2004, DCPS concluded that FD was eligible for special education. DCPS drafted an IEP that required ten hours of specialized instruction and one hour each of occupational, physical, and speech language therapy on a weekly basis. Many of the necessary accommodations for FD were not integrated into the initial IEP, but were added after the parents engaged counsel and after DCPS agreed to revise the IEP. The revised IEP includes a nursing care plan, the services of a dedicated aide, an adaptive chair, and services in an accessible building to accommodate his walker. Services were to begin on September 1, 2004.

52. In December 2004, frustrated by DCPS's failure to provide the services set forth in the IEP and failure to offer an educational placement, FD's parents requested a due process hearing.

53. In March 2005, the parties entered into a settlement agreement whereby DCPS agreed to provide a placement that included, *inter alia*, a classroom with no more than 15 students, a teacher and an instructional assistant, and a nurse in the building full-time. The settlement expressly excluded coverage of the parents' claims for compensatory education and for violations of the Child Find provisions of the IDEA. FD began receiving services in March 2005, seven months after he was found eligible to receive them.

54. DCPS has failed to offer compensatory education appropriate for the months during which time defendants failed to provide FD with appropriate classroom instruction with non-disabled age appropriate peers in an accessible environment. DCPS has also failed to provide FD the special chair that he needs to perform seated activities. FD has exhausted his administrative remedies.

TF

55. TF is a six-year-old boy who was born in 1998. He resides with his mother in Washington, D.C. He sues by his mother and next friend, Angelique Moore.

56.  In September 2003, TF began kindergarten at the DCPS Garfield Elementary School. TF's kindergarten teacher believed that he needed speech and language therapy.  Despite his teacher's recommendation, defendants failed to refer him for an evaluation.

57.  At the end of the 2003-2004 school year, TF's kindergarten teacher recommended that TF repeat kindergarten because of his delays.  Defendants again failed to refer him for an evaluation.

58.  In August 2004, just days prior to the start of the 2004-2005 school year, TF's mother was notified that, due to her home address, TF and her other children would not be able to return to Garfield that school year, but, instead, would have to attend Stanton Elementary School.

59.  At the beginning of the 2004-2005 school year, Ms. Moore visited Stanton Elementary School to discuss TF's speech and language problems.  Ms. Moore informed staff at Stanton that TF had speech and language difficulties and that his Garfield Kindergarten teacher had told her that TF should repeat kindergarten.  Despite Ms. Moore's efforts, defendants failed to evaluate TF for speech and other education needs during the school year.

60.  In September 2004, staff at Stanton initially placed TF in the first grade, despite his kindergarten teacher's recommendation that he repeat kindergarten.  TF experienced significant academic and behavioral problems during his first months in the first grade, and was returned to kindergarten by the beginning of the second quarter of the school year.

61.  In January 2005, frustrated by DCPS's failure to evaluate TF, his mother arranged for a private speech and language evaluation.  The speech language pathologist concluded that TF had severe speech and language deficits and recommended that he receive intensive speech language services.

62.  In April 2005, Ms. Moore, through counsel, sent DCPS copies of the evaluation

13

recommending speech and language therapy and requested a full evaluation, including a psycho-educational assessment and an occupational therapy evaluation.

63. In June 2005, a due process hearing was conducted to challenge DCPS's failure to evaluate TF. During the hearing, DCPS agreed to provide TF with four 30-minute sessions of speech language therapy weekly during the summer of 2005. The administrative hearing officer found, *inter alia*, that DCPS had conceded that there had been a Child Find violation and ordered that DCPS evaluate TF on an expedited basis no later than July 8, 2005. DCPS was ordered to provide TF with a schedule for summer speech language services no later than June 24, 2005. DCPS failed to do so until July 19, 2005.

64. Over a year has passed since TF's kindergarten teacher recommended that he be evaluated for special education. DCPS has still not completed an evaluation of TF. TF is waiting for defendants to complete an evaluation, to determine his eligibility under the IDEA, to offer him special education and related services pursuant to an IEP as required by the IDEA, and to provide the necessary compensatory education services.

65. TF and Ms. Moore have exhausted their administrative remedies.

Defendants

66. Defendant District of Columbia (hereafter "District") is a municipal corporation subject to 42 U.S.C. 1983. The District is a "state" within the meaning of the IDEA and the Rehabilitation Act. The District receives federal funds under IDEA and must therefore comply with the requirements of the IDEA and Section 504 of the Rehabilitation Act. Through its designated agency, DCPS, the District is required to make available a FAPE for all children with disabilities residing in the District who are ages 3 to 22. 5 D.C.M.R. 3002.1(a). It is also required to ensure that

procedures are implemented to identify, locate, and evaluate all children with disabilities residing in the District.  5 D.C.M.R. 3002.1(d).

67.  Defendant Clifford B. Janey is the Superintendent of the District of Columbia Public Schools and is sued in his official capacity.  Pursuant to D.C. Code 38-105, the Superintendent is charged with directing and supervising all matters pertaining to instruction in all public schools.  Dr. Janey serves as the chief executive of DCPS to the extent that it serves as the State Education Agency (SEA) and the Local Education Agency (LEA) for the District of Columbia.

CLASS ACTION ALLEGATIONS

68.  Named plaintiffs bring this action on behalf of themselves and all others similarly situated.  Plaintiffs' class consists of all children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

69.  The requirements of Rules 23(a)(1)-(4) and (b)(2) of the Federal Rules of Civil Procedure are met as to the class because:

(a)  The class is so numerous that joinder of all members of the class is impracticable. On information and belief, hundreds of District children aged three through five, inclusive, have not been or will not be timely identified, located, evaluated or offered needed special education and related services and thereby have not or will not be afforded the opportunity to obtain a free appropriate public education.

(b)  There are questions of law and fact common to the class, namely whether DCPS's policies, procedures and practices related to identification, location, evaluation and offer of special education and related services to preschool children

15

violate the IDEA, Section 504 of the Rehabilitation Act, implementing regulations, the Due Process Clause of the Fifth Amendment and District of Columbia law.

(c)  The claims of the named plaintiffs are typical of the claims of the class in that each of the named plaintiffs has a disability that would make him or her eligible for special education and related services but was not identified, located, evaluated or offered special education and related services as a preschool child, or faces an imminent threat of not being identified, located, evaluated or offered special education and related services as a preschool child.

(d)  The named plaintiffs will fairly and adequately represent and protect the interests of the class.  They have no interests that are antagonistic to the class and seek relief that will benefit all members of the class.  They are represented by counsel with significant experience with this type of litigation; and

(e)  The defendants have acted and continue to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

STATUTORY BACKGROUND

70.  In 1975, Congress enacted the Education for All Handicapped Children Act ("EHA"), now known as the Individuals with Disabilities Education Act ("IDEA"), "to ensure that the rights of children with disabilities * * * are protected."  20 U.S.C. 1400(d)(1)(B).

71.  The IDEA is a federal grant program administered by the U.S. Department of Education ("DOE"). 20 U.S.C. 1400, *et seq*.  States and other jurisdictions, including the District of Columbia, that receive DOE funds must comply with the mandates contained in the IDEA and its implementing regulations.

72.  The IDEA's primary mandate is the guarantee that all children between the ages of 3 and 21 with disabilities have available to them a "free appropriate public education ["FAPE"] that emphasizes special education and related services designed to met their unique needs * * * ." 20 U.S.C. 1400 (d)(1)(A).    This is known as the duty to provide "FAPE."

73.   To that end, one of the specific mandates of the IDEA is that "[A]ll children with disabilities residing in the State, * * * regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated * * * ."  20 U.S.C. 1412(a)(3)(A); 34 C.F.R. 300.125(a)(1).  This is known as the "Child Find" duty.

74.   The specific requirements of the Child Find and FAPE duties and the process defendants must follow when identifying, locating, evaluating and offering special education services to children with disabilities are clearly set forth in the IDEA, the Rehabilitation Act, the implementing regulations of the U.S. Department of Education, and District of Columbia law.

75.   For example, defendants are allowed 120 days from the date of a referral of a child to identify children with suspected disabilities, evaluate them, determine whether they are eligible for special education and related services, offer them a written educational program (known as an Individualized Education Program ("IEP")) and offer them an appropriate educational placement.  D.C. Code 38-2501.

76.   Defendants are required to identify and notify children with disabilities of the availability of special education and related services. Defendants have a duty to "identify and locate every qualified handicapped" child residing in the jurisdiction and to "[t]ake appropriate steps to notify handicapped persons and their parents or guardians of [this] duty * * *." 34 C.F.R. 104.32. *See* 29 U.S.C. 794(a); 34 C.F.R. 104.33.

77.   Defendants are required to adopt "policies and procedures" to ensure that all children with disabilities who are in need of special education and related services are identified, located, and evaluated. 20 U.S.C. 1412(a)(3)(A); 34 C.F.R. 300.125(a); 5 D.C.M.R. 3002.1(d), 3002.3(a). Defendants must ensure that a "practical method is developed and implemented to determine which

17

children with disabilities are currently receiving needed special education and related services." 20 U.S.C. 1412(a)(3)(A); 34 C.F.R. 300.125(a).

78.  Defendants are required to evaluate children suspected of disabilities. 20 U.S.C. 1414(a) - (c).  Defendants must conduct comprehensive "initial evaluations" to "determine whether a child is a child with a disability" and "to determine the educational needs of such child."  20 U.S.C. 1414(a)(1).  *See* 34 C.F.R. 300.320(a), 34 C.F.R.300.532; 5 D.C.M.R. 3005.1.   Defendants' evaluations must conform to the evaluation procedures set forth in the IDEA and implementing regulations.  *See* 34 C.F.R. 300.530-300.536, 300.540-300.543.  For example, defendants must "assess[] in all areas related to the suspected disability, including * * * health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities." 34 C.F.R. 300.532 (g).  *See* 20 U.S.C. 1414(b)(3).  Defendants must conduct evaluations that are "sufficiently comprehensive to identify all of the child's special education and related services needs * * *."   34 C.F.R. 300.532(h).  *See* 20 U.S.C. 1414(b); 300.320; 5 D.C.M.R 3005.1, 3005.3-3005.10.

79.  After conducting evaluations, defendants are required to determine eligibility for services.  Defendants must convene a team that includes parents, teachers, and other qualified individuals to review the results of the evaluations, along with other information, in order to determine whether a child is disabled and needs special education and related services.  20 U.S.C. 1414(b)(4); 20 U.S.C. 1414(d)(1)(B); 34 C.F.R. 300.534, 300.535; 5 D.C.M.R. 3003.1, 3003.3, 3006.1 - 3006.7.

80.  After determining eligibility, defendants are required to offer special education and related services.   Defendants must participate with parents, teachers, and other qualified

18

professionals to draft a comprehensive instruction plan, the IEP, which must meet the child's unique needs and provide him or her with a free appropriate public education. 20 U.S.C. 1414(d); 34 C.F.R. 300.340 - 300.350, 300.535(b); 5 D.C.M.R. 3007.1- 3007.8. The IEP must be developed within 30 days of a determination that a child needs special education services. 34 C.F.R. 300.343(b)(2); 5 D.C.M.R 3007.1. The IEP must include annual goals to serve as the roadmap for the child's educational development. 20 U.S.C. 1414(d)(1)(A); 34 C.F.R. 300.347; 5 D.C.M.R. 3009.1. The IEP must also include the specific special education and related services to be provided to the child. *Id*. Defendants must implement an IEP "as soon as possible," 34 C.F.R. 300.342(b)(ii), 5 D.C.M.R. 3010.2, and must propose an appropriate placement for the child that can provide the special education and related services listed in the IEP. *See* 34 C.F.R. 300.350(a); 5 D.C.M.R. 3013.1.

81. Defendants' Child Find and FAPE obligations extend to children who are cared for or enrolled in any potential setting, including children enrolled in public, private, and charter schools and daycare facilities. *See* 20 U.S.C. 1412(a)(10)(A)(ii); 34 C.F.R. 300.125, 300.451. The child find obligations also extend to "highly mobile children * * * such as migrant and homeless children * * *." 34 C.F.R. 300.125(a)(2)(i).

FACTS

82. As described below, defendants are failing to comply with their Child Find and FAPE obligations to identify, locate, evaluate and offer special education and related services to all preschool children with disabilities in the District of Columbia. Defendants' failures are widespread and systemic and can be rectified with injunctive and declaratory relief from this Court.

83. On information and belief, defendants have failed to adopt Child Find policies as required by the IDEA. They have not put into "effect policies and procedures" to ensure that all

19

preschool children who may need special education services are identified, located or evaluated. Defendants have also failed to "develop[] and implement[]" a "practical method" to determine the children who are in need of special education and related services. For example, in contrast to other jurisdictions, defendants do not have a Child Find Program and have not established an Office of Child Find that identifies, locates and evaluates children for special education and related services. On information and belief, defendants have no budget for Child Find activities.

84.   Defendants have failed to comply with the time lines in the IDEA and local laws that require defendants to identify and evaluate preschool children with suspected disabilities, determine their eligibility for services, develop their IEP's, and place them in an appropriate educational program within a 120 days after a request is made.

85.   Defendants have failed to take basic steps to notify and locate disabled children in the District who are in need of services and who are not receiving them. For example, defendants have failed to notify parents and other members of the public who work with preschool children that special education and related services are available through DCPS at no cost to the family.    In contrast to other jurisdictions in the country, defendants have failed to conduct adequate public awareness activities to inform the public, including parents, health care providers, child care centers, advocates, community centers, and other members of the general public who work with preschool children who may need special education services. Defendants have failed to inform, train and work with preschools, child care providers, and other groups who care for a majority of the District's preschool children about the availability of special education and related services through DCPS and about how parents and guardians may access these services. Defendants have failed to develop and distribute sufficient materials to the general public about the availability of special education and

related services for preschool children.  As a result, hundreds of preschool children with disabilities who need special education and related services do not know of the availability of services and are not identified, located, evaluated or offered these services.

86.  On information and belief, defendants do not have a method of identifying or locating children with suspected disabilities.  Defendants do not have a method of screening or tracking children with suspected disabilities.  Defendants do not have an adequate intake and referral process that identifies and locates children who want special education and related services.  For example, defendants refuse to accept referrals from day care providers, doctors, neighbors, social workers, advocates, or other persons with knowledge about children who may qualify.  They have a policy of accepting referrals only from parents or DCPS employees.  Even when parents make referrals or requests for services on behalf of their children, defendants have delayed action for many months or failed to act at all.  As a result, hundreds of preschool children with disabilities are not identified as disabled and are deprived of access to the special education and related services that they need.

87.  Defendants are failing to evaluate preschool children for special education and related services or are performing these evaluations inadequately or in violation of the IDEA's evaluation procedures.  For example, notwithstanding repeated requests from parents, defendants delay evaluations of preschool children for many months or fail to evaluate them at all.

88.  Defendants also fail to assess children in all areas related to suspected disabilities. Defendants do not routinely conduct medical or psychiatric evaluations when they are indicated and do not have the staff to perform these evaluations.  Defendants often fail to conduct occupational or assistive technology evaluations, even when the need is apparent.  As a result, many preschool children with disabilities are not properly evaluated and consequently are denied access to needed

21

special education and related services.

89.   Defendants have failed to convene timely "IEP meetings" to determine eligibility for special education services and to develop IEP's, which specify what services will be provided. Defendants delay IEP meetings for months or convene them without the required participants, including teachers, parents, and other qualified professionals.  As a  result, many preschool children experience substantial delays before they are found eligible and receive services.

90.   Defendants have failed to offer plaintiffs appropriate placements or have offered placements only after many months of delay.  For example, defendants have proposed programs that do not have the staff, resources or capacity to implement IEP's for preschool children with disabilities.  As a result, many preschool children who have been found eligible and in need of services do not receive special education and related services.

91.  Defendants' failures have resulted in a Child Find system that is grossly inadequate when compared to Child Find programs in the rest of the country.   According to recent statistics maintained by the Department of Education, Special Education Office, the District of Columbia is ranked last among 50 states in the provision of special education services to preschool children, ages three through five.  In 2003, only 1.7% or 301 preschool children were provided special education services in 2003, less than one third of the national average of 5.56% and far less than the second worst state, Texas, which provides services to 3.96% of three to five year olds.

92.  It is critical that children with disabilities be identified in their preschool years or earlier so that their disabilities can be treated and managed to ensure that they have educational opportunities in elementary and secondary school.  Defendants' actions have harmed hundreds of current and former preschool children in the District of Columbia by adversely affecting their

educational opportunities, learning, and well-being.

93.  Defendants' actions amount to a policy, pattern, practice or custom that violates federal law and shows deliberate indifference to plaintiffs' federal rights under the IDEA, Rehabilitation Act, and Due Process Clause of the Fifth Amendment.

CLAIMS

FIRST CLAIM

INDIVIDUALS WITH DISABILITIES EDUCATION ACT

94.  The IDEA and its implementing regulations require that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive * * *."  20 U.S.C. 1412(a)(1)(A).  *See* 20 U.S.C. 1400(d)(1)(A); 34 C.F.R. 300.121.

95.  The IDEA and implementing regulations require states to have "in effect policies and procedures" to ensure that "all children with disabilities residing in the State * * * regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and [that] a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services."  20 U.S.C. 1412(a)(3)(A).  *See* 34 C.F.R. 300.125.

96.  As set forth in paragraphs 1-93 above, defendants have a policy, pattern and practice of failing to identify, locate, evaluate or offer special education and related services.  Defendants failures are numerous and systemic.

97.  Defendants' actions violate 20 U.S.C. 1412(a)(1)(A), 20 U.S.C. 1412(a)(3)(A), 20 U.S.C. 1400 (d)(1)(A), and the implementing regulations.

SECOND CLAIM

REHABILITATION ACT

98.   Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a), and its implementing regulations, forbid defendants from discriminating against or excluding an otherwise qualified child from participation in the federally funded program or activity because of the child's disability. Defendants are liable under 29 U.S.C. 794(a) for IDEA violations where they exercise gross misjudgment or depart grossly from acceptable standards among educational professionals.

99.   The regulations relating to Section 504 of the Rehabilitation Act provide that "a recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped" child in its jurisdiction.  34 C.F.R. 104.33.

100.   The regulations also provide that "[a] recipient that operates a public elementary or secondary education program or activity shall annually: (a) Undertake to identify and locate every qualified handicapped" child residing in the jurisdiction; and "(b) [t]ake appropriate steps to notify handicapped persons and their parents or guardians of [this] duty * * *."  34 C.F.R. 104.32.

101.   Defendants have failed to identify, locate, evaluate or offer special education and related services and a free appropriate public education to plaintiffs.  Defendants' failures are numerous and systemic and discriminate against plaintiffs.

102.   Defendants' actions violate Section 504 of the Rehabilitation Act and implementing regulations.

THIRD CLAIM

DUE PROCESS

103.   The Due Process Clause of the Fifth Amendment bars defendants from depriving

24

plaintiffs of a protected liberty interest without due process of the law.

104.   Plaintiffs have a protected liberty interest in a free appropriate public education guaranteed by the IDEA, implementing regulations, and District of Columbia law.

105.   Defendants have deprived plaintiffs of a free appropriate public education by failing to comply in an adequate and timely manner with the IDEA, implementing regulations, the D.C. Code, and District of Columbia regulations.   Defendants' failures are numerous and systemic.

106.   Defendants' actions violate the Due Process Clause of the Fifth Amendment.

## FOURTH CLAIM

### D.C. CODE

107.   D.C. Code 38-2501 requires that defendants "shall assess or evaluate a student, who may have a disability and who may require special education services, within 120 days from the date that the student was referred for an evaluation or assessment."

108.   Defendants violate D.C. Code 38-2501 because they fail to evaluate preschool children who may have a disability within 120 days of referral for an assessment.

## FIFTH CLAIM

### DISTRICT OF COLUMBIA REGULATIONS

109.   District of Columbia regulations require that defendants make available "a free appropriate public education (FAPE) * * * to each child with a disability, ages three to twenty-two," who is a resident or ward of the District of Columbia.  5 D.C.M.R. 3002.1(a).

110.   District of Columbia regulations require that defendants "ensure that procedures are implemented to identify, locate and evaluate all children with disabilities" who reside in the District of Columbia and who are in need of special education and related services.  5 D.C.M.R. 3002.1(d).

*See* 5 D.C.M.R. 3002.3(a).

111.  District of Columbia regulations require that defendants ensure that "beginning at age three, FAPE is available to any child with a disability who needs special education and related services, including * * * highly mobile children, such as migrant or homeless children * * *."  5 D.C.M.R.3002.1(e).

112.  Defendants have failed to identify, locate, evaluate and offer special education and related services and a free appropriate public education to plaintiffs.  Defendants' failures are numerous and systemic.

113.  Defendants' actions violate 5 D.C.M.R.3002.1(a), (d), (e), 3002.3(a).

RELIEF

Plaintiffs, on behalf of themselves and all other persons similarly situated, request that this Court grant the following relief:

(1)  Certification of this action, as a class action, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, consisting of:

> All children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

(2)  A declaratory judgment that defendants have violated the following federal statutes and regulations:

> (a)  The IDEA, 20 U.S.C. 1400, *et seq*, namely 20 U.S.C. 1412(a)(3)(A), 20 U.S.C. 1400(d)(1)(A), 20 U.S.C. 1412(a)(1)(A) and implementing regulations

26

by failing to identify, locate, evaluate, or offer a free appropriate public education to plaintiffs in accordance with the IDEA and implementing regulations;

(b)   Section 504 or the Rehabilitation Act, 29 U.S.C. 794(a), and the implementing regulations, 34 C.F.R.104.32 and 34 C.F.R.104.33, by exercising gross misjudgment in failing to identify, locate, evaluate and offer plaintiffs a free appropriate public education;

(c)  The Due Process Clause of the Fifth Amendment by depriving plaintiffs of their rights and interests under the IDEA, implementing regulations, and District of Columbia law with respect to the identification, location, evaluation and offer of a free appropriate public education;

(d)  D.C. Code 38-2501 by failing to evaluate or assess plaintiffs within 120 days of a referral; and

(e)  5 D.C.M.R. 3002.1(a), (d), (e), and 3002.3(a) by failing to identify, locate, evaluate or offer a free appropriate public education to plaintiffs.

(3)  A preliminary and permanent injunction ordering defendants to:

(a)  develop and implement adequate and effective policies and procedures and a practical method of identifying, locating and evaluating plaintiffs for special education and related services;

(b)  notify and inform parents and members of the community that special education and related services are available to plaintiffs at no cost to the parent or family;

(c)  develop an adequate and effective intake and referral process that accepts

referrals from any individual for a child who may need special education and related services;

      (d)  conduct adequate and timely initial evaluations;

      (e)  determine eligibility and develop and implement IEP's in an adequate and timely manner; and

      (f)  offer adequate and timely education placements to implement IEP's.

(4)  An order enjoining defendants to take appropriate affirmative actions to ensure that the violations of federal and District of Columbia law complained of above do not continue to be engaged in by defendants, their agents, successors, employees, subordinates, attorneys and those acting at their direction;

(5)  An order enjoining defendants to provide compensatory education to plaintiffs whom defendants failed to identify, locate, evaluate or offer special education and related services when they were between three and five years old, inclusive;

(6)  An order requiring defendants to reimburse plaintiffs for the funds expended to obtain evaluations, special education and related services as a result of defendants' violations of federal law;

(7)  An order appointing a Special Master whose duties shall include, but not be limited to, monitoring and reporting to the Court regarding:

      (a)  defendants' compliance with the Court's Order;

      (b)  remedies necessary to bring about full compliance with the Court's order.

(8)  An award of reasonable attorneys' fees and costs; and

(9)  Such other relief as may be deemed proper by the Court.

                        Respectfully submitted,

28

_____

BRUCE J. TERRIS (D.C. Bar No. 47126)
KATHLEEN L. MILLIAN (D.C. Bar No.412350)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100


_____/s/_____
JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052
(202) 994-7463


_____/s/_____
MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036
(202) 667-2330

29