UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL,[1] *et al.*, on behalf of themselves and others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )     Civil Action No. 05-1437 (RCL) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

This is a putative class action to challenge defendants' policy, pattern and practice of failing to identify, locate, evaluate and offer special education and related services to children in the District of Columbia who are between the ages of three and five years old, inclusive (hereinafter "preschool" children). Defendants' actions violate the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400, *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a), implementing regulations, the Due Process Clause of the Fifth Amendment, and District of Columbia law.

Named plaintiffs are children with sensory, emotional, physical, cognitive or language disabilities who would like to obtain special education and related services from the District of Columbia Public Schools ("DCPS") as preschool children, but have been denied, delayed or otherwise deprived of access to these services because of defendants' systemic failures to comply with federal and District of Columbia law.

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

The IDEA, the Rehabilitation Act, implementing regulations and District of Columbia law require that the District of Columbia offer a "free appropriate public education" ("FAPE") to children identified as disabled that emphasizes special education and related services. 20 U.S.C. 1412(a)(1)(A); 29 U.S.C. 794; 34 C.F.R. 104.33. 5; DCMR 3002.1(a). To that end, these laws require the District of Columbia to identify, locate, evaluate and offer special education and related services to all children with disabilities who need them, including to preschool children. 20 U.S.C. 1412(a)(3)(A); 34 C.F.R. 300.125; 5 DCMR 3002.3.

The duty to "identify, locate, and evaluate" is also known as the "Child Find" duty and has long been a core component of the IDEA.[2] The Child Find duty mandates that defendants take affirmative steps to ensure that children with disabilities in the District of Columbia are "found" and are given the opportunity to enter the special education system and receive special education and related services. As the Court of Appeals for this Circuit has recently stated, "[s]chool districts may not ignore disabled students' needs, nor may they await parental demands before providing special instruction. Instead, school systems must ensure that 'all children with disabilities residing in the State . . . regardless of the severity of their disabilities, and who are in need of special education and related serves, are identified, located, and evaluated.'" *Reid v. District of Columbia*, 401 F.3d 516, 518-519 (D.C. Cir. 2005) (quoting 20 U.S.C. 1412(a)(3)(A)).

As part of their Child Find duty, defendants must (1) have adequate child find "policies and procedures" and a "practical method" in place to identify, locate and evaluate children with

---

[2]Congress recognized that the goals of the IDEA would be illusory if children with disabilities were not initially identified and located and given the opportunity to access special education and related services. Consequently, in 1974 Congress added the "child find" requirement, explaining that "[a]t the present, failure to identify handicapped children represents a major barrier to fulfillment of [State special education programs.]" H.R. Rept. No. 805, 93rd Cong., 2nd Sess. (Feb. 21, 1974), p. 44.

disabilities; (2) locate children with potential disabilities through, for example, public awareness activities and outreach to parents, day care centers, health providers and others; (3) identify children with disabilities through an accessible system of referrals, intake and screenings; (4) conduct comprehensive evaluations to test for disabilities; (5) determine eligibility for special education and related services upon completion of these evaluations; and (6) develop an Individualized Education Program ("IEP") and an appropriate educational placement for those children ultimately found eligible for services. This process must occur within the time frames and in accordance with the standards pertaining to referrals, evaluations, eligibility determinations, IEP's and placements set forth in the IDEA and District of Columbia law.

Defendants' failures to comply with these IDEA duties are numerous, knowing, pervasive and systemic, and have caused substantial harm to hundreds of young, disabled children in the District of Columbia who have been deprived of special education and related services that are essential to their education and development.

## ARGUMENT

The named plaintiffs bring this action for declaratory and injunctive relief on behalf of themselves and others similarly situated. They seek to represent the following class of children:

> All children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

As explained below, plaintiffs satisfy the requirements of Rules 23(a), 23(b)(2) and 23(g)(1) of the Federal Rules of Civil Procedure. The Court should therefore certify this case as a Rule 23(b)(2) class action.

3

# I

## PLAINTIFFS MEET THE RULE 23(a) PREREQUISITES FOR A CLASS ACTION

An action may be brought as a class action when each of the four prerequisites of Rule 23(a) is met and when one or more of the additional requirements of Rule 23(b) is satisfied. Rule 23(a) sets forth the following four-part test:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

## A.    PLAINTIFFS MEET THE NUMEROSITY PREREQUISITE

Rule 23(a)(1) requires that the class be so numerous that joinder of all members becomes impracticable. To satisfy this prerequisite, courts in this and other jurisdictions have repeatedly held that plaintiffs "need not provide the exact number of potential class members * * * ." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003); *Pigford v. Glickman* , 182 F.R.D. 341, 347 (D.D.C. 1988) ("Mere conjecture, without more, is insufficient to establish numerosity, but plaintiffs do not have to provide an exact number of putative class members in order to satisfy the numerosity requirement"); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").

While there is no specific numerical threshold for class size, courts routinely certify cases with 40 or more members. *See, e.g., Bynum v. District of Columbia, supra,* 214 F.R.D. at 32 ("[g]enerally speaking, courts have found that a proposed class consisting of at least forty members will satisfy the impracticability requirement"). *See also Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1993) ("numerosity is presumed at a level of 40 members"); *Cox*

*v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.), certiorari denied, 479 U.S. 883 (1986) (explaining that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors") (internal punctuation omitted).

The plaintiff class in this case far exceeds 40 members. In 2003, there were 16,962 three through five year olds who were residents of the District of Columbia. *See* Table AF3, Estimated Resident Population 1993, 2002 and 2003 for Children Ages 3-21, U.S. Department of Education, Office of Special Education Programs, Data Analysis System (DANS), attached as Plaintiffs' Exhibit 1. According to the U.S. Department of Education, Office of Special Education statistics, only 301 or 1.77% of these 16,962 received some form of special education and related services, placing the District of Columbia at the very bottom among all states in the provision of special education services to three through five year-old children. *See* Table AA1, Number of Children Served under IDEA, Part B, by Age Group (2003), U.S. Department of Education, Office of Special Education Programs, Data Analysis Systems (DANS), attached as Plaintiffs' Exhibit 2; Table AA10 Percentage of Children Served under IDEA, Part B, By Age Group (2003), U.S. Department of Education, Office of Special Education Programs, Data Analysis Systems (DANS), attached as Plaintiffs' Exhibit 3.

On information and belief, hundreds more of the 16,962 children aged three through five have not been identified, located, evaluated or offered special education and related services and are therefore members of the class. The national average of the percentage of three through five year olds who received special education and related services in 2003 was 5.78%. *See* Pl. Ex. 3. If the District provided services equal to the national average, 980 children would have been identified, located, evaluated and offered services in 2003, 674 more than the 301 children who received

services that year.  *See* Pl. Exs. 2, 3.  There is no reason to believe that the percentage of three

through five year olds needing services in the District of Columbia is below the national average.

In fact, the need is probably much higher, given that the percentage of older children (6 through 17

year olds) in the District of Columbia receiving services in 2003 was higher than the national

average for that age group.  The District of Columbia provided 16.31% or 11,291 of its 6 through

17 year olds with special education services, while the national average was 11.46%.  *See* Pl. Exs.

1- 3.

      This evidence alone is sufficient to establish numerosity.  The district court stated in *Gaskin*,

*et al. v. Commonwealth of Pennsylvania, et al.*, Civil Action No. 94-4048, 1995 U.S. Dist. LEXIS

8136 * 7 (E.D. Pa., June 12, 1995) (quoting Rule 23(a)(1)):

> It is, of course, not necessary for the plaintiffs to prove their case at the pleadings
> stage. If even a fraction of the proposed plaintiff class is not receiving a free
> appropriate public education because of the alleged failure of the Department of
> Education to monitor local school districts' compliance with the IDEA, the class
> would be 'so numerous that joinder of all members [would be] impracticable.'

*See also Upper Valley Ass'n for Handicapped Citizens v. Mills,* 168 F.R.D. 167, 169 (D. Vt. 1996)

(in an IDEA class action, finding that numerosity had been met because "the failure to comply with

the requirements of the IDEA necessarily affect[s] all children eligible for services under that statute

* * *.").

      In this case, the plaintiff class not only consists of current preschool children, but also of older

children whom defendants failed to identify, locate, evaluate and offer services when they were of

preschool age, as well as future class members or children less than three years old who face an

imminent threat of harm because of defendants' unlawful policies and practices.

      Finally, in addition to class size, courts look to other factors to determine whether "joinder

is impractical" and whether the Rule 23(a)(1) prerequisite has been met.   These factors include

judicial economy, the financial resources of the class members, the nature of the claims and relief requested, and the ability of class members to institute individual suits on their own. *See Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) (when making a claim on joinder impracticality, "[r]elevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, * * * financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members"); *see also* H. Newberg & A. Conte, 1 Newberg on Class Actions (3d ed. 1992), sec. 3.07 at pp. 36-37, 73 (supplement) (citing cases).

In the instant case, because many of the named plaintiffs and class members are indigent financially, it would be impractical for them to obtain legal services to vindicate their legal claims. Certification would maximize the available legal and judicial resources and would provide indigent plaintiffs with uniform redress of their common grievances against defendants. Moreover, class certification is appropriate here because plaintiffs are challenging defendants' widespread, systemic failures to comply with their Child Find and FAPE obligations and are seeking prospective injunctive relief. *See, e.g., Upper Valley Ass'n for Handicapped Citizens v. Mills, supra,* 168 F.R.D. at 169-170 (rejecting argument that class size was highly inflated and concluding that "joinder was impractical" because "[p]laintiffs' complaint seeks to remedy systematic failures to adopt and implement procedures for consideration of [IDEA] petitions * * *"); *see also* 1 Newberg on Class Actions, *supra*, sec. 3.07 at p. 36 ("a special consideration applies to actions seeking declaratory or injunctive relief against conduct that is likely to cause future injuries * * *. In these cases, persons who might be injured in the future may be included in the class and are sometimes held to make joinder impracticable without regard to the number of persons already injured") (citing cases).

Accordingly, plaintiffs have met the numerosity prerequisite.

**B.    THERE ARE QUESTIONS OF LAW AND FACT COMMON TO THE CLASS**

The second prerequisite -- that there be common questions of law and fact among class members' claims -- is also satisfied.

It is well-settled that the commonality prerequisite is met where the named plaintiffs share "at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). *See Bynum v. District of Columbia, supra,* 214 F.R.D. at 33 (commonality is met "so long as a single aspect or feature of the claim is common to all proposed class members"). Furthermore, factual variations among the class members will not defeat the commonality requirement. *Pendleton v. Schlesinger*, 73 F.R.D. 506, 508 (D.D.C. 1977), affirmed, 628 F.2d 102 (D.C. Cir. 1980)("In passing on commonality, it is not appropriate to examine the likeness or relation of the several claims of all members of the class and their representatives. The only proper inquiry is, as the language [of Rule 23(a)(2)] suggests, whether there is some aspect or feature of the claims which is common to all.").

In this case, named plaintiffs and the putative class share numerous questions of fact and law. The key questions of fact and law in common arise from defendants' systemic failures to meet statutory and regulatory requirements to identify, locate, evaluate and offer special education and related services to preschool children in the District of Columbia. Plaintiffs contend that as a result of defendants' systemic conduct, they have been denied, delayed or deprived of access to special education and related services and of their right to a free appropriate public education. Plaintiffs contend that their injury, which is common to all class members, can only be rectified by injunctive and declaratory relief from this Court.

As set forth in plaintiffs' Complaint, particular questions of law and fact common to all class

8

members include, but are not limited to:

1.  Whether defendants have adopted Child Find policies and a Child Find program that provides a free appropriate public education to children ages three through five in the District of Columbia (Complaint, para. 83);

2.  Whether defendants have complied with the timelines in the IDEA and in District of Columbia Law that require them to identify and evaluate preschool children with suspected disabilities, determine their eligibility for services, develop their IEP's, and place them in an appropriate educational program (Complaint, para. 84);

3.  Whether defendants have failed to take steps to notify and locate disabled children in the District who are in need of services and who are not receiving them as required by the IDEA, Rehabilitation Act, and District of Columbia law (Complaint, para. 85);

4.  Whether defendants have an adequate method of identifying children who may have disabilities, including whether there are adequate intake, referral, screening and tracking systems to identify children with suspected disabilities as required by the IDEA, Rehabilitation Act and District of Columbia law (Complaint, para. 86);

5.  Whether defendants are evaluating preschool children for special education and related services and are performing these evaluations adequately and in accordance with the IDEA's evaluation procedures (Complaint, paras. 87-88);

6.  Whether defendants have convened timely "IEP meetings" to determine eligibility for special education services and to develop IEP's that specify what services will be provided (Complaint, para. 89); and

7.  Whether defendants have offered plaintiffs appropriate or timely educational placements (Complaint, para. 90).

In addition, where, as here, defendants have engaged in a pattern of unlawful conduct that is directed at class members or have adopted an unlawful policy or practice that is generally applicable to class members, precedent establishes that the commonality requisite is satisfied. *See, e.g., D.D. v. New York City Board of Education*, Civil Action No. 03-2489 (DGT), 2004 U.S. Dist. LEXIS 5189, *26 (S.D.N.Y. Mar. 30, 2004) (certifying a class on behalf of preschool children for failure to implement IEP's and stating that "[d]espite individual variations in the services sought by the named representatives and the putative class members, all their claims singularly focus on the defendants' alleged failure to provide services listed on their IEPs in a timely manner in violation of the IDEA, the ADA, Section 504 and 42 U.S.C. §§ 1983 and 1988."); *see also Adair v. England*, 209 F.R.D. 5, 11 (D.D.C. 2002) ("the named plaintiffs and the members of the putative class share several of the same legal claims, all relating to the Navy's allegedly unconstitutional system of religious preferences"); *Bynum v. District of Columbia*, *supra*, 214 F.R.D. at 33 ("[i]n the present case, plaintiffs allege that defendant has systematically detained persons in their custody after their scheduled date of release, in violation of * * * the Constitution. Because it was this alleged course of conduct that caused injury to the plaintiffs (albeit to varying degrees based on the length of time of their overdetention), the causation elements of their Section 1983 claims are common to all plaintiffs"). *See also* 1 Newberg on Class Actions, *supra*, sec. 3.10 at pp. 50-51 (commonality is "easily met in most cases" and is satisfied where defendants have "engaged in some course of conduct that affects a group of persons and gives rise to a cause of action * * * .").

As in these cases, defendants have engaged in a course of conduct, namely a policy, pattern and practice of failing to identify, locate, evaluate and offer special education services to preschool children, that harms the entire class and that gives rise to common claims under federal and District of Columbia law. Accordingly, the commonality prerequisite of Rule 23(a) is satisfied.

**C.    THE CLAIMS OF THE CLASS REPRESENTATIVES ARE TYPICAL OF THE CLAIMS OF THE CLASS**

Plaintiffs also meet the third prerequisite of Rule 23 -- that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  As this Court has stated, "the purpose of the typicality requirement is to 'ensure[] that the claims of the representative and absent class members are sufficiently similar so that the representatives' acts are also acts on behalf of, and safeguard the interests of, the class'"(citation omitted).  *Bynum v. District of Columbia, supra,* 214 F.R.D. at 34.

The typicality requirement "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford v. Glickman, supra,* 182 F.R.D. at 349.  *See also Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 3 (D.D.C. 2002) ("The sex discrimination claim of each member of the putative class arises from the same alleged pattern and practice of pay disparity asserted by the class representatives.")*; Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), affirmed, 124 F.3d 1309 (D.C. Cir. 1997) ("claims are considered typical if they 'arise from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory.'") (internal citations omitted).

In the instant case, the claims of the class representatives are typical of the claims of class members.  Named plaintiffs' injuries arise from the same course of conduct affecting the entire class, namely defendants' systemic failures to identify, locate, evaluate and offer special education and related services to children aged three through five years old.  In addition, the named plaintiffs' claims are based on the same legal  theory as that of the class, namely that defendants have deprived them of a FAPE and have violated the IDEA, Rehabilitation Act, federal implementing regulations,

Due Process Clause, and District of Columbia law by failing to identify, locate, evaluate and offer them special education and related services as preschool children.

Furthermore, the circumstances of the named plaintiffs are sufficiently similar to those of the class members. Five of the six named plaintiffs have alleged that defendants failed to identify or locate them when they were between the ages of three and five years-old. *See* Complaint, paras. 7, 9, 11, 12, 15, 18, 19, 21, 23, 29, 33-35, 37, 39, 43, 44-45, 56-60. For example, defendants have known that four-year-old DL needed services in June 2004, when a formal invitation was sent to DCPS to attend an IEP meeting from his preschool. Nevertheless defendants refused to take any steps to identify or locate him until his attorney requested a hearing about the Child Find violations nearly a year later in May 2005. *See* Complaint, paras. 7, 9, 11, 12. Similarly, defendants have known since at least October 2004 that OUL was disabled, walked with a walker and leg braces, and was receiving services through Easter Seals when DCPS attended a "transition" meeting with OUL's parents; yet, defendants have taken no steps to locate or identify him for special education services through DCPS. *See* Complaint, paras. 33-35, 37, 39. Three year-old DC, who has been known to defendants since she was an infant, has yet to be located or identified as needing special education and related services. *See* Complaint, paras. 43-45.

Five of the six named plaintiffs have alleged failures related to evaluations, including defendants' failures to conduct evaluations in an adequate and timely manner, despite numerous opportunities to do so. *See* Complaint, paras. 14-15, 19, 23-25, 29, 35, 37, 39, 43, 45, 56-64. Three of the six children are still awaiting evaluations. *See* Complaint, paras. 14-15, 37-39, 44-45, 64. TF has been waiting for evaluations for 15 months, since May 2004, when his kindergarten teacher recommended speech and language therapy.

All of the named plaintiffs maintain that they have not or did not receive special education

and related services at all or in an adequate or timely manner when there were between the ages of three and five years old. *See* Complaint, paras. 14-15, 28-29, 35, 37-39, 43-45, 53-54, 64. Five of the six named plaintiffs still have not received or been offered special education and related services. *Id.,* paras. 14-15, 28-29, 35, 37-39, 43-45, 53-54.

Finally, there is ample precedent for a finding of typicality in this type of case. In *D.D. v. New York City Board of Education*, the court certified a class of preschool children who had not received services in their IEP's in a timely manner. The court concluded that "individual variations in IEP-mandated placements and/or services cannot defeat the typicality prong where plaintiffs' primary claim is that defendants unlawfully failed to implement their IEPs in a timely manner." 2004 U.S. Dist. LEXIS 5189, *supra* at * 29. *See also T. B. v. School District of Philadelphia,* Civil Action No. 97-5453, 1997 U.S. Dist. LEXIS 19300, * 14 (E.D. Pa. Dec 1, 1997)("Plaintiff T.B. and all the proposed class members challenge the same course of conduct by Defendants; the failure to implement and ensure a system to "find" them and to afford them the procedural protections to which they are entitled. At any one time, Plaintiffs may not suffer from the same deficiency, but they are alleged victims of the same systemic failures").

Accordingly, plaintiffs have met the typicality prerequisite.

**D.     THE PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS**

The final prerequisite  – that plaintiffs will fairly and adequately protect the interest of the class –  is met in this case. In order to satisfy this prerequisite, plaintiffs must show that (1) there is no conflict between the named plaintiffs and the class members; and (2) that counsel will vigorously prosecute the case and are qualified to do so. *See National Ass'n of Regional Medical Programs v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976); *Bynum v. District of Columbia, supra*, 214 F.R.D. at

35.

There are no conflicts of interest between the named plaintiffs and the proposed class. The class representatives have no interests that are antagonistic to the class. In fact, named plaintiffs' interests are coextensive with those of the class. Named plaintiffs challenge the same unlawful conduct that affects the class (*i.e.*, systemic failures to identify, locate, evaluate and offer special education and related services). Named plaintiffs have also suffered the same harm as that of the class (*i.e.*, denial of FAPE), and they seek forms of declaratory and injunctive relief, which will benefit all members of the class.

Moreover, plaintiffs' counsel, Bruce J. Terris, Kathleen L. Millian, Shina Majeed, Jeffrey S. Gutman, and Margaret A. Kohn are qualified, are experienced in litigating civil matters, including class actions, and will vigorously prosecute this case.

Mr. Terris graduated from Harvard Law School in 1957 and was an Assistant to the United States Solicitor General from 1959-1965. Mr. Terris has been engaged in civil litigation throughout his career. He has represented plaintiff classes in *Salazar, et al. v. District of Columbia*, *et al*., Civil Action No. 93-452 (GK), *Palmer*, *et al. v. Rice*, Civil Action No. 76-1439 (HHK/JMF), and *Cooper*, *et al. v. Rice*, Civil Action No. 77-2006 (HHKJMF). *See* Affidavit of Bruce J. Terris, attached as Plaintiffs' Exhibit 4.

Ms. Millian graduated from Stanford Law School in 1985. Ms. Millian was a judicial clerk to the Honorable James K. Singleton of the Alaska Court of Appeals from 1985 to 1986. Since 1987, Ms. Millian has practiced federal litigation in the environmental and civil rights fields with Terris, Pravlik & Millian, where she became a partner in 1992. Ms. Millian has represented the plaintiff class in a class action in *Salazar, et al. v. District of Columbia, et al.*, Civil Action No. 93-452 (GK). *See* Affidavit of Kathleen L. Millian, attached as Plaintiffs' Exhibit 5.

Ms. Majeed graduated from New York University School of Law in 2000. She served as a law clerk to the Honorable Gladys Kessler of the United States District Court for the District of Columbia from 2000-2002. Thereafter, she worked at the Urban Justice Center in New York City and the Legal Aid Society for the District of Columbia as a Skadden Law Fellow and Staff Attorney, where she counseled a variety of civil cases, including assisting in class actions in government benefits cases. Since February 2005, she has been engaged in public interest litigation in the federal courts with Terris, Pravlik & Millian. *See* Affidavit of Shina Majeed, attached as Plaintiffs' Exhibit 6.

Mr. Gutman graduated from Harvard Law School in 1986. He is Professor of Clinical Law and Associate Dean for Academic Affairs at The George Washington University ("GWU") Law School. Prior to joining the GWU Law School faculty in 1994, Professor Gutman served as a Trial Attorney with the Federal Programs Branch, Civil Division, United States Department of Justice for seven years. Mr. Gutman has been engaged in civil litigation in the federal courts throughout his career. He currently represents the plaintiff class in *Lightfoot v. District of Columbia*, Civil Action No. 01-1484 (CKK). *See* Affidavit of Jeffrey S. Gutman, attached as Plaintiffs' Exhibit 7.

Ms. Kohn graduated from Columbia Law School in 1972. For the past 16 years, Ms. Kohn has practiced special education law, representing disabled students and their parents in administrative hearings and in the federal and District of Columbia courts. Prior to her specialization in education law, Ms. Kohn was a managing attorney at the National Women's Law Center and a staff attorney at the Center for Law and Social Policy and its Women's Rights Project. Ms. Kohn was co-counsel for the plaintiff class in the following cases: *Haffer v. Temple University*, 524 F. Supp. 531 (E.D. Pa. 1981), affirmed 688 F.2d 14 (3d Cir. 1982); *Greater Washington, D.C. Council of Senior Citizens, v. District of Columbia*, 406 F. Supp. 768 (D.D.C. 1975); and the *National Organization for Women,*

*v. Social Security Administration*, 426 F. Supp. 150 (D.D.C. 1980), affirmed in part, 736 F. 2d 727 (D.C. Cir. 1984). *See* Affidavit of Margaret A. Kohn, attached as Plaintiffs' Exhibit 8.

These attorneys are capable of prosecuting this action on behalf of the proposed class vigorously and efficiently.

## II

## PLAINTIFFS MEET THE CRITERIA SET FORTH IN RULE 23(b)(2)

In order to maintain this case as a class action, plaintiffs must also satisfy the additional requirements of at least one of the subsections of Rule 23(b). In this case, the class satisfies subsection Rule 23(b)(2). Rule 23(b)(2) provides that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" As the language of this rule makes clear, plaintiffs must satisfy two requirements. First, plaintiffs must show that defendants have acted or failed to act on "grounds generally applicable to the class." Second, plaintiffs must show that "final injunctive or corresponding relief" must befit the class. Both factors are met here.

As to the first factor, the legal mandates under which the defendants have failed or refused to act are applicable to all members of the putative class. The IDEA, the Rehabilitation Act, implementing regulations, District of Columbia law and the Due Process Clause of the Fifth Amendment all guarantee plaintiffs the right to a free appropriate public education (FAPE). To that end, these laws require that defendants identify, locate, evaluate and offer special education and related services to plaintiffs. This guarantee is known as "Child Find." As set forth in the Complaint (paras. 74-90) and above (pp. 8-10), the FAPE and Child Find guarantees require that defendants, *inter alia*, have Child Find policies and procedures and a practical method in place to identify, locate

16

and evaluate children with disabilities; complete within 120 days identifications, evaluations and placements; notify and identify students who may have disabilities; conduct evaluations of students with disabilities in accordance with the procedures set forth in the IDEA; and determine eligibility and offer placements in accordance with the requirements of the IDEA.

Furthermore, plaintiffs are seeking final injunctive and declaratory relief on behalf of the class to require defendants to comply with their FAPE and Child Find obligations.   As set forth in the relief section of plaintiffs' Complaint, plaintiffs are seeking an injunction to order defendants, *inter alia*, to develop adequate and effective policies and procedures and a practical method for identifying, locating, and evaluating plaintiffs for special education services; to notify and inform parents and members of the community that special education and related services are available; to develop an adequate and effective intake and referral process; to conduct adequate and timely evaluations; to determine eligibility and develop and implement IEP's in an adequate and timely manner; and to offer adequate and timely educational placements to implement IEP's.

The courts routinely approve Rule 23(b)(2) certification in cases, such as this one, which allege systematic violations of the IDEA.  *See, e.g., J.G. v. Board of Education., Rochester City School District*, 830 F.2d 444, 447 (2d Cir. 1987) ("There can be little dispute that claims of generalized violations [of the IDEA] * * * lend themselves well to class action treatment."); *D.D. v. New York City Board of Education*, *supra*, 2004 U.S. Dist. LEXIS 5189 (certifying a class of preschool children for systemic failures to implement IEP's).

Indeed, this court has certified at least two IDEA cases as Rule 23(b)(2) class actions.  In *Blackman, et al. v. District of Columbia, et al*, Civil Action No. 97-1629 (PLF), the court certified a class in an action challenging the District's failure to convene timely due process hearings and to implement the decisions of hearing officers and to honor settlement agreements concerning

17

identification, educational placement, or provision of FAPE. *See* Memorandum and Order Granting Class Certification, October 22, 1997 [#16]. In *Petties v. District of Columbia*, 881 F. Supp. 63, 64 (D.D.C. 1995), the court certified a class of children in a case involving the District's failure to pay the costs of special education placements and related services to private providers.

Moreover, several courts have certified classes of students in IDEA cases asserting Child Find violations in particular. In *T.B. v. School District of Philadelphia*, Civil Action No. 97-5453, 1997 U.S. Dist. LEXIS 19300 (E.D. Pa. 1997), the court certified a class of students whom defendants had failed to identify as disabled and who were expelled or transferred to a disciplinary school. The court found that plaintiff's Child Find challenge satisfied Rule 23(b)(2) because "[p]laintiff alleges a systemic failure by Defendants to comply with their 'child find' duties under the IDEA and the Rehabilitation Act. This challenge to the system constitutes a legal claim applicable to the class as a whole." *Id.* at * 17-18. In addition, plaintiff sought "equitable relief aimed at remedying Defendants' alleged failures [which] will benefit all students referred for expulsion or transfer." *Id.* at * 19. In *Lamont A., et. al. v. Milwaukee Public Schools*, Civil Action No. 01-C-0928, at *13 (E.D. Wis. Nov. 14, 2003) (attached as Plaintiffs' Exhibit 9), plaintiffs challenged the systemic failure of the Milwaukee Public School System to locate, refer and evaluate children in potential need of special education services. The Court determined that certification of a Rule 23(b)(2) class was appropriate because the defendant maintained a pattern and practice that was generally applicable to the whole class, and plaintiffs were not seeking money damages. *Id.*

Similarly, plaintiffs here allege that defendants have a pattern and practice of failing to identify, locate, evaluate and offer them services and that defendants lack an adequate Child Find system for children ages three through five who need special education services. Plaintiffs further allege that defendants' systemic failures deny them a free appropriate public education and entry into

18

the special education system, which can only be remedied by injunctive and declaratory relief from the Court.

Accordingly, because defendants' conduct is generally applicable to the class and because plaintiffs are seeking injunctive and declaratory relief, plaintiffs have met the requirements under Rule 23(b)(2).

## III

## PLAINTIFFS MEET THE CRITERIA OF RULE 23(g)(1)

Plaintiffs satisfy the criteria of new Rule 23(g)(1), the recent amendment to the Federal Rules of Civil Procedure, which governs appointment of counsel. Rule 23(g)(1)(A)-(B) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel[]" and that any attorney appointed "must fairly and adequately represent the interests of the class."

In addition, Rule 23(g)(1)(C)(i) requires that when appointing class counsel, the court must consider the following factors: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources counsel will commit to representing the class."

Class counsel satisfy all Rule 23(g)(1) factors in this case. First, as the Complaint and this memorandum of law reflect, plaintiffs' counsel have expended several hundred hours of work over the course of two years investigating, researching and identifying claims in this action. *See* Pl. Exs. 4-8. Counsel began investigating this case in 2003. *See* Pl. Ex. 7, para. 8; Pl. Ex. 8, para. 9. Counsel submitted detailed Freedom of Information Act ("FOIA") requests to DCPS to obtain information about the Child Find program and special education services available to preschool children. Counsel carefully reviewed all the responsive materials. *See* Pl. Ex. 7, para. 9; Pl. Ex. 8, para. 8. Counsel

19

also interviewed scores of health care providers, day care staff, teachers, special education advocates, legal services groups, special education experts and parents in the District of Columbia regarding DCPS' Child Find program and special education services available to preschool children. *See* Pl. Ex. 6, para. 6; Pl. Ex. 7, para. 9; Pl. Ex. 8, para. 9. Counsel researched Child Find policies and procedures in similar jurisdictions in other parts of the country. *See* Pl. Ex. 6, para. 6; Pl. Ex. 8, para. 9. Counsel attempted to meet with DCPS prior to filing this suit in order to discuss ways DCPS could cure its Child Find deficiencies. Pl. Ex. 5, para. 8; Pl. Ex. 7, para. 11; Pl. Ex. 8, para. 10. Counsel have expended numerous hours researching legal theories and claims and drafting pleadings. Pl. Ex. 5, para. 8 Pl. Ex. 6, para. 6; Pl. Ex. 7, paras. 8-11; Pl. Ex. 8, para. 7.

Second, as set forth above (pps. 14-16), counsel are "experience[d] in handling class actions, [and] other complex litigation," are experienced in handling cases that raise IDEA, 42 U.S.C. 1983, Rehabilitation Act and the other "claims of the type asserted in [this] action," and have "knowledge of the applicable law." Mr. Terris, Ms. Millian, and Ms. Majeed are attorneys with Terris, Pravlik and Millian, LLP, which is a law firm that specializes in complex federal litigation and class actions. Pl. Ex. 4, para. 6; Pl. Ex. 5, paras. 5-6, Pl. Ex. 6, para. 5. Mr. Terris has nearly 48 years of experience and Ms. Millian has nearly 18 years of experience handling complex litigation in the federal district and appeals courts. Pl. Ex. 4, para. 5; Pl. Ex. 5, para 5. Ms. Cohen has specialized in special education cases for 16 years and has brought numerous IDEA and other federal statutory cases before this Court. *See* Pl. Ex. 8, paras. 5-6. Mr. Gutman, who is a professor of clinical law at GWU Law School, has handled federal statutory and constitutional matters in the federal courts for nearly 18 years. Pl. Ex. 7, paras. 4-7.

Finally, counsel are willing to commit the full range of resources necessary to litigate this case successfully, just as they have for the previous class actions and complex litigation they have

handled.  Counsel are attorneys from three different legal groups and law practices, including the law

firm of Terris, Pravlik and Millian, LLP, The George Washington University ("GWU") Law School

Clinical Program, and the private practice of Margaret A. Kohn.  Counsel will draw upon the

resources of all three groups to prosecute this case vigorously.  Terris, Pravlik & Millian, LLP, which

is lead counsel in this case, has prosecuted successfully many complex cases requiring substantial

time and resources.  Pl. Ex.  4, para. 8; Pl. Ex. 5, paras. 5-6.

Accordingly, class counsel have satisfied the criteria of Rule 23(g)(1).

**CONCLUSION**

For the foregoing reasons, plaintiffs have met the prerequisites in Rule 23(a) and the

criteria for Rule 23(b)(2) and Rule 23(g)(1).  Accordingly, the Court should certify this action as

a Rule 23(b)(2) class action.  A proposed order is attached.


Respectfully submitted,


_____/s/_____
BRUCE J. TERRIS (D.C. Bar No. 47126)
KATHLEEN L. MILLIAN (D.C. Bar No.412350)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100


_____/s/_____
JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052


_____/s/_____

21

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036

September 1, 2005