Copy mailed to attorneys for
parties by the Court pursuant
to Rule 77(d) Federal Rules of
Civil Procedures.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

U.S. COURT EAST DIST. WISC.
FILED

NOV 1 4 2003

AT _____ O'CLOCK _____ M
SOFRON B. NEDILSKY

LAMONT A., AARON V.,
JIM M., TYLER C.,
DAVID P., JAMIE S.,
and MAIYSHA Y.,
by their parents and next friends,
MAURICE A., KIMBERLY V.,
VICKIE S., DORIS T., KENA K.,
and FLORA Y.,
on their own behalf and on behalf of
similarly situated persons,

**CASE NO. 01-C-928**

Plaintiffs,

v

MILWAUKEE PUBLIC SCHOOLS,
WILLIAM ANDREKOPOLOUS,
WISCONSIN DEPARTMENT OF PUBLIC INSTRUCTION,
ELIZABETH BURMASTER, and
MILWAUKEE BOARD OF SCHOOL DIRECTORS,

Defendants.

## DECISION AND ORDER REGARDING SECOND AMENDED MOTION FOR CLASS CERTIFICATION

On September 13, 2001, the plaintiffs filed their complaint, alleging violations under the

Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400 et seq.("IDEA"). On November 7,

2002, the plaintiffs filed a motion for class certification so that they could proceed on their claims as

a class action. On May 23, 2003, the court, in its Decision and Order Regarding Class Certification,

directed the plaintiffs to submit an amended class certification motion because the court determined

that a number of the plaintiffs' claims were subject to the exhaustion of administrative remedies,

pursuant to the IDEA. 20 U.S.C. § 1415(l).

AO 72A
(Rev.8/82)

PLAINTIFF'S
EXHIBIT
9

On June 23, 2003, the plaintiffs filed their amended motion for class certification, which sought class certification based upon the claims as narrowed by the court's May 23, 2003 order. On August 1, 2003, the plaintiffs were required to file a second amended motion for class certification because, in the court's opinion, both the plaintiffs and the defendants misconstrued the May 23, 2003, decision and order. On August 22, 2003, the plaintiffs filed their second amended motion for class certification. The motion is fully briefed and ready for resolution. Additionally, the plaintiffs have moved to strike the affidavit of Patricia Yahle, which was submitted in support of the Milwaukee defendants' brief in opposition to the motion for class certification.

In order to obtain class certification, the plaintiffs must satisfy the four threshold requirements of Federal Rules of Civil Procedure 23(a) and establish that the action qualifies under one of the subdivisions of Federal Rules of Civil Procedure 23(b). Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974). Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there is a question of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The plaintiffs allege that they satisfy Rule 23(b)(2), which states:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2).

Before the court can address the class certification requirements, there are still issues with the class definition that must be addressed.

I.    **Class Definition**

In the plaintiffs' original motion for class certification, they sought to certify a class that they

defined as:

> [the named plaintiffs] on behalf of themselves and a class of all school age Wisconsin
> residents living within the boundaries of the Milwaukee Public School District or
> otherwise eligible for education from the District who are or may be eligible for special
> education and related services under IDEA and Wisconsin Law due to their
> disabilities.

After considering the defendants' objections and the plaintiffs' response, this court determined that

this proposed class definition included claims, of which, the exhaustion of administrative remedies

would be required. The court thus concluded that some of the plaintiffs' claims were not systemic in

nature, identifying these as "post-determination" claims. The court reasoned that were subject to

administrative exhaustion because they are individual and substantive in nature and each alleged

wrong could be potentially remedied through the administrative process outlined in the IDEA. The

court identified the other claims as "pre-determination" claims and concluded that these were

systemic or procedural in nature. As such, these claims had the potential for class certification. The

plaintiffs were required to file their amended motion for class certification based only upon the pre-

determination claims.

But, when the plaintiffs filed their amended motion for class certification, they latched onto

the "procedural" language in the court's decision and redefined the class broadly so that it actually

contained the claims that the court determined were subject to the exhaustion requirement. At the

same time, the defendants in their briefs in opposition to the plaintiffs' motion for class certification,

latched onto the "pre-determination" language to view any class definition so narrowly as to define

3

it out of existence. Because the court felt that parties' proposed and opposing class definitions both misconstrued the first order on class certification, the court formulated its own definition and directed the plaintiffs to submit a second motion for class certification. The court defined the putative class as:

> Those students eligible for special education services from the Milwaukee Public School System who are, have been or will be either denied or delayed entry or participation in the processes which result in a meeting between the IEP team and the parents or guardians of the student

Now, on the most recent attempt to certify the class, there is still as dispute between the parties as to which alleged violations should be included in the class definition. The plaintiffs have characterized the class, based upon the court's definition, to include students with claims involving situations where the defendants have failed to evaluate when required, where the defendants have failed to convene an IEP Team when required, or where the defendants have held an IEP Team meeting without the required people , including the parents and/or child. Plaintiffs Brief at 23. Both the Milwaukee and State defendants object to the plaintiffs' interpretation of the court's class definition. The defendants argue that the language in the court's August, 1, 2003, order clearly indicates that the class definition only applies to situations where the student's parents or guardians have not been to the initial IEP meeting. Not so, argue the plaintiffs in response. The plaintiffs submit that the court in its August 1, 2003, order explicitly rejected the notion that the class not include violations that arise out of, or occur after the initial IEP meeting. Reply Brief at 5-6.

This court believes that its August 1, 2003 order is sufficiently clear in its conclusion of what class of students may have been the victims of systemic violations. Such students can include those who are now in "the system," but allegedly have been denied or delayed entry at an earlier time. In

other words, the denial or delay of participation in the program must occur prior to the initial IEP meeting. But, to qualify as a class representative, a plaintiff does not have to be at the pre-determination stage during the lawsuit. It is enough that he or she was denied or delayed entry at an earlier time. The court made this point clear when it stated that "this court still believes that a group of claims exists that can be classified as systemic...those students who suffer from deficiencies which hinder, unduly delay or prevent them from being *initially* served." August 1, 2003, Decision and Order at 4, emphasis added.

In using the phrase "prevent them from being initially served," the court intended to encompass those students whose initial IEP meeting failed to serve its statutory purpose. One example is the situation when the initial IEP meeting, even though conducted, was not properly constituted, such as when no parent or guardian of the student attended the meeting. In such a case, the parent or guardian may remain unaware of their IDEA rights and remedies despite the fact that an IEP meeting actually took place. Another instance would be where the proper MPS officials were not involved in the IEP meeting. This could occur if a MPS teacher decided to hold an IEP meeting without any other MPS officials. In situations like these, a potential class plaintiff would be able to proceed with this "post IEP meeting" claim if the plaintiff was able to demonstrate that the IEP meeting, as it was constituted, failed to adequately provide notice of procedural rights. A failure to conduct a properly constituted IEP meeting is the equivalent of a failure to even have a meeting.

Conversely, any of the plaintiffs' claims which arise out of facts or occurrences that originate after the initial IEP meeting, are considered post-determination claims, not falling under the class definition. The class is to only include those students who were, are or will be delayed or denied entry into the system and whose parents or guardians have not been informed of their procedural rights at

5

the initial IEP meeting. Despite the defendants' contentions, the court is concerned that even though there are Child Find procedures in place, parents or guardians may not be adequately aware, or even aware at all, of their remedies for the alleged failure of MPS to get their children into the system. However, once a parent has been informed by the Child Study team of their rights in regard to any problem that arises, a remedy must first be sought through the statutorily established administrative process before it can be addressed in federal court.

The defendants also note that as soon as a child is identified as needing an evaluation or screening and before the initial IEP meeting, the parents or guardians are sent information regarding the students rights under Wisconsin and federal special education law. And, as a result, the defendants argue that the actual time for a claim to become a post-determination claim, is when the information regarding the students' rights is sent to the parents or guardians of the child. The court does not accept the defendants' position that the post-determination period commences from the time that the school system sends the statement of rights to the parents. Even though the parent may be sent some information regarding their rights, the court is not sanguine with the fact that this information is always properly delivered or that the parents have a full understanding of the information. Under such circumstances, the potential of having parties unwittingly forego their rights is too great.

The defendants also challenge the plaintiffs' class certification motion, claiming that the plaintiffs will not succeed on the merits of their claims. However, the court should not make its decision regarding class certification based upon a belief that the claims will or will not succeed on the merits. Szabo v. Bridgeport Machines, 249 F.3d 672, 677 (7th Cir. 2001). This means that judges must be willing to certify classes that have weak claims as well as those that have strong ones. Id. Consequently, the defendants' challenge to the merits of the plaintiffs' claims will have to wait for

6

proceedings on the merits, such as a trial or a motion for summary judgment.

Therefore, using the court's class definition, as discussed above, the court now turns to the requirements for class certification under Fed. R. Civ. P. 23.

**II.     Class Certification Requirements**

The plaintiffs have alleged that they have satisfied all of the Rule 23(a) requirements as well as Rule 23(b)(2) and therefore class certification is proper. Neither the Milwaukee or Wisconsin defendants challenge the Rule 23(a)(2) commonality or Rule 23(a)(4) adequate representation requirements. Nor do the defendants argue that the plaintiffs have failed to establish the maintainability of their claims under Rule 23(b)(2). Thus, the only class certification requirements in issue are the numerosity and typicality requirements. However, to be thorough, the court will address all of the Rule 23(a) requirements in turn and then address the Rule 23(b) requirement.

**A.     Numerosity**

Rule 23(a)(1) requires that the class be so numerous that the joinder of all members of the class is impracticable. Fed. R. Civ. P. 23(a)(1) Joinder has been found to be impracticable when there was a class of twenty-five. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1762 (2d ed. 1987 & Supp.2003). At the same time, joinder was found to be practicable with a class of three-hundred-fifty. Id. However, the Seventh Circuit has indicated that a class of at least forty is sufficient to satisfy the numerosity requirement. Swanson v. American consumer Industries, Inc., 415 F.3d 1326, 1333 n.9 (7th Cir. 1969). While the plaintiffs are not required to identify the exact number of members of the class, they cannot rest on mere allegations of the existence of a class. Marical v. Coronet Instrumentst, Co., 880 F.2d 954, 957 (7th Cir. 1989). It is well established that a reasonable estimate will suffice, Peterson v. H& R Block Tax Services, Inc., 174 F.R.D. 78, 81 (N.D. Ill. 1997),

7

and that courts are entitled to make common sense assumptions in order to support a finding of numerosity. McCabe v. Crawford & Co., 210 F.R.D. 631, 644 (N.D. Ill. 2002).

The plaintiffs allege that they have satisfied the numerosity requirement because they have established that MPS has failed to evaluate when required, has failed to convene an IEP Team when required or has held an IEP Team meeting without the required people in approximately 20% of the time, according to DPI monitoring. The defendants argue that the plaintiffs' number includes post-determination claims and that from the information provided by the plaintiffs, it cannot be determined how many students are in the pre-determination class. Therefore, the defendants submit that the plaintiffs have failed to meet their burden of establishing numerosity. Additionally, the defendants argue that the plaintiffs have not presented any other evidence that would suggest that joinder would be impracticable, such as a lack of geographic proximity.

The defendants are rightly concerned about the plaintiffs' numbers to support the satisfaction of the numerosity requirement, noting that they include claims that the court considers post-determination. Because the number suggested by the plaintiffs (3200 class members) includes some post-determination claims and because the plaintiffs have not identified which of the 3200 class members were students who were denied or delayed entry into the system, the 20% figure cannot be accepted as the guidepost in the court's determination. However, the plaintiffs do note one statistic in their brief that is clearly applicable to the numerosity determination. The plaintiffs note that DPI found that 1 out of 259 students eligible failed to have any IEP at all. Plaintiffs' Brief at 27 n.13. If that ratio is applied to the 16,000 identified special education students in MPS, at least 62 students would have gone without an IEP, well over the 40 plaintiffs found sufficient to make joinder impracticable by the Seventh Circuit. Swanson 415 F.3d at 1333 n.9. Nevertheless, a question still

8

remains as to whether or not these 62 class members actually exist. But when the approximation of

62 potential plaintiffs is considered in light of the fact that, in their declarations, the plaintiffs have

identified five non-named students who are potential class members (Joseph D., Lassomer C., Tyrone

D. Aaron F. and Michael T.), the existence of at least 62 members of the class seems more likely.

In any event, it does not seem reasonable that all of the 3200 arguable potential class members should

be summarily disqualified from consideration as constituting only post-determination claims. As such,

the court finds that the plaintiffs have established that the class is so numerous as to make joinder

impracticable. And therefore, the plaintiffs do not need to allege any other facts that would

demonstrate that joinder would be impracticable.

### B.    Commonality

Rule 23(a)(2) requires that the plaintiffs prove that the questions of law or fact are common

to the proposed class. Fed. R. Civ. P. 23(a)(2). A common nucleus of operative fact is enough to

satisfy the commonality requirement. Rosario v. Linvadits, 963 F.3d 1013, 1018 (7th Cir. 1992).

However, some factual variation among the grievances will not defeat a class action. Id. at 1017.

The plaintiffs allege that this requirement is met because all of the plaintiffs' claims are based

upon the defendants' failure to assure that children are not denied or delayed entry into the system.

The defendants do not argue that the issues of law or fact are uncommon to the class.

The denied or delayed entry into the special education system is the issue of law that will be

common to all members of the class. And the defendants do not argue that it is missing.

Consequently, the plaintiffs have established the existence of common question of law.

### C.    Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of

the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). A claim is typical if it arises from the same event or practice that gives rise to the claims of other class members and if the named plaintiffs' claims are based upon the same legal theory as the other members' claims. De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1989). So, even if there are factual distinctions between the claims of the named plaintiffs and the other class members, the typicality requirement can still be satisfied.

Before the court addresses the issue of typicality, it reiterates that the only claims subject to the motion for class certification are those that allege that a student was denied or delayed entry into the system prior to a properly constituted initial IEP meeting. So, a named plaintiff's individual claims must be typical of that definition.

The plaintiffs allege that they have demonstrated a pattern of practice by the defendants that deny or delay the proposed class' entry or participation in IEP Team meetings. They further argue that the claims of the named plaintiffs and the class arise from the same practice by the defendants i.e. the failure to assure the evaluation and the placement into special education services of students under state and federal special education law.

The defendants respond that each of the named plaintiffs had an initial IEP meeting or would have otherwise received a statement of their rights, at which point the parents or guardians are aware of their procedural rights. Therefore, the defendants argue, that the named plaintiffs are not typical of the class and as a result, the plaintiffs have not established the typicality requirement.

Specifically, the defendants note that even Jamie S., who the defendants concede would be the most likely proposed plaintiff to represent the class, was provided with her statement of rights on March 21, 2001, and that she did not pursue her administrative remedies as outlined in the statement

10

of rights. Therefore, they argue, that Jamie S. is not typical of the class. In reply, the plaintiffs allege

that Jamie S.'s mother made the request to be evaluated when Jamie S. was in kindergarten, during

the 1999-2000 school year, but she was not evaluated until the spring of 2001. The defendants

disagree with Jamie S.'s mother's contention, noting that there is no written record of any 1999-2000

school year request for evaluation. The alleged lack of written evidence is not enough to persuade

the court that the assertion by Jamie S.'s mother lacks credibility. The parties have raised an

evidentiary matter which cannot be resolved on the record before the court. Absent any contradictory

direct evidence, the court will accept Jamie S.'s mother's statements as true for the purpose of

deciding the class certification motion. Thus, the court concludes that Jamie S. is typical of the class.

The defendants also argue that the other named plaintiffs (Lamont A., Aaron V., Jim M., Tyler

C., David P. and Maiysha Y.) are not typical because none of them allege that they were denied or

delayed entry into the system prior to the initial IEP meeting.

Based upon the record before the court, the defendants are correct about all of the plaintiffs

except for Aaron V., who could possibly qualify as a class representative. It is not clear from the

plaintiffs' submissions whether the concerns about the IEP meeting that Aaron V. argues is improper

was his initial IEP meeting or if it is a subsequent one. Declaration of Kim V. at ¶¶ 2-4. If the IEP

meeting referenced here is Aaron V.'s initial IEP meeting, he is also a proper class representative.

However, none of the other named plaintiffs allege that they were denied or delayed entry into

the system prior to the initial IEP meeting. Lamont A.'s IEP had been in effect when the alleged

violations occurred. Declaration of Maurice A. at ¶ 3. Jim M. had been diagnosed at an early age with

ADD and Asperger's Syndrome and had been eligible for special education because of these

impairments. Declaration of Jim M. at ¶ 2. In addition, the claims that Jim M. allege that are relevant

11

here occurred during an IEP meeting that occurred after his initial IPE meeting. Id. at ¶¶ 9-11, Exhibit A at 4-5. Likewise, it is clear that Tyler C.'s claim that the IEP team failed to find another school for him occurred after an initial IEP team meeting. Declaration of Vickie S. at ¶ 3. And David P., who is deaf, has been a MPS student most of his school years and has been placed by MPS in the Wisconsin School for the Deaf and another specialty school in Illinois. Declaration of Doris T. at ¶¶ 2-5. Obviously, an IEP must have been in place before David P. could be sent to a specialty school. But, David P.'s claim arises out of the facts that surround his return placement into MPS after he could no longer attend the school in Illinois. Id. Maiysha Y. was in special education since K5, her her complaint arises out of an alleged IEP violation that concerns her high school placement. Declaration of Flora Y. at ¶¶ 2-5. Based upon the above facts, these named plaintiffs are not typical of the class.

Because only Jamie S. and possibly Aaron V. are typical of the class, LaMont A., Jim M., Tyler C., David P. and Maiysha Y. will be disqualified from representing the class. Jamie S. will remain as a named plaintiff, as will Aaron V., unless or until it is demonstrated that Aaron V. is not a proper class representative.

D.    Adequate Representatives of the Class

Rule 23(a)(4) requires that the plaintiffs establish that the class representative possess the same interest and suffers the same injury as the class. Uhl v. Thoroughbred Technology & Telecommunications, Inc., 309 F.3d 978, 985 (7th Cir. 2002). This requires that the district court ensure that there is no inconsistency between the named parties and the class that they represent. Id. Additionally, the named plaintiffs be represented by competent counsel. Susman v. Lincoln American Corp., 561 F.2d 86, 90 (7th Cir. 1977).

12

The plaintiffs allege none of the plaintiffs have interests that would conflict with goals of the class. Additionally, the plaintiffs allege that they are represented by adequate counsel, who has previously represented parties in civil rights actions in federal court, both in individual and class actions. The defendants have not responded to the adequacy of representation requirement.

As noted above, the court has limited the named plaintiffs to only include Jamie S. and Aaron V. And there is no evidence that their personal claims would conflict those of the class, which would make them inadequate as the class representatives. Moreover, there is no indication that the plaintiffs' counsel is inadequate. Therefore, the court finds that the plaintiffs have satisfied the adequacy of representation requirement.

E.    Rule 23(b)(2)

In addition to establishing the requirements of Rule 23(a), the proposed class must establish one of the Rule 23(b) requirements. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974). The plaintiffs believe that their action is maintainable under Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(2), a class action is maintainable if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2). However a class action is not appropriate under Rule 23(b)(2) if the final relief sought is exclusively or predominately monetary damages. Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO, 216 F.3d 577, 580 (7th Cir. 2000).

The plaintiffs argue that they have satisfied Rule 23(b)(2) because they have alleged that the defendants have acted in a manner to the class that may be viewed as a pattern and practice and therefore they have acted on grounds generally applicable to the entire class. The defendants do not challenge the plaintiffs' arguments regarding Rule 23(b)(2).

13

The plaintiffs allege none of the plaintiffs have interests that would conflict with goals of the class. Additionally, the plaintiffs allege that they are represented by adequate counsel, who has previously represented parties in civil rights actions in federal court, both in individual and class actions. The defendants have not responded to the adequacy of representation requirement.

As noted above, the court has limited the named plaintiffs to only include Jamie S. and Aaron V. And there is no evidence that their personal claims would conflict those of the class, which would make them inadequate as the class representatives. Moreover, there is no indication that the plaintiffs' counsel is inadequate. Therefore, the court finds that the plaintiffs have satisfied the adequacy of representation requirement.

E.    Rule 23(b)(2)

In addition to establishing the requirements of Rule 23(a), the proposed class must establish one of the Rule 23(b) requirements. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974). The plaintiffs believe that their action is maintainable under Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(2), a class action is maintainable if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2). However a class action is not appropriate under Rule 23(b)(2) if the final relief sought is exclusively or predominately monetary damages. Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO, 216 F.3d 577, 580 (7th Cir. 2000).

The plaintiffs argue that they have satisfied Rule 23(b)(2) because they have alleged that the defendants have acted in a manner to the class that may be viewed as a pattern and practice and therefore they have acted on grounds generally applicable to the entire class. The defendants do not challenge the plaintiffs' arguments regarding Rule 23(b)(2).

13

Here, the plaintiffs have not sought any monetary damages, other than their request to have the defendants pay the plaintiffs' attorney's fees and costs. Complaint at pp. 22-23. Additionally, the plaintiffs have alleged that the defendants have denied or delayed the entire class entry into the special education system, noting the specific examples of Jamie S., Joseph D., Lassomer C., Tyrone D., Aaron F. and Michael T. As a result, the court finds that the plaintiffs have satisfied Rule 23(b)(2).

III.   Motion to Strike Yahle Affidavit

The plaintiffs move to strike the affidavit of Patricia Yahle, submitted in support of the Milwaukee defendants' brief in opposition to the motion for class certification, on the grounds that most of the affidavit violates the rule against hearsay and that other evidence is not based upon personal information as required by Fed. R. Evid. 602. The defendants acknowledged the evidentiary concern and submitted a supplemental affidavit, in which Yahle indicates how she has personal knowledge of the information and that the records are kept in the course of regularly conducted business activity. The supplemental affidavit corrects the hearsay problem by establishing that the reports and records alluded to fall within the business records exception. Fed. R. Evid. 803(6). The supplemental affidavit also established that the assertions are based upon personal knowledge, satisfying Fed. R. Evid. 602 problem. Consequently, the plaintiffs' motion to strike the affidavit of Patricia Yahle will be denied.

III.   Conclusion

Based upon the class definition established by the court in its August 1, 2003, order and as modified above, any alleged violations that occur after a parent or guardian has attended a properly constituted IEP meeting, are post-determination claims and are subject to the exhaustion requirement. Thus, The only viable claims are those that allege that the defendants have denied or delayed a

14

student's entry into the special education system before the parent or guardian is initially made aware of their child's procedural rights. Based upon the claims that fall under the class definition, the court has determined that the plaintiffs have satisfied all of the Rule 23(a) requirements, as well as Rule 23(b)(2). However, because of a lack of typicality, of the named plaintiffs, only Jamie S. and Aaron V. can remain as representative plaintiffs. Consequently, the court certifies the class defined above, with Jamie S. and Aaron V. as the representative plaintiffs. Additionally, the plaintiffs' motion to strike the Yahle affidavit will be denied.

**IT IS THEREFORE ORDERED** that the plaintiffs' motion for class certification is granted in part. The class is defined as follows:

> Those students eligible for special education services from the Milwaukee Public School System who are, have been or will be either denied or delayed entry or participation in the processes which result in a properly constituted meeting between the IEP team and the parents or guardians of the student.

**IT IS FURTHER ORDERED** that the caption shall be changed to reflect the fact that Jamie S. and Aaron V. are the only class representatives and named plaintiffs.

**IT IS FURTHER ORDERED** that the plaintiffs' motion to strike the affidavit of Patricia Yahle is denied.

**IT IS FURTHER ORDERED** that the court shall conduct a conference on **December 1, 2003** at **9:30 a.m., in Courtroom 254**, United States Courthouse, to discuss all matters, such as further scheduling, post-certification discovery and notice to the class members.

Dated at Milwaukee, Wisconsin, this 14th day of November, 2003.

AARON E. GOODSTEIN
United States Magistrate Judge

15