UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.L., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1437 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFFS' CLAIM OF
A VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, by their counsel, respectfully move this Court for dismissal of Plaintiffs' Second Claim in their Complaint, which alleges that Defendants violated Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a).  See Complaint, at ¶¶ 98-102.

The reasons for this motion are set forth in the accompanying supporting memorandum.  A proposed order is also submitted herewith.

                                        Respectfully submitted,

                                        ROBERT J. SPAGNOLETTI
                                        Attorney General of the District of Columbia

                                        GEORGE C. VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division

                                        **/s/ Edward P. Taptich**
                                        EDWARD P. TAPTICH [#012914]
                                        Chief, Equity Section 2

2

 

**/s/ Daniel A. Rezneck**
DANIEL A. REZNECK [#31625]
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
November 16, 2005              Washington, D.C. 20001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DL, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | Civil Action No. 05-1437 (RCL) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR DISMISSAL OF PLAINTIFFS' CLAIM OF A VIOLATION
OF SECTION 504 OF THE REHABILITATION ACT**

**INTRODUCTION**

On July 21, 2005, Plaintiffs filed the present case, alleging that the District of Columbia Public Schools ("DCPS") failed in its duty to provide a free appropriate public education ("FAPE") to children ages three through five living in the District of Columbia. Pending before this Court are Plaintiffs' Motion for Class Certification and Defendants' opposition to that motion, as well as a motion to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim.

**APPLICABLE LEGAL STANDARDS**

**Failure to State a Claim Upon Which Relief Can be Granted, Federal Rule of Civil Procedure 12(b)(6).**

The Court should only grant a motion to dismiss when it appears beyond doubt that under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *Haynesworth v. Miller*, 261 U.S. App. D.C. 66, 820 F.2d 1245, 1254 (D.C. Cir. 1987); *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

3

Although plaintiff enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of the complaint, bare conclusions of law or sweeping and unwarranted averments of fact will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Id.*

Further, the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. *Kowal v. MCI Communications Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.*

## ARGUMENT

**Plaintiffs have failed to state a claim under Section 504 of the Rehabilitation Act; thus, this claim should be dismissed.**

Plaintiffs have failed to state a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) ("Section 504") because they have not alleged that they were treated differently from non-disabled students **solely** because of their disabilities. Nor have they alleged anything in their Complaint that demonstrates gross misconduct or bad faith by school officials.

Section 504 states in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 USCS § 705(20)], shall, **solely by reason of her or his disability**, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Emphasis added.

4

Furthermore, even if Plaintiffs could demonstrate discrimination against them because of their disabilities, courts of this jurisdiction require Plaintiffs to make an additional showing of bath faith or gross misjudgment by school officials. In *Walker v. District of Columbia*, 157 F. Supp. 2d 11 (D.D.C. 2001) (Friedman, J.), the Court states:

> In order to state a claim under Section 504 of the Rehabilitation Act, a plaintiff must show that he or she was discriminated against "solely by reason of his [or her] handicap." 29 U.S.C. § 794; see *Walker v. District of Columbia*, 969 F. Supp. at 797; *Heidemann v. Rother*, 84 F.3d at 1032. In the context of children who receive benefits pursuant to the IDEA, the D.C. Circuit has noted that "'in order to show a violation of the Rehabilitation Act, something more than a mere failure to provide the 'free and appropriate education' required by the [IDEA] must be shown.'" *Lunceford v. District of Columbia Bd. of Educ.*, 241 U.S. App. D.C. 1, 745 F.2d 1577, 1580 (D.C. Cir. 1984) (quoting [Circuit Judge Arnold in] *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). "Either bad faith or gross misjudgment should be shown before a § 504 violation can be made out . . . ." *Monahan v. Nebraska*, 687 F.2d at 1171. Liability will not be imposed so long as the "state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals." Id.

157 F. Supp. 2d at 35-36; see also *R.S. v. District of Columbia*, 292 F. Supp. 2d 23 (D.D.C. 2003) (Huvelle, J.). Other jurisdictions have also required a showing of bad faith or gross misjudgment by school officials to sustain a Section 504 claim. *See eg.,Todd by Todd v. Elkins Sch. Dist. No. 10*, 1998 U.S. App. LEXIS 8083 (8th Cir. 1998); *Beth B. v. Van Clay*, 211 F. Supp. 2d 1020 (N.D. Ill. 2001); *Searles v. Board of Educ.,* 1999 U.S. Dist. LEXIS 572 (N.D.N.Y. 1999); *A.W. by Ms. C. v. Marlborough Co.*, 25 F. Supp. 2d 27 (D. Conn. 1998); *cf. Hoekstra by & through Hoekstra v. Independent Sch. Dist., No. 283*, 103 F.3d 624, 626-627 (8th Cir. 1996) (applying *Monahan* standard to the Americans with Disabilities Act).

A.  **<u>Plaintiffs have not alleged facts supporting that Defendants discriminated against them solely on the basis of their disabilities.</u>**

Defendants do not dispute that Plaintiffs are entitled to a free appropriate public education ("FAPE"), as provided for in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1412(a)(1). Nor do Defendants contest for purposes of this motion that Plaintiffs may have disabilities that entitle them to special education services under the IDEA. However, Plaintiffs have not alleged in their Complaint any facts that support the proposition that they were denied a FAPE or special education services *because* of their disabilities or that they were treated differently than non-disabled children. In fact, Plaintiffs have argued, *inter alia*, that Defendants did not identify them as being disabled and/or needing special education services; thus, even assuming *arguendo* that those allegations were true, Defendants clearly did not treat Plaintiffs differently from non-disabled students.

In a similar case to the present one, a New York District Court struck a Section 504 claim, holding that the plaintiffs:

> failed to allege a necessary element of [a]…Section 504 reasonable accommodation claim—ie, that they were denied the opportunity to participate in or benefit from defendants' services, programs, or activities that the defendants have made available to non-disabled preschool children, or were otherwise discriminated against by defendants, by reason of their disabilities-- plaintiffs'…Section 504 claims against Mills and the City defendants must be dismissed.

*D.D. v. New York City Board of Education*, C.A. No. 03-2489, 2004 U.S. Dist. LEXIS 5189 (EDNY 2004), 60-61. In the *D.D.* case, plaintiffs, who were a proposed class of present and future New York City preschool children, alleged that they were denied a

6

FAPE because they did not receive (or timely receive) services required by their Individualized Education Programs. The plaintiffs there, like Plaintiffs in the present case, claimed a Section 504 violation, stemming from this alleged violation of the IDEA.

The *D.D.* Court stated that in order "[t]o establish a violation under…Section 504 of the Rehabilitation Act, plaintiffs must show that: (1) they have a disability for purposes of the ADA [Americans with Disabilities Act] and Section 504; (2) they were otherwise qualified for the benefits that had been denied; and **(3) they had been denied the benefit by reason of their disabilities.**" 2004 U.S. Dist. LEXIS 5189, at 53 (emphasis added and internal citations omitted). The *D.D.* Court went on to hold that the plaintiffs could not demonstrate the final element because their reasonable accommodation claim involved programs and services only made available to disabled students—not non-disabled students. *Id.*, at 59-60; *see Sellers by Sellers v. School Bd.*, 141 F.3d 524 (4th Cir. 1998).

The same is true in the present case. Non-disabled students with no signs of disability are not entitled to the benefits given under the IDEA. Similarly, in the present case, Plaintiffs cannot show that Defendants denied them benefits because of their disability.

Section 504 is an anti-discrimination statute, which does not impose an affirmative duty to provide special education services. *Southeastern Community College v. Davis*, 442 U.S. 397, 410-411 (1979) ("…neither the language, purpose, nor history of § 504 reveals an intent to impose an affirmative-action obligation on all recipients of federal funds."); *Brantley v. Independent Sch. Dist.*, 936 F. Supp. 649, 656 (D. Minn. 1996) ("…Section 504 provides relief from discrimination, whereas the IDEA provides

7

relief from inappropriate educational decisions, regardless of discrimination."); *Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147 (N.D.N.Y. 1997).

**B.    Even assuming *arguendo* that Plaintiffs could show discrimination on the sole basis of their disabilities, they fail to demonstrate the additional requirement of bad faith or gross misjudgment.**

Plaintiffs' Complaint alleges gross misjudgment[1] by DCPS without specific facts that support this allegation. Complaint, at ¶91, and generally. Assuming for purposes of this argument that all of the factual allegations in the Complaint were true, Plaintiffs still have not shown the *gross misjudgment* necessary to sustain a Section 504 claim. The laundry list of generalized failures contained in paragraphs 81 through 93 is belied by the specific allegations regarding the six named Plaintiffs, who are the proposed class representatives. A close look at these factual claims indicates that, even if DCPS may not have given Plaintiffs all that they might be entitled to under the IDEA, DCPS did give them some special education services. To summarize, Defendants reiterate what they said in their Opposition to Class Certification:

**Plaintiff DL**—He claims behavioral and emotional problems and speech and language delays. He alleges that defendants failed to "identify, locate, evaluate, or offer him special education services," but he also acknowledges in his Complaint that he has received evaluations and an IEP meeting. Complaint, at ¶¶ 5-15.

**Plaintiff JB**—He claims autism. He alleges that defendants failed to "identify, locate, and evaluate him in a timely and adequate manner" and failed to offer him special education services. But he acknowledges in his Complaint that his mother learned that special education services were available from DCPS. He received a speech evaluation

---

[1] Plaintiffs do not allege, and the facts do not demonstrate, bad faith on the part of Defendants. Thus, Defendants here address only the allegations of gross misjudgment.

and an occupational therapy evaluation from DCPS.  DCPS also drafted an IEP for special education services to be offered to him.  Complaint, at ¶¶16-29.

**Plaintiff OUL**—He claims delays in speech, cognitive, and gross motor development, physical difficulties in walking, and asthma. He alleges that defendants have failed to "identify, locate, evaluate or offer" him special education services. But he acknowledges in his Complaint that he began to receive occupational, physical and speech therapy for his disabilities, beginning at the age of two, provided by the D.C. Early Intervention Program of the D.C. Department of Human Services, an agency of defendant District of Columbia. He acknowledges attending a transition meeting with DCPS and has just turned three.  He is still receiving therapy. Complaint, at ¶¶ 30-39.

**Plaintiff DC**—She claims speech, language, physical and cognitive delays.  She alleges that defendants failed to "identify, locate, evaluate, or offer" her special education services. But she acknowledges in her Complaint that she has had "numerous evaluations that reveal potential disabilities."  She has just turned three.  Complaint, at ¶¶ 40-45.

**Plaintiff FD**—He suffers from a number of medical conditions, and claims significant delays in gross and fine motor and visual motor skills, as well as delays in visual-perceptual, problem-solving, and communication skills.  But he acknowledges in his Complaint that he received services at home through the Early Intervention program of DHS.  He also acknowledges that DCPS drafted an IEP for him requiring specialized instruction and occupational, physical and speech language therapy, as well as a nursing care plan, the services of a dedicated aide, an adaptive chair, and services in an accessible building to accommodate his walker.  He began receiving special education services in March 2005.  His claims appear to be limited to an alleged failure by DCPS to offer him

9

compensatory education for a period of time in which he did not receive appropriate instruction and also a failure to provide him with the special chair he needs to perform activities while seated. Complaint, at ¶¶ 46-54.

**Plaintiff TF**—He claims speech and language deficits. He alleges that defendants failed to evaluate him for special education services and to provide special education and compensatory education services. But he acknowledges in his Complaint that he received a private speech and language evaluation and that DCPS agreed to provide him with four sessions weekly of language services, which commenced in July of this year. Complaint, at ¶¶ 55-65.

Plainly, the alleged misjudgment articulated in Plaintiffs' Complaint does not rise to the level of *gross misjudgment.* DCPS simply did "not depart grossly from accepted standards among educational professionals." *Monahan v. Nebraska*, supra 687 F.2d at 1171.

## CONCLUSION

To conclude, Plaintiffs simply have not alleged facts sufficient to support a Section 504 violation. The Complaint does not set forth facts that show DCPS discriminated against Plaintiffs solely by reason of their disabilities. Further, Plaintiffs have not alleged that DCPS did anything more than fail to provide Plaintiffs with a complete FAPE—DCPS' conduct as alleged by Plaintiffs does not constitute bad faith or gross misjudgment. Accordingly, this Court should dismiss the Second Claim in the

Complaint, charging Section 504 violations, for failure to state a claim on which relief can be granted.

                                        Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

**/s/ Daniel A. Rezneck**
DANIEL A. REZNECK [#31625]
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614