UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DL,[1/] *et al.*, on behalf of themselves  )
and others similarly situated,          )
                                        )
                    Plaintiffs,         )
                                        )
            v.                          )        Civil Action No. 05-1437 (RCL)
                                        )
THE DISTRICT OF COLUMBIA, *et al.*       )
                                        )
                    Defendants.         )
_____ )

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION**

Defendants' opposition boils down to the argument that this case is "too complicated and varied" to support certification.  In reality, the case is straightforward.  Plaintiffs allege that defendants have failed to comply with the federal Child Find requirement and have thereby deprived disabled preschool children in the District of Columbia of their right to free appropriate public education ("FAPE") in violation of federal and District of Columbia law.

**ARGUMENT**

**I.    BYNUM SUPPORTS PLAINTIFFS' CASE**

Ignoring all of the cases cited in plaintiffs' opening brief, defendants rely almost exclusively on *Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003).  *See* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Class Certification ("Def. Opp.), pp. 1-4, 6-7, 9, 11-12, 14-15.  However, this Court granted certification in *Bynum* even though it was no less complex than this case and the class was no less varied than the class here.

Defendants argue that *Bynum* involved one legal theory and nearly identical facts for all the class members.  Def. Opp. 2, 15 ("The differences in *Bynum* merely related to the number of days each

_____
[1/] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

putative class member had been overdetained. Otherwise the claims of each class member were identical, factually and legally"). In fact, *Bynum* asserted two wide-ranging legal challenges to the operation of the District of Columbia Jail, namely, strip searches and overdetentions, involved partly overlapping Rule 23(b)(2) and (b)(3) classes based on violations of the Fourth, Fifth and Eighth Amendments of the Constitution, and sought both injunctive relief and damages. *See* Third Amended Complaint, paras. 2-11 (filed April 17, 2003)(attached as Pl. Ex. 10); *Bynum v. District of Columbia*, Class Certification Order (filed August 11, 2003)(attached as Pl. Ex. 11). *Bynum* also involved wide variation among the named plaintiffs and class members with respect to both the length and the cause of their overdetentions and the circumstances surrounding the strip searches. By contrast, plaintiffs' case here involves a single class, exclusively injunctive relief, and one central theory, namely, that defendants' failure to comply with the federal Child Find requirement deprives preschool children of their right to a free and appropriate public education. The variation in the treatment of class members here is no more varied than in *Bynum*.

Even if the law or facts in *Bynum* were simpler than those here, this would not prove that certification of the class in this case would be improper. This Court certified the class in *Bynum*. It did not establish any standards for class certification that are not satisfied in this case. To show that certification is not proper, defendants must show that the circumstances of this case are the same, or worse for certification in a case in which certification has been denied. As we show below, certification of the class is fully compatible with *Bynum* and the governing case law.

## II.    THE CLASS DEFINITION IN THE COMPLAINT IS PROPER

## A.    THE CLASS DEFINITION IS ADMINISTRATIVELY FEASIBLE

Defendants argue that no class exists because its members are not specifically "ascertainable." Def. Opp. 4-6. We note that defendants are relying on the violation of law alleged in this case –

2

namely, their failure to search for and find disabled preschool children – to argue that the class does not exist because the members are unknown.   By definition, the children in plaintiffs' class have not been identified by defendants and therefore are not specifically ascertainable.

Moreover, a class definition need only be "administratively feasible" to support certification.

As explained in *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998)):

> Although Rule 23 * * *does not specifically require plaintiffs to establish that a class exists, this is a common-sense requirement * * *.  The requirement that a class be clearly defined is designed primarily to help the trial court manage the class. * * * It is not designed to be a particularly stringent test, but plaintiffs must be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation. * * * In other words, the class must be 'sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member.'

*See also Bynum v. District of Columbia*, *supra*, 214 F.R.D. at 31.

This test is met here.  As a "common sense" matter, the children in plaintiffs' class are those three to five year olds not yet identified as disabled by the District of Columbia Public Schools ("DCPS") and not yet offered or receiving special education and related services from DCPS. Defendants know (or should know) the identity of most of the children in plaintiffs' class and certainly know where and how to find them.  Various District of Columbia agencies, including the Department of Human Services ("DHS"), the Department of Health ("DOH"), and the Child and Family Services Administration ("CFSA") maintain lists of preschool children who are disabled and receiving Supplemental Security Income ("SSI"), Early Intervention Services, Medicaid, or are otherwise at risk. Either these agencies do not share the information with DCPS or DCPS does not act on it.

Defendants' arguments on ascertainability also conflate the standards for Rule 23(b)(2) and Rule 23(b)(3) actions.  While it is critical that class members be specifically ascertainable in a Rule 23(b)(3) action for damages, principally because "notice" and specific proof of damages may be required, this is not necessary in Rule 23(b)(2) actions for injunctive relief.  The First Circuit explained

the reason why Rule 23(b)(2) classes need not be specifically ascertainable in *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972):

> The most basic error committed by the district court was in applying the criteria set out in subdivision (b) of Rule 23 * * *.  In holding that a class should not be certified because its members had not been sufficiently identified, * * * the Court applied standards applicable to a subdivision (b)(3) class rather than to a subdivision (b)(2) class.  Although notice to and therefore precise definition of the members of the suggested class are important to certification of a subdivision (b)(3) class, notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited.  In fact, the conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions in which the members of the class are often "incapable of specific enumeration."

*See also Baby Neal v. Casey*, 43 F.3d 48, 59 (3d Cir. 1994) ("the injunctive class provision was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons"); 2 Newberg on Class Actions, sec. 6-14 ("particularly because of the difference in notice requirements among the various class categories, and because of the potential need to distribute a recovery to individual class members in an action for damages, the degree of specificity or precision necessary in a class definition will vary depending on the type of class action sought to be maintained")(citing cases).[2]

Finally, if the Court determines that the class definition is not administratively feasible, the Court should not deny certification.  Instead, the Court should permit plaintiffs to modify their class definition.  *See, e.g., Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly").

---

[2] Thus, defendants reliance on *Williams v. Glickman*, D.D.C., Civ. Action No. 95-1149 (TAF), 1997 U.S. Dist. LEXIS 1683 (Feb. 14, 1997) is not apposite.  Def. Opp. 6.  The court in *Williams* explained that the case was "essentially a suit to recover damages, not to obtain injunctive relief."  *Id.* at 31.

**B.      THE CLASS  DEFINITION DOES NOT REQUIRE INDIVIDUALIZED HEARINGS**

Defendants argue that the class definition is flawed because individualized hearings will be needed to determine who is eligible for special education services.  Def. Opp. 4.

Courts in this and in numerous other jurisdictions have certified IDEA cases with definitions that required that class members be "eligible for services" or "disabled."  None of these courts have found that individualized hearings would be required.  For example, in *Lamont A v. Milwaukee Public Schools,* E.D. Wisc., Civil Action No. 01-C-0928 (Nov. 14, 2003) (attached as Ex. 9 to Plaintiffs' Memorandum of Law in Support of its Motion for Class Certification (hereafter "Pl. Mem.")), p. 4, which was partly a Child Find case, the court certified a class of  "those students eligible for special education services who are, have been or, will be either denied or delayed entry or participation in the processes which result in a meeting between the IEP team and parents * * *."  Even though the definition included the language "eligible for special education," the court did not find that the class definition that class members were not ascertainable or required individualize hearings.[3]

---

[3] *Accord Gomez v. Illinois State Board of Education*, 117 F.R.D. 394, 397 (N.D. Ill. 1987) (rejecting defendants' arguments that the class definition would require the court to make individual determinations and certifying a class of "[a]ll Spanish-speaking children who are or will be enrolled * * * or who are eligible or will be eligible to be enrolled * * *, and who should have been, should be, or who have been, assessed as limited English-proficient").  *See also Nelson v. District of Columbia,* D.D.C., Civil Action No. 00-2930 (GK) ( Order dated December 21, 2001) (attached as Pl. Ex. 12) (this Court certified a class of "[a]ll current and future students of the District of Columbia Public School System who, during the pendency of this Consent Decree, are disabled as defined by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and who have mobility impairments which prevent the unassisted use of stairs for rapid exit from school buildings"); *Gaskin v. Commonwealth of Pennsylvania*, E.D. Pa., Civil Action No. 94-4048, 1995 U.S. Dist. LEXIS 8136, * 3 (June 12, 1995) (the court certified a class of "all present and future school age students with disabilities in the Commonwealth * * * who have been denied the opportunity of receiving a free appropriate public education in regular classrooms with individualized supportive services, * * *individualized instruction, and accommodations they need to succeed in the regular classroom"); *Tonya K. v. Chicago Board of Education*, 551 F. Supp.1107, 1113 (N.D. Ill. 1982) (the court certified a class of "all handicapped children, ages 3 through 21 who a) have been excluded, are being, or will be excluded from the defendant Chicago Board of Education public schools because of their handicap* * *"); *Ray M. v. Board of Education*, 884 F. Supp. 696, 698 (E.D.N.Y. 1995) (the court certified a class of "all disabled preschool students living

(continued...)

5

The cases cited by defendants (Def. Opp. 4-6) are not to the contrary. For example, in *Mueller v. CBS*, 200 F.R.D. 227, 233-234 (W.D. Pa. 2001), the court denied certification to a class of employees in an ERISA case because "to establish class membership, a putative plaintiff would have to show that defendant violated his rights by selecting him for termination specifically to prevent him from acquiring benefits." The court ruled that the class definition would require it to hold "mini-hearings" to determine whether the reason an employee was terminated was for the purpose of preventing him from acquiring benefits or for some other reason. By contrast, plaintiffs here need not establish the reason that DCPS failed to "find" them.

In *Adashunas v. Negley*, 626 F.2d 600, 604-605 (7th Cir. 1980), the court denied certification to a class of learning disabled children for several reasons. With respect to the class definition, the court did not reject certification on the grounds that individualized hearings would be required. Rather, the court determined that a class did not exist because after the "comprehensive discovery undertaken and numerous affidavits filed, it does not appear that there are numerous identifiable children" with learning disabilities who were not already receiving special education services. *Id*. at 603. In addition, the evidence had shown that determining which child was "learning disabled" (as opposed to another disability or no disability) was "exceedingly difficult." *Id.* at 603-604. At the time of *Adashunas,* children ages three through five were rarely found eligible for special education as learning disabled because, until July 2005, federal law required a showing of a "severe discrepancy" between cognitive ability and achievement that was not the result of environmental factors or mental retardation. *Compare*

---

[3]/(...continued)

in New York City, ages three through five, who have been or will be referred * * * and for whom defendants failed to timely provide (i) an evaluation * * * [and] for whom defendants failed to consider, recommend and/or provide special education"); *Upper Valley Ass'n for Handicapped Citizens v. Mills*, 168 F.R.D. 167, 168-169 (D. Vt. 1996) (the court certified a subclass of "all children together with their parents or guardians who presently have or in the future will have a disability within the provisions of the IDEA"). Even though the above cases involved class definitions that required the class member to be eligible for services or disabled, like this case, none of them required individualized hearings.

34 C.F.R. 300.541 *with* 20 U.S.C. 1414(b)(6) (2005). Unlike *Adashunas*, the present case is not being

brought on behalf of children with any particular type of disability but rather for all preschool children

with any kind of disability who have not yet been "found." The class definition does not require any

specialized showing or comprehensive discovery.

Moreover, *Adashunas* is an anomalous case that departs from the majority of case law certifying

classes of disabled children. *See* cases cited in footnotes 3-5 above. Seventeen years after *Adashunas*,

the Seventh Circuit decided *Marie O v. Edgar*, 131 F.3d 610 (7th Cir. 1997), which is closely analogous

to the case at bar. *Marie O* upheld the grant of summary judgment in favor of a class of infants and

toddlers, some of whom were known, others were unknown, all of whom challenged defendants'

failures to identify, refer, evaluate and provide them with early intervention services under the IDEA.

*Id*. at 612-614. *Adashunas* posed no bar to certification in *Marie O* and should not do so here.

## C. FUTURE MEMBERS MAY BE INCLUDED IN PLAINTIFFS' CLASS

Defendants argue that because the proposed class definition includes future members, class

members cannot be ascertained. Def. Opp. 5. This Court and numerous courts in other jurisdictions

have certified classes of disabled children with future members.[4/]

Moreover, by their very nature, Rule 23(b)(2) actions which seek prospective injunctive relief

are future oriented. Consequently, courts routinely certify classes in Rule 23(b)(2) actions that include

future members. *Califano v. Yamasaki,* 442 U.S. 682, 689 (1979) (certified class includes present and

---

[4/] *See, e.g., Blackman v. Jones,* 185 F.R.D. 4, 5 (D.D.C. 1999) ("all children, now and in the future, who are entitled to have DCPS provide them with a free appropriate public education [FAPE] * * *"); *Nelson v. District of Columbia, supra,* ("All current and future students of [DCPS] who, * * * have mobility impairments"); *D.D. v. New York City Board of Education*, E.D.N.Y., Civ. Action No. 03-2489 (DGT), 2004 U.S. Dist. LEXIS 5189, * 23 (March 30, 2004) ("all present and future New York City preschool children***"); *Lamont A v. Milwaukee Public Schools, supra,* p. 4; *T.B. v. School District of Pennsylvania,* E.D. Pa., Civ. Action No. 97-5453, 1997 U.S. Dist. LEXIS 19300 * 10 (Dec. 1, 1997); *Upper Valley Ass'n for Handicapped Citizens v. Mills*, 168 F.R.D. 167, 168-169 (D. Vt. 1996); *Ray M. v. Board of Education, supra,* 884 F. Supp. at 698; *Gaskin v. Commonwealth of Pennsylvania, supra,* 1995 U.S. Dist. LEXIS 8136 * 3; *Evans v. Evans*, 818 F. Supp. 1215, 1219 (N.D. Ind. 1993); *Gomez v. Illinois State Board of Education, supra,* 117 F.R.D. at 397.

future members of "all individuals eligible for [old-age and survivors' benefits] whose benefits have

been or will be reduced or otherwise adjusted without prior notice and opportunity for a hearing");

*Tataronowicz v. Sullivan,* 959 F.2d 268, 272-273 (D.C. Cir. 1992) (discussing *Yamasaki* and stating

that " * * * the Court appeared to approve a class including persons who had not yet satisfied § 405(g)

but would ultimately do so * * *. This result is consistent with the practice of defining classes to

include persons who will in the future fit the class criteria"); *Lightfoot v. District of Columbia*, D.D.C.,

Civil Action No. 01-1484, 2004 U.S. Dist. LEXIS, 22158, * 11 (Jan. 14, 2004) ("future members does

not render the class definition so vague as to preclude certification") (citing cases); *see* 2 Newberg on

Class Actions, sec. 6-15 ("classes have been upheld as properly defined with definitions * * * of class

members of present and future generations, be they born or yet unborn")(citing cases).

## III.   THIS CASE SATISFIES THE RULE 23(a) REQUIREMENTS FOR A CLASS ACTION

## A.      THIS CASE SATISFIES THE NUMEROSITY REQUIREMENT

As plaintiffs explained in their opening brief, the numerosity requirement in Rule 23(a) is

satisfied by a showing of 40 or more members. *See Bynum*, *supra*, 214 F.R.D. at 32.

In their opposition, defendants argue that plaintiffs' numerosity contention is "mere

conjecture."[5] Def. Opp. 6.   However, plaintiffs relied on the most recent data available from the U.S.

Department of Education, Office of Special Education Programs, that demonstrates that the putative

class is well above 40.  *See* Pl. Mem. 4-7, Exs. 1-3.

Defendants do not dispute the accuracy of this data.  Instead, they argue that because the District

of Columbia has fewer children in the 3-5 age group than any other state and because the number of

children in the 3-5 age group dropped from 23,651 students in 1993 to 16,962 students in 2003,

plaintiffs' data are somehow not indicative of numerosity.  Def. Opp. 7-8.

---

[5] Plaintiffs note that defendants have taken inconsistent positions.  On the one hand, they argue that
the class is too broad, extending forever into the future (Def. Opp. 3-6), and, on the other hand, they
argue that plaintiffs' class is too small to meet the numerosity requirement (Def. Opp. 6-8).

Defendants' argument makes no sense.  It does not matter how many children resided in the District of Columbia in 1993.  What matters is that in 2003 the District of Columbia had 16,962 three to five year olds and only 1.77% , *i.e.*, 301, were receiving special education services.  The District of Columbia's percentage of preschool children receiving services is the lowest in the nation.  By contrast, the national average for three to five year olds receiving services was 5.78%.  If the District provided services to the three-to-five-year-old population that was at least equal to the national average, 980 children would have been identified, located, evaluated, and offered services in 2003, 674 more than the 301 children who received services that year.  *See* Pl. Mem., Exs. 1-3.

There is no reason to believe that the District of Columbia preschool population has less need for special education services than the nation on average, let alone the lowest need of any state in the nation.  In fact, the need in the District of Columbia is probably much higher than the national average because the percentage of older children (6-17 years old) receiving services in the District of Columbia is 16.31%, well above the national average of 11.46% for that age group.  Pl. Mem., Ex. 3.  Furthermore, the fact that only 1.77% of 3-5 year olds in the District of Columbia receive services, yet 16.31% of 6-17 year-olds in the District of Columbia receive services, means that hundreds of children with disabilities in the District of Columbia are not being identified until they are six years or older when they begin school.

Whether the size of the putative class is extrapolated based on 5.78% of 16,962 (the national average of the preschool population receiving services) or 16.31% of 16,962 (the percentage of 6 to 17 year-olds in the District of Columbia receiving services who probably should have been identified earlier when they were 3-5), the numerical figure is far above 40.

Information produced as a result of plaintiffs' FOIA requests to DCPS further establishes numerosity.  DCPS provided plaintiffs with a table entitled "DCPS Students, Age 3-5, Found Not

Eligible Since 1/01/2001 Who Were Given Services as a Result From Mediation, Settlement or Hearing." *See* Pl. Ex. 13 (attached). This list includes 47 preschool children for whom DCPS first denied services, and then months, sometimes years later, reversed its errors and identified them as disabled and needing services. All of these children are in plaintiffs' class because they were of preschool age and were not identified as needing services until much later. DCPS also provided plaintiffs with "Teacher Assistant Team - Early Intervention Process Since 01/01/2001," which includes a list of 1178 children preschool age or younger who since 2001 displayed learning problems prompting a teacher or school official to convene an "Initial TAT" Meeting." *See* Pl. Ex. 14 (attached). It is at present unclear whether these preschool children were ever further identified, evaluated, or found eligible for special education services. If not, these children would also be in plaintiffs' class. Many courts have determined that numerosity is satisfied in IDEA cases based on similar or less data than plaintiffs have presented here.[6/]

Moreover, as explained in plaintiffs' opening brief (pp. 6-7), the plaintiff class not only consists of current preschool children, but also of older children whom defendants failed to identify, locate, evaluate, and offer services when they were of preschool age, as well as future class members and

---

[6/] *See, e.g., Gaskin, v. Commonwealth of Pennsylvania, supra,* 1995 U.S. Dist. LEXIS 8136, * 7 ("It is, of course, not necessary for the plaintiffs to prove their case at the pleadings stage. If even a fraction of the proposed plaintiff class is not receiving a free appropriate public education because of the alleged failure of the Department of Education to monitor local school districts' compliance with the IDEA, the class would be 'so numerous that joinder of all members [would be] impracticable'"); *Upper Valley Ass 'n for Handicapped Citizens v. Mills, supra,* 168 F.R.D. at 169 (in an IDEA class action, numerosity had been met because "the failure to comply with the requirements of the IDEA necessarily affect[s] all children eligible for services under that statute * * *"); *T.B. v. Philadelphia School District, supra,* 1997 U.S. Dist. LEXIS 19300, * 9 (numerosity met where "plaintiff had asserted that an estimated 70 students are expelled from the District annually and an additional several hundred students are transferred to remedial schools. Most of these students have not been identified as having disabilities * * *"); *Gomez v. Illinois State Board of Education, supra,* 117 F.R.D. at 399 ( "The plaintiffs support their [numerosity] position by citing certain census figures * * * which indicate that more than 6,000 Spanish-speaking children have not been properly assessed as LEP children.* * * Even if the statistics were entirely unreliable * * * the Court would still find that the numerosity requirement is satisfied. A court is entitled to make a good faith estimate of the number of class members").

children less than three years old who face an imminent threat of harm because of defendants' unlawful policies and practices. Future members may be considered in determining numerosity in IDEA cases.[7]

Finally, if the Court determines that plaintiffs have not shown that the numerosity requirement is satisfied based on the present record, plaintiffs request discovery on numerosity to prove that the class size is at least several hundred. Potential class members include: (1) the preschool children tracked by the D.C. Department of Health who have birth difficulties; (2) the preschool children receiving SSI in the District of Columbia because of verifiable disabilities; (3) preschool children receiving Medicaid based on disability; (4) children in DCPS's pre-kindergarten and kindergarten programs for whom parents or teachers have requested screenings or evaluations and who have not yet received them; (5) preschool children formerly in the D.C. Department of Human Services's Early Intervention Program who are three or older and have not received services from DCPS; and (6) certain preschool children in the District of Columbia abuse and neglect system.

## B.    QUESTIONS OF LAW AND FACT ARE COMMON TO THE CLASS

Defendants' first argument against commonality is that plaintiffs have not shown that all class members share all claims and facts with each other. *See* Def. Opp. 10-11.

However, it is well-settled that plaintiffs need not have all claims and facts in common. Plaintiffs need only show that the named plaintiffs share "at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, *supra,* 43 F.3d at 56; *Bynum v. District of*

---

[7] *See, e.g., T.B. v. School District of Philadelphia*, *supra,* 1997 U.S. Dist. LEXIS 19300, * 10 (certifying class in "Child Find" case and stating that "[t]he court is satisfied that in this case, where the alleged system wide deficiencies affect hundreds of students, past, present, and future, the numerosity requirement is met"); *Gomez v. Illinois State Board of Education*, *supra,* 117 F.R.D. at 399 ("the Court also notes that numerosity is met where, as here, the class includes individuals who will become members in the future. As members *in futuro,* they are necessarily unidentifiable, and therefore joinder is clearly impracticable"). *See* 1 Newberg on Class Actions, sec. 3-07, at 36 ("special consideration applies to actions seeking declaratory or injunctive relief against conduct that is likely to cause future injuries * * *. In these cases, persons who might be injured in the future may be included in the class and are sometimes held to make joinder impracticable without regard to the number of persons already injured") (citing cases).

*Columbia, supra,* 214 F.R.D. at 33 (commonality is met "so long as a single aspect or feature of the claim is common to all proposed class members"); 1 Newberg on Class Actions, sec. 3-10, at 50 (commonality satisfied by a single common issue).

Plaintiffs have satisfied this test. As explained in detail in plaintiffs' opening brief (pp. 8-10), the named plaintiffs share all the legal claims and many important facts. Plaintiffs allege that defendants have violated the Child Find requirement set forth in the IDEA, the Rehabilitation Act, implementing regulations, and District of Columbia law as to all of them.

All named plaintiffs also have a common injury, namely the denial of a FAPE under the IDEA. Specifically, plaintiffs allege that as result of defendants' systemic and pervasive Child Find failures, they have been denied access to evaluations, special education and related services. Moreover, as plaintiffs explained in their opening brief (p. 10), where, as here, defendants have a policy, pattern, or practice that affects an entire group of persons, or where plaintiffs challenge defendants' systemic failure to comply with a statutory mandate, the commonality requisite is satisfied. *See, Baby Neal*, *supra,* 43 F.3d at 60-61 ("Plaintiffs are challenging common conditions and practices under a unitary regime. All the children in the class are subject to the risk that they will suffer from the same deprivations * * *. The commonality standard requires only that a putative class share either the injury or the immediate threat of being subject to the injury * * *. Here, systemwide deficiencies either violate class members' rights currently or subject them to the risk of such violation"); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (upholding certification in challenge to child welfare system where "plaintiffs allege that their injuries derive from a unitary course of conduct by a single system").

Defendants' other argument against commonality is that the "factual gravamens" and "legal theories" in plaintiffs' complaint are "multiplicitous" and "diverse." Def. Opp. 9-11. To the extent that defendants' objection is with the number of facts and legal claims alleged, defendants' argument is

frivolous. Many of the IDEA cases in which certification was granted involved similarly detailed complaints and several legal claims. *See* cases cited in pp. 5-8 above. Factual detail in a complaint does not defeat commonality. The number of legal claims is dictated by the number of statutes or other legal requirements that have been violated. In this case, the IDEA, Rehabilitation Act, federal implementing regulations, and District of Columbia law all impose a Child Find obligation on defendants. Defendants can move to dismiss to the extent they believe that there is no legal basis for a particular claim.[8/]

Defendants argue that plaintiffs allege too many unrelated legal theories by alleging that defendants failed to "identify," "locate," and "evaluate" them. Def. Opp. 1. However, "identify, locate, and evaluate" is the express language contained in the Child Find provision of the IDEA and constitutes one legal theory. *See* 20 U.S.C. 1412(a)(3).

Finally, factual variations among the class members do not defeat commonality. *Califano v. Yamasaki, supra,* 442 U.S. at 701 (upholding class action certification and stating that "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue"); *Baby Neal v. Casey, supra,* 43 F.3d at 57, 61 ("to the extent that the defendants assert that commonality requirements cannot be met in this case because of the individualized circumstances of the children, their argument has been squarely rejected by the Supreme Court [in *Califano v. Yamasaki*]. * * * The differing degrees and nature of the plaintiffs' injuries also do not preclude a finding of commonality"); *Pendleton v. Schlesinger*, 73 F.R.D. 506, 509 (D.D.C. 1977), affirmed, 628 F.2d 102 (D.C. Cir. 1980) ("[i]n passing on commonality, it is not appropriate to examine the likeness or relation of the several claims of all members of the class and their representatives. The only proper inquiry is, as the language [of Rule 23(a)(2)] suggests, whether there is some aspect or feature of the claims which is common to

---

[8/] On November 16, 2005, defendants moved to dismiss plaintiffs' claim under Section 504 of the Rehabilitation Act.

all"). Therefore, contrary to defendants' argument (Def. Opp. 10), individualized differences, such as whether some named plaintiffs have "emotional disabilities" and others have "sensory disabilities," are not relevant. *See also Tonya K. v. Chicago Board of Education*, 551 F. Supp.1107, 1111 (N.D. Ill. 1982) ("contrary to the position argued by the defendants, it is irrelevant for commonality purposes that class members are variously disabled* * *").

## C.    THE CLAIMS OF THE CLASS REPRESENTATIVES ARE TYPICAL OF THE CLAIMS OF THE CLASS

Plaintiffs' claims are typical if they are based on the "same legal theory" and arise from the same "practice" or "course of conduct." *Bynum v. District of Columbia, supra*, 214 F.R.D. at 34;   1 Newberg on Class Actions, sec. 3.13.

As explained in plaintiffs' opening brief  (pp. 11-13), plaintiffs' claims are based on the same legal theory, namely, that defendants have a  policy, pattern, and practice of failing to comply with the Child Find mandate, thereby depriving them of a FAPE under the IDEA, Rehabilitation Act and District of Columbia law.  Plaintiffs challenge the same "course of conduct," namely, defendants' systemic failures to comply with the Child Find requirements.

Defendants argue that the factual variations among the named plaintiffs defeat typicality.  Def. Opp. 11-15.  However, factual differences are of little consequence where plaintiffs assert the same legal theory and challenge the same course of conduct, as plaintiffs do here.  *See Bynum v. District of Columbia*, *supra,* 214 F.R.D. at 35 ("demonstrating typicality does not mean showing that there are no factual variations between the claims of the plaintiffs.  Rather, if the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct * * *"); *Baby Neal v. Casey, supra,* 43 F.3d at 58 ("factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the

same legal theory").[9/]

Moreover, plaintiffs demonstrated in their opening brief that the circumstances of the named plaintiffs, while not identical, are sufficiently similar to those of the class members and to one another to support typicality. *See* Pl. Mem. 11-13. The variation that exists reflects the pervasiveness of defendants' Child Find failings. Child Find comprises a series of requirements that defendants must satisfy to provide plaintiffs with access to FAPE. Specifically, as defendants' own documents show, Child Find requires that DCPS conduct outreach, initial intakes, screenings, referrals, evaluations, eligibility determinations, and an offer of services. *See* Pl. Ex. 15 ("DCPS Draft Child Find Document"). Defendants must complete this "pre-eligibility process" according to the time lines and standards set forth in the IDEA and District of Columbia law. Defendants make much of the fact that certain of the named plaintiffs are or were at different points in the pre-eligibility process. Def. Opp. 11-15. However, it is irrelevant whether some named plaintiffs received evaluations after months of delay and some named plaintiffs have received no evaluations at all. Both failures are violations of the Child Find duty, and the injury, namely the denial of FAPE, is the same for all.

Defendants point to other factual differences among the named plaintiffs that have little legal

---

[9/] *See also Petties v. District of Columbia*, 881 F. Supp. 63-64 (D.D.C. 1995) (court certified class of students for whom DCPS had failed to pay for services even though students were located in various private settings and required different types of services by private contractors); *Marisol A. by Forbes v. Giuliani*, *supra*, 929 F. Supp. at 690-691 ("The unique circumstances of each child do not compromise the common question of whether, as plaintiffs allege, defendants have injured all class members by failing to meet their federal and state law obligations. Indeed, as plaintiffs argue, the actions or inactions of defendants are not isolated or discrete instances but, rather, form a pattern of behavior that commonly affects all of the proposed class members"); *T. B. v. School District of Philadelphia, supra,* 1997 U.S. Dist. LEXIS 19300, * 14 ("Plaintiff T.B. and all the proposed class members challenge the same course of conduct by Defendants; the failure to implement and ensure a system to "find" them and to afford them the procedural protections to which they are entitled. At any one time, Plaintiffs may not suffer from the same deficiency, but they are alleged victims of the same systemic failures"); *D.D. v. New York City Board of Education*, *supra*, 2004 U.S. Dist. LEXIS 5189, * 29 ("individual variations in IEP-mandated placements and/or services cannot defeat the typicality prong where plaintiffs' primary claim is that defendants unlawfully failed to implement their IEPs in a timely manner").

importance. For example, defendants argue that plaintiffs' different "disabilities" defeat typicality. Def. Opp. 14. As explained above, the IDEA applies to all disabled children needing services in the District of Columbia, regardless of disability. Defendants also argue that plaintiffs' "injuries" and the "alleged deprivations * * * of duty" are too different to support typicality. *Ibid.* As explained above, the plaintiffs suffer the same primary "injury," namely the denial of a FAPE, and defendants violated the same "duty," namely, Child Find. Plaintiffs do not need to suffer identical injuries or assert identical deprivations of duty to be typical.[10]

Finally, because this is a Rule 23(b)(2) and not Rule 23 (b)(3) case, individual differences among plaintiffs are less important. Because plaintiffs do not seek monetary damages (see pp. 19-20 below), the class certification does not present the danger that the typicality requirement was intended to avoid, which is that the named plaintiffs would have "unique interests" that might motivate them to litigate against or settle with defendants to the prejudice of absentees. *See, e.g., Baby Neal v. Casey*, *supra,* 43 F.3d at 63 ("We emphasize that the individual differences in the children's circumstances might indeed militate against certification if the action [was] under 23(b)(3) because a court would need to evaluate those differences. * * * Indeed because this suit seeks only declaratory and injunctive relief, the named plaintiffs are simply not asserting any claims that are not also applicable to the absentees").

**D.    THE PLAINTIFFS WILL FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS**

As shown in plaintiffs' opening brief (pp. 13-14), plaintiffs meet the fourth requirement under

---

[10]*See Baby Neal v. Casey*, *supra*, 43 F.3d at 63 ("a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice. Plaintiffs * * * attack a systemic failure by DHS to provide a broad range of legally mandated services. At any one time, the plaintiffs do not suffer from precisely the same deficiency, but they are all alleged victims of the systemic failures"); *R. Ray M. v. Board of Education*, *supra,* 884 F. Supp. at 699 ("plaintiffs are entitled to a free preschool education * * * [and] claim that they have been deprived of this statutory right. * * * Although the claim of deprivation encompasses a number of categories of injury, the typicality requirement does not dictate that each named plaintiff * * * has suffered every type of harm alleged by the class"). *See also Marisol A. By Forbes v. Giuliani*, *supra*, 929 Supp. at 690-691.

Rule 23(a), that the named plaintiffs adequately represent the interests of the class.  Defendants

challenge the adequacy of plaintiffs' representations in two respects: (1) not all the named plaintiffs

have exhausted their administrative remedies; (2) the cases of those who have exhausted their

administrative remedies are now moot.  Def. Opp. 15-17.

First, it is well settled that the Court should not address the merits of the case, including

justiciability concerns, such as mootness, in determining class certification. *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 177 (1974)  (court should not "conduct a preliminary inquiry into the merits

of a suit in order to determine whether it may be maintained as a class action."); *Ortiz v. Fibreboard*

*Corp.*, 527 U.S. 815, 831 (1999)("But the class certification issues are * * * logically antecedent to

Article III concerns * * *.  Thus the issue about Rule 23 certification should be treated first").

Second, courts in this and other jurisdictions have recognized exceptions to the exhaustion

requirement in IDEA cases where exhaustion would be futile.  *Honig v. Doe*, 484 U.S. 305, 327 (1988)

("parents may bypass the administrative process where exhaustion would be futile or inadequate");

*Massey v. District of Columbia*, D.D.C., Civil Action No. 05-2033 (RCL), U.S. Dist. LEXIS 26468,

* 21 (November 3, 2005) (exhaustion of IDEA remedies were futile).  As will be explained in detail

in plaintiffs' opposition to Defendants' Motion for Dismissal of the Complaint, exhaustion would be

futile in this case.[11/]

Third, the District of Columbia Circuit has permitted class actions to proceed in civil rights

cases so long as at least one named plaintiff has exhausted his or her administrative remedies. *See, e.g.,*

*Foster v. Gueory*, 655 F.2d 1319, 1321-1322 (D.C. Cir. 1981) ("it is sufficient if at least one member

of the plaintiff class has met the filing prerequisite") (citing cases); *Hartman v. Duffy*, 88 F.3d 1232,

1235-1236 (D.C. Cir. 1997) ("The district court applied this court's doctrine of vicarious

_____

[11/] Plaintiffs' opposition to Defendants' Motion for Dismissal of the Complaint is due on December
10, 2005.

exhaustion--that exhaustion of administrative remedies by one member of the class satisfies the requirement for all others with sufficiently similar grievances").  As will be explained in plaintiffs' opposition to Defendants' Motion for Dismissal, several plaintiffs have exhausted their administrative remedies, including DL, who had a due process hearing on October 20, 2005.  *See* Pl. Ex. 16 ("October 28, 2005 Hearing Decision").

Finally, as to those plaintiffs who have exhausted their administrative remedies, their claims are not moot.  Contrary to defendants' representation, these individuals still have not received all of the injunctive and declaratory relief they sought though due process hearings.[12]

Even if the named plaintiffs' claims become moot through exhaustion of administrative remedies, these claims fall within the well-recognized exception that they are capable of repetition but evade review.  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980); *see* 1 Newberg on Class Actions, sec. 2-19, at 93 (exception to mootness applies where "challenged act or practice is of short duration, so that it is either a one shot matter incapable of repetition or one that is otherwise capable of repetition yet evading review because of its short life cycle")(citing cases).   In this case, plaintiffs' claims are inherently of short duration (*i.e.,* children ages 3 through 5 who have not been "found" by defendants).

Moreover, even if the named plaintiffs' individual claims are moot, the class action is not moot. *Sosna v. Iowa*, 419 U.S. 393, 399, 402 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant * * *.  The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the

---

[12] Specifically, even though TF has exhausted, DCPS has still failed to complete an evaluation. Complaint, para. 64.  Even though FD has exhausted, DCPS has failed to offer compensatory education and the chair he needs to complete seated activities. *Id.,* para. 54. To date, DCPS has also failed to implement fully DL's IEP and the October 28, 2005, Hearing Decision.

named plaintiff has become moot"); *Robidoux v. Delani*, 987 F.2d 931, 938-939 (2d Cir. 1993) (in

public assistance class action "where class claims are inherently transitory, the termination of a class

representative's claim does not moot the claims of the unnamed members * * *. [E]ven where the class

is not certified until after the claims of the individual class representative have become moot,

certification may be deemed to relate back to the filing of the complaint"); *T.B. v. School District of*

*Philadelphia*, *supra,* 1997 U.S. Dist. LEXIS 19300, * 5 (named plaintiffs may represent class of

disabled students in child find case even though their "substantive claims" have been resolved prior to

certification under exception to mootness).

**IV. THIS CASE SATISFIES RULE 23(b)(2) REQUIREMENTS FOR A CLASS ACTION**

     As explained in plaintiffs' opening brief (pp. 16-19), this case satisfies the Rule 23(b)(2)

requirements for a class action.  Defendants do not dispute that plaintiffs meet this standard.  Instead,

defendants argue that because paragraph 6 of plaintiffs' prayer for relief includes a request that

defendants reimburse them for expenditures for tuition and evaluations, plaintiffs are seeking

"monetary damages," which they argue defeats Rule 23(b)(2) certification.  Def. Opp. 17-18.

Defendants' argument fails for several reasons.

     First, paragraph 6 of plaintiffs' complaint is not a request for money damages.  Plaintiffs seek

restitution in the form of reimbursement for costs expended by parents to pay for evaluations or tuition.

It is hornbook law that damages and reimbursement are different under the IDEA.  The Supreme Court

in *Burlington v. Department of Education*, 471 U.S. 359 (1985), held that tuition reimbursement is

available under the IDEA and that hearing officers have the authority to award reimbursement.  The

Court, expressly rejecting the argument defendants make here, concluded that  reimbursement was not

"damages" because reimbursement "merely requires the Town to belatedly pay expenses that it should

have paid all along and would have borne in the first instance had it developed a proper IEP." *Id.* at

370-371. *See also Florence County School District Four v. Carter*, 510 U.S. 7 (1993) (reimbursement available as equitable remedy for private school placements).[13/]

Second, assuming *arguendo* that restitution is analogous to money damages, defendants' argument would still fail because the restitution request does not "predominate." *See Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997) ("Title VII and other civil rights class actions are frequently certified pursuant to Rule 23(b)(2). * * * Courts have generally permitted (b)(2) classes to recover monetary relief in addition to declaratory or injunctive relief, at least where the monetary relief does not predominate"); *Robinson v. Metro-North Commuter R.R.,* 267 F.3d 147, 164 (2d Cir. 2001) (Rule 23(b)(2) certification appropriate as long as "the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominate even though compensatory or punitive damages are also claimed").

The restitution request is a small part of this case. The heart of this case is injunctive and declaratory relief. Plaintiffs brought this case to remedy defendants' systemic failures to comply with the federal Child Find mandate. Plaintiffs seek to have the Court order defendants to find disabled preschool children in the District of Columbia and give them access to FAPE. Injunctive and declaratory relief will therefore be necessary if plaintiffs succeed on the merits. Although plaintiffs cannot provide a dollar amount for restitution at this time, plaintiffs estimate that their restitution request applies to a small fraction of the class because most individuals in the class simply do not know about the availability of evaluations and special education services and therefore have not paid out of

_____

[13/] As a result of *Burlington*, many Circuit courts have held that while restitution in the form of reimbursement is available under the IDEA, "money damages" are not. *See Sellers v. School Board of Mannassas*, 141 F.3d 524, 526-528 (4th Cir. 1998)("tort-like damages are simply inconsistent with IDEA's statutory scheme" which strongly favors provision or restoration of educational rights); *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996)(general or punitive damages are unavailable under the IDEA); *Charlie F. v. Board of Education of Skokie School District*, 98 F.3d 989, 991 (7th Cir. 1996)(the relief intended under the IDEA includes only prospective or restitutionary types of relief, not general damages).

pocket to provide them for their children.

This Court and courts in other jurisdictions have certified IDEA cases under Rule 23(b)(2), even though they include monetary claims that are much larger than what is requested here. For example, in *Petties v. District of Columbia, supra*, 881 F. Supp. at 64, this Court certified a class of children in a case involving the District's failure to pay the costs of special education placements and related services to private providers. In *D.D. v. New York City Board of Education*, *supra*, 2004 U.S. Dist. LEXIS 5189, * 40, the court determined that, even though plaintiffs sought compensatory and punitive damages,"[i]t is likely that plaintiffs would have brought this suit even in the absence of the potential for monetary recovery * * * as the class seeks a declaration that the defendants' policy, practice and custom of failing to immediately implement IEPs to New York City preschool children violate federal law."

Finally, if the concern is the manageability of the reimbursement claim, the Court may adopt the "hybrid" approach recognized in *Eubanks v. Billington*, *supra,* 110 F.3d at 96:

> [W]e conclude that when a (b)(2) class seeks monetary as well as injunctive or declaratory relief the district court may exercise discretion in at least two ways. * * * [T]he court may adopt a 'hybrid' approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief * * * [or] the court may conclude that the claims of particular class members are unique or sufficiently distinct from the claims of the class as a whole, and that opt-outs should be permitted * * *.

Alternatively, if the Court determines that the reimbursement claim would defeat certification, plaintiffs would drop this request because it is such a minor part of this case.

## V. CERTIFICATION IS NECESSARY

Defendants' last argument is that even if plaintiffs satisfy all the requirements for Rule 23(b)(2) certification, the Court should deny certification because it is "unnecessary." Def. Opp. 19-21.

First, whether a class action is "necessary" is not a Rule 23 factor. The Supreme Court and several circuit courts have rejected denial of certification based on need where Rule 23 criteria are

satisfied. *Califano v. Yamasaki*, *supra*, 442 US. at 700-701 (reversing district court's denial of class certification based on lack of need and holding that class action was permissible in the absence of a clear prohibition of class relief in the Social Security Act); *Geraghty v. United States Parole Commission*, 579 F.2d 238, 252 (3d Cir.), affirmed, 445 U.S. 388 (1980)(plaintiff in Rule 23(b)(2) action need not prove that a class is "necessary" or "appropriate" to obtain relief, only that prerequisites of Rule 23 are met). *See* Newberg on Class Actions, sec. 4-19, at 69-70 ("Circuits which have expressly considered this issue have rejected denial of certification based on need, if the Rule 23 requirements are otherwise met").

Second, the cases cited by defendants (Def. Opp. 19-21) are not apposite. In many of the cases cited, "necessity" was only one among several considerations relied upon to deny certification.[14] Many of the cases also involved a facial challenge to a statute or regulation, which is not the issue here. A ruling on the validity of a statute or regulation would apply to all persons affected whether or not a class action was certified. Thus, in *Women's Health Center of West County, Inc. v. Webster*, *supra*, plaintiffs sought class certification in a constitutional challenge to various provisions of state law respecting abortions. The court ruled that a ruling on the constitutionality of these laws would inure to the benefits of all individuals in the proposed classes whether or not the class was certified. 670 F. Supp. at 852. Similarly, in *Bradley v. Kissinger*, 418 F. Supp. 64, 67 (D.D.C. 1976), the issue was a straight legal question of statutory interpretation, namely whether the ADEA repealed the mandatory retirement age provision of the Foreign Service Act. In denying certification, Judge Gesell stated that his ruling was limited to the statutory question presented and that plaintiffs could later revisit the class certification question: "class action cannot be maintained on the question of statutory interpretation that

---

[14] *See, e.g., Women's Health Center of West County v. Webster,* 670 F. Supp. 845, 852 (E.D. Mo. 1987)(lack of numerosity); *Ad Hoc Committee to Save Homer G. Phillips Hospital v. City of St. Louis,* 143 F.R.D. 216, 221 (E.D. Mo. 1992) (lack of commonality and typicality); *Kow v. New York City Housing Authority*, 92 F.R.D. 73, 74 (S.D.N.Y. 1981)(lack of numerosity); *Bradley v. Kissinger*, 418 F. Supp. 64, 67 (D.D.C. 1976) (lack of numerosity and commonality).

is now presented.  Of course, this is without prejudice to a renewed motion at a later time or on the other issues in this case if they are to be litigated."  *Ibid*.[15/]

Third, it is not true, as defendants argue (Def. Opp. 19-21), that the full range of declaratory and injunctive relief could be awarded in the absence of class certification.  Plaintiffs' complaint seeks not only a declaration that certain laws were violated as to them, but requests prospective class-wide relief.  Plaintiffs seek an order requiring defendants, *inter alia*, to "develop and implement adequate and effective policies and procedures and a practical method of identifying locating and evaluating plaintiffs for special education and related services," "notify and inform parents and members of the computer that special education and related services are available," and "develop an adequate and effective intake and referral process."  Complaint, pp. 27-28.  It is axiomatic that "the nature of the violation determines the scope of the remedy."  *Rizzo v. Goode*, 423 U.S. 362, 378 (1976).  Therefore, findings of fact as to an entire class of children are likely to be more extensive than those as to six children and will support broader relief.  Therefore, absent class certification, the named plaintiffs may not be able to obtain the scope of the remedy requested on behalf of the class.[16/]

Fourth, class certification is necessary because the named plaintiffs' claims are inherently of short duration (*i.e.,* children ages three through five who have not been found by defendants) and will be mooted when defendants comply with their Child Find requirement as to each of them.[17/]  Without

---

[15/] *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 163-164 (D.D.C. 1976) is also irrelevant because the court was primarily concerned with discovery difficulties and manageability, which are not raised by defendants here.

[16/] *See, e.g., Mitchell v. Johnston*, 701 F.2d 337, 345  (5th Cir. 1983) ("It would indeed be difficult for the plaintiffs to obtain the requested relief absent certification of a class action.* * * [P]laintiffs would be unable to obtain classwide notice if no class action was certified since the other eligible recipients would not be parties to this litigation and would not be entitled to the benefits of the district court's judgment"); *Panter v. Chicago*, 1988 U.S. Dist. LEXIS 216, *4 (N.D. Ill. 1988)(dismissing claim for injunctive relief and stating that "there may be members of the purported class who would have standing for injunctive relief, but this case has not been certified as a class action so the unnamed class members' circumstances should not be considered").

[17/] Defendants argued in their Motion for Dismissal of Plaintiffs' Complaint (p. 9) that TF and FD's

(continued...)

23

class certification, the individual claims can become moot, and although capable of repetition will likely evade review. However, as we have seen above (pp. 20-21), if the case is certified, the court will still retain jurisdiction over the claims for injunctive or declaratory relief for the class. For this reason, courts have recognized the added importance of certifying cases, such as this case, where plaintiffs' claims are capable of repetition, yet are susceptible to evading review or are of short duration.[18]

Fifth, class certification is also necessary because, if plaintiffs prevail, class members can facilitate enforcement of the judgment. In the absence of class certification, persons who are not parties will not be entitled to the relief provided and will not be able to enforce the judgment. Thus, persons who are not parties may be required to bring new court actions to obtain relief. Certification permits the Court to monitor continued compliance with the judgment, as numerous class actions in this jurisdiction illustrate.[19]

Perhaps for this reason, this Court and other courts have recognized that class actions are particularly useful in civil rights and institutional cases seeking systemic relief. *Neal v. Moore*, D.D.C., Civil Action No. 93-2420 (RCL), 1994 U.S. Dist LEXIS 21339, * 56 ("The class action is intended to save resources; both the courts and the parties are able to litigate, in an economical manner, issues with

---

[17](...continued)
claims are moot because they are receiving some special education services.

[18] *See Geraghty v. United States Parole Commission*, *supra,* 445 U.S. at 398 ("When, however, there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class prior to expiration of the named plaintiff's personal claim"); *Stewart v. Winter*, 669 F.2d 328, 333-334 (5th Cir. 1982) (the "very prospect" that named plaintiffs would be released from county jail within less than year "supports class certification: while any individual prisoner's claim for injunctive relief is in danger of becoming moot before the court can grant relief, class certification ensures the presence of a continuing class of plaintiffs with a live dispute * * *."); *La Duke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985) (the fact of certification will preserve a class's standing for injunctive relief even after the named individual representatives have lost the required "personal stake"); 1 Newberg on Class Actions, sec. 4:19, n. 206 (citing cases in which courts have granted certification because of likelihood of mootness of individual claims).

[19] *See, e.g., Petties v. District of Columbia*, *supra*; *Blackman v. District of Columbia*, *supra*; *Nelson v. District of Columbia, supra*; *Salazar v. District of Columbia*, D.D.C., Civil Action No. 93-452 (GK) (class action of certain Medicaid applicants and recipients).

potential impact on a broad number of individuals. * * * Class status is well-suited to civil rights litigation"); 1 Newberg on Class Actions, sec. 5-2, at 24 ("as a practical matter, an individual action is just not as effective as a class action in enforcing a judgment for the plaintiffs. This factor would especially apply in suits seeking to change or remedy procedures or activities conducted by institutional defendants") (citing cases). Certification will allow the court to address the issues affecting disabled children and their parents efficiently and will avoid the likelihood of numerous piecemeal suits to challenge defendants' Child Find failures in the future.

## CONCLUSION

For the foregoing reasons and those stated in plaintiffs' initial brief, plaintiffs submit that the requirements of Rule 23(a) and Rule 23(b)(2) have been satisfied and that this action should be certified as a Rule 23(b)(2) class action.

Respectfully submitted,

_____
        /s/
BRUCE J. TERRIS (D.C. Bar No. 47126)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20005

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036

November 30, 2005