UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
DL,[1] *et al.*, on behalf of themselves       )
and others similarly situated,                      )
                                                              )
                        Plaintiffs,                        )
                                                              )
            v.                                                )            Civil Action No. 05-1437 (RCL)
                                                              )
THE DISTRICT OF COLUMBIA, *et al.*       )
                                                              )
                        Defendants.                      )
_____)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR DISMISSAL OF THE COMPLAINT**

Defendants have moved to dismiss the complaint on the grounds that none of the named

plaintiffs has exhausted his or her administrative remedies.   In support of their motion, defendants

rely exclusively on cases involving single plaintiffs who seek individual relief for violations of the

Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. 1400, *et seq*.   However, this

case is a class action alleging systemic violations of the IDEA for which no relief is available

administratively.  Because exhaustion of remedies would be futile and inadequate, it is not required.

Even if it were required, it is well-established that only one named plaintiff needs to exhaust his or

her administrative remedies in a class action, and three named plaintiffs have exhausted these

remedies in this case.   Defendants' motion to dismiss should therefore be denied.

---

[1]Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

# ARGUMENT

## I

### PLAINTIFFS WERE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES BECAUSE THESE REMEDIES WOULD HAVE BEEN FUTILE AND INADEQUATE

The Supreme Court and numerous courts of appeals have recognized that exhaustion of administrative remedies is excused in cases brought under the IDEA where doing so would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327 (1988) ("as we have previously noted, parents may bypass the administrative process where exhaustion would be futile or inadequate"); *Cox v. Jenkins,* 878 F.2d 414, 419 (D.C. Cir. 1989) (case dismissed for failure to exhaust because "no such showing has been made on the record of this case" that "exhaustion would have been futile") (citing cases excusing exhaustion because of futility).

Exhaustion is futile or inadequate in three circumstances: "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."[2/] *Murphy v. Arlington Central School District Board of Education*, 297 F.3d 195, 199 (2d Cir. 2002). *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88 (3d Cir. 1996); *Association for Community Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993); *Hoeft v. Tucson Unified School District,* 967 F.2d 1298,1303-1304 (9th Cir. 1992); *Heldman v.*

---

[2]  The three circumstances were first set forth in the House Report accompanying the 1986 amendments to the IDEA (H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)) and have since been adopted by numerous courts. *See* cases cited pp. 2-5, 11-17 below. *See also* 121 Cong. Rec. 37416 (1975) (remarks of Sen. Williams) ("exhaustion * * * should not be required * * * in cases where such exhaustion would be futile either as a legal or practical matter" ).  The Supreme Court relied on Senator Williams' remarks in *Honig v. Doe*, *supra,* 484 U.S. at 327, and *Smith v. Robinson*, 468 U.S. 992, 1014, n. 17 (1984).

*Sobol,* 962 F.2d 148, 158-159 (2d Cir. 1992). Although plaintiffs need show that only one of these circumstance applies, all three circumstances are present here.

## A.    RESORT TO DUE PROCESS PROCEDURES WOULD BE FUTILE

With respect to the first circumstance  -- whether resort to due process procedures would be futile -- the courts look to whether the purposes behind exhaustion would be furthered in the particular case. *McKart v. United States*, 395 U.S. 185, 193 (1969) ("Application of the [exhaustion] doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved"); *Christopher S v. Stanislaus County Office of Education,* 384 F.3d 1205, 1211 (9th Cir. 2004)("Here, we conclude that the pursuit of the IDEA due process remedies under the facts of the case will not further the general purpose of exhaustion and the congressional intent behind the administrative scheme"); *Taylor v. Vermont Department of Education*, 313 F.3d 768, 789 (2d Cir. 2002) ("In determining whether exhaustion * * * is required [in IDEA cases], courts generally focus on the role Congress has assigned to the relevant federal agency, and tailor the exhaustion rule to fit the particular administrative scheme * * *"); *Association for Community Living v. Romer*, *supra*, 992 F.2d at 1044 ("There may be cases where the purposes of the exhaustion doctrine would not be furthered by having even one plaintiff exhaust the IDEA's administrative remedies").

The Court of Appeals for the District of Columbia Circuit concluded in *Cox v. Jenkins* that exhaustion serves two primary purposes in IDEA cases (878 F.2d at 419):

> [T]wo sound policies support the requirement that plaintiffs exhaust administrative remedies before bringing federal actions. First, * * * [i]f the expert agency cannot resolve the problem finally, the record made in the administrative proceedings will be extremely helpful to the court, since the administrative agency will likely have probed the issue with more expertise than a federal court could bring * * *.  Second, the states as well as the federal government have an interest in providing a means whereby official abuse can be corrected without resort

3

to lengthy and costly trial.[3/]

As explained below, neither purpose would be furthered in this case and therefore resort to due process procedures would be futile.

### 1.    The Court Would Not Benefit from Agency Expertise

Agency expertise would provide no benefit to the judicial resolution of plaintiffs' claims. Plaintiffs did not bring this case to challenge an individual educational decision by the District of Columbia Public Schools ("DCPS"), such as whether the content of an Individual Education Program ("IEP") or a particular educational placement is appropriate. In such cases, agency expertise is important. *See, e.g., Polera v. Board of Education, supra,* 288 F.3d at 489 (because case challenged "content of IEPs" which had "failed to spell out the services to be provided," a hearing officer could have provided relief); *Moss v. Smith*, 794 F. Supp. 11, 13-14 (D.D.C. 1992) (hearing officer should have made educational placement decision for 1992-1993 school year).

In contrast to these cases, here plaintiffs claim that defendants have a policy, pattern, and practice of failing to provide hundreds of preschool children in the District of Columbia with a free and appropriate public education ("FAPE") because of their systemic failure to comply with the

---

[3]  Courts of appeals in other circuits have identified similar goals underlying the exhaustion requirement. *See, e.g.*, *Polera v. Board of Education,* 288 F.3d 478, 486 (2d Cir. 2002) (exhaustion "allows the educational system to bring its expertise to bear in correcting its own mistakes"); *Frazier v. Fair Haven School Committee*, 276 F.3d 52, 62 (1st Cir. 2002) ("administrative process, at the very least, should facilitate the development of a useful record and, thus, assist in the informed disposition of any subsequent litigation"); *Hoeft v. Tucson Unified School District, supra,* 967 F.2d at 1303 ("exhaustion* * * allows for the exercise of discretion and educational expertise by states and local agencies, affords full exploration of technical issues, furthers development of a complete factual record and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children").

federal and local Child Find requirements. In particular, plaintiffs allege that defendants lack "policies and procedures" on Child Find necessary to identify, locate, evaluate and offer special education services to all disabled preschool children. Complaint, paras. 82-93. Plaintiffs also allege that defendants' failures are "widespread and systemic" and affect all disabled preschool children equally and across-the-board, irrespective of a particular child's individual circumstances or educational needs. *Ibid.*

This case is therefore no different from the IDEA class actions where courts have excused exhaustion because agency expertise and an administrative record would be of no help. For example, in *J.S. v. Attica Central Schools,* 386 F.3d 107, 114-115 (2d Cir. 2004), the court excused exhaustion in an IDEA class action and explained:

> We acknowledge * * * the importance of exhaustion in 'textbook' cases presenting issues involving individual children where the remedy is best left to educational experts * * *. However, the complaint in this case does not allow us to conclude that this is such a 'textbook' case [of exhaustion] * * *. The district court made clear that the complaint does not challenge the content of [IEP's], but rather the School District's total failure to prepare and implement [IEP's].* * * Further, the complaint contains additional allegations of systemic problems, including failure to perform timely evaluations * * *; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner * * *.

The Second Circuit also noted that prior cases involving systemic IDEA violations had excused exhaustion because "plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court." *Id*. at 114. *See also McKart v. United States, supra,* 395 U.S. at 198-199 (exhaustion excused because question required no "particular expertise" of the board and because "judicial review would not be significantly aided by that kind of additional administrative decision"); *Christopher S v. Stanislaus County Office of Education, supra,* 384 F.3d at 1213-1214 ("we hold that students [in IDEA class action] sufficiently exhausted because they are

challenging a blanket decision to shorten the school day for autistic students,* * * and because determining whether lunch and recess may be counted as instructional time * * * does not require administrative expertise"); *W.B. v. Matula*, 67 F.3d 484, 496 (3d Cir. 1995) (exhaustion not needed in IDEA claim because factual record sufficiently developed for purposes of damages claim).

### 2.    Defendants Have Had Notice and Have Failed to Take Corrective Action

Resort to due process procedures would also be futile because it would not further the second purpose identified by the court of appeals in *Cox v. Jenkins*, providing DCPS with the opportunity to take corrective action. Defendants have had ample notice of their Child Find failures and have nevertheless failed to remedy the problem.

On numerous occasions, the U.S. Department of Education ("DOE"), Office of Special Education Programs ("OSEP"), has notified defendants of their systemic failures to comply with Child Find requirements, including, *inter alia*, the transitioning of toddlers from the District of Columbia Early Intervention Program ("DCEIP") to DCPS special education services when they turn three years old (referred to as "Early Childhood Transitioning"). For example, on June 18, 2002, OSEP issued the District of Columbia Monitoring Report. *See* Pl. Ex. 1. The Report concluded that defendants' actions with respect to Child Find and Early Childhood Transitioning were not in compliance with IDEA standards. *Id.*, pp. 4-5, 15-17. Since then, OSEP has informed DCPS on many occasions about their continued failures and non-compliance in these areas.[4] In addition, as

---

[4] *See, e.g.*, Letter from Troy R. Justesen, Acting Director, OSEP, to Clifford B. Janey, Superintendent, DCPS, Nov.2, 2005, p. 8 (failures regarding "Early Childhood Transition") and p. 13 (failures regarding "Preschool Performance Outcomes")(Pl. Ex. 2); Letter from Troy R. Justesen, Acting Director, OSEP, to Clifford B. Janey, Superintendent, DCPS, Aug. 5, 2005, p. 2 ("your failure to provide timely initial evaluations and reevaluations * * * resulted in the Department imposing the FFY 2004 Special Conditions")(Pl. Ex. 3); Letter from Patricia J. Guard, Acting Director, OSEP, to Clifford B. Janey, Superintendent, DCPS, Mar. 18, 2005, p. 9

explained below (pp.20-23), three of the six named plaintiffs expressly raised Child Find as a problem during the administrative process.  *See* Complaint, paras. 14, 52. 63.  Nevertheless, despite repeated notifications by OSEP, plaintiffs, and others, DCPS has failed to take corrective action.[5]

This Court has concluded that DCPS's failure to acknowledge errors and take corrective action once notified may excuse exhaustion.  In *Massey v. District of Columbia*, D.D.C., Civil Action No. 05-2033 (RCL), 2005 U.S. Dist. LEXIS 26468, at * 19-21 (Nov. 3, 2005), this Court excused exhaustion in an IDEA case:

> Because of DCPS's repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate.  DCPS has provided this Court no basis on which to infer it is taking seriously the Masseys' claims, nor to trust that it will be able to follow the IDEA in addressing those claims.  Tiffany was idle at home, awaiting an appropriate placement, for more than five weeks * * *.

> \*          \*          \*

> In this Court's opinion, the litany of DCPS failures reveals that it is apparently unable to follow statutory procedures in the first place.  Worse yet, DCPS appears to be incompetent to address, in the manner required by the IDEA, a parents' complaints about those failures. * * * This Court finds that plaintiffs have demonstrated that pursing their claim through the administrative process would be inadequate * * *.

*See also Christopher S v. Stanislaus County Office of Education*, *supra*, 384 F.3d at 1213

---

(failures regarding Early Childhood Transitioning)(Pl. Ex. 4); Letter from Stephanie Smith Lee, Director, Office of Special Education Programs, to Yvonne Gilchrist, Director, Department of Human Services, Dec. 22, 2004, pp. 4-7 (failures regarding Child Find), pp. 11-12 (failures regarding Early Childhood Transitioning)(Pl. Ex. 5).  In addition, on August 31, 2005, DCPS submitted its Annual State Application under Part B, in which it stated that it was not able to ensure that preschool children in the Early Intervention Program were being transitioned to special education services once they turned three years old.  *See* Pl. Ex. 6, p.3, #10.

[5] Prior to filing this lawsuit, on May 26, 2004, counsel for plaintiffs met with Dr. Ray Bryant, the then head of special education at DCPS, to discuss DCPS' Child Find failures.  Dr. Bryant stated that Child Find was not a problem in the District of Columbia.  *See* Affidavits of Jeffrey S. Gutman (para. 11), Margaret A. Kohn (para. 10), and Kathleen L. Millian (para. 8), attached as Plaintiffs' Exhibits 5, 7, and 8 to Plaintiffs' Motion for Class Certification.

(exhaustion excused "because Rita S's administrative complaint put the state on notice of the issue");

*D.D. v. New York City Board of Education*, E.D.N.Y., Civil Action No. 03-2489, 2004 U.S. Dist.

LEXIS 5189, at * 65 (Mar. 30, 2004) (exhaustion was futile because "defendants failed to

immediately implement the IEPs of two of the three named plaintiffs despite orders from the

impartial hearing officers who heard their cases"); *O.F. v. Chester Upland School District*, E.D. Pa.,

Civil Action No. 00-779, 2000 U.S. Dist. LEXIS 4962, at * 8 (Apr. 19, 2000) ("since the District has

a history of failing to comply with the requirements placed on it by the IDEA, the Plaintiff

understood that using administrative procedures would be futile").

As in *Massey* and the cases cited above, DCPS has received notice repeatedly about its Child

Find failures. Nevertheless, defendants have failed to take corrective action. Accordingly, resort

to due process procedures would be futile.

### 3.    Defendants Have Failed to Provide Notice of, or Access to, Administrative Due Process Procedures

Resort to due process hearing procedures has been deemed futile in IDEA class actions where

a school district has failed to inform class members of their administrative remedies. *Weixel v.*

*Board of Education of New York*, 287 F.3d 138, 149 (2d Cir. 2002) (exhaustion was excused because

"the parents have not been notified that such [IDEA] remedies were available to them"); *Mason by*

*& through Mason v. Schenectady City School District*, 879 F. Supp. 215, 219 (N.D.N.Y. 1993)

(excusing exhaustion because "Ms. Mason plainly states that the School District persistently failed

to inform her (and other parents) of the procedural protections as the IDEA requires"); *Ruth Anne*

*M. v. Alvin Independent School District*, 532 F. Supp. 460, 463 (S.D. Tex. 1982) (action not barred

for failure to exhaust where school district took no notice-triggering action with respect to

identification, evaluation or educational placement of student nor did it establish that plaintiffs

otherwise knew or should have known of availability of administrative remedies).

Similarly, resort to due process hearing procedures is deemed futile when school districts, through a policy or pattern of conduct, have prevented plaintiffs from pursuing administrative remedies. For example, in *Aaron v. Milwaukee Public Schools*, E.D. Wis., Case. No. 01-C-0928 (May 23, 2003) (Pl. Ex. 7), plaintiffs alleged that the school district violated Child Find and FAPE duties by failing to provide access to IDEA services. In its order regarding class certification, the court excused exhaustion on some of the claims (*id*. at * 4-5):

> The first area is where there is a failure in the process to get a student into services. Into this category, the court places the following alleged problems: (1) evaluations and (2) procedural rights in the IEP process. In these cases, the child is not yet in services and the parents or guardians may not be aware of the child's procedural rights, or how to invoke those rights.

*See also Quakenbush v. Johnson School District*, 716 F.2d 141, 147 (2d Cir. 1983) (exhaustion excused where school district had failed to identify and evaluate child for over two years because "through a policy of the school district she was deprived of the opportunity to take advantage of the procedural safeguards by the statute").

As in these cases, plaintiffs here claim that defendants have failed to inform them of special education services, much less the due process procedures available to remedy such failure. Plaintiffs allege that defendants have failed to "take basic steps" "to notify parents and other members of the public who work with preschool children that special education and related services are available through DCPS" (Complaint, para. 85), including failures to conduct public outreach, screenings, trainings, and other activities necessary to comply with their Child Find obligations (*id*., paras. 82-93). Defendants' failures do more than merely close the schoolhouse doors on disabled preschool children, which could potentially be reopened through administrative hearings. Defendants have systematically hidden the schoolhouse doors from view, as illustrated by the stark disparity between

the percentage of preschool children and older children receiving special education services in the District of Columbia.[6/]   Plaintiffs, parents, and their community partners are not informed of the availability of special education for preschool children or of the means to access needed services, let alone of due process hearing procedures to challenge special education decisions.  Plaintiffs cannot reasonably be expected to exhaust remedies for services about which, as a result of defendants' failures, they have no knowledge or access.

The facts regarding the named plaintiffs are illustrative.  At the time of the complaint, DCPS had taken no steps to "find" named plaintiff DC.  Complaint para. 43.  DCPS did not screen her for disabilities or inform her of the availability of special education and related services, let alone of due process hearing procedures. *Id*., paras. 43-45.  Similarly, defendants have not transitioned OUL from the DC Early Intervention Program (which provides service to disabled children until they turn three) to DCPS services, even though OUL is more than three years-old. *Id*., paras. 35-37.  DCPS has not taken steps to evaluate or determine his eligibility for special education. *Id.*, para. 37-39.

Accordingly, for all these reasons, resort to DCPS' administrative due process procedures is futile.

---

[6] As explained in Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Class Certification (pp. 10-13), the percentage of 3-5 year olds receiving services in the District of Columbia is 1.77%, well below the national average of 5.78% for that age group and the lowest in the nation.  However,  the percentage of 6-17 years olds receiving services in the District of Columbia is 16.31%, well above the national average of 11.46% for that age group.  The fact that only 1.77% of 3-5 year olds receive services, yet 16.31% of 6-17 year olds receive services in the District of Columbia indicates that children are not being identified, located, and evaluated until they are six years or older and begin school.

**B.    DEFENDANTS HAVE AN UNLAWFUL POLICY, PATTERN, AND PRACTICE**

The second circumstance in which courts have concluded that exhaustion may be excused as futile or inadequate in IDEA cases is when the school district or "agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir. 1987). *Beth V. by Yvonne V. v. Carroll, supra*, 87 F.3d at 89; *Pihl v. Massachusetts Dep't of Education,* 9 F.3d 184, 190-191 (1st Cir. 1993); *Hoeft v. Tucson Unified School District, supra*, 967 F.2d at 1303-1304; *Heldman v. Sobol, supra*, 962 F.2d at 159.

The rationale behind these cases is that when a policy or practice is at issue, agency expertise and an "administrative record would not be[] of substantial benefit" to the court. *J.S. v. Attica Central School District*, *supra,* 386 F.3d at 114. *See also Mrs. W. v. Tirozzi, supra,* 832 F.2d at 759 (excusing exhaustion and noting that "courts seldom defer to an administrative agency when the issue involved is purely a legal question not involving either administrative experience or expertise").

Another rationale is that hearing officers do not have the authority to remedy an unlawful policy or practice of general applicability. *Heldman v. Sobol*, *supra*, 962 F.2d at 159 (exhaustion futile because "neither the Commissioner nor the assigned hearing officer has the authority to alter the procedure"); *Lester H. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990) (exhaustion futile because "the issues involved here were purely legal, not factual, and that the administrative process was powerless to address the issue of whether compensatory education was appropriate"); *King v. Pine Plains Central School District*, 918 F. Supp. 772, 781 (S.D.N.Y. 1996) ("[hearing officers] generally do not have the authority to set new policies or to alter existing ones.  Therefore, requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or

11

procedure would be futile"); *Bray v. Hobart City School Corp.*, 818 F. Supp. 1226, 1233 (N.D. Ind. 1993) (hearing officer lacks authority " to determine that the application review process is illegal * * *. In addition, the hearing officer does not have the authority to determine that the defendants' conduct violated the IDEA or to order the defendants to conform their actions to the IDEA").

Plaintiffs allege that defendants have a policy and practice of general applicability that is contrary to law. Specifically, plaintiffs allege, under 42 U.S.C. 1983, that defendants have a "policy, pattern, and practice" of failing to comply with the express Child Find mandate set forth in the IDEA, Rehabilitation Act and District of Columbia law. Complaint, paras. 82-93. Plaintiffs' complaint sets forth in detail the numerous and systemic ways in which defendants have failed to comply with their Child Find and IDEA requirements. *Id.* Plaintiffs allege that defendants' Child Find failures are "numerous, knowing, pervasive and systemic," and have affected "hundreds of current and former preschool children * * *." *Id.*, para. 3.

Thus, this case is analogous to the cases that have determined that exhaustion is futile where an unlawful policy or practice of general applicability is at issue. For example, in *Mrs. W v. Tirozzi*, the Second Circuit excused exhaustion in a class action that challenged IDEA complaint resolution policies because plaintiffs' "complaint alleges a pattern and practice of systematic EHA violations unable to be addressed at the due process hearings provided in Connecticut. * * * [This] brings them within the situation described above in (2) -- a complaint alleging an agency adopted policy that is contrary to law." 832 F.2d at 757. In *J.S. v. Attica Central School*, which was also a class action challenging a policy, pattern and practice of IDEA violations, the Second Circuit explained that because "the [plaintiffs'] complaint is aimed at wrongdoing that is inherent in the program itself and not directed at any child, the allegations of systemic violations entitled them to exemption from the

exhaustion requirement." 386 F.3d at 113.  *See also J.G. v. Board of Education,* 830 F.2d 444, 446 (2d Cir. 1987) (exhaustion excused because plaintiffs alleged facial, systemic IDEA violations of failing to provide evaluations, notice and due process hearings to class members);  *New Mexico Association for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 851 (10th Cir. 1982) (exhaustion excused because "the gravamen of the Association's lawsuit is that the entire special education service system offered by the State is infirm"); *Monahan v. Nebraska*, 645 F.2d 592, 597 (8th Cir. 1981) (exhaustion excused because parents' claim was that the procedure respecting the state's review of hearing decision conflicted with federal law); *Michaels v. Mills*, W.D.N.Y., Civil Action No. 02-5555(E), 2004 U.S. Dist. LEXIS 6155, at * 19 (Feb.14, 2004) (exhaustion excused because "plaintiff has alleged that defendants have adopted a policy or practice of failing to provide sufficient programs for disabled students -- such as himself -- in WNY and that such policy or practice violates * * * the IDEA").  *See* also cases cited pp. 11-12 above.

## C.    RELIEF IS UNAVAILABLE THROUGH ADMINISTRATIVE PROCEDURES

The third circumstance excusing exhaustion in IDEA cases is whether it is "improbable that adequate relief can be obtained by pursuing administrative remedies." *Murphy v. Arlington Central School District Board of Education*, *supra*, 297 F.3d at 199.

Numerous cases have excused exhaustion based on this circumstance.  *See, e.g., Taylor v. Vermont Department of Education*, *supra*, 313 F.3d at 789 (exhaustion futile where "it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)"); *W.B. v. Matula*, *supra,* 67 F.3d at 496 ("where the relief sought in civil action is not available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused"); *J.G. v. Board of*

*Education, supra,* 830 F.2d at 447 ("exhaustion of administrative remedies is not required if adequate remedies are not reasonably available").

This exception is frequently applied in IDEA class actions "where plaintiffs allege structural or systemic failure and seek systemwide reforms." *Association for Community Living v. Romer, supra*, 992 F.2d at 1044. *See also Beth V. by Yvonne V. v. Carroll, supra*, 87 F.3d at 89 (exhaustion issue remanded because "plaintiffs' claim in this case is, in essence, that the safeguards * * * have failed on a system-wide basis"); *New Mexico Association for Retarded Citizens v. State of New Mexico, supra*, 678 F 2d at 489 ("The gravamen of the Association's lawsuit is that the entire special education service system offered by the State is infirm. The remedies offered at the administrative level * * * do not include a restructuring of the State's system to comply with Section 504 as sought by the class in this case"); *Jose P. v. Ambach*, 669 F.2d 865, 869-870 (2d Cir. 1982) (exhaustion of administrative remedies excused in complex class action alleging systematic IDEA violations because "individual appeal mechanism is inappropriate to resolve the systemic compliance issues"); *Monahan v. Nebraska, supra*, 645 F.2d at 597 (exhaustion excused because "Monahan's claim that the state procedure on its face conflicts with the Federal Act could not be addressed effectively by the state administrative process").

The reason for this exception is that administrative hearing officers have no authority or ability to remedy system-wide deficiencies. *Heldman v. Sobol, supra*, 962 F.2d at 159-160 (exhaustion futile because hearing officer did not have authority to alter statutorily prescribed selection procedures); *D.D. v. New York City Board of Education, supra*, 2004 U.S. Dist. LEXIS 5189, at * 65 (exhaustion excused because plaintiffs allege "a practice of systemic [IDEA] violations" and "a due process hearing officer lacks the authority to effectuate class action and

14

system-wide relief").

As in the foregoing cases, plaintiffs here are requesting systemic relief that cannot be provided by a hearing officer. Specifically, plaintiffs seek prospective injunctive relief and request that the Court order that defendants, *inter alia*, "develop and implement adequate and effective policies and procedures and a practical method of identifying, locating and evaluating" preschool children in the District of Columbia; "notify and inform parents and members of the community that special education and related services are available to parents"; and "develop an adequate and effective intake and referral process that accepts referrals from any individual." Complaint, pp. 27-28. A hearing officer has no authority to order DCPS to take these steps or to provide the other systemic relief requested in the Complaint.

Plaintiffs are also seeking a declaratory judgment that defendants have violated the Child Find and FAPE mandates set forth in the IDEA, Rehabilitation Act, and District of Columbia law. *See* Complaint, pp. 26-27. Hearing officers do not have authority to award declaratory relief. *B.D. v. DuBuono*, 130 F. Supp.2d 401, 429 (S.D.N.Y. 2001) ("plaintiffs are requesting declaratory relief under § 1983 in the form of a finding that defendants pursued a general policy of limiting ABA hours, in violation of IDEA. This is precisely the type of relief that is not available to plaintiffs under IDEA. They could not have exhausted this claim in a proceeding in front of an ALJ").

This case is closely analogous to *J.S. v. Attica Central Schools*. There, the Second Circuit upheld the district court's decision to excuse exhaustion in an IDEA case (386 F.3d at 115):

> [The] complaint does not challenge the content of IEP's, but rather the School District's total failure to prepare and implement an [IEP] * * *. [F]urther, the complaint contains additional allegations of systemic problems, including failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation and accommodation of otherwise disabled children; and failure to perform legally require responsibilities in a timely manner, including

providing and implementing transition plans, transitional support services, assistive technology services and declassification services for children with disabilities.

The court concluded that exhaustion in cases involving such "systemic problems" would be futile because these problems could not be remedied by "administrative bodies." *Id*. at 114.

Similarly, in *J.G. v. Board of Education,* the court upheld the grant of attorneys' fees to class counsel in an IDEA class action, despite the district's argument that plaintiffs had failed to exhaust administrative remedies. 830 F.2d at 447. The court excused exhaustion because "appellees' claims are systemic in that the wrongdoing complained of is inherent in the program for the education of handicapped children that appellants adopted and is not directed against any specific child." *Id*. at 446. These claims included, *inter alia*, "failing to evaluate students suspected of having a handicapping condition," failure to develop IEP's, and failure to inform parents of their rights. *Id.* at 447. The court observed that the settlement "went far beyond and accomplished much more than what could have been accomplished through administrative hearings." *Id. See also Mrs. W v. Tirozzi*, *supra*, 832 F.2d at 757 (in suit seeking an injunction requiring the agency to formulate adequate complaint procedures for IDEA complaints, exhaustion would be futile because hearing officers did not have authority to draft complaint procedures and the alleged systemic violations could not be cured by any means available to hearing officers).

## D.    DEFENDANTS' CASES ARE CONSISTENT WITH PLAINTIFFS' POSITION

The cases cited by defendants are consistent with the contention that exhaustion should be excused in this case. *See* Memorandum in Support of Defendants' Motion for Dismissal of the Complaint (hereafter "Def. Mem."), pp. 3-6. These cases simply restate the general rule that

16

exhaustion is required in individual IDEA challenges.[7]  Nearly all of the cases cited by defendants involve garden variety challenges to the content of an IEP or to a particular educational placement, and do not present any of the three circumstances excusing exhaustion described above (pp. 2-16). *See, e.g., Cummings v. District of Columbia*, D.D.C., Civil Action No. 04-1427, 2005 U.S. Dist. LEXIS 19976, at * 13 (Sept. 7, 2005) ("The basic problem is that plaintiffs do not agree with the IEP or the continued placement of MH at the MM Washington Center"); *Moss v Smith*, 794 F. Supp. 11, 13 (D.D.C. 1992) (exhaustion required because plaintiffs were seeking educational placement at the School for Contemporary Education).  As explained above, plaintiffs are not challenging individual IEP's or educational placement decisions.  They are challenging defendants' unlawful policy, pattern, and practice of failing to comply with the Child Find requirement as to all disabled preschool children in the District of Columbia.  Plaintiffs seek a systemic remedy that cannot be provided by DCPS hearing officers.

The principal case cited by defendants supports plaintiffs' position.  Defendants quote extensively from *McKart v. United States*, *supra* (Def. Mem. 5), in which the petitioner sought to avoid prosecution for failing to report for military service by relying on the defense that he was the "sole surviving son."  The Supreme Court determined that exhaustion was "subject to numerous exceptions" and that "application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." 395 U.S. at 193.  The Court held

---

[7] The exhaustion procedures of the IDEA are set forth in 20 U.S.C. 1415(f) - (i).  A party seeking to challenge an action taken by a school district may request a "due process" hearing.  20 U.S.C. 1415(f).  Any "party aggrieved" by the hearing officer's determination has the right to bring a civil action in federal court. 20 U.S.C. 1415(i).  The exhaustion requirement applies to persons who are bringing claims directly under the IDEA as well as to persons bringing claims under Section 1983, the Rehabilitation Act, and the due process clause, as plaintiffs do here.  20 U.S.C. 1415 (l).

that exhaustion should be excused because the case involved a question of statutory interpretation and, as such, required no "particular expertise on the appeal board's part" and that "judicial review would not be significantly aided by that kind of additional administrative decision." *Id*. at 197-199.

Accordingly, exhaustion should be excused in this case.

## II

## PLAINTIFFS HAVE EXHAUSTED ADMINISTRATIVE REMEDIES

### A.     ONLY ONE NAMED PLAINTIFF IN A CLASS ACTION IS REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

Even if exhaustion of administrative remedies is required, plaintiffs have satisfied this requirement.  The Court of Appeals for the District of Columbia Circuit has held that only one named plaintiff is required to exhaust his or her administrative remedies in civil rights class actions. In *Hartman v. Duffy*, 88 F.3d 1232, 1235 (D.C. Cir. 1996), the court of appeals upheld certification in a sex discrimination case, stating that "[t]he district court applied this court's doctrine of vicarious exhaustion--that exhaustion of administrative remedies by one member of the class satisfies the requirement for all others with sufficiently similar grievances* * *."

Similarly, in *Foster v. Gueory*, 655 F.2d 1319, 1321-1322 (D.C. Cir. 1981), the court of appeals determined that "each individual plaintiff in a Title VII class action suit need not individually file an EEOC complaint, but * * * it is sufficient if at least one member of the plaintiff class has met the filing prerequisite."  Although *Foster v. Gueory* was an employment discrimination case, the reasoning of the court shows why the same rule is applicable in IDEA and other civil rights class actions.  The court noted that "it would be wasteful, if not vain, for numerous employees, all with the same grievance" to exhaust administrative remedies.  655 F.2d at 1322.  The court explained that: "[i]n class actions this rationale is invariably applicable, for the very fact that the suit is a class action

18

means that the plaintiffs' claims not only share common questions of law and fact, but those claims are such that representative plaintiffs will fairly and adequately protect the interests of all plaintiffs of the class." *Ibid. Contreras v. Ridge*, 305 F. Supp. 2d 126, 132 (D.D.C. 2004) ("Exhaustion of administrative remedies by at least one named plaintiff is a condition precedent to sustaining a class action under Title VII"). *See also* 1 Newberg on Class Actions, sec. 5.15, p.18 ("when exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement independently")(discussing cases).

Several courts have applied this rationale in IDEA class actions. *See, e.g., Association for Community Living v. Romer*, *supra,* 992 F.2d at 1045 ("we do not hold that every plaintiff in a class action must exhaust the IDEA's administrative remedies. There may be cases where the purposes of the exhaustion doctrine would not be furthered by having even one plaintiff exhaust the IDEA's administrative remedies. Even where exhaustion is necessary, the exhaustion of a few representative claims may be sufficient"); *Hoeft v. Tucson Unified School District*, *supra,* 967 F.2d at 1309 ("The legislative history does suggest that the IDEA's exhaustion requirement applies differently to class actions than to suits brought by individuals, inasmuch as each class member need not exhaust before a suit is brought"); *see Adam v. North Carolina*, E.D.N.C., Civ. Action No. 96-554, 1997 U.S. Dist. LEXIS 17166, at * 13, n. 4 (Sept. 19, 1997) ("Instead, it is possible that only the named plaintiffs or even just one of the named plaintiffs need to exhaust in order to satisfy the jurisdictional requirement for this court").

The cases cited by defendants are not to the contrary. *See* Def. Mem. 3-6.  As explained above (pp. 16-18), the IDEA cases cited by defendants merely stand for the unexceptional

proposition that exhaustion is required before an individual plaintiff may challenge an action taken by a school district under the IDEA.[8]  Plaintiffs do not dispute that exhaustion is required in such individual cases.

Accordingly, the exhaustion requirement is met as long as one named plaintiff has exhausted his or her administrative remedies.

**B.    TWO NAMED PLAINTIFFS EXHAUSTED THEIR ADMINISTRATIVE REMEDIES AND A THIRD NAMED PLAINTIFF HAS PARTIALLY EXHAUSTED HIS ADMINISTRATIVE REMEDIES**

Two named plaintiffs, TF and DL, have completely exhausted their administrative remedies. In addition, named plaintiff FD has partially exhausted his administrative remedies.

**1.    TF Has Exhausted His Administrative Remedies**

As alleged in the complaint, TF had an administrative due process hearing and the hearing officer found in his favor. Complaint, para. 63.  Defendants argue that TF has failed to exhaust because "TF could have sought another due process hearing to enforce" the prior hearing decision. Def. Mem. 8.  Defendants misapprehend the law.  It is well-established that parents do not need to file for another due process hearing to enforce a prior hearing decision on which they prevailed.  In fact, in this Court, parents seeking to enforce a hearing decision are barred from requesting another due process hearing, but instead must request a remedy as part of *Blackman Jones v. District of Columbia*, D.D.C., Civil Action Nos. 97-1629, 97-2402, 98-3026, 98-2825 (PLF).  The court in *Blackman Jones* found the District of Columbia liable under the IDEA to a class of disabled students seeking to enforce hearing officer determinations and settlement agreements with which DCPS had

---

[8] The non-IDEA cases are also not helpful to defendants because they do nothing more than define the exhaustion doctrine.  *See* Def. Mem. 4-5; *Artis v. Greenspan*, 223 F. Supp. 2d 149, 153-154 (D.D.C. 2002); *Nicholas v. Board of Trustees*, 725 F. Supp. 568, 572 (D.D.C. 1989).

failed to comply in a timely manner. *Blackman v. Jones*, 185 F.R.D. 4, 5 (D.D.C. 1999). After entering summary judgment in favor of plaintiffs, the court appointed a special master to handle all subsequent cases seeking to enforce hearing officer determinations and DCPS settlement agreements until it could fashion a class-wide remedy. *Id* at 8-9.[9]

Other courts, including the Court of Appeals for the District of Columbia Circuit, have likewise concluded that further exhaustion is not required to enforce a hearing decision. *Cox v. Jenkins*, *supra*, 878 F.2d at 421 (distinguishing between actions to enforce hearing decisions and other IDEA actions and stating that "this case is not an enforcement action for which administrative exhaustion is inapplicable" because "the appellees were in fact seeking to challenge DCPS's August proposal regarding [educational placement]" rather than "to enforce the June [hearing officer's decision"). *See also Porter v. Board of Trustees*, 307 F.3d at 1069 (exhaustion futile because special education hearing office "lacks jurisdiction to enforce its own orders"); *Robinson v. Pinderhughes*, 810 F.2d 1270, 1275 (4th Cir. 1987) (no need to exhaust; plaintiff was entitled to bring enforcement action under 42 U.S.C.1983 because school system failed to implement favorable hearing decision within time limit); *R.B. v. Board of Education of New York*, 99 F. Supp. 2d 411, 415-416 (S.D.N.Y. 2000) (exhaustion not required to implement hearing officer's order); *SJB v. New York City Department of Education*, S.D.N.Y., Civ. Action No. 03-6653, 2004 U.S. Dist. LEXIS 13227, at * 18 (July 14, 2004) (parent may file 42 U.S.C. 1983 action in federal court and need not exhaust in order to enforce hearing officer decision) (citing cases); *Olson v. Robbinsdale Area Schools*, D.

---

[9] Thus, defendants are also wrong that a plaintiff must request a due process hearing to enforce a settlement agreement. *See* Def. Mem. 8 (discussing FD). As with the enforcement of hearing decisions, enforcement of settlement agreements are governed by *Blackman Jones v. District of Columbia*.

Minn., Civ. Action No. 04-2707, 2004 U.S. Dist. LEXIS 9858, at * 8-9 (May 28, 2004) (same).

Therefore, contrary to defendants' contention (Def. Mem. 8-9), TF could not, or at least need not, have requested another due process hearing to enforce the prior hearing officer's decision. Accordingly, TF has exhausted his administrative remedies.

### 2.    DL Has Exhausted His Administrative Remedies

DL has also exhausted his administrative remedies.  On October 20, 2005, a due process hearing was held.  *See* Pl. Ex. 8.  DL's due process hearing request identified Child Find as the primary violation.  *See* Pl. Ex. 9.  During the course of the hearing, the parties agreed to a remedy that was adopted by the hearing officer.  DCPS agreed to provide DL with compensatory education in the form of related services and extended school year program for one summer.  *See* Pl. Ex. 8, p. 2.  Therefore, DL has also exhausted his administrative remedies.

### 3.    FD Has Taken Reasonable Steps to Exhaust His Administrative Remedies

With respect to FD, defendants are correct that the March 2005 settlement agreement did not expressly address the Child Find violation.  *See* Def. Mem. 7.  However, DCPS settlement agreements do not typically include findings of liability or declare that violations of law have occurred.  Moreover, the fact that the agreement does not expressly address Child Find is of no consequence, since FD has taken reasonable steps to exhaust his administrative remedies.

FD's claims of Child Find violation were fully set forth in the amended hearing request, which alleged time line violations, failure to offer an appropriate education program, and failure to develop an appropriate IEP.  Pl. Ex. 10.  By presenting his claims in his hearing request, FD fully complied with the purposes of the exhaustion requirement because he gave "the agency an opportunity to correct its own errors" and did not "flout[] the administrative process." *Cox v.*

*Jenkins, supra*, 878 F.2d at 419 (explaining purposes behind exhaustion doctrine).

The fact that the compensatory education for FD, which is part of the remedy for the Child Find violations, has not yet been resolved is no fault of FD. On May 16, 2005, counsel for FD proposed a compensatory education remedy. *See* Pl. Ex. 11. Even though counsel has repeated this offer to defendants by letter, defendants have not responded. *See* Pl. Ex. 12. Nearly one year has passed since FD requested a hearing on this issue (Complaint, para. 52) and seven months have passed since FD's counsel proposed a compensatory education remedy (Pl. Ex.11). FD cannot be required to wait indefinitely.

FD's litigation of the Child Find violation and subsequent offers of settlement are sufficient to put DCPS on notice and satisfy the purpose behind the exhaustion requirement. *See Christopher S v. Stanislaus County Office of Education*, *supra*, 384 F.3d at 1211 (exhaustion excused "because Rita S's administrative complaint put the state on notice of the issue"); *Porter v. Board of Trustees*, *supra*, 307 F.3d at 1073-1074 (filing of CRP complaint sufficient "substitute for exhausting IDEA procedures" "where the only purposes served by exhaustion are to notify the state of local noncompliance and to afford it an opportunity to correct the problem"); *New Milford Board of Education v. Sergi*, Civ. No. 2-9408, 2003 U.S. App. LEXIS 18864, at * 3 (2d Cir. , Sept. 11, 2003) ("Perreault-Osborne's claim that Dalton was improperly exited from special education after a meeting on April 28, 2000, was placed before an administrative hearing officer and thus exhausted for jurisdictional purposes").

Accordingly, TF and DL have exhausted their administrative remedies and received favorable agency determinations. FD presented his Child Find claim before DCPS and has taken reasonable steps to exhaust his administrative remedies.

### III

### PLAINTIFFS' CLAIMS ARE NOT MOOT

Defendants argue that even if the FD and TF have exhausted their claims, they should be dismissed as moot because "both FD and TF by their own statements in the Complaint are receiving such [special education] services." Def. Mem. 9. Defendants are wrong.

First, the complaint makes clear that defendants did not provide services to FD and TF. With respect to FD, the complaint states that he has not received the seated chair he needs to do seated activity or compensatory education. Complaint, para. 54. With respect to TF, the complaint states that "over a year has passed since TF's kindergarten teacher recommend that he be evaluated for special education. DCPS has still not completed an evaluation of TF. TF is waiting for defendants to complete an evaluation, to determine his eligibility under the IDEA, to offer him special education and related services pursuant to an IEP * * * and to provide necessary compensatory education services." Complaint, para. 64.

Second, under defendants' logic, no plaintiff would ever have justiciable class claims, because either he has failed to exhaust his administrative remedies or, once he exhausts, his claims immediately become moot. Defendants' argument illustrates exactly why this case falls into the well-recognized exception to mootness, that the case is "capable of repetition yet evades review." *Gerstein v. Pugh,* 420 U.S. 103, 111, n. 11 (1975) ("This case belongs * * * to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. * * * [I]t is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim * * * [is therefore] 'capable of repetition, yet evading review'); *see* 1 Newberg on Class Actions, sec. 2-19, at p. 93 (exception to

24

mootness doctrine applies where "challenged act or practice is of short duration, so that it is either a one shot matter incapable of repetition or one that is otherwise capable of repetition yet evading review because of its short life cycle")(citing cases).  In this case, plaintiffs' claims are inherently of short duration  *i.e.,* children ages three through five who have not been "found" by defendants. Moreover, they are capable of repetition but will escape review if each plaintiff must exhaust administrative remedies and thereby be identified under the IDEA.

Finally, even if the named plaintiffs' individual claims become moot, this is of no consequence because the class action remains justiciable.  In *Sosna v. Iowa*, 419 U.S. 393, 402 (1975), the Supreme Court determined  that "[w]hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant * * *.  The controversy may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Accord Robidoux v. Delani*, 987 F.2d 931, 938-939 (2d Cir. 1993) (in public assistance class action, "where class claims are inherently transitory, the termination of a class representative's claim does not moot the claims of the unnamed members * * *. [E]ven where the class is not certified until after the claims of the individual class representative have become moot, certification may be deemed to relate back to the filing of the complaint"); *T.B. v. School District of Philadelphia*, E.D. Pa., Civil Action No. 97-5453, 1997 U.S. Dist. LEXIS 19300, at * 5 (Dec. 1, 1997) (named plaintiffs may represent class of disabled students in Child Find case, even though their "substantive claims" have been resolved prior to certification under exception to mootness rule).

Accordingly, plaintiffs' claims are not moot and the action should not be dismissed.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss should be denied. A proposed order is attached.

Respectfully submitted,

_____/s/_____

BRUCE J. TERRIS (D.C. Bar No. 47126)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100

_____/s/_____

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052

_____/s/_____

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036

December 12, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DL,  *et al.*, on behalf of themselves  )
and others similarly situated,          )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )        Civil Action No. 05-1437 (RCL)
                                        )
THE DISTRICT OF COLUMBIA, *et al.*      )
                                        )
                Defendants.             )
_____)

**ORDER**

Upon consideration of Defendants' Motion for Dismissal of the Complaint, plaintiffs'

opposition thereto, and the entire record herein, it is hereby

ORDERED, that Defendants' Motion for Dismissal of the Complaint is denied.


_____                    _____
DATE                               JUDGE ROYCE C. LAMBERTH