UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ) | | |
| DL,[1] *et al.*, on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-1437 (RCL) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL OF
PLAINTIFFS' CLAIM OF A VIOLATION OF SECTION 504
OF THE REHABILITATION ACT**

On November 16, 2005, defendants filed a Motion for Dismissal of Plaintiffs' Claim of a Violation of Section 504 of the Rehabilitation Act, seeking to dismiss plaintiffs' claim under Section 504 of the Rehabilitation Act pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Defendants' sole argument is that plaintiffs have failed to plead certain facts in support of their claim, including facts relating to a prima facie case, "bad faith," and "gross misjudgment." Defendants' argument fails because: (1) defendants misapprehend the pleading standard for Section 504 claims, and plaintiffs need not plead the facts defendants specify; (2) since plaintiffs are not seeking compensatory damages, plaintiffs need not plead "bad faith" or "gross misjudgment" or prove such facts even at trial; and (3) even if plaintiffs were required to pled "bad faith" and "gross misjudgment," they have done so. However, if this Court considers the complaint as deficient in any respect, plaintiffs request the opportunity to amend it after the Court rules on defendants' motion.

---

[1]Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

**ARGUMENT**

**I**

**DEFENDANTS MISAPPREHEND THE PLEADING STANDARD FOR
DISCRIMINATION CLAIMS**

A.    **PLAINTIFFS NEED NOT PLEAD A PRIMA FACIE CASE OR PLEAD THAT
THEY WERE TREATED DIFFERENTLY FROM SIMILARLY SITUATED
PERSONS TO SURVIVE A MOTION TO DISMISS**

Defendants argue that plaintiffs failed to allege a prima facie case of disability

discrimination, specifically the element "that they were treated differently from non-disabled

students" because of their disabilities. Memorandum in Support of Defendants' Motion for

Dismissal of Plaintiffs' Claim of a Violation of Section 504 of the Rehabilitation Act (hereafter

"Def. Mem."), pp. 6-7. As explained below (pp. 10-17), plaintiffs have pled a prima facie case.

However, even if they did not, this Court should not dismiss plaintiffs' Section 504 claim.

It is well-settled law that plaintiffs do not need to plead a prima facie case of discrimination

or that they were treated differently from similarly situated non-disabled children in order to survive

a motion to dismiss. The Supreme Court held in *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002),

that plaintiffs "need not plead a prima facie case of discrimination" and overturned the lower court's

dismissal of an employment discrimination case because the complainant had failed to allege

elements of a prima facie case. The Court explained that the prima facie case "is an evidentiary

standard, not a pleading requirement" and that "it should not be transposed into a rigid pleading

standard for discrimination cases." *Id*. at 510-512.

Although *Sweirkiewicz* was an age discrimination and not a disability discrimination case

under Section 504, the Court's reasoning applies with equal force here. Relying on Rule 8(a) of the

Federal Rules of Civil Procedure, the Court explained: "we hold that an employment discrimination

complaint need not include such facts [supporting a prima facie case]" and instead must contain only

"a short and plain statement of the claim showing that the pleader is entitled to relief." 534 U.S. at

508. The Court said that to do otherwise would impose a "heightened pleading standard" that

"conflicts with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must

include only a short and plain statement of the claim showing that the pleader is entitled to relief.

Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests. * * * Rule 8(a)'s simplified pleading standard applies to all civil

actions, with limited exceptions." *Id.* at 512-513 (internal quotations omitted).

Similarly, the Court of Appeals for the District of Columbia Circuit has held that plaintiffs

need not plead elements of the prima facie case in a discrimination suit or plead that they are

"treated differently from similarly situated plaintiffs," which is exactly what defendants allege that

plaintiffs have failed to plead here. *See* Def. Mem. 6. In *Sparrow v. United Air Lines, Inc.*, 216 F.3d

1111, 1114-1115, 1118 (D.C. Cir. 2000), the court of appeals reversed the district court's dismissal

of an employment discrimination case:

> It is also true that "to establish a prima facie case * * * [a plaintiff] must demonstrate
> (1) that she is a member of a protected class; (2) that she was similarly situated to an
> employee who was not a member of the protected class; and (3) that she and the similarly
> situated person were treated disparately."    * * * None of this, however, has to be
> accomplished in the complaint itself.    Under Federal Rule of Civil Procedure 8(a)(2), a
> claim need only contain "a short and plain statement of the claim showing that the pleader
> is entitled to relief."   Rule 8(e)(1) states that each averment of a pleading shall be simple,
> concise, and direct.  No technical forms of pleading or motions are required.
>
> *            *            *
>
> The grounds for the district court's dismissal of Sparrow's complaint are inconsistent
> with Rule 8 and *Conley* [ *v. Gibson*, 355 U.S. 41 (1957)].  Sparrow did not have to "make
> out a prima facie case of discrimination" in his complaint, specifically point to "similarly
> situated employees who were given preferential treatment over him," or offer "evidence to
> demonstrate that [United's] reasons for firing him were pretextual." * * * To the contrary,
> complaints need not plead law or match facts to every element of a legal theory.
>
> *            *            *
>
> Under Rule 8, all that is required is that the complaint give[] the defendants fair

notice of each claim and its basis. * * * We have no doubt that Sparrow's complaint did so.[2]

## B.    PLAINTIFFS WERE NOT REQUIRED TO PLEAD "BAD FAITH" OR "GROSS MISJUDGMENT" TO SURVIVE A MOTION TO DISMISS

Defendants also argue that plaintiffs have failed to plead "bad faith" or "gross misjudgement" and that therefore plaintiffs' claim should be dismissed. Def. Mem. 8. As explained below (pp. 10-17), plaintiffs have pled these facts. However, assuming *arguendo* that plaintiffs did not allege "bad faith" or "gross misjudgment," this would be of no consequence.

The cases on which defendants principally rely (Def. Mem. 5) make clear that "bad faith" or "gross misjudgment" is a "standard of liability" or an evidentiary standard rather than a pleading standard. Thus, in *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982), the court of appeals held that evidence of bad faith or gross misjudgment was required to hold a school district liable for damages under Section 504. Similarly, in *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35-36 (D.D.C. 2001), this Court dismissed plaintiffs' Section 504 claim only after a full trial on the merits because there was insufficient evidence of bad faith or gross misjudgment. *See id.* at 36 ("The testimony of Phillip's teachers demonstrated a good faith attempt on the part of DCPS * * *. [A]nd the weight of the expert testimony indicated that DCPS's psychologists exercised sound,

---

[2] Defendants cite *D.D. v. New York City Board of Education*, E.D.N.Y., Civil Action No. 03-2489 (DGT), 2004 U.S. Dist. LEXIS 5189, at * 60-61 (Mar. 30, 2004), to argue that in order for plaintiffs to show that they were discriminated against, they must allege that they were treated differently than non-disabled individuals. Def. Mem. 5. There, the court denied a Section 504 claim for damages because disabled preschool children had not shown that they were denied access to benefits that were also available to non-disabled preschool children. In doing so, the court departed from numerous Section 504 cases (*see* pp. 10-17 below) and committed clear legal error. The IDEA only applies to disabled children. Under the court's logic, no disabled preschool child could ever bring a Section 504 claim because non-disabled children are of course not entitled to protection under the IDEA.

Moreover, the IDEA is based on the provision of reasonable accommodation to disabled children, not protecting them from disparate treatment. Thus, Section 504, in the context of the IDEA, is designed to assure that disabled children get the special education services provided by the IDEA rather than that they receive the same services as non-disabled children. In any event, *Swierkiewicz v. Sorema* and *Sparrow v. United Air Lines* establish that pleading the elements of a prima facie case is not required.

reasoned professional judgment"). *See also Beth B. V. Mark Van Clay*, 211 F.Supp. 2d 1020, 1035 (N.D. Ill. 2001) (granting summary judgment after evidentiary hearing and stating that "no such proof here" of "bad faith" or "gross misjudgment"); *AW v. Marlborough Co.*, 25 F. Supp. 2d 27, 32 (D. Conn. 1998) (granting summary judgment because plaintiffs neither "demonstrated nor alleged that the defendants * * * acted with bad faith or gross misjudgment"); *Wenger v. Canastota Central School District,* 979 F.Supp. 147, 153 (N.D.N.Y. 1997) (granting summary judgment because the "record demonstrates" that "plaintiffs have not provided evidence that the Defendants acted with bad faith or gross misjudgment"); *Brantley v. Independent School District*, 936 F. Supp. 649, 657 (D. Minn. 1996) (granting summary judgment because "plaintiffs have not provided evidence that the District acted with bad faith or gross misjudgment").

Thus, even if "bad faith" or "gross misjudgment" were required to prove a Section 504 claim, it does not follow that the complaint must allege this standard. Indeed, it is axiomatic that plaintiffs "need not allege all that [they] must eventually prove." *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996). All that is required under Rule 8 is that the "complaint gives the defendants fair notice of each claim and its basis." *Id*. at 422. As described below (pp. 10-17), plaintiffs have met and exceeded this requirement.

## II

### PLAINTIFFS ARE NOT REQUIRED TO PLEAD OR PROVE "BAD FAITH" OR "GROSS MISMANAGEMENT" BECAUSE PLAINTIFFS DO NOT SEEK COMPENSATORY DAMAGES

Plaintiffs are also not required to plead or prove facts supporting "bad faith" or "gross misjudgment" because plaintiffs here do not seek compensatory damages, only injunctive and declaratory relief. *See* Complaint, pp. 26-28. As *Monahan* and its progeny make clear, the "bad faith" or "gross misjudgment" standard applies to Section 504 claims in which plaintiffs seek compensatory or other monetary damages.

In *Monahan*, the plaintiff's claim for prospective injunctive relief was held to be moot because the state law that plaintiff had challenged was amended prior to appeal.  687 F.2d at 1169. The plaintiff argued that even though his injunctive claim was moot, his claim for damages under the Rehabilitation Act was not.  *Ibid.*  It was in this context that the Eighth Circuit stated that liability under Section 504 required a showing of bad faith or gross misjudgment.  Specifically, the court held that it would "not read § 504 as creating general tort liability for educational malpractice." *Id.* at 1170.

Subsequent cases applying a "bad faith" and "gross misjudgment" standard to Section 504 claims in the IDEA context have limited the application to claims for damages, rather than prospective injunctive relief.  *See, e.g.*, *Marvin H. v. Austin Independent School District*, 714 F.2d 1348, 1356-1357 (5th Cir. 1983) (distinguishing between injunctive and compensatory relief under Section 504 and stating that a Section 504 claim for damages requires allegations of intentional discrimination); *Timms v. Metropolitan School District*, 722 F.2d 1310, 1318, n. 4 (7th Cir. 1983)("[S]ection 504 * * * has been held not to require proof of intentional discrimination except as a basis for compensatory relief"); *Robinson v. Kansas,* 117 F. Supp. 2d 1124, 1146 (D. Kan. 2000) (court denied motion to dismiss Section 504 claim, reasoning that "pleading bad faith * * * is not required because plaintiffs do not ask for compensatory damages"); *Butler v. South Glens Falls Central School District*, 106 F. Supp. 2d 414, 420-421 (N.D.N.Y. 2000)("A plaintiff aggrieved by a violation of § 504 of the Rehabilitation Act may be entitled to compensatory damages. * * * However, the plaintiff must demonstrate intentional discrimination. * * * [A] plaintiff must demonstrate that the school district acted with bad faith or gross misjudgment"); *Jonathan G. ex rel. Charlie Joe G. v. Caddo Parish School Board.*, 875 F. Supp. 352, 364  (W.D. La. 1994) ("Plaintiff is not entitled to monetary damages, in the form of compensatory education * * * as the result of the defendant's violation of Section 504.  Plaintiffs are, however, entitled to a declaratory judgment

recognizing that Jonathan was suspended for conduct related to his disability. * * * Declaratory and equitable relief of this nature * * * may be awarded for a violation of Section 504").

Furthermore, the principal cases on which defendants rely (Def. Mem. 4-6) likewise involve damage claims under Section 504. For example, *Walker v. District of Columbia, supra,* was an action solely to recover compensatory damages for certain IDEA failures. The court in *Walker* concluded after a full trial on the merits that school officials had acted in "good faith" and that DCPS's psychologist "exercised sound, reasoned professional judgment that in no way departed from the accepted standards of their profession." 157 F. Supp. 2d. at 36. Similarly, in *D.D. v. New York City Board of Education*, *supra*, at *51, the Rehabilitation Act claim involved money damages, and not injunctive or declaratory relief. *See also Sellers v. School Board of the City of Manassas*, 141 F.3d 524, 529 (4th Cir. 1998) (compensatory and punitive damages not recoverable under Section 504 because no facts supporting bad faith or gross misjudgment); *Todd v. Elkins School District No. 10*, 8th Cir., Civil Action No. 97-3258, 1998 U.S. App. LEXIS 8083, at * 4-5 (Apr. 17, 1998) (upholding dismissal of claim of damages under Section 504 and 42 U.S.C. 1983); *Hoekstra v. Independent School District*, 103 F.3d 624, 627 (8th Cir. 1996) (dismissing complaint, including ADA claim, where only relief requested was damages); *Searles v. Board of Education*, N.D.N.Y., Civil Action No. 96-0637, 1999 U.S. Dist. LEXIS 572 at * 13-14 (Jan. 9, 1999) (granting defendant's motion for summary judgment on Section 504 claim seeking damages); *Wenger v. Canastota Central School District*, *supra*, 979 F. Supp. at 153 (Section 504 claim for compensatory damages dismissed for failure to provide evidence of bad faith or gross misjudgment). None of the cases above determined that the bad-faith standard applies to actions where plaintiffs are seeking injunctive and declaratory relief, let alone the systemic and prospective injunctive relief that

plaintiffs seek here.[3]

The conclusion that the "bad faith" and "gross misjudgment" requirement applies only to damage claims under Section 504 is consistent with black-letter law establishing a higher legal standard for plaintiffs in civil rights cases who are seeking damages as opposed to equitable relief. In *Wood v. Strickland*, 420 U.S. 308, 322 (1975), the Supreme Court held that a "compensatory award [under 42 U.S.C. 1983] will be appropriate [against school officials] only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith." The Court noted, however, that "immunity from damages does not ordinarily bar equitable relief as well." *Id*. at 314.

In *Guardians Ass'n v. Civil Service Commission*, 463 U.S. 582, 607, n. 27 (1983), the Supreme Court held that proof of intentional discrimination was not required under Title VI of the Civil Rights Act of 1964, except as in cases involving compensatory relief. Mr. Justice White, announcing the judgment for the Court, distinguished between the showing required for damages as opposed to injunctive or declaratory relief and explained that, "in the absence of proof of discriminatory animus, compensatory relief should not be awarded to private Title VI plaintiffs; unless discriminatory intent is shown, declaratory and limited injunctive relief should be the only

---

[3]Defendants cite three cases (Def. Mem. 5) in which it is unclear from the opinions whether plaintiffs were seeking compensatory damages. *See R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 25-28 (D.D.C. 2003) (dismissing Section 504 claim on motion to dismiss); *Beth B. v. Clay, supra*, 211 F. Supp. 2d at 1035 (rejecting Section 504 claim on summary judgment because "no evidence of intentional discrimination"); *A.W. v. Marlborough Co., supra,* 25 F. Supp. 2d at 31-32 (rejecting Section 504 claim on summary judgment). Assuming they were cases seeking only injunctive relief, they would still be not apposite, because all three cases were individual IDEA cases challenging particular educational placements. Here, by contrast, plaintiffs are seeking systemic prospective injunctive relief to require defendants to comply with their Child Find requirement as to all preschool children in the District of Columbia.

available private remedies for Title VI violations." *Id.* at 584.[4/]    The Rehabilitation Act expressly

provides that the remedies set forth in Title VI of the Civil Rights Act of 1964 apply to actions under

Section 504 of the Rehabilitation Act.  29 U.S.C. 794a(a)(2).

Subsequently, several circuits, relying on *Guardians Ass'n v. Civil Service Commission*, have

determined that a higher standard of bad faith applies to damage actions under Section 504.  *See,*

*e.g., Wood v. President & Trustees of Spring Hill College*, 978 F.2d 1214, 1220 (11th Cir. 1992)

("plaintiffs who proceed under a theory of disparate treatment in section 504 actions must prove

intentional discrimination or bad faith in order to recover compensatory damages. * * * As a general

matter, good-faith attempts to pursue legitimate ends are not sufficient to support an award of

compensatory damages under section 504"); *Timms v. Metropolitan School District, supra,* 722 F.2d

at 1318, n. 4 (because "Title VI * * * has been held not to require proof of intentional discrimination

except as a basis for compensatory relief, * * * that standard may apply in claims under the

Rehabilitation Act. * * * Section 504 appears to parallel the EAHCA, under which damages are

available only in cases of bad faith or other exceptional circumstances"); *Marvin H. v. Austin*

*Independent School District, supra*, 714 F.2d at 1357 (in order to establish a damages claim, as

opposed to an injunctive or declaratory claim, under Section 504, "intentional discrimination" is

required).

Accordingly, plaintiffs are not required to plead or prove "bad faith" or "gross

misjudgment," because plaintiffs are not seeking damages, only injunctive and declaratory relief.

---

[4/] *Guardians Ass'n* was a fragmented decision.  Although Justice White announced the judgment and
delivered the opinion for the Court, there were three concurring opinions and two dissents.

**III**

**EVEN IF PLAINTIFFS WERE REQUIRED TO PLEAD A PRIMA FACIE CASE AND
ALLEGE "BAD FAITH" OR "GROSS MISJUDGMENT,"
PLAINTIFFS HAVE DONE SO**

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of handicap in programs receiving federal financial assistance. 29 U.S.C. 794(a). It provides, in relevant part: "no otherwise qualified individual with a disability in the United States * * * shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

In order to satisfy this standard in IDEA cases involving individual children, plaintiffs must show that "something more than a mere failure to provide the 'free and appropriate education' required by the [IDEA]'" has occurred. *Walker v. District of Columbia*, *supra*, 157 F. Supp. 2d at 35. Generally, plaintiffs who show either "bad faith or gross misjudgment" can prevail under Section 504 for IDEA violations. *Ibid.*

The principal case establishing this standard for Section 504 claims in the context of the IDEA is *Monahan v. Nebraska*, *supra*, 687 F.2d at 1171, which is relied on by defendants (Def. Mem. 5), as well as by courts in this jurisdiction. *See, e.g., Walker v. District of Columbia, supra*, 157 F. Supp. 2d at 34. *Monahan* involved an individual IDEA claimant who was seeking monetary damages under Section 504 for an inappropriate educational placement. The court of appeals set forth the following liability standard for damages claims under Section 504 of the Rehabilitation Act in IDEA cases (687 F.2d at 1170-1171):

> The language of [Section 504] is instructive. It prohibits exclusion, denial of benefits, and discrimination "solely by reason of . . . handicap." Manifestly, in order to show a violation of the Rehabilitation Act, something more than a mere failure to provide the "free appropriate education" required by EAHCA must be shown. The reference in the Rehabilitation Act to "discrimination" must require, we think, something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist. Experts often disagree on what the special needs of a handicapped child

are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently.

*     *     *

We do not read § 504 as creating general tort liability for educational malpractice, especially since the Supreme Court, in interpreting the EAHCA itself, has warned against a court's substitution of its own judgment for educational decisions made by state officials. We think, rather, that either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children. * * * The standard of liability we suggest here accomplishes this result and also reflects what we believe to be a proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504.

*     *     *

* * * For these reasons, the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

As *Monahan* makes clear, plaintiffs who prove "bad faith" or "gross misjudgment" are

entitled to prevail under Section 504.[5/] Plaintiffs may show "bad faith" or "gross misjudgment" by

---

[5/]Plaintiffs do not concede that they must show "bad faith" or "gross misjudgment" in order to prevail under Section 504 in a case such as this. As discussed in detail in Plaintiffs' Opposition to Defendants' [First] Motion for Dismissal of the Complaint (hereafter "Plaintiffs' Opposition"), this case does not involve a particular decision of an educational professional about the content of an Individual Education Program ("IEP") or educational placement. Instead, as discussed in Plaintiffs' Opposition and below (pp.12-17), plaintiffs allege the systemic failure of defendants to carry out their Child Find responsibilities under the IDEA, Rehabilitation Act and District of Columbia law. If defendants have failed to comply with the requirements of these statutes, injunctive relief is available without an additional showing of bad faith or gross misjudgment. Indeed, numerous cases involving systemic educational claims have not required plaintiffs to allege "bad faith" or "gross misjudgment" to state an injunctive or declaratory relief claim under the Rehabilitation Act. *See, e.g., Mrs. W. v Tirozzi,* 832 F.2d 748 (2d Cir. 1987)(holding that in systemic IDEA case, plaintiffs

11

demonstrating that "state officials involved have exercised professional judgment, in such a way as

not to depart grossly from accepted standards among educational professionals." Even if plaintiffs

were required to plead this evidence, not just present it at trial, plaintiffs here have met this standard

because they have pled numerous facts showing that defendants have "departed grossly" from

accepted Child Find practice and standards.

For example, plaintiffs allege that defendants' Child Find program "is grossly inadequate

when compared to Child Find programs in the rest of the country. According to recent statistics

maintained by the Department of Education, * * * the District of Columbia is ranked last among 50

states in the provision of special education services to preschool children, ages three through five."

Complaint, para. 91. Plaintiffs allege that "in contrast to other jurisdictions," defendants "have

failed to adopt Child Find policies," "do not have a Child Find Program," "an Office of Child Find,"

or a "budget for Child Find." *Id*., para. 83. Plaintiffs allege that, "in contrast to other jurisdictions,"

defendants have "failed to take basic steps to notify and locate disabled children," "failed to conduct

adequate public awareness," "do not have a method of identifying or locating children with

suspected disabilities," "do not have a method of screening or tracking children with disabilities,"

and "refuse to accept referrals from * * * persons with knowledge about children who may qualify."

*Id.*, paras. 85-86.

Plaintiffs also allege that defendants' Child Find failures are "more than a mere failure to

---

could pursue violations of the IDEA through the Rehabilitation Act); *New Mexico Association for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 853-855 (10th Cir. 1982)(no showing of disparate treatment or intention required to prevail under Rehabilitation Act in systemic case seeking injunctive relief); *A.A. v. Board of Education*, 196 F. Supp. 2d 259, 267-268 (E.D.N.Y. 2002) (although damages not available in IDEA class action "plaintiffs may pursue their Section 504 claims by way of an Ex parte Young action for prospective injunctive relief. Such relief includes claims for compensatory education") (citing cases).
    However, for purposes of this motion, since the complaint so clearly alleges "bad faith" and "gross management," there is no need for this Court to decide at this time whether plaintiffs will have to present such proof at trial.

provide a FAPE, * * * [such as] an incorrect evaluation, or a substantively faulty individualized education plan." *Monahan v. Nebraska, supra*, 687 F.2d at 1170.  For example, plaintiffs allege that defendants' "failures are numerous, knowing, pervasive and systemic."  Complaint, para 3. These include knowing failures "to evaluate," "to assess in all areas of suspected disabilities," " to convene timely IEP meetings," and "to offer appropriate placement." *Id.*, paras. 87-90.  Plaintiffs allege that defendants "systemic [failures] * * * have caused substantial harm to hundreds of young children in the District of Columbia * * *." *Id.*, para. 3.  They allege that "defendants actions amount to a policy, pattern, practice or custom that violates federal law and shows deliberate indifference to plaintiffs' federal rights." *Id.*, para. 93.

Numerous courts have upheld Section 504 claims based on similar or less egregious facts. For example, in *BD v. DeBuono*, 130 F. Supp. 2d 401, 407 (S.D.N.Y. 2001), which was an IDEA class action alleging an unlawful policy and practice, the court denied summary judgment to a school district where defendants had "unlawfully implemented policies to prevent, discourage and limit the use of 1:1 Applied Behavior Analysis Therapy ("ABA Therapy") in the treatment of autistic/PDD children, and that through those policies, plaintiffs BB, DD, MM, EE, SS, and PP and their families were deprived of appropriate ABA therapy and suffered injury as a result."  The court determined that the "knowledge on the part of [school] supervisors that 10 hours per week of ABA therapy was inadequate, followed by a decision of those supervisors to limit ABA therapy to 10 hours despite that knowledge, would be evidence tending to show gross negligence or reckless indifference on the part of the County Defendants." *Id*. at 439.  The court concluded that therefore "a finder of fact could conclude that defendants" behaved with bad faith or gross misjudgment. *Ibid*.

Similarly, several individual IDEA cases have held that a district's knowing failure to take corrective action supports a Section 504 claim under the Rehabilitation Act.  For example, in *R.B. ex rel. L.B. v. Board of Education*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000), the court denied

defendants' motion to dismiss plaintiffs' Section 504 claims in an individual IDEA case. The court

explained that the districts' repeated failures to implement an IEP could establish a Section 504

claim (*id*. at 419):

> Viewing the evidence in a light most favorable to plaintiff, she has sufficiently pled the requisite bad faith or gross misjudgment necessary for her ADA and Section 504 claims against defendants.

*        *        *

> Plaintiff has alleged sufficient facts to support her allegations of bad faith and gross misjudgment, including defendants' failure to take any action to implement L.B.'s 1996 IEP from May to September 1996; defendants' failure to promptly develop an ISP after L.B. was suspended; defendants' failure to timely implement the ISP; the hearing officer's finding that defendants' conduct was tantamount to "gross neglect, incompetence and ineptitude which has had a very serious . . . adverse impact on the student's chance at getting any kind of satisfactory education;" and defendants' failure to timely implement the order of the hearing officer.

In a subsequent case, *Gabel ex rel. L.G. v. Board of Education*, 368 F. Supp. 2d 313, 336

(S.D.N.Y. 2005), the court denied the district's motion for summary judgment on a Section 504

claim because of the school district's numerous and repeated failures to comply with the IDEA:

> L.G. is complaining she was denied access to appropriate programs. And while the District's actions are admittedly not quite as egregious as those of the board in R.B., plaintiffs have alleged gross negligence in the District's many failures regarding their daughter and have adduced enough evidence of same to get them to a jury. * * * L.G. had nowhere to go -- i.e., no access to school -- only days before the beginning of the 2000-01 school year, because the District failed, in many ways, to do its job. That her parents solved the problem and placed in her in what I have found (for IDEA purposes) to be an appropriate program does not absolve the District of liability for discrimination under Section 504.

Similarly, in *McKellar ex. rel. Kim Johnson v. Pennsylvania Department of Education*, E.D.

Pa, Civil Action No. 98-4161, 1999 U.S. Dist. LEXIS 2194, at * 13-14 (Feb. 23, 1999), the court

denied a motion to dismiss a Section 504 claim in an IDEA case because the defendants failed to

take steps to provide a FAPE, despite notice and repeated opportunities to do so. The court

explained: "plaintiffs allege that even after a due process hearing, where Michael's condition was

made clear, defendants did not provide Michael with an appropriate education and repeatedly

14

ignored IEPs that defendants themselves had drafted.  A jury could reasonably infer that the defendants were acting in bad faith and, thus, could reasonably infer that defendants discriminated against Michael because of his disability." *Ibid.  See also Butler v. South Glens Falls Central School District*, *supra*, 106 F. Supp. 2d at 421 (denying summary judgment on Section 504 claim for damages because plaintiff "presented evidence that the defendant school officials failed to develop IEP's for the plaintiff, developed several IEP's that were determined to be inappropriate for his educational needs, and failed to provide him with certain special education services. Such conduct, if proven, may constitute deliberate indifference to the strong likelihood that plaintiff's rights were being violated"); *Stephen L. v. Lemahieu*, D. Haw., Civ. Action No. 00-00338, 2000 U.S. Dist. LEXIS 22305, at * 13, n. 9 (Oct. 18, 2000) (denying defendants' motion to dismiss a Section 504 claim where the allegations included that "'Defendants and their employees would not, outside of the annual meeting, revise the IEP to adjust its goals and objectives in order to meet Aaron's then current performance and needs'" and "'[a]t home, Aaron was communicating much more effectively than he was at school,' this difference was frequently brought to the attention of school officials * * *.  Unfortunately, no significant changes in either personnel or curriculum occurred as a result of these at home vs. school performance disclosures to the school officials").

All of the cases above illustrate that a Section 504 claim is established where defendants knowingly and repeatedly fail to take corrective action and comply with the IDEA, such as by failing to develop IEP's, to implement IEP's, to follow hearing officer determinations, or to provide services and placement, despite notice and opportunity to do so.

Similarly, the named plaintiffs here have alleged that, despite numerous requests and clear notice to defendants, defendants repeatedly refused to comply with the Child Find and FAPE requirements to identify, locate, evaluate, or offer them services.  For example, defendants have known that TF needed speech and language therapy since at least September 2003.  Complaint, para.

56. At the time of the complaint in July 2005 (nearly two years later), defendants still had failed to evaluate TF or offer him special education services. *Id*., para. 64. This is so notwithstanding repeated requests by parents, counsel, and TF's teacher and despite the fact that his mother, "frustrated by DCPS's failure to evaluate," arranged for a private evaluation, which confirmed TF's need for services. *Id.*, paras. 56-63.

Similarly, "defendants have known that DL may have a qualifying disability since at least June 2004." Complaint, para. 9. Defendants were asked to attend an IEP meeting in June 2004, which "DCPS refused to attend." *Ibid.* During the spring of 2005, DL's mother, Tameka Ford, and advocate, Grace Dickerson, "contacted DCPS on numerous occasions to urge [defendants] to act on Ms. Ford's request for special education services. DCPS did not respond to these requests." *Id.*, paras. 12-14. At the time of the complaint, and over a year later, defendants still had not "evaluated" DL, found him eligible, or offered him a FAPE. *Id.*, paras. 14-15.

The same willful failures on the part of defendants are illustrated by the cases of named plaintiffs JB, OUL, and FD. JB is an autistic child, who "defendants have known since at least March 2004" has a qualifying disability. Complaint, para. 18. Defendants delayed for over a year before evaluating and finding JB eligible for special education, and then only after JB's parents paid for their own evaluation and after repeated and continuous requests by JB's parents and counsel. *Id*., paras. 20-29. OUL, a disabled child who walks with a walker, elbow, and knee braces, had a "transition meeting" that DCPS attended at Easter Seals in October 2004 to discuss how OUL could receive services from DCPS after he turned three. *Id.*, para. 35. At the time of the complaint, and nearly ten months later, OUL had not been evaluated or offered special education services by DCPS. *Id.*, paras. 37-39. Similarly, defendants delayed for over seven months before implementing an IEP for FD, who has prune belly syndrome, End Stage Regnal Disease, and walks with a walker. *Id.*, paras. 47-54. The IEP included a nursing plan and an adaptive chair (which required repeated

16

negotiation by counsel).  *Id.*, para. 51.  DCPS  implemented the IEP only after parents engaged

counsel and counsel requested a due process hearing on the issue.  *Id.*, paras. 51-54.

None of the cases of the named plaintiffs described above were "mere failure[s] to provide

the "free appropriate education" * * * [such as an] incorrect evaluation, or a substantively faulty

individualized education plan * * *."  *Monahan v. Nebraska, supra*, 687 F.2d at 1170.  To the

contrary, they illustrate defendants' knowing and continuous refusal for months, sometimes years,

to comply with the law, despite repeated notice and opportunity to do so.

Accordingly, even if plaintiffs were required to plead a prima facie case and "bad faith" and

"gross misjudgment" to support a Section 504 claim, plaintiffs have done so.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Dismissal of Plaintiffs' Claim of a

Violation of Section 504 of the Rehabilitation Act should be denied.  A proposed order is attached.

Respectfully submitted,

/s/
BRUCE J. TERRIS (D.C. Bar No. 47126)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20005

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036

December 16, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DL, *et al.*, on behalf of themselves and others similarly situated, | ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 05-1437 (RCL) |
|  | ) |  |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**ORDER**

Upon consideration of Defendants' Motion for Dismissal of Plaintiffs' Claim of a Violation

of Section 504 of the Rehabilitation Act, plaintiffs' opposition thereto, and the entire record herein,

it is hereby

**ORDERED,** that Defendants' Motion for Dismissal of Plaintiffs' Claim of a Violation of

Section 504 of the Rehabilitation Act is denied.

_____                    _____
DATE                                                             JUDGE ROYCE C. LAMBERTH
                                                                 UNITED STATES DISTRICT JUDGE