# Exhibit 1

2 of 2 DOCUMENTS

**MIKEISHA BLACKMAN, et al., Plaintiffs, v. DISTRICT OF COLUMBIA, et al., Defendants. JAMES JONES, et al., Plaintiffs, v. DISTRICT OF COLUMBIA, et al., Defendants. DOMINIQUE BARTON-SMITH, Plaintiff, v. DISTRICT OF COLUMBIA, et al., Defendants. JEREMIAH WILSON, et. al., Plaintiffs, v. ARLENE ACKERMAN, et al., Defendants.**

Civil Action No. 97-1629 (PLF), Civil Action No. 97-2402 (PLF), Civil Action No. 98-3026 (PLF), Civil Action No. 98-2825 (PLF)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

185 F.R.D. 4; 1999 U.S. Dist. LEXIS 2104

February 12, 1999, Decided
February 12, 1999, Filed

**LexisNexis(R) Headnotes**

**COUNSEL:** [**1] For Plaintiffs: Andrew L. Lipps, Elaine Kirby, Alisa Reff, Swidler & Berlin, Washington, DC.

For Plaintiffs: Tamara Lynn Seltzer, Bazelon Center for Mental Health Law, Washington, DC.

For Plaintiffs: Charles Anthony Moran, Washington, DC.

For Plaintiffs: Paul Leonard Chassy, Chassy & Chassy, Kensington, MD.

For Plaintiffs: Sunny Kim Dubois, University Legal Services, Inc., Protection & Advocacy Program, Washington, DC.

For Plaintiffs: Elliott Denbo Andalman, Daniel Adlai Katz, Andalman & Flynn, Silver Spring, MD.

For Plaintiffs: Margaret A. Kohn, Kohn & Einstein, Washington, DC.

For Defendants: Lisa Annette Bell, William Morel, David E. Edmonds, Office of Corporation Counsel, Washington, DC.

**JUDGES:** PAUL L. FRIEDMAN, United States District Judge.

**OPINIONBY:** PAUL L. FRIEDMAN

**OPINION:**

[*4] OPINION

These consolidated cases have been before the Court multiple times in recent months on [*5] motions for preliminary injunctions. After considering the circumstances that led plaintiffs to file the original Blackman and Curtis class action lawsuits and, of late, to file numerous individual motions for preliminary injunctions, the Court concludes that extraordinary circumstances [**2] exist to warrant appointment of Elise Baach as Special Master to facilitate resolution of each motion for preliminary injunction filed in these or related cases and, in the absence of a negotiated resolution, to provide the Court with a report and recommendation.

On May 14, 1998, the Court certified a class with two subclasses in the consolidated cases of Blackman v. District of Columbia, Civil Action No. 97-1629, and Curtis v. District of Columbia, Civil Action No. 97-2402. The first subclass, the Blackman subclass, is defined as "all persons now, and in the future, who present complaints to DCPS pursuant to Section 615(b)(6) of the [Individuals with Disabilities Education Act ("IDEA")] and whose requests for impartial due process hearings under Section 615(f) of the IDEA and D.C. Mun. Regs. Tit. 5, § 3021.5 are overdue according to those provisions; and their next friends." The second subclass,

Case 1:05-cv-01437-RCL    Document 29-2    Filed 01/03/2006    Page 3 of 7

Page 2
185 F.R.D. 4, *; 1999 U.S. Dist. LEXIS 2104, **

the Jones subclass, is defined as "all children, now and in the future, who are entitled to have DCPS provide them with a free appropriate public education [FAPE] and who have been denied same because DCPS either (a) has failed to fully and timely implement the determination [**3] of hearing officers, or (b) failed to fully and timely implement agreements concerning a child's identification, evaluation, educational placement, or provision of FAPE that DCPS has negotiated with the child's parent or educational advocate." See Order of May 14, 1998.

On June 3, 1998, the Court granted plaintiffs' motion for summary judgment as to liability. In finding that defendants were liable to members of the Blackman subclass for violating the IDEA, the Court noted that the "Office of Special Education Programs [at the United States Department of Education] found that as of January 5, 1998, 'of the 655 hearing requests that had been received, a final decision had not been issued within [the applicable 45-day deadline] in 482 cases.'" Opinion of June 3, 1998 at 13. The Court also cited specific instances in which children had been waiting over 100 days, in one case 177 days, to receive their due process hearings. With respect to defendants' liability to members of the Jones subclass, the Court noted the finding of the Office of Special Education Programs that "as of January 5, 1998, DCPS was delinquent in implementing the determinations of hearing officers in [**4] 332 cases." Id. at 14. The failure to timely implement the determinations of hearing officers and/or to timely implement agreements reached with parents is a violation of federal law and has resulted, among other things, in significant delays both in the placement of children in appropriate educational settings and in the provision of crucial medical services, delays that have the potential to permanently harm the physical and emotional health of many young children

Trial on the issue of class-wide remedy has been scheduled for June 8, 1999, and the parties also are engaged in mediation in a good faith effort to agree upon a mutually acceptable remedial plan. Pending resolution of the issue of remedy, however, there are children whose health, safety and well-being are threatened by the failure of DCPS to comply with its obligations under the IDEA. In some cases, plaintiffs maintain that the injury is irreparable and that immediate relief is required.

The Court has not issued a broad, class-wide preliminary injunction requiring the District to immediately comply with its statutory and regulatory obligations to all members of the class, in part because such a broad injunction would [**5] be ineffective and impractical: the District simply does not have the resources to come into immediate compliance. Instead the Court has operated on the assumption that in the most severe cases, where irreparable injury is threatened absent some action by the District, the District would not ignore its obligation to take such action even absent resolution of the claims of the class as a whole.

Unfortunately, the Court's confidence appears to have been misplaced. Over the past six weeks, four motions for preliminary injunction have been filed on behalf of a total [*6] of thirty-five children; three of those motions were filed within the space of two weeks in December. See Watkins v. Ackerman, Civil Action No. 98-3081; Barton-Smith v. District of Columbia, Civil Action No. 98-3026; Wilson v. Ackerman, Civil Action No. 98-2825; Blackman v. District of Columbia, Civil Action No. 97-1629. n1 In three of the four instances, the response of the District has not provided the Court with any faith that the District appreciates the magnitude of the problem and the dangers posed by their delay and recalcitrance.

- - - - - - - - - - - - - - - - - -

n1 In addition, another case was filed on behalf of another twenty-four individual children. See Epps v. District of Columbia, Civil Action No. 98-2845. It appears likely that a motion for preliminary injunction will be filed on behalf of at least some of the plaintiffs if their needs are not met.

- - - - - - - - - - - - - - - - - -

[**6]

In each case, plaintiffs' counsel who filed the motion has represented to the Court that she or he tried to negotiate a solution with the District of Columbia prior to filing a motion for preliminary injunction. For instance, in Wilson v. Ackerman, Civil Action No. 98-2825, plaintiffs filed their complaint on November 20, 1998. Plaintiffs' counsel indicated when she filed the complaint that she probably would file a motion for preliminary injunction. Prior to filing the motion, however, she attempted to speak with counsel for defendants to resolve the issues related to those plaintiffs. Plaintiffs' counsel filed a motion for preliminary injunction on behalf of four plaintiffs on December 23, 1998, a full month after the complaint was filed and after she was unable to get the District to provide relief for plaintiffs. More than one plaintiffs' counsel also have asserted that when they attempted to contact DCPS prior to filing a motion for a preliminary injunction, they could not even get the courtesy of a return phone call.

Even after motions for preliminary injunction have been filed, the District has remained unresponsive both to plaintiffs and to the Court. In one case, the [**7] District scheduled but failed to show up for a meeting with plaintiffs' counsel to discuss the possibility of

Case 1:05-cv-01437-RCL   Document 29-2   Filed 01/03/2006   Page 4 of 7

Page 3

185 F.R.D. 4, *; 1999 U.S. Dist. LEXIS 2104, **

resolving the pending motion for preliminary injunction. In another case, defendants' counsel failed to timely file an opposition to the motion for preliminary injunction. The opposition that finally was filed, six days late, was unsupported by any affidavits or documentary evidence. Defendants' counsel requested leave to late file affidavits in support of the opposition, but in spite of the fact that the Court granted leave, the affidavits never appeared. Moreover, in each of the three cases that now have been resolved, even after the filing of a motion for preliminary injunction, the Court has given defendants every opportunity to resolve plaintiffs' motions. In each case, after conducting a hearing on plaintiffs' motion, the Court has either reserved ruling or continued the hearing in order to give defendants the chance to meet with plaintiffs. In only one instance did the District avail itself of that opportunity. n2

> n2 Defendants appear to have successfully resolved the claims of plaintiffs in one of the motions for preliminary injunction. See Blackman v. District of Columbia, Civil Action No. 97-1629. Additionally, defendants resolved the claims of two plaintiffs to another motion but was unable to resolve the issues with respect to the remaining plaintiffs to that motion. See Wilson v. District of Columbia, Civil Action No. 98-2825.

[**8]

Meanwhile, as the District fails to provide services, fails to return phone calls and fails to meet the Court's deadlines, time continues to pass, aggravating the threat of injury to children. In most of these cases, the determination of whether plaintiffs are entitled to the immediate injunctive relief they seek turns on whether they can establish a threat of irreparable injury. After all, the Court already has found defendants liable, and plaintiffs' likelihood of success on the merits therefore cannot legitimately be contested. But the task of determining which children are facing the threat of immediate irreparable harm is often difficult and requires a detailed, fact-specific inquiry.

The District cannot seriously dispute that, at least in some cases, children are facing a threat of immediate irreparable injury. When the health of a three and a half year old child depends on the regular administration of her medication and catheterization and her health can be adversely affected for the rest of her life if the medication and catheterization are not regularly provided, [*7] and when her mother has appeared before a hearing officer and obtained a determination that the District must [**9] insure that the child's medication is being administered and she is being catheterized, and when the child returns home with her medication and catheterization kit untouched, the District is hard-pressed to argue that there is no irreparable injury. See Barton Smith v. District of Columbia, Civil Action No. 98-3026, Opinion of December 23, 1998 (D.D.C.). That situation simply is intolerable. Unfortunately, even in a case so dire, the District refused to recognize the harm that was threatened by its flagrant violation of the IDEA. It refused to provide adequate assurances to plaintiff, maintained that meeting its statutory obligations was too costly and forced the Court to issue a preliminary injunction.

In cases that are less straightforward, the Court has been obligated to wade through the detailed circumstances of each child's situation to determine the exigency of the situation. Whether immediate and irreparable injury is threatened when an individual special education student is being denied his or her statutory right to a timely due process hearing or timely implementation of the determination of a hearing officer necessarily depends on the facts and circumstances of the individual [**10] case. The Court simply cannot continue conducting such a detailed analysis of the factual circumstances of each case, especially if motions for preliminary injunction continue to be filed at the current rate. Until such time as the issue of class-wide remedy is resolved, there must be some alternative mechanism in place through which plaintiffs can compel the District of Columbia to address those cases in which serious and irreparable injury is threatened.

In view of these circumstances, the Court finds that appointment of a Special Master for the limited purposes of assisting the Court in resolving the requests for immediate injunctive relief is warranted. The Court is not unmindful that "reference to a master shall be the exception and not the rule." *Rule 53(b), Fed. R. Civ. P.* See *La Buy v. Howes Leather Co., 352 U.S. 249, 1 L. Ed. 2d 290, 77 S. Ct. 309 (1957); United States v. Microsoft Corp., 331 U.S. App. D.C. 121, 147 F.3d 935, 953 (D.C. Cir. 1998).* This case presents extraordinary circumstances. First, defendants' liability already has been established and the District cannot plausibly argue that it currently is in compliance with the IDEA. This situation therefore [**11] is analogous to cases in which special masters have been appointed to supervise implementation of court orders or compliance agreements. See *Apex Fountain Sales, Inc. v. Kleinfeld, 818 F.2d 1089, 1092 (3d Cir. 1987)* (citing cases where appointment of special master was appropriate).

Second, the District consistently has failed to recognize the serious physical, emotional and educational difficulties that individual plaintiffs face as a result of defendants' failure to comply with the IDEA.

Case 1:05-cv-01437-RCL    Document 29-2    Filed 01/03/2006    Page 5 of 7

185 F.R.D. 4, *; 1999 U.S. Dist. LEXIS 2104, **

Page 4

The physical health of two of the children who ultimately prevailed on their motions for preliminary injunction has been seriously jeopardized by the District's refusal to recognize its statutory obligations. The District, in violation of the hearing officer's order, failed to provide one child with her medication and catheterization, placing her at serious risk of urinary tract or kidney infections and failed to provide the other child with occupational and physical therapy. See Barton Smith v. District of Columbia, Civil Action No. 98-3026, Opinion of December 23, 1998, at 7; Wilson v. Ackerman, Civil Action No. 98-2325, Opinion of January 29, 1999, at 9. Moreover, the failure of the [**12] District to comply with its statutory obligations and provide appropriate educational placements can have a devastating impact on a child's well-being. "Any agency whose appointed mission is to provide for the education and welfare of children fails that mission when it loses sight of the fact that, to a young, growing person, time is critical. While a few moths in the life of an adult may be insignificant, at the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our plaintiff, a few months can make a world of difference in the life of that child." Foster v. District of Columbia, Civil Action No. 82-0095, Memorandum Opinion and Order of February 22, 1982, at 4 (D.D.C.) (J.H. Green, J.). Even faced with these serious threats of injury and even when given ample opportunity to find an amicable resolution to these [*8] cases, the District has simply failed on numerous occasions to respond to plaintiffs.

Third, time is of the essence with these motions. When the physical or emotional health and safety of a child is threatened, the matter cannot wait for the Court's calendar to clear. The District [**13] contends that it "is willing and able to resolve these claims expeditiously without judicial intervention," that it has put in place a structure to resolve claims quickly and that appointment of a Special Master therefore is unwarranted. See Defendants' Opposition at 5. The Court hopes that the District will be able to successfully resolve plaintiffs' claims without recourse to the Court, and nothing in this Opinion or accompanying Order of Reference prevents it from so doing. To the extent that the District is successful in those efforts, the mechanism set up by the accompanying Order of Reference will not be used. But the Court cannot ignore the history of these related actions and the woeful failure of the District to respond to plaintiffs and to the Court even in the most urgent circumstances. The Court has been most patient with the District, but in too many cases, that patience has not been warranted.

Finally, the parties are in agreement that the time and attention of the volunteer mediators who have been assigned to address the issue of class-wide relief should not be diverted for the purpose of resolving claims of individual plaintiffs. In the Court's judgment, the appointment [**14] of a Special Master is the most effective way to provide for such interim relief. In view of the exceptional circumstances presented, the Court finds the appointment of a Special Master and implementation of the mechanism described in the accompanying Order of Reference to be the most effective means of insuring that any child faced with the threat of irreparable injury has fair and speedy recourse in this Court.

The Special Master will perform this function within the framework set forth in the accompanying Order of Reference by (1) facilitating settlement meetings: and (2) in the absence of a mutually agreeable resolution, issuing a report and recommendation for the Court's review. The Court finds that the appointment of a Special Master for this limited purpose is the least intrusive and most effective way to ensure that the noncompliance with the IDEA which gave rise to liability does not cause irreparable injury to any individual class member pending the determination of class-wide relief.

Counsel for both the District and for plaintiffs have been provided with a copy of the Order of Reference in draft form and an opportunity to comment on both the need for a Special Master [**15] and the terms of the proposed Order of Reference. The Court has carefully considered the comments of the parties. Counsel have raised concerns over the availability and, to a certain extent, the qualifications of Ms. Elise Baach to fulfill the role of Special Master in this case. The District and class counsel both point out that Ms. Baach currently is serving as Special Master in Petties v. District of Columbia, Civil Action No. 95-0148, and have expressed concern about whether her duties in the Petties litigation will allow her sufficient time to serve as Special Master in this case. It is precisely because of her role in Petties and the fact that both the District and plaintiffs' counsel in that case have been satisfied with the constructive role Ms. Baach has played that this Court has such great confidence in her. The Court has no doubt that Ms. Baach will be able to perform the function of Special Master in this case, as well as her function in Petties, without compromising the quality of her work in either case.

The District also suggests that Ms. Baach's primary qualifications are in the area of mediation and facilitation, rather than in the substantive law [**16] of the IDEA. In view of the fact that the District has represented that it plans to try to reach amicable resolutions of these motions with plaintiffs' counsel, it is the mediation and facilitation skills that Ms. Baach already has demonstrated that will be most in demand.

185 F.R.D. 4, *; 1999 U.S. Dist. LEXIS 2104, **

Page 5

The Court also notes that Ms. Baach has significant experience in the area of IDEA law as the Court learned in some detail when it interviewed her at length and checked her references before appointing her as Special Master in Petties. While Ms. Baach's role in Petties has focused on facilitating resolution of systemic [*9] issues and her role in these cases will be focused on the claims of individual plaintiffs, the Court has no doubt that she will carry out that responsibility as ably as she has all the duties entrusted to her in Petties. An Order of Reference consistent with this Opinion shall be issued this same day.

SO ORDERED.

PAUL L. FRIEDMAN

United States District Judge

DATE: 2/12/99

ORDER OF REFERENCE

For the reasons set forth in the Opinion issued this same day and pursuant to *Rule 53 of the Federal Rules of Civil Procedure* and the inherent power of the Court, it is hereby

ORDERED [**17] that Elise T. Baach is appointed as Special Master in these consolidated actions to resolve any motions for preliminary injunctions or emergency relief filed by plaintiffs in this or in any related case. The Special Master is entrusted with the dual function of facilitating a mutually satisfactory resolution of each such individual claim, and, in the absence of a mutually acceptable resolution, providing the Court with a report and recommendation with respect to whether any particular plaintiff is entitled to preliminary injunctive relief. The Court will have direct supervisory power over the Special Master and will review periodically, as necessary, the scope, nature and duration of the Special Master's powers and duties; it is

FURTHER ORDERED that the Special Master shall have all powers accorded under *Rule 53 of the Federal Rules of Civil Procedure*, and shall act as an agent and officer of the Court in performing the duties outlined below; it is

FURTHER ORDERED that in order to facilitate the mechanism described below, the District of Columbia Public Schools, the Office of the Corporation Counsel and class counsel each shall designate a primary contact person responsible for responding [**18] to the requests of the Special Master and for insuring that their obligations with respect to this Order are met; it is

FURTHER ORDERED that the following mechanism shall apply to any motion filed in this Court by a member or members of the class certified in this case which seeks a temporary restraining order, a preliminary injunction or other emergency injunctive relief in addition to or more quickly than any relief that will be afforded to the class as a whole either after trial in June 1999 or upon settlement, for injury stemming from the liability that the Court has found in this case:

1. When a motion seeking immediate injunctive relief is filed in this Court in a case that has not yet been consolidated with the pending class action, the Court will issue an order to show cause why the case should not be consolidated with the pending class action. A copy of today's Opinion and Order of Reference will be attached, along with the telephone number and address of the Special Master. The parties to the motion seeking immediate injunctive relief will have 48 hours from the issuance of the show cause order within which to present any objections to consolidation. If the Court concludes [**19] that a party has shown cause why the case should not be consolidated, the mechanism set forth in the following paragraphs shall not apply to the motion.

2. Within 48 hours after defendants are served with a motion seeking immediate injunctive relief, the parties to that motion shall furnish to the Special Master a schedule setting forth their availability over the course of the following five days to meet and discuss the possibility of resolving plaintiffs' claims. After receiving such schedules, the Special Master shall schedule a meeting to take place no later than seven days after the filing of the motion seeking immediate injunctive relief.

3. A program representative from the District of Columbia Public Schools, a representative from the Office of Corporation Counsel and counsel for plaintiffs who are seeking immediate injunctive relief shall attend the meeting. At the meeting, the parties shall engage in, and the Special Master shall facilitate, a good faith discussion of whether there is a mutually agreeable means of resolving the claims of plaintiff(s). Follow-up meetings may be scheduled by the Special Master.

4. Defendants shall file any response to the motion for immediate [**20] injunctive relief within five days after service of such motion, [*10] unless defendants request an extension of time and the Special Master finds that defendants have shown good cause for such an extension. Defendants' response shall provide all legal and factual arguments that defendants in good faith believe compel denial of plaintiffs' motion. To the extent that defendants contest plaintiffs' characterization of factual circumstances, defendants shall append sworn affidavits or declarations setting forth the facts in dispute.

5. To the extent that class counsel believe that the interests of the class as a whole are implicated by any motion for immediate injunctive relief covered under this

Case 1:05-cv-01437-RCL    Document 29-2    Filed 01/03/2006    Page 7 of 7

Page 6

185 F.R.D. 4, *; 1999 U.S. Dist. LEXIS 2104, **

Order of Reference, class counsel may file a written response within seven days after the filing of the motion.

6. If the parties to the motion seeking immediate injunctive relief reach a mutually agreeable resolution of plaintiffs' claims, plaintiffs shall withdraw their motion and/or file a voluntary dismissal of the action within 48 hours of such resolution.

7. If a withdrawal of a motion for immediate relief is not filed within fifteen (15) days after the filing of the motion, the Special Master [**21] shall issue a report and recommendation to the Court consistent with *Rule 65 of the Federal Rules of Civil Procedure* and Rule 205 of the Local Rules, including proposed findings of fact and conclusions of law with respect to whether plaintiff(s) have established that they are entitled to a preliminary injunction and the scope of any such preliminary injunction.

8. The Special Master shall have the full cooperation of the parties and their counsel, who shall promptly provide any and all documentation and information requested by the Special Master, whether requested orally or in writing, and in whatever form requested.

9. Defendants shall pay the reasonable fees and expenses incurred by the Special Master in carrying out her duties and responsibilities under this Order. The Special Master shall submit to the Court and the parties each month an account of her activities and an invoice for the reasonable fees and expenses incurred in the performance of her duties under this Order, and defendants shall pay such reasonable fees and expenses within thirty (30) calendar days.

10. Henceforth counsel shall serve upon Ms. Baach, along with the Court and opposing counsel, a copy of any filing [**22] that relates to any motion covered by this Order of Reference.

SO ORDERED.

PAUL L. FRIEDMAN

United States District Judge

DATE: 2/12/99