**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| DL,[1] *et al.*, on behalf of themselves ) | |
| and others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1437 (RCL) |
| ) | |
| THE DISTRICT OF COLUMBIA, *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**
**DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**INTRODUCTION**

This is a putative class action filed in July 2005 on behalf of disabled, pre-school children

in Washington, D.C., whom defendants have failed to identify, locate, evaluate, and offer special

education and related services to in violation of 42 U.S.C. 1983, the Individuals with Disabilities and

Education Act ("IDEA"), 20 U.S.C. 1400, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C.

794(a), and other laws. Currently pending is plaintiffs' Motion for Class Certification, which was

filed on September 1, 2005. Also pending are defendants' three motions to dismiss this case and

plaintiffs' Motion to Strike. *See* Docket Nos. 18, 19, 23, 35.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, plaintiffs move to compel

defendants' responses to Plaintiffs' First Set of Requests for Production of Documents (hereafter

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

1

"Plaintiffs' Document Requests"), which plaintiffs served on defendants on December 28, 2005. *See* Pl. Ex. 1. On January 27, 2006, defendants served Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents (hereafter "Defendants' Responses"). *See* Pl. Ex. 2. Defendants' Responses consisted entirely of "General Objections" to plaintiffs' document requests as well as a statement that "subject to the General Objections, the District will produce documents responsive" to plaintiffs' document requests. Defendants refused to produce documents in response to many of plaintiffs' document requests based on their General Objections. Over the course of the following months, and after several discussions between the parties, defendants produced documents responsive to some of plaintiffs' document requests on a rolling basis, including on February 23, 2006, March 16, 2006, March 27, 2006, and, most recently, on June 1, 2006. Although the parties have worked together to narrow many of their discovery disputes, they have been unable to resolve all of them.

Fact discovery is scheduled to close on September 30, 2006. *See* Docket No. 40. Plaintiffs request this Court's intervention to assist in resolving the remaining disputes before the close of fact discovery. These disputes concern two of defendants' General Objections to Plaintiffs' Document Requests, namely, General Objection 2 and General Objection 1. *See* Pl. Ex. 2, p. 1. In General Objection 2, defendants argue that because the class has not yet been certified, defendants need not produce any documents related to the class allegations or class members, but, instead, need only produce documents pertaining to the six named plaintiffs. *Ibid.* In General Objection 1, defendants object to producing any documents that pre-date 2003. *Ibid.*

As explained in detail below, both objections are without merit, and defendants should be compelled to produce documents that they have withheld on these grounds.

I

## THE COURT SHOULD REJECT DEFENDANTS' OBJECTION TO PRODUCING DOCUMENTS PERTAINING TO THE PUTATIVE PLAINTIFF CLASS

**A.     GENERAL OBJECTION 2 EFFECTIVELY STAYS PLAINTIFFS' CASE AND SHOULD THEREFORE BE OVERRULED**

In General Objection 2, defendants state that they "object[] to the [document] requests to the extent that they seek documents containing information as to individuals other than the six children who are named plaintiffs, in the absence of a class certification." Pl. Ex. 2, p. 1.

Without explanation, defendants essentially refuse to produce discovery on either the class issues or on the merits until this Court certifies the class. Moreover, defendants have refused to identify which of plaintiffs' document requests they have not answered based on this objection, even though plaintiffs have asked for this clarification on many occasions. *See* Letter from Shina Majeed to Daniel Rezneck, dated February 27, 2006, Pl. Ex. 3. After a careful review of the documents produced thus far, defendants have refused to answer entirely or substantially Document Requests 20-28, 35, 38-39, 40-43. Pl. Ex. 1. In addition, there likely are other document requests defendants have refused to answer, at least in part, including document requests asking about the defendants' expenditures on Child Find activities (Document Request 9), defendants' referral, screening, and intake activities (Document Requests 10, 33-34), defendants' transitioning of toddlers into the Part B IDEA program (Document Requests 10, 14-15, 17-19), defendants' coordination of Child Find activities with other agencies within the District of Columbia government and with private or non-profit groups and contractors (Document Requests 14-19), and defendants' correspondence with the U.S. Department of Education (Document Requests 11-13), to the extent that these requests call for

3

information apart from the allegations as to the six named plaintiffs.[2]

Unless overruled, General Objection 2 effectively stays this case until the Court decides the plaintiffs' motion for class certification. Plaintiffs need responses to their document requests to prosecute fully their case against the defendants. Plaintiffs cannot proceed with the remainder of document discovery or commence deposition discovery without these documents because the information sought by plaintiffs' document requests is directly relevant to plaintiffs' class claims and allegations in the complaint. Moreover, this information is also relevant to the claims of the six individual plaintiffs, even if class certification is denied. *See infra* (pp. 8-15).

Specifically, plaintiffs allege that defendants have a policy, pattern, and practice of failing to comply with the "Child Find" and "FAPE" requirements of the IDEA, the Rehabilitation Act, and District of Columbia law. These requirements mandate that defendants take concrete steps to "identify, locate, evaluate," and offer "special education and related services" to all disabled children in the District of Columbia, including to children between the ages of three and five years old. 20 U.S.C. 1412(a)(3). Plaintiffs allege that three to five year olds with disabilities in the District of Columbia have been "denied, delayed or otherwise deprived of access" to special education and related services due to defendants' "numerous, knowing, pervasive and systematic" failures to comply with the Child Find and FAPE requirements. *See* Complaint, para. 2.

As explained in plaintiffs' complaint, defendants' failures include, *inter alia*, repeated failures to put into place adequate "policies and procedures" on Child Find or to "develop and implement" a "practical method to determine" the disabled preschool children in need of services;

---

[2] Defendants have produced a number of publicly-available documents, including reports and letters, that were exchanged with the U.S. Department of Education, Office of Special Education Programs ("OSEP"), and that are also available on the DCPS website.

"to comply with the time lines in the IDEA * * * which require defendants to identify and evaluate preschool children with suspected disabilities, determine their eligibility for services, develop their IEPs, and place them in an appropriate educational program within 120 days"; to "notify and locate disabled children in the District who are in need of services and who are not receiving them"; to "screen[] and track[] children with suspected disabilities"; to respond to "referrals for children with suspected disabilities"; to "evaluate preschool children for special education and related services"; to "convene timely 'IEP meetings' to determine eligibility for special education"; and to "offer appropriate [and timely educational] placements" for those preschool children found eligible to receive services. *See* Complaint, paras. 83-90.

All of plaintiffs' document requests are narrowly tailored to seek data and other information in support of these allegations and pattern and practice claims. For example, plaintiffs sought information about defendants' Child Find policies, procedures, and practices in effect since 2000. *See* Pl. Ex. 1, Document Requests 3-19, 29-34, 36-37. Plaintiffs sought data and information about the number of preschool children whom defendants have identified, located, and evaluated since 2000. *Id.*, Document Requests 17, 20-23, 33-35. Plaintiffs requested data and information about disabled preschool children for whom defendants have conducted intakes or screened, tracked, or referred for special education assessments since 2000. *Id.*, Document Requests 17, 20-22, 33-35. Plaintiffs sought data and information about disabled preschool children, such as those receiving SSI, whom defendants have not identified, located, or evaluated but who have disabilities. *Id.,* Document Requests 39, 40-43. Plaintiffs have sought data and information about those preschool children whom defendants have evaluated and those whom defendants have elected not to evaluate (*id.*, Document Requests 23, 27-28, 35, 38), about toddlers who have or have not been "transitioned"

5

to Part B IDEA services (*id.*, Document Requests 17-19, 38, 44), about preschool children who had

IEP meetings and those for whom IEP meetings were not held or were delayed (*id.*, Document

Requests 22-24, 26, 35, 38, 44), about disabled preschool children deemed eligible for special

education services and those who were denied eligibility for these services (*id.*, Document Requests

24-28, 35, 38, 44), and about educational placements for disabled preschool children (*id.*, Document

Requests 24, 26, 28, 38, 44).

Defendants conceded to plaintiffs during their meet and confer sessions in March 2006 that

this information is relevant to plaintiffs' putative class case and that they would therefore provide

responses to these document requests in the event this Court granted class certification (subject to

their remaining General Objections).

Defendants' position that they can wait to produce discovery that is relevant until this Court

certifies the class is contrary to law.  This Court has ruled that "until the Court has ruled that an

action cannot continue as a class action, it must be regarded as a class action, if the pleadings so

provide. * * * The Court believes this rule appropriate in controlling the discovery process in a

purported class action."  *Founding Church of Scientology of Washington, D.C. v. Kelley*, 77 F.R.D.

378, 379, n.2 (D.D.C. 1977) (rejecting defendants' argument that discovery could not be compelled

because class was not yet certified as class action).

Indeed, this Court frequently has allowed class-wide discovery to proceed before issuing

decisions on class certification.  For example, in *Bynum v. District of Columbia*, D.D.C., Civil

Action No. 02-956 (RCL), which was brought on behalf of a class of inmates held at the District of

Columbia Department of Corrections who were unlawfully overdetained and strip-searched, this

Court permitted class-wide discovery prior to granting class certification. *Id.,* Docket Nos. 47, 53-54

6

(January 6, 2003, and January 9, 2003 Discovery Extension Motions); *Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003)(certifying a class of inmates who were overdetained); *Bynum v. District of Columbia*, 217 F.R.D. 43 (D.D.C. 2003)(certifying class of inmates who were strip-searched). *See also Alexander v. FBI*, 971 F. Supp. 603, 611 (D.D.C. 1997)(RCL)(postponing class certification decision until after plaintiffs had an opportunity to take some discovery); *Stewart v. Rubin*, 948 F. Supp. 1077 (D.D.C. 1996) (merits discovery permitted prior to plaintiffs' motion to certify the class) (Docket Nos. 13, 25, 36, 39); *Neal v. Director, D.C. Department of Corrections*, D.D.C., Civil Action No. 93-2420, 1996 U.S. Dist. LEXIS 8874, at * 5 (June 19, 1996)(affirming discovery sanctions on employer in Title VII class action because, in part, "defendants refused to schedule the deposition for any other day in July, making it impossible for plaintiffs to complete this critical discovery before the class certification motion was due").

Similarly, class-wide discovery prior to class certification is routine in IDEA class cases, including Child Find cases, such as the case at bar.  For example, in *T.B. v. School District of Pennsylvania*, E.D. Pa., Civil Action No. 97-5453, 1997 U.S. Dist. LEXIS 19300, at * 1-2 (Dec. 1, 1997), the court certified a class of several hundred students who alleged that the Philadelphia School District had "failed to create a system for implementing and ensuring the 'child find' duty and relevant procedural protections" under the IDEA were afforded to children showing signs of disabilities. Two months after the class complaint was filed and two months before the class was certified, the Court issued an order directing that "all discovery shall proceed forthwith."  *See id.*, Docket Report Civil Action No. 97-5453, Docket No. 13, Pl. Ex. 4.[3]

---

[3] *See also Lamont A. Milwaukee Public Schools*, E.D. Wisc., Civil Action No. 01-C-0928 (Nov. 14, 2003)(in class action to challenge a school district's failures to comply with the Child Find obligations under the IDEA, court permitted class discovery to begin more than a year prior to

Accordingly, because General Objection 2 unnecessarily stays this case and is contrary to case law on discovery in putative class action cases, it should be overruled.

**B.    THE DOCUMENTS PLAINTIFFS SEEK ARE RELEVANT TO THE MERITS OF THE CASE, REGARDLESS OF THE COURT'S DECISION ON CLASS CERTIFICATION**

A primary reason that courts routinely grant class-wide discovery prior to class-certification is that such information is often relevant to the claims in a case, even if the case is not ultimately certified as a class-action. This is particularly true in Rule 23(b)(2) class actions, where, as here, the contention is that defendants have acted on grounds that are "generally applicable to the class," making final injunctive relief appropriate.[4]   *See* Alba Conte and Herbert B. Newberg, 3 Newberg on Class Actions, sec. 9.44 (4th ed., 2005)("If the nature of the liability alleged is such that proof will require broad discovery on a [] classwide basis even if class certification is ultimately denied,

---

certifying the class)(Docket Report, Docket Nos. 19, 20, 22, 23, 30, 36, 38, 39, 45, 48, 58, 63-64, 68, 81, 92, 93, 101-103, 131, 132, 160, 162, 195, Pl. Ex. 5); *D.D. v. New York City Board of Education,* E.D.N.Y., Civil Action No. 03-2489, 2004 U.S. Dist. LEXIS 5189 (March 30, 2004) (in case brought on behalf of preschool children to challenge the school district's "policy, practice, and custom of failing to  implement IEPs," and provide special education and related services, the court permitted class discovery beginning in November 2003, even though it did not certify the class until March 2004)(Docket Report, Docket Nos. 34, 47, Pl. Ex. 6); *Upper Valley Ass'n for Handicapped Citizens, v. Mills,* 168 F.R.D. 167, 168-169 (D. Vt. 1996)(court ordered discovery many months prior to certifying a class of children with disabilities to challenge school district's failure to investigate and issue timely decisions)(Docket Report, Civil Action No. 94-CV-0320, Docket Nos. 7, 13-15, 23-24, 34-36, 40, 42, 45-47, Pl. Ex. 7).

[4] In opposing plaintiffs' motion for class certification, defendants argued that the overlap between the putative Rule 23(b)(2) class claims and claims brought by the six class representatives individually was so substantial that class certification was rendered "unnecessary." *See* Defendants Memorandum of Points and Authorities in Opposition to Plaintiffs Motion for Class Certification, pp. 19-21. In contrast, defendants now assert that the individual and class cases are so different that discovery should be available on the individual claims only (at least until the court decides certification). Pl. Ex. 2, p. 1. Defendants cannot have it both ways.

motions to limit the plaintiff's discovery pending a class ruling are usually denied"); *see also* Manual for Complex Litigation (2d ed.), sec. 30.12 ("nor will discovery into matters affecting other members of the putative class be wasted if a class is not certified, for in many cases, this information will be valuable as circumstantial evidence"); Manual for Complex Litigation (4th ed.), sec. 21.14, p. 256 ("allowing some merits discovery during the precertification period is generally more appropriate for cases that are large and likely to continue even if not certified")(citing cases).

The same is true in this case. Even if this case were not certified as a class action, statistical and comparative information that plaintiffs seek through their document requests would nevertheless be relevant to the non-class claims in this case. Specifically, plaintiffs have alleged a "policy, pattern and practice claim" under 42 U.S.C. 1983. Complaint, paras. 1,4, 93, 96. Because proof of a policy, pattern, or practice will be required regardless of whether the class is certified, discovery about other putative class members is necessary. *See* Alba Conte and Herbert B. Newberg, 3 Newberg on Class Actions, *supra*, sec. 9.44 ("in civil rights actions involving, for example, allegations of a pattern and practice of racial discrimination in employment, proof of such patterns will be required in any event") (citing cases). *See also Laufman v. Oakley Bldg. & Loan Co.,* 72 F.R.D. 116, 121 (S.D. Ohio 1976) (in "redlining" case under Title VI of the Civil Rights Act of 1964, court ruled that even though it had denied class certification "the plaintiffs in this case are entitled to discover facts relating to defendants' policies and practices with respect to transactions similar to the one in question, whether the present case is a class action or not, as they may tend to show a pattern of refusal to lend in integrated areas").

To prevail on a "pattern and practice" claim under Section 1983, plaintiffs must "prove more than the mere occurrence of isolated or 'accidental' or sporadic" conduct on the part of defendants.

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977). Plaintiffs must instead "establish by a preponderance of the evidence that [] discrimination was the [] standard operating procedure - the regular rather than the unusual practice." *Ibid.*

Plaintiffs' document requests, to which defendants object, seek information that does exactly that. The document requests seek information about the defendants' policy, pattern, and practices of complying with the Child Find requirement of the IDEA, Rehabilitation Act, and other federal and local laws. To prove their pattern and practice claim, plaintiffs have asked for data on children ages two years and eight months to five whom defendants have screened, tracked, referred, evaluated, deemed eligible, held IEP meetings for, and offered services for each year beginning in 2000 and continuing through until the present. *See* pp. 5-6 above. Plaintiffs have also sought policy and programmatic information on Child Find activities and expenditures, as well as reports, evaluations, correspondence, and the like containing data and information about disability services to the preschool population in Washington, D.C. *Id.* From this statistical and policy information, plaintiffs will be able to establish that defendants' Child Find failures were indeed the "standard operating procedure," and are not merely "sporadic," "isolated," or "accidental." *International Brotherhood of Teamsters v. United States*, *supra,* 431 U.S. at 336.

Even in individual or non-class discrimination cases that do not allege pattern and practice claims, information of the type that plaintiffs seek here (*i.e.*, data and information about other individuals who are not the named plaintiffs) has been deemed relevant and discoverable. *A fortiori*, it should be discoverable here, where plaintiffs allege both class and pattern and practice claims. For example, in *Minority Employees at NASA (MEAN) v. Beggs*, 723 F.2d 958 (D.C. Cir. 1983), the Court of Appeals for this Circuit held that a magistrate judge had erred in limiting discovery in an

individual race discrimination claim by denying plaintiff discovery of information about the

treatment of other employees in other departments of NASA.  The court of appeals held that this

comparative employee information was "vital" to proving her discrimination claims and was "highly

probative" of her prima facie case, even though it was not a class action or pattern and practice

claim.  *Id*. at 962.  The court explained:

> It is well established that statistical data and comparative information concerning an
> employer's treatment of minorities is relevant evidence in an individual discrimination claim
> against that employer. * * * This [is true] * * * even though such data is generally used in
> class action cases to show a pattern or practice of discrimination. * * * Statistical and other
> comparative information is clearly "relevant to the claim" of an individual plaintiff in a Title
> VII case.

Other courts have similarly held.  *See, e.g., Paquin v. Federal National Mortgage Ass'n*, 119 F. 3d

23, 25 (D.C. Cir. 1997)(reversing summary judgment for employer in age discrimination case

because district court failed to allow "full discovery relating to performance evaluations of similarly

situated employees"); *Hollander v. American Cyanide Co.*, 895 F.2d 80, 84 (2d Cir. 1990)

(overturning ruling denying plaintiff discovery of "every management employee who has terminated

employment with [defendant] * * * since 1983 and who at the time of the termination of his

employment was over the age of 40," stating that "it is well-settled that in individual disparate

treatment plaintiff may use statistical evidence regarding an employer's general practices"); *Burns*

*v. Thiokol Chemical Corp.*, 483 F.2d 300, 306 (5th Cir. 1973)("the importance of obtaining an

overall statistical picture of an employer's practices with regard to both Black and White employees

does not depend on the presence of an alleged 'pattern and practice' or a valid charge of class

discrimination or class action"); *Waters v. United States Capitol Police Board*, 216 F.R.D. 153,

157-158 (D.D.C. 2003) (granting in part plaintiff's motion to compel information about other

employees in individual race discrimination case).

Accordingly, because plaintiffs allege pattern and practice claims, the documents plaintiffs seek will be relevant regardless of whether the class is ultimately certified. The Court should therefore overrule General Objection 2.

## C.     THE DISCOVERY PLAINTIFFS SEEK IS RELEVANT TO THE CLASS CERTIFICATION ISSUES

As plaintiffs made clear in their Memorandum of Law in Support of Their Motion for Class Certification (pp. 4-20) and in their Reply Memorandum in Support of Their Motion for Class Certification (pp. 8-21), plaintiffs have fully satisfied the requirements for class certification and believe that certification can be granted in the absence of discovery.  However, defendants have opposed Plaintiffs' Motion for Class Certification and have argued that plaintiffs have failed to meet all of the requirements of Rule 23(a), including numerosity, commonality, typicality, and adequacy of representation, and the requirements of Rule 23(b)(2) for injunctive relief.  They have argued that the problems about which the named plaintiffs complain are isolated, rare, uncommon, and atypical. *See* Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Class Certification (Docket No. 16), pp. 6-17.

Defendants should not be permitted to assert, on the one hand, that the class prerequisites have not been met and, on the other hand, refuse to provide the narrowly tailored and relevant discovery pertinent to these prerequisites.  The documents that plaintiffs have sought unsuccessfully to obtain from defendants go to heart of these class action requirements.  For example, plaintiffs have asked for documents about the numbers of children whom defendants have identified, located, evaluated, and offered services as well as those preschool children whom defendants have elected

not to identify, locate, evaluate, or offer services. *See* Pl. Ex. 1, Document Requests 20-28, 35, 38,

39, 42, 44.  In particular, plaintiffs seek information about defendants' compliance with the Child

Find process as to each of these children, including whether, when, and how defendants responded

to referrals, conducted assessments, provided evaluations, determined eligibility, convened IEP

meetings, and offered services and whether defendants complied with the time frames mandated by

federal and District of Columbia law to complete this process.  With these data, plaintiffs will show

that defendants violate the Child Find provisions of federal and District of Columbia law repeatedly

and in a similar manner as to numerous disabled preschool children in need of special education

services.   Defendants have sole custody of this information, which is relevant to numerosity,

commonality, typicality, and the grounds for a Rule 23(b)(2) class.

It makes no sense for defendants, on the one hand, to argue that plaintiffs have failed to

establish the class action requirements, and then, on the other hand, bar plaintiffs access to

information that would prove that the violations alleged by the six named plaintiffs are widespread,

systemic, common, and typical of disabled preschool children.  Indeed, numerous courts in this and

in other jurisdictions have ruled that pre-certification class discovery is presumptively available

because such discovery bears directly on the class certification issues.  *See* 3 Newberg on Class

Actions, *supra,* sec. 9.44 (where discovery relates to class issues themselves, "the defendant's

argument that there should be no classwide discovery until a class ruling carries little weight and has

been rejected by courts")(citing cases); *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir.

1982) ("There can be no doubt that it is proper for a district court, prior to certification of a class,

to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are

satisfied"); *Chase v. Aimco Properties., L.P.*, 374 F. Supp. 2d 196, 199 (D.D.C. 2005)(allowing

extensive discovery beginning from the date of the initial scheduling conference "in anticipation of plaintiff's [motion for class certification]"); *McReynolds v. Sodexho Marriott Services*, 208 F.R.D. 428, 438 (D.D.C. 2002) (permitting six months of "extensive discovery" on class issues prior to granting plaintiffs' motion for certification in disparate treatment and disparate impact Title VII case); *Alexander v. FBI, supra,* 971 F. Supp. at 612 ("the court concludes that plaintiffs should have the chance to take discovery to determine if the class can be properly defined and if subclasses could be used for the maintenance of a class action"); *Buchanan v. Consolidated Stores*, 217 F.R.D. 178, 185 (D. Md. 2003)("moreover, Plaintiffs were entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met").

Moreover, courts permitting pre-certification discovery do not limit such discovery to only the Rule 23(a) and (b)(2) issues. Courts frequently permit discovery on the merits together with the class issues because, "discovery relating to class issues is not always distinguishable from other discovery. The key question in class certification is often the similarity or dissimilarity of the claims to those of the class members - an inquiry that may require some discovery on the 'merits' and development of the basic issues." Manual for Complex Litigation (2d ed.), sec. 30.12. *See General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982)("the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action"); *Miller v. Baltimore Gas & Electric Co.*, 202 F.R.D. 195, 201-202 (D. Md. 2001)(pre-certification discovery on the merits permitted because class determination involved considerations of factual and legal issues comprising the plaintiff's cause of action)(internal citations and quotations omitted).

In summary, because General Objection 2 needlessly stays this case and because the

document discovery plaintiffs seek would be relevant to plaintiffs' pattern and practice claims regardless of whether the case is certified and also is relevant to the class certification issues, the Court should overrule defendants' General Objection 2.

II

### THE COURT SHOULD REJECT DEFENDANTS' OBJECTION TO PRODUCING DOCUMENTS THAT PRE-DATE 2003

Plaintiffs have requested discovery beginning in 2000 and continuing through the present. In General Objection 1, defendants refused to produce documents that were created prior to January 1, 2003.  Defendants' Responses do not state why they refused to produce any documents for the 2000-2003 time period.  Based on subsequent meet and confer discussions with defendants' counsel, General Objection 1 appears to rest on relevancy and burdensomeness.  Both arguments are without merit.

### A.    DOCUMENTS PRE-DATING 2003 ARE RELEVANT

Rule 26(b)(1) of the Federal Rules of Civil Procedure states that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party * * * Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

It is well settled that courts broadly construe "relevance" to "encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  In addition, discovery in discrimination and civil rights cases is particularly broad because of the nature of proofs involved. *Pleasants v. Allbaugh*, 208 F.R.D. 7, 9 (D.D.C. 2002)("plaintiffs have been permitted a very broad scope of discovery, extending to documents and information pertaining to so-called workforce data,

15

i.e., information regarding non-party employees in plaintiff's workplace"); *Chan v. NYU Downtown Hospital, et al.*, S.D.N.Y., Civ. No. 03-3003 (CBM), 2004 U.S. Dist. LEXIS 16751 at * 12 (Aug. 23, 2004) ("Courts construe relevant to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. * * * This is especially the case with regard to discrimination claims, where the imposition of unnecessary discovery limitations is to be avoided") (internal citations and quotations omitted).

Contrary to defendants' assertions, there is no automatic temporal limit on discovery. With respect to the temporal scope of discovery in civil rights or discrimination cases, courts generally extend discovery to a "reasonable number of years" before and after the discriminatory acts alleged in the complaint. *Mitchell v. AMTRAK*, 217 F.R.D. 53, 57 (D.D.C. 2003) (information discoverable "if limited * * * to a reasonable time before and after the discrimination complained of"); *Mitchell v. National Railroad Passenger Corp.,* 208 F.R.D. 455, 458 (D.D.C. 2002) (same); *Miles v. Boeing Co.*, 154 F.R.D. 117, 119 (E.D. Pa. 1994) ("the scope of discovery is commonly extended to a reasonable number of years prior to the defendants' alleged illegal action and also for periods after the alleged discrimination"); *Founding Church of Scientology v. Kelley, supra*, 77 F.R.D. at 380 (whenever plaintiffs allege a pattern and practice, "events indicating such harassment that occur prior to or subsequent to the times principally encompassed by the complaint are relevant to plaintiff's case").

Plaintiffs' request for discovery from 2000 to the present is a "reasonable" period of time given the allegations in the complaint. First, several of the named plaintiffs were disabled before 2003, and consequently defendants' obligation to comply with the Child Find requirements with respect to these children pre-dates 2003. *See* Complaint paras. 21-22, 42-43, 46-50, 55-56.

Second, as explained above (pp. 9-12), plaintiffs have alleged a policy, pattern, and practice under 42 U.S.C. 1983. Plaintiffs need the documents dating back to 2000 so they can establish that defendants have had a systemic policy, pattern, and practice of refusing to comply with the Child Find requirement in the IDEA for the preschool population in Washington, D.C., including during the time that the named plaintiffs were three to five years old. Plaintiffs intend to rely on statistical information dating from 2000 to the present that demonstrates that year after year, defendants have failed to identify children with serious disabilities and offer them access to special education and related services. The repeated failures on the part of the defendants to identify, locate, evaluate, screen, track, determine eligibility, and offer services over a five-to-six-year period will establish that defendants' failures are systemic, pervasive, and require broad and injunctive relief to remedy. The temporal scope proposed by plaintiffs is narrowly tailored to do so.

In fact, plaintiffs could have reasonably asked for discovery over a longer period of time. Courts in class cases have ordered discovery that is substantially longer in temporal scope than that which the plaintiffs request here. For example, in *Foster v. Boise Cascade,* S.D. Tex., Civil Action No. 74-H.89, 1975 U.S. Dist. LEXIS 16777, at * 9 (May 29, 1975), a Title VII class action, discovery of employment data and statistics was permitted for a ten-year period. In *Adams v. Pinole Point Steel Co.*, N.D. Cal. 92-1962, 1995 U.S. Dist. LEXIS 2036, at * 23-24 (Feb. 10, 1995), deposition and document discovery was granted for a ten-year period prior to class claims and interrogatory discovery was granted for a five-year period prior to class claims.

Even in individual discrimination cases, courts have held that discovery is allowable for many years prior to the discriminatory acts alleged. In *Burns v. Thiokol Chemical Corp.*, *supra,* 483 F. 2d at 306, the court of appeals reversed a district court that had denied discovery of employee data

17

and statistical information, and ordered discovery of this information dating back ten years prior to

plaintiff's termination. The court of appeals held that this information was discoverable despite class

certification being denied, explaining that "even though a suit seeks only individual relief for an

individual instance of discrimination, and is not a 'pattern or practice' suit * ** the past history of

*both* Black and White employees is surely relevant" (emphasis in original). *Id*. at 306. *Accord*

*James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir. 1979)(four years prior to liability

period held reasonable); *Pleasants v. Allbaugh*, 208 F.R.D. 7, 10 (D.D.C. 2002)(discovery three

years prior to claim and ten months after plaintiff retired from FEMA held reasonable); *Plannels v.*

*Howard University*, D.D.C., Civil Action No. 82-1173, 1983 U.S. Dist. LEXIS 19786, at * 3 (Jan.

25, 1973)("recently, many district courts have imposed a 'five-year rule,' limiting discovery to a

five-year period prior to the date of the alleged discriminatory act"); *Stubbs v. McDonald's Corp.,*

D. Kan., Civil No. 04-2164, 2005 U.S. Dist. LEXIS 16960, at * 8, 15 (Aug. 15, 2005)(allowing

discovery in pattern and practice discrimination case for past five years); *Hill v. Dillard's, Inc.*, D.

Kan., Civil Action No. 00-2523, 2002 U.S. Dist. LEXIS 981, at * 16-17 (Jan. 21, 2002)(five-year

period of discovery reasonable in individual race discrimination case); *Horizon Holdings v. Genmar*

*Holdings*, 209 F.R.D. 208, 212-213 (D. Kan. 2002)("Keeping in mind that the scope, including the

temporal scope, of discovery through interrogatories and requests for production of documents is

particularly broad in discrimination cases, the Court is convinced that limiting the scope * * * to a

period of three years prior to the time the  discriminatory conduct was alleged to have occurred and

two years after the discriminatory conduct was alleged to have occurred is reasonable and not overly

broad"); *EEOC v. Kansas City Southern Railway*, 195 F.R.D. 678, 680 (D. Kan. 2000)(allowing

discovery for three years prior and one year after liability period); *McClain v. Mack Trucks, Inc.*, 85

F.R.D. 53, 63 (E.D. Pa. 1979)(five years prior to liability period reasonable); *Cormier v. PPG Industries*, 452 F. Supp. 594 (W.D. La. 1978)(five years prior to liability period reasonable); *Stevenson v. General Electric Co.*, S.D. Ohio, Civil Action No. C-1-77-122, 1978 U.S. Dist. LEXIS 15133, at * 3  (Oct. 4, 1978)(noting emergence of a "five-year rule"); *Milner v. National School of Health Technology*, 73 F.R.D. 628, 632 (E.D. Pa. 1977)(six and a half year period of discovery held reasonable).

Here, plaintiffs are seeking discovery for a time period much shorter than the cases cited above. The discriminatory acts specifically alleged in the complaint date back to at least 2002, when some of the plaintiffs were three years of age. Complaint, paras. 20-21, 55. Plaintiffs seek discovery starting in 2000, only two to three years prior to the discriminatory acts of which plaintiffs complain.

### B.   DOCUMENTS PRE-DATING 2003 WOULD NOT BE UNDULY BURDENSOME TO PRODUCE

Defendants claim that producing documents before 2003 would be unduly burdensome. *See* Pl. Ex. 2, p. 3.  However, defendants have done nothing more than list the "unduly burdensome" objection among their General Objections and inform plaintiffs' counsel over the telephone during a meet and confer held on March 15, 2006, that documents pre-dating 2003 would be "unduly burdensome" to produce.

Defendants' burdensome argument should be rejected for several reasons. First, defendants' objection is nothing more than "boiler-plate." This Court has refused to consider boiler-plate undue burden objections. Rather, defendants must show with reasonable specificity, usually by declaration, how a particular request would be an unduly burdensome. *See Jones v. Prince George's County*, D.D.C., Civil Action No. 00-2092, 2002 U.S. Dist. LEXIS 27319, at * 6 (Oct. 3, 2002)("In line with many other courts, I reaffirm that I will not consider 'boilerplate' objections like this [undue burden

objection]. Instead, the party opposing discovery must make a specific showing, supported by a declaration, as to why the production sought would be unduly burdensome"); *Mitchell v. National Railroad Passenger Corp.*, *supra,* 208 F.R.D. at 458, n. 4 ("following many courts I have held that I will not consider 'boilerplate' objections like this [undue burden]. Instead, the party opposing discovery must make a specific showing, supported by a declaration, as to why the production sought would be unreasonably burdensome"); *Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4, 13 (D.D.C.1999)("the federal courts reject out of hand claims of burdensomeness which are not supported by a specific, detailed showing, usually by affidavit, of why weighing the need for discovery against the burden it will impose permits the conclusion that the court should not permit it. * * * Plaintiffs' utterly unsubstantiated ipse dixit that the discovery sought is burdensome is insufficient"); *Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181, 191 (D.D.C. 1998)("with regard to burdensomeness objections, defendant merely states, in conclusory fashion, that the requests are unduly burdensome. That too is insufficient. There is nothing in defendant's responses which permits the Court to ascertain why or how the request is burdensome in order to make a ruling. The party opposing discovery 'must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden'")(internal citation omitted); *Chubb Integrated Systems Limited v. National Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984)("An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden").

Because defendants have failed even to state how providing information pre-dating 2003 would be burdensome, let alone produce an affidavit explaining why such burden would exist,

defendants' burdensome argument should be rejected on that basis alone.

Second, it would not be burdensome for defendants to provide this information. This information is easily accessible through the SETS and ENCORE systems maintained by defendants. Defendants are accustomed to providing this information to the U.S. Department of Education, Office of Special Education Programs, as part of their regular reporting requirements. The District of Columbia Public Schools ("DCPS") also routinely shares this information with other District agencies, such as the Department of Human Services, with whom it has a Memorandum of Understanding for, *inter alia*, the sharing of such information. *See* Pl. Ex. 8. Defendants have also provided this type of information in the course of other class actions. *See e.g., Nelson v. District of Columbia,* D.D.C., Civil Action No. 00-2930 (GK) (providing plaintiffs with a database of information concerning mobility-impaired students within DCPS).

In fact, defendants' argument that documents would be unduly burdensome to produce is belied by the fact that defendants have produced at least some documents that pre-date 2003, including documents that relate to the named plaintiffs, correspondence between defendants and other agencies, reports, and public awareness materials. Thus, if defendants have made a partial disclosure of relevant information pre-dating 2003, such documents are not automatically unduly burdensome to produce. Plaintiffs are asking for no more than what Rule 26(a) requires, namely, that defendants make a good-faith and reasonable efforts to disclose to plaintiffs relevant documents from 2000 to the present.

Accordingly, given that documents that pre-date 2003 are relevant and not unduly burdensome to produce, and given that courts in both individual and class discrimination cases have ordered a longer period of discovery than plaintiffs seek here, Objection 1 should be overruled.

## III

### THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ADDITIONAL DISCOVERY IN THE AREAS IDENTIFIED BY PLAINTIFFS

On March 16, 2006, plaintiffs provided defendants with a list of 15 documents, identified by name and date, that defendants had failed to produce.  *See* Letter from Shina Majeed to Daniel Rezneck, dated March 16, 2006, Pl. Ex. 9.  The documents include reports, correspondence, and other information authored by DCPS or the U.S. Department of Education related to DCPS's IDEA activities. The list was produced in response to defendants' request during their March 15, 2006, meet and confer that plaintiffs provide examples of documents that defendants had failed to produce. Plaintiffs identified these documents by reviewing the documents produced by defendants as of that date and by selecting documents that were referred to repeatedly in that production but had not been produced by defendants.  The list plaintiffs provided to defendants is by no means comprehensive, but merely provides examples of relevant documents that defendants have failed to produce.  These documents are in defendants' custody and control and should have been produced in response to plaintiffs' document requests.   Plaintiffs are still awaiting production of the documents.  Thus, the Court should order that these documents be produced.

Not only should these documents be produced, but the failure of defendants to include these documents in their responses indicates a larger problem, namely, that defendants have not done an adequate job of searching for documents responsive to plaintiffs' Document Requests in all of the offices of the agency that may have relevant documents.  There are almost certainly many more documents that are responsive to plaintiffs' requests that defendants' have failed to produce.  For example, there likely are documents maintained by the Student Hearing Office of DCPS, by the

CARE Center of DCPS, and by other branches of the agency that have not been searched.[5]

Accordingly, the Court should order defendants to conduct a thorough search for documents responsive to all of plaintiffs' document requests in all relevant offices and to certify to the Court and to plaintiffs the methods and steps used to search for responsive documents.

### CONCLUSION

For the foregoing reasons, this Court should grant plaintiffs' Motion to Compel. A proposed order is attached.

Respectfully submitted,

_____/s/_____

BRUCE J. TERRIS (D.C. Bar No. 47126)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100

_____/s/_____

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052

_____/s/_____

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036

July 10, 2006

---

[5] Plaintiffs believe this to be true because they have identified a number of documents from these offices that have not been produced. Defendants have also failed to produce a privilege log, which should contain, at the very least, notes and documents drafted by DCPS counsel at the Student Hearing Office regarding the Due Process Hearings held in the named plaintiffs' cases.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
DL, *et al.*, on behalf of themselves     )
and others similarly situated,            )
)
        Plaintiffs,              )
)
        v.                       )      Civil Action No. 05-1437 (RCL)
)
THE DISTRICT OF COLUMBIA, *et al.*        )
)
        Defendants.              )
_____)

# ORDER

Upon consideration of Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Set of Document Requests and the entire record herein, it is hereby

ORDERED, that Plaintiffs' Motion is granted; it is further

ORDERED, that defendants' General Objections 1 and 2 are overruled; it is further

ORDERED, that defendants shall produce all documents responsive to Plaintiffs' First Set of Document Requests within 10 business days of this Order; it is further

ORDERED, that defendants shall make a thorough search for all documents responsive to Plaintiffs' First Set of Document Requests; it is further

ORDERED, that defendants shall submit to this Court and to the plaintiffs a statement certifying the method that defendants used to search for documents responsive to Plaintiffs' First Set of Document Requests and the locations in which defendants searched for such responsive documents.  Such statement shall be submitted within 10 business days of this Order.

_____                   _____
DATE                               ROYCE C. LAMBERTH