UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| D.L., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1437 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

**PRELIMINARY STATEMENT**

Defendants respectfully submit this memorandum in opposition to plaintiffs' motion to compel production of certain documents which defendants have objected to producing at this time.

Regrettably, many of the statements in plaintiffs' description of the remaining discovery disputes between the parties are demonstrably erroneous. This Court has admonished parties to avoid factual misstatements in the course of discovery practice. See Alexander v. FBI, 186 F.R.D. 188, 191 (D.D.C. 1999).

First, Plaintiffs assert that, in General Objection 2, "defendants argue that because the class has not yet been certified, defendants need not produce any documents related to class allegations or class members, but, instead need only produce documents pertaining to the six named plaintiffs." (Pl. Memo. at 2) (Emphasis supplied).

Defendants have made no such argument. In fact, they have produced without objection over 4,500 pages of documents, of which almost 1,500 pages relate to the

putative class representatives.  Many of the other 3,000 plus pages also relate both to the class issues and the merits of plaintiffs' claims, that is, to policies, procedures, practices and patterns in the conduct and administration of the Child Find program.  An index detailing defendants' production of documents is attached hereto as Exhibit A.  Any and all documents the Court may wish to examine in deciding the present motion are available for its inspection and will be submitted immediately upon request; we have tried to avoid burdening the Court and the record with a plethora of exhibits.

What General Objection 2 actually says is: "[t]he District objects to the requests to the extent that they seek production of documents containing information as to <u>individuals</u> other than the six children who are named plaintiffs, in the absence of a class certification." (Emphasis supplied).  Pursuant to this objection, we have declined to produce the Special Education histories and records of hundreds of other children in response to plaintiffs' requests, in the absence of a class certification that would sweep these children into the present case.  As the Court is aware, these are all highly confidential documents, containing private and sensitive information about these children and their families, often of a medical or psychiatric nature.  Our position has been that, although a class certification would cause us to revaluate our objection on this point, such a certification has not been made, and production of such material should not be ordered in the circumstances of this case without a firmer basis or stronger showing than plaintiffs have made.

<u>Second</u>, Plaintiffs inexplicably assert at three different places in their Memorandum that defendants' objection has operated effectively as a "stay" of discovery in this case.  See Pl. Memo. at 4, 8, and 14.  We say "inexplicably" because we have

sought no such stay, have imposed no such stay, and, as indicated, have produced over 4,500 pages of both class and merits discovery without objection.

This Court in the past has ordered a suspension of "general discovery", "pending the resolution of the class certification [issue]". Alexander v. FBI, 192 F.R.D. 37, 41 (D.D.C. 2000). Thus, the Court would have been entirely justified in entering such a stay here. But we did not seek it, preferring instead to serve on plaintiffs carefully and narrowly targeted objections like General Objection 2, and to facilitate the progress of this litigation in all other respects by making a vast production of documents.

Plaintiffs' assertion about a "stay" imposed by the defendants is further contradicted by the fact that plaintiffs' counsel spent almost two years preparing this suit. In the course of their pre-filing investigation, they served numerous FOIA requests on DCPS, which were responded to in detail. See Plaintiffs' Reply Memorandum in support of their Motion for Class Certification, filed November 30, 2005, at 9; Plaintiffs' Memorandum in support of their Motion for Class Certification, filed September 1, 2005, at 19.

Third, Plaintiffs assert that "[w]ithout explanation, defendants essentially refuse to produce discovery on either the class issues or on the merits until this Court certifies the class." Pl. Memo. at 3. This assertion is just plain wrong. A review of Exhibit A to this Memorandum, our detailed index of documents produced to plaintiffs, will confirm that there has been no such refusal. The more than 4,500 pages of documents defendants have produced belie plaintiffs' assertion. We ask: Are plaintiffs seriously contending that defendants produced more than 4,500 pages of documents on matters other than the class

issues or on the merits? If so, what do they say these documents all relate to—something wholly extraneous to this lawsuit? Such a contention would tax credulity.

<u>Fourth</u>, Plaintiffs further state that "defendants have refused to identify which of plaintiffs' document requests they have not answered based on this objection . . ." Pl. Memo. at 3. Again, this is just plain wrong. In a letter to plaintiffs' counsel of March 2, 2006, attached hereto as Exhibit B, counsel for defendants stated, "I think our Response and my letter of February 22, 2006 made clear that our objections, for example, General Objections 1 and 2, apply <u>across the board</u> to your Requests." Letter of March 2, 2006, from Daniel A. Rezneck to Shina Majeed, at 1, Exhibit B attached hereto (Emphasis supplied).

<u>Fifth</u>, perhaps most egregious is plaintiffs' statement in their Memorandum that "[a]fter a careful review of the documents produced thus far, defendants have refused to answer <u>entirely or substantially</u> Document Requests 20-28, 35, 38-39, 40-43." Pl. Memo. at 3 (Emphasis supplied). Attached hereto as Exhibit C is a chart showing the documents, by Bates stamp number in the index (Exhibit A), which defendants have produced in response to each of these requests. Every documentary request enumerated by plaintiffs has been responded to by defendants by the production of documents. If plaintiffs are disappointed by defendants' documentary production in response to any particular specification, we remind them, as we have repeatedly advised their counsel, "if our index does not contain documents keyed to a particular specification of the Request, you may assume that we have not located any documents falling within that specification and therefore cannot produce them . . ." Exhibit B at 1-2.

Sixth, plaintiffs also state: "[i]n addition, there are likely other document requests defendants have refused to answer, at least in part . . ."; they then enumerate certain requests of which this is purportedly the case. Pl. Memo. at 3. Here again, an examination of Exhibit C will show that our production encompassed virtually all of these requests, subject only to the limitation that we cannot produce documents not in existence or not in the District's possession, custody or control, as is clearly stated in General Objection 7.

Seventh, plaintiffs further state that "[d]efendants conceded to plaintiffs during their meet and confer sessions in March 2006 that the information is relevant to plaintiffs' putative class case and that they would therefore provide responses to these document requests in the event this Court granted class certification (subject to other remaining General Objections)." Pl. Memo. at 6. At best, this is an overstatement or perhaps a misunderstanding of our position. What we have said and reiterate now is that a class certification would cause us to reevaluate our General Objection 2, in all likelihood resulting in the production of additional documents. As indicated by Exhibits A and C, we have already provided responses to plaintiffs' documentary requests, to the tune of over 4,500 pages. In the absence of knowledge of what the scope of a class certification would be—for example, what would be the definition, contours and dimensions of any class, would any subclasses be declared, and other features of a class certification—we could hardly undertake to withdraw our objections altogether, sight unseen.

We now turn to a discussion of plaintiffs' contentions as to why our objections should be overruled and production should be ordered, regardless of how remotely relevant, far-reaching, or burdensome are their requests.

# ARGUMENT

I. **Production should not be ordered at this time over defendants' General Objection 2.**

  A. **The production plaintiffs now seek to compel is not justified on the basis of a purported need to support their class action certification motion.**

With all respect, the suggestion that General Objection 2 should be overruled and production ordered as plaintiffs demand it, because of a relation to the class certification issue, is an unpersuasive afterthought. A brief chronology will show why this is so.

As indicated earlier, plaintiffs' counsel spent almost two years preparing this case before they filed their Complaint on July 21, 2005. In their Motion for Class Certification and their 21-page supporting Memorandum, there is not a word suggesting that they needed or wanted any discovery on class certification issues. When they opposed our motion for an extension of time to respond to their motion for class certification, they asserted that ". . . plaintiffs' Motion for Class Certification is neither extraordinary nor complex." Pl. Opp. filed September 20, 2005, at 3.

In their Reply Memorandum in support of their motion for class certification, filed November 30, 2005, they reiterated: "the case is straightforward." Pl. Reply Memo. at 1. The only reference to discovery in their Reply Memorandum was a passing statement that if this Court determined they had not shown the element of numerosity— which has not happened—they would request discovery on numerosity. Id. at 11. They asserted that the record already showed a class of at least several hundred members, far above the figure of 40 frequently used as rule of thumb for numerosity. Id. at 9-11.

Otherwise, there was not a word about their need or desire for any discovery on class action issues.

That this is an afterthought—a post hoc rationalization for the present motion—is confirmed by the fact that, in responding to our discovery requests for documents containing information about unnamed class members, plaintiffs objected on the ground that such a request is "overly broad and calls for information not related to this litigation." See Exhibit B at 2. If plaintiffs believed that class certification issues requiring discovery were genuinely in the case, one would not have expected them to take the position they did. After all, "what is sauce for the goose is sauce for the gander." (We will be filing our own motion to compel the production of documents relating to unnamed class members, so that, if the Court should compel such production from us, it can act even-handedly and compel it from plaintiffs.)

Further on this point, in view of plaintiffs' lengthy filings on the class action issues—an initial 21-page memorandum of law, over 80 pages of supporting exhibits, a 25-page reply memorandum, with 126 pages of additional supporting exhibits, plus the volume of discovery they have already received from defendants—if plaintiffs have not established the required elements for certification by now, they never will. Plaintiffs are not willing to concede their failure to do so in order to try to justify their present motion to compel. Instead, they state in their present motion: "plaintiffs have fully satisfied the requirements for class certification and believe that such certification can be granted in the absence of discovery." Pl. Memo. at 12.

Thus, our view continues to be that orderly procedure and administration of this litigation militate in favor of first deciding the class certification motion, which has been

7

fully briefed and pending sub judice since November 30, 2005.  There is a good chance that, if the Court does so, discovery issues such as our General Objection 2 will resolve themselves by agreement of the parties, and there will never be a need to decide issues like those presented in plaintiffs' current motion.   As we said in the Parties' Joint Motion to Amend the Scheduling Order, filed March 28, 2006, at 2:

> Defendants believe that the determination of the motion for class certification should dictate the scope of discovery because it will determine the contours and magnitude of the case and the issues that will have to be litigated.  Defendants believe that until such motion is decided, discovery should be limited to the six named plaintiffs who brought the action through their representatives and that if the motion is denied, discovery can be narrowed and planned accordingly.

The court decisions on discovery in relation to class action issues are all over the landscape.  We must point out, however, that the case which leads off plaintiffs' legal discussion—Judge Richey's dictum in Founding Church of Scientology v. Kelley, 77 F.R.D. 378 (D.D.C. 1977), Pl. Memo. at 6—has several salient features which plaintiffs have failed to mention in their papers.  First, they neglect to state that the motion to compel discovery in that case was denied, not granted.  Second, there was a preliminary injunction motion, as well as a class action motion pending, to which the discovery might have pertained.  And third, they also omit to mention that the discovery sought (and denied) was "only directed to a period of three months after the initial complaint was filed." 77 F.R.D. at 379-380.  The last point perhaps foreshadows the discovery issue discussed later in this Memorandum, that of the appropriate temporal limitation on the plaintiffs' discovery.  We consider that at pp. 12-14, infra.

8

As indicated, this Court's decisions, like those of other courts, have varied, depending on the circumstances. Compare Alexander v. FBI, supra, 192 F.R.D. at 41 ("general discovery" stayed pending resolution of class action issue), with plaintiffs' reliance on Bynum v. District of Columbia, Pl. Memo. at 6-7, and this Court's decision in Alexander v. FBI, 971 F. Supp. 603, 611-612 (D.D.C. 1997). In the latter case, on a motion by defendants to strike class action allegations from the complaint, this Court withheld ruling on the motion to strike and gave the plaintiffs a "chance to take discovery" for limited purposes to see if certain of the requirements of Rule 23 could be met. Procedurally, that case was 180 degrees removed from the present one, where plaintiffs have filed an extensive class certification motion and never asserted the need for discovery on class certification issues.

Likewise, in Stewart v. Rubin, 948 F. Supp. 1077 (D.D.C. 1996), the suit was filed in November 1990, and extensive discovery was taken on the merits of the claim; no class certification motion was filed until July of 1994, and there is no suggestion of the need for any discovery on the class certification motion after issue had been joined on that motion. Judge Robertson's decision in Chase v. Aimco Properties, L.P., 374 F. Supp. 2d 196, 199 (D.D.C. 2005), approved discovery "in anticipation" of a motion for class certification, which relied on information received in discovery, unlike the posture here where the motion for certification was made and supported without any expressed need for discovery. To the same effect, see McReynolds v. Sodexho Marriott Services, 208 F.R.D. 428 (D.D.C. 2002); Buchanan v. Consolidated Stores, 217 F.R.D. 178 (D. Md. 2003). Finally, Miller v. Baltimore Gas & Elec. Co., 202 F.R.D. 195 (D. Md. 2001), like this Court's decision in Alexander v. FBI, supra, 971 F. Supp. at 611-612, involved a

defense motion to strike class action allegations, and the Court held merely that discovery would not be precluded on class action issues in such a situation. 202 F.R.D. at 200-201.

What emerges from the mélange of cases cited by plaintiffs is that context and procedural posture are important, perhaps decisive, in the resolution of discovery questions when class action certification issues are pending. There is no black letter rule applicable in all circumstances. Here, context and procedural posture point clearly in the direction of dismissal of plaintiffs' eleventh-hour rationalization for their motion to compel on this ground.

**B.   The production plaintiffs now seek to compel is not supported on the basis of a need for further merits discovery.**

Plaintiffs' argument that the documents they seek are relevant to the merits of their claims, regardless of the decision on class certification, requires briefer discussion. Pl. Memo. at 8. Plaintiffs have already had a huge amount of discovery into the policies, procedures, patterns, and practices of defendants with respect to Child Find, which they say they need on the merits of their claims. Even apart from the almost 1,500 pages we have already produced as to the six named would-be class representatives, which contain such information as to these children, we have produced thousands of other pages of documents describing these matters in depth and detail. See Exhibit A, the documentary index to our production. A typical example is Plaintiffs' Exhibit 8 on their present motion, a Memorandum of Agreement ("MOA") between the Department of Human Services Office of Early Childhood Development and DCPS, which sets forth policies, practices, and procedures for Child Find with great particularity. (This MOA is 002181-002194 in our documentary index, Exhibit A.) This example can be multiplied many times over in our documentary production; we could attach many more such documents,

but it would make this submission overlong and too bulky. (As we have indicated, we would be pleased to make any documents available which the Court wishes to see after reviewing Exhibit A).

Plaintiffs assert that they "have also sought policy and programmatic information on Child Find activities and expenditures, as well as reports, evaluations, correspondence and the like containing data and information about disability services to the preschool population in Washington, D.C." Pl. Memo. at 10. They list other requests that they have made. Pl. Memo. at 5-6. The short answer is that they have received such information. Attached hereto as Exhibit D is another chart showing the documentary production to plaintiffs on all of these matters.

It bears emphasis that the materials they now seek—documents about the Special Education treatment and services of hundreds of other children—are of extraordinary sensitivity in the lives of these children and their families. The courts of this jurisdiction have taken such considerations into account in dealing with motions to compel. For example, in <u>Waters v. United States Capitol Police Board,</u> 216 F.R.D. 153 (D.D.C. 2003), Magistrate Judge Facciola refused to compel discovery invasive of personal privacy, even though as here, a protective order was in place. See 216 F.R.D. at 156-161. We urge this Court to take the privacy concerns of these other children and their families into account in passing on the present motion to compel. Here again, once class certification is either granted or denied, the parties can revisit the issue. This is not an all or nothing, now or never decision. There is ample room for the exercise of sound judicial discretion in resolving the matter.

11

## II. The Court should not compel discovery prior to January 1, 2003.

Defendants' Objection l objects to production of materials created prior to January 1, 2003. That is more than 2 ½ years before the Complaint was filed and 3 ½ years from the present date. Defendants have not cut off their production of documents as of the date of the filing of the Complaint, but have continued to produce documents created since that time.

Contrary to plaintiffs' claim, we have never asserted that there is any "automatic temporal limit on discovery." Pl. Memo. at 16. We are aware that there are cases from all over the country imposing different temporal limits depending on the facts of individual cases. For example, plaintiffs have dredged up a line of cases from the District of Kansas with limits ranging up to 5 years. See Pl. Memo. at 18.

We prefer the law as it has evolved in the District of Columbia, in particular Magistrate Judge Facciola's approach in Glenn v. Williams, 209 F.R.D. 279 (D.D.C. 2002). This was a "pattern and practice" case, as plaintiffs here assert the present case is. There, the plaintiffs sought discovery for a 10-year period, which Judge Facciola concluded was "an inordinate length of time to support plaintiffs' pattern of discrimination theory." 209 F.R.D. at 282. He held that: "in order to establish a pattern of discrimination, three years is a reasonable time in which to allow discovery." Id.; see also Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) (three year period prior to suit held reasonable in "pattern and practice" case); Finch v. Hercules, Inc., 149 F.R.D. 60, 65 (D. Del. 1993) (two year period prior to claim arising held reasonable in "pattern and practice" case); Hardrick v. Legal Services Corp., 96

F.R.D. 617 (D.D.C. 1983) (discovery for two years prior to complaint allowed in Title VII case).

As stated in a leading treatise on civil procedure:

> the courts will not be reluctant, under the 2000 amendments to Rule 26(b)(1), to place limits on the time period preceding the alleged injury for which they will allow discovery, if the burden of complying with the discovery request is too onerous.

Moore, Federal Practice (3rd edit.), ¶ 26.41[12] at 26-146.6 to 26-146.7.  We discuss the burdensomeness of the plaintiffs' discovery requests to which we object in the next section of this Memorandum.

In support of a longer period, plaintiffs urge that "several of the named plaintiffs were disabled before 2003, and consequently defendants' obligation to comply with the Child Find requirements with respect to these children pre-dates 2003." Pl. Mem. at 16. But we have produced to plaintiffs all the documents relating to the six named plaintiffs, whenever created; this was a manageable task.  It is hardly an argument for going back before January 1, 2003, for the records of hundreds of other children or for documents relating to the conduct and administration of an evolving program such as Child Find.

Moreover, an additional persuasive reason for the temporal limit we seek is that plaintiffs have expressly disclaimed seeking damages for the alleged violations on which they rely.  See Plaintiffs' Reply Memorandum in support of motion for class certification, at 19.  The whole thrust of their Complaint is to seek declaratory and prospective injunctive relief.  They say: "[t]he heart of this case is injunctive and declaratory relief." Id. at 20.  Because they have chosen to focus their case and their claims for relief on the present and the future, their argument for going back as far as 5 ½ years before they filed

13

their Complaint (and 6 ½ years from the present date) is accordingly diminished. Since they say they do not seek monetary damages, their argument even for going back to the beginning of the applicable statute of limitations—which might be deemed to be three years, see 12 D.C. Code § 301—disappears. The period we have selected is a reasonable balance between past, present, and future. If plaintiffs cannot prove their case on the evidence going back to January 1, 2003, which we have provided to them, we submit that their case is extremely weak. When the burdensomeness of going back to an earlier time, as to which records and documents are scattered and not easy to come by, is factored in, the reasonableness of our General Objection 1 is manifest, and it should be upheld.

### III.   Plaintiffs' motion to compel is over-broad and unduly burdensome.

As mentioned above, the plaintiffs seek documents created back to January 1, 2000, and documents regarding children who are unnamed class members, which Defendants objected to in their General Objections 1 and 2, respectively. Both requests are over broad and unduly burdensome to the defendants.

To address the burdensomeness of these requests, the defendants have obtained a declaration from DCPS Assistant Superintendent for Differentiated Learning Gayle Amos. Defendants' Exhibit E, dated July 31, 2006. Dr. Amos monitors and supervises the DCPS Office of Special Education ("OSE"), which includes the Early Childhood identification of children ages 3 to 5 years who have special education needs, the program at issue in this case. Id. at ¶¶ 2-3.

Dr. Amos states that providing specific documentation for every child who has gone through the eligibility process ages 3 to 5 years from January 1, 2000, through the present would be unduly burdensome. Id. at ¶ 4. Dr. Amos estimates that producing all

such documents would require hundreds of hours of staff time and would involve searching for documents at several locations. Id. at ¶¶ 10, 13. This is due to the large number of students that fall into this category and the large volume of student records for each child.

Each student's file may contain such documents as evaluations, anecdotal notes, progress reports, report cards, Individualized Educational Programs, medical records, and psychiatric reports; as time passes, the volume of documents in each folder increases. Id. at ¶ 8. A conservative estimate for the pages of documents in each student's file (ages 3 to 5) is about 100 pages. Id. at ¶ 7. Student records are not all centrally located; rather, Early Childhood records may be housed at the C.A.R.E. ("Centralized, Assessment, Referral, and Evaluation") Center, at Shaw Junior High School, 925 Rhode Island Ave., N.W.; individual Head Start programs; the DCPS Central Office, at 825 North Capitol St., N.E.; and the local schools. Id. at ¶ 10. The already difficult task of gathering records is further complicated even more because the majority of students from January 1, 2000, through the present have passed through the 3 to 5 year age range, and their records would have been transferred to the local schools that they attend. Id. at ¶ 11.

The large volume of documentation that the plaintiffs seek to compel defendants to produce and the burden of production can be further explained and quantified as follows. From January 1, 2003, through January 1, 2006, DCPS made special education eligibility determinations for 1,538 students within the age range of 3 years to 5 years.[1] Id. at ¶ 5; see also Exhibit A, at Bates stamp No. 03870. Thus, it can be estimated that from January 1, 2000, through the present, 3,332 students had eligibility determinations

---

[1] DCPS does not have statistical information regarding the number of children living in the District of Columbia between the ages of 3 and 5 years because mandatory schooling does not begin until age five. Exhibit E, n. 1.

15

within the age range of 3 years to 5 years.  Exhibit E at ¶ 5.  Given that there are approximately 3,332 students who have been determined eligible for special education services (Id. at ¶ 6) and that each student has a file with approximately 100 pages of documents (Id. at ¶ 7), production for these students would generate roughly 333,200 pages of material.  Id. at ¶ 9.  According to Dr. Amos, to gather and produce these records would require DCPS to devote a significant number of staff and amount of staff time, and would drain DCPS' already strained resources.  Id. at ¶ 12.  The numbers provided by Ms. Amos make clear that the production as contemplated by the plaintiffs would dramatically disrupt the daily workflow at the DCPS OSE to the detriment of the children in special education.

Clearly, such a request by plaintiffs is unduly burdensome.  Our showing meets the requirements of this Court for supporting a claim of undue burden.  See Alexander v. F.B.I., 186 F.R.D. 21, 34 (D.D.C. 1998); see also Association of Am. Physicians and Surgeons, Inc. v. Clinton, 837 F. Supp. 454, 458, n. 2 (D.D.C. 1993); see also Martin v. Potomac Elec. Power Co., 1990 U.S. Dist. LEXIS 11688 at 5 (D.D.C. 1990).  As demonstrated above, plaintiffs simply cannot demonstrate a need for such documents that justifies this burden on DCPS, especially given that a class has not been certified.

**IV.    Defendants have complied with the requests in Plaintiffs'
         Exhibit 9, and there is no occasion to enter an order
         <u>compelling further discovery with respect to those items.</u>**

Plaintiffs' Exhibit 9 requests written communications between U.S. Department of Education ("DOE") and DCPS, including letters and reports.  Defendants have provided all of the documents that are in their possession that are responsive to plaintiffs'

16

requests for such documents, including the specific requests in Plaintiffs' Exhibit 9.  See Defendants' Exhibit F, Declaration of Karen Griffin, dated July 26, 2006.

In order to gather the requested documents, DCPS Special Assistant of OSE Karen Griffin, whose job responsibilities include state reports to DOE regarding special education matters, searched her files extensively.  Id. at ¶¶ 1-5.  As Ms. Griffin is the primary DCPS contact person with DOE on special education issues, she is the only DCPS employee who maintains such documents in her possession.[2]  Id. at ¶ 10.

As indicated above, Ms. Griffin specifically searched her files for responsive documents to those requests in Plaintiffs' December 28, 2005, First Set of Requests for Production of Documents and has produced several responsive documents.  Id. at ¶ 4, 5; see also Defendants' Exhibit A, at Bates stamp No. 01019 – 01204, 01960 – 02036, 02811 – 03078, 03887 – 03899, and 04404 – 04506.   When Ms. Griffin saw Plaintiffs' March 16, 2006, letter, she again searched her files, but could not find any additional documents.  Defendants' Exhibit F at ¶ 6-7.  Subsequent to Plaintiffs' March 16, 2006, letter, she has produced some additional documents, although not the ones plaintiffs requested in that letter.  Id. at ¶ 8; see also Defendants' Exhibit A, at Bates stamp No. 03887 – 03899, 04404 – 04506.

There are no other relevant documents that Ms. Griffin has retained, which have not already been provided.  Defendants' Exhibit F at ¶ 9.  Ms. Griffin states in her declaration that "[a]ny additional [written communications between DCPS and OSE] that were once in my possession have been lost or destroyed."  Id. at ¶ 9.

---

[2] The DCPS Attorney Advisor working on this case did ask other DCPS OSE employees for relevant communications between DCPS and DOE, but no one could provide the documents that Ms. Griffin could not produce.

17

Simply put, a motion to compel production of the written communications (including reports and letters) between DCPS and DOE would not yield further production because all of those documents in DCPS' possession have already been produced.

## CONCLUSION

Plaintiffs' motion should be denied. Alternatively, plaintiffs' motion to compel should be held in abeyance until decision of plaintiffs' pending motion for class certification

<div style="margin-left:3em">

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section 2

**/s/ Daniel A. Rezneck**
DANIEL A. REZNECK [#31625]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-5691

**/s/ Eden I. Miller**
EDEN I. MILLER [#483802]
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
Eden.Miller@dc.gov

</div>

July 31, 2006                                        ATTORNEYS FOR DEFENDANTS