## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
DL,[1] *et al.*, on behalf of themselves  )
and others similarly situated,            )
                                          )
            Plaintiffs,                   )
                                          )
            v.                            )        Civil Action No. 05-1437 (RCL)
                                          )
THE DISTRICT OF COLUMBIA, *et al.*        )
                                          )
            Defendants.                   )
_____ )


## PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

### INTRODUCTION

On July 10, 2006, and after several months of attempting unsuccessfully to resolve the parties' discovery disputes, plaintiffs filed their Motion to Compel Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents (hereafter "Pl. Mem."). Plaintiffs urged this Court to reject Defendants' General Objections 1 and 2 to Plaintiffs' First Set of Requests for Production of Documents (hereafter "Document Requests"). General Objection 1 pertains to defendants' refusal to produce documents that pre-date January 1, 2003. General Objection 2 pertains to defendants' withholding of documents about the class members and class claims "in the absence of class certification."

On July 31, 2006, Defendants filed their Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel (hereafter "Def. Opp."). Defendants' opposition

_____

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

suggests that defendants have produced all responsive documents except the individual special education files of absent class members and documents pre-dating January 1, 2003. Def. Mem. 3. However, the reality is that defendants have failed to disclose numerous other documents directly related to the merits of this case, including statistical, budgetary, and policy documents related to defendants' pattern and practice of failing to provide pre-school children a free and appropriate public education ("FAPE") and of failing to comply with Child Find requirements. Through other means, plaintiffs have obtained some of these documents. Moreover, defendants have failed to furnish categories of documents that surely must exist, such as information that defendants report to the U.S. Department of Education, Office of Special Education Programs ("OSEP"). Defendants have not stated why they have not produced these documents. Their opposition fails to explain whether they have not disclosed these documents because they are relying on General Objection 2, or because they have not searched diligently for them.

It would be easy enough to point to defendants' failure to produce responsive documents on Child Find programs and practices as support for plaintiffs' claims in this case. Defendants' failure only proves plaintiffs' point that defendants do not have a Child Find program for preschool children. However, plaintiffs cannot rely only on the absence of evidence to prove their case. The discovery they seek here goes to the merits of their case.

Defendants raise a series of arguments questioning the accuracy of plaintiffs' representations in their opening memorandum. Plaintiffs will show below that their representations were entirely accurate. Moreover, defendants have offered no support for the extraordinary position they take, namely, that they may withhold relevant and responsive documents until the Court decides certification. Defendants must not be allowed to flout their discovery obligations and to withhold

responsive documents within their possession based on meritless general objections. This Court's intervention is required to ensure a full and complete response to Plaintiffs' Document Requests.

## I

## DEFENDANTS HAVE FAILED TO DISCLOSE DOCUMENTS RESPONSIVE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants claim that they have provided all documents responsive to plaintiffs' document requests, subject to their objections.  *See* Def. Opp. 5 ("an examination of Exhibit C will show that our production encompassed virtually all of these requests").  They state that they have produced 4,500 pages of documents, and argue that they have therefore satisfied their discovery obligations.

Plaintiffs provide with this Reply a list of documents that are relevant and responsive that defendants failed to produce. While this list is not exhaustive, it includes obvious and relevant documents, such as documents DCPS submitted to OSEP, including the District of Columbia's Federal Fiscal Year ("FFY") 2004 Annual Report, Special Conditions Reports, Monitoring Reports, Progress Reports and Final Progress Reports.  *See* Table of Responsive Documents Defendants Failed to Produce (Pl. Ex. 10).  Plaintiffs identified these documents through research on the internet, on the DCPS website, on the U.S. Department of Education website, and by reading defendants' document production and noting documents referred to within those documents that have not been produced.  Plaintiffs have no way of knowing what other documents the defendants have failed to produce.

Moreover, despite their insistence that they have not "refused to produce documents relating to the class issues or merits," they have, in fact, failed to produce numerous documents relating to these issues. Def. Opp. 3.  For example, OSEP requires DCPS to report data annually on the special education services it has provided to children in various age groups, including to plaintiffs' class of

three to five year olds.  Defendants are required to provide these data and submit completed OSEP

tables and forms. [2]   Defendants have not produced any of these documents to plaintiffs.   Nor have

defendants produced the Transition Tracking Log Report for each year beginning in 2000.  *See* Pl.

Ex. 2, Document Request 17.  Defendants have not produced any of the redacted Hearing Officer

Decisions ("HOD") that are required to be made available to the State Advisory Council, 20 U.S.C.

1415 (h)(4)(A) and (B), and that are relevant to the class allegations in this case.   Defendants have

not produced other important documents, including documents on their actual spending on Child

Find activities (Document Request 9), investigations and evaluations of DCPS's special education

program (Document Requests 12, 13, 16), and correspondence to and from OSEP (Document

Requests 12, 13).  *See* Pl. Ex. 10 (listing documents).

Defendants suggest that if they have not produced a document, we should "assume that [they]

have not located any documents falling within that specification."  Def. Opp. 4.   If defendants are

contending that they maintain no statistical, budgetary, or policy information regarding the provision

of FAPE for the preschool children in Washington, D.C., much of which is required by federal law,

then defendants' document custodian should certify this by sworn declaration.  If not, the defendants

should be ordered to produce this information.

More specifically, defendants insist that they have responded fully to Document Requests 20-

28, 35, 38-39, 40-43.  Def. Opp. 4 ("perhaps most egregious is plaintiffs' statement that defendants

have refused to answer entirely or substantially Document Requests 20-28, 35, 38-39, 40-43").

These document requests seek, *inter alia*, aggregate data, including data base information, about the

_____

[2] *See, e.g.*, Table 1, Report of Children with Disabilities Receiving Special Education Under Part B of the IDEA, December 1, 2005, or the Last Friday in October 2005, available at, http://www.ideadata.org/docs.childcount.PtB.pdf.

numbers of preschool children whom DCPS has (or has not) referred, identified, evaluated, transitioned to Part B services, and found eligible for special education services each year in the District of Columbia. Pl. Ex. 2. In support of their argument, defendants point the Court to a table that shows by bates number the documents that are responsive to each of plaintiffs' document requests. *See* Def. Ex. C.

In fact, defendants' table confirms that defendants have refused to answer "entirely or substantially" Document Requests 20-28, 35, 38-39, 40-43 based on General Objection 2. Other than documents from the DCPS case files of the six named plaintiffs, defendants produced virtually nothing. In particular, with respect to Document Requests 20-28, 35, and 39,[3] they have listed no documents other than those drawn from the DCPS case files of the six named plaintiffs.

Similarly, defendants have "substantially" failed to respond to Document Request 38. That request seeks documents relating to the "transitioning of children from the Part C Early Intervention Program to Part B, including any documents with data on the numbers of children who have been transitioned each year since 2000." *See* Pl. Ex. 2. Again, the majority of documents listed in defendants' table were contained in the DCPS files of the six named plaintiffs and are documents which plaintiffs produced to defendants. *See* Def. Ex. C; *see also* Pl. Ex. 11. The remaining documents listed in defendants' table comprise information about programs of the District of Columbia Department of Human Services ("DHS"), only a handful of which are responsive to this request and relate to the "transitioning of children from the Part C Early Intervention Program to Part B."

---

[3] The only document defendants list as responsive is a two-page document containing SSI information about named plaintiff OUL. *See* Def. Ex. D, p. 7 (bates nos. 2702-2703).

Similarly, defendants have "substantially" failed to answer Document Requests 40-43. These requests seek, *inter alia*, documents about the screenings, tracking, referrals, intakes, evaluations, and services provided to children listed in the D.C. Linkage Tracking System from 2000 to the present. In response, defendants list only one, five-page document, which is entitled DC Linkages 2003-2006 (bates no. 2704-2709), and which is virtually blank. The document is a computer spreadsheet with columns that contain no data or information. *See* Def. Ex. C, p. 3.

Defendants argue that they have withheld documents only to a limited extent. Def. Opp. 2. They state that "we have declined to produce the Special Education histories and records of hundreds of other children in response to plaintiffs' requests, in the absence of class certification." *Ibid.* However, plaintiffs have not asked for "special education histories" of individual children. Rather, they have sought aggregate data on the number of children whom defendants have, *inter alia*, identified, evaluated, screened, tracked, determined eligible, transitioned from Part C to Part B, and for whom they have held IEP's and found educational placements. *See* Document Requests 17, 20-28, 35, 38-39, 40-44. If defendants mean that they have now narrowed the scope of General Objection 2 and are withholding only the special education histories and records of other children based on this objection, but no other class discovery, this is the first time defendants have taken this position. The parties have exchanged correspondence on this issue for several months. *See, e.g.,* Pl. Ex. 3; Def. Ex. B. Defendants, of course, have not stated that special education histories and records are the only documents they have withheld from plaintiffs. Moreover, this could not be defendants' position since, as we have seen above (pp. 3-5; Pl. Ex. 10), they have withheld numerous other documents.

6

It is also worth noting that defendants' 4,500-page document production is not only insubstantial for a class action case of this nature, but also contains numerous documents that are not relevant or responsive to the class issues and merits in this case. Of the 4,544 pages of documents defendants produced, 1,503 pages pertain solely to the administrative cases of the six named plaintiffs. Of the remaining 3047 pages, several hundred pages relate to irrelevant information, such as the regulations governing Head Start funding, unrelated District of Columbia programs, or children who not in plaintiffs' class.[4] Several hundred other pages are duplicates of the same 10-20 documents.[5] The bottom line is that the modest disclosure of 4,500 pages of documents, much of which is not responsive, is no substitute for the complete discovery that the Federal Rules require.

Finally, in an obvious attempt to distract the Court from their discovery failures, defendants accused plaintiffs of misstating the record in several other ways. For example, defendants argue that

---

[4] For example, defendants produced several hundred pages of irrelevant Head Start regulations (bates nos. 3303-3565). They produced a 105-page FOIA response that does not involve any of the issues in this case, but rather is a response to the Georgetown University Law School, Family Advocacy Clinic, in an entirely different case (bates no. 2581-2686). Defendants have produced reports on senior high and junior high school students, who are not in plaintiffs' class. *See, e.g.*, DCPS, Senior High Schools-Division IV, Continuous Improvement Monitoring Process (CIMP) for Special Education, Report of Findings on SY 2004-2005 (bates nos. 1031-1042); DCPS, Middle and Junior High Schools-Division V, Continuous Improvement Monitoring Process (CIMP) for Special Education, Report of Findings on SY 2004-2005 (bates nos. 1043-1053).

[5] For example, defendants have included three copies of the Child Find Reference Guide (bates nos. 1896-1904, 1586-1594, 3246-3254), three copies of the Child Find Draft Documents (bates nos. 1905-1939, 2265-2300, 2409-2443), two copies of the DCPS Annual Performance Report, July 1, 2003, to June 30, 2004 (bates nos. 1960-2036, 2811-2889), two copies of Child Care Profiles Statistics" (December 4, 2004) (bates nos. 1867-1890, 2119-2145), two copies of the CARE Center Packet/Referral Packet (Private Religious Programs)(bates nos. 2149-2152, 2157-2160, 2167-2177,3212-3231, 3255-3260); at least four copies of the Private Religious Agreement (bates nos. 2158-2160, 2178-2180, 3216-3218, 3761-3763); two copies of the Annual State Application under Part B (2006) (bates nos. 3887-3899, 4495-4506); two copies of the Memorandum of Agreement Between DHS and DCPS (bates nos: 2181-2194, 2508-2523), and many more.

they sought "no such stay" of discovery.  Def. Opp. 2.  What plaintiffs had argued in their memorandum (pp. 2-8) is that General Objection 2 is tantamount to a stay of class-wide discovery. The discovery that defendants have failed to produce, such as statistical, budgetary, and policy documents are directly relevant to plaintiffs' class claims.  Without these materials, plaintiffs cannot continue fact discovery or commence depositions.

Defendants also argue that plaintiffs are "just plain wrong" in stating that defendants refused to "identify which of the document requests they have not answered" based on their objections.  Def. Opp. 4.  Defendants claim that it is enough that they have stated that all of their objections apply "across the board" to all of defendants' document requests.   To say that "all" objections apply "across the board" is indeed the same as refusing to specify which document requests defendants have refused to answer and the grounds for their refusal.

Defendants argue that it is at "best an overstatement or perhaps a misunderstanding of our position" that they would produce the discovery they have withheld based on General Objection 2 in the event the Court grants certification.  Def. Opp. 5.  Defendants' statement conflicts with other statements they have made in their papers.  For example, in the next sentence, they admit that certification would "in all likelihood result[] in the production of additional documents." *Ibid.*  They also state that the "class certification motion, * * * has been fully briefed and pending sub judice since November 30, 2005.  There is a good chance that if the Court [decides the motion], discovery issues such as our General Objection 2 will resolve themselves by agreement of the parties, and there will never be a need to decide issues like those presented in plaintiffs' current motion." *Id*. at 8.  The express language of Defendants' General Objection 2 is that class member discovery is being withheld "in the absence of class certification."  *See* Pl. Ex. 2, p. 1.

Thus, baseless challenges to plaintiffs' good faith do not distract from defendants' obvious discovery failures.  Despite their protestation to the contrary, defendants have either intentionally withheld responsive documents or have failed to search for these documents.  In any event, the Court's intervention is required.

## II

### THE COURT SHOULD REJECT GENERAL OBJECTION 2 AND ORDER DEFENDANTS TO PRODUCE ALL RELEVANT CLASS DISCOVERY

A.    **PLAINTIFFS REQUEST DISCOVERY THAT IS RELEVANT TO THE MERITS OF THEIR CASE REGARDLESS OF THIS COURT'S DECISION ON CLASS CERTIFICATION**

In General Objection 2, defendants objected to providing discovery on class members and class claims (except as to the six named plaintiffs) until the Court certifies the class.  In their initial memorandum (pp. 8-12), plaintiffs had argued, *inter alia*, that the objection should be rejected because the information was relevant to the merits of this case, even if the case is not ultimately certified.  Specifically, plaintiffs argued that the discovery sought was relevant to the named plaintiffs' policy, pattern, and practice claims under 42 U.S.C. 1983, which they would have to prove regardless of the Court's ultimate decision on class certification.  Pl. Mem. 2-12.  Defendants' opposition failed to counter these arguments.

First, defendants apparently have conceded plaintiffs' main argument that discovery on class members and class allegations is relevant to the merits of this case regardless of the ultimate decision on class certification.  *See* Pl. Mem. 2-8.  Nowhere in their memorandum do they argue that such discovery is not relevant to plaintiffs' individual policy, pattern, and practice claims.

9

Second, rather than respond to the plaintiffs' arguments that the discovery is relevant to the individual plaintiffs' claims, irrespective of the Court's decision on certification, defendants use the bulk of their opposition to argue against a position that plaintiffs do not take.   They argue that the discovery plaintiffs seek is not "justified based on the purported need to support their class  action certification motion." Def. Opp. 6.  In fact, plaintiffs asserted no such "need."

Plaintiffs want answers to their document requests because the responses are directly relevant to the merits of the case, not because plaintiffs need it to support their class certification motion. *See* Pl. Mem. 2-12.  As explained in their initial memorandum (pp. 2-8), without the discovery, plaintiffs' case is effectively stayed because plaintiffs cannot proceed with further fact discovery or commence depositions. *Ibid.*  Contrary to defendants' statement, plaintiffs do not claim that they need discovery in order to satisfy the class requirements. *See* Pl. Mem. 8-12.  In fact, plaintiffs have repeatedly made clear, and reiterate here, they have met fully all the class action requirements of Rule 23(a) and (b)(2). *Ibid. See also* Plaintiffs' Motion to Certify the Class, pp. 2-19; Plaintiffs' Reply Memorandum to Defendants' Opposition to Plaintiffs' Motion to Certify the Class, pp. 2-21. Plaintiffs believe that no further discovery is needed in order to satisfy the class action requirements.

What plaintiffs did say (and what defendants misconstrue), is that defendants cannot have it both ways.  On the one hand, they have argued that plaintiffs' class is not sufficiently numerous, and that the claims are neither typical nor common. *See* Defendants' Opposition to Plaintiffs' Motion to Certify the Class, pp. 6-8.  On the other hand, defendants have in their exclusive custody and control data and information that would prove these class action criteria with certainty, including data on the numbers of preschool children for whom defendants have failed to comply with the Child

Find and FAPE requirements between 2000 and the present. Nevertheless, defendants have refused to provide this information.

Third, defendants also argue that because they have disclosed a "huge amount of discovery," plaintiffs do not need "further merits discovery." Def. Opp. 10. It is worth noting that 4,544 pages of documents is hardly noteworthy in a class action case of this nature, where plaintiffs allege that defendants' systemic and pervasive policy, pattern, and practices harm hundreds of preschool children in the District of Columbia. This volume of production is tiny compared with comparable Rule 23(b)(2) cases. In fact, it is substantially less than plaintiffs' production of 7,400 pages of documents, many of which are reports, studies, correspondence, and the like on DCPS child find issues, which defendants should have, but did not, produce to plaintiffs.[6]

In addition, the standard for discovery is not whether defendants have produced a "huge amount of discovery," but rather whether defendants have made a reasonable effort to search for all responsive documents in their custody and control. *See, e.g., In re Vitamin Antitrust Litigation*, D.D.C., Civ. Action No. 99-197, 2001 U.S. Dist. LEXIS 11536, at * 40 (D.D.C. 2001) ("The Federal Rules of Civil Procedure oblige a party to make a reasonable search for, and to produce, all non-privileged documents in its possession, custody or control that are within the requests approved by the court"). Defendants have not met this standard. As explained above (pp. 3-6) and in

---

[6] For example, plaintiffs produced eight tables of data concerning special education services for children in the District of Columbia, which defendants did not produce (bates nos. 441-691). Plaintiffs also produced DCPS SETS computer database print-outs (bates nos. 764-1148), relevant reports about DCPS's services for disabled children (bates nos. 1321-1423, 2056-2111, 4921-5259), correspondence between OSEP and DCPS (bates nos. 1510-1522), and training documents (bates no. 3145-3215), *inter alia. See* Plaintiffs' Responses to Defendants' Requests for Documents (Pl. Ex. 11). Defendants did not produce these and other documents to plaintiffs.

plaintiffs' memorandum (pp. 2-6), defendants have entirely or substantially refused to respond to numerous document requests to the extent they ask for information apart from the six named plaintiffs. They have failed to disclose numerous relevant documents identified by plaintiff. *See* pp. 3-6, above; *see* Pl. Ex. 10. The paltry amount of documents produced contain a substantial amount of non-responsive and duplicate information. *See* p. 7 above.

Defendants also argue that the information plaintiffs seek is of "extraordinary sensitivity" and therefore should not be disclosed. Def. Opp. 11. As defendants know, the Court has issued a protective order for this very purpose. The protective order sets forth a specific procedure in order to ensure that, even with confidential, sensitive documents about disabled preschool children, the identities of the children are protected. *See* Protective Order (Docket No. 10 ), para. 10 (symbol or numeric identifier is substituted for the name of the child). Moreover, most of the class discovery plaintiffs seek involves aggregate data, not "special education histories and records" of individual children.

Relying exclusively on *Waters v. United States Capitol Police Board*, 215 F.R.D. 153, 164-165 (D.D.C. 2003), an individual race discrimination case, defendants argue that they can withhold class-wide information, despite a protective order. Def. Opp.11. *Waters* does not support defendants' position. In that case, this Court denied plaintiff's motion to compel the "home address and phone number of [defendant's] employees" even though a protective order was in place. The court reasoned that "in these troubled times, unnecessary disclosure of the home addressees and phone numbers of law enforcement officers should be avoided." *Ibid.* The Court further explained that "defendant's willingness to produce the officers for deposition upon reasonable notice and its lack of objection to plaintiff's contacting them informally at work will suffice." *Ibid.*

In contrast, this is a class action where defendants have withheld much more than "addresses and phone numbers" of a few employees. Defendants' declarant, Gayle Amos, estimates they have withheld tens of thousands of pages of documents. Def. Ex. E, paras. 5-9. And unlike the plaintiff in *Waters v. United States Capitol Police Board*, who was able to contact these persons at work (as opposed to their home) and was also able to depose them upon reasonable notice, plaintiffs here do not have any other means of obtaining information about class members because defendants have not agreed to provide this information in any other way.

Finally, defendants' perfunctory treatment of plaintiffs' cases (Def. Opp. 8-9) overlooks the central fact that in all of these cases, including IDEA and Child Find cases, courts have routinely allowed class wide discovery to proceed prior to a final decision on class certification. Defendants' position, namely that discovery on the class members and allegations should await this Court's certification, is an exceptional request and contrary to the broad discovery afforded under the Federal Rules. *See* Pl. Mem. 6-12 (discussing cases). Defendants have provided no basis to justify it.

### B.    DOCUMENT PRODUCTION WOULD NOT BE UNDULY BURDENSOME

Defendants argue that even if the discovery involving class members and class allegations is relevant and routinely discoverable under the case law, it would be too burdensome to produce. Def. Opp. 14-16. Defendants complain that it would require "hundreds of hours" of staff time and "thousands of pages of documents." Def. Opp.16; Def. Ex. E, paras. 9, 13.

First, plaintiffs are not requesting perfect production. They are only asking what the discovery rules require, namely, that defendants make all reasonable efforts to respond to plaintiffs' discovery requests. By categorically refusing to produce documents related to class members and their allegations, defendants have fallen far short of this discovery standard.

13

Second, defendants have substantially misrepresented what plaintiffs seek. Plaintiffs are not seeking the case files of hundreds of children in Washington, D.C. They want policy, pattern, and practice information, including reports, investigations, evaluations, correspondence, audits, expenditure information, and the like. Plaintiffs have also asked for aggregate data on class members, *i.e.*, data about the number of children each year since 2000 who are between three and five years old who have been, *inter alia*, identified, located, referred, screened, evaluated, found eligible, transitioned from Part C to Part B, and placed in educational placements. *See* Document Requests 17, 20-28, 33, 38-39, 40-44.

Finally, defendants' complaints of burden are exaggerated. Defendants are required by federal law, as a condition of receiving funding, to produce much of the class-wide discovery that plaintiffs seek to OSEP as part of their regular reporting requirements. If defendants can produce this information regularly to OSEP, they obviously can produce it to plaintiffs. DCPS also routinely shares this information with other District agencies, such as DHS, with whom it has a Memorandum of Understanding for, *inter alia*, the sharing of information regarding the transitioning of children from IDEA Part C to IDEA Part B. *See* Pl. Ex. 8.

Similarly, as defendants well know, defendants need not turn over 330,000 pages of documents to answer plaintiffs' Document Requests. Def. Ex. E, para. 9. They need only run several search queries in its SETS or ENCORE databases. Alternatively, defendants can provide plaintiffs with access to a subset of these databases so that plaintiffs can run these queries themselves. Defendants have done this before, and it is not unduly burdensome for them to do so. *See Blackman/Jones v. District of Columbia, et al.*, D.D.C., Civil Action No. 97-1629 (PLF)(consent decree entered June 30, 2006, Docket No. 1846)(discussing data, monitoring, and

14

reporting requirements and SETS and ENCORE data); s*ee, e.g., Nelson v. District of Columbia,* D.D.C., Civil Action No. 00-2930 (GK) (protective order filed December 21, 2001, Docket No. 49) (providing plaintiffs with a database of information concerning mobility-impaired students within DCPS).

Accordingly, because the discovery plaintiffs seek is relevant to the merits of their case regardless of this Court's decision on class certification and because it would not be unduly burdensome for defendants to produce, the Court should reject General Objection 2.

III

### THE COURT SHOULD REJECT DEFENDANTS' OBJECTION TO PRODUCING DOCUMENTS THAT PRE-DATE 2003

Plaintiffs have requested discovery beginning in 2000 and continuing through the present in order to obtain information over a reasonable period of time to prove their policy, pattern, and practice claims. In General Objection 1, defendants refused to produce documents that were created prior to January 1, 2003, arguing that they are irrelevant and, in any rate, too burdensome to produce. Neither ground for defendants' refusal is valid.

### A.    PLAINTIFFS NEED DOCUMENTS PRE-DATING JANUARY 1, 2003

In their opposition, defendants argue that plaintiffs do not need any documents pre-dating 2003 to prove their case and that documents over a two-to-three-year period are sufficient. Def. Opp. 12-14.

Plaintiffs need documents for at least a five-year period, starting from 2000, to understand fully defendants' activities and practices related to their compliance with the FAPE and Child Find requirements of federal and District of Columbia law. Plaintiffs' class action is based on a policy, pattern, and practice claim seeking systemic injunctive relief in order to remedy defendants'

numerous and pervasive failures with respect to special education for preschool children in the District of Columbia. To prevail, plaintiffs have the burden of establishing that defendants' violations were "standard operating procedure" and not merely isolated or sporadic. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977). In order to support the relief that plaintiffs seek, plaintiffs have the burden of establishing that defendants' failures are numerous, systemic, pervasive, and repeated, and that the injunctive relief they seek is necessary and narrowly tailored to the violations. For this reason, much of the discovery plaintiffs have sought consists of aggregate data on identifications, screenings, evaluations, eligibility determinations, IEP meetings, and educational placement determinations. Two to three years is too short a period of time to allow plaintiffs to gather sufficient information so that plaintiffs and their experts can draw reliable, statistically sound conclusions. *Cf. Cooper v. Southern Company*, 390 F.3d 695 (11th Cir. 2004) (plaintiffs in a putative class action had failed to establish a pattern and practice discrimination claim because, in part, of the deficiencies in their expert reports and statistical analyses, which failed to include sufficient information about plaintiffs' facts and circumstances).

Moreover, as plaintiffs have explained, defendants' violations with respect to the six named plaintiffs pre-dates January 1, 2003. *See* Pl. Mem. 16; Complaint, paras. 21-22, 42-43, 45-50, 55-56. Defendants do not dispute this. Def. Opp. 13. Instead, they argue that the only documents they need produce prior to 2003 are those pertaining to the six named plaintiffs. They argue that they may continue to withhold all other responsive documents, including policy, pattern, and practice information, programmatic information, statistical information, and information on defendants' treatment of other class members that pre-date 2003. They further argue this position even if the case is ultimately certified.

Defendants' position makes no sense. Plaintiffs need to know what policies and practices defendants followed while they were mistreating the named plaintiffs and violating their FAPE and Child Find rights prior to 2003. The decisions defendants made with respect to the six individual named plaintiffs did not occur in a vacuum; they are a result of defendants' policies and practices in effect during the time they were violating their FAPE and Child Find rights. *Cf. Waters v. United States Capitol Police Board, supra*, 216 F.R.D. at 158 (permitting "pattern and practice" discovery because to "permit discovery only of a single decision-maker's prior decisions so atomizes the organization that it ignores the possibility that isolated decisions are the result of an organizational culture or ethos that encourages or condones discriminatory behavior").

In their opening brief, plaintiffs pointed to numerous cases allowing discovery for periods much longer than what plaintiffs seek here. Pl. Mem. 15-19. Many of these cases were individual discrimination cases, where the claims and relief sought were substantially more narrow than those in this case. *See* Nevertheless, those courts routinely ruled that discovery for a period several years prior to the earliest discriminatory act was reasonable, often for five or more years. *Ibid.* It follows, *a fortiori*, where, as here, the pattern and practice claims and the systemic injunctive relief sought are more extensive, discovery pre-dating 2003 is reasonable, particularly since plaintiffs allege that defendants' discriminatory actions against plaintiffs began prior to 2003. Pl. Mem. 16.

Defendants, ignoring plaintiffs' cases, cite four cases, which they believe supports their position that discovery prior to 2003 is irrelevant. Def. Opp. 12. These cases do not support defendants' argument. In fact, they further support plaintiffs' position.

In all four cases, which were individual employment discrimination cases, not pattern and practice class cases, the courts ruled that discovery for two to three years prior to the discriminatory

17

acts complained of was reasonable.  The courts tied the discovery period to the discriminatory allegations in the complaint, not the date the complaint was filed.  For example, in *Obiajulu v. City of Rochester, Department of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996), the Court permitted discovery dating back to 1992, two years prior to plaintiff's employment termination in 1994.  In *Finch v. Hercules* 149, F.R.D. 60, 65 (D. Del. 1993), the Court permitted discovery extending to "two years of information prior to plaintiff's dismissal," which was the discriminatory act complained of.  In *Glenn v. Williams*, 209 F.R.D. 279, 282 (D.D.C. 2002), also an individual employment discrimination case, the court limited discovery to three years prior to the discrimination complained of.  The Court noted that the discovery would be limited to three years prior to this discriminatory act because the two plaintiffs were not even employed by the same department or supervisors before that time.  *Ibid*  Finally, in *Hardrick v. Legal Services Corp.*, 96 F.R.D. 617, 619 (D.D.C. 1983), the Court limited discovery in an individual employment discrimination case for a two year period prior to plaintiff's termination because, unlike in this case, defendants' "practices and procedures" were not "remotely involved in this case."

As in these cases, plaintiffs here asked only for discovery beginning two to three years prior to the discriminatory acts complained of.  In this case, defendants' violations began in 2002 at the latest.  Complaint, paras. 20-21.  Thus, discovery beginning in 2000 is reasonable and consistent with the case law.  Moreover, because this is a pattern and practice class action, the period of discovery prior to the discriminatory acts alleged is even more important than in the individual discrimination cases cited by defendants.  Defendants have cited no case to the contrary.

**B.    DISCOVERY PRE-DATING 2003 WOULD NOT BE UNDULY BURDENSOME TO PRODUCE**

Defendants also claim that producing documents before 2003 would be unduly burdensome because their files are so disorganized they could not possibly locate these documents.  Def. Opp. 14 ("when the burdensomeness of going back to an earlier time, as to which records and documents are scattered and not easy to come by, is factored in, the reasonableness of our General Objection 1 is manifest* * *").

First, it is no excuse for defendants' discovery failures that their files are disorganized.  If this excuse were permitted, it would only encourage parties to avoid discovery obligations by failing to maintain records and files in an orderly fashion.

Second, as explained above (p. 13), plaintiffs are not asking defendants for perfect production.  They are only asking what the discovery rules require, namely, that defendants make reasonable efforts to respond to plaintiffs' discovery requests.  By categorically refusing to produce any documents prior to 2003, defendants have fallen far short of this discovery standard.  They have not even tried.

Third, as explained above (p. 13), defendants are obligated by federal law as a condition of receiving funding to produce the information that plaintiffs seek to OSEP, as part of their regular reporting requirements.  Consequently, it should not be burdensome to provide the same information in discovery. Similarly, any information that DCPS shares with DOH or DHS should also not be burdensome to provide.

Finally, as explained above (pp. 14-15), defendants have provided this type of information in the course of other class actions, belying the argument that it would be impossible to produce here. *See Blackman/Jones v. District of Columbia, et al.*, D.D.C., Civil Action No. 97-1629 (PLF)(consent

decree entered June 30, 2006, Docket No. 1846)(discussing data, monitoring, and reporting requirements; discussing analyses based on SETS and ENCORE data); *Nelson v. District of Columbia*, D.D.C., Civil Action No. 00-2930 (GK) (protective order filed December 21, 2001, Docket No. 49)(providing plaintiffs with a database of information concerning mobility-impaired students within DCPS).

Accordingly, since documents that pre-date 2003 are relevant and not unduly burdensome to produce, and since courts even in individual cases have ordered a longer period of discovery than plaintiffs seek here, Objection 1 should be overruled.

## IV

### THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ADDITIONAL DISCOVERY IN THE AREAS IDENTIFIED BY PLAINTIFFS

On March 16, 2006, plaintiffs sent defendants a letter listing numerous documents, identified by name and date, that defendants had failed to produce. Pl. Ex. 9. The documents include reports, grant applications, correspondence, and other information authored by DCPS or the U.S. Department of Education related to DCPS's IDEA activities. The letter listing these documents was produced at defendants' request during their March 15, 2006 meet and confer that plaintiffs provide examples of documents that defendants had failed to produce. Defendants argue that they have none of the documents contained in the letter plaintiffs provided to defendants on March 16, 2006. Def. Mem. 16-19. Defendants have submitted an affidavit in support of their assertion that they do not have any of these responsive and relevant documents. Def. Ex. F (Declaration of Karen Griffin, dated July 26, 2006). This affidavit is not credible for the following reasons.

First, it is not believable that Ms. Griffin, DCPS Special Assistant, is the sole employee, among the hundreds of DCPS employees who maintain or possess any documents between DOE and

DCPS concerning DCPS's IDEA performance and activities. *See* Def. Opp. 17 ("she is the only DCPS employee who maintains such documents in her possession"). Defendants were required to ask other employees for responsive documents. Their failure to do so demonstrates their cavalier treatment of their discovery obligations.

Second, DCPS is contending that they do not have or have "lost or destroyed" all of these documents, which, under federal law, they are required to submit to the U.S. Department of Education. *See* Def. Ex. F, para. 9. It is incredible that the kinds of documents that plaintiffs requested would no longer be in DCPS's possession. The documents plaintiffs identified are not inconsequential documents of a few pages. Rather, they are substantial, material documents that include, for example, DCPS's Annual State Application under Part B of the IDEA for Federal Fiscal Year 2004; the DCPS's Federal Fiscal Year ("FFY") 2002 Annual Performance Report submitted to OSEP on April 16, 2004; numerous Special Conditions Reports, dated October 29, 2004, January 14, 2005 April 15, 2005, June 17, 2005, submitted to OSEP, and the reports submitted on November 1, 2004, and January 17, 2005, *inter alia*, to OSEP; and numerous Progress Reports and Final Progress Reports due as part of the FFY 2002 and FFY 2003 Annual Performance Reports, including those dated March 31, 2004, July 16, 2004, October 29, 2004, and February 27, 2005. *See* Pl. Ex. 9. Plaintiffs' March 16, 2006 letter contains numerous other such documents. *Ibid.*

Further, the failure of defendants to locate these documents indicates a larger problem, namely, that defendants have done a poor job of searching for documents responsive to plaintiffs' Document Requests in all of the offices of the agency that may have them. They have also failed to ask all relevant employees to search for documents. As plaintiffs made clear in Plaintiffs' Exhibit

10, there are many more documents that are responsive to plaintiffs' documents requests that defendants have failed to produce.

Accordingly, the Court should order defendants to conduct a thorough search for documents responsive to all of plaintiffs' document requests in all relevant offices and to certify to the Court and to plaintiffs the methods and steps used to search for responsive documents.

## CONCLUSION

For the foregoing reasons, this Court should grant plaintiffs' Motion to Compel.

Respectfully submitted,

_____/s/_____
BRUCE J. TERRIS (D.C. Bar No. 47126)
SHINA MAJEED (D.C. Bar No. 491725)
TERRIS, PRAVLIK & MILLIAN, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100


_____/s/_____
JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052


_____/s/_____
MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
1320 19th Street, N.W., Suite 200
Washington, DC 20036

August 18, 2006