**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| | ) | |
| **DL[1]**, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1437 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**MEMORANDUM OPINION**

This matter comes before the Court on the defendants' Motion [18] to Dismiss.  Upon consideration of the defendants' motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that the defendants' motion will be denied.  Also pending before this Court with regard to the instant motion are Plaintiffs' Motion [35] to Strike Defendants' Supplement to their Reply and Plaintiffs' Consent Motion [36] to File a Sur-reply.  For the reasons set forth below, plaintiffs' motion to strike will be granted, and plaintiffs' motion to file a surreply will be denied as moot.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must dismiss claims over which it has no subject matter jurisdiction.  In evaluating whether it has subject matter jurisdiction, the court must construe the complaint liberally, and give the plaintiff the benefit of all reasonable inferences.  See Tozzi v. EPA, 148 F. Supp. 2d 35, 41 (D.D.C. 2001) (citing

---

[1] Pursuant to Local Civil Rule 5.4(f)(2), minors are identified by their initials in this Amended Complaint.

1

Scheuer v. Rhodes, 416 U.S. 232 (1974)).  Under 12(b)(1), the plaintiffs bear the burden of

establishing that the court has jurisdiction.  In accordance with this governing standard, the Court

will credit as true the factual allegations in the plaintiffs' amended complaint, which are set forth

in the "Background" section, below.

In this case, plaintiffs challenge defendants' policy, pattern and practice of failing to

identify, locate, evaluate and offer special education and related services to children in the

District of Columbia who are between the ages of three and five years old.  Named plaintiffs are

children with sensory, emotional, physical, cognitive or language disabilities who would like to

obtain special education and related services from the District of Columbia Public Schools

("DCPS") as preschool children, but allegedly have been denied, delayed or otherwise deprived

of access to these services because of defendants' systemic failures to comply with federal and

District of Columbia law.  (Am. Compl. 2-3.)

Under federal law, District of Columbia Public Schools ("DCPS") must provide children

with disabilities the same service they provide to other children: a free and appropriate public

education ("FAPE").  Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.*

(1970) ("IDEA"), *amended by* Pub. L. No. 108-446, 118 Stat. 2647 (2004). The laws also require

the District of Columbia to identify, locate, evaluate and offer special education and related

services to all children with disabilities who need them, including to preschool children. 20

U.S.C. 1412(a)(3)(A); 34 C.F.R. 300.125; 5 DCMR 3002.3.

The duty to "identify, locate, and evaluate" is also known as the "Child Find" duty and

has long been a core component of the IDEA.  The Child Find duty mandates that defendants take

affirmative steps to ensure that children with disabilities in the District of Columbia are "found"

and are given the opportunity to enter the special education system and receive special education and related services.

## **BACKGROUND**

This case revolves around the education of seven young children.  Plaintiffs allege the following.

(1)  DL is a five-year-old boy who suffers from a disability that would qualify him for special education and related services under the IDEA.  (See Am. Compl. ¶¶ 6-7.)  He exhibits behavioral and emotional problems, as well as speech and language delays.  Plaintiffs allege that defendants have known that DL may have a qualifying disability since at least June 2004 and have failed to evaluate him or offer him special education and related services.  (Id. at ¶ 7.)  In June 2005, DL's guardian *ad litem* requested a due process hearing to challenge DCPS's failure to evaluate or offer special education services to DL.  (Id. at ¶ 14.)  Due process hearings were held in DL's case in September and October 2005 regarding defendants' Child Find failures and the Hearing Officer ordered DCPS to provide compensatory education for DL.  (Id. at ¶ 17.)  DL remains at Moten Elementary School on an interim basis and is receiving some services.  (Id. at ¶ 18.)  DL has exhausted his administrative remedies.

(2)  XY is a four-year-old boy who is suffers from Autism Spectrum Disorder, which was diagnosed in May 2005.  (See Id. ¶¶ 19.)  Plaintiffs allege that defendants have failed repeatedly to comply with the Child Find and FAPE requirements for XY.  (Id. at ¶ 21.)  In February and March 2006, two due process hearings were held for XY.  (Id. at ¶ 25.)  The hearing officer determined that defendants had violated the Child Find and FAPE provisions by failing to identify, locate, evaluate, and offer XY special education services within the time frames

mandated by federal and District of Columbia law.  (Id.)  The judge issued a written decision that

ordered DCPS immediately to evaluate XY, develop an appropriate IEP, and offer an appropriate

placement.  (Id.)  The judge also ordered immediate relief, including compensatory education.

(Id.)  Because DCPS subsequently had failed to develop an appropriate IEP or offer an

appropriate placement, the parties appeared for a third due process hearing on July 17, 2006.  (Id.

at ¶ 26.)  The Hearing Officer ruled in favor of the parents during the hearing and DCPS has not

yet complied with this decision.  XY and his parents have exhausted their administrative

remedies.  (Id.)

        (3)  HW is a six-year-old disabled girl who has speech and language delays which impair

her ability to participate in the classroom and communicate with others.  (See Id. ¶¶ 27-28.)

Since January 2005, HW has requested that DCPS comply with the Child Find requirements and

identify, locate, evaluate, and offer HW special education and related services.  (Id. at ¶ 29.)

Plaintiffs allege that DCPS completed referral forms for HW in March 2005, but since then, has

failed to screen HW, evaluate her, determine her eligibility, convene an IEP meeting, or offer an

appropriate educational placement.  (Id.)  HW's parents have waited one and a half years for

DCPS to comply with its Child Find requirements are still waiting for DCPS to comply with the

Child Find requirements and to evaluate HW, determine her eligibility, develop an IEP, and offer

her an appropriate placement.  (Id. at ¶ 30.)

        (4)  TL is a three year-old disabled boy diagnosed with a disorder of the vestibular

system, including an underlying sensory integration and listening disorder, motor apraxia, and a

profile consistent with Autism Spectrum Disorder.  (See Id. at ¶ 31.)  Plaintiffs allege that DCPS

has failed to comply with the Child Find and FAPE requirements.  (Id. at ¶ 33.)  On July 27,

4

2006, DCPS found TL eligible for special education services. DCPS wrote an IEP for TL but offered a program that is overly restrictive. (<u>Id</u>. at ¶ 38.) TL and his parents are still waiting for an appropriate IEP and educational placement. (<u>Id</u>.)

(5) JB is a six-year-old boy who was diagnosed with autism in January of 2004. Plaintiff claims that defendants failed to offer him any special education services during the 2004-2005 and 2005-2006 school years. (<u>Id</u>. at ¶ ¶ 39-40.) From 2002 to 2004, JB's mother tried to place JB in several private preschools in the District of Columbia but was forced to withdraw him as a result of his behavioral problems. (<u>Id</u>. at ¶ 43.) Ultimately, DCPS performed an occupational therapy evaluation for JB and drafted an Individual Education Plan ("IEP"). The IEP included a full-time special education program with small classes, two hours of speech language therapy weekly, and three 30-minute sessions of occupational therapy weekly. (<u>Id</u>. at ¶ 50.) Plaintiffs allege that DCPS did not timely implement JB's IEP or offer an educational placement for the 2004 - 2005 school year until August 2005, 17 months after JB's mother requested these services. JB attended private childcare at his mother's expense during this time. (<u>Id</u>. at ¶ 51.) In May 2006, DCPS offered JB's parents a compensatory education proposal for the 2004-2005 school year; the parties are in discussions regarding this proposal. (<u>Id</u>. at 52.)

(6) FD is a three-year-old boy who was born prematurely, at 29 weeks. (<u>Id</u>. at ¶¶ 54-55.) He was diagnosed with end stage renal disease, which resulted in a kidney transplant on March 31, 2004. (<u>Id</u>.) As a result of his premature birth, FD also suffers from a number of other medical conditions, including Prune Belly Syndrome, spastic diplegia, and developmental delay. (<u>Id</u>.) FD exhibits significant delays in gross and fine motor skills and visual motor skills. His visual-perceptual skills, problem-solving skills, and communication skills are also delayed. FD

uses a posterior walker at all times and wears ankle-foot orthoses.  (<u>Id</u>. at ¶ 56.)  He also requires a special chair to support his torso for seated work.  (<u>Id</u>.)

DCPS created an IEP for FD which was to be implemented on September 1, 2004.  (<u>Id</u>. at ¶ 59.)  In December 2004, FD's parents requested a due process hearing.  (<u>Id</u>. at ¶ 60.)  In March 2005, the parties entered into a settlement agreement whereby DCPS agreed to provide a placement that included a classroom with no more than 15 students, a teacher and an instructional assistant, and a nurse in the building full-time.  (<u>Id</u>. at ¶ 60.)  Plaintiffs allege, however, that defendants failed to offer compensatory education and also failed to provide FD the special chair that he needs to perform seated activities.  (<u>Id</u>. at ¶ 62.)  On March 2, 2006, and because of defendants' continued Child Find and FAPE failures, the parties again attended a due process hearing and the parties entered into a settlement agreement during the hearing regarding some of these matters.  (<u>Id</u>. at ¶ 63.)

In March 2006, DCPS informed FD's parents that it would be changing FD's placement to Takoma Elementary School.  (<u>Id</u>. at ¶ 64.)  Plaintiffs allege that Takoma is not a medically appropriate or safe placement for FD.  FD's parents have objected to Takoma as a placement but DCPS has yet to offer an appropriate educational placement for the 2006-2007 school year.  (<u>Id</u>.)  FD has exhausted his administrative remedies.

(7)  TF is a six-year-old boy who has speech and language problems.  In June 2005, a due process hearing was conducted to challenge DCPS's failure to evaluate TF.  (<u>Id</u>. at ¶ 73.)  During the hearing, DCPS agreed to provide TF with four 30-minute sessions of speech language therapy weekly during the summer of 2005.  (<u>Id</u>.)  The administrative hearing officer found that DCPS had conceded that there had been a Child Find violation and ordered that DCPS evaluate TF on

an expedited basis no later than July 8, 2005.  (Id.)  DCPS was ordered to provide TF with a

schedule for summer speech language services no later than June 24, 2005.  (Id.)  DCPS failed to

do so until July 19, 2005.  On September 19, 2005, defendants found TF to be eligible for special

education and related services.  (Id. at ¶ 74.)  DCPS completed an IEP for him, which included

10 hours of specialized instruction and 1 hour of speech language therapy, at his neighborhood

school, Stanton Elementary School.  (Id.)  On June 8, 2006, TF's mother attended an IEP Review

meeting. (Id. at 75.)  During the meeting, defendants determined that TF continued to need

special education and related services.  (Id.)  TF and Ms. Moore have exhausted their

administrative remedies.

## DISCUSSION

Defendants argue plaintiffs' complaint should be dismissed because plaintiffs did not

exhaust their administrative remedies before filing the present action.  It is a "long-settled rule of

judicial administration that no one is entitled to judicial relief for a supposed or threatened injury

until the prescribed administrative remedy has been exhausted."  Myers v. Bethlehem

Shipbuilding Corp., 303 U.S. 41, 50–51 (1938).  The exhaustion doctrine functions primarily to

forestall the "premature interruption of the administrative process" by the courts.  McKart v.

United States, 395 U.S. 185, 193 (1969).

The IDEA does not entitle private parties to bring an action before seeking administrative

relief.  However, exhaustion is not required when it is demonstrated that continuing through the

administrative process would be futile or inadequate.  Honig v. Doe, 484 U.S. 305, 327 (1988).

But, in this Circuit, the "futile or inadequate" standard is difficult to meet.  Randolph-Sheppard

Vendors of Am. v. Weinberger, 795 F.2d 90, 106 (D.C. Cir. 1986) ("The rule is that the

exhaustion requirement may be waived in only the most exceptional circumstances.") (citations omitted).

Plaintiffs respond that exhaustion is not required because exhaustion of remedies would be futile and the administrative remedies inadequate. Moreover, plaintiffs maintain that even if exhaustion were required, that only one named plaintiff needs to exhaust his or her administrative remedies in a class action, and that three named plaintiffs have already done so.[2] The Court agrees with plaintiffs.[3]

The Supreme Court in Honig v. Doe held that exhaustion of administrative remedies is excused in cases brought under the IDEA where doing so would be futile or inadequate. 484 U.S. 305, 327 (1988). Exhaustion is excused on grounds of futility or inadequacy of administrative remedies in three circumstances: "if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." Murphy v. Arlington Central School District Board of Education, 297 F.3d 195, 199 (2d Cir. 2002); Beth V. by Yvonne V. v. Carroll, 87 F.3d

---

[2] The Court agrees that even if exhaustion of administrative remedies is required, plaintiffs have satisfied this requirement. The Court of Appeals for the District of Columbia Circuit has held that only one named plaintiff is required to exhaust his or her administrative remedies in civil rights class actions. See e.g. Hartman v. Duffy, 88 F.3d 1232, 1235 (D.C. Cir. 1996) (holding "[t]he district court applied this court's doctrine of vicarious exhaustion-- that exhaustion of administrative remedies by one member of the class satisfies the requirement for all others with sufficiently similar grievances . . . ."); Foster v. Gueory, 655 F.2d 1319, 1321-1322 (D.C. Cir. 1981), (noting that "each individual plaintiff in a Title VII class action suit need not individually file an EEOC complaint, but . . . it is sufficient if at least one member of the plaintiff class has met the filing prerequisite."); Association for Community Living v. Romer, 992 F.2d 1040, 1045 (10th Cir. 1993) ("we do not hold that every plaintiff in a class action must exhaust the IDEA's administrative remedies. There may be cases where the purposes of the exhaustion doctrine would not be furthered by having even one plaintiff exhaust the IDEA's administrative remedies. Even where exhaustion is necessary, the exhaustion of a few representative claims may be sufficient").

[3] In a separate Order today the Court will grant plaintiffs' motion [5] for class certification, but even if this was not the case, defendants' Motion [18] to Dismiss would still be denied.

80, 88 (3d Cir. 1996); <u>Association for Community Living v. Romer</u>, 992 F.2d 1040, 1044 (10th

Cir. 1993); <u>Hoeft v. Tucson Unified School District</u>, 967 F.2d 1298,1303-1304 (9th Cir. 1992);

<u>Heldman v. Sobol</u>, 962 F.2d 148, 158-159 (2d Cir. 1992).

## A.     Futility

In determining whether exhaustion of administrative remedies would be futile, courts

look to whether the purposes of the pertinent administrative scheme would be furthered by

requiring exhaustion in the particular case.  <u>McKart v. United States</u>, 395 U.S. 185, 193 (1969).

In <u>Cox v. Jenkins</u>, the Court of Appeals for the District of Columbia Circuit concluded that

exhaustion serves two primary purposes in IDEA cases:

> [T]wo sound policies support the requirement that plaintiffs exhaust
> administrative remedies before bringing federal actions.  First, . . .
> [i]f the expert agency cannot resolve the problem finally, the record
> made in the administrative proceedings will be extremely helpful to
> the court, since the administrative agency will likely have probed the
> issue with more expertise than a federal court could bring . . . .
> Second, the states as well as the federal government have an interest
> in providing a means whereby official abuse can be corrected without
> resort to lengthy and costly trial.

878 F.2d 414, 419 (D.C. Cir. 1999).

In this case, plaintiffs do not challenge an individual educational decision by DCPS

where agency expertise would be important.  <u>Cf.</u>, <u>Polera v. Board of Education</u>, 288 F.3d at 489

(2d Cir. 2002) (because case challenged "content of IEPs" which had "failed to spell out the

services to be provided," a hearing officer's expertise would be useful to judicial resolution);

<u>Moss v. Smith</u>, 794 F. Supp. 11, 13-14 (D.D.C. 1992) (hearing officer should have made

educational placement decision for 1992-1993 school year).  Instead, plaintiffs claim that

defendants have a policy, pattern, and practice of failing to provide hundreds of pre-school

9

children in the District of Columbia with a FAPE because of their systemic failure to comply

with the federal and local Child Find requirements.  (Pls.' Opp'n 4-5.)  Specifically, plaintiffs

allege that defendants lack "policies and procedures" on Child Find necessary to identify, locate,

evaluate and offer special education services to all disabled pre-school children.  Plaintiffs also

allege that defendants' failures are "widespread and systemic" and affect all disabled pre-school

children equally regardless of a particular child's individual circumstances or educational needs.

(Id.)

       This case is similar to other IDEA class actions where courts have excused exhaustion

because agency expertise and an administrative record would be of no help.  In J.S. v. Attica

Central Schools, for example, the United States Court of Appeals for the Second Circuit excused

exhaustion in an IDEA class action, explaining:

> We acknowledge . . . the importance of exhaustion in 'textbook'
> cases presenting issues involving individual children where the
> remedy is best left to educational experts . . ..  However, the
> complaint in this case does not allow us to conclude that this is such
> a 'textbook' case [of exhaustion] . . . . The district court made clear
> that the complaint does not challenge the content of [IEP's], but
> rather the School District's total failure to prepare and implement
> [IEP's]. . . . Further, the complaint contains additional allegations of
> systemic problems, including failure to perform timely evaluations;
> failure to provide parents with required procedural safeguards
> regarding identification, evaluation, and accommodation of otherwise
> disabled children; and failure to perform legally required
> responsibilities in a timely manner . . . .

386 F.3d 107, 114-115 (2d Cir. 2004); see also id. at 114 (collecting similar cases); McKart, 395

U.S. at 198-99 (exhaustion excused because question required no "particular expertise" and

"judicial review would not be significantly aided by that kind of additional administrative

decision").

The Court concludes that requiring exhaustion here would be futile because, given the nature of the claims presented, agency expertise would provide no benefit to the judicial resolution of this case.

In the alternative, the Court concludes that exhaustion may be excused in this case because requiring exhaustion here would not provide DCPS with the opportunity to take corrective action. See Cox, 878 F.2d at 419. Defendants have had ample notice of their Child Find failures and have nevertheless failed to remedy the problem if the allegations in the Amended Complaint are true, which the Court must assume for purposes of this motion.

On numerous occasions, the U.S. Department of Education ("DOE"), Office of Special Education Programs ("OSEP"), has notified defendants of their systemic failures to comply with Child Find requirements, including, inter alia, the requirement to transition toddlers from the District of Columbia Early Intervention Program ("DCEIP") to DCPS special education services when they turn three years old (referred to as "Early Childhood Transitioning"). See, e.g., June 18, 2002, District of Columbia Monitoring Report, Pls.' Opp'n, Ex. 1, at 4-5, 15-17 (concluding that defendants' actions with respect to Child Find and Early Childhood Transitioning were not in compliance with IDEA standards). OSEP has informed DCPS on many occasions about their continued failures and non-compliance in these areas.[4] Nevertheless, despite repeated

---

[4] See, e.g., Letter from Troy R. Justesen, Acting Director, OSEP, to Clifford B. Janey, Superintendent, DCPS, Nov.2, 2005, p. 8 (failures regarding "Early Childhood Transition") and p. 13 (failures regarding "Pre-school Performance Outcomes")(Pl. Ex. 2); Letter from Troy R. Justesen, Acting Director, OSEP, to Clifford B. Janey, Superintendent, DCPS, Aug. 5, 2005, p. 2 ("your failure to provide timely initial evaluations and reevaluations . . . resulted in the Department imposing the FFY 2004 Special Conditions")(Pl. Ex. 3); Letter from Patricia J. Guard, Acting Director, OSEP, to Clifford B. Janey, Superintendent, DCPS, Mar. 18, 2005, p. 9 (failures regarding Early Childhood Transitioning)(Pl. Ex. 4); Letter from Stephanie Smith Lee, Director, Office of Special Education Programs, to Yvonne Gilchrist, Director, Department of Human Services, Dec. 22, 2004, pp. 4-7 (failures regarding Child Find), pp. 11-12 (failures regarding Early Childhood Transitioning)(Pl. Ex. 5). In addition, on August 31, 2005, DCPS submitted its Annual State Application under Part B, in which it stated that it was not able to ensure that

11

notifications by OSEP, plaintiffs, and others, the Amended Complaint alleges that DCPS has failed to take corrective action.[5]

This Court has concluded that DCPS's failure to acknowledge errors and take corrective action once notified may excuse exhaustion as well. In <u>Massey v. District of Columbia</u>, this Court excused exhaustion in an IDEA case:

> Because of DCPS's repeated failures to follow unambiguous terms of the law and to acknowledge and correct its mistakes, this Court cannot find that DCPS' process for administrative relief would be adequate. DCPS has provided this Court no basis on which to infer it is taking seriously the Masseys' claims, nor to trust that it will be able to follow the IDEA in addressing those claims. . . . In this Court's opinion, the litany of DCPS failures reveals that it is apparently unable to follow statutory procedures in the first place. Worse yet, DCPS appears to be incompetent to address, in the manner required by the IDEA, a parents' complaints about those failures. Therefore, this Court finds that plaintiffs have demonstrated that pursing their claim through the administrative process would be inadequate . . . .

400 F. Supp. 2d 66, 73-74 (D.D.C. 2005).

As in <u>Massey</u> and the cases cited above, DCPS has received notice repeatedly about its Child Find failures. Nevertheless, defendants have failed to take corrective action. The Court therefore concludes that administrative remedies would be inadequate in this case. Accordingly, exhaustion may also be excused on this ground.

**B. Plaintiffs' Motion to Strike Defendants' Supplement**

---

pre-school children in the Early Intervention Program were being transitioned to special education services once they turned three years old. <u>See</u> Pl. Ex. 6, p.3, #10.

[5] Prior to filing this lawsuit, on May 26, 2004, counsel for plaintiffs met with Dr. Ray Bryant, the then head of special education at DCPS, to discuss DCPS' Child Find failures. Dr. Bryant stated that Child Find was not a problem in the District of Columbia. <u>See</u> Affidavits of Jeffrey S. Gutman (para. 11), Margaret Kohn (para. 10), and Kathleen L. Millian (para. 8), attached as Pls.' Exhibits 5, 7, and 8 to Pls.' Motion for Class Certification.

On January 17, 2006, and without seeking leave of the Court and without requesting an extension of time, defendants filed Defendants' Supplement [34] to Their Reply to Plaintiffs' Opposition to Defendants' Motion for Dismissal of the Complaint for Failure to Exhaust Administrative Remedies.  Plaintiffs move to strike Defendants' Supplemental Reply as unnecessary and untimely.  Defendants contend that the Federal Rules of Civil Procedure contains no rule expressly barring or limiting parties from filing supplemental briefing and that therefore supplemental briefing may be filed at their discretion.  (Defs.' Opp'n 2.)  The Court concludes that defendants' supplement is untimely.

Under Local Civil Rule 7(d), defendants have "five days after service of the memorandum in opposition" to file their reply.  This deadline means that the entire brief, including affidavits and attachments, must be filed within five days.  Parties may seek an extension of time if they cannot comply with the deadline in the Rules but cannot delay filing the supporting documents for their brief until whatever date they choose.  See Federal Rule of Civil Procedure 6(b).  In this case, defendants' Supplemental Reply was filed three weeks later, on January 17, 2006.  Defendants did not request leave to file their Supplemental Reply nor did they request an extension of time within which to file this Supplemental Reply.  Therefore, defendants' Supplemental Reply will be struck as untimely and filed without leave of the Court.[6]

### CONCLUSION

---

[6] Defendants' Supplemental Reply also contains an argument made for the first time in defendants' Reply. Defendants argued that plaintiffs' case should be dismissed because DCPS does not have a "policy, pattern, and practice" of Child Find violations and because all prior Child Find problems have now been corrected.  (See Defs.' Reply 4-6.)  Defendants should have included this argument in their motion to dismiss, rather than waiting to raise it in their Reply.  See, e.g., Presbyterian Medical Center of the University of Pennsylvania Health Systems v. Shalala, 170 F.3d 1146, 1152 (D.C. Cir. 1999) (court need not consider an argument raised for the first time in reply brief); Norwood v. FERC, 962 F.2d 20, 25 (D.C. Cir. 1992) ("because the petitioner did not preserve the argument in its opening brief, we reject as untimely the petitioner's attempt to raise the point in its reply brief").

For the reasons stated herein, defendants' motion to dismiss will be denied.  Plaintiffs' Motion [35] to Strike Defendants' Supplement to their Reply shall be granted and Plaintiffs' Consent Motion [36] to File a Sur-reply is denied as moot.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, August 25, 2006.