**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ | ) |
| DL,[1/] _et al._, on behalf of themselves | ) |
| and others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, _et al._ | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' RESPONSES TO**
**PLAINTIFFS' FIRST, SECOND, AND THIRD SETS OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS AND PLAINTIFFS'**
**FIRST SET OF INTERROGATORIES**

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, plaintiffs move to compel

defendants' responses to Plaintiffs' First Set of Requests for Production of Documents, served on

December 28, 2005, Plaintiffs' Second Set of Requests for Production of Documents, served on

September 17, 2007, and Plaintiffs' First Set of Interrogatories and Third Set of Requests for

Production of Documents, served on September 28, 2007, and move this Court to order defendants'

to pay plaintiffs' reasonable expenses incurred in making plaintiffs' Motion to Compel, including

attorneys' fees, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure.

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure and Local Civil Rule 7(m),

the parties have met and conferred on numerous occasions in an attempt to resolve their disputes.

Plaintiffs have also sent defendants many letters regarding the issues involved in this motion to

compel.  The parties have resolved some, but not most, of their disputes.

---

[1/] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

A memorandum of law and proposed order accompany this motion.

Respectfully submitted,

/s/ Bruce J. Terris

BRUCE J. TERRIS (D.C. Bar No. 47126)
EMILY A. BENFER (D.C. Bar No. 499884)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC  20005
(202) 682-2100

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052
(202) 994-7463

MARGARET A. KOHN (D.C. Bar No. 174227)
1320 19th Street, N.W., Suite 200
Washington, DC 20036
(202) 667-2330

February 4, 2008                    *Counsel for Plaintiffs*

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DL,[1/] *et al.*, on behalf of themselves  )
and all others similarly situated,  )
)
                       Plaintiffs,  )
)
                      v.  )           Civil Action No. 05-1437 (RCL)
)
THE DISTRICT OF COLUMBIA,  )
*et al.*,  )
                     Defendants.  )
)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST, SECOND, AND THIRD SETS OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND PLAINTIFFS' FIRST SET OF INTERROGATORIES

BRUCE J. TERRIS (D.C. Bar No. 47126)
EMILY A. BENFER (D.C. Bar No. 499884)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC 20005
(202) 682-2100

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052
(202) 994-7463

MARGARET A. KOHN (D.C. Bar No. 174227)
1320 19th Street, N.W., Suite 200
Washington, DC 20036
(202) 667-2330

*Counsel for Plaintiffs*

---

[1/] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

## TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   DEFENDANTS' GENERAL OBJECTIONS TO PLAINTIFFS'
     DISCOVERY REQUESTS ARE INVALID . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   PLAINTIFFS' DISCOVERY REQUESTS ARE RELEVANT TO
          THE CLAIMS AND DEFENSES IN THIS CASE . . . . . . . . . . . . . . . . . 9

     B.   DEFENDANTS HAVE NOT SHOWN ANY UNDUE BURDEN  . . . . 13

     C.   DEFENDANTS SHOULD BE REQUIRED TO PROVIDE
          DISCOVERY DATING FROM 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     D.   THE DISCOVERY REQUESTED IS WITHIN THE
          POSSESSION, CUSTODY, OR CONTROL OF DEFENDANTS . . . . . 18

     E.   DEFENDANTS MAY NOT WITHHOLD DISCOVERY BASED ON
          ANY CLAIM OF PRIVILEGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     F.   PLAINTIFFS' REQUESTS ARE SUFFICIENTLY
          PARTICULARIZED AND NOT VAGUE OR AMBIGUOUS  . . . . . . . 21

     G.   DEFENDANTS MUST PRODUCE CONFIDENTIAL
          INFORMATION SUBJECT TO THE PROTECTIVE ORDER . . . . . . . 22

     H.   DEFENDANTS MUST PRODUCE INFORMATION RELATED TO
          NON-NAMED PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

     I.   DEFENDANTS MAY NOT RELY ON ANY REMAINING
          GENERAL OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II.  DEFENDANTS SHOULD BE COMPELLED TO PRODUCE ALL
     DOCUMENTS RESPONSIVE TO PLAINTIFFS' DOCUMENT
     REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     A.   DEFENDANTS' DOCUMENT PRODUCTION HAS
          BEEN INADEQUATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     B.   DEFENDANTS SHOULD BE REQUIRED TO PERFORM A
          THOROUGH SEARCH FOR DOCUMENTS . . . . . . . . . . . . . . . . . . . 29

C.     DEFENDANTS HAVE DESTROYED AND MAY BE
                CONTINUING TO DESTROY DOCUMENTS LIKELY TO
                BE RELEVANT TO THIS LITIGATION WHICH THEY
                WERE REQUIRED TO PRESERVE . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.     DEFENDANTS SHOULD BE COMPELLED TO PROVIDE FULL
         AND COMPLETE ANSWERS TO PLAINTIFFS' INTERROGATORIES . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

INDEX TO PLAINTIFFS' EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## TABLE OF AUTHORITIES

### CASES

*AAB Joint Venture v. United States*, 75 Fed. Cl. 432 (Fed. Cl. 2007) . . . . . . . . . . . . . . . . 30, 31

*Alexander v. F.B.I.*, 194 F.R.D. 299 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*American Society for Prevention of Cruelty to Animals v. Ringling Brothers &
Barnum & Bailey Circus*, 233 F.R.D. 209 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Artista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27 (D.D.C. 2004) . . . . . . . 31

*Association of American Physicians & Surgeons, Inc. v. Clinton*, 837 F. Supp. 454
(D.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 24

*Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181 (D.D.C. 1998) . . . . . . . . . . . . . . 8, 10

*B.R. ex rel. Rempson v. District of Columbia,* D.D.C., Civ. Action No. 07-0578, 2007 WL
4238963 (Dec. 3, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Carroll v. Sisco, E.D. Mo.*, No. 4:00CV00864, 2007 WL 209924 (Jan. 23, 2007) . . . . . . . . . 17

*Chubb Integrated Systems Ltd. v. National Bank of Washington*,
103 F.R.D. 52 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39 (D. Conn. 2004) . . . . 17

*Convermat Corp. v. St. Paul Fire & Marine Insurance Co.*, E.D.N.Y., No. CV 06-1045, 2007
WL 2743696 (Sept. 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Del Campo v. American Corrective Counseling Services, Inc.*, N.D. Cal.,
No. C-01-21151, 2007 WL 4287335 (Dec. 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*DL v. District of Columbia*, 237 F.R.D. 319 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Disability Rights Council of Greater Washington v. Washington Metropolitan Transit
Authority*, 242 F.R.D. 139 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996) . . . . . . . . . . . . . 18

*Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29 (D.D.C. 2007) . . . . . . . . . . . . . . 34

*Farran v. Johnston Equipment, Inc.,* E.D. Pa., Civ. A No. 93-6148,
1995 WL 549005 (Sept. 12, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.,* N.D. Fla.,
No. 3:07cv97, 2007 WL 2298009 (Aug. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . 33

*Jewish War Veterans of the U.S. of America v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007) . . 9

*Johnson v. District of Columbia*, 190 F. Supp. 2d 34 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . 15

*L.H. v. Schwarzenegger,* E.D. Cal., Civ. No. S-06-2042, 2007 WL 2781132 (Sept. 21, 2007) . 34

*Lohrenz v. Donnelly*, 187 F.R.D. 1 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lucero v. Valdez*, 240 F.R.D. 591 (D.N.M. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26 (D.D.C. 2007) . . 8, 14, 21

*MGP Ingredients, Inc. v. Mars, Inc.,* D. Kan., Civ. Action No. 06-2318,
2007 WL 3274800 (Nov. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455 (D.D.C. 2002); . . . . . . . . . . . . . . . 13

*Nelson v. District of Columbia,* D.D.C., Civil Action No. 00-2930 (GK) . . . . . . . . . . . . . . . . . 18

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Peskoff v. Faber*, 244 F.R.D. 54 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Pleasants v. Allbaugh*, 208 F.R.D. 7 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pulsecard, Inc. v. Discover Card Services*, 168 F.R.D. 295 (D. Kan. 1996) . . . . . . . . . . . . . . . 33

*Rambus, Inc. v. Infineon Technologies, AG*, 222 F.R.D. 280 (E.D.Va. 2004) . . . . . . . . . . . . . . 30

*SEC v. Elfindespan, S.A.*, 206 F.R.D. 574 (M.D.N.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1
(D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 13, 16

*Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . 30

## STATUTES AND REGULATIONS

20 U.S.C. 1412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

20 U.S.C. 1435 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

29 U.S.C. 794 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

34 C.F.R. 300.208 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

34 C.F.R. 300.601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**RULES**

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21

Fed. R. Civ. P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 32, 33, 34

Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 18

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 , 31, 36

## INTRODUCTION

This is a class action filed in July 2005 on behalf of disabled, pre-school children in Washington, D.C., whom defendants have failed to identify, locate, evaluate, and offer special education and related services in violation of 42 U.S.C. 1983, the Individuals with Disabilities and Education Act ("IDEA"), 20 U.S.C. 1400, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. 794(a), and other laws. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, plaintiffs move to compel defendants' responses to Plaintiffs' First Set of Requests for Production of Documents, served on December 28, 2005 (hereafter "Plaintiffs' First Document Requests") (attached as Plaintiffs' Exhibit A); Plaintiffs' Second Set of Requests for Production of Documents, served on September 17, 2007 (hereafter "Plaintiffs' Second Document Requests") (attached as Plaintiffs' Exhibit B); and Plaintiffs' First Set of Interrogatories and Third Set of Requests for Production of Documents, served on September 28, 2007 (hereafter "Plaintiffs' Interrogatories" and "Plaintiffs' Third Document Requests") (attached as Plaintiffs' Exhibit C).[2]

Defendants' responses to plaintiffs' discovery requests have been wholly inadequate and resulted in significantly delaying plaintiffs' prosecution of this case.

On December 28, 2005, plaintiffs served defendants with Plaintiffs' First Document

---

[2] Local Rule 26.2(d) provides that, in motions to compel responses to discovery, the moving party "shall identify and quote each interrogatory or request in full immediately preceding the answer, response or objection thereto." Plaintiffs have identified in the brief below each interrogatory and request to produce which is at issue and included the full interrogatories and requests to produce served on defendants and defendants' responses to these interrogatories and requests to produce in Plaintiffs' Exhibits A-C, which are attached. Plaintiffs have not included quotations of all the interrogatories and requests to produce at issue and defendants' responses to them in the brief itself because this would cause this brief to far exceed the page limitation of 45 pages in Local Rule 7(e) and these materials are easily accessible to the Court in the attached exhibits.

Requests.  *See* Pl. Ex. A.  On January 27, 2006,[3/] defendants filed their objections to Plaintiffs' First Document Requests in Defendants' Response to Plaintiffs' First Set of Requests for the Production of Documents (hereafter "Defendants' Response to Plaintiffs' First Document Requests," attached as Plaintiffs' Exhibit D).  Defendants' response to each request stated: "[s]ubject to the General Objections above, the District will produce documents responsive to this request."

On January 30, 2006, plaintiffs received a letter from defendants (attached as Plaintiffs' Exhibit E), stating that documents would be available for "inspection and copying at our offices. In view of their volume and the fact that you have already collected a large number of documents, * * * you may wish to review them and select some but not all for copying."  On February 1, 2006, defendants made documents available to plaintiffs for inspection at which time defendants' counsel stated that production was not complete and that he would be meeting with defendants regarding discovery at a later time.  The documents were not bates stamped and were an incomplete response to Plaintiffs' First Document Requests.  For example, the available documents did not include printouts from ENCORE or SETS, the District's database and data collection systems for special education, or special education budgets.  Many of the documents were illegible due to poor print quality.  Nevertheless, plaintiffs selected documents for copying. The copied documents were not made available for pick up until February 28, 2006, a month after the original request.

Due to the extensive objections, which included objections to all documents relating to non-named plaintiffs and all documents predating 2003, and the limited production of documents, Plaintiffs filed a Motion to Compel Defendants' Responses to Plaintiffs' First Set of

---

[3/] The date of service on Defendants' Response to Plaintiffs' First Document Requests is incorrectly stated to be December 27, 2006.  The date of service was January 27, 2006.

Requests for Production of Documents on July 10, 2006.  The motion was denied without prejudice to renewed motions filed within 30 days of August 25, 2006, "after parties 1) consider the impact of today's decision on class certification and the motion to dismiss, and 2) meet and confer, in person, through counsel, and seek to resolve any remaining differences."  Docket Number 59.  Subsequently, in an effort to negotiate a settlement, plaintiffs invested substantial time and resources into researching best practices, engaging experts, providing recommendations to defendants, and drafting a large portion of a proposed consent decree.  Therefore, plaintiffs did not immediately renew the motion to compel.  On July 5, 2007, this Court granted a motion to extend the time to file renewed motions to compel discovery responses and ordered that the parties "may have until the close of all discovery to file renewed motions to compel discovery responses."  Docket Number 81.

After four months of waiting for defendants to comment on the draft consent decree, plaintiffs reinitiated discovery.  On September 17, 2007, plaintiffs served Plaintiffs' Second Document Requests.  *See* Pl. Ex. B.  On October 17, 2007,[4] defendants filed their objections to Plaintiffs' Second Document Requests in Defendants' Response to Plaintiffs' Second Set of Requests for the Production of Documents (hereafter "Defendants' Response to Plaintiffs' Second Document Requests") (attached as Plaintiffs' Exhibit F).  On September 28, 2007, Plaintiffs served Plaintiffs' First Interrogatories and Plaintiffs' Third Document Requests.  *See* Pl. Ex. C.  On October 29, 2007 at 6:22 pm, defendants sent Defendants' Response to Plaintiffs First Set of Interrogatories (hereafter "Defendants' Response to Plaintiffs' Interrogatories") (attached as Plaintiffs' Exhibit G) and Defendants' Response to Plaintiffs' Third Set of Requests for Production of Documents (hereafter "Defendants' Response to Plaintiffs' Third Document

---

[4] The date of service on Defendants' Response to Plaintiffs' Second Document Request is incorrectly stated to be October 17, 2006.  Defendants' Response was served on October 17, 2007.

Requests") (attached as Plaintiffs' Exhibit H).  In each of their responses, defendants included a boilerplate list of "General Objections" and sometimes cited general objections in their responses to plaintiffs' individual discovery requests, but they provided no explanation of the application of these objections to plaintiffs' discovery requests.

Defendants did not produce any documents on the date their replies to each document request were due.  In a letter dated March 2, 2006 (attached as Plaintiffs' Exhibit I), the defendants stated that their "Response was in full compliance with Rule 34. * * * Your objections in that regard are not well taken.  There is no deadline in Rule 34 for production, only for the service of a Response.  A rolling production is customary."  Defendants' production of documents thus far certainly has been "rolling."  After the initial review of documents by plaintiffs on February 1, 2006, defendants produced documents on the following schedule: Defendants' First Supplemental Response to Plaintiffs' Request for Documents, February 28, 2006, Bates Nos. 3761-3871; Defendants' Second Supplemental Response to Plaintiffs' Request for Documents, March 27, 2007, Bates Nos. 3887-4403; Defendants' Third Supplemental Response to Plaintiffs' Request for Documents, June 5, 2006, Bates Nos. 4404-4544; Defendants' Fourth Supplemental Response to Plaintiffs' Request for Documents, December 5, 2006, Bates Nos. 4545-4717; Defendants' Fifth Supplemental Response to Plaintiffs' Request for Documents, July 13, 2007, Bates Nos. 4718-5742; Defendants' Sixth Supplemental Response to Plaintiffs' Requests for Documents, November 2, 2007, Bates Nos. 5743-6223; Defendants' Seventh Supplemental Response to Plaintiffs' Requests for Documents, November 2, 2007, Bates Nos. 6224-6423; Defendants' Eighth Supplemental Response to Plaintiffs' Requests for Documents, November 6, 2007, Bates Nos. 6424-6570; Defendants' Ninth Supplemental Response to Plaintiffs' Requests for Documents, December 7, 2007, Bates Nos. 6571-7117; Defendants' Tenth Supplemental Response to Plaintiffs' Requests for Documents, January 30,

2008, Bates Nos. 7118-7784. As discussed below, defendants' supplemental responses included documents that were in existence when previous responses were delivered to plaintiffs, but were not included in the material produced.

Defendants' rolling document production has seriously hindered plaintiffs' attempts to complete discovery. Plaintiffs were forced to reschedule a deposition when, after business hours on November 6, 2007, the evening before the deposition of Badiyah Mushirah-Sharif, Transition Coordinator for Part C, defendants produced documents relevant to transition from Part C to Part B, including "Current Transition Policies and Procedures, 2007" and "Joint DCPS and DHS Transition Coordinators' Meeting Records, 2003-2006." The rescheduled deposition was also interrupted when, during the deposition, plaintiffs learned of additional documents relevant to the deponent's position as Transition Coordinator. Plaintiffs requested the documents during the deposition and again in a letter. Some of the documents were produced on Friday, November 16, 2007, and the deposition resumed on November 19, 2007.

On January 15, 2008, the day of the deposition of Zondra Johnson, the director of early childhood development for Part B at the CARE Center, defendants produced the CARE Center's Strategic Plans for Fiscal Years 2006 and 2007, which were directly relevant to the deposition, leaving plaintiffs with no opportunity to analyze the document before the deposition. The CARE Center's Strategic Plan for Fiscal Year 2006 was in the defendants' custody and control no later than September 2006 and the version for Fiscal Year 2007 was in the defendants' custody and control no later than September 2007, long before they were produced.

On January 30, 2008, at 5:22 pm, the evening before the present motion (hereafter "Plaintiffs' Motion to Compel") was due in this Court, defendants produced Defendants' Tenth Supplemental Response to Plaintiffs' Request for Documents. These documents were all encompassed within Plaintiffs' Motion to Compel, which was nearly finished. The 17 newly

produced documents, 666 pages in total, were not only responsive to Plaintiffs' First Document Requests (Pl. Ex. A), which were served on December 28, 2005, they were all in defendants custody and control long before their production (8 documents predate the fall of 2007; 6 documents are from 2006; 1 is from 2004; and 1 is from 2003).   In fact, defense counsel indicated, on January 18, 2008, that she had in her custody, at that time, at least three of the documents produced in Defendants' Tenth Supplemental Production on January 30, 2008.  *See* E-mails between Eden Miller, counsel for defendants, and Emily Benfer, counsel for plaintiffs, January 18, 2008, attached as Plaintiffs' Exhibit N.[5/]   Despite plaintiffs' request on January 18, 2008, that defendants provide the documents in their possession (*see* Pl. Ex. N), defendants withheld the documents for 12 days until the eve of the deadline for plaintiffs to file their motion to compel.  Since plaintiffs had no time to modify the motion to compel based on this production by the next day, they were forced to file a Motion for Extension of Time to File Plaintiffs' Motion to Compel Discovery Responses, seeking leave to file the motion on February 5, 2008. Defendants' lack of regard for the Federal Rules of Civil Procedure, once again, further delayed the litigation and unfairly burdened plaintiffs, by forcing plaintiffs' counsel to modify a virtually completed motion to compel based on document production which should have occurred long ago.

Over two years have now passed since Plaintiffs' First Document Requests, and defendants' document production is still nowhere near complete.  As shown below and by the chart attached as Plaintiffs' Exhibit L, there is still substantial responsive material that defendants have not yet produced.  As further discussed below, defendants' responses to plaintiffs' interrogatories are also seriously deficient.

---

[5/] The documents described in Plaintiffs' Exhibit N were previously requested by plaintiffs in a letter to defendants on December 19, 2007.

Since Plaintiffs' First Document Request, plaintiffs have sent 14 letters (attached as Plaintiffs' Exhibit J) and made numerous telephone calls attempting to obtain defendants' compliance with their discovery obligations. Defendants have only responded substantively to one letter in writing. *See* Pl. Ex. I. Plaintiffs therefore have no other recourse than to seek this Court's intervention in order for plaintiffs to complete discovery and avoid further delay in the resolution of this case. Accordingly, plaintiffs request that the Court overrule defendants' objections and compel defendants to complete their document production and answers to interrogatories within 30 days of the Court's order.

**I**

**DEFENDANTS' GENERAL OBJECTIONS TO PLAINTIFFS'
DISCOVERY REQUESTS ARE INVALID**

Defendants included a list of boilerplate general objections with their responses to each of plaintiffs' discovery requests. *See* Pl. Exs. D, F, G, H. All of defendants' objections should be overruled and defendants should not permitted to withhold any discovery based on these grounds.

Defendants fail to provide any reasons why these general objections apply to particular discovery requests. In response to each request in Plaintiffs' First Document Requests, defendants merely state that they will produce documents "[s]ubject to the General Objections." Pl. Ex. D. In response to plaintiffs' other document requests and interrogatories, defendants do no more than refer by number to objections from their boilerplate list, without providing any explanation of how the general objections apply to the specific request. *See* Defendants' Response to Plaintiffs' Second Document Request, Pl. Ex. F, Responses 2, 3, 4, 5; Defendants' Response to Plaintiffs' Third Document Request, Pl. Ex G, Responses 3, 4; Defendants' Response to Plaintiffs Interrogatories, Pl. Ex. H, Responses 1, 2, 5, 9, 10, 14.

Defendants have failed to satisfy their burden under the Federal Rules of Civil Procedure

to justify their objections.  Rule 34(b)(2)(B) requires a party objecting to a document request to "includ[e] the reasons" for the objection.  Under Rule 33(b)(4), "[t]he grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."  "The party objecting to discovery bears the burden of showing why discovery should not be permitted" (citations and internal quotation marks and alterations omitted) (*Alexander v. F.B.I.*, 194 F.R.D. 299, 302 (D.D.C. 2000)) and "must justify its objections by explaining them in detail as opposed to relying on general assertions" (*Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, 245 F.R.D. 26, 30 (D.D.C. 2007)).

By including only a list of boilerplate general objections, defendants have failed to provide the required "reasons" and "specificity" for their objections.  *See, e.g., Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("[Defendant] includes the standard, boilerplate 'general objections' sections * * *.  Such general objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them.").  Moreover, this Court has held that "[t]his Court will not raise objections for [the responding party]" and should "overrule [the responding party's] objection[s] on those grounds."  *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1, 12 (D.D.C. 2007) (J. Lamberth).  As shown below, even when considered on an individual basis, defendants' objections have no merit.

The amount of discovery withheld based on these objections appears to be substantial.  Defendants indicate, in the indices to their document production, that they did not produce any documents at all in response to Document Requests 2, 3, 4, and 5 of Plaintiffs' Second Document Requests (Pl. Ex. B) and that they may be withholding discovery responsive to most other requests based on their general objections.  Consequently, plaintiffs request that the Court overrule all of defendants' general objections and order defendants to produce all information

responsive to plaintiffs' discovery requests.

## A.    PLAINTIFFS' DISCOVERY REQUESTS ARE RELEVANT TO THE CLAIMS AND DEFENSES IN THIS CASE

Defendants included a general objection to all of plaintiffs' discovery requests that request information or documents "that are not relevant to the claim or defense of any party or to the subject matter of the action, are neither admissible nor reasonably calculated to lead to the discovery of admissible evidence, or otherwise exceed the scope of discoverable matters under the Federal Rules of Civil Procedure."  Defendants' General Objection 5 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 12.  Based on this objection, defendants have indicated that they are refusing to produce documents in response to four of plaintiffs' specific document requests, Document Requests 2, 3, 4, and 5 in Plaintiffs' Second Document Requests.  *See* Defendants' Response to Plaintiffs' Second Document Requests, Pl. Ex. F.   It is not clear whether defendants are withholding additional discovery under the general relevance objection.

The scope of discovery extends to "any matter that bears on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense * * *."  Rule 26(b)(1).   "The term relevance at the discovery stage is a broadly construed term and is given very liberal treatment."  *Tequila Sentinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, *supra*, 242 F.R.D. at 6 (J. Lamberth).  "Information sought may be 'relevant' even if it is not admissible at the merits stage, so long as the 'discovery appears reasonably calculated to lead to the discovery of admissible evidence'" (quoting Rule 26(b)(1)).  *Jewish War Veterans of the U.S. of America v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007).

Defendants indicate that they are relying on the relevance objection to withhold documents responsive to Documents Requests 2, 3, 4, and 5 in Plaintiffs' Second Document Requests. Defendants' Response to Plaintiffs' Second Document Requests, Pl. Ex. F. Defendants do not state why they believe these requests are not relevant, but merely refer to the general objection. "Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld." *Athridge v. Aetna Casualty & Surety Co.*, *supra*, 184 F.R.D. at 190.

Plaintiffs have explained to defendants in a letter, dated October 23, 2007, why these requests are relevant. *See* Pl. Ex. J. Defendants never responded to this letter other than to acknowledge receipt. As discussed in the letter, each request is relevant to plaintiffs' claims in this case.

Document Request 2 in Plaintiffs' Second Document Requests (Pl. Ex. B) seeks "[a]ll documents that identify children ages two through five years old who were identified in the course of any lead abatement program administered through the District of Columbia since 2000." The documents sought by this request are relevant because long-term studies of children exposed to lead early in life have associated lead poisoning with the need for special education services due to impaired neurobehavioral functioning. Schwarz J., *Societal Benefits of Reducing Lead Exposure*, Environ. Res. 66:105-24 (1994). Therefore, these documents are likely to show defendants' awareness of children with disabilities who have not been identified for special education services.

Document Request 3 in Plaintiffs' Second Document Requests (Pl. Ex. B)

seeks:

> All documents that contain demographic information regarding the number of children two through five years of age who reside in or are wards of the District of Columbia, that has been maintained or used by defendants each year since 2000 to plan for (1) general elementary school enrollment; (2) special education enrollment for young children; (3)

Head Start programs; and (4) child care or day care services for young children funded or provided by any agency within the District of Columbia.

Defendants should have this information and be using it like other jurisdictions use demographic data to plan for special education enrollment. Plaintiffs would use this percentage to assist them in determining the percentage of the total population of children aged two through five in the District of Columbia who receive special education services. Plaintiffs would also use this information to compare the percentage of children receiving special education services in the District of Columbia with those in other jurisdictions. For example, the District of Columbia is consistently ranked last among the 50 states in the provision of special education services to children aged three to five. First Amended Complaint for Declaratory and Injunctive Relief (hereafter "Complaint"), para. 107. As this Court has noted in this case, "there is no reason to believe that the District of Columbia preschool population has less need for special education services than the nation on average, let alone the lowest need of any state in the nation." *DL v. District of Columbia*, 237 F.R.D. 319, 322 (D.D.C. 2006). Such information therefore will support plaintiffs' claim that "[d]efendants' failures have resulted in a Child Find system that departs grossly from accepted standards in other jurisdictions * * *." Complaint, para. 107.

Document Request 4 in Plaintiffs' Second Document Requests (Pl. Ex. B) seeks:

All documents that refer or relate to the number of programs slots or placements available each year since 2000 for children ages two years through five years for the following categories: (1) inclusion, preschool classroom slots, where the child with a disability is placed in a regular education class with his or her typically developing age peers in the majority and where, in addition to the regular teacher, there is a special-education teacher or where a child with a disability is supported full time in a general education class with a dedicated aide; (2) self-contained special education slots or placements where a child is removed from the general school population and placed in a small controlled setting with a special-education teacher and possibly other support staff for most of the school day; (3) combination slots or placements that combine inclusion and pull-out services some of the time; and (4) the equivalent of those categories in earlier years when different terms were used to describe the different levels of program intensity.

These documents are relevant because they will allow plaintiffs to determine whether defendants

have the capacity to provide special education services to every child in the relevant age range who is eligible to receive them. As plaintiffs explained in their complaint, "[a]fter determining eligibility, defendants are required to offer special education and related services." Complaint, para. 92. If defendants do not have adequate capacity, that will support plaintiffs' claim that defendants have failed to offer special education services to class members. It also reflects on defendants' intentions to identify and locate all children in need of services.

Finally, Document Request 5 in Plaintiffs' Second Document Requests (Pl. Ex. B) asks for "all letters of complaint that have been received about the CARE Center received by defendants." The CARE Center is responsible for operating the majority of the District's Child Find activities for children aged three to five years, including outreach to pre-kindergarten and kindergarten classes in DCPS buildings. As defendants themselves explained in response to plaintiffs' interrogatories (Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, Interrogatory 11):

> The CARE Center is responsible for the location and identification of children who are not attending a DCPS pre-school program and who are District of Columbia residents, aged three to five, with disabilities or suspected disabilities in accordance with Part B of the Individuals with Disabilities Education Improvement Act of 2004.

Letters of complaint to the CARE Center are directly relevant to plaintiffs' claim that defendants have failed to comply with the Child Find requirements. Moreover, complaints would provide evidence that defendants received notification of deficiencies in the Child Find program.

Since Document Requests 2, 3, 4, and 5 are relevant to plaintiffs' claims, defendants should be required to produce documents responsive to these requests. If defendants are relying on this general objection to withhold information responsive to any other requests, they failed to specify the requests and explain why they believed the objection applies. Since they have not done so, defendants should also not be permitted to withhold any information relating to other discovery requests based on their relevance objection.

**B.     DEFENDANTS HAVE NOT SHOWN ANY UNDUE BURDEN**

In another general objection, defendants object to requests that "are unduly broad or unreasonably burdensome."  Defendants' General Objection 9 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 15.  However, defendants have not even come close to making the showing that is required to support an objection based on burden.  They have done nothing more than cite the general objection in their responses to several of plaintiffs' documents requests and interrogatories.  *See* Defendants' Responses to Document Requests 2, 3, and 4 in Plaintiffs' Second Document Requests, Pl. Ex. F; Defendants' Response to Document Request 3 in Plaintiffs' Third Document Requests, Pl. Ex. H; Defendants' Responses to Interrogatories 10 and 14 in Plaintiffs' Interrogatories, Pl. Ex. G.  No explanation of any kind for the objections was given.

This Court will not entertain burdensome objections absent "evidence which reveals the nature of the burden.  The responding party cannot just merely state in a conclusory fashion that the requests are burdensome" (citations, internal quotation marks, and alteration omitted).  *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, *supra*, 242 F.R.D. at 10 (J. Lamberth).  "[T]he party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome."  *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458, n. 4 (D.D.C. 2002); *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002).  Specifically, "[t]his Court does not accept [burdensome] arguments without specific estimates of staff hours needed to comply * * *."  *Association of American Physicians & Surgeons, Inc. v. Clinton*, 837 F. Supp. 454, 458, n. 2 (D.D.C. 1993) (J. Lamberth).

Here, defendants have failed even to state how providing information contained in the document requests would be burdensome, let alone produce an affidavit or other evidence

demonstrating that such a burden exists.  Defendants even objected to plaintiffs' instruction that they provide information supporting their burdensomeness objection.  *See* Defendants' General Objection 13 to Plaintiffs' First and Second Document Requests, Pl. Exs. D, F.   Thus, "[d]efendants' burdensome argument [should be] categorically rejected."  *Association of American Physicians & Surgeons*, *supra*, 837 F. Supp. at 458, n. 2.

## C.   DEFENDANTS SHOULD BE REQUIRED TO PROVIDE DISCOVERY DATING FROM 2000

Plaintiffs requested that defendants produce documents created from 2000 to the present. This period encompasses only five years before the case was filed in 2005.  In their general objections, defendants objected "to the requests to the extent that they seek production of documents [or information] before January 1, 2003."  General Objection 1 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 9.  Defendants' responses give no reason why defendants have refused to produce any documents from the 2000-2003 time period.

"The time period of the request is permissible where 'the selected time frame is not wholly unreasonable or irrelevant'" (citation omitted).  *Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 68 (D.D.C. 1984).  As the parties objecting to the discovery request, defendants have the burden of establishing the basis for their objection.  *See, e.g., Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, *supra*, 245 F.R.D. at 30 (D.D.C. 2007).  Defendants have "offered no explanation of why the documents are not relevant nor showed why the time frame is wholly unreasonable."  *Chubb Integrated Systems Ltd. v. National Bank of Washington*, *supra*, 103 F.R.D. at 68.  "Without more, [defendants have] not met [their] burden."  *Ibid.*  Therefore, the Court should compel discovery for the time period requested by plaintiffs.

Defendants' objection may not be supported on the basis that the period from 2000 to

2003 is not relevant or that it would be burdensome to produce information from this period.  To establish liability under 42 U.S.C. 1983 for an IDEA violation, this Court requires the plaintiff to demonstrate that DCPS has a "custom or practice" that gave rise to the IDEA violation.  *B.R. ex rel. Rempson v. District of Columbia*, D.D.C., Civ. Action No. 07-0578, 2007 WL 4238963, at *3 (Dec. 3, 2007); *Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 47 (D.D.C. 2002). Plaintiffs have alleged under Section 1983 that defendants have a policy, pattern, and practice of failing to identify, locate, evaluate, and offer special education services to children with disabilities who are between the ages of three and five years old.  Complaint, para. 1.  Plaintiffs need information dating back to 2000 in order to prove their claim of a policy, pattern, and practice of violations.

The repeated failures on the part of the defendants to identify, locate, evaluate, screen, track, determine eligibility, and offer services over the period since 2000 will establish that defendants' failures are systemic, pervasive, and require broad injunctive relief to remedy them. Plaintiffs intend to rely on statistical information dating from 2000 to the present demonstrating that year after year, defendants have failed to identify children with serious disabilities and offer them access to special education and related services.  The information from 2000 will allow plaintiffs to show that defendants' failures are more than just transitory problems that have emerged in the past few years.  It will further demonstrate that defendants have had adequate opportunity to comply with their legal obligations, but have failed to do so.

Moreover, the time period of 2000 to the present is directly relevant to the injuries suffered by individual plaintiffs.  This Court adopted a class definition that includes "[a]ll children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and * * * whom defendants did not identify, locate, evaluate or offer special education and related services to when the child was between the ages of three

and five years old, inclusive * * *." *DL v. District of Columbia*, *supra*, 237 F.R.D. at 324. Thus, the class encompasses many children who are now older than five but did not receive the required services at the time they were of pre-school age. The request for documents back to 2000 will allow plaintiffs to obtain information about the defendants' actions during the time that many of the class members should have received services.

Defendants' obligations with respect to several of the named plaintiffs pre-date 2003. Several of the named plaintiffs were born disabled well before 2003, as early as 1998. *See* Complaint, paras. 21-22, 42-43, 46-50, 55-56. Consequently, defendants' obligation to comply with the Child Find requirements under the IDEA and Section 504 of the Rehabilitation Act with respect to these children pre-dates 2003. Part C of the IDEA requires defendants to provide disabled infants and toddlers with "appropriate early intervention services." 20 U.S.C. 1435(a)(2). Defendants' Child Find and FAPE duties extend to ensuring that infants and toddlers who are "participating in early intervention programs [under Part C of the IDEA], and who will participate in those preschool programs [once they turn three years old under Part B of the IDEA], experience a smooth and effective transition to [Part B] in a manner consistent with" the IDEA by their third birthday. 20 U.S.C. 1412(a)(9).

Defendants would not be unduly burdened by having to produce documents from 2000. As discussed above, this "Court only entertains an unduly burdensome objection when the responding party demonstrates how the document is 'overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden (citation omitted).'" *Tequila Centinela, S.A. de C.V. v. Bacardi & Co., Ltd.*, *supra*, 242 F.R.D. at 10 (J. Lamberth). Here, defendants have failed even to state how providing information pre-dating 2003 would be burdensome, let alone produce an affidavit explaining why such burden would exist.

Moreover, in pattern and practice cases, courts have recognized that parties are entitled to discovery for time periods significantly longer than the five years plaintiffs have requested.  For example, in *American Society for Prevention of Cruelty to Animals v. Ringling Brothers & Barnum & Bailey Circus*, 233 F.RD. 209, 215 (D.D.C. 2006), based on plaintiffs' claim of a "pattern and practice" that violated the Endangered Species Act, this Court found that it was "reasonable for plaintiffs to have requested information for a ten year period * * *."  The Court rejected the defendants' argument that it would be burdensome to produce the information since "defendants have failed to proffer an explanation why they should be permitted to uniformly cut-off discovery" and had "never moved the Court for a protective order before they unilaterally set the cut off date they did."  *Ibid*.  Defendants have "unilaterally" cut off discovery in precisely the same way here.  *See also, e.g., Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 45 (D. Conn. 2004) ("The court disagrees that, for the purposes of a pattern and practice discrimination claim, a thirty (30) year period is burdensome on its face"); *Carroll v. Sisco*, E.D. Mo., No. 4:00CV00864**,** 2007 WL 209924, at *2 (Jan. 23, 2007) (request for documents from 10-year period was not burdensome; "[h]ow else would the plaintiff be able to demonstrate a pattern and practice of misconduct, if he was not provided this type of evidence?").

In any event, it would not be burdensome for defendants to provide the information requested.  Some of this information is accessible through the SETS and ENCORE systems maintained by defendants.  Defendants are accustomed to providing this information to the U.S. Department of Education, Office of Special Education Programs, as part of their regular reporting requirements.  The District of Columbia Public Schools ("DCPS") also routinely shares this information with other District agencies, such as the Department of Human Services, with whom it has a Memorandum of Understanding.  Defendants have also provided this type of

information in the course of other class actions. *See, e.g., Nelson v. District of Columbia,* D.D.C., Civil Action No. 00-2930 (GK) (providing plaintiffs with a list of information concerning mobility-impaired students within DCPS).[6/]

## D.    THE DISCOVERY REQUESTED IS WITHIN THE POSSESSION, CUSTODY, OR CONTROL OF DEFENDANTS

In another general objection, defendants object to requests that seek "documents not in existence or not in the District's [or defendants'] possession, custody, or control." Defendants' General Objection 7 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; *see also* Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 6 ("The Defendants object to any part of the Plaintiffs' instructions which seek to impose any discovery requirements outside the scope of the rules, especially any obligation to produce information not in the Defendants' control or not currently known to its attorneys after reasonable inquiry").

Defendants cite this general objection in their responses to Document Requests 3, 4, and 5 in Plaintiffs' Second Document Requests (Pl. Ex. B). However, they provide no explanation of why they cannot produce the information. This is clearly insufficient. *See, e.g., Ellsworth Associates, Inc. v. United States*, 917 F. Supp. 841, 845 (D.D.C. 1996) ("A party opposing discovery bears the burden of showing why discovery should be denied.").[7/]

Under Rule 34(a)(1), a party must produce items requested in discovery that are within

---

[6/] Any argument by defendants that it would be unduly burdensome to produce information from the requested time period is also belied by the fact that defendants have produced at least some documents that pre-date 2003, including documents that relate to the named plaintiffs, correspondence between defendants and other agencies, reports, and public awareness materials.

[7/] Plaintiffs included a general instruction that "[i]f defendants are unable to respond to a request for production of documents or part thereof, defendant shall state why it is unable to supply the information sought and fully describe the efforts made to locate the information." Plaintiffs First Document Requests, Pl. Ex. A, Definitions and Instructions 14 (incorporated in Plaintiffs' Second and Third Document Requests); *see also* Plaintiffs' Interrogatories, Pl. Ex. C, Definitions and Instructions 18. Defendants objected to this instruction. *See* Defendants' General Objection 12 to Plaintiffs' First and Second Sets of Document Requests, Pl. Exs. A, B.

"the responding party's possession, custody or control." "Control includes documents that a party has the legal right to obtain on demand." *American Society for Prevention of Cruelty to Animals v. Ringling Brothers & Barnum & Bailey Circus*, *supra*, 233 F.RD. at 212.

The requests to which defendants objected seek information that should be easily available to defendants. Document Requests 3 and 4 in Plaintiffs' Second Document Requests (Pl. Ex. B) ask for demographic information regarding the number of children ages two through five years in the District of Columbia and documents relating to the number of special education program slots or placements available for children in that age range, respectively. This is precisely the type of basic information that is essential to defendants' mission of providing special education services to pre-school aged children. Defendants have done nothing to refute the reasonable assumption that they maintain and use such information in performing their duties.[8]

Document Request 5 in Plaintiffs' Second Document Request (Pl. Ex. B) asks for letters of complaint that have been received about the CARE Center. As discussed, the CARE Center is directly under the authority of defendant DCPS Chancellor. Letters sent to the CARE Center would thus clearly be within the control of the Chancellor.

Plaintiffs further note that the District of Columbia is a defendant in this case. The District obviously has the right to obtain information held by any agency or official in the District government.

In their response to plaintiffs' interrogatories, defendants objected to "providing

---

[8] In fact, defendants produced the program slots or placements available for children aged two through five years for either 2004, 2005, and 2006 (as indicated in a footnote to the document) or the 2005, 2006, and 2007 (as indicated in the heading of the document) school years on November 16, 2007, in Defendants' Ninth Supplemental Response to Plaintiffs Request for Documents. Bates No. 6767. Defendants have not produced this information for 2000, 2001, 2002, 2003, and, depending upon the actual year corresponding with the data provided in Bates No. 6767, either 2004 or 2007.

information from persons no longer in their employ or control." Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 8. Defendants rely on this objection in their response to Interrogatory 1, which seeks information on persons defendants have contacted or from whom they have requested a statement regarding the allegations in the complaint. Even if this general objection were otherwise valid, it would not apply to this request. The request does not seek information from former employees themselves, but rather information about them, such as the names of the persons contacted, their contact information, and descriptions of their involvement with Child Find. Since the interrogatory only concerns persons defendants have themselves contacted, such information is clearly in defendants' possession. Similarly, defendants may not rely on this objection to withhold information in their possession concerning former employees that is responsive to any other request.

## E.  DEFENDANTS MAY NOT WITHHOLD DISCOVERY BASED ON ANY CLAIM OF PRIVILEGE

Defendants included two general objections based on privilege. These object to plaintiffs' document requests that seek information protected by defendants' "deliberative process privilege for intra-agency and inter-agency communications" and "by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, immunity or protection." Defendants' General Objections 3 and 4 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 11. Despite these objections, defendants did not identify or describe any specific information withheld based on a claim of privilege or produce a privilege log.

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must * * * describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or

20

protected, will enable other parties to assess the claim." Rule 26(b)(5).  The failure to provide a privilege log describing the withheld information as required by Rule 26 will foreclose any objection based on privilege.  *See, e.g., United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 523 (D.D.C. 2006) (J. Lamberth); *Lohrenz v. Donnelly*, 187 F.R.D. 1, 6-7 (D.D.C. 1999) (J. Lamberth).  "A bald assertion of these privileges clearly cannot suffice under the federal rules."  *Id.* at 7.

Here, defendants have failed even to describe any information withheld based on privilege, let alone provide a privilege log or show why any privilege applies.  Therefore, defendants should not be permitted to withhold any documents based on a claim of privilege.

During the deposition of Zondra Johnson, defendants' counsel indicated that defendants were withholding documents based on the deliberate process privilege.  *See* Deposition of Zondra Johnson, attached as Pl. Ex. K, pp. 39-40.  Absent a privilege log, defendants may not withhold any discovery based on an asserted privilege.

## F.    PLAINTIFFS' REQUESTS ARE SUFFICIENTLY PARTICULARIZED AND NOT VAGUE OR AMBIGUOUS

Defendants also made a general objection that plaintiffs' discovery requests are "vague, ambiguous, and/or not sufficiently particularized to permit defendants to determine what documents are sought and to make a meaningful response."  Defendants' General Objection 10 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; *see* Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 16.  Defendants rely on this general objection to object to Document Requests 3, 4, and 5 in Plaintiffs' Second Document Requests and Interrogatory 9.  Pl. Exs. F, G.  This objection is invalid because defendants do not explain what aspects of the requests they were unable to understand.  *See, e.g., Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd.*, *supra*, 245 F.R.D. at 30.

The requests to which defendants objected in fact were specific and clear and provided

21

defendants sufficient guidance on what information was requested.  Moreover, in their October 23, 2007 letter (pp. 8-9), plaintiffs stated (Pl. Ex. J):

> If defendants genuinely do not understand some portion of these requests, defendants should provide the documents that are responsive to the portion of the requests that they do understand.  In addition, defendants should contact us immediately as to any portions of the requests that defendants do not understand so that we can provide any needed clarification.

Defendants have done neither of these things.  They have not provided responses to the extent they understood the discovery requests or sought clarification of the requests from plaintiffs. Defendants should not be permitted to rely on a claim of vagueness to avoid producing documents when they have ignored an express offer by plaintiffs to clarify the requests.

## G.    DEFENDANTS MUST PRODUCE CONFIDENTIAL INFORMATION SUBJECT TO THE PROTECTIVE ORDER

Defendants also included a general objection to requests that "seek confidential information" and stated they "will provide such information only pursuant to the protective order governing discovery in this action."   Defendants' General Objection 8 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H; Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 14.  The protective order entered in this case on October 31, 2005, requires counsel to take specific actions to protect confidential information about children who are class members and their parents and guardians.  Defendants have produced material pursuant to the protective order.

Despite stating that they will produce documents pursuant to the protective order, defendants cited this general objection in their response to Document Request 3 in Plaintiffs' Third Document Requests, Pl. Ex. H.   To the extent that defendants have withheld any documents on the basis of confidentiality, defendants should be ordered to produce these documents pursuant to the protective order.

22

## H.   DEFENDANTS MUST PRODUCE INFORMATION RELATED TO NON-NAMED PLAINTIFFS

Defendants initially included a general objection to producing information related

to "individuals other than the six children who are named plaintiffs."  General Objection 2 to

Plaintiffs' First, Second and Third Document Requests, Pl. Exs. D, F, H; Defendants' Response

to Plaintiffs' Interrogatories, Pl. Ex. G, para. 10.  Based on this objection, defendants refused to

produce documents responsive to Document Request 4 of Plaintiffs' Third Document Requests,

Pl. Ex. H.  It is plaintiffs' understanding that defendants have dropped this objection, although

they have not yet produced all of the documents and information requested.  Such documents

and information are clearly relevant, since the certified class includes large numbers of children

other than the named plaintiffs.  To avoid any doubt, the Court should overrule defendants'

general objection and order defendants to provide the requested information related to unnamed

plaintiffs.

## I.   DEFENDANTS MAY NOT RELY ON ANY REMAINING GENERAL OBJECTIONS

Defendants also listed a number of general objections not cited in their responses to any

specific discovery requests.  For example, defendants included general objections to documents

requests that "conflict with or purport to expand the Defendants' obligations under the Federal

Rules of Civil Procedure, the local rules, and any order in this case" and seek information

"readily or more readily obtainable from a source other than defendants."  Defendants' General

Objections 6 and 11 to Plaintiffs' First, Second, and Third Document Requests, Pl. Exs. D, F, H;

Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, paras. 13, 17.  As with the

objections discussed above, defendants have failed to provide any reasons for these objections.

What is more, in the case of these objections, defendants have not even identified any specific

requests to which they believe these objections apply.  Thus, defendants should not be permitted

to rely on these objections to withhold any responsive information.

## II

### DEFENDANTS SHOULD BE COMPELLED TO PRODUCE ALL DOCUMENTS RESPONSIVE TO PLAINTIFFS' DOCUMENT REQUESTS

### A.    DEFENDANTS' DOCUMENT PRODUCTION HAS BEEN INADEQUATE

Defendants' responses to plaintiffs' discovery requests have been wholly inadequate and omitted numerous documents that should have been produced.  Their incomplete production of documents is in part due to defendants' complete disregard for plaintiffs' document requests. The following excerpt is from the deposition of Zondra Johnson, a non-lawyer who was responsible for producing documents in the custody of the Early Childhood division of the CARE Center (Pl. Ex. K, p. 183):

> Q.  Are you saying in responding to our request for documents that you didn't attempt to follow the exact wording of the request but that you decided whether a particular document was relevant to the case?
> A.   And that it was responsive.  Yes, sir.  I agree with you when you said that.
> Q.   So if a document was covered by a request but you didn't think that it was relevant to the case, you didn't provide it; isn't that right?
> A.   That's correct, sir.

*See also id.*, pp.182-183.

Plaintiffs have attached a chart, that is by no means exhaustive, enumerating 42 categories of documents responsive to Plaintiffs' First, Second, and Third Document Requests and believed to be in defendants' possession, but not produced during discovery.  *See* Pl. Ex. L. The withholding of these documents, together with defendants' practice of producing documents at their leisure and, on three occasions, on the eve or day of a deposition or motion deadline to which they are relevant, has resulted in significant delays in the litigation of this case.   In *Association of American Physicians & Surgeons, Inc. v. Clinton*, 837 F. Supp. 454, 457 (D.D.C. 1993) (J. Lamberth), this Court condemned the defendant's litigation tactic of filing an incomplete response to discovery requests and then supplementing it whenever it pleased.  The

Court stated that it "will not tolerate it in future responses" and therefore granted the motion to compel. *Id*. at 457. This decision applies *a fortiori* here where defendants have gradually produced some of the documents requested over the course of two years and, with regard to some document requests, no documents at all.

It is clear that defendants have failed to produce substantial documentation. Defendants have not produced any documents in response to Document Request 27 in Plaintiffs' First Document Requests (Pl. Ex. A), Document Requests 2, 3, and 5 in Plaintiffs' Second Document Requests (Pl. Ex. B), and Document Request 4 in Plaintiffs' Third Document Requests (Pl. Ex. C). Document Request 27 in Plaintiffs' First Document Requests asked for "[a]ll documents created from January 1, 2000, to the present referring or relating to the reasons why any children aged two through five years old who were referred to DCPS or whose parents consented to evaluations were found to be ineligible for special education and related services." Plaintiffs' believe that defendants' determinations of eligibility are in writing. These determinations would fulfill this request.

Document Request 2 of Plaintiffs' Second Document Requests asked for "[a]ll documents that identify children ages two through five years old who were identified in the course of any lead abatement program administered by the District of Columbia since 2000." Plaintiffs are aware of health fairs during which children were screened for lead poisoning. Documents containing the results of these screenings are responsive to Request 2 in Plaintiffs Second Document Requests.

Document Request 3 of Plaintiffs' Second Document Requests asked for

All documents that contain demographic information regarding the number of children two through five years of age who reside in or are wards of the District of Columbia, that has been maintained or used by defendants each year since 2000 to plan for (1) general elementary school enrollment; (2) special education enrollment for young children; (3) Head Start programs; and (4) child CARE or day CARE services for young children funded or provided by any agency within the District of Columbia.

*See* Pl. Ex. B.  Most jurisdictions use demographic data to plan for special education enrollment and to appraise Child Find efforts.  Documents with demographic data are responsive to Document Request 3 in Plaintiffs' Second Document Requests.

Document Request 5 of Plaintiffs' Second Document Request asked for "[a]ll letters of complaint that have been received about the CARE Center received by defendants."  *See* Pl. Ex. B.  During the depositions of Zondra Johnson and Badiyah Mushirah-Sharif, the deponents stated that they have received complaints about CARE Center activities related to children aged two years, eight months, to five years.  Deposition of Zondra Johnson, Pl. Ex. K, pp. 171-183; Deposition of Badiyah Mushirah-Sharif, Pl. Ex. O. pp. 78-79, 90.  Any documentation of these complaints is responsive to Document Request 5 in Plaintiffs' Second Document Requests.

Document Request 4 in Plaintiffs' Third Document Requests asked for the case files for 25 of the student identification numbers listed in ENCORE printouts produced by defendants.  *See* Pl. Ex. C.  Although defendants purportedly withdrew their objection to the production of documents containing information related to non-named plaintiffs, plaintiffs have yet to receive the case files.

Many documents produced by defendants in response to document requests are incomplete or unresponsive to the request number cited by defendants.  For example, on February 28, 2006, defendants produced job descriptions for Education Specialists, Education Coordinator, and Special Education Coordinator (Bates Numbers 3089-3094), but omitted the job description for Education Program Specialist (Early Childhood Transition Services).  Plaintiffs were not allowed to copy the document until January 15, 2008, and it was not produced until January 30, 2008 (Bates Nos. 7164-7165).  *See* Deposition of Zondra Johnson, Pl. Ex. K, p. 130.

During depositions of defendants' officials, it became clear that defendants have not

produced many responsive documents in their possession.  During the depositions of Genevieve Johnson, Badiyah Mushirah-Sharif, Chanda Whitaker, Joan Christopher, and Zondra Johnson, plaintiffs learned of 29 categories of documents covered by the previous document requests for which documents were not produced.  The documents were again requested during the depositions and again in letters to defendants.  See November 20, 2007, December 19, 2007, January 30, 2008 letters, Pl. Ex. J.  Nevertheless, defendants have still not produced documents responsive to 21 categories of documents and only partially produced documents responsive to 6 other categories.

Plaintiffs became aware of additional documents during a forum of the DC Action for Children on Interagency Collaboration and Services Integration Commission (ICSIC) on December 4, 2007,[9] including documents and correspondence related to a grant received by the Department of Human Services for the training of early childhood employees.  *See* December 19, 2007 letter, Pl. Ex. J,.  This documents, which should have been produced in response to plaintiffs' previous document requests (*see* Document Request 29, Pl. Ex. A) were subsequently requested verbally and in a letter dated December 19, 2007 (Plaintiffs' Exhibit J), but have yet to be produced by defendants.

Defendants have produced few e-mails, faxes, or memoranda.  In total, defendants have produced only 17 e-mails from Part C staff and none from Part B staff, to media representatives concerning activities publicizing Child Find; 9 faxes to or from Part C staff related to public awareness; and 13 letters between the U.S. Department of Education Office of Special Education Programs (hereafter "OSEP") and defendants.  Bates Nos. 2146, 3006-3013, 3014-3059, 3060-

---

[9] Another document discussed at the forum was a Memorandum of Understanding between all District agencies on data collection and data sharing, a key component of Child Find.  *See* 34 C.F.R. 300.208(b), 300.601(b).  Although this document was defendants' custody since the fall of 2007 and was responsive to Plaintiffs First and Second Document Requests (Pl. Ex. A, Document Requests 14, 15; Pl. Ex. B, Document Request 1), this document was not produced until January 30, 2008.

3078, 4404-4414, 6571-6610, 7198-7201, 7228-7230.   OSEP is responsible for monitoring states' implementation of federal grants for special education and IDEA compliance. Defendants are required to submit state applications and performance reports on a regular basis. Since OSEP has deemed the District a "high risk" grantee (*see* Letter from Patricia J. Guard, Acting Director U.S. Department of Education, Office of Special Education Programs to Michelle Rhee, Chancellor, DCPS, July 9, 2007, attached as Plaintiffs' Exhibit M[10]), it is highly unlikely that multiple government agencies did not engage in additional correspondence in the forms of letters, e-mails, memoranda, or faxes between the years 2000 (or even 2003) and the present.[11]

Moreover, according to deposition testimony, defendants did not review student case files other than those of the named plaintiffs.   *See* Deposition of Zondra Johnson, Pl. Ex. K, p. 23.   Case files are likely to contain statistical information, letters or notes about individual complaints, and other documents responsive to discovery requests.

Defendants should be required to review all document requests and perform a thorough and adequate search of all documents within their custody, including e-mails, faxes, memoranda, letters, case files, and computer files, provide a description of the search performed, and certify that they have performed a good-faith, reasonable search for all documents responsive to Plaintiffs' First, Second, and Third Document Requests.

---

[10] Exhibit M, although responsive to Document Requests 4, 5, 11, 12, and 13 in Plaintiffs' First Document Requests, was not produced by defendants until January 30, 2008.  Bates Nos. 7198-7201.

[11] Plaintiffs are aware that defendants have in their custody a letter dated September 17, 2002, to principals and assistant principals regarding Child Find referrals to DCPS for children, aged two years, eight months, to five years, who might be eligible for special education services. This document was not produced.

**B.    DEFENDANTS SHOULD BE REQUIRED TO PERFORM A THOROUGH
        SEARCH FOR DOCUMENTS**

Absent a valid objection, defendants are required to perform a thorough and adequate search and produce all relevant and discoverable documents.  The procedure employed by defendants to search for documents responsive to plaintiffs' document requests is not likely to fulfill their obligation to perform an adequate search.

According to Zondra Johnson, the only instruction received from counsel to assist her in responding to plaintiffs' discovery requests was, "if you have it, provide it."  *See* Deposition of Zondra Johnson, Pl. Ex. K, p. 104.  She was not instructed to consult with counsel if she had any questions about document requests or potentially responsive documents.  *Id.,* pp. 104-105.  She did not review the document requests again after the first reading for any reason, including for the purpose of supplementing discovery requests with later documents.  *Id.,* p. 137 ("Sir, the document request in 2005, I did not go back through them, sir.  I repeated several times, it was an error in my judgment, sir").  In fact, as shown above, Ms. Johnson, who was responsible for producing documents in the custody of the CARE Center, which administers Child Find for Part B, only produced those documents that she personally felt were relevant to the case and not those documents falling within the exact wording of the request.  *See* Deposition of Zondra Johnson, *Id.*, pp. 182-183.

An example of defendants' arbitrary and sporadic production includes the production of the CARE Center's Strategic Plan for 2006 and 2007 on the day of Ms. Johnson's deposition. According to Ms. Johnson, the 2006 plan was in defendants' custody from September 2006 and the 2007 plan was in the defendants' custody from September 2007.  *See* Deposition of Zondra Johnson, Pl. Ex. K, pp. 74-75.  The document clearly falls within Plaintiffs' First Document Request, Pl. Ex. A, Document Request 12.  Nevertheless, it was provided over two years after it

was requested and it was not provided in response to a document request.[12/]  Rather, according to

Ms. Johnson, "it was [provided] to show our accomplishment."  Deposition of Zondra Johnson,

Pl. Ex. K, p. 139.

## C.    DEFENDANTS HAVE DESTROYED AND MAY BE CONTINUING TO DESTROY DOCUMENTS LIKELY TO BE RELEVANT TO THIS LITIGATION WHICH THEY WERE REQUIRED TO PRESERVE

Defendants were obligated to preserve documents relevant to litigation, once litigation

was reasonably anticipated.  *Rambus. Inc. v. Infineon Technologies*, *AG*, 222 F.R.D. 280, 288

(E.D.Va. 2004).  This means that counsel must ensure defendants' compliance with the duty to

preserve all relevant discovery.  *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 435 (S.D.N.Y.

2004) ("UBS's counsel are not entirely blameless. While, of course, it is true that counsel need

not supervise every step of the document production process and may rely on their clients in

some respects, counsel is responsible for coordinating her client's discovery efforts" (citations

and internal quotations marks omitted)).  Zondra Johnson testified at her deposition that the

CARE Center discarded all complaints from families, despite plaintiffs' document requests

asking for all complaints to the CARE Center.  *See* Deposition of Zondra Johnson, Pl. Ex. K, p.

179.  If these complaints were destroyed after notice of this litigation, defendants have violated

their duty to preserve relevant documents.

Defendants were also obligated to prevent the automatic deletion of e-mails relevant to

this case once they received notice of the litigation. "Federal courts have long recognized a duty

of the parties to preserve relevant evidence for litigation."  *AAB Joint Venture v. United States*,

---

[12/] Defendants also produced a copy of the position description for Education Program Specialist (Early Childhood Transition Services) at the deposition of Ms. Johnson on January 15, 2008. According to defendants, they first became aware of the job description in 2005 and, even though defendants were aware that Request 37 of Plaintiffs' First Document Requests asked for job descriptions, defendants withheld the document.  *See* Deposition of Zondra Johnson, Pl. Ex. K , pp. 129-131.

75 Fed. Cl. 432, 440 (Fed. Cl. 2007). As this Court has stated (*Artista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27, 34, n. 3 (D.D.C. 2004) (J. Lamberth):

> While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

The scope of the duty to preserve extends to e-mails as well as other documents. *AAB Joint Venture v. United States*, *supra*, 75 Fed. Cl. at 441. This Court has therefore held that any automatic deletion feature should be turned off once litigation can be anticipated. *See, e.g., Peskoff v. Faber*, 244 F.R.D. 54, 60 (D.D.C. 2007) ("The Advisory Committee comments to amended Rule 37(f) make it clear that any automatic deletion feature should be turned off and a litigation hold imposed once litigation can be reasonably anticipated"); *Disability Rights Council of Greater Washington v. Washington Metropolitan Transit Authority*, 242 F.R.D. 139, 146 (D.D.C. 2007) ("Understandably, WMATA does not defend its failure to prevent the automatic deletion feature from operating during the course of this litigation. Its failure is indefensible").

In a recent deposition of one of the officials responsible for administering the Child Find program, plaintiffs learned that defense counsel gave no instruction to defendants to retain e-mails related to this case. *See* Deposition of Zondra Johnson, Pl. Ex. K, p. 14. Moreover, many of the deponents' e-mails over the course of this litigation had been deleted as a result of the District of Columbia's policy providing for the automatic deletion of e-mails every 90 days. *See id.,* pp.11, 13-18. As discussed above, defendants were under an obligation to ensure that e-mails relevant to the litigation would not be deleted. Defendants should be required to stop the auto-deletion of e-mails for the duration of this litigation, produce any e-mails that are still within their possession, and fully explain why they have failed to prevent the deletion of e-mails subsequent to the start of this litigation.

III

**DEFENDANTS SHOULD BE COMPELLED TO PROVIDE FULL AND COMPLETE ANSWERS TO PLAINTIFFS' INTERROGATORIES**

Defendants' responses to Plaintiffs' First Set of Interrogatories, served September 28, 2007 (Pl. Ex. G), are seriously deficient. Defendants provided narrative responses to only 4 out of 16 interrogatories, and even those responses are incomplete. Defendants' Responses to Plaintiffs' Interrogatories, Pl. Ex. G, Interrogatories 2, 11, 12, 13. In most cases, the responses improperly refer to defendants' pleadings or documents produced. *E.g.*, Defendants' Responses to Plaintiffs' Interrogatories, Pl. Ex. G, Interrogatories 1, 2, 5, 6. Often, defendants cite their entire document production, without specifying which particular documents answer the interrogatory. Defendants' Responses to Plaintiffs' Interrogatories, Pl. Ex. G, Interrogatories 1, 5, 6, 7, 8.

Defendants stated that, in response to plaintiffs' interrogatories, they produced business records in accordance with Rule 33(d). Defendants' Response to Plaintiffs' Interrogatories, Pl. Ex. G, para. 5. However, defendants' responses are not in compliance with this rule.

Rule 33(d) states:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records * * *, and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by * * * specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could * * *.

The Advisory Committee emphasized that "directing the interrogating party to a mass of business records" is an "abuse of the option." That is exactly what defendants have done here. In their responses to five of the interrogatories, defendants refer plaintiffs to the documents produced by defendants at Bates Numbers 1-6223, which was defendants' entire document production at the time of the reply. *See* Defendants' Responses to Plaintiffs' Interrogatories, Pl.

Ex. G, Interrogatories 1, 5, 6, 7, 8.

Courts have repeatedly held that such "[d]ocument dumps or vague references to documents do not suffice." *SEC v. Elfindespan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). As one court has explained (*Pulsecard, Inc. v. Discover Card Services*, 168 F.R.D. 295, 305 (D. Kan. 1996):

> Under the guise of Fed. R. Civ. P. 33(d), defendants may not simply refer generically to past or future production of documents. They must identify in their answers to the interrogatories specifically which documents contain the answer. Otherwise they must completely answer the interrogatories without referring to the documents.

*See also, e.g., Lucero v. Valdez*, 240 F.R.D. 591, 595 (D.N.M. 2007) (Party "failed to comply with Rule 33 when, in response to Defendants' discovery requests, he simply referred defendants to documents he had already produced or documents that would be produced during further discovery.* * * Simply referring a party to a mass of records * * * is not a sufficient response"); *Del Campo v. American Corrective Counseling Services, Inc.*, N.D. Cal., No. C-01-21151, 2007 WL 4287335, at *3 (Dec. 5, 2007); *MGP Ingredients, Inc. v. Mars, Inc.*, D. Kan., Civ. Action No. 06-2318, 2007 WL 3274800, at *6 (Nov. 6, 2007); *Convermat Corp. v. St. Paul Fire & Marine Insurance Co.*, E.D.N.Y., No. CV 06-1045, 2007 WL 2743696, at *3-4 (Sept. 18, 2007). Moreover, a prerequisite to use of Rule 33(d) is that the burden of determining the answer from the documents will be equal for either party. However, here, "the effort involved is not as great for the producing parties as it is for the plaintiffs, since the former are more familiar with the documents than the plaintiffs." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 366 (N.D. Ill. 2005); *see also SEC v. Elfindespan, S.A., supra*, 206 F.R.D. at 577.

In response to other interrogatories, defendants referenced specific documents they have produced by bates numbers, but these responses are also insufficient under Rule 33 because defendants have failed to affirm that the answers to the interrogatories can actually be found in these documents. *See* Defendants' Responses to Plaintiffs' Interrogatories, Pl. Ex. G,

Interrogatories 10, 11, 14, 15, 16. "Rule 33(d) * * * requires an affirmative, verified representation that the information requested can indeed be found in the documents." *L.H. v. Schwarzenegger*, E.D. Cal., Civ. No. S-06-2042, 2007 WL 2781132, at *5 (Sept. 21, 2007). Defendants "must show that a review of the documents will actually reveal answers to the interrogatories." *SEC v. Elfindespan, S.A.*, *supra*, 206 F.R.D. at 576 (citing 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2178, (2d ed. 1994), p. 336). "In other words, the producing party must show that the named documents contain all of the information requested by the interrogatories." *SEC v. Elfindespan, S.A.*, *supra*, 206 F.R.D. at 576. Defendants have not done this. Their responses merely direct plaintiffs to "see" the produced documents, without even explaining what the documents are or how they answer the particular interrogatory.

Defendants also purport to respond to the interrogatories by referencing pleadings from this case, namely, defendants' answer to plaintiffs' amended complaint, defendants' initial disclosures, and their response to another interrogatory. *See* Defendants' Responses to Plaintiffs' Interrogatories, Pl. Ex. G, Interrogatories 1, 2, 5, 7. The courts have held that such responses are improper. "Because Rule 33(b)(1) requires a party to answer each interrogatory 'fully,' it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories." *Equal Rights Center v. Post Properties*, *Inc.* 246 F.R.D. 29, 35 (D.D.C. 2007) (citing 7 Moore's Federal Practice-Civil § 33.103); *see also, e.g., Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, N.D. Fla., No. 3:07cv97, 2007 WL 2298009, at *2 (Aug. 9, 2007) ("[I]t is insufficient to answer an interrogatory by merely referencing allegations of a pleading"); *Farran v. Johnston Equipment, Inc.*, E.D. Pa., Civ. A No. 93-6148, 1995 WL 549005, at *5 (Sept. 12, 1995) ("Merely referencing its defensive pleadings is not an adequate response by defendant. Rule 33(a)

34

requires an answer to be complete in and of itself, and should not refer to other pleadings. * * * Defendant cannot avoid answering interrogatories by referring the plaintiff to its pleadings, no matter how detailed").

Even the four responses in which defendants provided narrative answers were incomplete. In response to Interrogatory 2, defendants provided the names, titles, and contact information of persons they have contacted regarding the case, but they failed to describe each person's involvement with Child Find as the interrogatory requested. Pl. Ex. G. The list also appears to not be complete – one omission is Zondra Johnson, Director of the Office of Early Childhood, the very person who is the signatory to the interrogatories. *See* Pl. Ex. G. Interrogatory 11 requests a detailed description of the process by which special education services may be requested and obtained for a preschool child with disabilities. Pl. Ex. G. In response, defendants provide some information regarding the CARE Center, but they do not even come close to fully "[d]escrib[ing] each step in this process beginning from the first point of contact with defendants through the final eligibility determination and completion of the IEP" as the interrogatory requested. *See* Pl. Ex. G. In response to Interrogatory 12, defendants fail to "[d]escribe in detail what Child Find activities defendants undertake for a preschool child, if any, prior to the date on which defendants consider a 'referral' to be made for such child." *See* Pl. Ex. G. Defendants' response to Interrogatory 13, which asks defendants to "describe in detail any formal or informal guidance given to defendants' employees that relate to calculating, meeting, defining, and tracking compliance with the 120-day deadline set forth in D.C. Code 38-2501," states only the following: "The calculation, meeting, and tracking of compliance with the 120-day deadline set forth in D.C. Code 38-2501 is conducted by the ENCORE database system." Pl. Ex. G. This answer is non-responsive and wholly insufficient, since it does not provide any information on instructions given to employees for complying with the 120-day deadline. Thus, even where they were provided, none of defendants' narrative answers are

adequate.

In sum, when defendants' impermissible references to outside documents and incomplete responses are stripped away, none of defendants' answers to plaintiffs' interrogatories are adequate (except possibly Interrogatories 3 and 4, which will need to be supplemented when the requested information becomes available). Moreover, as shown above, all of defendants' objections should be overruled. Therefore, plaintiffs request that the court order defendants to provide full and complete answers to all of plaintiffs' interrogatories and supplement those answers as necessary.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion to Compel and order defendants to pay plaintiffs' reasonable attorneys' fees and expenses incurred in filing plaintiffs' Motion to Compel, pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. A proposed order is attached.

Respectfully submitted,

/s/ Bruce J. Terris

BRUCE J. TERRIS (D.C. Bar No. 47126)
EMILY A. BENFER (D.C. Bar No. 499884)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC  20005
(202) 682-2100

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington University Law School
2000 G Street, N.W.
Washington, DC 20052
(202) 994-7463

MARGARET A. KOHN (D.C. Bar No. 174227)
1320 19th Street, N.W., Suite 200
Washington, DC 20036
(202) 667-2330

February 4, 2008                    *Counsel for Plaintiffs*

## INDEX TO PLAINTIFFS' EXHIBITS

Plaintiffs' First Set of Requests for Production of Documents,
    served on December 28, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit A

Plaintiffs' Second Set of Requests for Production of Documents,
    served on September 17, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit B

Plaintiffs' First Set of Interrogatories and Third Set of Requests
    for Production of Documents, served on September 28, 2007 . . . . . Plaintiffs' Exhibit C

Defendants' Response to Plaintiffs' First Set of Requests
    for the Production of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit D

Letter from Dan Rezneck, Counsel for Defendants, to Shina Majeed,
    Counsel for Plaintiffs, received January 30, 2006 . . . . . . . . . . . . . . Plaintiffs' Exhibit E

Defendants' Response to Plaintiffs' Second Set of Requests
    for the Production of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit F

Defendants' Response to Plaintiffs First Set of Interrogatories . . . . . . . . . . Plaintiffs' Exhibit G

Defendants' Response to Plaintiffs' Third Set of Requests
    for the Production of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit H

Letter from Dan Rezneck, Counsel for Defendants, to Shina Majeed,
    Counsel for Plaintiffs, March 2, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit I

Fourteen Letters from Counsel for Plaintiffs
    to Dan Rezneck, Counsel for Defendants . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit J

Transcript, Deposition of Zondra Johnson, January 15, 2008 . . . . . . . . . . . Plaintiffs' Exhibit K

Defendants' Outstanding Document Production Responsive to Plaintiffs'
    First, Second, and Third Sets of Requests
    for the Production of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit L

Letter from Patricia J. Guard, Acting Director U.S. Department of Education,
    Office of Special Education Programs, to Michelle Rhee, Chancellor,
    DCPS, July 9, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit M

E-mail from Eden Miller, Counsel for Defendants, to Emily Benfer,
    Counsel for Plaintiffs, January 18, 2008 . . . . . . . . . . . . . . . . . . . . . . Plaintiffs' Exhibit N

Transcript, Deposition of Badiyah Mushirah-Sharif, November 16, 2007 . . Plaintiffs' Exhibit O

Transcript, Deposition of Badiyah Mushirah-Sharif, November 19, 2007 . . Plaintiffs' Exhibit P

Transcript, Deposition of Joan Christopher, December 17, 2007 . . . . . . . . . Plaintiffs' Exhibit Q

Transcript, Deposition of Genevieve Johnson, November 13, 2007 . . . . . . . Plaintiffs' Exhibit R