UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DL, *et al.*,  )
  )
    Plaintiffs,  )
  )
v.  )   Civil Action No. 05-1437 (RCL)
  )
DISTRICT OF COLUMBIA, *et al.*,  )
  )
    Defendants.  )

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES**

**INTRODUCTION**

I, Zondra Johnson, Director of the Office of Early Childhood in the District of Columbia Public Schools Office of Special Education, upon information and belief, gives the following answers to interrogatories propounded to the Defendants by the Plaintiffs:

1. The information supplied in these answers is not based solely on the knowledge of the executing party, but includes knowledge of the party, its agents, representatives, and attorneys, unless privileged.

2. The word usage and sentence structure may be that of the attorney assisting in the preparation of these answers, and thus, does not necessarily purport to be the precise language of the executing party.

3. The Defendants reserve the right to amend, revise or supplement their answers to these interrogatories if and when new or different information becomes available.

4. For any additional responsive information that may be or may have been made available through deposition testimony, the Defendants incorporate such



Plaintiffs' Exhibits
G

information for purposes of giving the Plaintiff notice that such information exists, but do not necessarily adopt such testimony as accurate and complete.

5. In accordance with Fed. R. Civ. P. 33(d), the Defendants may supply documents which respond to the Plaintiffs' interrogatory when such an answer "may be derived or ascertained" from the documents supplied and "the burden of deriving or ascertaining the answer is substantially the same" for the Plaintiffs and the Defendants. The Defendants have produced such documents, as indicated herein.

6. The Defendants object to any part of the Plaintiffs' instructions which seek to impose any discovery requirements outside the scope of the rules, especially any obligation to produce information not in the Defendants' control or not currently known to its attorneys after reasonable inquiry.

7. The Plaintiffs' definition of the word "identify" is overly broad and unreasonably burdensome. The Defendants provides the below responses that are reasonably available to them to sufficiently identify persons or things referenced in the discovery requests. The Defendants objects to providing home addresses and phone numbers of current or former employees.

8. Unless otherwise stated, the Defendants also object to providing information from persons no longer in their employ or control.

9. The Defendants object to the requests to the extent that they seek information before January 1, 2003.

10. The Defendants object to the requests to the extent that they seek information as to individuals other than the children who are named plaintiffs.

11. The Defendants object to the requests to the extent that they seek information or documents that are protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, immunity or protection. The Defendants hereby claim such privileges, immunities, and protection to the extent implicated by each request. Inadvertent production of any documents so privileged, immune, or protected does not constitute a waiver of such a privilege, immunity, or protection or any other ground for objecting to the discovery request.

12. The Defendants object to the requests to the extent that they require the District to search for and produce information or documents that are not relevant to the claim or defense of any party or to the subject matter of the action, are neither admissible nor reasonably calculated to lead to the discovery of admissible evidence, or otherwise exceed the scope of discoverable matters under the Federal Rules of Civil Procedure.

13. The Defendants object to the requests to the extent that they conflict with or purport to expand the Defendants' obligations under the Federal Rules of Civil Procedure, the local rules, and any order in this case.

14. The Defendants object to the requests to the extent that they seek confidential information and will provide such information only pursuant to the protective order governing discovery in this action.

15. The Defendants object to the requests to the extent that they are unduly broad or unreasonably burdensome.

16. The Defendants object to the requests to the extent that they are vague, ambiguous, and/or not sufficiently particularized to permit the Defendants to determine what information is sought and to make a meaningful response.

17. The Defendants object to the requests to the extent that they request information that is within the possession, custody or control of the Plaintiffs or their attorneys and/or is as readily or more readily obtainable from a source other than the Defendants.

18. In responding to the Plaintiffs' First Set of Interrogatories, the Defendants do not concede or admit any premise or proposition contained in any Request or the complaint herein.

## SPECIFIC RESPONSES

1. **Request**: Please state defendants' defenses to this lawsuit and all facts that support or may tend to support each of the defenses. For each (a) identify all persons who have knowledge of facts which support or may tend to support the defense(s); and (b) provide a summary of the facts or information in each such person's possession which supports or may tend to support the defense(s).
   **Response: See General Objections 6 and 11; see also Defendants' Answer to the Amended Complaint and documents produced by the Defendants at Bates Numbers 1-6223.**

2. **Request**: Please identify each person defendants have contacted, or from whom defendants have either obtained or requested a statement, regarding the allegations of the complaint in this action by stating the person's (a) full name; (b) current or last known business and residence addresses and telephone numbers;

(c) current or last known employer and the employer's address and telephone numbers; (d) current or last known occupation or position title; and (e) job title and employer at the time of any involvement the person had with Child Find activities and the time period or dates of the person's involvement; and describe the persons' involvement in creating, changing, or implementing the policies, practices, programs, guidance, or procedures of Child Find.

**Response: The Defendants have not obtained or requested any statements from anyone with regard to this lawsuit. See General Objection 8 with regard to former employees of the District of Columbia; see also Defendants' October 25, 2005, Initial Disclosures. In addition to those people listed in the Defendant's Initial Disclosures, the Defendants have also contacted:**

- **Dr. Marla Oakes, Executive Director of Special Education Reform, the District of Columbia Public Schools ("DCPS") Office of Special Education, 825 North Capitol Street, NE, 6th Floor, Washington, DC 20002, (202) 442-4800.**

- **Vielka Scott, Acting Deputy Executive Director of the DCPS Office of Special Education, 825 North Capitol Street, NE, 6th Floor, Washington, DC 20002, (202) 442-4800.**

- **Patricia Young, Director of the CARE ("Centralized, Assessment, Referral, and Evaluation") Center of the DCPS Office of Special Education, Shaw Junior High School, 925 Rhode Island Avenue, NW, Washington, D.C. 20001, (202) 671-0882.**

- **Tracie Dickson, Program Manager, Department of Human Services Early Care and Education Administration, Infants and Toddlers with Disabilities Division, 717 14th Street, NW, Suite 1200, Washington, DC 20005, (202) 727-5371.**
- **Agency attorneys.**

3. **Request:** Please identify each witness who will testify at trial and state the subject of each witnesses' testimony and the basis for their familiarity with the subject, including any past or present involvement with any Child Find activities. For each witness, state their (a) full name; (b) current or last known business and residence addresses and telephone numbers; (c) current or last known employer and the employer's address and telephone numbers; and (d) current or last known occupation or position title; and summarize the witness' possible testimony.
**Response: The Defendants have not yet decided which witnesses they will call at trial.**

4. **Request:** Please state whether you have retained any expert(s) to testify on your behalf at trial or to assist you in any other way. For each retained expert, please state (a) the expert's full name, current or last known business and residence address and telephone number, current or last known employer and the employer's address and telephone numbers, and the expert's current or last known occupation or position title; (b) the expert's area(s) of expertise; (c) the expert's qualifications, including a curriculum vitae and/or résumé and attach copies, if any; and (d) the expert's conclusions and/or opinions and bases therefore,

6

including whether written reports have been or will be prepared by the expert(s) and, if so, attach copies of the reports.

**Response: The Defendants have not yet retained an expert witness.**

5. **Request:** Please identify each person who directly or indirectly had any responsibility for administering or implementing defendants' Child Find activities for preschool children from January 1, 2000, through the present. Include in your identification any person with whom defendants have subcontracted to carry out Child Find activities. For each person identified: (a) state his/her full name, current or last known business and residence addresses and telephone numbers, current or last known employer and the employer's address and telephone numbers, and the person's current or last known occupation or position title; (b) state his/her job title, employer, and work address, and telephone number during his/her involvement with Child Find activities; (c) describe in detail the nature of the person's Child Find responsibilities and the dates during which the person carried out these responsibilities; (d) describe in detail any qualifications possessed by the person and any training provided to the person during his/her involvement with or in preparation for participating in Child Find activities.

   **Response: See General Objections. See also Defendants' Initial Disclosures; Defendants' Response to Interrogatory No. 2 and documents produced by the Defendants at Bates Numbers 1 – 6223.**

6. **Request:** Please state whether defendants have had any Child Find policy or practice, either formal or informal, for pre-school aged children in the District of Columbia from January 1, 2000, through the present. Identify the policy or

practice and identify all programs, guidance, and procedures in effect since January 1, 2000, related to the Child Find policy or practice. Specifically, state (a) the effective date of the policy, practice, program, guidance, or procedures; (b) the duration of the policy, practice, program, guidance, or procedures; (c) how defendants have implemented the policy, practice, program, guidance, or procedures; (d) all persons or agencies responsible for implementing each policy, practice, program, guidance, or procedure; and (e) all documents that describe the policy, practice, programs, guidance, or procedures and defendants' implementation of each. If there have been any changes since January 1, 2000, to the policy, practice, program, guidance, or procedure, for each change provide (a) the dates of each change(s); (b) the rationale for the change(s); and (c) a description of the change(s), including any change in individuals, agencies or sub-contractors responsible for overseeing and administering Child Find at any level.

**Response: See documents produced by the Defendants at Bates Numbers 1-6223. For current practices, see Bates Numbers 5743-5778. Although this is a draft document, it accurately states current practices of DHS and DCPS with regard to Child Find.**

7. **Request:** Please identify each person who has directly or indirectly been involved in formulating, implementing, evaluating, enforcing, suspending, changing, or modifying any of the policies, practices, programs, guidance, or procedures referred to in response to Interrogatory 6 from January 1, 2000, through the present. For each person, provide the (a) name, last known address, and last known telephone number; (b) the present organization, job position, and

grade; (c) the organization, job position, and grade at the time of the person's involvement; (d) the time period or dates of the person's involvement; (e) a description of his/her involvement in the policy, practice, program, guidance, or procedure; and (f) a detailed description of his/her qualifications and training prior to and during the period in which he/she was involved in creating, changing, or implementing any of the policies, practices, programs, guidance, or procedures related to Child Find activities.

**Response: See Defendants' Initial Disclosures; Defendants' Response to Interrogatory No. 2; documents produced by the Defendants at Bates Numbers 1 – 6223.**

8. **Request:** For each year from January 2000 to the present, please describe defendants' policies, practices, programs, guidance, or procedures for carrying out the following Child Find activities for preschool children: (a) identifying and locating children in the District of Columbia who may be eligible for special education services; (b) providing public awareness and outreach to parents, teachers, day care centers, hospitals, other health care providers, community organizations, and to any other person or entity who may have knowledge of preschool children in need of special education and related services; (c) accepting and following up on referrals for special education and related services from parents, teachers, day care centers, hospitals, other health care providers, community organizations, and to any other person or entity who make referrals on behalf of disabled preschool children; (d) screening preschool children in need of special education and related services; (e) making determinations for eligibility

for special education and related services for preschool children; (f) tracking preschool children who are at risk for disabilities and who may need special education and related services; (g) recording data and information about defendants' Child Find activities, including data and information about preschool children who may need special education and related services; (h) coordinating and sharing information with other District agencies, agents, and their sub-contractors about Child Find and about preschool children who may be disabled and need special education and related services; (i) transitioning children participating in Part C of IDEA to Part B programs; and (j) training employees of DCPS, day care centers, hospitals, other health care providers, community organizations, and other entities on identifying children for referral and how to make referrals. If there have been any changes in the defendants' procedures, for each activity (a-j) since January 1, 2000, describe in detail the nature of those changes, the date(s) of those changes, and the rationale for these changes. For each of the above-listed activities, identify the person(s) responsible for carrying out the activity; the qualifications of, and the training provided to, each person; and the corresponding policy or procedure providing guidance for the completion of each activity.

**Response: See documents produced by the Defendants at Bates Numbers 1 – 6223.**

9. **Request:** Please describe in detail the methods used by defendants for evaluating defendants' activities as set forth in Interrogatory 8 and describe in detail the outcome of any evaluations from January 1, 2000, through the present.

**Response: See General Objection 16.**

10. **Request 10:** Please describe in detail all actual expenditures by DCPS and/or defendants on Child Find activities for preschool children for each year from January 1, 2000, through the present, including: (a) Defendants' actual expenditures on staff members and other individuals who worked on Child Find activities for preschool children. Provide the number of staff, the percentage of their time spent on Child Find activities, and the amount each person was paid; (b) Defendants' actual expenditures on the following components of Child Find for preschool children: (I) public awareness and outreach efforts, including, but not limited to, advertisements, creation and distribution of public education materials, site visits to and trainings for DCPS, day care centers, hospitals, other health care providers, community organizations, and other entities and conducting health fairs and other outreach efforts; (ii) screening of at risk children; (iii) promoting and accepting referrals; (iv) medical, physical, psychiatric, occupational, or assistive technology evaluations for preschool children; (v) determining eligibility and convening Individual Education Program ("IEP") meetings; and (vi) creating, maintaining, and updating an accurate and effective data tracking system. Identify any documentation of these expenditures, including, but not limited to, any contracts, memoranda, and budgetary items.
**Response: See General Objection 15. See also documents produced by the Defendants at Bates Numbers 2710-2810; 4532-4533; 4718.**

11. **Request:** Please describe in detail the process by which a parent, doctor, day care teacher, or other person with knowledge of a preschool child with a disability may

request and obtain special education and related services for such child. Describe each step in this process beginning from the first point of contact with defendants through the final eligibility determination and completion of the IEP. Describe whether there have been any changes in this process during the time period from January 1, 2000, through the present.

**Response: See documents produced by the Defendants at Bates Numbers 5743-5778.**

**In June of 2004, DCPS established the CARE Center. The CARE Center is responsible for the location and identification of children who are not attending a DCPS pre-school program and who are District of Columbia residents, aged three to five, with disabilities or suspected disabilities in accordance with Part B of the Individuals with Disabilities Education Improvement Act of 2004.**

**Prior to 2004, home schools were responsible for locating and identifying children aged three to five with special needs living in the District of Columbia. Parents would register their children at their home school to begin the screening and evaluation process.**

12. **Request:** Please explain in detail the definition of "referral" used by DCPS and defendants, including an explanation of who may make a referral and the date on which a referral is considered to be made. If the definition of "referral" has changed during the period from January 1, 2000, through the present, describe these changes, state any changes that were made, and state the rationale for the changes. Describe in detail what Child Find activities defendants undertake for a

request and obtain special education and related services for such child. Describe each step in this process beginning from the first point of contact with defendants through the final eligibility determination and completion of the IEP. Describe whether there have been any changes in this process during the time period from January 1, 2000, through the present.

**Response: See documents produced by the Defendants at Bates Numbers 5743-5778.**

**In June of 2004, DCPS established the CARE Center. The CARE Center is responsible for the location and identification of children who are not attending a DCPS pre-school program and who are District of Columbia residents, aged three to five, with disabilities or suspected disabilities in accordance with Part B of the Individuals with Disabilities Education Improvement Act of 2004.**

**Prior to 2004, home schools were responsible for locating and identifying children aged three to five with special needs living in the District of Columbia. Parents would register their children at their home school to begin the screening and evaluation process.**

12. **Request:** Please explain in detail the definition of "referral" used by DCPS and defendants, including an explanation of who may make a referral and the date on which a referral is considered to be made. If the definition of "referral" has changed during the period from January 1, 2000, through the present, describe these changes, state any changes that were made, and state the rationale for the changes. Describe in detail what Child Find activities defendants undertake for a

preschool child, if any, prior to the date on which defendants consider a "referral" to be made for such child.

**Response: See documents produced by the Defendants at Bates Numbers 5743-5778.**

**DCPS has no "official" definition of "referral" in the District of Columbia statues or regulations. Such a definition is not included in Section 3001 in Chapter 30 of the DCMR, or has not been established by DCPS. Nor is there an "official" explanation regarding who may make a referral or the date which a referral is considered to be made.**

**In practice, the date of the referral coincides with the parent's consent to begin the screening and evaluation process and the date the event is first initiated into ENCORE. The "practice" of referral has not changed since January 1, 2003.**

**Only a very small percentage of primary referral sources, such as doctors, directly call the CARE Center because they are trained to instruct parents to call DCPS directly. When such a call is received, the caller is instructed to have the parent of the child call DCPS directly, due to confidentiality concerns and because the parents must give consent to begin the screening and evaluation process.**

13. **Request:** Please describe in detail any formal or informal guidance given to defendants' employees that relate to calculating, meeting, defining, and tracking compliance with the 120-day deadline set forth in D.C. Code § 38-2501 for

13

conducting evaluations and offering special education and related services to children who request them, including any internal deadlines.

**Response: The calculation, meeting, and tracking of compliance with the 120-day deadline set forth in D.C. Code § 38-2501 is conducted by the ENCORE Database System.**

14. **Request:** Please identify, by year from January 1, 2000 through the present, the percentage and number of preschool children who: (a) reside in, or are wards of, the District of Columbia; (b) transitioned from Part C to Part B and, for each such child, provide the children's age at the time of transition; (c) did not transition from Part C to Part B by their third birthday; (d) did not transition from Part C to Part B at all; (e) were referred to DCPS for special education and related services and the source of the referral for each, including all referrals by parents, teachers, day care centers, hospitals, other community organizations, and other persons or entities made to defendants on behalf of a disabled preschool child prior to the time the "Consent to Evaluate" form was signed by the child's parents; (f) were screened by DCPS; (g) were evaluated by DCPS; (h) did not sign a "consent to evaluate" form; (i) were found ineligible for services under Part B; (j) were found eligible for services under Part B; (k) offered special education and/or other related services; (l) received an IEP, special education, and/or other services; (m) requested a due process hearing; and (n) receive Supplemental Security Income or services from the Department of Health and were screened or invited to be screened by DCPS.

**Response:** See General Objection 15. See also documents produced by the Defendants at Bates Numbers 4677-4717, 4719-5737, 5737-5740, and 5741-5742, as well as 5806-5879.

15. **Request:** Please identify, separately and by year from January 1, 2000, through the present, the percentage and number of children aged 0 through 3 and aged 6 through 21 who: (a) were found eligible for services under Part B or Part C; (b) were offered special education and/or other related services; (c) received an IEP, special education, and/or other services; and (d) requested a due process hearing.

    **Response:** See documents produced by the Defendants at Bates Numbers 4677-4717 and 4719-5737.

16. **Request:** Please describe the policies and procedures followed by District of Columbia departments and agencies, including, but not limited to, the Department of Health, Department of Human Services, Child and Family Services Agency, Department of Disability Services, Office of Human Rights, and Department of Youth Rehabilitative Services to furnish DCPS the names of preschool children to be screened for possible eligibility for special education services.

    **Response:** See documents produced by the Defendants at Bates Numbers 5743-5796. Not all of the procedures detailed in the draft Memorandum of Agreement are currently in place.

I, Zondra Johnson, have read the foregoing answers to interrogatories, and they are true to the best of my knowledge, information, and belief.

_____
Zondra Johnson
Director of the DCPS Office of Early Childhood

SWORN AND SUBSCRIBED before me, a Notary Public, this 29th day of October, 2007.

_____
Notary Public, D.C.

My Commission Expires: 2/9/09

Objections and legal responses interposed by counsel.

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

/s/ Daniel A. Rezneck
DANIEL A. REZNECK [#31625]
Senior Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001

/s/ Eden I. Miller
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
E-mail: Eden.Miller@dc.gov

October 29, 2007