UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Plaintiffs' Exhibit 1

)
DL,[1] *et al.*, on behalf of themselves )
and others similarly situated, )
 )
      Plaintiffs, )
 )
      v. )   Civil Action No. 05-1437 (RCL)
 )
THE DISTRICT OF COLUMBIA, *et al.* )
 )
      Defendants. )

**AFFIDAVIT OF BRUCE J. TERRIS**

1. I am a partner in the Washington, D.C., law firm of Terris, Pravlik & Millian, LLP (hereafter "Terris, Pravlik & Millian"). The firm has served as lead counsel for the plaintiff class in this action since the time the case was first investigated in 2005.

2. Our firm, which has 10 attorneys, engages almost exclusively in litigation in areas that have come to be identified with public interest law, particularly in the areas of poverty, employment, civil rights, and environmental law. Since the early 1970's, I estimate that poverty, employment, and civil rights cases have comprised approximately 30 percent of the firm's practice. Almost all of the remainder of the firm's practice involves environmental cases brought in the federal courts on behalf of local and national citizen groups.

3. Terris, Pravlik & Millian is a public interest law firm that handles cases in areas of the law where people traditionally have not been represented. Approximately 90 percent of the firm's work is done without charge to the client or the client pays for only a small proportion of the work and expenses based on the hope that the client will prevail and attorneys' fees will be awarded by the

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

court or will be received in settlement. When the firm does charge its clients, it charges below market rates to enable individuals who would otherwise not be able to afford legal representation to obtain it. The firm therefore does not have billing rates that reflect the value of its attorneys' services in the marketplace. *See SPIRG v. AT&T Bell Laboratories*, 842 F.2d 1436, 1442 (3d Cir. 1988). As of this time, the firm's normal billing rate for new clients is an across-the-board rate of $185 per hour, regardless of whether the work is done by a partner or an associate, and $75 per hour for paralegals.

4. I graduated *summa cum laude* from Harvard College in 1954. I am a 1957 graduate of Harvard Law School *magna cum laude*, where I was article editor of the Harvard Law Review. I have practiced law for over 50 years, including 7 years in the Office of the Solicitor General where I drafted or edited approximately 70 briefs on the merits in the Supreme Court. I have also presented 20 oral arguments to the Supreme Court, the most recent of which was in October 1999. I was one of the founders of both the Legal Services Program in the original Office of Economic Opportunity and the Center for Law and Social Policy, one of the country's first major public interest law firms. Throughout the course of this action, I have served as the supervisory attorney.

5. The attorney time expended in this case on plaintiffs' motion to compel has been by Kathleen L. Millian, S. Shina Majeed, Emily A. Benfer, Janice D. Gorin, Alexander R. Karam, Carolyn Smith Pravlik, and myself, as well as co-counsel Margaret A. Kohn and Jeffrey S. Gutman of The George Washington University Law School Community Legal Clinics (LSCLC). Their resumes are attached as Exhibits 9-11.

    (a) Kathleen L. Millian graduated from Cornell University with a bachelor of science degree in 1982 and from Stanford Law School in 1985. Before beginning employment with the firm,

Ms. Millian was a judicial clerk to the Honorable James K. Singleton of the Alaska Court of Appeals from 1985 to 1986. She began employment with the firm in 1987 and became a partner in 1992. Since joining the firm, Ms. Millian has litigated complex cases in the federal courts, the majority being brought under federal environmental laws.

(b) S. Shina Majeed graduated from Yale College, *cum laude*, in 1995 and from New York University School of Law, *cum laude*, in 2000, where she served as Senior Articles Editor for the New York University Review of Law and Social Change. Before joining the firm as an associate in February 2005, Ms. Majeed was a clerk to the Honorable Gladys Kessler of the United States District Court for the District of Columbia and a Skadden Law Fellow at the Urban Justice Center in New York City and the Legal Aid Society for the District of Columbia. Her practice focused on civil rights and complex litigation in the federal courts. She left the firm in September 2007.

(c) Emily A. Benfer earned her B.A., *cum laude*, from Providence College in 1999 and her J.D*., cum laude*, from Indiana University School of Law. Prior to joining the firm, Ms. Benfer was an Equal Justice Works Fellow at the Washington Legal Clinic for the Homeless. She joined the firm as an associate in September 2007, where her practice focused primarily on this case. She left the firm in April 2008.

(d) Janice D. Gorin graduated from the University of Florida with high honors in 2001 and from Harvard Law School, *cum laude*, in 2004. For three years after law school, Ms. Gorin was an associate at Steptoe & Johnson, LLP, where she represented clients in civil litigation and regulatory matters. She joined the firm as an associate in September 2007. Her practice focuses on environmental and civil rights cases.

(e) Alexander R. Karam graduated from Harvard College, *magna cum laude*, in 2000

3

and from Columbia University School of Law in 2004, where he served as Articles Editor for the Columbia Law Review. Before joining the firm as an associate in September 2007, Mr. Karam was a judicial clerk to the Honorable Frederic Block of the United States District Court for Eastern District of New York and a staff attorney at Sanctuary for Families, a domestic violence agency in New York City. His practice focuses on complex litigation including this case and another class action brought against the District of Columbia on behalf of Medicaid beneficiaries.

(f) Carolyn Smith Pravlik is a 1980 graduate of Catholic University Law School and was admitted to the District of Columbia Bar in 1980. She joined the firm as an associate in June 1981 and became a partner in July 1987. Since 1982, she has spent approximately 95% of her time in citizen suit environmental litigation in the federal courts.

(g) Margaret A. Kohn graduated with distinction from Swarthmore College in 1969 and from Columbia University School of Law in 1972. After law school, Ms. Kohn was a fellow at the Center for Law and Social Policy, a staff attorney at the Legal Services Bureau of the Correctional Association of New York and the Women's Rights Project Center for Law and Social Policy, and was a managing attorney at the National Women's Law Center, an organization that she co-founded. Since 1988, Ms. Kohn has focused her practice on disability and special education law. She is currently a solo practitioner.

(h) Jeffrey S. Gutman graduated with distinction from Stanford University in 1983 and obtained his J.D. *cum laude* from Harvard Law School in 1986. Mr. Gutman is currently Professor of Clinical Law and Associate Dean for Academic Affairs at The George Washington University ("GWU") Law School. Prior to joining the GWU Law School faculty in 1994, Mr. Gutman served as a Trial Attorney with the Federal Programs Branch, Civil Division, United

States Department of Justice for seven years.

6. The firm's paralegal who worked on plaintiffs' motion to compel discovery was Allison Landwehr (AL). She left the firm in June 2008.

7. Plaintiffs' Exhibit 6 sets forth the contemporaneous time records maintained by myself and the firm's attorneys and paralegals. These records show the amount of time for which we seek compensation on this matter for the work of Terris, Pravlik & Millian on plaintiffs' motion to compel discovery.

8. In identifying the time for which we seek compensation, we have exercised billing judgment. We are seeking compensation only for time that we would have billed to paying clients. Indeed, in several instances, we are not seeking compensation for time that we would have billed to paying clients.

9. In the exercise of billing judgment, we have eliminated 50 percent of the total amount of fees requested for our firm's work on plaintiffs' initial brief in support of Plaintiffs' Motion to Compel Plaintiffs' First, Second, and Third Sets of Requests for Production of Documents and Plaintiffs' First Set of Interrogatories (hereafter "Plaintiffs' Second Motion to Compel"), for a total of $40,713.05. *See* Pl. Ex. 4. We have concluded that the total number of hours expended on this task was excessive and have reduced that number accordingly. However, as described below in paragraph 12(f), given the extent of defendants' discovery failures and the amount of work required to address those failures adequately in a motion to compel, any further reduction of this amount would be unjustified.

10. We have divided the time spent in this case by attorneys and paralegals into the categories and subcategories described in paragraphs 12 and 13 below. The lodestar amounts, the

number of hours of work for each attorney and the paralegals in each category, multiplied by the rates, are set forth in summary tables. *See* Pl. Ex. 4, 5.

11. A computer print-out of plaintiffs' time records setting forth the work performed is attached as Plaintiffs' Exhibit 6. The time records in Plaintiffs' Exhibit 6 are organized by the same categories and subcategories as in Plaintiffs' Exhibits 4 and 5 and as described in paragraphs 12 and 13 below.

12. **Plaintiffs' Motion to Compel**: The following are the categories and subcategories for the work related to plaintiffs' motion to compel discovery. The "client" for that work is identified as "Child Find." The category is "Pl Discovery," and involves tasks such as preparation of document requests and interrogatories, depositions, and review of documents produced by defendants. With respect to plaintiffs' motion to compel, the category is subdivided into the following subcategories:

(a) **Negotiation re Motion to Compel:** This subcategory involves work related to plaintiffs' efforts to negotiate with defendants in order to obtain the discovery sought in plaintiffs' interrogatories and document requests without filing a motion to compel. The work included writing letters to defendants regarding the inadequacy of their discovery responses and repeated requests for specific documents that plaintiffs had previously identified as relevant (*e.g.,* during the course of a deposition), but did not receive. *See* Pl. Ex. 6, pp. 1-7; Pl. Ex. J.[2/] These efforts began in February 2006, after defendants made it clear that they would engage in "rolling" document production, and continued up until the date plaintiffs' filed their Second Motion to Compel. Also included in this subcategory is time spent preparing for and participating in meet and confer sessions with defendants' counsel – first in February 2006 and again one year later – to address defendants'

---

[2/] Plaintiffs' exhibits identified by letter refer to exhibits to Plaintiffs' Second Motion to Compel.

discovery failures. The time expended under this subcategory includes 54.15 hours by Ms. Majeed, 29.2 hours by Ms. Benfer, 6.28 hours by Mr. Karam, and 12.2 hours by myself, for a total of 101.83 hours. *See* Pl. Ex. 5, p. 1.

(b) **Pl Mot to Compel - Initial Br:** This subcategory involves work related to the plaintiff's initial brief in support of their first motion to compel, filed on July 10, 2006. The work included reviewing defendants' production-to-date for missing documents, legal research, and drafting and revising plaintiffs' brief. *See* Pl. Ex. 6, pp. 7-9. The time expended by our firm for this subcategory includes 84.33 hours by Ms. Majeed and 2.58 hours by myself, for a total of 86.91 hours. *See* Pl. Ex. 5, p. 2.

(c) **Pl Mot to Compel - Opp'n:** This subcategory involves work related to plaintiffs' review of defendants' opposition to plaintiffs' first motion to compel. The work included my review and notation of defendants' opposition brief, for a total of 0.75 hours. *See* Pl. Ex. 6, p. 9; Pl. Ex. 5, p. 2.

(d) **Pl Mot to Compel - Reply:** This subcategory involves work on plaintiffs' reply brief in further support of their first motion to compel. The work included legal research, drafting and revising the reply brief, and preparing an exhibit listing documents that defendants had failed to produce in response to Plaintiffs' First Set of Requests for Production of Documents. *See* Pl. Ex. 6, pp. 9-10. The time expended by our firm for this subcategory includes 56.75 hours by Ms. Majeed and 3.47 hours by myself, for a total of 60.22 hours. *See* Pl. Ex. 5, p. 2.

(e) **Sched Order - Pl Mot to Compel:** This subcategory involves work related to plaintiffs' request for an extension of the Court's scheduling order to file their renewed motion to compel in light of settlement discussions with defendants. The work included preparing and filing

7

the motion for an extension. *See* Pl. Ex. 6, p. 10. Ms. Majeed expended a total of 2.07 hours on this subcategory. *See* Pl. Ex. 5, p. 3.

(f) **Pl 2d Mot to Compel - Initial Br:** This subcategory involves work on plaintiffs' initial brief in support of their renewed motion to compel. The work included a necessarily intensive search of defendants' production-to-date in order to determine which documents were still missing, legal research regarding defendants' multiple objections, drafting and revising plaintiffs' initial brief, and preparing several exhibits to demonstrate the full extent of defendants' discovery failures. *See* Pl. Ex. 6, pp. 10-14. The most work-intensive of these exhibits was Exhibit L, a detailed chart outlining 42 categories of documents that defendants had failed to produce. This Court cited Exhibit L in its June 27, 2008 Order (Docket No. 108), ordering (p. 3) "that defendants shall produce all documents enumerated in Plaintiffs' Exhibit L, and submit to this Court and to the plaintiffs a statement certifying any documents listed in Exhibit L and not provided to Plaintiffs do not exist." The time expended by our firm for this subcategory includes 101.78 hours by Ms. Benfer, 143.01 hours by Ms. Gorin, 0.93 hours by Mr. Karam, 3.2 hours by myself, and 2.92 hours by Ms. Landwehr, for a total of 251.84 hours. *See* Pl. Ex. 5, p. 3. As discussed in paragraph 9 above, plaintiffs have exercised billing judgment and reduced the total fees request for this subcategory by 50 percent.

(g) **Pl 2d Mot to Compel - Rev Br:** According to the Court's January 3, 2008 scheduling order, plaintiffs' renewed motion to compel was due on January 31, 2008. On January 30, 2008, the eve of plaintiffs' filing deadline, defendants produced their Tenth Supplemental Document Production containing over 600 pages of responsive documents. Due to this extremely late production, plaintiffs were forced to seek an extension of time to file their motion to compel.

This subcategory reflects the additional work plaintiffs were forced to undertake due to defendants' last-minute production, including plaintiffs' review of that production for responsive documents and substantial edits to a brief that was otherwise ready for filing on the original deadline. *See* Pl. Ex. 6, p. 15. The time expended by our firm for this subcategory includes 25.7 hours by Ms. Benfer, 0.7 hours by Mr. Karam, 0.33 hours by Ms. Gorin, 0.33 hours by Ms. Millian, and 4.52 hours by myself, for a total of 31.58 hours. *See* Pl. Ex. 5, p. 4.

(h) **Pl 2d Mot to Compel - Opp'n:** Four days before their opposition to Plaintiffs' Second Motion to Compel was due, defendants produced their Eleventh Supplemental Document Production, which consisted of over 6,000 pages. Defendants repeatedly cited these newly produced pages in their opposition brief and in Defendants' Exhibit I, a table listing each of defendants' responses to Plaintiffs' Exhibit L. This subcategory includes time spent reviewing defendants' opposition brief and last-minute production to determine whether it was responsive to plaintiffs' motion. S*ee* Pl. Ex. 6, p. 16. The time expended by our firm for this subcategory includes 8.07 hours by Mr. Karam and 1.33 hours by myself, for a total of 9.4 hours. *See* Pl. Ex. 5, p. 4.

(i) **Pl 2d Mot to Compel - Reply:** This subcategory involves work related to plaintiffs' reply brief in further support of their Second Motion to Compel. Upon review of defendants' opposition and last-minute production, plaintiffs discovered that Defendants' Exhibit I contained many misleading and inaccurate statements about defendants' discovery responses. Plaintiffs therefore created Plaintiffs' Exhibit S in order to provide a detailed and thorough response to each of those statements. Other work in this subcategory included legal research of the arguments raised in defendants' opposition brief and preparation of plaintiffs' reply brief. *See* Pl. Ex. 6, pp. 16-18. The time expended by our firm for this subcategory includes 83.58

hours by Mr. Karam, 1.42 hours by Ms. Gorin, 0.42 hours by Ms. Benfer, 0.25 hours by Ms. Millian, and 3.87 hours by myself, for a total of 89.54 hours. *See* Pl. Ex. 5, p. 5.

    13.  **Fees Application:**  All of the work related to the preparation of this fees application is billed to the "client" identified as "Child Find Fees" as a means of distinguishing it from other work in the case.  The category is identified as "Pl 2008 Application" and the subcategory as "Pl Initial Application" in Plaintiffs' Exhibits 4-6.  This initial application covers all work performed up to and including July 18, 2008.  The work included reviewing time records to ensure that the work described in them corresponded to the subcategories described above, as well as preparing the memorandum, affidavits, and exhibits submitted in support of this fees application.  The time expended by our firm for this subcategory through July 18, 2008, includes 32.98 hours by Mr. Karam, 27.67 hours by Ms. Gorin, 0.43 hours by Ms. Smith Pravlik, 2.13 hours by Ms. Millian, and 0.10 hours by myself, for a total of 63.31 hours. We will submit supplemental time records for the remaining work as an exhibit to our reply brief in further support of this application.

    14.  As discussed more fully in Plaintiffs' Memorandum in Support of Their Motion for an Award of Litigation Costs, Including Attorneys' Fees and Out-of-Pocket Expenses, for Plaintiffs' Motion to Compel Discovery (pp. 5-9), plaintiffs request current hourly rates under the *Laffey* matrix for 2008.

    15.  To obtain hourly rates for the work on plaintiffs' motion to compel discovery, plaintiffs applied the following methodology.  First, plaintiffs began with the *Laffey* matrix as it was updated through May 31, 1989, in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d, 1516, 1525 (D.C. Cir. 1988). Second, plaintiffs obtained data for the legal services component of the Consumer Price Index (CPI) produced by the Bureau of Labor Statistics of the United States Department of

Labor (Pl. Ex. 2). Third, plaintiffs applied the legal services CPI to the *Laffey* matrix rates for each experience level in order to produce a current hourly rate for each experience level.[3/] These calculations are set forth in Plaintiffs' Exhibit 3. Under this methodology, the rates applicable to this application are:

| Years out of Law School | Hourly Rate |
| --- | --- |
| 20th+ | $681 |
| 11th - 19th | $565 |
| 8th - 10th | $502 |
| 4th - 7th | $348 |
| 1st - 3rd | $282 |
| Paralegal | $154 |

16.  Plaintiffs are requesting the hourly rate applicable to the experience level of each attorney at the time that he or she performed the work in question. Plaintiffs' Exhibits 4 and 5 show the lodestar amounts computed on the basis of these hourly rates. Only Ms. Majeed, who graduated from law school in 2000, passed from one experience level to the next during the time she was working on the case. Her time records reflect this increase in rate for the latter time period.

---

[3/] Specifically, the legal services CPI for May of each year, starting with 1989, was divided by the legal services CPI for the preceding May. This results in the adjustment factor. The matrix rates from the preceding year are multiplied by the adjustment factor to get the next year's rates. *See* Pl. Ex. 3. For example, the legal services CPI for May 1989 (112.7) is divided by the legal services CPI for May 1988 (106.9). The result (1.054256) is the adjustment factor for updating rates from the year from June 1, 1988, to May 31, 1989, to the year from June 1, 1989, to May 31, 1990. Each rate in the June 1, 1988, to May 31, 1989, year is multiplied by the adjustment factor to produce the rate for that experience level for the next year. Multiplication of the 20+ experience level rate ($265) by the adjustment factor (1.054256) gives the rate of $279 for the next year. The adjustment factor for each period and the *Laffey* rates for each year from 1989 to the present are set forth in Plaintiffs' Exhibit 3. The legal services component of the CPI for each of the years from 1988 to the present is also set forth in Plaintiffs' Exhibit 3.

17. Although plaintiffs seek compensation at the hourly rate applicable to the experience level of each attorney at the time the work was performed, they are not seeking the hourly rates applicable to that experience level at the time the work was performed. Instead, plaintiffs seek compensation based on current hourly rates to account for the delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989).

18. Our firm bills paralegal time to its paying clients in the same manner as attorneys' time. As a result, we have included paralegal time in the lodestar calculations. *See Missouri v. Jenkins*, *supra*, 491 U.S. at 284-288.

19. In our application, we have also requested reimbursement for the expenses that we incurred related to plaintiffs' motion to compel discovery. These are expenses that we normally bill to our paying clients. We have not attached the back-up documentation for these expenses because it is voluminous. At my request, our Office Administrator, L.J. Fletcher, has audited the expenses summaries against the original receipts and records. The information from Ms. Fletcher's audited expense reports and summaries related to plaintiffs' motion to compel are attached as Plaintiffs' Exhibits 7 and 8. The expenses total $2,773.23. *See* Pl. Ex. 4, 7.

20. We have divided the expenses into eight categories. This breakdown is shown in the summaries and records of our expenses attached as Plaintiffs' Exhibits 7 and 8. I describe below the expenses in each of these categories:

(a) <u>Photocopying</u>. This category includes the cost of copying court papers, documents produced to plaintiffs by defendants, and outgoing correspondence. Our firm charges 20 cents per page for photocopying.

(b) <u>Scanning</u>. This category includes the cost of electronically scanning court papers,

documents produced to plaintiffs by defendants, and outgoing correspondence. Our firm charges 15 cents per page for scanning.

(c) Facsimile. This category includes the cost of transmitting court papers and correspondence via facsimile. Our firm charges 50 cents per page for sending facsimile transmissions. We do not charge for receiving facsimile transmissions.

(d) Messengers. This category includes the cost of the local delivery of documents and correspondence to the Court, defendants, and defendants' counsel.

(e) LEXIS and Westlaw. These categories include the costs of Lexis and Westlaw for legal research. For each client, the firm receives a monthly bill from Lexis and Westlaw for the amount that corresponds to the prior month's usage. However, one month's bill may include usage for multiple aspects of the case. In order to account for this variation, plaintiffs applied the following methodology to eliminate the portion of the Lexis and Westlaw expenses not attributable to plaintiffs' motion to compel. First, plaintiffs identified the months in which they used Lexis or Westlaw to research a legal issue related to plaintiffs' motion to compel. *See* Pl. Ex. 8, 9. Second, they calculated the number of hours devoted to plaintiffs' motion to compel that month. *See* Pl. Ex. 6. Third, they calculated the number of hours devoted to other tasks that same month that also involved Lexis or Westlaw research. Fourth, they added those two numbers together and, by dividing the number of hours devoted to plaintiffs' motion to compel by the total, calculated the percentage that could be attributed to plaintiffs' motion to compel. Fifth, they calculated an average percentage for all the months identified in the first step. That average was 72 percent. As demonstrated in Plaintiffs' Exhibit 4, they then reduced the total Lexis and Westlaw charges by 28 percent: the difference between the total Lexis and Westlaw charge and the percentage of time

devoted to plaintiffs' motion to compel.

   (f) <u>Velobinding</u>. This category includes the cost of binding copies of documents.

   (g) <u>Brief Covers</u>. This category includes the cost of cover materials for hard-copies of papers filed with the Court and served on defendants.

 21. In sum, for work done in relation to plaintiffs' motion to compel, Terris, Pravlik & Millian has incurred attorneys' fees of $206,065.81 and out-of-pocket expenses of $2,773.23. Plaintiffs' co-counsel has incurred an additional $2,655.90 in fees. Plaintiffs' therefore request a total amount of $208,839.04. These fees and expenses are summarized in Plaintiffs' Exhibit 4, which, in turn, is based on Plaintiffs' Exhibits 5-10.

 22. I have attempted in this affidavit to describe, as concisely as possible, the work that has been performed and the expenses incurred in this case. The firm has maintained detailed records of its work and expenses. These records will enable me, if necessary, to supplement the description of any of the work or expense categories that I have described above. Thus, if the Court requests, I would be pleased to expand my discussion of any category to set forth in more detail the nature of the work or expense and the amount of time expended or expenses incurred.

 Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 25th day of July, 2008.

            /s/ Bruce J. Terris
            BRUCE J. TERRIS