# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL, *et al.*,<br><br>   Plaintiffs,<br><br>     v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-1437 (RCL)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATION OF ROBIN MASSENGALE

I, Robin Massengale, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.  I am currently employed as a paralegal with the office of the Attorney General - Civil Litigation Division. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.  I have reviewed the certifications of Brian Browne (OSSE) (Attachment A), Karen Griffin (OSSE) (Attachment B),Tameria Lewis (Office of the State Superintendent for Education) (Attachment C), Badiyah Mushirah-Sharif (OSSE) (Attachment D), Ellen Yung-Fatah (OSSE) (Attachment E), Jerri Johnston-Stewart (DCPS) (Attachment F), Christal Mims-Williams (DCPS) (Attachment G), Barbara J. Bazron (Department of Mental Health) (Attachment H), Juanita Price (DMH) (Attachment I), Phillip Husband (DOH) (Attachment J), Runako Allsopp (EOM) (Attachment K), Rebecca Katz (Office of the Deputy Mayor for Education) (Attachment L), Diane Hall-Simpson (Child and Family Services Agency) (Exhibit M), Robert Warren (DHS) (July 25, 2008 and August 26, 2008) (Attachment N), Pamela Payne (Department of Consumer and Regulatory Affairs) (Attachment O), Robert Simpkins (DCRA) (Attachment P), Robert Mulderig (Department of Housing and Community Development) (Attachment Q), Jeanette Manning (Office of the Attorney General) (Attachment R), Robert Hamilton (District Department of the Environment) (Attachment S)

3.  Based on those certifications, I hereby certify that, other than e-mails currently under review, all of the documents responsive to plaintiffs' first, second, and third sets of document requests, and all documents listed on Exhibit L, have been produced or do not exist within the possession, custody, or control of the District of Columbia. The certifications also explain the method that defendants used to search for documents responsive to plaintiffs' requests.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge information, and belief.

Signature: _Robnish Massengale_          Date: _9/12/2008_

# ATTACHMENT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DL, *et al.*,                    ) <br>                            ) <br>          Plaintiffs,         ) <br>                            ) <br>             v.                   ) <br>                            ) <br> THE DISTRICT OF COLUMBIA, *et al.*   ) <br>                            ) <br>          Defendants.        ) <br>                            ) | Civil Action No. 05-1437 (RCL) |

## CERTIFICATION OF DOCUMENT SEARCH

I, Brian Browne, pursuant to 28 U.S.C. § 1746, hereby certify that:

1. I am currently employed with the Office State Superintendent of Education ("OSSE") in the District of Columbia. My title is Information Technology Specialist, and I have held this position since October 1, 2007. Prior to that, I worked as an Information Technology Specialist in the District of Columbia Public Schools ("DCPS") for three years. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2. As part of my job responsibilities at both the OSSE and DCPS, I handle data and run reports using the ENCORE database system, which manages data regarding special education students in DCPS. ENCORE includes data from its predecessor, the SETS database system.

3. On October 1, 2007, the responsibility of managing state special education data transferred from DCPS to the OSSE, including management of ENCORE.

4. For the production of documents that occurred prior to the Court's order of June 27, 2008, I and my co-worker Alan Patterson (who also worked at both the OSSE and DCPS), under the direction of our former supervisor Ulysses Keyes, pulled ENCORE snapshot reports for the named plaintiffs in the above-captioned case.

5. I also ran various reports providing aggregate data of special education students, ages 2 years 8 months through 5 years 11 months, in response to the Plaintiffs' requests for documents and data.

6. By letter, on February 22, 2007, Plaintiffs' counsel provided Defendants' counsel specific report requests for ENCORE data. See Attachment A. I reviewed this letter, and ran a series of reports consistent with their requests whenever it was possible to do so.

7. If ENCORE was not able to perform a particular search or if the data in ENCORE did not exactly match the request made by Plaintiffs' counsel, I explained those limitations to Defendants' counsel, who in turn provided that information to Plaintiffs' counsel by letter on July 13, 2007. See Attachment B.

8. The reports had data for the time period of January 1, 2000 to January 31, 2007.

9. For the production of ENCORE reports that occurred after the Court's order of June 27, 2008, I ran the same reports referenced in the above ¶ 6 for the time period of February 1, 2007 to June 30, 2008, and produced those reports.

10. I also ran those same ENCORE reports for children 0-3 years old, and 6 to 21 years old for the time period of January 1, 2000 to June 30, 2008, and produced those reports.

11. All responsive ENCORE reports in the possession, custody, and control of the OSSE, and previously DCPS, that are responsive to Plaintiffs' first, second, and third sets of document requests have been produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____          Date: _8/1/08_

## TERRIS, PRAVLIK & MILLIAN, LLP

BRUCE J. TERRIS
CAROLYN SMITH PRAVLIK
KATHLEEN L. MILLIAN
——————
MONICA WAGNER
LYNN E. CUNNINGHAM
Of Counsel

1121 12TH STREET, N.W.
WASHINGTON, D.C. 20005-4632
(202) 682-2100
FAX 202-289-6795
tpminfo@tpmlaw.com

MICHAEL G. SHAW
LEMUEL B. THOMAS
ALICIA C. ALCORN
SHINA MAJEED
SARA L. FAULMAN
AAMRA S. AHMAD
ZENIA SANCHEZ
MICHELLE WEAVER*

*Not admitted D.C. Bar

**BY ELECTRONIC MAIL ONLY**

February 22, 2007

Daniel Rezneck
Senior Assistant Attorney General
for the District of Columbia
Office of the Attorney General
441-4th Street, N.W., 6th Floor South
Washington, DC 20001

Re:    *DL v. District of Columbia*, D.D.C., Civil Action No. 05-1437 (RCL)

Dear Dan:

Thank you for talking with us by telephone on February 14, 2007, about outstanding discovery issues related to Plaintiff First Request for Production of Documents and Things. As you know, we believe that defendants have not adequately responded to the following document requests concerning data and information on the plaintiffs' class members: Document Requests Nos. 17-28, 35, 38-44.

In November 2006, we agreed to attempt to resolve some of these disputes by first reviewing any responsive data that could be extracted from DCPS's computerized databases, including ENCORE. Based on your representations during our telephonic conversation on February 14 about ENCORE, and based on the evaluation of ENCORE contained in the Blackman Jones Interim Report of the Evaluation Team, issued on February 8, 2007, we understand that ENCORE is riddled with problems and is not an accurate database system.

Nevertheless, we would still like to learn what, if any, responsive data is available from ENCORE (or from any other computer database on which defendants rely). It is still our hope that data extracted from ENCORE might reduce the burden of any manual review of paper files that will be required by the parties to obtain accurate and complete responses to plaintiff's document requests.

The parties discussed over the telephone on February 14 some of the specific queries and data fields that the plaintiffs seek from DCPS in response to their document requests. Plaintiffs agreed to provide defendants with a list of these data fields and queries to make it easier for defendants to discuss these issues with their information and technology (IT) staff. In particular, plaintiffs agreed to provide defendants with blank tables, similar to defendants' Chart A (Bates Nos. 4678-4705), so that

ATTACHMENT A

defendants' IT staff could "fill in the blanks" based on the available data in ENCORE or other database systems.

Therefore, attached with this letter you will find several tables, each of which represents a query that corresponds to one or more of plaintiffs' document requests. The columns of each table represent data fields requested by plaintiffs. These tables, queries, and data fields are summarized below.

Table A: Master Table of DCPS's Child Find Actions For Children Ages 2 Years and 8 Months through 5 Years and 11 months from January 1, 2000, to January 31, 2007 (Document Requests 18-26, 35)

Table B: Break Out Table: Intake Requests For Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Requests 20, 35)

Table C: Break Out Table: Screenings for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Requests 21, 35)

Table D: Break Out Table: Referrals Received for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Requests 22, 35)

Table E: Break Out Table: Evaluations Conducted for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Requests 23, 35)

Table F: Break Out Table: Eligibility Determinations, IEPs, and NOPs for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Requests 23-27, 35)

Table G: Break Out Table: Services Received for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Request 26, 28, 35)

Table H: Transitioning of Children from Part C to Part B from January 1, 2000, through January 31, 2007 (Document Requests 18, 19, 38, 44)

Table I: Children in the DC Linkage and Tracking System from January 1, 2000, through January 31, 2007 (Document Requests 41-43)

Table J: SSI and Disability-Based Medicaid Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, to January 31, 2007 (Document Request 39)

In addition to the queries and data fields represented by the tables above, we requested the Transition Tracking Log Report Referred to in the MOA between DHS and DCPS dated July 13, 2004, for each month beginning in January 2000 through the present (Doc. Request 17).

You explained to us on February 14 that much of the data we have requested are probably not captured by ENCORE. You stated that you would check with your IT people to verify this. You also stated that in the event that such data are not available from ENCORE, you would try to find out the location of such data (e.g., the CARE Office, local elementary schools, hand-written logs, individual student files, etc). Therefore, if some or all of the data that are requested by plaintiff's document requests and set forth in the tables above are not available from ENCORE, we would appreciate knowing the location and format in which these data and information are maintained by DCPS.

Finally, we emphasize that the parties' efforts on these data issues are not only relevant to the merits discovery in this case but are relevant to the content of any consent decree and settlement between the parties. As you know, Child Find involves ensuring that children are identified, located, evaluated, and offered services in a timely and appropriate manner. This means that DCPS must track children and ensure that intakes, screenings, referrals, evaluations, transitions, IEP's, placements, and the provision of services all occur in a timely and appropriate fashion. Therefore, any database system adopted by DCPS must be able to verify and track at least the data fields that are set forth above as well as any other Child Find actions undertaken by defendants for each eligible preschool child in the District.

Please do not hesitate to call if you have any questions. I can be reached at (202) 682-2100, ext. 109.

Very truly yours,

/s/
Shina Majeed
*Attorney for Plaintiffs*

cc:    Jeffrey S. Gutman, Co-counsel
       Margaret A. Kohn, Co-counsel

3

Attachments to February 22, 2007, Letter to Daniel Rezneck
DL v. District of Columbia, D.D.C., Civil Action No. 05-1437 (RCL)

# TABLE A: Child Find Actions for Children Ages 2 Years and 8 Months through Five Years and 11 Months from January 1, 2000, through January 31, 2007.

| STUDENT ID | DOB | INTAKE DATE[1] | SCREENING DATE[2] | REFERRAL DATE[3] | TRANSITION DATE[4] | MDT EVALUATION DATE(S)[5] | MDT/SEP MEETING DATE(S)[6] | ELIGIBLE OR NOT ELIGIBLE[7] | ELIGIBILITY DETERM. DATE[8] | INITIAL IEP/IFS DATE[9] | 504 PLAN DATE[10] | NOTICE OF PLACE-MENT DATE[11] | HEARING REQUEST DATE[12] | HOD DATE[13] | SERVICES PROVIDED DATE[14] | NOTICE OF PRIOR ACTION DATE[15] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

[1] For the purpose of these Tables only, "Intake" refers to the initial inquiry by a parent, teacher, day care provider, physician, or other party on behalf of a child to DCPS for special education. This includes inquiries made by telephone, in writing, or in person to either the CARE Center or to DCPS officials.

[2] For the purpose of these Tables only, "Screening" refers to observations, questionnaires, parent reporting, medical or health testing, or other testing performed on a child by DCPS or other party, to determine whether the child is at risk for disabilities and to determine the need for referral, evaluations, or monitoring. Screenings can focus on areas such as cognition, communication, motor, social and emotional, self-help, sensory development, and others.

[3] For the purpose of these Tables only, "Referral Date" refers to the date(s) on which the parent or other responsible party requested that the child be evaluated or considered eligible for special education or related services.

[4] For the purpose of these Tables only, "Transition Date" refers to the date(s) on which a child receiving Part C services consents to receive Part B services. This data field may not apply for many children.

[5] For the purpose of these Tables only, "Evaluation Date," refers to the date(s) on which the MDT evaluations were fully completed. In those cases involving more than one evaluation or more than one date on which an evaluation was conducted, all such dates should be provided.

[6] For purposes of these Tables only, "MDT/SEP Meeting Dates" refers to any date on which any MDT or SEP meetings were held prior to date of the completion of the IEP.

[7] For purposes of these Tables only, "Eligible or Not eligible" refers to whether DCPS determined the child was either "eligible" or "not eligible" for special education and related services or a 504 Plan. If more than one determination was made, such determinations should be provided in separate columns with the appropriate date.

[8] For the purpose of these Tables only, "Eligibility Determination Date" refers to the date(s) on which the MDT determined that a child was disabled and eligible for special education and related services or for a 504 Plan.

[9] For the purpose of these Tables only, "IEP/ISP Date" refers to the date(s) on which the initial IEP or ISP was completed.

[10] For the purpose of these Tables only, "504 Plan Date" refers to the date(s) on which the 504 plan was completed.

[11] For the purpose of these Tables only, "Notice of Placement" refers to the date(s) on which a specific educational placement was offered to the parent. In cases involving more than one Notice of Placement, all dates should be provided.

[12] For the purpose of these Tables only, "Hearing Request Date" refers to the date(s) of the initial hearing request. If there is more than one hearing request, all dates should be provided.

[13] For the purpose of these Tables only, "HOD Date" refers to the date(s) on which the hearing officer issued a decision. If there is more than one HOD, all dates should be provided.

[14] For the purpose of these Tables only, "Date Services Provided" refers to the date(s) on which each of the services specified in the IEP commenced.

[15] For the purpose of these Tables only, "Notice of Prior Action," refers to any notices issued with respect to changes in eligibility, services, or placement.

Attachments to February 22, 2007, Letter to Daniel Rezneck
DL v. District of Columbia, D.D.C., Civil Action No. 05-1437 (RCL)

## TABLE B: Break Out Table of Intake Requests for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | INTAKE REQUEST DATE[16] | INTAKE REQUEST TYPE[17] | PARTY INITIATING INTAKE REQUEST[18] | DATE OF DCPS FOLLOW UP ON INTAKE[19] | TYPE OF DCPS FOLLOW UP ON INTAKE[20] | REFERRAL DATE | REASON FOR REFERRAL/NON-REFERRAL[21] |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

[16] "Intake Request Date" refers to the date of the first intake request.

[17] "Intake Request Type" refers to whether the intake was a "walk-in," a "telephone call," or "written inquiry" or other method of intake request.

[18] The "Party Initiating Intake Request" could be a parent, teacher, physician, day care provider, or other party.

[19] If DCPS followed up on more than one occasion, all such dates should be provided.

[20] "Type of DCPS Follow-Up" may include: a telephone call, a mailing, an interview, scheduling an appointment, a screening, and the like. If DCPS followed up on more than one occasion, each type of follow up should be specified in separate columns, along with the corresponding date of such follow up.

[21] The "Reason for Referral" may include: EIP participant/transition, genetic disorder with cognitive delay, child does not walk or crawl, child does not speak, uncontrolled tantrumming, abuse and neglect, premature birth, drug exposure in utero, court ordered referral, fetal alcohol syndrome, end stage renal failure, cochlear implant, deaf, blind, and delays in social, motor, developmental, cognitive, or other functioning. "Reasons for Non-Referral" may include: parent refused to give consent, inability to locate parent, guardian, or child, child moved to another jurisdiction, child died, DCPS deems referral not appropriate, and others.

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia*, D.D.C., Civil Action No. 05-1437 (RCL)

TABLE C: Break Out Table of Screening for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | DCPS CONDUCTED SCREENING (Y/N)? | SCREENING DATE | SCREENING TYPE[22] | SCREENING OUTCOME[23] | TYPE OF INFORMATION PROVIDED BY PARENT TO DCPS AT TIME OF SCREENING (Y/N)[24] | DCPS FOLLOW UP ON SCREENING[25] (Y/N) | DATE OF DCPS FOLLOW UP ON SCREENING | TYPE OF DCPS FOLLOW UP ON SCREENING | REFERRAL MADE FOR EVALUA-TION (Y/N)? | REASON NON-REFERRAL[26] | REFERRAL DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

[22] See footnote 2 above for types of screenings.

[23] "Screening Outcome" may include but is not limited to: "pass/fail," "needs referral," "needs evaluation," "needs follow-up screening," "needs monitoring," "no delay found," and others.

[24] For example, if parents provided "evaluations," "screening results," "medical records," completed questionnaires, such as Ages and Stages or PEDS, and the like, this should be specified here.

[25] Each follow-up action taken by DCPS should be set forth in a separate column.

[26] See footnote 21 above for "Reason for Referral/Non-Referral."

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia, D.D.C., Civil Action No. 05-1437 (RCL)*

## TABLE D: Break Out Table of Referrals for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | REFERRAL MADE (Y/N)? | DATE OF REFERRAL | TYPE OF REFERRAL[27] | DATE CONSENT TO EVALUATE SIGNED | REASON FOR REFERRAL[28] | REASON FOR NO REFERRAL | DATE OF NEXT DCPS ACTION ON CASE | TYPE OF NEXT DCPS ACTION ON CASE |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |

[27] "Type of Referral" includes one or more of the following referral sources: Early Intervention Program (EIP), parent from EIP, parent not from EIP, physician or health care provider, related service provider, family collaborative, CFSA, DOH, Head Start, community member, neighbor, friend, child care provider, community based organization, nursery school, or others.

[28] See footnote 21 for "Reason for Referral/Non-Referral."

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia*, D.D.C., Civil Action No. 05-1437 (RCL)

## TABLE E: Break Out Table of Evaluations for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | MDT EVALUATION (Y/N)? | REASON FOR EVALUATION/ REASON FOR NO EVALUATION[29] | NUMBER OF MDT EVALUATIONS COMPLETED | TYPE OF 1ST MDT EVALUATION[30] | DATE ON WHICH EACH STAGE OF 1ST EVALUATION COMPLETED[31] | DATE ON WHICH 1ST EVALUATION FULLY COMPLETED | RESULT OF 1ST EVALUATION[32] | TYPE OF 2ND EVALUATION | DATE ON WHICH EACH STAGE OF 2ND EVALUATION COMPLETED | DATE ON WHICH 2ND EVALUATION FULLY COMPLETED[33] | RESULT OF 2ND EVALUATION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

[29] The "Reason for Evaluation/No Evaluation" could include: suspected disability/no suspected disability, failed screening/passed screening, parental consent/parent refuses consent, DCEIP participant, prior evaluation, or others.

[30] This column should specify, for example, whether the evaluation was cognitive, behavioral, occupational, developmental, socio-emotional, psychological, speech and language, or others.

[31] If one evaluation is completed in stages and on different dates, each of these dates should be specified in separate columns.

[32] If services or therapies are recommended in an evaluation, this information should be provided in this column.

[33] The dates, types, and the outcomes of all evaluations should be provided in separate columns, even if more than two evaluations are conducted.

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia*, D.D.C., Civil Action No. 05-1437 (RCL)

TABLE F: Break out Table of Eligibility Determinations, IEPs, and NOPs for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | ELIGIBLE OR NOT ELIGIBLE? | DATE OF ELIGIBILITY DETERMINATION | DISABILITY CATEGORY | DATE OF MDT/IEP MEETING(S) [34] | DATE IEP/ISP COMPLETED | DATE OF NOP | LOCATION OF NOP | DATE OF ENROLLMENT AT PLACEMENT | REASON FOR NON-ENROLLMENT [35] | MEDIATION REQUESTED (y/n) | DATE OF MEDIATION REQUEST | DATE OF HEARING REQUEST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

[34] Each MDT/IEP meeting date should be listed in a separate column.

[35] Reasons for non-enrollment includes: child moved, parent placed in private school, parent refused special education, child received ISP, or others.

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia, D.D.C., Civil Action No. 05-1437 (RCL)*

TABLE G: Break out Table of Services Received for Children Ages 2 Years and 8 Months through 5 Years and 11 Months from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | DATE OF IEP/ISP | TYPE OF SPECIAL EDUC IN IEP/ISP[36] | DATE SPECIAL EDUC PROVIDED | LOCATION SPECIAL EDUC. PROVIDED | TYPE OF RELATED SERVICE IN IEP, ISP or 504 PLAN[37] | DATE RELATED SERVICE PROVIDED | LOCATION RELATED SERVICE PROVIDED | DATE OF NOP | LOCATION OF NOP | DATE CHILD ENROLLS IN PLACEMENT | REASON FOR NON-ENROLLMENT[38] | MEDIATION REQUESTED (Y/N) | DATE OF MEDIATION REQUEST | DATE OF HEARING REQUEST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

[36] The "Type of Special Education" column should specify whether the specialized instruction setting is: general education, combination-inclusion, combination-non-inclusion, out of general education (public), out of general education (non-public), out of general education (residential), out of general education (hospital), out of general education (home), or other setting.

[37] Many children receive more than one related service; this table should include separate columns for each of the related services specified in the IEP or ISP.

[38] As in Table F, the "Reason for Non-Enrollment" may include: the child moved, parent placed child in private school, the parent refused special education, child received ISP, or others.

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia*, D.D.C., Civil Action No. 05-1437 (RCL)

## TABLE H: Transitioning Children from Part C to Part B from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | FIRST TRANSITION MEETING DATE | CONSENT TO TRANSITION DATE | IFSP (Y/N) | IFSP DATE | IFSP LOCATION OR PLACE-MENT[39] | MDT EVALUATION DATE(S) | MDT/SEP MEETING DATE(S) | ELIGIBILITY DETERM. DATE | IEP, ISP or 504 PLAN DATE | NOP DATE | NOP LOCATION | SERVICES BEGIN DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

[39] This column refers to whether, for example, the services in the IFSP are: (1) provided at the child's home; (2) at a group placement, such as Easter Seals, Mary's Center, Kennedy Institute, National Children's Center, or other DCEIP partner.

Attachments to February 22, 2007, Letter to Daniel Rezneck
DL v. District of Columbia, D.D.C., Civil Action No. 05-1437 (RCL)

## TABLE I: Children in DC Linkage and Tracking from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | REASON FOR INCLUSION IN DC LINKAGE SYSTEM[40] | SCREENING DATE(S) | SCREENING OUTCOME | REFERRAL DATE | REFERRAL TYPE[41] | MDT EVALUATION DATE(S) | MDT/SEP MEETING DATE(S) | ELIGIBILITY DETERM. DATE | IEP DATE | NOP DATE | NOP LOCATION | SERVICES BEGIN DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

---

[40] For example, reasons could include: prematurity, drug exposure in utero, low birth weight, born with addiction, severe health problems at birth, or others.

[41] See footnote 27 above for "Type of Referral"

Attachments to February 22, 2007, Letter to Daniel Rezneck
*DL v. District of Columbia*, D.D.C., Civil Action No. 05-1437 (RCL)

## TABLE J: SSI and Disability Based Medicaid Eligible from January 1, 2000, through January 31, 2007

| STUDENT ID | DOB | CHILD MA ELIGIBLE (Y/N) | CHILD SSI ELIGIBLE (Y/N) | DATE FOUND SSI OR MA ELIGIBLE | DATE OF REFERRAL TO DCPS | TYPE OF REFERRAL TO DCPS[42] | MDT EVALUATION DATE(S) | MDT/SEP MEETING DATE(S) | ELIGIBLE OR NOT ELIGIBLE[43] | ELIGIBILITY DATE | IEP/ ISP/504 PLAN[44] | NOP DATE | NOP LOCATION | SERVICES BEGIN DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

[42] *See* footnote 27 above for "Type or Referral."

[43] *See* footnote 7 above for "Eligible or Not Eligible"

[44] This column should specify whether the child has an IEP, ISP or Section 504 Plan in place.

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of the Attorney General**

Eden I. Miller
Assistant Attorney General
202-724-6614



July 13, 2007

Re:    D.L. v. D.C., Civil Action No. 05-1437 (RCL)
        Supplemental ENCORE Database Discovery

Dear Ms. Majeed:

Attached, please find the following:

1.  the Plaintiffs' letter of February 22, 2007, requesting specific database
    information (attachments omitted);
2.  the District's response to that letter, dated, explaining exactly what DCPS can
    produce from the ENCORE database;
3.  the supplemental ENCORE discovery, including Tables A-J (Tables H-J are blank
    because ENCORE does not capture the information requested); and
4.  a CD with the same, complete information from No. 3.[1]

Please note the following, with regard to each attached Table:

♦  **Table A**
   o  DCPS added the column "Services Provided" to Table A.
   o  In ENCORE, the "Referral Date" is the date on which the parent signed the
      consent form.
   o  There is no "Transition Date" in ENCORE.
   o  There is no "504 Date" because § 504 is not special education and thus, it is
      not captured in ENCORE.
   o  There is a summary on the last page, page 214, of the Table A.  The summary
      is by calendar year through January 31, 2007, as requested by opposing
      counsel.

♦  **Table B**
   o  Although ENCORE does not capture data on "intake," as defined by opposing
      counsel, DPCS did include data regarding referrals in Table B.
   o  ENCORE only captures referrals by parents or school personnel.  See "Party
      Initiating Intake Request."

---

[1] In the paper version of this discovery, some of the notes were cut off, but the CD has the complete chart.

ATTACHMENT B

- o  In almost every circumstance, the "Intake Request Date" and the "Referral Date" are the same because the process for determining eligibility begins with the referral date (which is the date the parent signs a consent form).

➢ **Table C**
- o  Table C does not contain any screening information because screening information is not captured by ENCORE.
- o  Note that the "Date of Referral" is the same date that the child is screened at the C.A.R.E. Center, and is either referred for evaluation or not referred.

➢ **Table D**
- o  Table D contains a breakdown of referrals.
- o  The last two columns of Table D are regarding the next actions. Because the next actions are the MDT meetings or SEP referrals, these columns are empty.

➢ **Table E**
- o  Table E contains information about the evaluations and assessments that have been requested for each student.
- o  Some of the columns are missing dates either because there was little to no data collected prior to 2000, or because the evaluations were completed but the file was never closed out.

➢ **Table F**
- o  Table F contains information regarding eligibility.
- o  Mediation is voluntary and rare, so there are few entries in this column.
- o  The date of enrollment is not captured in ENCORE.

➢ **Table G**
- o  Table G has a legend on page 93, explaining the LRE codes used in the column entitled "Type of Special Education in IEP/ISP."
- o  Again, mediation is not often requested, so there are few entries.

➢ **Table H-J**
- o  The data requested in Tables H-J is not captured in ENCORE.
- o  With regard to Table J, ENCORE does not have access to Medicaid information.

Sincerely,

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General

CC:     Daniel Rezneck, OAG Senior Counsel
        Margaret Kohn, Counsel for the Plaintiffs
        Jeffrey Gutman, Counsel for the Plaintiffs

2

# ATTACHMENT B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*,                  ) | |
|                    ) | |
|        Plaintiffs,        ) | |
|                    ) | |
|         v.              ) | Civil Action No. 05-1437 (RCL) |
|                    ) | |
| THE DISTRICT OF COLUMBIA, *et al.*   ) | |
|                    ) | |
|        Defendants.      ) | |
|                    ) | |

## CERTIFICATION OF DOCUMENT SEARCH

I, Karen Griffin, pursuant to 28 U.S.C. § 1746, hereby certify that:

1. I am currently employed with the Office of the State Superintendent of Education ("OSSE") Office of Special Education ("OSE"). I have held the position of OSSE Administrative Officer since February 1, 2008. Before that, I held the position of OSSE Director of Federal Reports from October 1, 2007 to January 31, 2008. Prior to that, I was a Special Assistant in the District of Columbia Public Schools ("DCPS") OSE. I held that position from July 6, 1999 to September 30, 2007.

2. During my entire time as a DCPS Special Assistant, as well as from October 1, 2007 to January 31, 2008 as the OSSE Director of Federal Reports, my job responsibilities included, but were not limited to, the development of Part B state reports, correspondence, and other related documents, focusing on duties as the contact point with the United States Department of Education ("DOE").

3. All correspondence from DOE regarding DCPS submissions, as well as OSSE submissions from October 1, 2007 to January 31, 2008, were first received by the Superintendent and/or the State Director for Special Education, and then forwarded to me for follow-up action.

4. On February 1, 2008, these duties were assumed by another staff member in the OSSE OSE.[1]

5. The development of Part B state reports, correspondence and other related documents is a state education agency function, and therefore, this responsibility transferred from DCPS to the OSSE on October 1, 2007. As such, all records and files from my office at DCPS are now housed at the OSSE OSE.

6. As I explained in my declaration in this same case, dated July 26, 2006, I was the primary DOE contact person at DCPS, and no other DCPS employees would be

---

[1] The search for Part B state reports, correspondence, and other related documents from February 1, 2008 to the present will be certified by another OSSE employee.

responsible for maintaining such documents in their possessions. The same is true for my time at the OSSE until February 1, 2008. Since the move to the OSSE and my change in duties, my files are kept in the general Special Education files.

7. I searched my files extensively throughout this litigation, and I have provided all non-email documents in my possession in response to the relevant document requests in the above-captioned case for the time period of January 1, 2000 through February 1, 2008.

8. For the production of documents that occurred after the Court's order of June 27, 2008, I again searched for all responsive documents in my possession regarding the Part B state reports, correspondence, and other related documents, and I have produced everything that I found. I also searched the general Special Education files (which are not in my office or maintained by me) and produced any relevant documents I found there.

9. A comprehensive email search for my emails (and the emails of others) is being conducted by the OSSE Office of Information Technology and the city-wide Office of the Chief Technology Officer.[2]

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____     Date: _____

---

[2] This will be addressed in a separate certification of discovery.

2

# ATTACHMENT C

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DL, *et al.*,                ) | |
|               ) | |
|      Plaintiffs,     ) | |
|            ) | |
|      v.       ) | Civil Action No. 05-1437 (RCL) |
|          ) | |
| THE DISTRICT OF COLUMBIA, *et al.*  ) | |
|        ) | |
|      Defendants.   ) | |

## CERTIFICATION OF DOCUMENT SEARCH

I, Tameria Lewis, pursuant to 28 U.S.C. § 1746, hereby certify that:

1. I am currently employed with the Office of the State Superintendent of Education ("OSSE"). My title is Acting State Director of the Office of Special Education ("OSE"). I have held this position since the end of May, 2008. Prior to that, I held the position of Project Director of Special Education Reform, from August of 2007 until May of 2008. The following is based upon my personal knowledge and on information provided to me in the course of my official duties.

2. The OSSE was created through the District of Columbia Public Education Reform Act of 2007. The OSSE assumed the bulk of its state operational functions in October of 2007. In April of 2008, the Early Care and Education Administration transferred from the Department of Human Services to the OSSE.

3. For the production of documents that occurred prior to the Court's order of June 27, 2008, my colleagues and I searched documents known to us to be within the OSSE's possession, custody and control and produced relevant documents.

4. Those documents included the reform team's transition report on Early Childhood at the CARE Center, Part B reports and related correspondence including technical assistance from the U.S. Department of Education ("DOE"), information on the newly-created OSSE position of 619 Coordinator (formerly held by Zondra Johnson), and the Interagency Collaboration and Services Integration Commission Memorandum of Agreement on information-sharing. My staff and I also reviewed and gave input on the August 2007, draft Child Find Manual, which DCPS initially drafted but did not finalize.

5. For the production of documents that occurred after the Court's order of June 27, 2008, individuals under my supervision or I searched for documents responsive to the plaintiffs' document requests within the OSE's possession, custody, or control.

6. Specifically, I asked all Special Education staff members, as well as my supervisor and her assistant, to search for any and all OSSE documents in their possession regarding Child Find. In addition, to ensure that all responsive documents had been produced, I provided my staff with copies of Exhibit L and plaintiffs' document requests, and asked them to confirm that they had provided all responsive documents.

7. As a result of our search, we found draft policies and procedures, additional Part B reports and correspondence with DOE, DOE technical assistance correspondence, meeting notes from the State Advisory Panel, and draft documents and timelines regarding the CARE Center Working Group, which was created and began meeting in July of 2008.

8. I understand that a comprehensive email search of my emails and the emails of other OSSE staff that may have responsive emails is being conducted by the OSSE Office of Information Technology and the city-wide Office of the Chief Technology Officer. It is my understanding that this search will be addressed in another certification.

9. To the best of my knowledge, information and belief, all of the documents in the possession, custody, and control of the OSSE Office of Special Education that are responsive to plaintiffs' first, second, and third sets of document requests have been produced.

10. Additionally, based on the foregoing, as well as the separate certifications from Ellen Yung-Fatah of the Early Care and Education Administration, Brian Browne of the Office of Information Technology, Karen Griffin, formerly of DCPS and currently with the OSSE Office of Special Education, and my understanding of the scope of the email search being conducted by the Office of the Chief Technology Officer, other than emails, all of the documents in the possession, custody, and control of the OSSE as a whole that are responsive to plaintiffs' first, second, and third sets of document requests have been produced to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____    Date: 9/5/08

# ATTACHMENT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATION CONCERNING EXHIBIT L**

I, Badiyah Mushirah-Sharif, pursuant to 28 U.S.C. § 1746, hereby certify that other than emails still under review, all documents listed on Exhibit L to plaintiffs' February 4, 2008, motion to compel either have been produced, have been made available for inspection, or do not exist within the possession, custody, or control of the Office of the State Superintendent of Education.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Bm Sharif, mA_          Date: _9-4-08_

# ATTACHMENT E

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Ellen Yung-Fatah, pursuant to 28 U.S.C. § 1746, hereby certify that:

1. I am currently employed with the Office of the State Superintendent of Education ("OSSE") Early Care and Education Administration ("ECEA"). I have held the position of OSSE Interim Administrator since May 12, 2008. Before that, I held the position of Deputy Administrator since April of 2003. From October 1, 2004 to October 15, 2005, I also held the position of Acting Program Manager of the Infants and Toddlers with Disabilities Division ("ITDD") within ECEA (formerly known as the District of Columbia Early Intervention Program).

2. ECEA is the designated agency for policy and program implementation for all early care and education programs in the District. ITDD is the division within ECEA that is responsible for Part C early intervention services.

3. In April of 2008, ECEA transferred from the Department of Human Services ("DHS") to the OSSE. ECEA continues to perform the same functions at the OSSE as it did at DHS.

4. As part of my job responsibilities, I oversee the operations and management of all of ECEA, including ITDD. In my previous role as Acting Program Manager, I oversaw the daily functions of ITDD.

5. During the course of the above-captioned case, my staff and I have looked extensively for responsive documents both prior to the June 27, 2008, Order and after.

6. With regard to general ECEA documents, ECEA administrative staff and I have located and produced documents regarding the Mayor's Advisory Committee on Early Childhood Development in the possession of ECEA. These documents are only marginally relevant, as they mostly pertain to child care services and not issues in the present class action.

7.  With regard to general ITDD Part C documents, ITDD staff have located and produced documents regarding the Interagency Coordinating Council; transition manuals; training materials for staff, providers and families; Child Find policies and procedures; resource directory information; and staffing information, including but not limited to, organizational charts and Schedule As.

8.  With regard to ITDD Part C program documents, ITDD staff and I have located and produced documents to and from the United States Department of Education, including but not limited to reports, applications, award letters, correspondence, and technical assistance; Child Find materials, including public awareness documents and parent information pamphlets; interagency agreements; internal transition materials; and Part C contractor information.

9.  ITDD staff have also located and produced transition materials shared with Part B (District of Columbia Public Schools C.A.R.E. Center staff), including but not limited to coordinators' meetings, transition logs, reports from the transition database, and emails.

10. With regard to documents pertaining to the minor plaintiffs and children identified by the plaintiffs' counsel in document request 4 of the plaintiffs' third set of document requests, ITDD staff have located and produced the ITDD records of those children, including but not limited to files, correspondence, and database information.  For those children who are not minor plaintiffs or children identified in request 4, ITDD staff searched for aggregate data.

11. For the production of documents that occurred after the Court's order of June 27, 2008, my staff and I again searched for relevant documents, expanding our search to include documents from January 1, 2000 to the present day.  Our previous search was for documents from January 1, 2003 to the early part of 2008.

12. To make sure we searched every possible place where responsive documents could be located, I asked every staff member of ITDD to search files in their offices, including files, boxes, drawers, and computers, as well as files in the common ECEA space and files of former ITDD employees.

13. I also asked ECEA administrative staff to search for and produce all responsive documents in boxes of the former ECEA Administrator (which included over forty boxes).

14. ECEA staff, including ITDD personnel, with the assistance of legal staff located and produced all documents responsive to Exhibit L, # 7-9.  To find these documents, they searched through the files of thousands of children, which were located in 44 different places including long and short file drawers and boxes within ECEA as well as the case notes in the ITDD database system.  ECEA staff did not locate any responsive documents outside of the locations described in this paragraph.

15. ITDD staff also ran and produced a report from the ITDD database system in response to document request number 44 in the Plaintiffs' first request for documents.

16. ITDD staff also located and produced information about the management information system database and monthly transition reports from Part C providers.

17. I understand that a comprehensive email search of my emails and the emails of all ITDD staff members is being conducted by the OSSE Office of Chief Information Officer and the city-wide Office of the Chief Technology Officer. It is my understanding that this will be addressed by a separate certification.

18. To the best of my knowledge, information, and belief, all responsive information within the possession, custody, and control of ECEA has been produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____    Date: _____8/26/08_____

3

# ATTACHMENT F

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| D.L., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Jerri Johnston-Stewart, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the District of Columbia Public Schools ("DCPS"). My title is Director of Early Childhood and I work at the C.A.R.E. Center. I have worked for DCPS for a total of 9 years. The following is based upon my personal knowledge and on information provided to me in the course of my official duties.

2.      For the production of documents that occurred prior to the Court's order of June 27, 2008:

   a.      Attorneys met and engaged in a line-by-line review of the first set of document requests with agency leaders and regularly followed up and communicated with various Offices to assist in their document search process. Offices involved in the search included the DC Office of the Superintendent, Office of Special Education (including but not limited to the C.A.R.E. Center and Head Start), the Office of the Chief Financial Officer, the Student Hearing Office, Office of the General Counsel, and the Medicaid Recovery Unit. Attorneys also sent the second and third sets of document requests to individuals believed to have responsive documents and followed up with various communications.

   b.      Individuals who directed the search and/or provided responsive documents included Gayle Amos (former Assistant Superintendent for Differentiated Learning for DCPS), Judith Smith (former Executive Director of Mediation and Compliance), Dr. Marla Oakes (former Director of Special Education), Karen Griffin (former Special Assistant), Patricia Young (Supervisor of the C.A.R.E. Center), Gayle Hall (DCPS Liaison for the Private-Religious Program at the C.A.R.E. Center), Zondra Johnson (former supervisor of the Early Childhood Program at the C.A.R.E. Center), Chanda King-Whitaker (DCPS Education

Program Specialist in the Early Childhood Program), Ginny Johnson (DCPS
Education Specialist in the Early Childhood Program), Peggy Minnis (DCPS
Head Start), Donna Brunson (DCPS Head Start), Sheila Hall (Student Hearing
Office), Dasarath Kiridena (Director of the DCPS Medicaid Recovery Unit),
Ulysses Keyes, Alan Paterson, Brian Browne (all with the DCPS Information and
Technology Office), Robert Braddock (formerly with OCFO), Carl Mohammed,
Gregory Hall, and Reggie Bookard (all with OCFO), and Stephanie Ramjohn-
Moore and Christal Mims-Williams (Office of the General Counsel).

3.      The pre- and post-order search for records of individual students named by
plaintiffs is described in the certification of Christal Mims-Williams.

4.      For the production of documents that occurred after the Court's order of June 27,
2008:

   a.      Upon receipt of the Court's order, the Office of General Counsel sent an
   email to employees engaged in the search process prior to the Court's order
   requesting that they search for any documents not previously produced that were
   responsive to plaintiffs' document requests (which were attached to the e-mail).
   Additional emails with the document requests attached were subsequently sent to
   a larger group of employees identified as potentially having responsive
   documents, also requesting that they search for documents responsive to
   plaintiffs' requests. The Office of General Counsel also subsequently provided all
   of these individuals by email with a copy of Exhibit L and requested that they
   search for all documents listed in that exhibit. The employees who were
   contacted and who provided documents were from the Office of Special
   Education (including but not limited to the C.A.R.E. Center and Head Start), the
   Office of the Chief Financial Officer, the Officer of the Chancellor, the Student
   Hearing Office, the Medicaid Recovery Unit, and the Office of Student Academic
   Services. In addition to the emails, DCPS OGC representatives made follow-up
   phone calls, engaged in site visits to assist in the search process, and contacted
   and instructed supervisors on how to assist their divisions/departments in the
   search process. In these follow-up communications, supervisors and staff
   members were asked to search for any and all DCPS documents in their
   possession, custody or control that were responsive to plaintiffs' requests,
   including but not limited to interagency collaboration, budgets, meeting notes,
   call logs, personnel documents, manuals, and community outreach notices. To
   ensure DCPS searched every possible place where responsive documents could be
   located, supervisors and staff members in all of these Offices were asked to search
   all of their offices including files, boxes, drawers, and computers, as well as
   common spaces and files of former employees. DCPS OGC representatives also
   engaged in a line-by-line review of Exhibit L and specifically contacted offices
   believed to have potentially responsive documents.

   b.      The supervisors of the C.A.R.E. Center ensured that employees all
   engaged in a further search of their division. The employees all searched their

files, desks, computers and storage areas and produced all responsive documents. They also revisited previously disclosed documents to ensure that all responsive documents had been provided. In addition, they dedicated four employees to do a two-day search of their archived files for complaints that could have been filed between 2000 and present.

c.    The supervisor of the DC Head Start Program worked directly with Head Start staff to locate responsive documents. They searched through all of their files, desks, computers and storage areas for reference materials and other documents. Supervisors in the Office of the Chancellor and Office of Student Academic Services coordinated similar searches.

d.    In addition, the DCPS Chief Financial Officer and Director of Medicaid worked directly with their departments to locate responsive documents. Each reviewed the document requests and searched their files, desks, computers and storage areas for, respectively, budgets and Medicaid procedures, and other similar documents. In addition, the Office of Human Resources dedicated a team of employees to reviewing personnel files and providing responsive documents and information regarding job descriptions and DCPS employees engaged in Child Find activities. The DCPS Information Technology Office also provided additional ENCORE database reports.

5.    I understand that a comprehensive email search of the emails of DCPS staff who may have responsive emails is being conducted by the city-wide Office of the Chief Technology Officer with the cooperation of the DCPS Office of Information Technology. It is my understanding that this search will be addressed in another certification.

6.    To the best of my knowledge, information, and belief, all documents in DCPS' possession, custody, or control that are responsive to plaintiffs' first, second and third sets of document requests and that are listed in Exhibit L of plaintiffs' February 14, 2008, motion to compel, other than e-mails under review, have been produced or do not exist within the possession, custody, or control of DCPS.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Jessi Johnston Stewart_       Date: _9-11-08_

# ATTACHMENT G

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| D.L., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Christal Mims Williams, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.       I am currently employed with Office of the Attorney General, Office of the General Counsel, District of Columbia Public Schools (DCPS). My title is Attorney-Advisor. The following is based on my personal knowledge and/or information provided to me in the course of my official duties.

2.       For the production of documents that occurred prior to and after the court's order of June 27, 2008, I instructed each person to search for documents pertaining to the students listed below between January 2000 and the present. I further instructed them to perform an exhaustive search of the below named students' special education records, including, but not limited to, Individual Education Plans, Multidisciplinary Team notes, evaluations, counter tracking forms, Hearing Officer Determinations, correspondence with parent's counsel and fax confirmations. Finally, I instructed them to search for the listed students' report cards, attendance records, and class schedules.

Pursuant to my instructions, the following persons searched for the listed students at the following locations:

| Staff (DCPS and non-DCPS) | Student | School |
|---|---|---|
| Jerri Johnston Stewart, Supervisor of Early Childhood | RS | C.A.R.E. Center |
| Zondra Johnson, OSSE State Early Childhood Special Education Coordinator (Former Supervisor of Early Childhood | JG KP HW TL | |

| | | |
|---|---|---|
| Rhoda Matthews, Special Education Coordinator | KC | Beers Elementary School |
| Christal Mims Williams, Attorney-Advisor | CBL (enrolled at Kingsbury Day School) MM (enrolled at Kennedy) | DCPS Central Office / Non-public placement |
| Naikia Lewis, Assistant Principal | NC GD | St. Colletta's of Greater Washington |
| Rachel Annunziata, Special Education Coordinator | KS | Rock Creek Academy, Inc. |
| Elizabeth Whisnant, Principal | SW | Mann Elementary School |
| Dana Nerenberg, Principal | CW | Hyde Elementary School |
| Bernarda Tally, Principal | AGJ JB XY | Hearst Elementary School |
| Monica Aguirre, Principal | SH | Adams Elementary School and Oyster Elementary School |
| Davis Mason, Principal | GJ | Ferebee Hope Elementary School |
| Torrie Cunningham, Enrollment Coordinator | RB | Children's Studio Public Charter School |
| Deborah Williams, Principal | KC | Sharp Health School |
| Joyce Thompson, Principal | JP | Davis Elementary School |
| Rachel Roberts, Director of Student Support Services | AOO | Community Academy Public Charter School |
| Julie Camerata, Special Education Coordinator | GL | Latin American Montessori School |
| Richard Byrd, Special Education Coordinator | NS | Smothers Elementary School |
| David Mason, Principal | DH | Hamilton Center |
| Sharron Strohman, Principal | GJ | Ferebee-Hope Community School Complex |
| Brenda Clark-Gales, Special Education Coordinator | KM NH | Ludlow-Taylor Elementary School |
| Jeffrey Grant, Principal | JP | Patricia R. Harris Educational Center |
| Mitchell Brunson, Special Education Coordinator | TF | Stanton Elementary School |
| Patricia Burman, Registar | FD | Eaton Elementary School |
| Theresa Govan, Assistant Principal | JB | Murch Elementary School |
| Theresa Alexis-Williams, Principal | OL | Jackie Robinson Center |
| Kathleen Black, Principal | RH | H.D. Cooke |

| Phillip White | SH | Leckie Elementary School |

3.      The complete results of their searches are reflected in sworn certifications provided to me by those individuals, which have been provided to plaintiffs.  Based on these certifications, all documents concerning the designated students in the possession, custody or control of DCPS have been produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____     Date: 9/12/08

# ATTACHMENT H

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Barbara J. Bazron, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with District of Columbia Department of Mental Health (DMH). My title is Deputy Director, Programs, Policy and Planning. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.      For the production of documents that occurred prior to the Court's order of June 27, 2008, to the best of my knowledge, DMH was not asked to respond to the discovery requests. Therefore, neither I, nor individuals now under my supervision, searched for documents.

3.      For the production of documents that occurred after the Court's order of June 27, 2008, at my direction, individuals under my supervision conducted a search for all documents and correspondence responsive to plaintiffs' first, second, and third sets of document requests. I believe that we have all exercised due diligence to produce all responsive documents in our possession. The overall search has included a search for responsive e-mails either by individuals searching their own computers or by the Office of the Chief Technology Officer searching PST files and e-mails on the server.

4.      In addition, upon review of the Requests for Production of Documents, we identified the School Mental Health Program (SMHP) which includes some children from 0 to 5 as a program that could potentially have documents responsive to the requests. Therefore, my staff conducted an SPSS data search of open treatment cases within the School Mental Health Program (SMHP) using the Ohio Mental Health Scales for Clinically Informed Outcomes, which has only been maintained by DMH since September 2007 and which revealed that DMH has been treating 8 children under age 5, all 4 years of age. No database was maintained prior to September 2007 that included names and birthdates of children served in SMHP.

5.      All Memoranda of Agreement between the DC Public Schools and the DMH School Mental Health Program that could be located within the Department of Mental Health have been produced, as well as aggregate data on the number of children under 5 served through the SMHP since September 2007.

6.      It is my understanding that Plaintiffs' Discovery Requests and the Court Order in this case do not require the Department of Mental Health to search or produce individual clinical records.

7.      I have also reviewed the certification signed by Ms. Juanita Price, Chief Executive Officer of the D.C. Community Services Agency, and am informed that she searched or directed her staff to search for all responsive records within the possession of the DMH DC Community Services Agency (apart from individual clinical records) pertaining to the former Child and Infant Development Program (phased out in 2004) and information pertaining to the current psycho-educational program run through the Moten Therapeutic Nursery at Moten Elementary School (three children under age 5 currently enrolled).

8.      I am further advised that Ms. Price searched or directed her staff to search for all documents, correspondence and e-mails not covered by the OCTO search that could be located in the DCCSA program's files that are responsive to plaintiffs' first, second, and third sets of document requests including any documents within the possession of DMH that are identified in Exhibit L and that DMH has produced all documents believed to be responsive, including Memoranda of Agreement between the DMH DCCSA and the District of Columbia Public Schools and between the DCCSA and the Department of Health, Policies and Procedures for the Child and Infant Development Program, and annual reports to the U.S. Department of Education Office of Special Education under Part C, Early Intervention Office from 2000 through 2004.

9.      I am advised that DMH staff have searched the central file of Memoranda of Understanding (MOU) and Memoranda of Agreement (MOA) in the Director's Office and have produced all relevant MOUs and MOAs; have reviewed the Mental Health Rehabilitation Services (MHRS) certification file for a formerly DMH-certified MHRS provider that ran a child day care program for approximately one year ending in 2005; and have provided all responsive documents.

10.     Finally, it is my understanding and belief that the Child and Infant Development Program, psycho-educational program at Moten School and the School Mental Health Program described above are the only programs within DMH that have specifically served children under 5 years old and that potentially could have been involved in Child Find activities.

11.     Based upon my review of the document requests, the responsive documents produced, the certification of Ms. Price and the representations of DMH staff to me, I believe that, other than e-mails searched by OCTO, all of the documents in the possession, custody, and control of the D.C. Department of Mental Health that are responsive to plaintiffs' first, second, and third sets of document requests or listed on Exhibit L, either have been produced or do not exist within the possession, custody, or control of DMH.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Barbara J Bergen_      Date: _Sept 4, 2008_

# ATTACHMENT I

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*,        ) | |
|                  ) | |
|      Plaintiffs,    ) | |
|                  ) | |
|        v.        ) | Civil Action No. 05-1437 (RCL) |
|                  ) | |
| THE DISTRICT OF COLUMBIA, *et al.*  ) | |
|                  ) | |
|      Defendants.    ) | |
|                  ) | |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Juanita Price, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with D.C. Department of Mental Health (DMH). My title is Chief Executive Officer of the DMH D.C. Community Services Agency. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.      For the production of documents that occurred prior to the Court's order of June 27, 2008, to the best of my knowledge, the D.C. Department of Mental Health was not asked to conduct a search. Therefore, neither I, nor individuals under my supervision, searched for documents.

3.      For the production of documents that occurred after the Court's order of June 27, 2008, at my direction, my staff has conducted a search for all documents and correspondence responsive to plaintiffs' first, second, and third sets of document requests. I believe that we have all exercised due diligence to produce all responsive documents in our possession. The overall search has included a search for responsive e-mails either by individuals searching their own computers or by the Office of the Chief Technology Officer searching PST files and e-mails on the server.

4.      In addition, upon review of the Requests for Production, we identified two programs within the DCCSA that targeted children from 0 to 5 and that potentially could have documents responsive to the Requests pertaining to Child Find or related activities: (1) the former Child and Infant Development Program (phased out in 2004) and (2) the current psycho-educational program run through the Moten Therapeutic Nursery at Moten Elementary School (three children under age 5 currently enrolled).

5.      Through our search we have located and provided all Memoranda of Agreement in our possession between the DMH DCCSA and the District of Columbia Public Schools and between the DCCSA and the Department of Health, Policies and Procedures for the Child and Infant Development Program, annual reports to the U.S. Department of

Education Office of Special Education under Part C, Early Intervention Office from 2000 through 2004, and miscellaneous correspondence.

5.    It is my understanding that Plaintiff's Discovery Requests and the Court Order in this case do not require the Department of Mental Health to search or produce individual clinical records.

6.    Based on my review of the document requests, the responsive documents produced by my staff and the representations of my staff, I believe that all documents in the possession, custody, and control of the District of Columbia Community Services Agency that are responsive to plaintiffs' first, second, and third sets of document requests have been produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Juanita Price_                Date: _August 5, 2008_

# ATTACHMENT
# J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## CERTIFICATION OF DOCUMENT SEARCH

I, Phillip L. Husband, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the District of Columbia Office of the Attorney General.  My title is Deputy General Counsel for the Department of Health.  The following is based upon my personal knowledge and information provided to me in the course of my official duties.

Pre-Order Document Search

2.      For the production of documents that occurred prior to the Court's order of June 27, 2008, individuals under my supervision or my direction or I searched the files of the Department of Health and interviewed appropriate personnel to determine the Department of Health's involvement in the Child Find program. The searches and investigations began in early 2006 after Daniel Rezneck and Eden Miller of the Civil Litigation Division of the Office of the Attorney General alerted me that this litigation had been filed and that the Department of Health (DOH) appeared to have a tangential and minor role.  Persons interviewed included Gregg Pane, M.D. (then DOH Director), Sanja Portalo (then Special Assistant to Dr. Pane), Robert Maruca (Senior Deputy Director of the Department of Health for the Medical Assistance Administration), Bette (B.J.) Wolf (Chief of the Medical Assistance Administration's Office of Children and Families), Maude Holt (Chief of the Medical Assistance Administration's Office of Managed Care), Corrie Kemp (Social Security contact at Medical Assistance Administration), Carlos Cano, M.D. (then Senior Deputy Director of the Department of Health's Maternal and Family Administration and now Senior Deputy Director of the Department of Health's Community Health Administration), Sandra Robinson (Deputy Director of the Department of Health's former Maternal and Family Administration and the current Department of Health's Community Health Administration), David Rose, M.D. (then Senior Deputy Director of the Department of Health's former Primary Care and Prevention Administration), Kenneth Campbell (General Counsel for the Department of Health), Thomas Collier (Assistant Attorney General for the Department of Health), Sheryl Johnson (Assistant Attorney General for the Department of Health), Rudolf Schreiber (Assistant Attorney General for the Department of Health), Barney Corwin

(then Chief Information Officer for the Department of Health), Julia Randall-Davidson (then DOH's Registrar of Vital Records), and Kevin Brown (then Interim Chief Information Officer for the Department of Health). I also conferred with litigation counsel, Kate Jesberg (former Interim Director of the Department of Human Services and former Administrator of the Income Maintenance Administration), Robert Warren (Assistant Attorney General for the Department of Human Services), and Stephanie RamJohn (former Assistant General Counsel for D.C. Public Schools).

3.    It is my understanding that the limited number of relevant documents and the information we located were provided to Daniel Rezneck and Eden Miller either (1) by me between early January 2006 and late 2007 excluding the period of June 26, 2007 to mid-December 2007 or (2) on my behalf when I was undergoing medical treatments for a life-threatening medical condition between June 26, 2007 and mid-December 2007. The manner of search involved me discussing discovery requests with the foregoing officials who performed, or caused to be performed, the necessary searches primarily during 2006 and 2007. The locations searched included various DOH offices and storage locations for the DOH personnel identified in the second paragraph. The type of documents searched for included any documents related to Child Find, early childhood education, and similar concepts. Both hard copy and e-copy formats of documents were sought.

<u>Post-Order Document Search</u>

4.    For the production of documents that occurred after the Court's order of June 27, 2008, individuals under my supervision or my direction or I searched files of the Department of Health and interviewed appropriate personnel to determine the Department of Health's involvement in the Child Find program. The searches and investigations began in late June 2008. Persons interviewed included Pierre Vigilance, M.D. (DOH Director), Dave Chandra (Special Assistant to the DOH Director), Carlos Cano, M.D. (Senior Deputy Director of DOH for Community Health Administration), Sandra Robinson (Deputy Director of DOH for Community Health Administration for Operations), Nathaniel Beers, M.D. (Deputy Director of DOH for Community Health Administration for Policy), Charles Nichols (Chief, Grants Monitoring and Program Evaluation for DOH's Community Health Administration), Pierre Erville (Chief, Environmental Hazards and Injury Prevention Bureau, Community Health Administration, DOH), Theodore C. Tulle (Program Manager, Childhood Lead Poisoning Prevention Program, Bureau of Environmental Hazards and Injury Prevention, Community Health Administration, DOH), Sherry Billings (Program Manager, D.C. Linkage and Tracking System, Community Health Administration, DOH), Kevin Brown (then Interim Chief Information Officer for the Department of Health), Robert Maruca (Senior Deputy Director for DOH's Medical Assistance Program), Bette Wolf (Section Chief, Office of Children and Families within DOH's Medical Assistance Administration),, Kenneth Campbell (General Counsel for DOH), Thomas Collier (Assistant Attorney General for DOH), and Willis Bradwell (DOH's Registrar of Vital Records).

5.    The locations searched included various DOH offices at 825 North Capitol Street, N.E., Washington, D.C. and storage locations for the DOH personnel identified in the fifth paragraph. The type of documents searched for included any documents requested

2

by the three sets of discovery requests. Both hard copy and e-copy formats of documents were sought. The manner of search involved me discussing the three sets of discovery requests with the foregoing officials who performed, or caused to be performed, the necessary searches after the issuance of the Court's order.

6.  In response to post-order searches for documents and information, on behalf of DOH, I have produced documents to the Civil Litigation Division of the Office of the Attorney General as follows:

A.  In response to Plaintiffs' First Set of Requests for Production of Documents:

1.  DOH identified and provided on July 22, 2008, documents related to a draft Memorandum of Agreement and related documents within the scope of request for production of documents nos. 3 and 14..

2.  Although requests for production of documents nos. 36 and 37 identify DOH, DOH did not identify any documents responsive to the requests. DOH makes referrals for at risk children; DOH does not implement Child Find activities.

3.  DOH provided paper copies of documents requested by requests for production nos. 40-43 on July 22, 2008. Additional patient-specific information exists in the D.C. Linkage and Tracking System electronic database and paper files. In lieu of additional paper production, DOH will make the D.C. Linkage and Tracking System electronic database and any related paper files available to Plaintiffs' counsel with appropriate safeguard protections.

4.  DOH did not have other documents responsive to Plaintiffs' First Set of Requests for Production of Documents.

B.  In response to Plaintiffs' Second Set of Requests for Production of Documents:

1.  DOH has identified a LeadTrak electronic database that contains information on children aged 24-71 months who have elevated blood lead levels in response to request for production no. 2. On July 29, 2008, DOH's Community Health Administration provided me with approximately ten inches of paper comprised of print-outs from the LeadTrak electronic database that document children with elevated blood lead levels. I made these documents available to the Office of the Attorney General's Civil Litigation Division on July 29, 2008. Additional patient-specific information exists in the LeadTrak database. In lieu of additional paper production, DOH will make the LeadTrak electronic database and any related paper files available to Plaintiffs' counsel with appropriate safeguard protections.

3

2.     In addition to the paper identified in no. 1 immediately above, DOH's Community Health Administration has risk-assessment reports that it forwards to the District Department of the Environment and at least one list of properties that are ready for enforcement action by the Department of Consumer and Regulatory Affairs. Each risk assessment report lists a specific property address and lists known children residing at that address with elevated blood lead levels. DOH's Community Health Administration will make these documents available for inspection and copying. On July 29, 2008, I provided a copy of the list of properties to the Office of the Attorney General's Civil Litigation Division via e-mail.

3.     DOH did not have any other documents responsive to Plaintiffs' Second Set of Requests for Production of Documents.

C.     In response to Plaintiff's First Set of Interrogatories and Third Set of Requests for Production of Documents:

1.     On July 22, 2008, I provided a copy of the Health Check brochure mailed by DOH's Medical Assistance Administration that contains information on Child Find in association with request for production no. 1.

2.     DOH did not have any other documents responsive to Plaintiff's First Set of Interrogatories and Third Set of Requests for Production of Documents.

7.     In addition to the foregoing, and to confirm that all documents responsive to plaintiffs' requests and listed on Exhibit L had been produced, I interviewed various individuals, including Carlos Cano, M.D. (then Senior Deputy Director of the Department of Health's Maternal and Family Administration and now Senior Deputy Director of the Department of Health's Community Health Administration), Sandra Robinson (Deputy Director of the Department of Health's former Maternal and Family Administration and the current Department of Health's Community Health Administration), Geraldine ("Ginger") Pierce (Assistant to Dr. Cano), Peggy Alston (Assistant to Ms. Robinson), Deborah Ali (official in the Department of Health's Community Health Administration), and Joyce Brooks (Section Chief in the Department of Health's Community Health Administration). I also identified several individuals who I believed might have responsive e-mails and asked them to search their e-mails for responsive documents. All who are currently employed by the Department of Health confirmed that all responsive documents had been produced or made available for inspection.

8.     DOH experienced personnel changes – both voluntary and involuntary – while this litigation has been pending. Personnel changes are particularly noticeable in DOH's former Maternal and Family Health Administration and in DOH's former Primary Care and Prevention Administration as well as the later formed DOH Community Health Administration which succeeded to the interests of the prior administrations. While I am unaware of any responsive documents that were lost, DOH cannot say with certainty that no paper or electronic documents were lost when personnel left.

4

9.    All documents that are responsive to plaintiffs' first, second, and third sets of document requests, and all documents listed on Exhibit L, have been produced, made available for inspection, or do not exist within the possession, custody or control of the Department of Health.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Phillip L. Husband_          Date:  September 10, 2008

Phillip L. Husband

5

# ATTACHMENT K

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DL, *et al.*,                                )
                                             )
      Plaintiffs,        )
                                             )
      v.                 )     Civil Action No. 05-1437 (RCL)
                                             )
THE DISTRICT OF COLUMBIA, *et al.*           )
                                             )
      Defendants.        )
                                             )

### CERTIFICATION OF DOCUMENT SEARCH

I, Runako Allsopp, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.     I am currently employed with the Executive Office of the Mayor. My title is Deputy General Counsel. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.     This certification supplements the certification of Rebecca Katz, which addresses the Office of the Deputy Mayor for Education's search for documents responsive to plaintiffs' requests. This certification describes EOM's search for documents related to the Mayor's Advisory Committee on Early Childhood Development ("MACECD") "strategic planning and capacity building for children with disabilities and special health needs" (Item No. 5 in Exhibit L to plaintiffs' February 4, 2008, motion to compel) in offices other than the Office of the Deputy Mayor for Education. In addition, this certification addresses EOM's inquiry to the Office of the Ombudsman as to whether the Office has received any complaints responsive to Exhibit L Nos. 7-9.

3.     In response to these requests, General Counsel Chip Richardson contacted the Office of the Ombudsman, Office of the City Administrator, and Office of Boards and Commissions seeking documents concerning MACECD. These offices all reported that they do not have any responsive documents. The Office of the Ombudsman also reported that it did not have any complaints responsive to Exhibit L Nos. 7-9. It identified one non-responsive complaint that referred to the CARE Center in the context of a father's complaint that he had been erroneously told by a guidance counselor that he could not enroll his six-year-old son in elementary school because he had to be registered at the CARE Center.

4.     In addition, I contacted MACECD to obtain documents responsive to Item No. 5. MACECD Administrative Liaison Dawn Alexander and Co-Chair of the MACECD Data and Needs Assessment Subcommittee Deborah Lyons provided responsive documents, which OGC then provided to the Office of the Attorney General.

5.     I certify that all of the documents in the possession, custody, and control of the Executive Office of the Mayor that are responsive to Item Nos. 5 and 7-9 in Exhibit L have been produced or do not exist within the possession, custody, or control of the Executive Office of the Mayor.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Nnah allropp_          Date: _September 5, 2008_

# ATTACHMENT L

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DL, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE DISTRICT OF COLUMBIA, *et al.* )<br><br>Defendants. ) | Civil Action No. 05-1437 (RCL) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Rebecca Katz, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.    I am currently employed with the Office of the Deputy Mayor for Education in the District of Columbia government. My title is Policy Analyst. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.    For the production of documents that occurred prior to the Court's order of June 27, 2008, I was informed by Eric Lerum, Chief of Staff to Deputy Mayor Victor Reinoso, and Laura Kiesler, Policy Analyst, that no search for documents occurred.

3.    For the production of documents that occurred after the Court's order of June 27, 2008, individuals under my supervision or I searched:

   a.    For documents other than electronic mail, Deputy Mayor Victor Reinoso, Chief of Staff Eric Lerum, and Policy Analysts Laura Kiesler and Jenna Grant were provided copies of the Plaintiffs' Requests for Production of Documents and a summary of the subject of the case. Each of these individuals attests that they do not have any responsive documents.
   b.    Regarding email:
      a.    I provided the archived emails of Deputy Mayor Victor Reinoso to the Office of the Chief Technology Officer for review.
      b.    Eric Lerum searched his emails utilizing relevant search terms and provided all emails related to the location of the CARE Center. His work has not involved any other issues related to this case. Chief of Staff Lerum did not document the specific search terms used in his search and is unable to specify those terms for this certification.
      c.    Jenna Grant provided all emails related to ICSIC Goal 1.
      d.    Laura Kiesler attests that she does not have any archived emails. Her active email will be searched by the Office of the Chief Technology Officer. Nevertheless, I searched her active email for the term "MOA"

and provided all emails related to the ICSIC Memorandum of Agreement.

4.    I certify that, other than e-mails submitted to OCTO for search and review, all of the documents in the possession, custody, and control of the Office of the Deputy Mayor for Education that are responsive to plaintiffs' first, second, and third sets of document requests, and all documents listed on Exhibit L to Plaintiffs' February 4, 2008, Motion to Compel, either have been produced or do not exist within the possession, custody, or control of the Office of the Deputy Mayor for Education.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Rebecca_____    Date: _8\28\08_____

# ATTACHMENT M

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE DISTRICT OF COLUMBIA, *et al.* )<br><br>Defendants. )<br>) | Civil Action No. 05-1437 (RCL) |

## CERTIFICATION OF DOCUMENT SEARCH

I, Dianne E. Hall-Simpson, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the Child and Family Services Agency. My title is Paralegal Specialist. I was designated as the Agency's representative to certify searches in the DL v. District of Columbia case. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.      For the production of documents that occurred after the Court's order of June 27, 2008, Julie Swaby, Supervisory Policy Advisor in the Office of Planning Policy and Program Support, searched the CFSA Policy Manual for policies related to Child Find and special education. The search was conducted using the CFSA automated Policy manual. As a result of that search, Ms. Swaby produced Administrative Issuance: CFSA-05-5: Referral of Supported Child Abuse/Neglect Cases to the Early Care and Education Administration (formerly Office of Early Childhood Development).

3.      In addition, Jenna Beebe, Special Assistant in the Office of Clinical Practice electronically searched the Office of Clinical Practice database for children identified as "special needs" from 1995 to present. The Office of Clinical Practice database interfaces with our FACES child information system. Ms. Beebe provided a list of such children. Brady Birdsong, Director of Information Systems, also provided a list of children identified as "special education" or diagnosed with a disability. He pulled the data from the District's State Wide Automated Child Welfare Information System (SACWIS), also referred to as FACES. The children identified in both lists were aged 2.8 years to 5 years old. Both lists of children were provided with identifying information redacted pursuant to D.C. Code §§ 4-1303.06. 4-1303.07, and 4-1405 and, it is my understanding, the agreement of the parties.

4.      In connection with plaintiffs' request for documents related to lead paint, Sylvester Judge, Supervisory Social Worker, Child and Family Services Agency searched:

(1) the paper files of the Lead Paint Specialist for risk assessments from 2000 to present, notices of defects from 2000 to present, and clearances from 2000 to present;

(2) the FACES database for names of children in homes that had notice of defects from 2000 to present;

(3) foster home records for notices of defects from 2000 to present, risk assessments from 2000 to present, and clearances from 2000 to present; and

(4) records of re-licensing staff.

Using the data compiled from these searches, CFSA created a list of identified homes that failed the lead test where foster children of a certain age were residing. The list included the dates of birth and initials of the children.

5.      All of the documents in the possession, custody, and control of the Child and Family Services Agency that are responsive to plaintiffs' first, second, and third sets of document requests have been produced. In addition, all documents listed on Exhibit L to plaintiffs' motion to compel either have been produced or do not exist within the possession, custody, or control of CFSA.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Dianne Hall-Simpson_          Date: _08-29-08_

2

# ATTACHMENT N

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DL, *et al.*,                                   ) | |
|                                                 ) | |
| Plaintiffs,                     ) | |
|                                                 ) | |
| v.                              ) | Civil Action No. 05-1437 (RCL) |
|                                                 ) | |
| THE DISTRICT OF COLUMBIA, *et al.*   ) | |
|                                                 ) | |
| Defendants.                     ) | |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Robert C. Warren, Jr., pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the D.C. Office of the Attorney General/Department of Human Services Office of the General Counsel (DHS/OGC).  My title is Assistant Attorney General.  The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.      For the production of documents that occurred prior to the Court's order of June 27, 2008, (from January 1, 2003 through June 27, 2008), individuals under my supervision or I searched the premises of the Infants and Toddlers with Disabilities Division (ITDD) of the Early Care and Education Administration (ECEA) for individual case files; client sign-in sheets; Part C/Part B Transition Logs; Child Find marketing data; e-mails; letters; memoranda; meeting agendas and minutes; internal agency and program studies; reports; and Department of Education assessments and ITDD/ECEA responses. In the process of attempting to produce electronic or e-mail documents, the following e-mail search terms were used: "Child Find," "IDEA," "Part C," "Part B," "Part C-Part B Transition," "Early Intervention," "Infants and Toddlers" and "Early Child Care."  All of the documents that were located from this search were transferred to the District of Columbia Office of the Attorney General, Civil Litigation Division (OAG).

3.      For the production of documents that occurred after the Court's order of June 27, 2008, the responsibility for the administration of the ITDD/ECEA subsidy program had been transferred to the Office of the State Superintendent of Education (OSSE) pursuant to the Supplemental Appropriations Clarification Temporary Amendment Act of 2008, effective May 13, 2008 (D.C. Law 17-163) (the Act).  Pursuant to the Act all ITDD/ECEA subsidy program personnel and documents relating to this case were transferred to the OSSE and are under the custody and control of the OSSE.  There are no documents in the possession of DHS that are responsive to the plaintiffs' requests for production of documents in this case.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____

Robert C. Warren, Jr.
Assistant Attorney General
Office of the General Counsel, DHS

Date: _July 28, 2008_

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1437 (RCL) |
| | ) | |
| THE DISTRICT OF COLUMBIA, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATION CONCERNING EXHIBIT L**

I, Robert C. Warren, Jr., Assistant Attorney General, Office of the General Counsel for the Department of Human Services, pursuant to 28 U.S.C. § 1746, hereby certify that all documents listed on Exhibit L to plaintiffs' February 4, 2008, motion to compel either have been produced or do not exist within the possession, custody, or control of the Department of Human Services.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____        Date: August 26, 2008

# ATTACHMENT O

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 05-1437 (RCL)

**CERTIFICATION OF DOCUMENT SEARCH**

I, Pamela Payne, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the D.C. Department of Consumer and Regulatory
Affairs ("DCRA").  My title is Code Enforcement Officer.  The following is based upon
my personal knowledge and information provided to me in the course of my official
duties.

2.      I was asked on Friday, July 25, 2008, by the Civil Division of the Office of the
Attorney General to search for "all documents that identify children ages two through
five years old who were identified in the course of any lead abatement program
administered by the District of Columbia."  To respond to this request, I reviewed
DCRA's databases and determined that DCRA has no way of locating the documents
because files are maintained according to property address.  It is my understanding that
the Plaintiffs have agreed that DCRA need not search files that are organized by address.
It is also my understanding that Mr. Robert Simpkins, a DCRA Supervisory
Neighborhood Stabilization Specialist, has a number of files in his possession that he
produced that are potentially responsive.  I have not examined those files.  These files,
under normal operating procedures, would have be logged and maintained by address.

3.      Subject to the disclaimer contained in paragraph two, all of the documents in the
possession, custody, and control of DCRA that are responsive to the request have been
produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my
knowledge, information, and belief.

Signature: _Pamela Payne_          Date: _7-31-08_

# ATTACHMENT P

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Robert Simpkins, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). My title is Supervisory Neighborhood Stabilization Specialist. The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.      I was asked on Tuesday, July 29, 2008, by the Civil Division of the Office of the Attorney General to search for "all documents that identify children ages two through five years old who were identified in the course of any lead abatement program administered by the District of Columbia." To respond to this request, I reviewed records in my possession. In my possession, I have records from 2007 and 2008 which have been provided. I do not have records for any other years.

3.      Subject to the disclaimer contained in paragraph two, all of the documents in the possession, custody, and control of DCRA that are responsive to the request have been produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Robert Sipl_____      Date: _7/30/2008_

# ATTACHMENT Q

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATION OF DOCUMENT SEARCH**

I, Robert Mulderig, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with the Department of Housing and Community Development (DHCD).  My title is Deputy Director, Residential and Community Services Division.  The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.      The Department of Housing and Community Development was asked by the Civil Division of the Office of the Attorney General to participate in a search for "all documents that identify children ages two through five years old that were identified in the course of any lead abatement program administered by the District of Columbia."  To respond to this request, I required staff in the Department's Lead Safe Washington Initiative and Single Family Residential Rehabilitation Program to provide copies of intake applications that reflect the names and ages of children between the ages of 2-5, included within the applications to those programs.

3.      In addition to these documents DHCD also has lead-based paint risk assessments that may identify children ages two through five years old.  DHCD is willing, if necessary, to make these documents available for inspection by the plaintiffs if they are so inclined.

4.      To the best of my knowledge, the Lead Safe Washington and Single Family Residential Rehabilitation Program application intake forms and the risk assessments represent all of the documents currently in the possession, custody, and control of the Department of Housing and Community Development that could be responsive to the request.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Robert E. Mulberg_     Date: _July 31, 2008_

# ATTACHMENT R

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATION OF DOCUMENT SEARCH

I, Jeanette Manning, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.     I am currently employed with the District of Columbia Office of the Attorney General.  My title is Chief of the Neighborhood and Victim Services section in the Public Safety Dvision.  The following is based upon my personal knowledge and information provided to me in the course of my official duties.

2.     I was asked by the Civil Division of the Office of the Attorney General to search for "all documents that identify children ages two through five years-old who were identified in the course of any lead abatement program administered by the District of Columbia."  To respond to this request, I have provided to the Civil Division of the Office of the Attorney General a total of seventy-nine (79) risk assessment reports conducted at properties throughout the District of Columbia, three (3) notations from Robert Deberardinis concerning properties that identified children and the owner of the properties at 1213 Staples Street, NE, 4822 7th Street, NW, and 511 Webster Street, NW; and one (1) packet of information containing a letter and electronic correspondence for a property located at 30 18th Street, SE, Washington, DC.

3.     All of the documents in the possession, custody, and control of the Office of the Attorney General – Neighborhood and Victim Services section that may be responsive to the request have been produced to the best of my knowledge and belief.

4.     Additionally, the Neighborhood and Victim Services section has filed lawsuits against property owners within the District of Columbia Superior Court, alleging lead-based paint hazards involving children under the age of age of eight (8) years of age. These pleadings, including a complaint, motion for temporary restraining order and motion for preliminary injunction have not provided identifying information of the children, including the initials or the names of the children, residing within the home between the ages of two-five (2-5).

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _Jeanette Manning_     Date: _7/30/08_

# ATTACHMENT S

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-1437 (RCL) |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

CERTIFICATION OF DOCUMENT SEARCH

I, Robert L. Hamilton, pursuant to 28 U.S.C. § 1746, hereby certify that:

1.      I am currently employed with District Department of the Environment.  My title is Associate Director for Toxic Substances.  The following is based upon my personal knowledge and information provided to me in the course of my official duties as supervisor of the DDOE Lead-Based Paint Management Program.

2.      For the production of documents that occurred after the Court's order of June 27, 2008, I searched or directed DDOE employees to search paper and electronic files dating back to 2000, to the extent available, regarding aggregate data, information or policies related to children with elevated blood levels as determined by the Department of Health and reported to the Lead-Based Paint Management Program. Until June 14, 2006, the program was located in the Department of Health.  On June 14 2006, the program was transferred to the newly-created District Department of the Environment (DDOE).

3.      Identification of each person who conducted a search, the type of documents recovered, the manner of search, and location of the search and dates of searches, are set forth below. All searches were conducted at 51 N. Street N.E., Washington, D.C. 20002, the location of the Lead-based Paint Program:

   A. Robert Hamilton searched emails and original documents from employee's files from October, 2002 to July 24, 2008, regarding children with Elevated Blood Levels, lead inspections and lead policies of DDOE. Mr. Hamilton searched through all his emails by excluding emails relating to other programs and looked for attachments when the email was associated with lead, inspections and policy. He also examined his computer files of documents and paper files in the same manner. Mr. Hamilton also searched the Shared Local Network (LAN) for EBL and lead documents. Documents recovered included summary documents such as meeting minutes, lead task force updates, interagency work groups, data received from DCRA, DOH, and

DHCD, case status reports and repeat offender listings. It was not possible to access emails for 2002 or sent emails prior to 6/2003.

B. Obiora M. Offor, Environmental Specialist with DDOE Lead-based Paint Management Program since 2006, and formerly Computer Specialist with DOH Childhood Lead Poisoning Screening & Education Program from 2001-2006, searched emails from 2001 until 7/24/08 including emails from 2001 to 2006 when he was a DOH employee.

C. The search by George Hawkins, Director, DDOE, for 2008 located emails relating to the Lead-based Paint Program, lead in schools, and lead in water, including policies, information, and bi-weekly interagency reports on lead. No documents were located for the period May, 2007-December, 2007.

D. Jill Wohrle, Executive Assistant to the Director, DDOE, searched her emails for aggregate information from all agencies involved in EBL and the lead-based paint program. She retrieved the bi-weekly updates going back to July, 2007 when she first produced the reports based on submissions from DOH, DCRA, DHCD, OAG, and OCA. She also retrieved minutes she wrote for interagency task force meetings.

4.     The Office does not have access to the email of Corey Buffo, who is currently at EPA, on detail from his position at DDOE. A search of his email by OCTO has been requested by the Office through OAG. The search terms requested are "lead" and "EBL". Corey Buffo transferred paper files to relevant programs; therefore any files have been incorporated in the other searches conducted pursuant to the order of the court.

5.     Several key employees have left the agency and their records cannot be located.

6.     All of the documents in the possession, custody, and control of DDOE's Lead-Based Management Program that are responsive to plaintiffs' first, second, and third sets of document requests have been produced.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

Signature: _____     Date: 7/31/08