UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Plaintiffs' Exhibit 12

|  |  |  |
|---|---|---|
| DL,[1/] *et al.*, on behalf of themselves and others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-1437 (RCL) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

**SUPPLEMENTAL AFFIDAVIT OF BRUCE J. TERRIS**

1. I am a partner in the Washington, D.C., law firm of Terris, Pravlik & Millian, LLP (hereafter "Terris, Pravlik & Millian") and am plaintiffs' lead counsel in the above-captioned action. I offer this second affidavit in support of plaintiffs' application for fees and expenses related to their motion to compel.

2. In my first affidavit, I described the attorneys who worked on this fee application through July 18, 2008. Pl. Ex.1, para. 5. Since that date, another attorney at our firm, Alicia Clark Alcorn, has contributed to the preparation of the time and expense reports submitted as Plaintiffs' Exhibits 5-8 and 21-24. Ms. Alcorn graduated from Hobart and William Smith Colleges in 1997 and from George Mason University School of Law in 2004, at which time she joined the firm as an associate. For three prior to law school, Ms. Alcorn worked as a legal assistant with our firm. Her resume is attached as Plaintiffs' Exhibit 27.

3. The firm's paralegal Sara O'Keefe (SMO) also performed non-clerical work on plaintiffs' fee petition after July 18, 2008.

---

[1/] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

4. Plaintiffs' Exhibit 22 sets forth contemporaneous time records maintained by myself and the firm's attorneys and paralegals. These records show the additional amount of time for which we seek compensation on this matter for the work of Terris, Pravlik & Millian since July 18, 2008.

5. We have divided the additional time spent in this case into four subcategories. I described one of those subcategories, "Pl Initial Application," in paragraph 13 of my first affidavit. We continued to use that subcategory for work on plaintiffs' initial fee application after July 18, 2008. An updated description of that subcategory and descriptions of the other three subcategories are included in paragraphs 8 and 9 below.

6. The lodestar amounts corresponding with this additional work – the number of hours of work for each attorney and the paralegals in each subcategory, multiplied by the rates – are set forth in summary tables. *See* Pl. Exs. 20, 21.

7. A computer print-out of plaintiffs' time records setting forth the additional work performed is attached as Plaintiffs' Exhibit 22. The time records in Plaintiffs' Exhibit 22 are organized by the same categories and subcategories as in Plaintiffs' Exhibits 20 and 21 and as described in paragraphs 8 and 9 below.

8. **June 27, 2008 Order**: Plaintiffs' supplemental time records include a new subcategory for work related to plaintiffs' motion to compel discovery – "June 27 2008 Order - Pl Mot to Compel." The "client" for that work is identified as "Child Find." The category is "Pl Discovery," which also involves tasks such as preparation of document requests and interrogatories, depositions, and review of documents produced by defendants. The new subcategory involves work related to (1) plaintiffs' review of the Court's June 27, 2008 order granting plaintiffs' motion to compel and (2) defendants' compliance with that order. Throughout the months of July and August 2008,

defendants' counsel contacted our office almost every week, sometimes up to five times per week, for clarification of plaintiffs' discovery requests and to seek multiple extensions of the discovery deadlines set forth in the Court's June 27 order. Among the topics discussed in those conversations were defendants' production of sample student records and their ongoing search for e-mails. The specific activities involved this subcategory included our review of the Court's June 27 order, telephone conversations and e-mail correspondence with defendants' counsel regarding defendants' compliance with that order and requests for extensions of time to produce responsive documents, review of plaintiffs' discovery requests and defendants' document production as they related to defendants' requests for clarification, and discussions within our firm regarding this matters. The time expended in this subcategory includes 20.47 hours by Mr. Karam, 0.38 hours by Ms. Millian, and 2.90 hours by myself, for a total of 23.75 hours. *See* Pl. Ex. 21, p. 1.[2]

    9. **Fees Application:** All of the work related to the preparation of this fees application is billed to the "client" identified as "Child Find Fees" as a means of distinguishing it from other work in the case. The category is identified as "Pl 2008 Application." This category is divided into three subcategories:

    (a) **Pl Initial Application:** This subcategory describes work related to the preparation of plaintiffs' initial fees application. Specific activities included reviewing time records to ensure that the work described in them corresponded to their respective subcategories, as well as preparing the memorandum, affidavits, and detailed exhibits submitted in support of this fees application. Plaintiffs' initial brief included time records and a summary of this work through July 18, 2008. Pl.

---

[2] Plaintiffs mistakenly omitted this subcategory in plaintiffs' initial fee application. As a result, we have included with this brief and in our supplemental time records the 11 entries through July 18, 2008, that were overlooked. *See* Pl. Ex. 22, pp. 1, 4.

Ex. 5, p. 6; Pl. Ex. 6, pp. 18-19. The time expended by our firm for this subcategory after July 18, 2008, includes 10.63 hours by Ms. Alcorn, 37.15 hours by Mr. Karam, 2.92 hours by Ms. Gorin,, 0.58 hours by Ms. Smith Pravlik, and 3 hours by myself, for a total of 54.41 hours. *See* Pl. Ex. 21, p. 2.

(b) **Def Opposition Brief:** This subcategory involves work related to plaintiffs' review of defendants' opposition to plaintiffs' initial fees application – including this Court's recent, lengthy attorneys' fees decision, *Miller v. Holzmann*, Civ. No. 95-1231 (Lamberth, J.), attached as Defendants' Exhibit A – and discussion within our firm on these matters. The time expended by our firm for this subcategory includes 4.13 hours by Mr. Karam, 0.17 hours by Ms. Millian, and 1.48 hours by myself, for a total of 5.78 hours. *See* Pl. Ex. 21, p. 2.

(c) **Pl Reply Brief:** This subcategory involves work on plaintiffs' reply brief in further support of their fees application. The work included legal research, drafting and revising the reply brief, collecting and analyzing market data in support of plaintiffs' requested billing rates, reviewing supplemental time records to ensure that the work described in them corresponded with the subcategories described above, and preparing time record reports and summaries, affidavits, and other detailed exhibits submitted in support of this fees application. The time expended by our firm for this subcategory includes 2.37 hours of paralegal time by Ms. O'Keefe, 5.05 hours by Ms. Alcorn, 93.25 hours by Mr. Karam, 3.83 hours by Ms. Smith Pravlik, 1.45 hours by Ms. Millian, and 11.27 hours by myself, for a total of 117.22 hours. *See* Pl. Ex. 21, p. 3.

10. In our application, we have also requested reimbursement for the expenses that we incurred related to plaintiffs' motion to compel discovery. These are expenses that we normally bill to our paying clients. Plaintiffs submitted summaries and reports of the expenses incurred through

July 18, 2008, as Plaintiffs' Exhibits 7 and 8. Plaintiffs now submit documentation of their additional expenses incurred after that date. As I explained in my initial affidavit, we have not attached back-up documentation for these expenses because it is voluminous. However, at my request, our Office Administrator, L.J. Fletcher, has audited the additional expenses summaries against the original receipts and records. The information from Ms. Fletcher's audited expense reports and summaries related to plaintiffs' motion to compel are attached as Plaintiffs' Exhibits 23 and 24. The additional expenses total $367.93. *See* Pl. Exs. 20, 23.

11. We have divided the additional expenses using the same eight categories described in paragraph 20 of my first affidavit. This breakdown is shown in the summaries and records of our additional expenses attached as Plaintiffs' Exhibits 23 and 24.

12. For their initial application, plaintiffs reduced their requested expense amounts for Lexis and Westlaw research to account for the cost of other research billed to the client "Child Find" during the same period that plaintiffs worked on their motion to compel. *See* Pl. Ex. 1, para. 20(e). Plaintiffs completed all work on their motion to compel, including legal research, in February 2008, and have billed all legal research expenses related to their fees application to the separate client "Child Find Fees." Accordingly, there is no need to reduce plaintiffs' supplemental legal research expenses.

13. In sum, Terris, Pravlik & Millian has incurred an additional $77,939.20 in attorneys' fees and $367.93 in out-of-pocket expenses, for a total of $281,349.11 in attorneys' fees and $3,141.16 in out-of-pocket expenses for work done in relation to plaintiffs' motion to compel. When added to the amounts of co-counsels' fees described in plaintiffs' initial application, plaintiffs request a total amount of $287,146.17. These fees and expenses are summarized in Plaintiffs' Exhibit 20,

which, in turn, is based on Plaintiffs' Exhibits 5-10 and 21-24.

14. Defendants state in opposition to this fees application that they cannot determine how much of plaintiffs' work on their first motion to compel was relevant to their second motion to compel, and therefore cannot determine whether the hours that plaintiffs claim for each are reasonable. I describe the similarities and differences between these two motions and the circumstances surrounding each in paragraphs 20 through 22 below.

15. **Plaintiffs' First Motion to Compel:** Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First Set of Requests for Production of Documents (Docket No. 41) was filed on July 10, 2006, while plaintiffs' motion for class certification (Docket No. 5) and defendants' two motions to dismiss (Docket Nos. 18, 19) were still pending before the Court.

(a) Plaintiffs' supporting memorandum focused on two of defendants' General Objections asserted in response to Plaintiffs' First Set of Requests for Production of Documents – General Objection 1 (regarding documents that pre-date 2003) and General Objection 2 (regarding documents related to class allegations or class members). Plaintiffs dedicated more than half of their memorandum (pp. 3-15) to argue that discovery should not be stayed pending a decision on class certification and that the discovery sought was relevant both to plaintiffs' main case and to class certification issues. Plaintiffs dedicated an additional seven pages (pp. 15-21) to argue that they were entitled to discovery of documents pre-dating 2003.

(b) In further support of their motion, plaintiffs submitted Plaintiffs' Exhibit 10 (included as an attachment to their reply brief, Docket No. 50), which listed 37 documents or categories of documents that plaintiffs had identified, but defendants had not yet produced in their "rolling" production of February 23, February 28, March 27, and June 5, 2006.

      (c) Shortly after plaintiffs' filed their motion, defendants filed their own motion to compel discovery. Docket No. 45. On August 25, 2006, the Court issued orders granting plaintiffs' motion for class certification (Docket No. 57), denying defendants' motions to dismiss (Docket Nos. 54, 55), and denying both parties' motions to compel without prejudice (Docket No. 59). The Court further directed the parties to "[c]onsider the impact of today's decisions on class certification and the motions to dismiss" and "[m]eet and confer, in person, through counsel, and seek to resolve any remaining differences" (Docket No. 59).

      (d) The Court did not rule directly on the merits of plaintiffs' motion to compel. Nonetheless, the Court's accompanying decision to grant plaintiffs' motion for class certification indirectly overruled defendants' objection to producing documents related to plaintiffs' class allegations.

16. **Intervening Period:** Defendants produced additional documents on December 5, 2006, and July 13, 2007. Plaintiffs served their Second Set of Requests for Production of Documents on September 17, 2007, and their Third Set of Requests for Production of Documents and First Set of Interrogatories on September 28, 2007. Defendants responded to these three sets of discovery requests on October 17 and October 29, 2007, respectively. Defendants produced additional documents on November 2, November 6, and December 7, 2007. On January 30, 2008, the evening before plaintiffs' renewed motion to compel was due, defendants produced an additional 17 documents that were not only responsive to plaintiffs' First Set of Document Requests, but were also in defendants' custody and control long before their production.

17. **Plaintiffs' Second Motion to Compel:** Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First, Second, and Third Sets of Requests for Production of Documents and

Plaintiffs' First Set of Interrogatories was filed on February 4, 2008.  Docket No. 91.

      (a)  Some of plaintiffs' first motion to compel – for example, the seven-page section on plaintiffs' entitlement to documents pre-dating 2003 and the much shorter discussion about discovery relating to the then-putative class – was helpful in the preparation of this second motion.  This can be seen by comparing sections of Parts I and II of plaintiffs' first motion with Part I, sub-parts B, C, and H of the second motion.  However, the much longer section regarding class certification issues was largely irrelevant given the Court's August 26, 2006 order.

      (b)  More importantly, plaintiffs had served three additional discovery requests in the intervening period and had to address defendants' inadequate response to each of them.  Whereas the first motion focused on only two of defendants' general objections to plaintiffs' discovery requests, the second motion addressed nine separate categories of defendants' objections.

      (c)  In further support of their second motion to compel, plaintiffs submitted Plaintiffs' Exhibit L, a detailed table describing 42 categories of documents that defendants had failed to produce and the specific discovery requests corresponding to each.  Some of these categories were identified in Plaintiffs' Exhibit 10 to the first motion to compel, but without the level of detail or references to specific discovery requests that the later exhibit provided.  As I explained in paragraph 12(g) of my first affidavit (Pl. Ex. 1), plaintiffs had to revise considerably both Exhibit L and the entire initial brief after they received defendants' January 30, 2008 production.

      (d)  Plaintiffs' reply brief in support of their second motion to compel was also substantially broader in scope than plaintiffs' reply brief in support of their first motion to compel.  This was necessarily the case given the differences between the two corresponding initial briefs.

Moreover, work on the second reply brief involved substantial revisions to Plaintiffs' Exhibit L – resubmitted as Plaintiffs' Exhibit S – in response to defendants' March 6, 2008 production of over 6,000 pages of documents (just four days before defendants' opposition was due), the repeated citation of those newly produced pages in defendants' opposition brief, and defendants' mischaracterization of the information contained in the exhibit.

18. Plaintiffs are aware that this Court recently rejected Dr. Michael Kavanaugh's methodology, adopted by plaintiffs in this case, for updating the schedule of hourly rates developed in *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983) ("the *Laffey* matrix"), in favor of the updating method used by the U.S. Attorney's Office ("USAO"). *Miller v. Holzmann*, 2008 WL 3319032, at *11 (D.D.C. Aug. 12, 2008)(Lamberth, J.). If the Court applies that ruling in deciding this fees application, plaintiffs are providing revised calculations of their attorneys' fees based on the USAO *Laffey* matrix as Plaintiffs' Exhibits 25 and 26.

19. Plaintiffs are also aware that this Court, in a footnote to its decision in *Miller v. Holzmann*, *supra*, stated (2008 WL 3319032, at *24, n. 63) that where a lawyer "attends a meeting, makes telephone calls, reviews (unidentified) documents, and responds to and drafts emails * * * she can and should distinguish how much time she spent on these various, disparate tasks." While plaintiffs do not believe that this statement is inconsistent with the practice of plaintiffs' counsel, in light of this footnote, plaintiffs' counsel have decided, as of August 25, 2008, to provide additional information in our time records to indicate the amount of time spent on each activity in this case. *See* Pl. Ex. 22.

20. I have attempted in this affidavit to describe, as concisely as possible, the work that has been performed and the expenses incurred in this case. The firm has maintained detailed records of

its work and expenses. These records will enable me, if necessary, to supplement the description of any of the work or expense categories that I have described above or in my first affidavit. Thus, if the Court requests, I would be pleased to expand my discussion of any category to set forth in more detail the nature of the work or expense and the amount of time expended or expenses incurred.

  Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 16th day of September, 2008.

              /s/ Bruce J. Terris
              BRUCE J. TERRIS