Plaintiffs' Exhibit 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL,[1] *et al.*, on behalf of themselves and others similarly situated, ) ) ) ) Plaintiffs, ) ) v. ) THE DISTRICT OF COLUMBIA, *et al.* ) ) Defendants. ) ) | Civil Action No. 05-1437 (RCL) |

DECLARATION OF DR. MICHAEL KAVANAUGH

Michael Kavanaugh, do hereby affirm and state:

1. My name is Michael Kavanaugh. I am an economist in private practice at 19-4231 Road E, Volcano Hawaii, 96785.

2. I hold a Ph.D. in economics from the University of Cincinnati (1975) and a BA in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. For 30 years, I have worked as an economist for a variety of clients including the U.S. Department of Justice, the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the States of Ohio, California, and Alaska, citizen groups, and private industry. I have been qualified as an expert in Federal court in financial and economic matters many times. A copy of my curriculum vitae with a listing of sworn federal testimony is attached as Exhibit 1.

3. I have been asked by plaintiffs' counsel to render my opinion as to the appropriate price index to be used to update the *Laffey* matrix of attorneys' fees rates for complex federal litigation in the Washington, D.C., market. My opinions about the appropriate way to update the *Laffey* Matrix are stated to a reasonable degree of certainty under the standards of my profession.

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

4. *Laffey* Matrix rates are used in the "lodestar" method to determine fee awards. The lodestar method is a straightforward and simple way to determine a fee award. In its basic form the lodestar method sorts the number of hours that were reasonably expended on the civil action into categories that reflect differing levels of legal experience. The method proceeds by multiplying the number of hours in each category by hourly billing rates for each labor category. The *Laffey* Matrix, when correctly updated, will provide a schedule of the prevailing hourly billing rates for complex litigation in the Washington, D.C., metropolitan area for the specified labor categories.[2]

5. The most recent survey of billing rates for the Washington, D.C., area was made in 1989 in response to the remand decision in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)(en banc). The method used to find the 1989 rates is described in the declaration of Joseph Yablonski submitted in the case of *Broderick v. Ruder*, D.C. Civil No. 86-1824 (Pratt, J.). Several courts have since recognized this method as an appropriate method for updating the *Laffey* rates.[3]

6. The method that plaintiffs' counsel has used to determine the increase in *Laffey* rates from 1988-1989 rates to the present is to calculate the May to May change in the Legal Services component of the Consumer Price Index – All Urban Consumers ("Legal Services Index") and to apply the change to a base year to arrive at an estimate for the next year. *See* Pl. Ex. 3. The process is repeated and a chain of estimates results with each year's estimate linked to the proceeding year's estimate by the change in the price index. This is an appropriate and common use of index numbers.

7. I used a similar method to update the *Laffey* Matrix in *Oscar Salazar, et al., v. The District of Columbia et al.*, Civil No. 93-452 (GK) before Judge Kessler. The decision in that case, which uses

---

[2] The labor categories are: (1) attorney with more than 20 years of experience; (2) attorney with 11 to 19 years of experience; (3) attorney with 8 to 10 years of experience; (4) attorney with 4 to 7 years of experience; (5) attorney with 1 to 3 years of experience, and; (6) paralegal or law clerk.

[3] *See, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000)(citing *Trout v. Ball*, 705 F. Supp. 705, 709, n. 10 (D.D.C.1989); *Sexcius v. District Columbia*, 839 F. Supp. 919, 924 (D.D.C. 1993); *Palmer v. Barry*, 704 F. Supp. 296, 298 (D.D.C. 1989)).

the analysis I prepared, is reported at 123 F. Supp. 2d 8 (D.D.C. 2000). I have prepared declarations in several other cases. My analysis was also adopted in the cases of *Interfaith Community Organization v. Honeywell*, 336 F.Supp.2d 370 (D.N.J. 2004) and *PIRG v. Magnesium Elecktron, Inc.*, Civil No 89-3193, slip op. 2, 10 (D.N.J. Dec. 28, 1995), vacated on other grounds, 123 F.3d 111 (3d Cir. 1997).[4]

8. The U.S. Attorney's Office for the District of Columbia ("USAO") offers an alternative method for updating the *Laffey* Matrix. The USAO approach applies the change in the All-Items Consumer Price Index for Washington, D.C., Maryland, Virginia ("all-item DC-CPI") to the 1982 *Laffey* rates. This produces a matrix that differs from the matrix offered by plaintiffs.

9. I have reviewed both the update to the *Laffey* Matrix prepared by plaintiffs' counsel (Pl. Ex. 3), which uses the Legal Services Index to bring 1988-1989 rates forward to present, and the update referred to as the USAO *Laffey* Matrix, which utilizes the all-item DC-CPI to bring 1981-1982 rates forward to the present (http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html).

10. In my opinion, the Legal Services Index is a better measure of the change in prices for legal services in Washington, D.C., than the all-item DC-CPI.

11. The all-item DC-CPI includes items that are not relevant to the market for legal services and these other items are given much more weight than legal services. A partial listing of such "non-legal service" items includes: food, alcoholic beverages, rent on primary residence, fuels and utilities, household furnishings and operations, apparel, private transportation, gasoline, medical care, recreation, education and communication. *See* http://data.bls.gov/PDQ/outside.jsp?survey=cu. In other words an all-item CPI incorporates many other indices to estimate the cost of living. For example, in the 2007 CPI for all urban consumers, legal services account for less than 0.3% of the spending considered by the total CPI. In contrast, food prices accounted for about 16%. Adjusting legal fees using this CPI

---

[4] I did not participate in *Yazdani v. Access ATM*, 474 F. Supp. 2d 134 (D.D.C. 2007), *Muldrow v. Re-Direct, Inc.*, 397 F. Supp. 2d 1 (D.D.C. 2005), or *McDowell v. District of Columbia*, No. 02-CV1119, 2006 WL 1933809 (D.D.C. July 11, 2006).

3

would give 53 times more weight to food markets than to the markets for legal services. *See* http://www.bls.gov/cpi/cpiri2007.pdf.

12. In comparison, the Legal Services Index measures price changes only for legal services. The Legal Services Index, again, is a component of the CPI. As such, The United States Department of Labor, Bureau of Labor Statistics ("BLS") constructs it.

13. The specific components of a CPI, to the extent they are available, are the better resource to update an industry's prices (as opposed to the entire CPI). This is because there are two strong forces that exert pressure on prices over time. One is inflation, a rise in the general price level; the other is a supply and demand imbalance, often called market imbalances.

14. Often for a specific good or service, market imbalances are the stronger of the two forces and can accentuate or negate the effects of inflation on a particular price (e.g., billing rates for legal services). If a broad index (e.g., an all-item DC-CPI index) is used to adjust an industry's prices over time, then the specific supply and demand effects are suppressed because they are mixed in with the market imbalances from all the other goods and services that are part of a broad (e.g., all-item) index and only the effect of inflation is captured. On the other hand, when a specific index is used the net effect of both forces is captured. That is, the effect of both inflation and market imbalances are captured. This is why it is more accurate to use a specific index rather than a broad index when updating a particular price (e.g., billing rates for legal services).

15. Market imbalances negating inflation may be seen in the market for electrical components and parts (e.g., computers) over the last thirty years. Thus, computer prices have declined while prices generally have increased due to inflation.

16. Market imbalances have recently accentuated inflation in the market for fossil fuels. From mid-1998 to mid-2008, fuel prices have increased within the D.C. metropolitan area by 5.7% per year while all items have increased by 3.2% per year. Thus, if the all-items data were used to calculate the change in fuel cost for this 10-year period, it would underestimate the change by 25%.

17. The legal services index that plaintiffs use to adjust the *Laffey* Matrix includes observations from metropolitan Washington, D.C.

18. BLS does not produce a legal services index just for the Washington, D.C., area because, in its judgment, there are insufficient observations to create a statistically valid index.

19. In my opinion, resource mobility and low-cost communication combine to make the market for legal services in complex federal litigation in Washington, D.C., a national market not a local market. In other words, Washington, D.C., area law firms compete with law firms in other areas such as New York, Philadelphia, Chicago, Dallas, and San Francisco. The geographic extent of the market for complex legal services provides another reason to use the legal services component of the CPI. It more accurately reflects the conditions of competition.

20. Finally, I believe that the *Laffey* Matrix prepared by plaintiffs' counsel is preferable to the USAO *Laffey* Matrix for an additional reason. Plaintiffs' *Laffey* Matrix update is based on observations from 1988-1989, while the United States Attorneys' Office *Laffey* Matrix uses 1981-1982 rates as a base. In general, the more contemporary the observation, the less possibility exists for forecasting errors. Thus, plaintiffs' *Laffey* Matrix is more likely to be an accurate forecast of rates because it applies a specific index to more recent observations to bring rates forward to the present. The USAO *Laffey* Matrix that uses a general index to bring forward much earlier observations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. This document executed on September 4th, 2008.

_____
MICHAEL KAVANAUGH, PhD

**MICHAEL KAVANAUGH**
**Research Economist**
Voice/Fax 808 985 7031
E-mail:  M.Kavanaugh@att.net

P.O. Box 1228
19-4231 Road E
Volcano, Hawaii 96785

**PRESENT POSITION:** Private Practice since 1985

**PREVIOUS POSITIONS**:
- Senior Economist, ICF Incorporated, 1983-85, Washington DC
- Research Director, Public Interest Economics, 1976-1983, Washington DC and San Francisco, CA
- Assistant Professor, Northern Kentucky University, 1975-76

**EDUCATION**:
- Ph.D., Economics, University of Cincinnati, 1975
- BA. Economics, Xavier University, 1970

**EXPERIENCE**
Dr. Kavanaugh is:
- An independent research economist with over thirty years of experience;
- A national expert in the economic aspects of environmental enforcement and policies for municipal and industrial pollutions sources;
- Experienced in natural resource damage assessment and regional economic impact assessment; and,
- An author of groundwater management and climate change papers.

Short descriptions of selected projects follow.

**ECONOMICS & FINANCE**

Applied economics to many of the environmental changes of the last thirty years including:
- Estimating the ability of defendants to pay a penalty and the financial effects of penalties in enforcement cases;
- Estimating the benefits of cleaner beaches and rivers;
- Developing methods to determine the effects of water quality policies on agricultural output, employment and income;
- Developing methods to estimate the benefits of preserving groundwater quality;

1

- Estimating expected and realized benefits of irrigation projects; and,
- Critiquing efforts to regulate effluents from several industries.

Designed and used financial after-tax, cash flow models to:
- Measure the ability to pay a penalty and the effects of penalties on financial position;
- Estimate the benefit gained by entities that violate law and regulation; and,
- Estimate the burden on the residential sector from municipal compliance with law and regulation.

Provided expert economic and litigation support services to the United States (and others) in Clean Water Act, Clean Air Act, Superfund, RCRA and groundwater quality cases.

*Exxon Valdez* – Estimated the employment and income effects from spending the civil settlement. The work involved characterizing the options in the restoration plan in term of input/output models.

**Natural resource damage assessments**

- Ohio River – valued public resource damages from spills from tugs and barges. The work combined results from Natural Resource Damage Assessment models, studies of the costs of reducing risks to drinking water, and restoration costs.
- Kailua Beach State Park – valued a three-mile beach based on recreational use and estimated the damage from wastewater treatment plant effluent. The work involved reviewing, updating and synthesizing a variety of studies that valued recreation.
- Florida Beaches – valued beach closures from pollution at several beaches. The work involved extensive use of the Natural Resource Damage Assessment models for coastal and marine environments.
- Advised environmental groups on the use of contingent valuation to value natural resource damages and commented on the Federal Register notice on the use of contingent valuation to value damage

**Energy & Environment**

- Conducted several analyses of U.S. energy industry to estimate current and future production in wetlands and in the artic.
- Estimated consequences of oil and gas leasing in the North Aleutian Basin.
- Estimated the cost effectiveness of technologies to control produced water discharges in wetlands,
- Estimated the impact of produced water controls on production, royalties and returns from coal bed methane production.
- Estimated the change in rates needed to pay for adopting cooling water intake controls at a nuclear power plant.

2

- Advised environmental groups on methods to fund the WV acid mine drainage reclamation fund.
- Design team member to size and fund the Superfund.
- Estimated onshore economic impacts of outer continental shelf oil and gas development in California
- Examined the efficiency and equity of federal leasing policies for oil and gas on public lands

**Global Climate**

- Estimated current and future greenhouse gas emissions by fuel, sector and region. The work involved estimating long-term energy using an economic model based on prices, income and combustion technology.
- Estimated greenhouse gas emissions by jets at altitude by region and the change in emissions from adopting advanced jet technology.
- Modeled current and future emission from the US automobile fleet under various assumptions about future fuel efficiency.
- Analyzed the benefits of substituting hydrocarbon propellants for CFC propellants in aerosol products. The results showed the same level of consumer satisfaction could be obtained without CFCs and without increasing prices.

**SELECTED PUBLICATIONS**

"Fuel economies available from ultrahigh bypass jet engines' in Cost estimates of measures available to reduce US, greenhouse gas emissions by 2010. ICF, Washington D.C. 1990.

"End—use efficiency and NOx emissions in aviation'. In S. Meyers, Ed. Energy efficiency and structural change: Implications for the Greenhouse problem. Lawrence Berkeley laboratory, Berkeley 1990

Estimates of future CO, N20 and NOx emissions from energy combustion, Atmospheric Environment, March 1987

Tropospheric CH4/CD/NOx: The next 50 years. Co—author with Anne M. Thompson. UNEP/USEPA International Ozone conference, 1986

Eliminating CFCs from aerosol uses: the U.S. experience and its applicability to other nations. U.S. Environmental Protection Agency, Washington, February 1986.

The 1983 world oil surplus: some implications for OCS leasing. Prepared for the U.S. House Subcommittee on the Panama Canal/OCS Washington, April 1983.
The effect of OCS leasing schedules and procedures on fair market value. Paper presented to the Western Economic Association, Seattle July 1983.

Efficient strategies for preserving groundwater quality, with Rob Wolcott. U.S. Environmental Protection Agency, May 1992.

Exclusive territorial distributorships and consumer welfare: the case of beer. Food Marketing Institute, Washington D.C. 1982.

The Great Giveaway, with others, Sierra Club, October 1982.

The public benefits of the proposed Union Pacific, Missouri Pacific, Western Pacific consolidation. Interstate Commerce Commission, August 1981

Regional economic impacts of OCS oil and gas development, with Susan Little and Rob Wolcott. Governor's Office of Planning and Research, California, November 1976.

**Federal Court Trial Testimony Since 1/91**

NRDC v. Texaco — Wilmington - 2/91, 88—263—JRR
U.S. v. City of San Diego — San Diego — 2/91, 88—1101—B(IEG)
SCLDF v. City/County of Honolulu — Honolulu - 1/93, 90—00218—HMF
Friends of Earth v Laidlaw — Columbia SC — 11/93, DSC 3—92-1697—17
PIRG v, MEl - Newark — 1/94, DNJ 89—3193
Friends of Earth v Laidlaw — Columbia SC — 7/95, DSC 3—92—1697—17
Friends of Earth v. Gaston Recycling 7/95, DSC 3—92—2574—0
PIRG v, Hercules — Camden NJ — 2/97, DNJ 89—2291
U.S. v. Rapanos et al. — Detroit MI — 10/2000, 94—CV—70788DT
PIRG v. Rahway — Rahway NJ — 4/2001, UNN—L—163—98
Sierra Club v. Colorado Springs – Denver Colorado – 1/2008, 05-CV-1994-WDM-BNB

**Deposition Testimony since 1/91**

U.S. v. San Diego 1/91, 2/91, 88—l101—B(IEG)
SCLDF v. C&C Honolulu (Sand Island) 2/91, 90-00219 ACK
U.S. v. Louisiana Pacific & Simpson Paper 4/91, C—87—0567—MHF
PIRG v. Hercules 7/91, DNJ 99—2291
U.S. v. Corning 9/91, 3:CV—90—207

NRDC v. Total Petroleum 5/92
PIRG v. Witco 5/92, DNJ 89—3146
Hawaii's Thousand Friends v. C&C Honolulu (Honouliuli) 6/92, 90—00218- HMF
PIRG v. Circuit Foil 12/92, DNJ 89—5371

Arkansas Wildlife Fed v. Hudson Food 5/93
U.S. v. Lawrence County 5/93, C—l—91—302

4

PIRG v. Essex County 6/93, DNJ 92—4465

TN. Environmental Council v. Dana 4/94, 1—92-0074

Friends of the Earth v. Gaston Recycling 1/95, DSC 3—92—2574—0
Stevens v. McGinnis, Inc., et al, 2/95, C—l—93—442
Save Our Beaches v. C&C Honolulu (Kaneohe/Kailua) 3/95, 92—00263 DAE

City of Independence, Mo. v. Amoco 8/96
California Sport Fishing Alliance v. El Dorado 9/96, CV—S—95—699

SF Bay Keeper v. Dow Chemical Co., 9/98, C97—0l988
American Canoe Association v. Green Valley—Greenwood PSD, City of St. Albans and Dunbar PSD, WVA 10/98, 97—0949

Interfaith Community Organization v. Shinn et al., 2/00, 93—4774, 94—3434, 9 4—37 93
U.S. v. Rapanos et al., 9/00, 94—CV—70788DT
American Littoral Society v. Rahway Valley Sewerage Authority 10/00, UNN 163—9 8

American Canoe Association v. WASA 4/02, 1:99cv02798(HHK)

U.S. et al. v. Hamilton County 4/03, 1—02—107

Northern Plains Resource Council v. Fidelity Exploration and Production Company 7/04 CV 00-105-BLG-SHE

Adams et al. v. Teck Cominco Alaska Inc., 2/05, A04-49 CV (JWS)

In re: Flood Litigation (1/06), CV 02-C-797, Upper Guyandotte Watershed (Judge Hutchison)
Pierre Hodgins v. Carlisle Engineered Products, Inc. (1/06), 1:02CV1454
Office of the District Attorney 10th Judicial District of Colorado et al. v. Colorado Springs Utility (8/06) CV-019994-WBM-BDD

Assoc. of Irritated Residents v. C&R Vanderham Dairy, et al. (6/07) 1:05-CV-01593-OWW-SMS

Assoc. of Irritated Residents v. South Lakes Dairy, et al. (2/08) 1:05-CV-01593-OWW-SMS 1:05-CV-00707-OWW-SMS
American Canoe Association et al. v. City of Louisa Water and Sewer Commission et al., (3/08), 01-99
Humboldt Baykeeper et al. v. Union Pacific Railroad et al. (5/08) C 06-02560 JSW WDB

5