## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DL, *et al.*,                                          )
                                                       )
      Plaintiffs,                               )
                                                       )
      v.                                        )      **Civil Action No. 05-1437 (RCL)**
                                                       )
DISTRICT OF COLUMBIA, *et al.*,                        )
                                                       )
      Defendants.                               )
_____)

## MEMORANDUM OPINION

Now before the Court is plaintiffs' motion [110] for attorneys' fees and expenses. Upon consideration of the motion, the opposition, the reply, the entire record herein, and applicable law, the motion will be GRANTED in part and DENIED in part for the reasons set forth below.

## I.    BACKGROUND

This case is a class action on behalf of disabled pre-school children in Washington, D.C. The plaintiffs allege that defendants have failed to identify, locate, evaluate, and offer special education and related services in violation of 42 U.S.C. § 1983, the Individuals with Disabilities and Education Act.

On December 28, 2005, plaintiffs served defendants with plaintiffs' first set of requests for production of documents. After the defendants objected to numerous production requests, the plaintiffs filed a motion to compel. Following the Court's class certification of the plaintiffs' action, the Court denied the motion to compel without prejudice and ordered the parties to consider the impact of the decision on class certification and meet and confer, in person, through

counsel, to seek and resolve any remaining differences.  (Docket No. [59].)  Following further

requests for the production of documents and the plaintiffs' numerous unsuccessful attempts to

get the defendants to comply with their discovery obligations, the plaintiffs filed a second motion

to compel.

On June 27, 2008, the Court granted in part and denied in part[1] plaintiffs' motion to

compel plaintiffs' first, second, and third requests for production of documents and plaintiffs'

first set of interrogatories and directed plaintiffs to file a request for an amount of reasonable

attorneys' fees and expenses incurred in filing plaintiffs' motion.   (Docket [108] at 5.)  The

Court found that the District's objections to discovery requests were "almost exclusively

unfounded," that its objections were not "substantially justified," and that the District had

displayed a pattern of "tardy and piecemeal disclosure."  (Mem. Op. [107] at 15, 19.)  The Court

also found that Federal Rule of Civil Procedure 37(a)(5)(A) mandates that the plaintiffs be

awarded reasonable attorneys fees and costs in this case.  (*See id.* at 18.)

The plaintiffs' fee request is currently before the Court.  Plaintiffs request $287,146.17 in

fees and expenses for their counsel's work and expenses negotiating discovery, researching and

drafting the two motions to compel, and preparing this fee petition.  After reviewing the briefs,

the time records, and the District's objections, the Court finds that a total fees and expenses

award of $114,319.42 is appropriate and reasonable in this case.

---

[1]The Court "substantially grant[ed] plaintiffs motion in its entirety."  (Docket [107] at 19.)  The Court agreed that the defendants had to comply with every aspect of the plaintiffs' discovery requests with two exceptions: (1) the Court held that the District did not have to do an individualized search of lead abatement data, it only had to do a search for aggregate data (*Id*. at 11–12); and (2) the Court held that discovery is not an appropriate time to obtain an opponents' witness list, as plaintiffs had requested.  (*Id*. at 17.)

II.     <u>ANALYSIS</u>

    A.     **Applicable Law**

Federal Rule of Civil Procedure 37(a)(5) states that if a motion to compel "is granted—or

if the disclosure or requested discovery is provided after the motion was filed—the court must,

after giving an opportunity to be heard, require the party or deponent whose conduct necessitated

the motion . . . to pay the movant's reasonable expenses in making the motion, including

attorney's fees."  "Under Rule 37, the district court has broad discretion to impose sanctions for

discovery violations" and to determine what sanctions to impose.  *Bonds v. District of Columbia*,

93 F.3d 801, 807 (D.C. Cir. 1996).  The purpose of the rule is "not merely to penalize those

whose conduct may be deemed to warrant such a sanction, but to deter those who might be

tempted to such conduct in the absence of such a deterrent."  *Nat'l Hockey League v. Metro.

Hockey Club, Inc.,* 427 U.S. 639, 643 (1976).  Accordingly, awarding attorneys' fees to the

plaintiffs in this case is not only warranted, but required by the language of Rule 37(a)(5).[2]

    The initial estimate for attorneys' fees is calculated by "multiplying the number of hours

reasonably expended on the litigation times a reasonable hourly rate."[3]  *Blum v. Stenson*, 465

U.S. 886, 888 (1984).  A strong presumption exists that the product of these two variables—the

"lodestar figure"—represents a reasonable fee.  *Pennsylvania v. Del. Valley Citizens' Council for

Clean Air*, 478 U.S. 546, 565 (1986).

---

    [2]Defendants did not dispute plaintiffs' statement that the attorneys' fees statutory cap in the Individuals with Disabilities Education Act does not apply in the Rule 37 context.

    [3]This Court has previously observed that "[a]lthough this [lodestar] idea is simple in theory," its focus on the billable hour "creates the loathsome task of wading through pages of time entries to determine compensation."  *United States, ex rel. Miller v. Bill Harbert Intern. Const., Inc.,* 2009 WL 481644 at *2, n.9 (D.D.C. February 26, 2009).

## B.       Reasonable Rate

The Court first must determine the rates that will apply to plaintiffs' hours.  Plaintiffs and defendants agree that an "updated *Laffey* matrix" should supply the rates that will apply to the attorneys' hours.  *See Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983).  The parties disagree as to which version of the *Laffey* matrix should apply, however.  "While use of the *Laffey* Matrix has been upheld by our Circuit since 1988, there are two different versions of it used as proof of the prevailing market rates in federal court litigation in the District of Columbia."  *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 155 (Kessler, J.) (D.D.C. 2006).  The version of the matrix advocated by the plaintiffs is updated by using "the legal services component of the CPI [Consumer Price Index] rather than the general CPI."  *Id*. at 156.  The matrix advocated by the defendants is maintained by the Civil Division of the United States Attorney's Office and "calculates the matrix rate for each year by adding the change in the overall cost of living, as reflected in the United States Consumer Price Index for the Washington, D.C. area for the prior year."  *Id*.  In other words, the updated *Laffey* matrix based on the legal services index has the advantage of being specifically targeted at legal services, while the USAO index has the advantage of being specifically targeted at the Washington, D.C. area.  And, of course, the *Laffey* matrix advocated by the plaintiffs results in higher rates.

Although the Circuit has not expressed a preference regarding the matrix that should be used, a survey of the district court cases in this Circuit demonstrates that because the fundamental attorneys' fees question is whether or not a fee award is "reasonable," the Court can

use its discretion in applying the matrix that results in the most reasonable award.[4]  For example,

one member of this Court has applied the updated *Laffey* matrix based on the legal services

index, stating that it is "more accurate" because it is "based on increases/decreases in legal

services rather than increase/decreases in the entire CPI which includes price changes for many

different goods and services." *Smith v. District of Columbia*, 466 F. Supp. 2d at 156.  This Court,

however, recently held that the legal services matrix reflects *national* inflation trends, while the

USAO matrix accounts for price inflation within the local community, a crucial distinction

because the Court of Appeals and the Supreme Court have both emphasized that the lodestar

should focus on the relevant community.  *Miller v. Holzmann*, 575 F. Supp. 2d 2, 17 (D.D.C.

2008) (Lamberth, J.) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Covington v.

District of Columbia*, 57 F.3d 1101, 1108 (D.C. Cir. 1995)).

Other judges, while acknowledging that applying the legal services *Laffey* index is

discretionary, have also not applied the legal services index matrix for various reasons.  For

example, the Court in *Muldrow v. Re-Direct, Inc.*, declined to award *Laffey* rates based on the

legal services index despite the attorneys' exceptional skill, experience, and reputation because

the work was done in a "relatively straightforward negligence suit."  397 F. Supp. 2d 1, 4

(D.D.C. 2005) (Huvelle, J.).  Similarly, in *American Lands Alliance v. Norton*, the Court stated

that "heightened complexity" was required to depart from the standard *Laffey* matrix.  525 F.

Supp. 2d 135, 149 (D.D.C. 2007) (Walton, J.)  That Court declined to depart from the standard

---

[4]Indeed, the Circuit itself has suggested that the trial court should have discretion in
determining the appropriate rates.  *See Covington v. District of Columbia*, 57 F.3d 1101,1109
(D.C.  Cir. 1995) ("Plaintiffs may point to such evidence as an updated version of the *Laffey*
matrix or the U.S. Attorney's matrix, or their own survey of prevailing rates in the community.").

matrix despite work that included a review of the administrative record, drafting a complaint, and drafting a motion for summary judgment in an Endangered Species Act case, which the Court stated was "no small feat." *Id*.

In this case, the Court also declines to depart from the standard (USAO) *Laffey* matrix.[5] In addition to the fact that the USAO matrix is more in line with precedent because it is based on the local community, *see supra*, the work to be compensated in this case was not particularly complex. Counsel's tasks included drafting discovery motions to compel, negotiating with the District in a discovery dispute, and drafting a fee petition. Although the attorneys for plaintiffs have deftly performed their tasks, a discovery dispute is not the type of complex work that gives rise to use of the enhanced *Laffey* matrix. Much like the attorneys in *American Lands Alliance*, plaintiffs' attorneys in this case have not justified the use of the enhanced *Laffey* matrix by showing the nature and complexity of the work; they simply argue that the enhanced matrix is more accurate. *Id*. at 150. However, the case law in this Circuit is not so conclusive, and, in fact, in the typical case the standard *Laffey* matrix has garnered approval. *See id*. at 149 (cataloguing cases that have approved the standard *Laffey* matrix).

### C.____Reasonable Hours

After determining that the USAO matrix should supply the relevant rates, the Court must determine whether or not the requested hours are reasonable. A fee petitioner must submit

---

[5]The USAO matrix rates (often used when attorneys do not have established billing rates) are as follows: $465 an hour for an attorney with 20 or more years of experience, $410 for 11–19 years, $330 for 8–10 years, $270 for 4–7 years, and $225 for 1–3 years. (Pl.'s Ex. 13, Docket [135–4].) Accordingly, Terris, Pravlik & Millian LLP attorneys Bruce Terris, Kathleen Millian, and Carolyn Smith Pravlik received compensation at $465 an hour, S. Shina Majeed at $330 an hour, Alexander Karam and Janice Gorin at $270 an hour, and Emily Benfer at $225 an hour. Margaret Kohn and Jeffrey Gutman received compensation at $465 an hour.

documentation supporting its fee request, and the documentation must be sufficiently detailed to permit the Court to make a determination of whether the claimed hours are justified. *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The district court can exercise discretion in reducing the fee award by specific amounts in response to specific objections. *Donnell v. United States*, 682 F.2d 240, 250 (D.C. Cir. 1982). The Court can also reduce fees "by a reasonable amount without providing an item-by-item accounting." *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). In this case, the plaintiffs have provided substantial time records, and have also included purported justifications for the high fees in this case. Indeed, one reason the fees were so high in this case was because of the District's obstinance and "tardy and piecemeal" production. For example, on the eve of the plaintiffs' deadline to file the second motion to compel, the defendants produced over 600 pages of responsive documents. Due to the late production, the plaintiffs were forced to seek an extension of time and "make substantial edits to a brief that was otherwise ready for filing on the deadline." (Pl.'s Mot. [110] at 3.) In addition, much of the "negotiation fees" billed by the plaintiffs were for hours spent writing letters to the District urging them to comply with their discovery requirements; many of these letters received no response. (*See* Pl.'s Mot [110] at 3.) Nevertheless, even taking into account the District's conduct, and even taking into account the plaintiffs' voluntary reduction of of $40,713.05[6], the plaintiffs' fee request is excessive for the amount of work produced and the nature of the dispute and also includes numerous categories of non-compensable time.

### 1.        Non-Compensable Time

---

[6] *See* docket [110-3], Terris Aff. ¶ 9.)

7

First, the District argues that the plaintiffs should only be compensated for its work on the second motion to compel, not for its work on the first motion to compel, which was dismissed without prejudice.  This argument has merit, under the explicit language of Rule 37(a)(5), which only awards fees if the motion to compel is granted or if the disclosure or requested discovery is provided after the motion to compel is filed.  The Rule also requires that in the event fees are awarded the Court make a determination that the opposing party's nondisclosure was not substantially justified.

With regard to the plaintiffs' first motion to compel, it was denied without prejudice. Much of the District's refusal to turn over class documents in response to the first motion to compel was also, if not correct, at least substantially justified because the Court had not yet certified the case as a class action. Accordingly, much of the plaintiffs' fees with regard to the first motion to compel are not recoverable.

Nevertheless, some of the research and writing regarding plaintiffs' first motion to compel was still relevant and used in plaintiffs' second motion to compel.  The District acknowledges that "it very well might be that some of the time plaintiffs' spent on [the first] motion may have supported the motion that they were ultimately successful on . . . ."  (Defs.' Opp'n 4.)  However, the District asserts that there is no way to determine how much work was relevant and therefore fees for all work on the first motion to compel should be denied.  In contrast to the District's claim, the Court can estimate how much work on the first motion was relevant to the second motion by doing a side-by-side comparison, with the help of the plaintiffs' attorney declaration.  (*See* Pl.'s Reply [135-3] at 6–9.)  From the Court's review, it appears that approximately 25% of the plaintiffs' initial motion to compel and reply to the first motion to

compel was relevant to the second motion to compel.[7]   This work was used to help draft the second motion to compel, and the plaintiffs should not be denied this compensation merely because they performed the work at an earlier time.   Accordingly, plaintiffs will be awarded 25% of their fees for researching and drafting the first motion to compel.

The reduction for time spent on the first motion to compel also applies to time spent negotiating document production.   The District states that it "does not assert that effort spent attempting to resolve discovery matters without resort should not be recoverable here." (Defs.' Opp'n at 3–4.)   The Court will therefore award fees for plaintiffs' attempts to resolve the discovery disputes.   *See also Whatley v. District of Columbia*, 224 F. Supp. 2d 62, 65 (D.D.C. 2002) (granting fees incurred in good faith negotiations that were aimed at avoiding getting the Court involved in a discovery dispute).   However, as with the work on the actual motions, the District points out that the plaintiffs should not be compensated for the bulk of their work negotiating the first motion to compel.    The Court agrees and therefore will reduce plaintiffs' total negotiating fees by 30%.[8]

---

[7]Approximately 8 out of 24 pages were dedicated to the fact that plaintiffs are entitled to discovery of documents pre-dating 2003 an issue that the plaintiffs ultimately prevailed on.   In addition, in the reply brief, 5 out of 22 pages were directly relevant to the pre-2003 document issue, while the plaintiffs also included other details of the defendants' discovery missteps that were later relevant in the second motion to compel.  (*See* docket entries [41] and [50].) Plaintiffs acknowledge that the "much longer section [of their first motion to compel] regarding class certification issues was largely irrelevant" following the Court's denial of the first motion. (Docket [135-3], Supp. Aff. of Terris at ¶ 17(a).)

[8]The plaintiffs spent approximately 61 of the 101 negotiation hours on the second motion to compel. (Pl.'s Reply at 15–16.) This would equate to a 40% reduction, but the Court awards plaintiffs an additional 10% to reflect a portion of the time spent negotiating issues with regard to the first motion to compel in which the District's position was not substantially justified and that the plaintiffs later had to renew the issue in a second motion to compel.  (*See supra* at 8) (approximately 25% of the work on the first motion to compel was relevant to the second motion

Finally, the Court must subtract the fees for time spent on issues on which the plaintiffs did not ultimately prevail.  *See INS v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation.").  With regard to the motions to compel, the Court ultimately concluded that the plaintiffs essentially fully prevailed.  However, with regard to the fee petition, the plaintiffs did not prevail on substantial portions of their fee petition.  Plaintiffs' fee request for time spent on the fee petition is $69,460.95.  (*See* Pl.'s Reply [135-11] at 1.)  However, the Court rejected the plaintiffs' request to use the *Laffey* matrix based on legal services index.[9]  The plaintiffs also did not prevail on their argument that they were entitled to the full fees billed while drafting the initial motion to compel and negotiating the issues surrounding the initial motion to compel.  Additionally, the Court partially agreed with the defendants that the plaintiffs' time entries are vague.  *See infra*.  Finally, the Court finds that 240.7[10] hours generating $70,000 in fees merely to create a discovery dispute fee petition is *per se* unreasonable.[11]  *See, e.g.*, *Fabi Constr. Co. v. Sec'y of Labor*, 541 F.3d 407, 414 (D.C. Cir. 2008) (reducing 236.8 hours of attorney time on fee

to compel).

[9]From the Court's review of the briefs and supporting materials, the plaintiffs spent approximately 33% of their fee petition hours arguing for the updated *Laffey* matrix that was rejected by the Court.

[10]*See* Docket [135-16] at 6; Docket [135-17] at 2–3.  The plaintiffs spent 63.31 hours on the initial brief prior to July 18, 2008.  They then spent an additional 54.41 hours on the initial brief after July 18, as well as 5.78 hours reading the opposition and 117.22 hours working on the reply.

[11]Reviewing the time entries relating to the fee petition also demonstrate excessive research.  For example, on 8/25/08, 8/26/08, and 8/27/08, ARK billed approximately 15.5 hours to researching *Laffey* rates, block billing, and adequate descriptions.  The Court finds this amount of research unreasonable in light of the relatively simple nature of fee petition law in this Circuit.

application by 50% because nearly six 40-hour weeks of attorney time is unreasonable);

*American Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 331 (D.C. Cir. 2004) (stating that 118

hours spent compiling the fee application was excessive and reducing fees by 50%).

Accordingly, to account for the fact that the plaintiffs did not prevail on the majority of their

arguments and billed excessively for their work on the fee petition, the Court will reduce the

requested $69,460.95 for preparing the fee petition by 75%.

### 2.      Across-the-Board Reductions

After the Court has subtracted out non-compensable time, the Court can conduct further

across-the-board percentage reductions as appropriate when a large number of entries suffer from

one or more deficiencies.  *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir.

2004).  Defendants state that the first defect in plaintiffs' time entries is the use of block billing,

which makes "it impossible for the court to meet its responsibility of determining with a high

degree of certainty that the hours billed were reasonable."  *Role Models v. Brownlee*, 353 F. 3d

962, 970 (D.C. Cir. 2004).  Block billing is most egregious when the fee petitioner has only

prevailed on a portion of their claims; block billing makes it impossible for the Court to separate

out the constituent tasks and decide how much to award the petitioner.  Here, the plaintiffs

prevailed on substantially all of their arguments regarding the second motion to compel.

Accordingly, block billing is not a serious problem with regard to plaintiffs' initial billing records

that do show some minor instances of block billing.[12]  As for the fee petition billing hours, for

which block billing would present a significant problem, plaintiffs apportioned the amount of

---

[12]*See* Docket [110-8].  Additionally, the instances of block billing do not appear nearly as
egregious as those that have been chastised previously by this Court.

time they spent on each task, making it easy for the Court to review their records.[13]  The Court

will not make an across-the-board reduction for block billing.

Defendants also object that the billing entries suffer from inadequate detail.  (Defs.'

Opp'n 7.)  Defendants object to entries such as 26.88 hours billed to "research and draft motion

to compel"; "draft motion to compel"; and "edit motion to compel."  (*Id*.)  The plaintiffs respond

that these time entries are sufficiently detailed to permit recovery.  Indeed, there is some support

for the plaintiffs position, as "there is certainly no need for [an attorney] to itemize every case she

looked up or every paragraph she labored over.  Trial courts must recognize how lawyers work

and how they notate their time."  *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158

(D.D.C. 2006) (Kessler, J.).  However, as that opinion recognizes, "the ultimate inquiry is

whether the total time claimed is reasonable."  *Id*.  Accordingly, when a Court is "outraged by a

fee petition that [is], by any standard, extraordinarily high," it can scrutinize the fee petitioner's

time records with a more demanding eye.  *See id*.

For that reason, in *Role Models America, Inc. v. Brownlee,* the D.C. Circuit reduced a

request of approximately $345,000 in fees and expenses to $83,236.  353 F. 3d at 968, 975.  In

that opinion, the Court stated that in light of such a high request for a limited amount of work

produced on a relatively run-of-the-mill matter, entries such as "research and writing for

appellate brief" were insufficient for lack of adequate detail.  *See id*. at 972.

This case possesses many of the same characteristics as *Role Models*.  The motion to

compel arose out of a "garden-variety" discovery dispute.  *See id*. at 969.  No legal issues

---

[13]*See e.g.*, Docket [135-13] at 7, ARK, 8/28/2008, "Revise motion for extension and file via ECF (20 min); confer with CSP re adequacy of time records issue (14 min); conduct legal research re market rates (1 hr 5 min)".

presented in the discovery dispute were particularly novel or complex.  It is unclear to the Court

how discovery negotiations, a motion to compel, and a fee petition presenting the claim for those

attorneys' fees could have resulted in over $200,000 in fees.  In other words, the Court finds the

amount of the fee request unreasonable on its face and, like the Court in *Role Models*, is not

convinced otherwise by generic descriptions such as "draft reply brief."[14]  Accordingly, the Court

will further reduce the plaintiffs' lodestar by 10% for vague time entries.  *See also Miller v.

Holzmann*, 575 F. Supp. 2d 2, 36 (D.D.C. 2008) (reducing lodestar by 10% for vague time

entries).

       **D.**     **Summary of Fees and Fee Reductions**

      Plaintiffs requested $287,146.17 in fees and expenses for their counsel's work.  The

Court found that this request was subject to numerous reductions.  First, the Court determined

that the USAO *Laffey* matrix would supply the relevant rates because the work involved was not

complex enough to warrant the enhanced *Laffey* matrix advocated by the plaintiffs.  Next, the

Court found that plaintiffs were only entitled to a small portion of the work on their first motion

to compel because that motion was made before class certification and was denied without

prejudice.  Therefore, the Court will only award 25% of the fees requested relating to the first

motion to compel.  With regard to the negotiation fees, the Court has awarded 70% of the

requested amount, taking into account that the negotiation fees with regard to the first motion to

compel should largely not be compensable. Finally, the Court reduced the fee petition fees by

75% to reflect the excessiveness of the time charged and the issues upon which the plaintiffs did

not ultimately prevail.  After subtracting out the issues that are not compensable, the Court

---

[14] *See* Docket [135-13] at 7–8.

13

scrutinized all other fees and expenses.[15]  The Court found that a 10% reduction was warranted

for vague time descriptions.  Following all applicable reductions, the plaintiffs' total award for

fees and expenses is $114,319.42.  (*See* Appendix 1.)  The Court finds that in light of the

attorneys' skill and experience, and the nature of the work involved, that this amount is

reasonable.


III.    **CONCLUSION**

Upon consideration of the plaintiffs' motion [110] for attorneys' fees and expenses, the

opposition, and the reply, applicable law, and the entire record herein, the motion will be

GRANTED in part and DENIED in part.  Plaintiffs will be awarded a total of $114,319.42.

A separate order shall issue this date.

SO ORDERED.


Signed by Chief Judge Royce C. Lamberth on March 11, 2009.

---

[15]The District did not object to plaintiffs' expenses and they were not reduced.

14

# Summary of Fees and Expenses[7]

| | | Fees Using USAO Rates |
|---|---|---|
| **Terris, Pravlik & Millian, LLP** | Negotiation re Motions to Compel | $28,804.85 |
| | 30% reduction to all negotiation work[1] | ($8,641.45) |
| | Work on First Motion to Compel | $41,812.78 |
| | 75% Reduction for work on First Motion to Compel[2] | ($31,359.59) |
| | Work on Second Motion to Compel | $106,760.10 |
| | Plaintiffs' voluntary reduction to Second Motion to Compel work | ($31,817.52) |
| | Fees work | $69,460.95 |
| | 75% reduction to all fees work[3] | ($52,095.71) |
| **Margaret A. Kohn** | First Motion to Compel | $279.00 |
| | 75% reduction to all work on First Motion to Compel[4] | ($209.25) |
| **Jeffrey S. Gutman** | First and Second Motion to Compel | $1,534.50 |
| | 65%[5] reduction to all work | ($997.26) |
| | | |
| **Subtotal Fees** | | $123,531.40 |
| | 10% global reduction[6] | ($12,353.14) |
| | | |
| **Total Fees** | | $111,178.26 |
| | | |
| | | |
| | | |
| **Total Expenses** | | $3,141.16 |

**Total Award: $114,319.42**

---

[1] (Mem. Op. at 9.)
[2] (Mem. Op. at 8.)
[3] (Mem. Op. at 10.)
[4] (Mem. Op. at 8.)
[5] This figure estimates the appropriate reduction for Gutman's work on the First Motion to Compel.
[6] (Mem. Op. at 12.)
[7] Requested figures were taken from Docket [135-11].