# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
                                          )
DL,[1] *et al.,*                          )
    **Plaintiffs,**    )
                                          )
    **v.**              )      **Civil Action No. 05-1437 (RCL)**
                                          )
**DISTRICT OF COLUMBIA,** *et al.,*       )
    **Defendants.**     )
                                          )
_____)


## MEMORANDUM OPINION

Plaintiffs, a class of disabled 3- to 5-year-olds in the District of Columbia, bring this action against defendants the District of Columbia, Michelle Rhee in her official capacity as Chancellor of the District of Columbia Public Schools, and Kerri Briggs in her official capacity as the current District of Columbia State Superintendent of Education.[2] Plaintiffs allege that defendants denied them a free appropriate public education ("FAPE"); failed to identify, locate, and evaluate them as qualified disabled children ("Child Find" duties); and failed to provide them a smooth and effective transition from assistance under Part C of the IDEA to assistance under Part B of the IDEA by their third birthdays, in violation of the Individuals with Disabilities and Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), the Due Process Clause, U.S. CONST. amend. V, and District of Columbia law.

---

[1] Minors are identified by their initials. D.D.C. LCvR 5.4(f)(2).

[2] Plaintiffs' Amended Complaint originally named as defendants the District of Columbia and Clifford B. Janey in his official capacity as Superintendent of District of Columbia Public Schools. (Am. Compl. 1.) On December 11, 2007, the Court ordered [87] that Michelle Rhee in her official capacity as Chancellor of District of Columbia Public Schools and Deborah Gist in her official capacity as District of Columbia State Superintendent of Education should substitute for defendant Clifford B. Janey. Kerri Briggs automatically substituted for Deborah Gist when she became State Superintendent of Education. *See* FED. R. CIV. P. 25(d).

Before the Court are Defendants' Motion [177] for Summary Judgment, Plaintiffs' Motion [178] for Partial Summary Judgment on Liability, and Plaintiffs' Consent Motion [189] for Order Scheduling Oral Argument on Pending Summary Judgment Motions. Upon consideration of Defendants' Motion for Summary Judgment, the opposition [179] thereto, the reply brief [185], applicable law, and the entire record in this case, the Court will grant in part and deny in part the motion for the reasons set forth below. Upon consideration of Plaintiffs' Motion for Partial Summary Judgment on Liability, the opposition [180] thereto, the reply brief [183], applicable law, and the entire record in this case, the Court will grant the motion for the reasons set forth below. Upon consideration of Plaintiffs' Consent Motion [189] for Order Scheduling Oral Argument on Pending Summary Judgment Motions, the Court will deny the motion for the reasons set forth below.

I.    **BACKGROUND**

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States, as well as the District of Columbia, are eligible for federal funding under this statute if they comply with its terms.

Plaintiffs are a class of disabled 3- to 5-year-olds in the District who allege that they have been denied the benefits of the IDEA. The Court previously ordered that plaintiffs' class consists of

> All children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

([58] Order, Aug. 25, 2006.) Plaintiffs have alleged systematic failures by defendants, claiming that defendants have failed to provide a free appropriate public education to a large number of qualifying children, have failed to find all of the disabled children in the District, have failed to ensure smooth transitions for children within the system, and have done all of this in bad faith or with gross misjudgment.

In their First Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint") [46-2], plaintiffs brought suit against defendants on five separate claims, seeking injunctive and declaratory relief. The First Claim alleged a violation of 42 U.S.C. § 1983, as a means of enforcing the IDEA. The Second Claim alleged a violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). The Third Claim alleged a violation of § 1983, as a means of enforcing the Due Process Clause of the Fifth Amendment to the U.S. Constitution. The Fourth and Fifth Claims alleged violations of District of Columbia law, D.C. MUN. REGS. tit. 5, §§ 3000.1, 3002.1(a), 3002.1(d), and 3002.3(a).

In several orders dated August 25, 2006, the Court, *inter alia*, held that plaintiffs did not need to exhaust their administrative remedies, because exhaustion was futile. Even if exhaustion was futile, however, the Court found that plaintiffs had properly exhausted their administrative remedies. ([53] Order, Aug. 25, 2006.) The Court also certified the plaintiffs' class. ([58] Order.) The parties have completed discovery and have both moved for summary judgment.

## II.    LEGAL STANDARD

The Court will treat both defendants' and plaintiffs' motions as motions for summary judgment. Plaintiffs argue that defendants' motion is more akin to a motion to dismiss plaintiffs' claims under Rule 12(b)(6) than to a motion for summary judgment under Rule 56. (Pls.' Opp'n at 1.) Defendants' failure to raise this defense in their answer, however, would not waive their

right to file a 12(b)(6) motion to dismiss now. FED. R. CIV. P. 12(h)(2). But the Court need not resolve whether this is more like a Rule 12(b)(6) or Rule 56 motion. Even if this were a Rule 12(b)(6) motion, the Court can treat it as a Rule 56 motion for summary judgment, because both parties have had the opportunity to present matters outside the pleadings in this motion. FED. R. CIV. P. 12(d).

The Court will grant a motion for summary judgment where a party shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). There is a genuine issue as to a material fact if "reasonable minds could differ" as to that fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), *cited in Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex*, 477 U.S. at 323. The Court will believe the evidence of the non-moving party and will draw all reasonable inferences from the record in the non-moving party's favor. *Anderson*, 477 U.S at 255. It is not enough, however, for the non-moving party to show that there is merely "*some* alleged factual dispute": the fact must be "material." *Id.* at 247 (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Thus, summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. "In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." D.D.C. LCvR 7(h)(1).

## III.    <u>DISCUSSION</u>

## A. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED IN PART AND DENIED IN PART.

Defendants do not raise any factual disputes in their motion. Accordingly, the Court will decide whether defendants are entitled to judgment as a matter of law as to the legal disputes raised by defendants.

### 1. First Claim: Plaintiffs Cannot Bring Suit Under § 1983 to Enforce the IDEA.

In their Amended Complaint, plaintiffs sued under § 1983 to enforce the IDEA. Plaintiffs do not have a right to sue under § 1983 to enforce the IDEA. Rather, plaintiffs must sue directly under the IDEA. Defendants argue that the U.S. Supreme Court's decision in *Rancho Palos Verdes* forecloses suit under § 1983, because the IDEA creates a comprehensive enforcement scheme that is incompatible with § 1983 relief. Plaintiffs argue that the broad relief that plaintiffs request exceeds the type of relief available under the IDEA, so suit under § 1983 is proper. The Court agrees with defendants.

While this case was pending, the Supreme Court decided *Rancho Palos Verdes v. Abrams*, which held that a plaintiff may not sue under § 1983 when there is in place a statutory "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." 544 U.S. 113, 120 (2005). The existence of such a scheme indicates that "Congress did not intend [relief under § 1983] for a newly created right." *Id.* "The critical question, then, is whether Congress meant the judicial remedy expressly authorized by [the IDEA] to coexist with an alternative remedy available in a § 1983 action." *Id.*

In reaching this conclusion, the Supreme Court explained that "to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *Id.* The parties here do not dispute that plaintiffs

are within the IDEA's intended class of beneficiaries. The Court further explained that this showing, however, only creates "a rebuttable presumption that the right is enforceable under § 1983. The defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Id.* In his concurrence, Justice Stevens underscored the "strength" of this presumption in the Court's precedent, rebuttable only in an "exceptional case" that involves "an unusually comprehensive and exclusive statutory scheme." *Id.* at 131 (Stevens, J., concurring). Despite the strength of the presumption, however, defendant has rebutted it. The Court concludes that Congress did not intend relief under the IDEA to coexist with relief under § 1983.

The D.C. Circuit has not decided whether an individual may sue under § 1983 to enforce the IDEA. *See Blackman v. District of Columbia*, 456 F.3d 167, 172 n.6 (D.C. Cir. 2006) ("We have not yet decided whether a section 1983 action can be brought to enforce the FAPE right. . . . Because none of the parties addresses the issue here, we save it for another day . . . ."). There is currently a circuit split on the issue. In light of *Rancho Palos Verdes*, the First, Third, and Ninth Circuits have held that the IDEA is *not* enforceable under § 1983. *See Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 937 (9th Cir. 2007); *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007) (*en banc*); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13 (1st Cir. 2006). The Second Circuit, however, has noted in passing that the IDEA *is* enforceable under § 1983. *See D.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 513 (2d Cir. 2006); *see also Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 63 (2d Cir. 2007). The Court agrees with the majority of circuits to address the issue, including the *en banc* Third Circuit, finding that plaintiffs may not sue under § 1983 to enforce the IDEA.

The IDEA creates a comprehensive enforcement scheme. First, it provides administrative remedies, which include "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A), followed by the opportunity for an "impartial due process hearing":

> Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

§ 1415(f)(1)(A). The Court held previously that plaintiffs did not have to exhaust these administrative remedies before bringing a civil claim, because exhaustion would be futile. ([53] Order.) Second, the IDEA provides a "right to bring civil action" in district court:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

§ 1415(i)(2)(A). Plaintiffs may bring an action under this subsection.

§ 1415(i)(2)(A) provides a private cause of action in a district court to any "party aggrieved" by the administrative findings. Generally, a "party aggrieved" is a party who has exhausted his administrative remedies. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1236 (10th Cir. 2009); *Pedroza v. Los Alamitos Unified Sch. Dist.*, 302 F. App'x 608, 609 (9th Cir. 2008). Because the Court previously ruled that exhaustion is futile, however, plaintiffs are a "party aggrieved" within the meaning of the statute. The IDEA accords independent, enforceable rights to parties aggrieved. The Supreme Court found that the IDEA accords "independent, enforceable rights" to parents of children covered by the IDEA,

because the parents are "parties aggrieved." *See Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526, 531 (2007). The Supreme Court clarified that the IDEA provides the same rights to parents as it does to children. *Id.* at 531. Plaintiffs, therefore, may bring a private cause of action in this Court under § 1415(i)(2)(A) to enforce the IDEA.

The Supreme Court has held that a plaintiff may not bring suit under § 1983 to enforce the predecessor of the IDEA—the Education of the Handicapped Act (EHA). *Smith v. Robinson*, 468 U.S. 992 (1984). In so holding, the Court found that the EHA was a "comprehensive scheme" that showed that Congress intended potential plaintiffs to "pursue those claims through the carefully tailored administrative and judicial mechanism set out in the statute." *Id.* at 1009. In *Rancho Palos Verdes*, the Court cited *Smith* favorably: "We have found § 1983 unavailable to remedy violations in two cases: *Sea Clammers* and *Smith*. Both of these decisions rested upon the existence of more restrictive remedies provided in the violated statute itself. *See Smith*, 468 U.S. at 1011-12 (recognizing a § 1983 action 'would render superfluous most of the detailed procedural protections outlined in the statute')." 544 U.S. at 121.

Plaintiffs would likely argue that Congress overruled *Smith* in 1986 when it amended the predecessor of the IDEA to include language now codified at § 1415(l). This subsection, entitled "Rule of construction," reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or *other Federal laws* protecting the rights of children with disabilities . . . .

§ 1415(l) (emphasis added). Under this argument, this subsection would show congressional intent to allow plaintiffs to sue under § 1983 as an "other federal law." This argument may be

supported by the legislative history.[3] Under the Supreme Court's reasoning in *Rancho Palos Verdes*, however, this argument is unavailing. The statute in question in *Rancho Palos Verdes* also contained a "saving clause," which read: "This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided in such Act or amendments." 544 U.S. at 125-26. This statute is similar to the IDEA, because they both state that the comprehensive enforcement scheme does not preclude relief under other federal laws. Just as the Supreme Court found that the statute in question had no effect on claims under § 1983, *id.* at 126, the Court now finds that § 1415(l) of the IDEA has no effect on § 1983. *See A.W.*, 486 F.3d at 803 ("[W]e do not agree that § 1415(l) shows that Congress intended the remedies in the IDEA to complement, rather than supplant, § 1983. Just like the savings clause in *Rancho Palos Verdes*, this provision merely evidences Congress' intent that the claims available under § 1983 prior to the enactment of the Act continue to be available after its enactment."). Furthermore, as discussed above, the Supreme Court cited the *Smith* ruling favorably in *Rancho Palos Verdes*, thus implicitly indicating that § 1415(l) did not overrule *Smith*'s holding.

---

[3] It is unclear whether the Court may use legislative history in this inquiry. Justice Stevens noted in his concurring opinion in *Rancho Palos Verdes* that the majority opinion "assumes that the legislative history of the statute is totally irrelevant." 544 U.S. at 131 (Stevens, J., concurring) (referring to 544 U.S. at 115-27 (Scalia, J., majority opinion)); *see also A.W.*, 486 F.3d at 803 n.14.

Even if the Court were to look at legislative history, is does not necessarily support plaintiffs' argument. Referring to the amended text, now codified at § 1415(l) of the IDEA, the House conference report provides:

> With slightly different wording, both the Senate bill and the House amendment authorize the filing of civil actions under legal authorities other than part B of EHA so long as parents first exhaust administrative remedies available under part B of EHA to the same extent as would be required under the part. . . . The House recedes. *It is the conferees' intent that actions brought under 42 U.S.C. 1983 are governed by this provision*.

H.R. REP. 99-687, at 7 (1986) (emphasis added).

As discussed below, this primary purpose of this amendment was to ensure that plaintiffs could use § 1983 as a remedy for *constitutional* violations, not *statutory* violations.

Plaintiffs argue that the IDEA does not provide the full relief they are requesting and that suit under § 1983 is necessary to grant them that relief. The Court finds this argument unavailing. Plaintiffs state that "[t]he central focus of the Amended Complaint is on allegations relating to the operation of defendants' Child Find system as a whole," (Pls.' Opp'n at 6), and "[t]he type of injunctive relief that plaintiffs seek is broader than the individual relief available under the IDEA's remedial scheme," (*id.* at 7). Plaintiffs essentially argue that defendants have failed to comply with their obligations under the IDEA and that this failure to comply pervades the system. A successful civil action directly under the IDEA, however, will have the same effect as a § 1983 action: both will require the District of Columbia to comply with its obligations under the IDEA. Plaintiffs' argument is a better argument as to why administrative exhaustion is futile, not as to why suit should proceed under § 1983. The Court has already addressed this argument and agreed with plaintiffs that exhaustion would be futile. ([53] Order.)

Finally, as both parties agree, plaintiffs' status as a class is irrelevant to their right to sue under § 1983 or the IDEA. *See* 28 U.S.C. § 2072(b) (providing that the Federal Rules of Civil Procedure "shall not abridge, enlarge, or modify any substantive right"); *see also D.D.*, 456 F.3d at 512 ("Plaintiffs' right to a free appropriate education is unaffected by the fact that they have chosen to assert their claim in a class action pursuant to FED. R. CIV. P. 23.").

The Court notes that even if the Court were to allow suit to proceed under § 1983, the same cap on attorneys' fees would exist under § 1983 as it would under the IDEA. *See Blackman v. District of Columbia*, 456 F.3d 167, 170 (D.C. Cir. 2006) ("[A]n action brought pursuant to 42 U.S.C. § 1983 to enforce IDEA rights is a suit 'under' the IDEA and thus subject to the rider [limiting attorneys' fees].").

Accordingly, the Court will grant in part and deny in part defendants' motion for summary judgment as to plaintiffs' First Claim of their Amended Complaint. The Court will grant it in part insofar as plaintiffs may not proceed under § 1983 to enforce the IDEA. The Court will deny it in part insofar as plaintiffs may proceed directly under the IDEA. Furthermore, the Court will construe the First Claim of plaintiffs' Amended Complaint to state a cause of action directly under § 1415(i)(2)(A) of the IDEA.

### 2. Second Claim: Plaintiffs Cannot Bring Suit Under § 1983 to Enforce § 504 of the Rehabilitation Act.

Defendants argue that plaintiffs cannot bring suit under § 1983 to enforce § 504 of the Rehabilitation Act. (Defs.' Mot. at 7.) Plaintiffs concede this point. (Pls.' Opp'n at 13). Furthermore, this argument is moot, because plaintiffs did not bring suit under § 1983 to enforce § 504. (Am. Compl. at 3.) Rather, they brought suit directly under § 504.

Accordingly, the Court will deny defendants' motion for summary judgment as to plaintiffs' Second Claim under the Amended Complaint. Plaintiffs may proceed directly under § 504 of the Rehabilitation Act.

### 3. Third Claim: Plaintiffs Can Bring Suit Under § 1983 to Enforce the Due Process Clause of the Fifth Amendment.

Defendants argue that plaintiffs cannot bring suit under § 1983 to enforce the Due Process Clause of the Fifth Amendment. (Defs.' Mot. at 6-7.) This argument is unavailing. Plaintiffs may bring suit under § 1983 to enforce the Due Process Clause of the Fifth Amendment.

The Third Circuit *en banc* held that the reasoning of *Rancho Palos Verdes* only applies to the applicability of § 1983 "for violations of *statutory* rights." *A.W.*, 486 F.3d at 797 (emphasis added). "By preserving rights and remedies 'under the Constitution,' section 1415(l) does permit

plaintiffs to resort to section 1983 for *constitutional* violations, notwithstanding the similarity of such claims to those stated directly under the IDEA." *Id.* at 798 (emphasis in original). The Court agrees with the reasoning of the Third Circuit. As discussed above, this explains the reference to § 1983 in the legislative history. When enacting what is now codified at § 1415(l), Congress intended to preserve § 1983 as a "vehicle for redressing violations of constitutional rights." *Id.* The IDEA's comprehensive enforcement scheme does not preclude suit under § 1983 to enforce any constitutional rights.

Accordingly, the Court will deny defendants' motion for summary judgment as to plaintiffs' Third Claim of their Amended Complaint. Plaintiffs may sue under § 1983 to enforce the Due Process Clause.

### 4. Fourth and Fifth Claims: The Court Can Exercise Supplemental Jurisdiction over Plaintiffs' Local Claims.

Defendants argue that the Court should decline to exercise supplemental jurisdiction over the Fourth and Fifth Claims of plaintiffs' Amended Complaint, which arise under local District of Columbia law. Because the Court did not dismiss any of plaintiffs' federal claims, however, defendants' motion will be denied.

The Court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)" when:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). The Court did not dismiss claims over which it has original jurisdiction, and the local claims are part of the same case or controversy as the federal claims. Furthermore, the local claims do not substantially predominate over the federal claims.

Accordingly, the Court will deny defendants' motion for summary judgment as to plaintiffs' Fourth and Fifth Claims of their Amended Complaint.

## B. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT IS GRANTED.

### 1. *Defendants Violated the Individuals with Disabilities in Education Act.*

As discussed above, the Court will construe plaintiffs' Amended Complaint to state a claim directly under § 1415(i)(2)(A) to enforce the IDEA. Specifically, plaintiffs allege that defendants failed to provide plaintiffs with a FAPE, failed to comply with their Child Find duties, and failed to ensure a smooth and effective transition from Part C to Part B, in violation of §§ 1412(a)(1)(A), 1412(a)(3)(A), and 1412(a)(9). (Pls.' Reply at 3.) Plaintiffs have the burden of proving a violation of the IDEA. *See Schaffer v. Weast*, 546 U.S. 49, 51 (2005) (holding that the burden of proving a violation of the IDEA lies on the party seeking relief during the administrative process).

#### a. *Defendants Denied a Free Appropriate Public Education to a Large Number of Children, in Violation of the IDEA.*

##### i. Legal Standard

Under § 1412(a)(1)(a), a state or the District of Columbia is eligible for financial assistance under the IDEA if it meets the condition that: "A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." § 1401(9) of the IDEA defines "FAPE":

The term "free appropriate public education" means special education and related services that—

> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414 (d) of this title.

In their motion, plaintiffs do not attempt to show that defendants "violated a specific class member's right to a FAPE"; rather, "plaintiffs' focus is on the large number of children ages 3 through 5 [that] should have been served, but were not served, by defendants' preschool special education system." (Pls.' Mot. at 7.) The Court will grant summary judgment on this claim if it finds that defendants denied a FAPE to a large number of preschool-aged children in the District of Columbia who were eligible to receive a FAPE under the IDEA.

## ii.  Factual Background

The parties have presented evidence about defendants' compliance with the IDEA through and including the year 2007, largely because data is not available for 2008-10. Because the parties have only conducted complete discovery with regard to data through and including 2007, the Court can only make findings with respect to the data from 2007 and earlier. Even if the Court were to assume that the District of Columbia has made significant strides to comply with its obligations under the IDEA since 2007, which the Court would applaud, that improvement would go to the scope of relief, not to liability. Accordingly, the Court will limit its review of the facts, when necessary, to data through and including the year 2007.

The parties agree that in 2007, "5.74% of children ages 3 through 5 nationwide received special education and related services under Part B of the IDEA." (Pls.' Reply to Defs.' Statement of Disputed Facts ("Disputed Facts Reply") at 2.)

The parties disagree as to plaintiffs' assertion that "based on the city's demographics, more than 6% of preschool-age children residing in the District of Columbia are disabled." (*Id.* at 2.) The Court finds that there is no genuine dispute as to this fact, and plaintiffs' assertion is correct. Dr. Carl Dunst's expert report states that "DCPS should be locating and serving at least 6% of the preschool population in special education." (Pls.' Ex. 4 at 13.) Although, as defendants claim, Dr. Dunst does not use the precise term "disabled," Dr. Dunst's meaning is clear that at least 6% of preschoolers in the District of Columbia qualify for services under the IDEA.

The parties agree that in 2007, the District of Columbia served 2.94% of its 3- to 5-year-olds under the IDEA, which was the lowest rate in the country. (Disputed Facts Reply at 5.) The parties agree that between 1992 and 2007, the District of Columbia served 2-3% of its preschool population each year under the IDEA. (*Id.* at 6.)

The parties disagree as to plaintiffs' initial assertion that "defendants have served approximately half the number of children ages 3 through 5 in the District of Columbia likely to be eligible for preschool special education under part B." (*Id.* at 9.) Defendants agree that based on the data in 2007 and earlier, this is true; defendants only object to post-2007 data. (*Id.* at 9-10.) Plaintiffs clarify that the parties agree that *in 2007*, this fact was true. (*Id.* at 10.) Plaintiffs concede that they do not "intend to make any statements about defendants' current compliance with the IDEA"—that is, compliance post-2007. (Pls.' Reply at 12.)

iii.     Analysis

The Court finds that, at least through and including the year 2007, defendants denied a FAPE to a large number of children aged 3 to 5 years old, in violation of § 1412(a)(1)(a) of the IDEA. The Court declines to rule at this time on defendants' liability since 2007. There is no genuine dispute that defendants only provided a FAPE to approximately half of the 3- to 5-year-

old children in the District who qualified for a FAPE under the IDEA. A denial of services to half of the eligible population constitutes a denial of a FAPE to a large number of children.

Accordingly, the Court will grant plaintiffs' motion for summary judgment on liability as to plaintiffs' FAPE claim under the IDEA.

> b. *Defendants Failed to Comply with Their Child Find Duties, in Violation of the IDEA.*

### i. Legal Standard

To receive financial assistance under the IDEA, a state must also comply with its "Child Find" obligation, requiring that:

> *All children with disabilities* residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, *are identified, located, and evaluated* and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

§ 1412(a)(3)(A) (emphasis added). The evaluation component of the Child Find obligation specifies that the District must conduct an initial evaluation of a child to determine two things: (1) whether he qualifies as a "child with a disability" within a timeframe specified by the state, which the District has provided as "120 days from the date the student was referred for an evaluation or assessment," D.C. CODE § 38-2561.02, and (2) "to determine the educational needs of a child," including "the content of the child's individualized education program." §§ 1414(a)(1)(C), (b)(1)(2)(A). "[E]ither a parent of a child, or a State educational agency, other State agency, or local educational agency may initiate a request for an initial evaluation to determine if the child is a child with a disability." § 1414(a)(1)(A). After the initial evaluation, "the determination of whether the child is a child with a disability . . . and the educational needs of the child shall be made by a team of qualified professional and the parent of the child . . . ." § 1414(b)(4).

ii.    Factual Background

The parties' experts agree that a comprehensive Child Find system must include:

a definition of the target population, a widespread public awareness campaign, a referral process that fosters the timely identification of children, screening and evaluation of children who may be eligible for services, an accurate eligibility determination, tracking systems to ensure that all children who are referred are screened, evaluated, and receiving services, and an interagency coordination effort between state and local agencies (citing OSEP online definition of "Child Find," available at http://www.childfindidea.org).

(Pls.' Ex. 9 at 1; *see also* Pls.' Ex. 4 at 5-6.)

The parties agree that between 2000 and 2009, "the systems in place to serve the birth-to-five population in the District of Columbia were inadequately designed, supported, and facilitated across many years." (Disputed Facts Reply at 23-24.) The parties agree that, at least through and including the year 2007, "defendants' public awareness and outreach efforts were unlikely to result in a substantial increase in the number of referrals to preschool special education." (*Id.* at 24-25.) The parties agree that, at least through and including the year 2007, "defendants' refusal to accept and act on referrals made by primary referral sources was impeding identification of children eligible for preschool special education." (*Id.* at 25-26.) The parties agree that, at least through and including the year 2007, "[d]efendants have pursued the same Child Find activities for several years without achieving a significant increase in the number of preschool-age children served under Part B." (*Id.* at 28-29.)

Plaintiffs assert that "[f]rom 2000 through 2008, 62.02% of all children ages 3 through 5 received an eligibility determination within 120 days of referral." (*Id.*) Plaintiffs further assert that "[f]rom 2000 through 2008, only 65.80% of children ages 3 through 5 deemed eligible for special education received an eligibility determination within 120 days of referral." (*Id.*) Defendants challenge these two assertions solely on the basis that they are based on Dr. Cupingood's testimony, which they argue is inadmissible. The Court held in a separate order

issued this same date, however, that Dr. Cupingood's testimony is admissible as expert testimony. The Court therefore agrees with plaintiffs' assertions.

> The parties agree that
>
> > [o]n March 16, 1998, [the U.S. Office of Special Education Programs ("OSEP")] entered into a Compliance Agreement with DCPS in order to bring it into full compliance with the applicable requirements of law as soon as feasible . . . . According to this Agreement, DCPS was required, *inter alia*, to ensure and document that no later than three years after the effective date of this Agreement an initial evaluation that meets the [requirements of the IDEA] is completed for all children with disabilities.

(*Id.* at 13.) The parties agree that "[i]n 2001, OSEP determined that DCPS had not met the requirement for timely evaluations under the Compliance Agreement," so "OSEP designated DCPS as a 'high risk grantee' and attached Special Conditions to its [Federal Fiscal Year ("FFY")] 2001 grant under part B . . . [including] requirements to ensure that DCPS conducted timely initial evaluations." (*Id.*) The parties agree that "[i]n each year that followed, OSEP cited defendants for their failure to comply with the Special Condition related to timely initial evaluations and extended that Special Condition into the following fiscal year," through and including FFY 2008. (*Id.* at 14.) The parties agree that "[f]or FFY 2007, defendants reported a 56% compliance rate with the Special Condition related to timely initial evaluations." (*Id.* at 14.)

iii.     Analysis

The Court finds that, at least through and including the year 2007, defendants failed to comply with their Child Find duties, in violation of § 1412(a)(3)(A) of the IDEA. The Court declines to rule at this time on defendants' liability since 2007. There is no genuine dispute that defendants' attempts to find disabled children in the District through public awareness, outreach, and even direct referrals were inadequate. Further, there is no genuine dispute that defendants actually failed to find these disabled children, proven by the large number of children to whom defendants denied a FAPE. Finally, there is no genuine dispute that defendants' initial

evaluations were inadequate, proven by the low number of 65.80% of children that received a timely evaluation and by OSEP's annual determinations that the District did not meet the requirement for timely evaluations.

Accordingly, the Court will grant plaintiffs' motion for summary judgment on liability as to plaintiffs' Child Find claim under the IDEA.

### c. Defendants Failed to Provide Plaintiffs with a Smooth and Effective Transition from Part C to Part B, in Violation of the IDEA.

#### i. Legal Standard

Part C of the IDEA provides assistance for disabled children from birth to age 3, and Part B of the IDEA provides assistance for disabled children from age 3 to age 22. To receive financial assistance under the IDEA, a state must ensure that:

> Children participating in early intervention programs assisted under subchapter III [Part C], and who will participate in preschool programs assisted under this subchapter [Part B], experience a *smooth and effective transition* to those preschool programs in a manner consistent with section 1437(a)(9) of this title. By the third birthday of such a child, an individualized education program or, if consistent with sections 1414(d)(2)(B) and 1436(d) of this title, an individualized family service plan, has been developed and is being implemented for the child. The local educational agency will participate in transition planning conferences arranged by the designated lead agency under section 1435(a)(10) of this title.

§ 1412(a)(9) (emphasis added). Section 1437(a)(9), incorporated into this subsection, requires a state to transition children from Part C to Part B by notifying the LEA that the child will soon be eligible for services under Part B, convening a transition conference to discuss these services at least 90 days before the child is eligible for Part B services, and establishing a transition plan from Part C to Part B.

#### ii. Factual Background

The parties agree that, at least between and including the years 2000 to 2007, defendants' actions "didn't result in effective transitions for children into Part B from Part C." (Disputed

Facts Reply at 22-23.) The parties agree that for the 2004-05 school year, only 17% of the eligible children referred by Part C to Part B had an individualized education plan developed and implemented by their third birthdays. (*Id.* at 19.) The parties agree that for the 2006-07 school year, 4% of Part C graduates were enrolled in preschool special education by their third birthdays. (*Id.* at 19-20.)

The parties agree that, at least through and including the year 2008, the District's "most significant challenge . . . [was] getting children through this [transition] process in a timely manner with the least amount of disruption to the child and family." (*Id.* at 20-22.) The parties agree that, at least through and including the year 2007, "the procedures used by defendants to screen children exiting Part C were in many cases not necessary and delayed provision of preschool special education." (*Id.* at 27.) The parties agree that, at least through and including the year 2007, "the screening procedures used by defendants with preschool children were unreliable and were not always aligned with accepted practices in the field." (*Id.* at 27-28.)

iii.     Analysis

The Court finds that, at least through and including the year 2007, defendants failed to comply with their obligation to ensure a smooth and effective transition for disabled children from Part C to Part B, in violation of § 1412(a)(9) of the IDEA. The Court declines to rule at this time on defendants' liability since 2007. There is no genuine dispute that defendants failed to ensure effective transitions from Part C to Part B, as an overwhelming majority of disabled children in certain years did not have an individualized education plan and enrollment in preschool special education by their third birthdays. There is no genuine dispute that the District's procedures to facilitate these transitions were inadequate.

Accordingly, the Court will grant plaintiffs' motion for summary judgment on liability as to plaintiffs' Part C to Part B transition claim under the IDEA.

## 2. *Defendants Violated § 504 of the Rehabilitation Act.*

### a. *Legal Standard*

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The implementing regulations for § 504 state: "A recipient that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33. The Court set out the standard for a § 504 claim in an earlier opinion in this case:

> In order to state a claim under Section 504 of the Rehabilitation Act in IDEA cases, plaintiffs must show that "something more than a mere failure to provide the 'free and appropriate public education' required by the IDEA" has occurred. *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001) (Friedman, J.). Generally, plaintiffs who show either "bad faith or gross misjudgment" can prevail under Section 504 for IDEA violations. *Id.* Liability will not be imposed so long as the "state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals." *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982).

([55] Order at 3-4, Aug. 25, 2006.) In that opinion, the Court held that plaintiffs alleged sufficient facts to meet this standard, and the Court denied defendants' motion to dismiss plaintiffs' § 504 claims.

The Court held above that defendants failed to provide plaintiffs with the FAPE required by the IDEA and that defendants failed to comply with their Child Find obligations under the IDEA. The Court will grant summary judgment for plaintiffs on their § 504 claim if they can

now show "bad faith or gross misjudgment" by defendants. In their motion, plaintiffs state that they are not trying to prove "that defendants demonstrated 'bad faith or gross misjudgment' in denying a FAPE to a specific class member"; rather, they are trying to prove "the longstanding, gross departures from accepted educational practice within defendants' Child Find system that have resulted, and continue to result, in the systematic denial of FAPE to the entire plaintiff class." (Pls.' Mot. at 31.)

### b. Factual Background

As discussed above, the parties agree that in 1998, OSEP entered into an agreement with the District to bring it into full compliance with the law. In 2001, OSEP determined that the District was not in compliance. OSEP therefore designated the District as a "high risk grantee," attaching Special Conditions to its funding. Every year thereafter, at least through and including the year 2007, OSEP cited defendants for failure to comply with these Special Conditions. (Disputed Facts Reply at 13-14.)

As discussed above, the parties agree that in 2007, the District served a lower percentage of its 3- to 5-year-old population than did any state in the country. While the District served 2.94% of this population, 43 states and Puerto Rico served over 5% of this population, and 26 jurisdictions served over 6% of this population. (*Id.* at 5.)

As discussed above, the parties agree that defendants' screening procedures were "unreliable and were not always aligned with accepted practices in the field" (*id.* at 27-28) and that the systems in place were "inadequately designed, supported, and facilitated across many years" (*id.* at 23-24).

### c. Analysis

The Court finds that, at least through and including the year 2007, defendants knew that their actions were legally insufficient, yet failed to bring themselves into compliance with their legal obligations, in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). The Court declines to rule at this time on defendants' liability since 2007. There is no genuine dispute that defendants knew, based on communications with OSEP, that they were not in compliance with their legal obligations, yet they failed to change their actions. There is no genuine dispute that defendants' relative provision of services under the IDEA was lower than that of every state in the country, and in most cases significantly lower. There is no genuine dispute that defendants' failures were a departure from accepted educational practices throughout the country. All of these facts show defendants' bad faith or gross misjudgment.

Accordingly, the Court will grant plaintiffs' motion for summary judgment on liability as to plaintiffs' claim under § 504 of the Rehabilitation Act.

### 3. *Defendants Violated District of Columbia Law.*

#### a. *Legal Standard*

District of Columbia law incorporates the federal FAPE and Child Find obligations:

> All local education agencies (LEA) in the District of Columbia shall ensure, pursuant to the Individuals with Disabilities in Education Act (IDEA), that all children with disabilities, ages three to twenty-two, who are residents or wards of the District of Columbia, have available to them a free appropriate education (FAPE) and that the rights of these children and their parents are protected.

D.C. MUN. REGS. tit. 5, § 3000.1. District law requires the LEA to provide a FAPE to each child with a disability, § 3002.1(a), and imposes Child Find duties: "The LEA shall ensure that procedures are implemented to identify, locate, and evaluate all children with disabilities residing in the District who are in need of special education and related services . . . ," § 3002.1(d); *see also* § 3002.3(a). The Court found above that defendants denied a FAPE to a large number of

children aged 3 to 5 years old and failed to comply with its Child Find obligations under federal law.

### b. Analysis

The Court finds that, at least through and including the year 2007, defendants' actions constitute violations of District of Columbia law, D.C. MUN. REGS. tit. 5, §§ 3000.1, 3002.1(a), 3002.1(d), and 3002.3(a), because this local law creates the same standards as those in federal law. The Court declines to rule at this time on defendants' liability since 2007.

Accordingly, the Court will grant plaintiffs' motion for summary judgment on liability as to plaintiffs' claims under District of Columbia law.

### C. PLAINTIFFS' CONSENT MOTION FOR ORDER SCHEDULING ORAL ARGUMENT ON PENDING SUMMARY JUDGMENT MOTIONS IS DENIED.

Plaintiffs request an order scheduling oral argument on both summary-judgment motions. In support of this motion, plaintiffs argue that the issues argued in each of the briefs are not well organized and therefore are not clear to the Court. Because the Court is able to understand and rule on the issues based on the written pleadings, the motion will be denied. *See* FED. R. CIV. P. 78(b).

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment. The motion will be granted as to the First Claim of plaintiffs' Amended Complaint [46], insofar as plaintiff cannot bring suit under 42 U.S.C. § 1983 to enforce the IDEA. The motion will be denied insofar as the First Claim of plaintiffs' Amended Complaint will be construed to state a cause of action directly under the IDEA, 20 U.S.C. §

1415(i)(2)(A), rather than under 42 U.S.C. § 1983. The motion will be denied as to the Second, Third, Fourth, and Fifth Claims of the Amended Complaint.

The Court will grant Plaintiffs' Motion for Partial Summary Judgment on Liability.

The Court will deny Plaintiffs' Consent Motion for Order Scheduling Oral Argument on Pending Summary Judgment Motions.

The Court will not rule on declaratory relief at this time; rather, it will consider the issue of declaratory relief at a future date, at the same time as it considers injunctive and other relief.

The Court will order the parties to meet and confer, and propose a further schedule for: submission of any further dispositive motions on liability for plaintiffs' remaining claims; submission of motions relating to declaratory, injunctive, or other relief; submission of a list of issues remaining for trial; and time frames for pretrial and trial dates for the remaining claims and relief.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 10, 2010.