**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1437 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' MOTION FOR RECONSIDERATION**

Defendants (hereafter, "the District"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 54(b), hereby respectfully move for reconsideration of the Court's April 7, 2011, Order (Docket No. 232) deeming the District to have waived all privileges with respect to e-mails to be produced in this case.

A memorandum of supporting points and authorities and a proposed order are attached hereto.

Respectfully submitted,

IRVIN B. NATHAN
Acting Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

ELLEN A. EFROS
Assistant Deputy Attorney General
Chief, Equity Section I

/s/ Sarah A. Sulkowski
SARAH A. SULKOWSKI
Assistant Attorney General
Bar Number 493235
Suite 600 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6627
(202) 730-1454 (fax)
E-mail: sarah.sulkowski@dc.gov

/s/ Chad Copeland
CHAD COPELAND
Assistant Attorney General
Bar Number 982119
Suite 600 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6623
(202) 730-8880 (fax)
E-mail: chad.copeland@dc.gov

/s/ Caroline Hutton
CAROLINE BOUCHER HUTTON
Special Assistant Attorney General
Bar Number 995850
Suite 600 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-7854
(202) 730-0579 (fax)
E-mail: caroline.hutton@dc.gov

**CERTIFICATION**

I hereby certify, pursuant to the Court's Local Rule 7(m), that on April 11, 2011, I contacted Plaintiffs' counsel but was unable to secure consent to the relief requested herein.

/s/ Sarah A. Sulkowski
SARAH A. SULKOWSKI
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1437 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR RECONSIDERATION**

On April 7, 2011, this Court issued an order (Docket No. 232) that, *inter alia*, deems the District to have waived all privilege with respect to e-mail documents yet to be produced at the time of trial. That ruling will, unless reconsidered, result in grave injustice to the District. Accordingly, the District respectfully requests that the Court reconsider the portion of its ruling that deems privilege to have been waived.

## I. BACKGROUND

The discovery in this case—and particularly the electronic discovery that the District has been obliged to undertake and produce—has been voluminous. As even Plaintiffs must acknowledge, however, the District has consistently and diligently supplemented its document production throughout the last two years, even as the parties were also briefing dispositive motions, attempting to reach a settlement agreement through mediation, and preparing for trial. Indeed, the District has supplemented its production far more frequently than have Plaintiffs, and has produced many thousands more documents.

In part because of the volume of materials to be produced, both the Court and the parties have always anticipated that production in this case would continue until the eve of trial. In its September 22, 2010, scheduling Order, this Court directed the parties to "supplement their responses to pending document requests up to the trial date." (Docket No. 201, at 2.) A few months later, Plaintiffs unilaterally announced a rolling series of deadlines for supplementation, the last of which fell on April 1, 2011, mere days before the April 6 trial date. (*See* Dec. 16, 2010, Letter, attached hereto as Exhibit 1.)

In the weeks leading up to trial, counsel for the parties conferred frequently by telephone to coordinate document production and discuss other pretrial issues. Throughout this period, counsel for the District kept Plaintiffs apprised of the continuing review and rolling production of responsive e-mail documents. At no time did Plaintiffs' counsel mention that they intended to seek relief from the Court for any deficiency in the District's production.

On April 5, 2011—the day before trial commenced—Assistant Attorneys General Sarah A. Sulkowski and Chad Copeland telephoned Plaintiffs' attorney Alexander Karam to advise Mr. Karam that the District had not been able to complete its e-mail review and production, and that defense counsel fully intended to complete the production as soon as possible on an ongoing, rolling basis (rather than holding all of the documents to be produced together once the review was completed). (*See* Sulkowski Decl., attached hereto as Exhibit 2, at 1-2 ¶ 4; Copeland Decl., attached hereto as Exhibit 3, at 1-2 ¶ 4.) Defense counsel affirmatively acknowledged Plaintiffs' right to hold the record open following trial so that they could submit additional exhibits received as part of this production, subject to the District's right to make any applicable evidentiary objections.

(*See* Sulkowski Decl. at 1-2 ¶ 4; Copeland Decl. at 1-2 ¶ 4.) Counsel for the District also informed Mr. Karam that the District stood ready to make its witnesses available for supplemental depositions concerning any documents subsequently produced, and that the District would not oppose Plaintiffs' submission of additional deposition designations or written testimony concerning such documents, subject to the District's evidentiary objections (if any) and submission of responsive testimony (again, if any). (*See* Sulkowski Decl. at 1-2 ¶ 4; Copeland Decl. at 1-2 ¶ 4.)

During this April 5 conversation, Mr. Karam stated that he did not believe that the District's consent would be necessary for Plaintiffs to submit additional exhibits and/or testimony following trial, but that in any event Plaintiffs planned to "proceed on what we have" and did not expect to need additional testimony or trial time to address any subsequently produced documents (though Plaintiffs might submit such documents as exhibits following trial). (*See* Sulkowski Decl. at 2 ¶¶ 5-6; Copeland Decl. at 2 ¶¶ 5-6.) Counsel for the District expressed agreement on all of these matters. (*See* Sulkowski Decl. at 2 ¶ 6; Copeland Decl. at 2 ¶ 6.)

At no time did Plaintiffs' counsel ever intimate that they intended to move the Court for relief the next morning, or to argue that the District had acted in bad faith in its attempt to fulfill its discovery obligations. (*See* Sulkowski Decl. at 2 ¶ 7; Copeland Decl. at 2 ¶ 7.)

Yet that is precisely what occurred on the morning of April 6, when Plaintiffs' attorney Bruce Terris began his presentation by complaining of the District's inability to complete its e-mail production before trial. In response to the Court's inquiry as to why the District had not previously informed the Court of this problem, Ms. Sulkowski stated

that defense counsel had hoped to be able to complete the production in time—that is, by the Court-established deadline of April 5—and that the District's trial counsel would be able to recommence document review and production as soon as trial had concluded and would complete the production within one week thereafter.

The Court then ruled from the bench that the District would be deemed to have waived all privilege with respect to documents not yet produced, and ordered the District to produce all remaining documents, including those to which privilege would otherwise attach, within one week of the conclusion of trial. The Court subsequently issued a written order to that effect, establishing a production deadline of April 14, 2011. (*See* Docket No. 232.)

The District now respectfully requests that the Court reconsider the portion of its order deeming the District to have waived all privilege with respect to documents remaining to be produced. Absent such reconsideration, a severe injustice to the District will result—without any corresponding legitimate benefit to Plaintiffs, since the Court's order will not serve to expedite the District's production of responsive, non-privileged e-mails (as defense counsel stated at trial on April 6, the remaining privilege review can be completed, and privilege logs produced, by April 14). Furthermore, not only did Plaintiffs' counsel's statements to the Court on April 6 contravene their express representations to defense counsel the previous day, but the circumstances here simply do not meet the standard for imposing such a severe sanction. And finally, Plaintiffs' own discovery conduct has been far from faultless, and thus sanctioning the District so harshly while entirely excusing Plaintiffs' violations would be especially unjust and prejudicial.

# I. LEGAL STANDARDS

## A. Reconsideration under Rule 54(b)

Federal Rule of Civil Procedure 54(b) authorizes the Court to "revise its own interlocutory decisions at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 13 (D.D.C. 2010) (Lamberth, J.) (internal quotation marks omitted). Reconsideration pursuant to Rule 54(b) "may be granted as justice requires." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 576 F. Supp. 2d 128, 130 (D.D.C. 2008) (Lamberth, J.) (internal quotation marks omitted).

This Court has interpreted the "as justice requires" standard to mean that it must "determin[e], within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (Lamberth, J.). "In order for justice to require reconsideration, logically, it must be the case that some sort of 'injustice' will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Id.* at 540.

> For example, if a court issued an injunction that prevented a party from taking certain kinds of actions in the future, and the court's conclusion that such an injunction was warranted under the circumstances was based on application of an incorrect legal standard; the proponent of a motion for reconsideration would be able to demonstrate that actual harm would result if reconsideration were refused in the form of a continuing legal restraint on conduct that would not exist but for the Court's refusal to reconsider its actions.

*Id.*

**B. Waiver as a Sanction for Failure to Complete Production Before Trial**

Federal Rule of Civil Procedure 34(b) governs requests for the production of documents. Rule 26(b)(5) governs the assertion of privilege as a basis for withholding production of otherwise relevant documents, and specifically, Rule 26(b)(5)(A) requires the party asserting privilege to produce a privilege log so that opposing parties may assess the claim of privilege. Rule 37(d) governs the imposition of sanctions for a failure to comply with, *inter alia*, a request to produce documents pursuant to Rule 34(b) (or, by extension, a privilege log pursuant to Rule 26(b)(5)).

Courts have read Rules 26(b)(5), 34(b), and 37(d) together to mean that, "[w]hen a producing party fails to make a timely and proper objection [on grounds of privilege, pursuant to Rule 26(b)(5)], a court may find that the party has waived any objections to a document request under Rule 34." *First Sav. Bank, F.C.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1360 (D. Kan. 1995)); *see also id.* ("Even when the untimely objection is based on privilege, the court likewise may find a waiver."). "Still, waiver does *not* automatically result from noncompliance with Rule 26(b)(5)." *Id.* at 1361 (emphasis added). Rather, "waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (internal quotation marks omitted) (quoting *First Sav. Bank, F.C.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995)).

Although the imposition of discovery sanctions generally lies within the sound discretion of the trial court, where a finding of waiver constitutes an abuse of that discretion, appellate courts have held that the extraordinary remedy of mandamus is required as a "safety valve[] for promptly correcting serious errors." *Mohawk Indus. v.*

*Carpenter*, 130 S. Ct. 599, 607-08 (2009) (internal quotation marks omitted); *see also In re City of New York*, 607 F.3d 923, 939 n.16 (2d Cir. 2010) ("A writ of mandamus may also be available if there is an extreme need for reversal of the district court's mandate. For example, the Supreme Court has granted the writ to restrain a lower court when its actions would threaten the separation of powers by embarrassing the executive arm of the Government . . . ." (internal citation, quotation marks, and brackets omitted) (quoting *Cheney v. United States Dist. Court for Dist. of Columbia*, 542 U.S. 367, 381 (2004)).

The case law indicates that a failure to timely complete discovery despite good-faith efforts—as opposed to a failure to engage in discovery at all—is not sufficient to trigger the severe sanction of a deemed waiver of privilege:

> The effect of Rule 37(d) is that a party waives its discovery objections by seriously disregarding its discovery obligations . . . . where a party fails to appear for deposition, to answer interrogatories, or to respond to a request for inspection. Rule 37(d) is concerned with *complete* failures to respond[,] *not just incomplete or inadequate attempts*. . . . Rule 27(d) stands for the notion that the sanction of waiver is best suited for the more serious discovery violations.

*First Sav. Bank*, 902 F. Supp. at 1361 (emphases added); *see also Boca Investerings P'ship v. United States*, Civ. No. 97-602 (PLF), 1998 U.S. Dist. LEXIS 11840, at *7-*8 (D.D.C. Jan. 20, 1998) (Facciola, Mag. J.) ("the sanction must never be any more severe than it need be to correct the harm done and to cure the prejudice to the other party, unless the opposing party's behavior has been so flagrant or egregious that deterring similar conduct in the future in itself warrants the sanction sought") ; *E. Techs., Inc. v. Chem-Solv, Inc.*, 128 F.R.D. 74, 75 (E.D. Pa. 1989) ("Courts generally consider the reasons for the failure to respond to a discovery request and reserve the harshest sanctions only for the most flagrant violations.").

Particularly where, as here, there is no indication of bad faith and the opposing party has shown no prejudice resulting from the violation, courts have held that the sanction of waiver is inappropriate. *See Smith v. Café Asia*, 256 F.R.D. 247, 250-51 (D.D.C. 2009) (Facciola, Mag. J.) ("The Court declines to deem that defendant has waived privilege because defendant's discovery violation"—failure to provide a privilege log for nearly a year after the plaintiff requested it—"does not justify such a sanction."); *Hines v. Cal. Pub. Util. Comm'n*, No. C-07-4145 CW (EMC), 2010 U.S. Dist. LEXIS 23623, at *6 (N.D. Cal. Mar. 15, 2010) ("To the extent responsive documents have not been produced within the timeframe ordered by the Court, the alleged delay of one month is not excessive and [the plaintiff] has not shown that she has been prejudiced as a result. Certainly, the sanction sought by [the plaintiff]—*i.e.*, waiver of the attorney-client privilege—is not appropriate under the circumstances."); *Warner v. United States*, C.A. No. 09-036ML, 2009 U.S. Dist. LEXIS 101688, at *4 (D. R.I. Nov. 2, 2009) (even where a defendant "present[s] no valid reason for its failure to produce a privilege log, the circumstances do not justify imposing the harsh sanction of waiver" where "Plaintiff has not been prejudiced" and "there is no indication of bad faith or intent to deceive on the part of Defendant's counsel"); *In re Omega Protein Inc.*, No. 2:04-cv-2071, 2007 U.S. Dist. LEXIS 3632, at *3-*4 (W.D. La. Jan. 17, 2007) ("Courts . . . have noted that imposing the sanction of waiver of a privilege for the failure of a party to timely produce a privilege log is a 'draconian remedy' and must be warranted under the specific facts of the case."); *id.* at *4 ("Although [the defendant] offers no explanation for its delay in producing the privilege log, [the plaintiff] has failed to demonstrate that it suffered prejudice as a result of this delay. Under the facts of this case, the court does not find

that [the defendant's] delay resulted in a waiver of its asserted privileges."); *Streamline Capital, L.L.C. v. Hartford Cas. Ins.*, No. 02 Civ. 8123, 2005 U.S. Dist. LEXIS 468, at *2 (S.D.N.Y. Jan. 11, 2005) ("Although plaintiff had not provided the [privilege] log . . . one day after the due date for the logs[,] it did provide such a log . . . during the course of briefing the current motion. Given the expedited nature of the process, the apparently inadvertent reason for the delay, the absence of any prejudice to defendant and plaintiff's timeliness in providing all of the documents deemed not privileged . . ., we see no reason for imposing the harsh remedy of an across-the-board waiver.").

## II. ANALYSIS

In this case, defense counsel strenuously and in good faith made every attempt to complete a massive document production before trial. This effort was severely hampered by a lack of resources and the competing demands of dispositive and pretrial briefing, as well as mediation, in this case. Counsel's inability to complete all production before the Court's deadline—that is, by the trial date—has not, however, prejudiced Plaintiffs in any way. Nor has Plaintiffs' own discovery conduct been exemplary.

The parties agree that Plaintiffs may submit as exhibits any admissible materials that they receive during the course of the remaining week of production; that Plaintiffs may, if necessary, seek to take supplemental deposition testimony from the District's witnesses concerning any such documents; and that Plaintiffs may, if necessary, submit supplemental written testimony from their own witnesses concerning such documents. In a bench trial such as this one, and particularly where—as here—all of the parties' direct testimony was submitted in written form rather than orally in open court, Plaintiffs will thus have a full opportunity to use any late-produced materials just as they could have

used any of the other documents produced in this case. Under these circumstances, Plaintiffs cannot show any prejudice at all, much less the kind of egregious violation that could warrant a sanction as severe as that imposed by the Court.

Furthermore, Plaintiffs themselves have been guilty of dilatory discovery conduct, to say the least. To take just one example, on February 23, 2011—a little more than a month before trial—Plaintiffs made a supplemental document production that included e-mail between Plaintiffs and their primary expert witness dating back to January 2010. (*See* Production Index, attached hereto as Exhibit 4.) It should be noted that this production by Plaintiffs consisted, in its entirety, of 20 documents spanning 149 pages—unlike the production that the District has been forced to undertake, which to date comprises more than 30,000 pages of documents in addition to e-mail messages produced electronically that, if provided in hard copy, would have spanned tens of thousands, if not hundreds of thousands, of additional pages. Yet Plaintiffs failed to mention (much less explain) the fact that it took them more than a year to produce their own few responsive documents, even while they were delivering a tirade concerning the District's inability to quickly complete production on a scale that is orders of magnitude greater than anything that Plaintiffs have had to contemplate, and with far fewer personnel and resources than Plaintiffs' counsel have at their disposal.

But Plaintiffs' counsel's most damaging discovery violation became clear only on the first afternoon of trial, when they were forced to acknowledge that they had neglected to produce a document on which their primary expert witness had relied extensively in forming the opinions to which he testified on both direct and cross-examination. After Dr. Dunst cited this document—the 2007 American Community Survey—in support of

his cross-examination testimony, defense counsel immediately requested that Plaintiffs' counsel produce the document. Plaintiffs' counsel did not do so, however, until 11:33 a.m. the following day—less than 2 hours before trial was to recommence.

When counsel for the District raised this issue with the Court at the beginning of that second trial session, on April 7, Plaintiffs' counsel initially responded by disclaiming any obligation to anticipate that Dr. Dunst would cite the document, and then—after defense counsel pointed out that Dr. Dunst had actually cited the document previously in his written direct testimony (albeit for a different proposition than that for which he invoked it on cross-examination), and thus Plaintiffs' counsel indisputably were required to produce it before trial—Plaintiffs' counsel responded by insinuating that it was somehow the job of defense counsel to detect the failure to produce this document, anticipate that the failure would be prejudicial at trial due to the brand-new assertions made by Plaintiffs' expert on cross-examination, and then somehow force Plaintiffs' counsel to produce it.

This is not, of course, the way discovery works in the federal courts. The rules bind all parties equally. Thus, no party should be heard to demand that the Court deem privilege waived as a sanction for a discovery failure that occurred despite the producing party's good-faith efforts; of which the producing party made a point of notifying its opponent; and with regard to which the producing party went out of its way to suggest reasonable solutions to which the receiving party agreed. Much less can these Plaintiffs' counsel seriously contend that the District should be sanctioned in such a manner while Plaintiffs' counsel escape even an admonition for their own failure to timely respond to discovery requests and, in particular, their failure to produce at all a document that,

unlike any of the documents yet to be produced by the District, was central to the testimony of Plaintiffs' primary expert witness.

As with so many of the issues implicated by this case, the District does not contend that its performance has been perfect, nor does it seek to gain any strategic benefit from—or to prejudice Plaintiffs in any way due to—the difficulties that the District has experienced. All that the District asks is that this Court acknowledge the good faith with which defense counsel have litigated this matter, and resolve this discovery dispute in a way that protects the rights of all parties, not only those of Plaintiffs.[1] The District submits that the Court's Order of April 7, absent the portion deeming the District to have waived privilege, accomplishes that objective.

## III. CONCLUSION

Because the District's discovery failures neither constituted a complete refusal to respond nor evidenced bad faith; because the District will suffer severe prejudice and injustice absent reconsideration of the Court's ruling on privilege; and because Plaintiffs will suffer no prejudice if that ruling is reconsidered, the District respectfully requests that the Court reconsider its ruling deeming the District to have waived privilege with regard to documents yet to be produced, and vacate that portion of its April 7 Order.

Respectfully submitted,

IRVIN B. NATHAN
Acting Attorney General
for the District of Columbia

[1] If the District is required to produce documents otherwise subject to a claim of privilege and the Court subsequently grants the District's motion for reconsideration, Plaintiffs already will have reviewed information to which they are not entitled. Once such a disclosure is wrongly compelled, neither Plaintiffs nor the Court will be able to "un-ring the bell," *United States v. Dyer*, No. 3:08-CR-26, 2008 U.S. Dist. LEXIS 41022, at *3 (E.D. Tenn. May 21, 2008), and the District's right to engage in confidential communications will have been destroyed.

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

ELLEN A. EFROS
Assistant Deputy Attorney General
Chief, Equity Section I

/s/ Sarah A. Sulkowski
SARAH A. SULKOWSKI
Assistant Attorney General
Bar Number 493235
Suite 600 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6627
(202) 730-1454 (fax)
E-mail: sarah.sulkowski@dc.gov

/s/ Chad Copeland
CHAD COPELAND
Assistant Attorney General
Bar Number 982119
Suite 600 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6623
(202) 730-8880 (fax)
E-mail: chad.copeland@dc.gov

/s/ Caroline Hutton
CAROLINE BOUCHER HUTTON
Special Assistant Attorney General
Bar Number 995850
Suite 600 South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-7854
(202) 730-0579 (fax)
E-mail: caroline.hutton@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1437 (RCL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ______________________________________ | ) | |

**ORDER**

Upon review of Defendants' motion for reconsideration of the Court's April 7, 2011, Order, any opposition thereto, and the entire record in this matter, it is hereby

ORDERED that the motion is GRANTED, and it is further

ORDERED that the portion of the Court's April 7, 2011, Order deeming Defendants to have waived privilege is VACATED.

SO ORDERED.

Dated: ___________________

_____________________________________
Royce C. Lamberth
Chief United States District Judge