UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL,[1/] *et al.*, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*<br><br>Defendants. | Civil Action No. 05-1437 (RCL) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION**

On April 6, 2011, the first day of trial in this matter, plaintiffs' counsel informed the Court that defendants had not completed their production of e-mails responsive to plaintiffs' discovery requests and had not produced a privilege log since November 2008. Based on these facts, plaintiffs' counsel orally moved the Court for an order compelling discovery of the remaining responsive e-mails and deeming all privileges to be waived. After hearing from defendants' counsel, the Court granted plaintiffs' motion on the record and, in a written order issued on April 7, 2011 (Doc. No. 232), stated "that all privileges and objections are deemed waived" and "that defendants shall produce all responsive e-mails to plaintiffs' counsel on or before April 14, 2011."

On April 11, 2011, defendants filed their Motion for Reconsideration (Doc. No. 233). In support, defendants argue that the Court's ruling, "unless reconsidered, will result in grave injustice to the District." Defendants' Memorandum in Support of Motion for Reconsideration (hereafter "Def. Mem."), p. 3.[2/] Yet, as discussed in more detail below, defendants have not

[1/] Pursuant to Local Civil Rule 5.4(f)(2), minors are identified by their initials.

[2/] Defendants have used a single set of page numbers for their motion and supporting memorandum. Accordingly, the first page of their memorandum is numbered "page 3."

demonstrated that the Court's ruling was incorrect, much less that it will result in "grave injustice." Accordingly, defendants' motion should be denied.

I

BACKGROUND

Since defendants dedicate approximately one third of their memorandum (Def. Mem. 3-6) to what they consider to be the relevant "background" to their motion, plaintiffs believe that a response is warranted.

Discovery, particularly defendants' production of responsive e-mails, has always been a contentious issue in this case. In support of their present motion, defendants attempt to excuse their ongoing failure to produce responsive e-mails and privilege logs with a claim that "the District has consistently and diligently supplemented its document production throughout the last two years, even as the parties were also briefing dispositive motions, attempting to reach a settlement agreement through mediation, and preparing for trial." Def. Mem. 3. As discussed below, defendants' discovery failures with respect to e-mail production are more than two years old. Moreover, defendants' delay in producing responsive e-mails and privilege logs – a task they only recently completed in response to a court order – is entirely unjustified.

A. PLAINTIFFS' DOCUMENT REQUESTS AND 2008 MOTION TO COMPEL

Plaintiffs served their First, Second, and Third Sets of Requests for Production of Documents on December 28, 2005, September 17, 2007, and September 28, 2007, respectively. *See* Pl. Exs. 1-3. Plaintiffs explicitly included e-mails in their requests. *See*, *e.g.*, Pl. Ex. 1, p. 2 (defining "document" as including "e-mails").[3/]

---

[3/]Plaintiffs served two additional document requests as attachments to their Notice of Deposition Pursuant to Rule 30(b)(6), dated October 10, 2008 (Pl. Ex. 4), and Notice of Second Deposition Pursuant to Rule 30(b)(6), dated January 21, 2011 (Pl. Ex. 5). These were not new document

On February 4, 2008, plaintiffs filed a motion to compel defendants' responses to plaintiffs' document requests, including the production of responsive e-mails. Doc. No. 91. As of that date, defendants had produced only 17 e-mails from Part C staff and none from Part B staff concerning activities publicizing Child Find. Memorandum in Support of Plaintiffs' Motion to Compel Defendants' Responses to Plaintiffs' First, Second, and Third Sets of Requests for Production of Documents and Plaintiffs' First Set of Interrogatories, p. 27. On March 6, 2008, one month after plaintiffs filed their motion to compel and four days before defendants filed their opposition, defendants provided plaintiffs with a larger set of e-mails, most of which were dated between December 2006 and November 2007. Plaintiffs' Reply to Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel (Doc. No. 101), p. 16.

B. COURT'S DECISION AND DEFENDANTS' SUBSEQUENT PRODUCTION

On June 27, 2008, this Court issued a Memorandum Opinion (Doc. No. 107), granting in part plaintiffs' motion to compel. In rejecting defendants' general objections to producing e-mails on the grounds of deliberative process privilege, attorney-client privilege, and the attorney work-product doctrine, the Court stated (pp. 10-11):

> In its discussion of the deliberative process privilege, the District's memorandum in opposition to plaintiffs' motion makes no effort to argue that the District has provided a log sufficient to satisfy its obligations under Rule 26(b)(5). Nor does the District assert a privilege log has been provided with respect to documents withheld under any other claim of privilege. It bears noting that the District's opposition does not even discuss any claim of privilege aside from deliberative process. Even the most detailed description of the claims of privilege – provided to plaintiffs the day before the deadline to file their underlying motion to compel, and called to the Court's attention by plaintiffs in their reply – fails to describe the actual documents being withheld, the specific privilege asserted, or how that privilege is applicable. The District has clearly failed to satisfy its obligations under Rule 26(b)(5). Accordingly, all the District's "blanket objections on the basis of privilege shall be rejected."

requests, as they merely sought "documents that relate[d] to the matters upon which the deposition [would] be taken," that is, the central matters of the case that were already addressed by plaintiffs' prior document requests.

> *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 235 F.R.D. 521, 523 (D.D.C. 2006) (Lamberth, J.); *see also, e.g., Lohrenz v. Donnelly*, 187 F.R.D. 1, 6-7 (D.D.C. 1999) (Lamberth, J.) (denying plaintiff's assertion of privilege because of her failure to provide a privilege log). The District's objections on the basis of privilege are overruled wherever raised; and the District shall not rely on privilege as a grounds for withholding any documents or other information from plaintiffs. (citations to parties' briefs omitted)

Regarding defendants' discovery responses overall, the Court stated (p. 15):

> The record leads the Court to conclude that the District's performance of its discovery obligations to date has been completely inadequate. With respect to document production, it is clear that the District "decided it would file an incomplete answer and then supplement it whenever it pleased . . . The court condemns this litigation tactic and will not tolerate it in future responses in this case" (quoting *Association of American Physicians and Surgeons, Inc., v. Clinton*, 837 F. Supp. 454, 458 (D.D.C. 1993) (Lamberth, J.)).

In the accompanying Order (Doc. No. 108, p. 2), the Court directed defendants to make a thorough search for all documents responsive to plaintiffs' document requests, including e-mails.

On July 31, 2008, upon defendants' consent motion, the Court issued an order clarifying (Doc. No. 114, pp. 1-2) that its determination concerning waiver of privilege did not apply to "otherwise privileged documents generated after the date of plaintiffs' motion to compel," "documents generated by litigation counsel in the course of evaluating the case and preparing for and engaging in settlement discussions," and notes of an April 1, 2008 meeting between litigation counsel and various agency officials.

In response to the Court's June 27, 2008 order, defendants began producing e-mails and continued to do so through October 14, 2008. *See* Defendants' Fourth Index for Electronic Documents Produced after June 2008 (Pl. Ex. 6). Defendants also produced a log, updated on November 10, 2008, listing all documents that had been created after plaintiffs' motion to compel and withheld on privilege grounds. *See* Revised Privilege Log of Defendants (Pl. Ex. 7).

Defendants entirely ignore this history in their motion, despite their detailed exposition of what they deem is background.

## C. PLAINTIFFS' PRE-TRIAL REQUEST FOR SUPPLEMENTAL DISCOVERY AND DEFENDANTS' ROLLING PRODUCTION OF E-MAILS

On December 16, 2010, plaintiffs' counsel sent defendants' counsel a letter requesting that defendants supplement their responses to plaintiffs' first, second, and third sets of document requests pursuant to Rule 26(e) within 30 days (*i.e.*, by January 17, 2011). *See* Letter from Terris and Karam to Sulkowski, dated Dec. 16, 2010 (Def. Ex. 1), p. 1. Plaintiffs "further request[ed] that defendants supplement their responses to these document requests at regular intervals up to the trial date * * * on February 18, 2011, and April 1, 2011." *Ibid.* Thus, contrary to defendants' claim (Def. Mem. 4), plaintiffs did not "unilaterally announce a rolling series of deadlines for supplementation," but rather requested supplements by specific dates so that they would have a reasonable amount of time to review defendants' production in anticipation of trial. Defendants did not deny these requests. On the contrary, defendants first supplemented their production on January 18, 2011.

On January 20, 2011, in response to defendants' January 18 supplemental production, plaintiffs' counsel sent defendants' counsel a second letter expressing concerns about the completeness of defendants' document production to date. Letter from Terris and Karam to Sulkowski, dated Jan. 20, 2011 (Pl. Ex. 8). With respect to e-mails, plaintiffs' counsel wrote (p. 2):

> Defendants' January 18 production contains no e-mails. Except for a small number of e-mails to and from Dr. Freund that defendants produced pursuant to Rule 26, the most recent e-mails that defendants have produced are from 2008. *See* Defendants' Fourth Index for Electronic Documents Produced after June 2008, dated Oct. 14, 2008. Plaintiffs assume, based on the number of changes that have taken place in the District's Child Find program since 2008, that there must be some e-mails that are responsive to plaintiffs' document requests that defendants have not produced. Plaintiffs further assume that these e-mails were not withheld on privilege grounds since defendants have not produced a privilege log since November 2008. *See* Revised Privilege Log of Defendants, dated Nov. 10, 2008. Even if defendants intended to withhold them on privilege grounds, they have since waived any privilege that they might have claimed by failing to produce a privilege log. *See* Memorandum Opinion, dated June 27, 2008 (Doc. No. 107), p. 10

> (rejecting the District's blanket objections on the basis of privilege because "it failed to satisfy its obligations under Rule 26(b)(5)"). Accordingly, plaintiffs insist that defendants supplement their January 18 production with all e-mails that are responsive to plaintiffs' document requests as soon as possible and, in any event, no later than February 18, 2011.

In response, defendants' counsel wrote (Letter from Sulkowski to Terris and Karam, dated Jan. 26, 2011 (Pl. Ex. 9), p. 2):

> In your January 20 letter, you assume the existence of responsive, non-privileged e-mails that were not previously produced. You provide no basis for this assumption. As always, I will make every endeavor to provide in future supplemental productions any and all responsive, non-privileged documents in the District's possession that have not previously been produced.

Although this response suggested that some e-mails were withheld on privilege grounds, defendants did not produce a privilege log at that time. The last privilege log that defendants had produced was still from November 2008.

Defendants subsequently engaged in a rolling production of e-mails. On February 18, defendants produced one compact disc of e-mails (not listed in a document index). On March 11, defendants produced two more compact discs of e-mails (E-DOC 22). On March 25, defendants produced another compact disc of e-mails (E-DOC 24). On March 29, defendants produced another compact disc of e-mails (E-DOC 25). Finally, on April 1, defendants produced two more compact discs of e-mails (E-DOC 26). This last production contained over 3,500 e-mails, many from 2009 and 2010, but some dating back to October 2008. It bears repeating that, with the exception of a small number of e-mails to and from defendants' expert, Dr. Freund, defendants did not produce any e-mails from October 2008 (the date of their last production pursuant to the Court's June 27, 2008 order) to February 2011 (the date of defendants' first production of e-mails in response to plaintiffs' January 20, 2011 request for supplemental production). Moreover, none of defendants' recent e-mail productions was accompanied by a privilege log. In fact, as of

the first day of trial, defendants still had not produced a privilege log since November 2008.

Defendants now contend (Def. Mem. 4) that their production of e-mails, if completed the day before trial, would have been timely because "both the Court and the parties have always anticipated that production in this case would continue until the eve of trial" and because the Court's September 22, 2010 scheduling order (Doc. No. 201) directed the parties to "supplement their responses to pending document requests up to the trial date." This is nonsense. As defendants are well aware, Rule 26(e) requires:

> A party who * * * responded to an interrogatory, request for production, or request for admission [ ] must supplement * * * its disclosure or response: (A) <u>in a timely manner</u> if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court. (emphasis added)

In light of this requirement, defendants cannot seriously contend that the Court's order directing the parties to supplement their production up to the date of trial gave them permission to delay producing large quantities of e-mails, no matter how old, until the eve of trial. Yet, as stated above, defendants waited until April 1, 2011 – just five days before trial – to produce over 3,500 e-mails dating back to October 2008.

Moreover, the Court could not have expected plaintiffs to complete an adequate pre-trial review of all documents that defendants waited until the day before trial to produce, no matter how large the production. Defendants' contention (Def. Mem. 4) that "counsel for the District kept Plaintiffs apprised of the continuing review and rolling production of responsive e-mail documents" does not excuse defendants' failure to produce these e-mails in a timely manner. Nor is defendants' failure excused, as defendants contend (*ibid.*), by the fact that "[a]t no time did [p]laintiffs' counsel mention that they intended to seek relief from the Court for any deficiency in the District's

production." Plaintiffs' counsel did not object to defendants' rolling production because they reasonably assumed that defendants would produce all responsive documents before trial – and early enough for plaintiffs to be able to use them at trial – not after trial.

D. APRIL 5, 2011 TELEPHONE CONVERSATION

As defendants explain (Def. Mem. 4), on the afternoon of April 5, 2011, the day before trial, Assistant Attorneys General Sarah A. Sulkowski and Chad Copeland called plaintiffs' counsel, Alexander R. Karam, to inform him that defendants had not completed their e-mail review and that they "fully intended to complete the production as soon as possible." Ms. Sulkowski and Mr. Copeland did not specify a date by which they expected their e-mail production would be complete.

For purposes of this opposition, plaintiffs will not quibble with defendants' summary of the remainder of the conversation, which is set forth in the nearly identical declarations of Ms. Sulkowski and Mr. Copeland (Def. Exs. 2 and 3).[4/] Mr. Karam did say that plaintiffs planned to proceed to trial with the evidence they already had in their possession, rather than delay trial until defendants produced all responsive e-mails. Moreover, defendants are correct that Mr. Karam did not tell Ms. Sulkowski and Mr. Copeland that plaintiffs intended to move the Court for relief the next morning or that plaintiffs would argue that the District had acted in bad faith. It was

[4/]Plaintiffs do note that defendants' summary of the conversation is incomplete. For example, in paragraph 6 of both declarations, Ms. Sulkowski and Mr. Copeland state that Mr. Karam "stated that he did not believe additional trial proceedings would be necessary, because he did not expect the remaining production to contain any documents indicating that the District would discontinue its operation of the Early Stages Center following trial in this matter." Plaintiffs submit that, in that particular instance, Mr. Karam said, jokingly: "I doubt you are going to produce an e-mail that says the District will be closing Early Stages the day after trial, are you?" Later in the conversation, when Ms. Sulkowski requested an assurance from Mr. Karam that plaintiffs would not seek to re-open trial based on late-produced e-mails, Mr. Karam stated emphatically and repeatedly that he did not know whether the late-produced e-mails would require additional trial proceedings because he had no idea what defendants were going to produce.

entirely reasonable for Mr. Karam to defer any decision as to what action plaintiffs would take until he had time to consider the new situation disclosed by defendants' attorneys and consult with his partner, Mr. Terris, about what plaintiffs would do. Nonetheless, plaintiffs submit that, in light of defendants' failure to produce responsive e-mails for over two years and their complete failure to produce a privilege log, even when they began producing e-mails in February 2011, defendants cannot claim surprise at plaintiffs' position on the first day of trial.

E. PLAINTIFFS' ORAL MOTION AND DEFENDANTS' RESPONSE

With respect to defendants' summary of the arguments made in Court on April 6, 2011 (Def. Mem. 5-6), plaintiffs only note that defendants' counsel offered to complete their review and production of e-mails within one week of the end of trial after plaintiffs requested that all privileges be waived and the Court asked the District to explain their delayed production. As stated above, defendants' counsel did not inform plaintiffs previously as to when they expected to complete this review and production.

F. COURT'S ORDER AND DEFENDANTS' SUBSEQUENT E-MAIL PRODUCTION

As set forth above, this Court issued an order (Doc. No. 232) stating "that all privileges and objections are deemed waived" and "that defendants shall produce all responsive e-mails to plaintiffs' counsel on or before April 14, 2011." Although defendants moved the Court for reconsideration and a stay of this order (Doc. Nos. 233 and 234), they did not request an expedited hearing.

On April 14, defendants' counsel produced a total of 21,343 e-mails: 5,694 marked as "privileged" and 15,649 marked as "non-privileged."[5/] These e-mails were produced in two

[5/] Defendants produced these e-mails in electronic format, saved on compact discs under separate file folders labelled "privileged" and "non-privileged." Accordingly, plaintiffs were able to calculate the total number of e-mails of each type without reviewing each e-mail's content.

groups. The first group, consisting of 5,669 "privileged" e-mails and 15,433 "non-privileged" e-mails, was produced shortly after 5:00 p.m. The second group, consisting of 235 more "privileged" e-mails and 216 more "non-privileged" e-mails, was produced at approximately 9:00 p.m. Also at approximately 9:00 p.m., defendants produced 8 privilege logs listing a total of 8,634 e-mails: that is, 2,940 more "privileged" e-mails than they actually produced. Accordingly, it appears that defendants failed to produce all responsive e-mails in direct violation of the Court's April 7 order. Based on the dates listed in defendants' privilege logs, plaintiffs understand that defendants now wish to claim privilege for 521 e-mails from 2008, 4,816 from 2009, 2,873 from 2010, and 380 from 2011 (44 e-mails listed in defendants' privilege logs are undated).

Before producing the first group of e-mails, defendants' counsel sent plaintiffs' counsel the following e-mail:

> Pursuant to the Court's order, we will be producing both privileged and non-privileged documents. We will produce the privileged documents separately and clearly mark them as such. We will also provide privilege logs. We believe that it is your obligation, in light of our pending motion for reconsideration, to refrain from reviewing the privileged material until the Court issues a ruling – particularly as doing so will result in no prejudice to Plaintiffs, since there is a considerable volume of non-privileged material to review, and since ample time remains before the deadline for submission of any supplemental materials to the Court.

On April 15, plaintiffs' counsel responded:

> By producing privileged documents on April 14 but not allowing plaintiffs to review them, defendants have, in effect, not produced the documents at all. The Court has of course not acted on defendants' motion for reconsideration or a stay. This is entirely the fault of defendants, not the Court or plaintiffs, since defendants did not move for an expedited hearing. Plaintiffs therefore have no obligation to refrain from reading the privileged materials.
>
> Since we have a limited amount of time to prepare our proposed findings of fact and conclusions of law, it is essential that this issue be decided immediately by the Court. We will be filing our responses to your motion for reconsideration and a stay on April 18.
>
> We request your agreement for the parties to contact the Court on April 19 via a joint

> telephone call to ask for an expedited ruling. Otherwise, if defendants are not willing to do this or the Court is unwilling to make such a ruling, plaintiffs intend to look at the privileged materials as is our right in these circumstances.

On April 17, defendants' counsel responded that they disagreed with plaintiffs' characterization of their production and would be willing to make a joint call to the Court. Today, April 18, counsel for the parties spoke over the telephone and agreed to plaintiffs filing a consent motion for an expedited ruling. Plaintiffs intend to file this consent motion tomorrow.

## II

## LEGAL STANDARDS

### A. RECONSIDERATION UNDER RULE 54(b)

Federal Rule of Civil Procedure 54(b) states that "any order * * * that adjudicates fewer than all the claims * * * does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." However, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might *reasonably be expected to alter the conclusion reached by the court*" (emphasis in original). *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (Lamberth, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)). "In order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if reconsideration is refused." *Cobell v. Norton*, *supra*, 355 F. Supp. 2d at 540.

### B. WAIVER OF PRIVILEGE AS SANCTION FOR PARTY'S FAILURE TO PRODUCE PRIVILEGE LOG

Courts have long recognized the need for parties to explain their reasons for withholding otherwise discoverable information on privilege grounds. As the Court of Appeals for the Third

Circuit explained in *United States v. O'Neill*, 619 F.2d 222, 225-226 (1980):

> When a request for relevant documents or information is made, a claim of privilege should be interposed judiciously and not casually. Under ordinary circumstances, objection to production of documents on the ground of privilege should be made in writing. * * * This gives each party the opportunity to analyze the request and the corresponding objection, and gives the court a fuller record on which to base its ruling. It also provides some assurance that the party asserting the privilege has directed his or her attention to the scope of the claim being asserted.

In 1993, Rule 26 was amended to include this specific requirement (Fed. R. Civ. P. 26(b)(5)(A)):

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents* * * not produced * * * in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Regarding this amendment, the Advisory Committee noted: "To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), <u>and may be viewed as a waiver of the privilege or protection</u>" (emphasis added). As stated above, this Court had previously found that defendants in this case waived all privileges when they failed to produce a privilege log. *See* Doc. No. 107, pp. 10-11.

As defendants point out (Def. Mem. 8), the Court of Appeals for the District of Columbia Circuit has stated (*United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (2003)) that "waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith" (quoting *First Savings Bank, F.S.B. v. First Bank System, Inc.*, 902 F. Supp. 1356, 1361 (D. Kan.1995).[6/] However, the availability of that "serious sanction" is not as limited as defendants

---

[6/] The court in *United States v. Philip Morris, Inc.*, did not decide whether waiver of privilege was an appropriate sanction under the circumstances of the case, but rather held that the district court should have ruled on the withholding party's objection to the scope of the request (*i.e.*, whether the document in question was otherwise discoverable) before deciding whether it needed to be listed in a privilege log. Accordingly, the statement is dictum.

suggest.[7/]

Defendants cite (Def. Mem. 9-11) several cases for the general proposition that courts will only impose waiver as a sanction if there is evidence that the producing party acted in bad faith and the receiving party suffered prejudice as a result of the producing party's actions. Yet, defendants fail to acknowledge that, in each of the cases they cite, the courts found that the seriousness of the discovery violations were mitigated by other circumstances: circumstances which, as discussed below, are not present in this case.

Thus, in *First Savings Bank, F.S.B., v. First Bank System, Inc.*, *supra*, 902 F. Supp. at 1366, the court held that waiver of privilege was an inappropriate sanction given "the critical facts that the defendants faced an extraordinary burden in producing the documents to satisfy the plaintiffs' broad request and the expedited discovery schedule and that the waiver pose[d] a serious litigation risk to the defendants in other cases that ha[d] been or [were] likely to be filed." Notably, the "expedited discovery schedule" referenced by the court "shortened response times to request for production to fifteen days and set a trial date for [the following month]." *Id.* at 1358. Here, any time pressures that defendants were under to produce e-mails were entirely of their own making, since they made no attempt to update their e-mail production between October 2008 and January 2011, when plaintiffs reminded them of their obligation to do so.

---

[7/]Defendants also discuss (Def. Mem. 8-9) the legal standard for appellate review of a district court's imposition of discovery sanctions, citing *In re City of New York*, 607 F.3d 923, 939, n. 16 (2d Cir. 2010), for the proposition that "the Supreme Court has granted the writ [of mandamus] to restrain a lower court when its actions would threaten the separation of powers by embarrassing the executive arm of the Government." As this case is still before the district court, the standard for appellate review is inapposite. However, to the extent that defendants are suggesting that the Court should reconsider its order to prevent embarrassment to the District of Columbia government, plaintiffs submit that any embarrassment resulting from this Court's order will be the sole responsibility of defendants' counsel, who withheld e-mails without producing a privilege log for approximately two and a half years.

In *Boca Investerings Partnership v. United States*, D.D.C., Civil Action No. 97-602, 1998 WL 426567, *2 (Jan. 20, 1998),[8/] the court held that waiver of privilege was an inappropriate sanction where producing party's delay in providing a privilege log delayed resolving a claim of privilege as to 11 of 7,000 pages and, as of the date the receiving party filed its motion to compel, there were still 6 months before the close of discovery. In contrast, defendants here waited until one week <u>after trial</u> (and after this Court's order) to identify 8,634 e-mails that they wish to withhold on privilege grounds. The Court in *Boca* recognized the propriety of sanctions for "flagrant or egregious" conduct. *Ibid*.

In *Eastern Technologies, Inc. v. Chem-Solv, Inc.*, 128 F.R.D. 74, 76 (E.D.Pa. 1989), the court decided that waiver of privilege was not warranted where a party actually produced the document at issue,"albeit expurgated and without explanation as to the expurgation," and the court had an opportunity to review the unexpurgated document to determine whether the material in question was privileged. Here, defendants did not identify, much less produce for *in camera* inspection, the privileged e-mails until one week after trial.

In *Smith v. Café Asia*, 256 F.R.D. 247, 251 (D.D.C. 2009), the court did not explain why it concluded that defendants' discovery violation – failure to produce a privilege log – did not justify waiver of privilege. Based on their citation of the decision, defendants appear to assume (Def. Mem. 10) that the amount of time the defendant in that case waited to produce a privilege log (*i.e.*, "nearly a year") was significant, and the fact that the court did not impose a waiver even under those circumstances is further proof that the sanction is rarely imposed. Yet, even if the length of delay in producing a privilege log was the court's primary consideration – with "nearly a year"

---

[8/]Since plaintiffs' counsel at Terris, Pravlik & Millian, LLP, does not have access to LEXIS, they are unable to follow defendants' use of LEXIS citations for unpublished opinions. Instead, plaintiffs use Westlaw citations for these opinions.

being not long enough to justify a waiver – it bears noting that defendants in this case waited more than twice as long (*i.e.*, since November 2008) to produce a privilege log.

With respect to *Hines v. California Public Utilities Commission*, N.D. Cal., Civ. Action No. 07-4145, 2010 WL 935279, *2 (Mar. 15, 2010), although it is clear that the plaintiff sought waiver of the attorney-client privilege as a sanction for the defendant's failure to produce certain documents, there is no indication anywhere in the approximately one-page decision that the plaintiff based her request on the defendants' failure to produce a privilege log. On the contrary, the decision suggests that the plaintiff's request was based on what, in the court's opinion, was an unfounded belief in the existence of additional responsive documents. *See ibid.* Here, plaintiffs' request for, and the Court's imposition of, a waiver as a sanction was based primarily on defendants' failure to produce privilege logs before trial.

In *Warner v. United States*, D.R.I., Civil Action No. 09-036ML, 2009 WL 3698018, *2 (Nov. 2, 2009), although the defendant had failed to produce a privilege log, the court refused to impose the sanction of waiver because the defendant had produced the documents at issue, albeit in redacted form, and "[p]laintiff had notice of the redactions as they [were] apparent on the face of the documents and, since [d]efendant did not redact the section headings and questions, the reason for the redaction [was] also readily apparent." Again, plaintiffs in the present case had no way of knowing anything about the e-mails defendants were withholding, much less the reasons why defendants were withholding each one, until defendants produced privilege logs one week after trial.

In the case of *In re Omega Protein Inc.*, W.D. La., Civil Action No. 04-2071, 2007 WL 165494, *1 (Jan. 17, 2007), the issue was whether the defendant's unexplained, one-month delay in producing a privilege log justified waiver of privilege. There, the court decided (*ibid.*) not to impose waiver as a sanction because the plaintiff had "failed to demonstrate that it suffered prejudice as a

result of this delay." However, unlike the present case, the facts of *In re Omega Protein Inc.* do not suggest that the defendant's delay in producing a privilege log extended past the deadline for discovery, much less past trial.

Similarly, in *Streamline Capital, L.L.C. v. Hartford Casualty Insurance Co.*, S.D.N.Y., Civil Action No. 02-8123, 2005 WL 66898, *1 (Jan. 11, 2005), the court refused to impose waiver as a sanction for a 4-day delay in producing a privilege log, citing, among other mitigating circumstances, "the absence of any prejudice to [the receiving party]." As with *In re Omega Protein Inc.*, *supra*, there is no indication in the facts of this case that the delay in producing a privilege log extended past the deadline for discovery, much less that it extended past trial.

## III

## ARGUMENT

Defendants make three arguments as to why this Court should reconsider its order deeming defendants to have waived all privilege with respect to e-mail production: (1) defendants have made a good-faith effort to produce all responsive e-mails before trial; (2) plaintiffs are not prejudiced by defendants' post-trial production of responsive e-mails; and (3) plaintiffs have also committed discovery violations. All three of these arguments are without merit.

### A. DEFENDANTS' RECENT EFFORTS DO NOT MAKE UP FOR THEIR UNJUSTIFIED DELAY, INEXCUSABLE CONDUCT, AND BAD FAITH IN FAILING TO PRODUCE RESPONSIVE E-MAILS AND PRIVILEGE LOGS

Defendants contend (Def. Mem. 11) that "defense counsel strenuously and in good faith made every attempt to complete a massive document production before trial." Plaintiffs do not dispute that the efforts of defendants' counsel to produce responsive e-mails over the last three months have been "strenuous." Nor is the need for such an effort surprising, since defendants' counsel had to review e-mails dating back to October 2008. Yet, defendants do not explain why

they waited until January 2011 to begin this work. Instead, defendants attempt to excuse their delay by blaming (*ibid.*) "lack of resources and the competing demands of dispositive and pretrial briefing, as well as mediation, in this case."

With respect to "lack of resources," plaintiffs submit that it would have been far easier for defendants' counsel, even a single attorney, to review e-mails and create privilege logs on a regular basis over the past two and a half years rather than wait to do all the work during the three months preceding trial.[9/]

As for "the competing demands of dispositive and pretrial briefing," plaintiffs note that, after defendants' unsuccessful attempts early in the case to dismiss plaintiffs' claims under the IDEA and Section 504 of the Rehabilitation Act (*see* Doc. Nos. 18 and 19), the next dispositive motions briefed by the parties were their 2010 cross-motions for summary judgment. Those motions were fully briefed during the three-month period from March to June 2010. *See* Doc. Nos. 177-193. As for "pretrial briefing," with the exception of the parties' pretrial statements and objections thereto, all other pretrial briefing – including briefing of Defendants' Stipulation on Order of Proof at Trial (Doc. No. 206), Defendants' Motion to Decertify Class (Doc. No. 214), Defendants' Motion for Expedited Briefing on Motion to Decertify Class (Doc. No. 215), Defendants' Motion to Present Oral Direct Testimony (Doc. No. 218), and Defendants' Motion for Relief from Judgment and for Judgment as a Matter of Law (Doc. No. 221) – was instigated by defendants themselves. Most of these motions were efforts to relitigate issues already litigated and decided by the Court. Moreover,

---

[9/]Defendants' subsequent claim (Def. Mem. 12) that they have "far fewer personnel and resources than [p]laintiffs' counsel have at their disposal" is false. Plaintiffs' lead counsel, Terris, Pravlik & Millian, LLP, has an 11-attorney office. Mr. Karam alone did almost all the work on this case, at the same time also handling other cases. Defendants' counsel has an office with hundreds of lawyers. As the Court undoubtedly noted, defendants had three lawyers at trial. Unfortunately, they did not have adequate lawyering earlier in the case.

defendants could have filed most of those motions much earlier than they did, and certainly earlier than the four-week period preceding trial. Accordingly, this briefing did not have to interfere with defendants' e-mail production, even if they waited until three months before trial to begin.

Finally, while mediation certainly demanded a significant amount of the parties' attention for the period that they were actively engaged in it, the parties only met and exchanged settlement proposals during the three-month period from September to December 2010. Thus, even assuming that defendants' counsel could only handle one aspect of litigation at a time, defendants' description of "competing demands" cannot account for defendants' failure to produce responsive e-mails during the periods October 2008 to March 2010 (when summary judgment briefing began) and July to September 2010 (when mediation began).

Plaintiffs submit that defendants' April 14 production of 5,694 "privileged" e-mails, 15,649 "non-privileged" e-mails, and 8 privilege logs does not demonstrate a good-faith effort to comply with their discovery obligations. Instead, it reflects a last-ditch effort to avoid being sanctioned a second time in this case for the same objectionable conduct. Moreover, the fact that defendants produced one set of e-mails by the close-of-business on April 14, and then another set of e-mails 4 hours later, only underscores the rushed nature of defendants' efforts. In this rush, defendants failed to produce almost 3,000 e-mails which they now claim are privileged. Perhaps, if given more time, defendants would have found even more responsive e-mails to produce.

It is of course of great significance that this Court previously had found that defendants had violated their discovery obligations by failing to produce documents that had been requested and failing to produce a privilege log. This Court held that defendants had waived privilege. Nonetheless, defendants went ahead and repeated the improper conduct for which they had been sanctioned. And it is quite extraordinary that they failed to complete a large part of their document

production until after the trial was over.

Plaintiffs respectfully submit that "unjustified delay, inexcusable conduct, and bad faith" have long-characterized defendants' e-mail production, and therefore the Court was justified in deeming defendants to have waived privilege. *See United States v. Philip Morris, Inc.*, *supra*, 347 F.3d at 954. Any other outcome would only serve to reward defendants for their misconduct and encourage them to repeat such misconduct in other cases.

## B. PLAINTIFFS HAVE BEEN PREJUDICED BY DEFENDANTS' FAILURE TO PRODUCE E-MAILS IN A TIMELY MANNER

Defendants argue (Def. Mem. 11) that plaintiffs have not been prejudiced "in any way" by defendants late production of e-mails because they "may submit as exhibits any admissible materials they receive[,] * * * seek to take supplemental deposition testimony from the District's witnesses concerning any such documents[,] and * * * submit supplemental written testimony from their own witnesses concerning such documents." Thus, defendants conclude (Def. Mem. 11-12), plaintiffs will have "a full opportunity to use any late-produced materials just as they could have used any of the other documents produced in this case." This argument is nonsense. The reason the Court kept the trial record open to allow plaintiffs to submit late-produced e-mails was because defendants had not completed production of responsive documents. Defendants' argument, taken to its logical conclusion, would allow them to delay production of any and all relevant documents until after trial, on the theory that plaintiffs would still have "a full opportunity" to use them. Yet, just because plaintiffs have a mechanism for addressing defendants' discovery failures does not mean that the mechanism is the equivalent of the regular mechanisms codified in the Federal Rules of Civil Procedure. As Rule 1 states, those rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

Defendants' suggestions as to how plaintiffs can avoid prejudice obviously will not satisfy Rule 1. Those procedures are not just since plaintiffs' case-in-chief was obviously prejudiced by defendants' failure to complete their production of responsive e-mails before trial. At the very least, plaintiffs have been denied the opportunity to present the case that they would have presented if they had all their evidence before trial and been able to cross-examine defendants' witnesses based on that evidence. Defendants' procedures will delay resolution of this case by this Court if plaintiffs decide to reopen the trial to allow use of the new documents either as part of new direct testimony or for use in cross-examination. Therefore, plaintiffs are under considerable pressure simply to introduce new relevant documents and otherwise not reopen the trial. Finally, all this new post-trial work will add to plaintiffs' costs.

In contrast, defendants do not explain the harm they will suffer if the Court sustains its prior ruling on privilege. As stated above, defendants contend (Def. Mem. 3) that the Court's ruling "will, unless reconsidered, result in grave injustice to the District," yet they do not define what that injustice will be. The closest they come is in a single footnote (Def. Mem. 14, n. 1), in which they state:

> If the District is required to produce documents otherwise subject to a claim of privilege and the Court subsequently grants the District's motion for reconsideration, Plaintiffs already will have reviewed information to which they are not entitled. Once such a disclosure is wrongly compelled, neither Plaintiffs nor the Court will be able to "un-ring the bell," *United States v. Dyer*, No. 3:08-CR-26, 2008 U.S. Dist. LEXIS 41022, at *3 (E.D. Tenn. May 21, 2008), and the District's right to engage in confidential communications will have been destroyed.

The case defendants cite is inapposite and their argument is without merit.

In *United States v. Dyer*, E.D. Tenn., Crim. Action No. 08-26, 2008 WL 2149895, *1 (May 21, 2008), the court was faced with a situation in which the criminal defendant had filed a substantive motion *pro se*, despite the fact that he was represented by counsel. In response to this

motion, the court warned (*ibid.*):

> Without the benefit of legal training and experience, Mr. Dyer may seriously and irreparably damage his defense to these criminal charges. This could come about by his inadvertently revealing attorney-client privileged information, compromising the most effective presentation of his defense or even disclosing to the Court, the public and the Office of the United States Attorney the particulars of his defense strategy. Although the damage may be accidental or unforeseen, it will not be possible to un-ring the bell later. It is in Mr. Dyer's best interest to act through his attorney, who is experienced in defending criminal charges in federal court.

Unlike Mr. Dyer, defendants have not acted without first consulting with counsel. Moreover, they have not "inadvertently reveal[ed] attorney-client privileged information." To the extent that such privileged information is revealed as a result of this Court's order, it is because defendants, through their counsel, failed to produce privilege logs. Accordingly, defendants cannot seriously claim that the Court's order has "destroyed" the District's right to engage in confidential communications. If that right has been destroyed, it has been due to defendants' own grossly negligent actions.

Plaintiffs submit that, given the Court's 2008 decision waiving all privileges due to defendants' failure to produce a privilege log (Doc. No. 107), defendants knew exactly what they needed to do to protect their rights. If protecting privilege was important to them, they would have produced privilege logs on a regular basis. The fact that they did not produce a privilege log until after they were threatened with another sanction of waiver suggests that they are not particularly interested in protecting those rights after all.

## C. DEFENDANTS HAVE NOT BEEN PREJUDICED BY PLAINTIFFS' CONDUCT DURING DISCOVERY AND, EVEN IF THEY HAD, PLAINTIFFS' CONDUCT WOULD NOT EXCUSE DEFENDANTS' DISCOVERY FAILURES

Of the less than four pages of their memorandum devoted to "Analysis" (Def. Mem. 11-14), defendants dedicate more than half to a discussion of plaintiffs' alleged discovery failures. Defendants' criticisms are erroneous and, in any event, are irrelevant to the Court's order waiving

privilege.

First, defendants "take just one example" of an e-mail "between Plaintiffs and their primary expert witness [Dr. Carl Dunst] dating back to January 2010" which plaintiffs produced on February 23, 2011 (emphasis in original). Def. Mem. 12. Using this example, defendants criticize (*ibid.*) plaintiffs for "fail[ing] to mention (much less explain) the fact that it took them more than a year to produce their own few responsive documents * * *." First, it bears noting that this e-mail from Dr. Dunst to plaintiffs' counsel states, in full (Pl. Ex. 10):

> Subject: DC Learns
>
> http://www.dclearns.org/clearinghouse/stats.html
>
> About half way down the front page there is a reference to the literacy levels of adults in DC and a reference to the source of the reported levels.

This is hardly the type of document for which defendants would need a long period of time to review. Moreover, while the Court may consider plaintiffs' production of this e-mail to be untimely, it bears noting that the date of production – February 23, 2011 – is the same date that the parties submitted, and this Court adopted, as a deadline for responses to final interrogatories. *See* Order, dated Sept. 22, 2010 (Doc. No. 201), p. 2 (setting deadline of "42 days before trial"). If defendants agreed that the February 23 deadline would give them sufficient time to review a much longer set of interrogatory responses before trial, they should also agree that the same deadline would give them plenty of time to review the relatively small number of documents that plaintiffs produced on that date. As defendants note (Def. Mem. 12) "this production by Plaintiffs consisted, in its entirety, of 20 documents spanning 149 pages."[10/] Accordingly, defendants cannot claim that they were

[10/] In contrast, defendants contend (Def. Mem. 12) that, as of the date of their motion, their production "comprise[d] more than 30,000 pages of documents in addition to e-mail messages produced electronically that, if produced in hard copy, would have spanned tens of thousands, if not hundreds of thousands, of additional pages." *See also id.*, p. 3 ("Indeed, the District has

prejudiced by the timing of this production.

Second, defendants contend (Def. Mem. 12) that plaintiffs "neglected to produce a document [the 2007 American Community Survey] on which their primary expert [Dr. Dunst] had relied extensively in forming the opinions to which he testified on both on direct and cross-examination." As defendants acknowledge (Def. Mem. 13), "Dr. Dunst had actually cited the document previously in his written direct testimony." *See* Direct Testimony of Dr. Carl J. Dunst, dated Mar. 16, 2011 (Doc. No. 209-1), pp. 12, 34. Defendants argue (Def. Mem. 13) that, because Dr. Dunst cited it, "[p]laintiffs' counsel undisputably were required to produce it before trial." Yet, Rule 26(a)(2), governing disclosure of expert testimony, does not require parties to produce every document upon which their experts rely. Instead, it requires parties to serve a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Plaintiffs informed defendants that Dr. Dunst had considered this document through his written testimony. In fact, this document is one of only five documents included in the list of citations accompanying Dr. Dunst's written testimony. Had defendants been unable to locate a copy, they could have requested one from plaintiffs before trial. They did not. When defendants requested a copy at trial, plaintiffs promptly gave it to them after obtaining it from Dr. Dunst. Defendants did not request additional time to review it before cross-examining Dr. Dunst, but rather moved to strike all of Dr. Dunst's testimony based on the document. When defendants did cross-examine Dr. Dunst, his testimony demonstrated that he relied on the document to provide additional detail as to how certain risk factors could be used to predict eligibility for preschool special education. He did not,

supplemented its production far more frequently than [p]laintiffs, and has produced many thousands more documents"). Plaintiffs submit that they produced fewer documents in discovery because they had fewer responsive documents to produce.

as defendants contend (Def. Mem. 13), cite the document "for a different purpose" than that for which he cited it in his written testimony. In short, defendants have not shown that they were prejudiced in any way by the timing of plaintiffs' production of this document.

In any event, defendants have cited plaintiffs' alleged failure to produce two documents. Defendants undisputedly failed to produce thousands. Even if defendants had shown that plaintiffs had violated their discovery obligations as to these two documents, which they have not, defendants have not shown how the timing of plaintiffs' production is in any way related, much less comparable, to their own extreme delay in producing thousands of responsive e-mails and a privilege log.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Reconsideration should be denied. A proposed order is attached.

Respectfully submitted,

/s/

BRUCE J. TERRIS (D.C. Bar No. 47126)
ALEXANDER R. KARAM (D.C. Bar No. 978703)
Terris, Pravlik & Millian, LLP
1121 12th Street, N.W.
Washington, DC 20005-4632
(202) 682-2100

/s/

JEFFREY S. GUTMAN (D.C. Bar No. 416954)
The George Washington
University Law School
2000 G Street, N.W.
Washington, DC 20052
(202) 994-5797

/s/

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law

1320 19th Street, N.W., Suite 200
Washington, DC 20036
(202) 667-2330

April 18, 2011

*Counsel for Plaintiffs*