UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
DL, *et al.*,                           )
    Plaintiffs,      )
                                        )
    v.               )    Civil Action No. 05-1437 (RCL)
                                        )
DISTRICT OF COLUMBIA, *et al.*,         )
    Defendants.       )
                                        )
_____)

**Memorandum Opinion**

This case is before the Court on defendants' Motion for Reconsideration. Mot. Recons., April 11, 2011, ECF No. 233. Having considered the Motion, the Opposition, the Reply, the record in this case, and the relevant law at length, the Court will deny defendants' Motion for the reasons that follow.

    **I.    Introduction**

Imagine a standup comic who delivers the punch-lines of his jokes first, a plane with landing gear that deploys just *after* touchdown, or a stick of dynamite with a unique fuse that ignites only *after* it explodes. That's what document production after trial is like—it defeats the purpose. Yet, the District's Motion would have this Court bless its decision to violate multiple Court orders, ignore the Federal Rules' carefully calibrated discovery apparatus, and produce thousands of responsive e-mails after trial ended. A discovery violation of this exotic magnitude is literally unheard of in this Court, and when—on the first day of trial—the District's plan was revealed, this Court held that the District had waived objections (including privileges) with regard to all of the unproduced e-mail and ordered it to produce them all within one week of the

1

close of trial. Before the Court now is the District's Motion to reconsider that Order. After exploring the relevant aspects of this case's factual background, the Court will explain its reasons for denying the District's Motion.

### a. Background

On April 6, 2011, the lawyers for the District and the plaintiff class gathered at the courthouse for a bench trial. It should have been a good day for all involved. The plaintiff class had been waiting nearly six years for this Court to decide whether they are entitled to injunctive and declaratory relief for the District's failure to provide them with a free appropriate public education as required under the Individuals with Disabilities and Education Act, 20 U.S.C. § 1400 *et seq.* and other laws. The District, for its part, has often lamented the burden this case has put it under due to its lack of resources and the tremendous amount of work required. And an expeditious and just resolution of cases and controversies is this Court's abiding lodestar. Thus, the first day of trial gave everyone involved something to look forward to. April 6, 2011, though, turned out to be only the beginning of the next outrageous chapter in the ongoing discovery saga that has come to define this case.

Before trial could begin, plaintiffs' counsel asked the Court if he could raise some important preliminary matters. He proceeded to tell the Court that document production from the District was still flooding into his office. Indeed, he said that his office had received thousands of e-mails just days before trial and that the District had indicated that it was going to continue producing thousands of e-mails on a "rolling" basis even *after* the trial concluded. Such a "document dump" *might* be legitimately explained if these e-mails were new and thus couldn't have been produced sooner. But plaintiffs' counsel indicated that many were more than two years old. He moved the Court to compel the production of the rest of the e-mails within one

week and to hold that the District had waived any objections (including privileges) with regard to the documents.

Defense counsel took the lectern but had little to say in response. First, she noted that she was aware of discovery failures by the District's prior counsel but indicated that since she had taken over, the District had been working hard to meet its discovery obligations and had apprised plaintiffs' counsel of its progress every step of the way. Wanting further explanation, the Court asked why these e-mails were just coming to light now. Defense counsel indicated that they were the result of a "supplemental search" that had yielded tens of thousands of e-mails that had to be reviewed for relevance and privilege. She also said that this process of new searches and review had been "ongoing for months." The Court asked her why she failed to mention this at the pretrial conference. She responded that the District didn't know it was going to fail to complete the review process before trial began and thus saw no need to inform the Court of the ongoing discovery.

The Court asked why the District chose to undertake this process in secret without informing it of what was happening. She responded that the District was understaffed, the discovery was voluminous, and there simply were not enough bodies to process it all before trial. The Court was dissatisfied with that answer and—from the bench—granted the plaintiffs' Motion to Compel production and ordered the District to produce all of its e-mails within one week of the close of trial. The deadline imposed would make any motion by plaintiffs to reopen the trial record to introduce newly discovered evidence more timely. The Court also held that the District had waived privilege and objections with regard to the e-mails yet to be produced. Again, litigating privileges and objections post-trial would, in the Court's view, unreasonably delay any possible effort by plaintiffs to reopen the trial record. The Court memorialized that oral

ruling in a written Order. Order, Apr. 7, 2011, ECF No. 232. The District asks this Court to reconsider that Order.

### b. The 2008 Motion to Compel

This Court refereed a strikingly similar discovery debacle in this case in 2008. Plaintiffs served their First, Second, and Third Sets of Requests for Production of Documents on December 28, 2005, September 17, 2007, and September 28, 2007, respectively. Opp'n Mot. Recons. Exs. 1–3, Apr. 14, 2011, ECF No. 236. They specifically included e-mail in their request. Opp'n Mot. Recons. Ex. 1 at 2. On February 4, 2008, plaintiffs filed a motion to compel the District to respond to their document requests. Mot. Compel, ECF No. 91. To that date, the District had produced only seventeen e-mails from Part C staff and none from Part B staff concerning activities publicizing Child Find. *Id.* at 27. On March 6, 2008, one month after plaintiffs filed their Motion to Compel and four days before the District filed their Opposition, the District provided plaintiffs a larger set of e-mails, most of which were dated between December 2006 and November 2007. Reply Mot. Compel 16, ECF No. 101.

On June 27, 2008, the Court granted in part plaintiffs' Motion to Compel production of e-mails and ordered that the District had waived its privilege objections with regard to them. Mem. Op., June 27, 2008, ECF No. 107. The Court noted that "[i]n its discussion of the deliberative process privilege, the District's memorandum in opposition to plaintiffs' motion makes no effort to argue that the District has provided a log sufficient to satisfy its obligations under Rule 26(b)(5)." Mem. Op. 10, ECF No. 107. The Court held that sans a privilege log, the District would not be heard to raise privilege objections. *Id.* It went on to explain its rejection of several of the District's other objections to plaintiffs' document request and ultimately concluded that "the District's performance of its discovery obligations to date has been completely inadequate."

4

*Id.* at 15. Regarding the District's now all-too-familiar strategy of "rolling" document production—which has been its *modus operandi* since this case's inception—the Court explained that the District had apparently "'decided it would file an incomplete answer and then supplement it whenever it pleased.'" *Id.* (quoting *Association of American Physicians and Surgeons, Inc. v. Clinton*, 837 F. Supp. 454, 458 (D.D.C. 1993) (Lamberth, J.)). The Court—in no uncertain terms—"condemned that litigation tactic," emphasizing that it "'w[ould] not tolerate it in future responses in this case.'" *Id.* (quoting same).

Yet even after being called out in a Court order, the District—its head apparently buried in the sand—remained committed to its corrupt production strategy. That is unsurprising in light of its narrow reading of this Court June 27, 2008, Memorandum Opinion. In its Reply brief, the District says that the sole basis for that Opinion was "the District's failure to provide privilege logs." But that is plainly untrue. The District's failure to provide privilege logs was the basis of the Court's decision to reject the District's objections to document requests on the basis of privilege, but as outlined above, the Court's broader purpose was to disabuse the District of its "rolling" production scheme. Indeed, the discussion of privilege logs only accounts for three pages of the Court's twenty-two page Opinion. Mem. Op. 9–11, ECF No. 107. The rest rejects several of the District's other objections and its general discovery conduct. The District's decision to ignore the bulk of this Court's June 27, 2008, Opinion explains, in part, why it continues (even last week) to implement its ill-conceived "rolling" document production scheme. That decision does not, however, explain its obliviousness to the Federal Rules of Civil Procedure that animated this Court's June 27, 2008, Opinion in the first place.

## II. Legal Standard

### a. Motion for Reconsideration under Rule 54(b)

Though "no express rule . . . is needed to justify a motion for reconsideration," Federal Rule of Civil Procedure 54(b) "by its terms allow[s] the trial court to modify its earlier order." *Dellums v. Powell*, 566 F.2d 231, 234 (D.C. Cir. 1977); *see also Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case."). Although this Rule provides a procedural mechanism for courts to reconsider their prior opinions, the actual language of Rule 54(b) sets forth little guidance as to when such review is appropriate. To fill this gap, courts in this district have held that "relief upon reconsideration . . . pursuant to Rule 54(b) is available 'as justice requires.'" *Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010) (quoting *Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000)). "[A]sking 'what justice requires' amounts to determining, within the court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell*, 355 F. Supp. 2d at 539; *see also United States v. Second Chance Body Armor, Inc.*, 709 F. Supp. 2d 52, 55 (D.D.C. 2006)). The relevant circumstances that may warrant reconsideration include "whether the court 'has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court.'" *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (alterations in original); *see also Hoffman*, 681 F. Supp. 2d at 90 (same); *Capitol Justice, LLC v. Wachovia Corp.*, 605 F. Supp. 2d 187, 190 (D.D.C. 2009) (same).

### b. Discovery Matters and Sanctions

#### i. Discretion

Discovery disputes are "for better or worse, the daily bread of magistrate and district judges in the age of the disappearing trial." *Lee v. Max Int'l, LLC*, No. 10-4129, 2011 WL 1651640, at *2 (10th Cir. May 3, 2011) (Gorsuch, J.). This specialization yields expertise, which explains why "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

#### ii. The scope of discovery, document production, and supplementation—Rules 26 and 34

Rule 26(b) governs the scope of discovery and in relevant part says that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ." Fed. R. Civ. P. 26(b). Rule 34 governs document production and provides that a party may request that any other party produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). If a proper request is made, "The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the Court." Fed. R. Civ. P. 34(b)(2)(A). "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Rule 26(e) requires a party who has "responded to . . . [a] request for production" to "supplement or correct its disclosure or response . . . in a timely manner if the

party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e).

### iii. Discovery sanctions—Rule 37

Rule 37 provides district courts broad discretion to sanction a party that fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2); *Bonds v. District of Columbia*, 93 F.3d 801, 807 (D.C. Cir. 1996) ("Under Rule 37, the district court has broad discretion to impose sanctions for discovery violations.") (citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642–43 (1976) (per curiam)); *see also Flynn v. Dick Corp.*, 481 F.3d 824, 835 (D.C. Cir. 2007) (acknowledging that the district court has broad discretion in managing discovery, and "[t]his deference [accorded by the circuit] extends to the district court's imposition of discovery sanctions") (citing *Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 445 (D.C. Cir. 1994)); *Mojarad v. Aguirre*, No. CIV.A.05-0038, 2006 WL 785415, at *10 (D.D.C. March 27, 2006) (acknowledging that the list of sanctions enumerated in Rule 37(b)(2)(A) is neither exhaustive nor mutually exclusive, and "the court may impose [more than one of the enumerated sanctions] at the same time[ ]"; "[t]he imposition of the number and type of sanctions employed under [Rule 37(b)(2)(A) ] is left to the discretion of the trial judge") (citations omitted); *Bolger v. District of Columbia*, 248 F.R.D. 339, 343 (D.D.C. 2008); *Henry v. Onsa*, No. CIV.A.05-2406, 2008 WL 552627, at *2 (D.D.C. Feb. 27, 2008); *Handy v. Shaw, Bransford, Veilleux & Roth*, No. CIV.A.00-2336, 2006 WL 3791387, at *8 (D.D.C. Dec. 22, 2006) ("Indeed, the 'district court has been delegated a good deal of discretion in making discovery orders and enforcing them with sanctions[.]' ") (citation omitted); *United States v. Proceeds of Drug Trafficking Transferred to Certain Foreign Bank Accounts*, 252 F.R.D. 60, 62-63 (D.D.C.2008) ("Sanctions

are integral to the operation of the judicial system [,]" and Rule 37 "allows the court to apply a variety of sanctions to any *party* in a case.") (citations omitted).

Rule 37 authorizes sanctions in a variety of circumstances, but only two are relevant here. The first is when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Rule 37(b)'s plain language requires the moving party to clear two hurdles before it may access the Rule's sanctioning mechanisms: (1) there must be a discovery order in place, and (2) that order must be violated. *Id.* Once those two hurdles are cleared, the Rule allows for several specific types of sanctions, including dismissal of the action and default judgment. *Id.* at 37(b)(2)(A)(i)–(vii). Its next subsection emphasizes that "[i]nstead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). As mentioned above, Rule 37(b)(2)(A)'s list of possible types of sanctions is not exclusive. *Mojarad v. Aguirre*, No. CIV.A.05-0038, 2006 WL 785415, at *10 (D.D.C. March 27, 2006) (acknowledging that the list of sanctions enumerated in Rule 37(b)(2)(A) is neither exhaustive nor mutually exclusive, and "the court may impose [more than one of the enumerated sanctions] at the same time[ ]"; "[t]he imposition of the number and type of sanctions employed under [Rule 37(b)(2)(A) ] is left to the discretion of the trial judge") (citations omitted). Thus, a court may exercise discretion to fashion sanctions appropriate for the facts before it under Rule 37(b).

The second situation is when a party fails to supplement its discovery responses, as required by Rule 26(e). Fed. R. Civ. P. 37(c)(1). Unlike the first situation, no court order needs to be in place for the imposition of Rule 37(c) sanctions. Instead, once the party seeking sanctions has shown a violation of Rule 26(e), the party facing possible sanctions must prove that its

9

failure to comply with the rule "was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule 37(c) also says that a court "may impose other appropriate sanctions" in addition to those available under Rule 37(b). *Id.* at 37(c)(1)(C).

When calibrating the extent of the sanction, Rule 37's central requirement is that "any sanction must be just." *Bonds*, 93 F.3d at 808 (citations and internal quotation marks omitted). "The choice of sanction should be guided by the concept of proportionality between offense and sanction." *Id.* (citations and internal quotation marks omitted). "In determining whether a severe sanction is justified, the district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future." *Id.* (citations omitted). The D.C. Circuit has held that the district court's interest in deterrence is a legitimate one, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* at 808 (citing *Nat'l Hockey League*, 427 U.S. at 643). It has held that "waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *United States v. Phillip Morris, Inc.*, 347 F.3d 951, 954 (2003). As the Court will explain below, the District's conduct meets that standard, and therefore, waiver of privilege was an appropriate sanction.

The District proposes a different and incorrect legal standard for this case. It says that "Rule 37(d) governs the imposition of sanctions for failure to comply with, *inter alia*, a request to produce documents pursuant to Rule 34(b) (or, by extension, a privilege log pursuant to Rule 26(b)(5)." Mot. Recons. 8. The District argues that Rule 37(d) authorizes sanctions only in response to a *complete* failure to respond to a request for production—not merely an incomplete or inadequate response. *Id.* at 9 (citing *First Sav. Bank, F.C.B. v. First Bank Sys., Inc.*, 902 F.

10

Supp. 1356, 1361 (D. Kan. 1995); *see also Boca Investerings P'ship v. United States*, Civ. No. 97-602 (PLF), 1998 U.S. Dist. LEXIS 11840, at *7–*8 (D.D.C. Jan. 20, 1998); *E. Techs., Inc. v. Chem-Solv, Inc.*, 128 F.R.D. 74, 75 (E.D. Pa. 1989)). The problem is that although the District is correct that it did not completely fail to respond, as will be discussed at length below, it did violate multiple Court orders as well as Rule 26(e)'s duty to supplement its responses. Accordingly, Rule 37(d) simply doesn't apply here.

### III. Analysis

#### a. The Basis of the April 7, 2011, Order

Why does the Court deny the District's Motion? To borrow a common saying, there is a short answer and a long one. The short answer is that the Order is just in light of the District's repeated, flagrant, and unrepentant failures to comply with Court orders. The long answer, which the Court provides below, requires it to explain those failures in detail and to give its reasons for rejecting the District's arguments for reconsideration. First, the Court will explain the District's various discovery obligations and how it violated them. Then, it will show that the District was totally without excuse for those violations. Next, it will discuss its reasons for concluding that there was no practical alternative to the sanctions it imposed. Finally, it will emphasize the deterrence values that guided its decision. After this discussion of the basis of its decision to sanction the District is complete, the Court will respond to each of the District's arguments as to why it should reconsider its decision.

The Court's June 27, 2008, Order, discussed above, did not simply direct the District to "go forth and produce" documents. Instead, recognizing that the armature of the Federal Rules provided insufficient structure to gain the District's compliance, the Court gave the District several very specific directives to help it succeed in navigating the discovery phase of this

litigation. Among other things, it instructed the District to "submit to this Court and to the plaintiffs a statement certifying the method that defendants used to search for documents responsive to Plaintiffs' First, Second, and Third Sets of Requests for Production of Documents and stating in detail the actions that defendants took" by August 5, 2008. Order 3, June 27, 2008, ECF No. 108.

After the usual to and fro of requests for extensions of time and amended scheduling orders, the Court had finally extended the District's production deadlines under the June 27, 2008, Order all the way until October 14, 2008. Order, Sept. 15, 2008, ECF No. 134. The Court's Order made clear that "the deadline for defendants' completing the review and production or identification on a privilege log of all remaining e-mails and serving a certification that defendants have done so, is extended to and including October 14, 2008." *Id.* Yet, even after being recently sanctioned for discovery violations, and despite benefitting from multiple extension of time, the District failed to comply with this Court's Order. Its privilege log was nearly a month late, Opp'n Mot. Recons. Ex. 7, Apr. 18, 2011, ECF No. 236–8, and its certification, though not as tardy, didn't arrive until October 15, 2008. Defs.' Notice of Filing Certifications in Compliance Court Order, Oct. 15, 2008, ECF No. 136.

To its credit, the District's late-filed certification did "declare under penalty of perjury" that it had produced all of the documents it had that were responsive to this Court's June 27, 2008, Order. *Id.* at Ex. 1. But even that statement turned out to be unreliable, as responsive documents from April *2006* and February 2008 were still arriving at plaintiffs counsel's office as late as January 18, 2011. Opp'n Mot. Recons. Ex. 8, Apr. 18, 2011, ECF No. 236-9.

Importantly, the District's production of e-mails from April 2006 and February 2008 also violated another of this Court's discovery orders. On December 22, 2008, this Court ordered that

fact discovery was due by March 16, 2009. Order, ECF No. 138. That Order was never amended even though the Court entered other scheduling orders adjusting the time for expert discovery and pretrial matters. Thus, the District's January 18, 2011, production of e-mails from April 2006 and February 2008 violated two of this Court's discovery Orders.

But as bad as the District's violation of multiple discovery orders was, that wasn't its most appalling discovery abuse in this case. That ignominious designation is reserved for the District's violation of Rule 26(e)'s duty to supplement its discovery responses. Rule 26(e)(1) requires a party who has responded to a request for production to supplement its response either in a timely manner or as ordered by the Court. Fed. R. Civ. P. 26(e)(1). On September 22, 2010, this Court ordered the parties to supplement their document production up to the day of trial. Order, Sept. 22, 2010, ECF No. 201. Plaintiffs' production of thousands of e-mails—some more than two years old—after the date of trial was a clear violation of their duty under Rule 26(e)(1)(B) to comply with this Court's supplementation orders. The Court notes that it is very likely that some of the e-mails produced after trial also violated the December 22, 2008, and June 27, 2008, Orders, but because the Court has not had a chance to review them in detail, it cannot be certain. In any event, because the District violated multiple Court orders as well as its obligations under Rule 26(e), it was open to sanctions under Rules 37(b) as well as 37(c). Yet, its bare discovery violations are just one of many reasons for the Court's decision to order its privilege objections waived. The Court proceeds to explain several other justifications.

First, the District has absolutely no excuse for its behavior in this case. It knew of its discovery obligations, and it knew how to file a motion for extension of time. This Court granted nearly every such motion it saw in this case, and there were many. If at any point the District realized that it was behind, or for any other reason could not comply with this Court's Orders, it

should have informed the Court of the problem. It could have filed another motion for an extension of time or a status update to alert the Court to the issue. It could have said something at any of the multiple status conferences held in this case or at the pretrial conference. Instead, the District failed to produce documents for over two years, violated multiple Court Orders in the process, and instead of informing the Court of the situation at any point along the way, it simply sprung the news on the first day of trial. The District's complaints of lack of resources and time pressure fall on deaf ears because it failed to seek relief through any of the Rule-based mechanisms discussed above. Accordingly, it is without excuse.

Second, the Court's purpose in ruling that the District had waived privilege wasn't limited to adjusting the District's behavior. Instead, the Court sought to specifically deter the District from misbehaving in this way in the future and to generally deter other parties from doing the same by putting them on notice of the fact that this Court takes the Federal Rules' discovery framework seriously. The Court felt that strong specific deterrence was particularly necessary in light of the District's failure to get the message the first time after the Court's unequivocal rejection of its "rolling" discovery method on June 27, 2008. Mem. Op., ECF No. 107.

Third, the Court had no practical alternative short of entering a default in the case. The District chose not to bring this situation to the Court's attention until the day of trial, leaving the Court with very few options. It's hard to estimate how long this case might have been delayed had the Court not held that the District waived privilege. After all, plaintiffs still haven't reviewed those thousands of newly produced documents, and they still haven't responded to the District's privilege objections. As is well-known, such disputes can be quite protracted, and given this case's history, there is every reason to believe they would be here, too. After all of the

privilege disputes were sorted out, it is possible that plaintiffs would have to redepose witnesses, alter trial strategy, or commence a brand new motions practice as a result of the information found in the new, voluminous production. Thus, there is no telling how long the delay might have been had the Court not held that the District had waived privilege. What is certain is that the delay would have overcrowded this Court's already congested trial calendar and simultaneously and unfairly increased the costs for both parties as they digested this new material and adjusted trial strategies accordingly.

As the Tenth Circuit Court of Appeals recently asked in a similar case: "How many times can a litigant ignore his discovery obligations before his misconduct catches up with him?" *Lee v. Max Int'l, LLC*, No. 10-4129, 2011 WL 1651640, at *1 (10th Cir. May 3, 2011) (Gorsuch, J.). It concluded that although "our justice system has a strong preference for resolving cases on their merits whenever possible . . . no one . . . should count on more than three chances to make good a discovery obligation." *Id.* The District has—to put it mildly—exceeded its limit. Its failure to heed its discovery obligations from 2005 until 2008 earned it a thoroughgoing rebuke on June 27, 2008. Mem. Op., ECF No. 107. Undaunted, it persisted in its rejected "rolling" document production strategy clear through the end of trial and beyond. Importantly, this not only violated the Court's June 27, 2008, Order, it also constituted a flagrant violation of the Court's December 22, 2008, Scheduling Order. The District had countless opportunities to stop ignoring its discovery obligations. It chose not to, and it should not be surprised that its misconduct has caught up with it.

### b. The District's Arguments

Having explained the basis of its April 7, 2011, Order, the District's arguments can be easily dispatched. It has three: (1) the District has made a good-faith effort to produce all

15

responsive e-mails before the trial; (2) plaintiffs are not prejudiced by its post-trial production of responsive e-mails; and (3) plaintiffs have also committed discovery violations. Each of these arguments is wholly without merit.

Whether the District made a good-faith effort to produce all responsive e-mails before the trial is irrelevant. As explained above, it was not sanctioned for failing to make a good-faith effort. It was sanctioned for openly, continuously, and repeatedly violating multiple Court orders, failing to adhere to or even acknowledge the existence of the Federal Rules' discovery framework, and committing a discovery abuse so extreme as to be literally unheard of in this Court. The Rules require more than simply making a good-faith effort to produce documents. They require adherence to a very precise framework for navigating the discovery process. Moreover, the duty to adhere to clear Court orders is among a lawyer's most basic. Were it not for those two directives—the Federal Rules' discovery framework and Court orders regarding discovery—discovery would devolve into pure bedlam. Disciplined adherence to those Rules and Orders on the part of courts as well as parties is the *only* tool our system has to wrangle the whirlwind as it were and tame an otherwise unmanageable part of the litigation process. A good-faith effort to produce documents in the absence of adherence to Court orders and the Federal Rules is useless.

The extent to which plaintiffs were prejudiced by the District's post-trial production of responsive e-mails was only one of many factors that contributed to this Court's decision to sanction the District. Again, the Court sanctioned the District for violating its Orders and to deter the District *and other parties* from behaving the same way in the future. These reasons are wholly independent of any prejudice plaintiffs may suffer as a result of the District's misbehavior. Moreover, the Court rejects the District's attempt to profit from their discovery

misconduct by shifting the burden to plaintiffs to demonstrate how they were prejudiced by that misconduct. Putting those considerations to the side, though, it's clear that the District's misconduct has prejudiced plaintiffs. As discussed above, the District's delayed production and supplementation of its responses to document requests likely left plaintiffs with a compromised trial strategy. Moreover, lacking access to all of the relevant information, their cross-examination of defendants' witnesses was unfairly limited. Finally, the District's discovery mischief has resulted in increased costs and unnecessary delays for the plaintiff class. Those burdens will only increase if plaintiffs choose to reopen the trial to use the new documents either as part of new direct testimony or for cross-examination purposes. Therefore, the Court finds that the District's discovery violations did prejudice plaintiffs.

Finally, whether plaintiffs have also committed discovery violations in this case is also totally irrelevant to whether this Court's April 7, 2011, Order was just. It would only waste time for the Court to count the parties' various rights and wrongs. Each party is responsible for its own obligations under Court orders and the Rules. The District would be well-advised to invest the time it's spent ankle-biting the plaintiffs for various alleged discovery abuses in bringing its own conduct in line with the Federal Rules of Civil Procedure and this Court's Orders. In short, this is a prime example of the lesson many learn as children: When you point one finger at another, three point back at you. Finally, insofar as the District is correct that plaintiffs have committed other discovery abuses—and the Court draws no conclusion on that score—all is not lost. After all, as the Court has repeatedly emphasized, one purpose of its April 7, 2011, Order was to generally deter other parties—including plaintiffs—from engaging in behavior similar to the District's.

## IV. Conclusion

For the reasons discussed above, the District's Motion for Reconsideration is denied. A separate Order will issue today memorializing this decision.

Signed by Royce C. Lamberth, Chief Judge, on May 9, 2011.