**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**DL**, *et al.*,                                    )
                                                    )
          **Plaintiffs,**                            )
                                                    )
     **v.**                                          )          **Civil Action No. 05-1437 (RCL)**
                                                    )
**DISTRICT OF COLUMBIA**, *et al.*,                  )
                                                    )
          **Defendants.**                            )
_____ )

## MEMORANDUM OPINION (CLASS ACTION ISSUES)

This opinion addresses the question of whether the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) requires modification of the class certification order in this case. Before the Court are the following motions: defendants' Motion [214] to Decertify the Class, plaintiffs' Motion [271] for Class Certification, and plaintiffs' Motion [270] for Leave to File their Second Amended Complaint for Declaratory and Injunctive Relief. Also before the Court are a battery of meta-motions for leave to file sur- (and even sur-sur-) replies: plaintiffs' Motion [259] for Leave to File a Sur-Reply to Defendants' Reply in Support of its Motion to Decertify the Class, defendants' Motion [288] for Leave to File Sur-Replies, and plaintiffs' Motion [290] for Leave to File Sur-Sur-Reply Briefs in Support of Plaintiffs' Motion for Leave to File their Second Amended Complaint and Plaintiffs' Motion for Class Re-Certification. Having carefully considered the Motions, the Oppositions, the Replies, the entire record in this case, and the applicable law, the Court will grant in part and deny in part both defendants' Motion [214] to Decertify the Class and plaintiffs' Motion [271] for Class Certification. The Court will also deny without prejudice plaintiffs' Motion [270] for Leave to File a second amended complaint, will grant plaintiffs' Motion [259] for Leave to file a sur-

reply, will grant in part and deny in part defendants' Motion [288] for Leave to File Sur-Replies, and will deny plaintiffs' Motion [290] for Leave to File Sur-Sur-Reply Briefs.

## I.     BACKGROUND

The Court assumes familiarity with its prior opinions in this case, which set out the factual and procedural background in detail.  *See, e.g.*, *DL v. District of Columbia*, 730 F. Supp. 2d 84, 87–88 (D.D.C. 2010); *DL v. District of Columbia*, 237 F.R.D. 319, 320–21 (D.D.C. 2006).  Since the instant motions concern class certification and the impact of the *Wal-Mart* case upon this action, the Court will briefly set forth the facts germane to these issues.

The named plaintiffs—former preschool-aged children in the District with various disabilities—filed suit in July 2005, alleging that defendants had engaged in a pattern and practice of failing to provide special education and related services to them and other children, in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), implementing regulations, the Due Process Clause of the Fifth Amendment, and District of Columbia law.  Am. Compl. [61] ¶1–2. Plaintiffs sought declaratory and injunctive relief, reimbursement for funds expended by them to obtain education services denied them by defendants' legal violations, and "compensatory education."  *Id.* at 33–35.

In August 2006, the Court certified a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.  Order [58] 1, Aug. 25, 2006.  The plaintiff class is defined as:

> All children who are or may be eligible for special education and related services, who live in, or are wards of, the District of Columbia, and (1) whom defendants did not identify, locate, evaluate or offer special education and related services to when the child was between the ages of three and five years old, inclusive, or (2) whom defendants have not or will not identify, locate, evaluate or offer special education and related services to when the child is between the ages of three and five years old, inclusive.

*Id.*

Toward the end of discovery, the parties filed cross-motions for summary judgment. In August 2010, the Court ruled upon those motions and concluded, among other things, that defendants "denied a [free appropriate public education ("FAPE")] to a large number of children aged 3 to 5 years old, in violation of § 1412(a)(1)(A) of the IDEA." Mem. Op. [198] 15, Aug. 10, 2010. However, this ruling applied only for the period 2007 and earlier, which were the only years for which data was available. *Id.* at 14.

In 2011, and about a month before a scheduled bench trial that would determine defendants' remaining liability, defendants filed a Motion [214] to Decertify the Class, arguing that plaintiffs lacked standing and could no longer satisfy the commonality or typicality requirements of Rule 23(a). Defs.' Mot. Decertify [214] 4–6.

In April 2011, before ruling on defendants' decertification motion, the Court held a two-day bench trial on the question of defendants' liability for the period 2008 to the present. At the end of the trial, the Court ordered the parties to file proposed findings of fact and conclusions of law, reserving decision for a later date. Trial Tr. 90:12–16, Apr. 7, 2011.

However, before this Court ruled, an opinion of significant importance to federal class-action litigation came down from the United States Supreme Court. In *Wal-Mart Stores, Inc. v. Dukes*, the Court held, first, that the certification of a class of 1.5 million female employees was inconsistent with the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure. *Wal-Mart*, 131 S. Ct. at 2556–57. Plaintiffs, who alleged that Wal-Mart had discriminated against them on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e-1 *et seq.*, had argued that commonality was present because all class members suffered discrimination at the hands of "a strong and uniform

3

'corporate culture' [that] permits bias against women to infect . . . the discretionary decisionmaking of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory practice." *Wal-Mart*, 131 S. Ct. at 2547–48.  To prove this proposition, plaintiffs relied upon statistics indicating pay and promotion disparities between men and women, 120 anecdotal reports of discrimination, and expert testimony on Wal-Mart's "culture," which concluded that Wal-Mart was "vulnerable" to gender discrimination. *Id.* at 2549.

The Supreme Court found that the plaintiffs' proof failed to establish commonality. *Id.* at 2554.  In reaching this conclusion, the Court held that commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury' . . . ." *Id.* at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Furthermore,

> Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.*  The Court also made clear that the type of claim involved must have an important bearing on the commonality analysis.  It stated that, in *Wal-Mart*, "proof of commonality necessarily overlaps with [plaintiffs'] merits contention that Wal-Mart engages in a *pattern or practice* of discrimination.  That is so because, in resolving an individual's Title VII claim, the crux of the inquiry is 'the reason for the particular employment decision.'" *Id.* at 2552 (quoting *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)).  Moving from the individual level to a class action involving millions of individuals and millions of individual employment decisions, the Court stated that the Title VII plaintiffs had to present "some glue holding the alleged *reasons* for all those [employment] decisions together," such as a biased testing procedure or "significant proof" that the employer "operated under a general policy of discrimination." *Id.*

4

Concluding that the *Wal-Mart* plaintiffs' were "worlds away" from such proof, *id.* at 2554, the Court determined that they had failed to "establish[] the existence of any common question." *Id.* at 2556–57.

The Supreme Court's second principal holding in *Wal-Mart* concerned whether the class had been properly certified under Federal Rule of Civil Procedure 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." The *Wal-Mart* plaintiffs sought not only injunctive and declaratory relief under Rule 23(b)(2), but also an award of monetary damages in the form of back pay. *Wal-Mart*, 131 S. Ct. at 2547. The Court concluded that since Rule 23(b)(2) did not "authorize class certification when each class member would be entitled to an individualized award of monetary damages," the class was improperly certified. *Id.* at 2557. Such claims properly belong in Rule 23(b)(3), not Rule 23(b)(2). *Id.* at 2558.

A couple of weeks after the Supreme Court issued the *Wal-Mart* opinion, defendants in this case filed a Supplemental Memorandum [265] of Law in further support of their motion to decertify the class. They argued that since plaintiffs had "bundled together [in their Complaint] multiple different allegations of a variety of different provisions of the IDEA, the Rehabilitation Act, and local District of Columbia law," plaintiffs had essentially "amalgamat[ed] . . . a variety of provisions of a single statutory scheme," an approach defendants contend *Wal-Mart* expressly rejected. Defs.' Supp. Mem. [265] 2. Defendants also urged decertification of plaintiffs' claims for reimbursement and compensatory education under Rule 23(b)(2), in line with *Wal-Mart*'s other holding. *Id.* at 3–5. In response, plaintiffs argued that *Wal-Mart*'s holding as to the commonality requirement did not require decertification, but announced their intention, should the Court conclude otherwise, to file a renewed motion to certify the class and a motion for leave

to amend the Complaint, this time reformulating the class to contain subclasses and seeking a "hybrid" recertification of the class under both Rules 23(b)(2) and (b)(3).  Pls.' Supp. Mem. [267] 2.

In August 2011, as advertised, plaintiffs filed a Motion [271] for Class Certification and a Motion [270] for Leave to File their Second Amended Complaint for Declaratory and Injunctive Relief.  This new complaint retained the original class definition but divided the class into four subclasses.  Pls.' Mot. Leave [270], Ex. 1 [270-2] at ¶80.  Plaintiffs argued that Rules 23(a)(1)–(4), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure were satisfied as to the class as a whole and each of the new subclasses.  *Id.* ¶81.

## II.      STANDARD OF REVIEW

Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure states that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  *See also Falcon*, 457 U.S. at 160.  This provision gives trial courts wide discretion to modify class certification orders in various ways to respond to subsequent developments in the case, in order to promote its fair and efficient adjudication.  *Eisen v. Carlisle*, 417 U.S. 156, 184–85 (1974).  For example, the Federal Rules permit a trial court to divide a class into subclasses that are each treated as a class under Rule 23.  Fed. R. Civ. P. 23(c)(5).  In addition, courts can certify only a limited set of issues, or address certain issues on a classwide basis while managing others (such as damages and individual affirmative defenses) at the conclusion of the classwide trial.  *Walsh v. Ford Motor Co.*, 106 F.R.D. 378, 399 (D.D.C. 1985).

With regard to the familiar substantive requirements of class certification, Rule 23(a) permits certification only if:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

6

> (3)     the claims or defenses of the representative parties are typical of the
>          claims or defenses of the class; and
>
> (4)     the representative parties will fairly and adequately represent the interests
>          of the class.

Fed. R. Civ. P. 23(a).  A plaintiff seeking class certification must "affirmatively demonstrate his compliance with the Rule," and certification is proper only if the trial court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 131 S. Ct. at 2551 (quotation marks and citations omitted).

In addition to the four prerequisites of Rule 23(a), a party seeking class certification must demonstrate that at least one of the provisions of Rule 23(b) is satisfied.  Here, plaintiffs originally sought class certification pursuant to Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

## III.   ANALYSIS

### A.  Defendants' Motion [214] to Decertify the Class

#### 1.  Standing

As an initial matter, since this case was filed, each of the named plaintiffs has grown older.  Consequently, as defendants point out, they are no longer within the 3- to 5-year age group of the class and so, unlike the rest of the class, the named plaintiffs are not at risk of being denied a FAPE in the future.  Defs.' Reply [252] 2.  Therefore, no injury threatens the named plaintiffs that an award of declaratory or injunctive relief would redress.  According to defendants, this fact strips this Court of subject matter jurisdiction because the named plaintiffs can no longer satisfy the requirements of Article III standing to seek injunctive relief.  Defs.' Mot. Decertify [214] 6.

The Court concludes, contrary to defendants' contentions, that the named plaintiffs continue to satisfy the requirements of Article III standing.  To establish standing, a plaintiff must identify an injury in fact that is actual or imminent and traceable to the challenged action of the defendant, and show as well that it is likely, and not merely speculative, that a favorable decision would redress the plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The standing doctrine applies to class actions as it does in other federal cases, and the named plaintiffs "must show that the threat of injury in a case . . . is 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Sosna v. Iowa*, 419 U.S. 393, 402–03 (1975) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  Furthermore, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea*, 414 U.S. at 494.

However, the Supreme Court has also held that a "controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Sosna*, 419 U.S. at 402.  This is because once a class is certified, it acquires "a legal status separate from the interest asserted by [the named plaintiff]." *Id.* at 399.  The named plaintiff may therefore continue to represent the interests of the class, so long as she continues to "fairly and adequately protect the interests of the class." *Id.* at 404 (citing Fed. R. Civ. P. 23(a)(4)).  Also, in line with *Sosna*, and specifically within the context of class actions brought against local school systems for violations of the IDEA, courts have held that the mere fact that the named plaintiffs' claims have become moot by virtue of changes in circumstances easily foreseen at the outset does not strip a court of jurisdiction or otherwise call into question the named plaintiffs' ability to serve as class representatives. *See, e.g.*, *M.A. ex rel. E.S. v. Newark Pub. Sch.*, No. 1-3389(SRC), 2009 WL 4799291, at *10 (D.N.J. Dec. 7, 2009).

Here, there is no question that the named plaintiffs had standing at the time they filed their complaint and at the time of certification. Defendants' extensive discussion of *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) is beside the point, as that case did not involve a class action. Furthermore, *Lyons* is distinguishable from situations where, as here and as in *Sosna*, the named plaintiffs had standing at the time of the complaint and at the time of certification. Here, it was obvious to everyone involved that this Court's power to remedy the named plaintiffs' injuries via injunctive or declaratory relief would dissipate during the time that would be required to resolve the controversy, further supporting the Court's conclusion that Article III standing continues to be satisfied. *See Sosna*, 419 U.S. at 401–02.

Furthermore, the Court finds that the named plaintiffs will continue to adequately represent the interests of the class. The class representatives and their counsel have adequately and competently urged the interests of the class in each stage of this litigation, and defendants have failed to identify any interests of the class representatives that conflict with those of the class they represent.

### 2. Rule 23

In their motion, defendants challenge continued certification on the grounds that the class fails to satisfy the commonality and typicality requirements of Federal Rule of Civil Procedure 23(a). Defs.' Mot. Decertify [214] 4. Defendants also challenge certification of plaintiffs' claims for reimbursement and compensatory education under Rule 23(b)(2). *Id.* at 5. As to this latter issue, plaintiffs concede that *Wal-Mart* prohibits certification of claims for individualized monetary damages within a 23(b)(2) class, Pls.' Mem. Supp. [271-2] 4. The Court therefore concludes that plaintiffs' claims for reimbursement and compensatory education expenses must be decertified, and defendants' motion will be granted as to that issue.

9

The Court will now proceed to address the question of whether the class continues to satisfy the commonality and typicality requirements of Rule 23.

### a. Rule 23(a)(2): Commonality

Defendants' primary challenge to continued certification concerns Rule 23(a)(2), which requires, as an indispensable prerequisite to class certification, that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single [common] question will do." *Wal-Mart*, 131 S. Ct. at 2556 (citations and internal quotation marks omitted). To establish commonality, the class representatives must demonstrate that the members of the class "have suffered the same injury." *Id.* at 2551. Commonality requires that all of the class members' claims "depend on a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, plaintiffs have amply demonstrated that there are questions of law and fact common to the class. All of the class members have suffered the same injury: denial of their statutory right to a free appropriate public education. Defendants argue that plaintiffs have impermissibly "bundled together multiple different allegations" of violations of various laws. Defs.' Supp. Mem. [265] 1–2. However, these differing allegations only represent the differing ways in which defendants have caused class members' common injury. For example, when defendants failed to put policies and procedures in place to ensure that "all" children with disabilities in the District were "identified, located, and evaluated," 20 U.S.C. § 1412(a)(3)(A), those failures necessarily infringed upon such children's FAPE right because a disabled child whom defendants have not identified, located, or evaluated will not receive a FAPE. Likewise, a disabled child who does not receive a "smooth and effective transition" from Part C early

intervention to Part B preschool programs by their third birthday, *id.* § 1412(a)(9), will not receive her statutory entitlement to a FAPE.

This is not simply a matter of common sense, but is reflected in the statutory definition of a FAPE and its construction by the U.S. Supreme Court.  The IDEA defines a "free appropriate public education" as "special education and related services . . . ."  *Id.* § 1401(9).  The term "related services" is in turn defined as:

> . . . transportation, and such developmental, corrective, and *other supportive services* . . . as may be required to assist a child with a disability to benefit from special education, and *includes the early identification and assessment of disabling conditions in children.*

*Id.* § 1401(26)(A) (emphasis added).  The Supreme Court has given the term "related services" a broad construction, reading it to encompass services that enable disabled children to gain "meaningful access to education that Congress envisioned."  *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 74 (1999).  The various state obligations within the IDEA, including the obligation to identify, locate, and evaluate all disabled children,  20 U.S.C. 1412(a)(3)(A), and to provide a "smooth and effective transition" from early intervention programs to preschool, *id.* § 1412(a)(9), are either reflected in the IDEA's definition of a FAPE as including "identification" and "assessment" or, in the case of section 1412(a)(9)'s "transition" obligation, are "supportive services" that enable disabled children to gain meaningful access to special education.  In sum, each one of the superficially different allegations in this case points back to a basic injury common to all members of the class: the denial of their right to a FAPE.  Furthermore, unlike in *Wal-Mart*, this common question of *whether* class members received a FAPE is susceptible to classwide proof—*e.g.*, statistical evidence indicating that, compared to similar jurisdictions, the District of Columbia is underserving its population of disabled children.  *See* Disputed Facts Reply [183-1] 6.

Against this conclusion, defendants claim that *Wal-Mart* requires not only that the class members suffer the same injury, but that this common injury must stem from a common cause. Defs.' Reply [268] 2–3. This, however, is not what *Wal-Mart* requires. The *Wal-Mart* case involved a Title VII claim, the "crux" of which was "the reason for the particular employment decision." *Wal-Mart*, 131 S. Ct. at 2552. In this case, the "crux" is different: whether "all children" with disabilities in the District are getting a FAPE. 20 U.S.C. § 1412(a)(1)(A). Defendants' liability in this case does not hinge on their state of mind when they denied disabled children a FAPE,[1] or on any particular cause. *See Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176(RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011). Therefore, while defendants are correct that "classmembers' denial of a FAPE occurred for a multitude of different reasons," Defs.' Reply [268] 3, the reasons for that common injury do not also have to be common to all members of the class.

Even assuming that defendants have read and applied *Wal-Mart* correctly, plaintiffs have presented significant proof or "glue" binding together the various reasons why individual class members were denied a FAPE—namely, "systemic failures" within defendants' education system. Am. Compl. [61] 3. Plaintiffs presented credible evidence of defendants' ineffective policies and practices, which persisted for years without leading to any significant increase in the number of preschool-age children receiving a FAPE. *See, e.g.*, Dunst Direct Testimony, Pls.' Ex. 1, p. 27; *see also* Pls.' Supp. Mem. [267] 6–8. Indeed, this Court has found that at least for the period up to and including 2007, plaintiffs presented conclusive evidence that their injuries

---

[1] Of plaintiffs' claims, only the Rehabilitation Act claim requires them to show the "reason" why they were denied a FAPE. 29 U.S.C. §794(a) (Section 504 of the Rehabilitation Act), 34 C.F.R. § 104.33 (implementing regulations). However, while plaintiffs must show "something more than a mere failure to provide the 'free and appropriate public education' required by the IDEA," Order [55] 3–4, Aug. 25, 3006, proof of that basic denial is common to plaintiffs' Rehabilitation Act claim and to all of their other claims.

were the result of defendants' "bad faith or gross mismanagement."  Mem. Op. [198] 23, Aug. 8,

2010.  In sum, the "glue" found lacking in *Wal-Mart* is amply demonstrated here.

### b.  Rule 23(a)(3): Typicality

Defendants also state in passing in their motion that the class should be decertified

because plaintiffs' cannot satisfy the typicality requirement of Rule 23(a)(3) of the Federal Rules

of Civil Procedure.  Defs.' Mot. Decertify [214] 2.  Rule 23(a)(3) states that a class action may

be certified only if "the claims and defenses of the representative parties are typical of the claims

or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is generally satisfied when the

plaintiffs' claims "arise from the same course of conduct, series of events, or legal theories of

other class members."  *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D.D.C.

2006).  The requirement serves to ascertain whether the action is most efficiently maintained as a

class and whether the interests of the named plaintiffs are sufficiently aligned with those of the

class members that the latter's interests will be fairly represented.  *In re Lorazepam &*

*Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 27 (D.D.C. 2001).

The Court finds that the named plaintiffs' claims, all relating to the common issue of

defendants' violation of their right to a FAPE under the IDEA, are typical of the claims of the

absent class members.  In addition, as discussed above in the context of the Court's rejection of

defendants' standing argument, while defendants correctly note that the named plaintiffs' claims

for injunctive and declaratory relief are now moot, their interests are sufficient aligned with those

of the class members to ensure that the latter are fairly represented in this litigation now and

going forward.

In sum, defendants' motion to decertify the class will be granted insofar as it seeks

decertification of plaintiffs' claims for reimbursement and compensatory education within a Rule

23(b)(2) class, but is otherwise denied.

**B.  Plaintiffs' Motion [271] for Class Certification**

Plaintiffs, responding to defendants' argument that *Wal-Mart* requires partial or total decertification of the class as currently defined, filed a motion in August 2011 to recertify the class in a different form.  Pls.' Mot. Class Certification [271].   In their accompanying memorandum of law, plaintiffs sought to amend the initial certification to add subclasses, Pls.' Mem. [217-2] 5, and also sought a "hybrid" certification of their claims for classwide declaratory and injunctive relief under Rule 23(b)(2) and their claims for reimbursement and compensatory education under Rule 23(b)(3).  *Id.* at 33.  As an initial matter, since the Court has concluded that *Wal-Mart*'s holding as to commonality does not require decertification of the class or modification of the Court's initial certification order, the Court will deny as moot plaintiffs' request to recertify the class using subclasses pursuant to Federal Rules of Civil Procedure 23(c)(1)(C) and (c)(5).  The Court will also deny without prejudice plaintiffs' Motion [270] for Leave to File their Second Amended Complaint, since that proposed complaint contains the subclasses that the Court has found unnecessary.  Therefore, the class definition in this case remains unchanged and plaintiffs' claims for declaratory and injunctive relief remain certified pursuant to Rule 23(b)(2), as specified in the Court's original certification order.

Regarding plaintiffs' request to recertify their claims for reimbursement and compensatory education under Rule 23(b)(3), the Court concludes that recertifying those damages claims under Rule 23(b)(3) is appropriate in the light of the Supreme Court's decision in *Wal-Mart* and in the interests of facilitating the fair and efficient conduct of this litigation. The D.C. Circuit has held that a district court has discretion to "adopt a 'hybrid' approach [to class certification], certifying a (b)(2) class as to the claims for declaratory and injunctive relief, and a (b)(3) class as to the claims for monetary relief . . . ."  *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997).

Rule 23(b)(3) states that, if all of the requirements of Rule 23(a) are satisfied, a court may certify a class action if it finds that:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matter pertinent to these findings include:
>
> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The Court finds that plaintiffs, in addition to the requirements of Rule 23(a), have satisfied both the "predominance" and "superiority" requirements of Rule 23(b)(3).  The common question of whether defendants' education system denied large numbers of disabled children their statutory right to a FAPE predominates over any questions affecting only individual class members, such as the extent of the individual monetary injuries flowing from defendants' violation of the law.  Specifically in the context of "hybrid" Rule 23(b)(2) and (b)(3) class actions involving the denial of special education services, courts have found that the varying impacts of a school system's failures on individual class members does not prevent the common questions regarding defendants' inadequate policies and practices to predominate.  *D.S. ex rel. S.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 73 (E.D.N.Y. 2008).

As to Rule 23(b)(3)'s "superiority" requirement, the Court finds that a class action is superior to other methods for fairly and adequately adjudicating the controversy.  Applying the factors specified in Rule 23(b)(3)(A)–(D), the Court finds that the individual class members in

this case, absent class certification, would almost certainly be unable to devote the resources necessary to vindicate their rights and secure an appropriate remedy, making a class action superior to other available means.  Also, this case has grown quite long in the tooth, having been filed in 2005 and having proceeded through discovery, summary judgment, and even trial. Therefore, the extent of the litigation already begun on behalf of the class further supports this Court's conclusion that the superiority requirement is satisfied.   Finally, the benefits of concentrating the litigation of the class members' claims in this forum far outweigh any difficulties accompanying the management of a class action.  In sum, plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3) and a hybrid class action will be certified.   As required by Rule 23(c)(2)(B), class members will be afforded due process protections in the form of "the best notice that is practicable under the circumstances," as well as opt-out rights.  Fed. R. Civ. P. 23(c)(2)(B).

## IV.    CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part defendants' Motion [214] to Decertify the Class and grant in part and deny in part plaintiffs' Motion [271] for Class Certification.  The Court will also deny without prejudice plaintiffs' Motion [270] for Leave to File their Second Amended Complaint for Declaratory and Injunctive Relief and will grant plaintiffs' Motion [259] for Leave to File a Sur-Reply to Defendants' Reply in Support of its Motion to Decertify the Class.  Defendants' Motion [288] for Leave to File Sur-Replies will be granted as to its attached Sur-Reply in Further Opposition to Plaintiffs' Motion for Class Re-Certification, but otherwise denied as moot.  Plaintiffs' Motion [290] for Leave to File Sur-Sur-Reply Briefs will be denied.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on November 16, 2011.