UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DL, *et al.*,                       )
                                    )
         Plaintiffs,                )
                                    )
    v.                              )   Civil Action No. 05-1437 (RCL)
                                    )
DISTRICT OF COLUMBIA, *et al.*,     )
                                    )
         Defendants.                )
_____ )

## **MEMORANDUM & ORDER**

Before the Court are defendants' Motion [307] for Reconsideration and plaintiffs' Motion [321] for Leave to File a Sur-Reply Brief to Defendants' Reply in Further Support of Motion for Reconsideration. For the reasons stated below, and in consideration of the entire record in this case and the applicable law, the Court will grant plaintiffs' Motion [321] for Leave to File a Sur-Reply and will grant in part and deny in part defendants' Motion [307] for Reconsideration.

**I.   BACKGROUND**

In November 2011, this Court entered findings of fact and conclusions of law in this class action case, which concerns defendants' compliance with their obligations, under federal and local law, to provide special education and related services to preschool-aged children in the District of Columbia. *See DL v. District of Columbia*, No. 05-1437, 2011 WL 5555877, *1 (D.D.C. Nov. 16, 2011). In that opinion, the Court extended its holdings from an August 2010 opinion on the parties' motions for summary judgment, *see DL v. District of Columbia*, 730 F. Supp. 2d 84 (D.D.C. 2010), and found defendants liable for violations of the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and related provisions of local law from 2008 until April 6, 2011. *See DL*, 2011 WL 5555877, at *15–20. The Court also entered a permanent injunction, requiring defendants, *inter alia*, to enact various

reforms, to meet certain performance benchmarks, and to comply with certain reporting requirements. *Id.* at *21–26.

In December 2011, defendants appealed the Court's Findings of Fact and Conclusions of Law, as well as other orders, to the U.S. Court of Appeals for the District of Columbia Circuit. Defs.' Notice of Appeal [304] 1, Dec. 15, 2011. Defendants then filed a Motion for Reconsideration in this Court pursuant to Federal Rule of Civil Procedure 54(b), Defs.' Mot. Reconsideration [307] 1, Jan. 12, 2012, while also persuading the Court of Appeals to hold the appeal in abeyance pending this Court's resolution of the post-judgment Motion. *See* Order of USCA [319] 1, Mar. 20, 2012. Defendants acknowledge in their Motion some uncertainty, given the pending appeal, concerning whether this Court has jurisdiction. *See* Defs.' Mot. Reconsideration [307] 1 n.1.

Meanwhile, plaintiffs, engaged in negotiations with defendants over proposed modifications to the Court's injunction, requested a delay in the Court's resolution of defendants' Motion for Reconsideration while those negotiations proceeded. *See, e.g.*, Pls.' Praecipe [320] 1, Apr. 5, 2012. Finally, on April 19, 2012, plaintiffs filed a Motion [321] for Leave to File a Sur-Reply Brief, attaching a Sur-Reply that would inform the Court of the issues resolved by the parties' negotiations while addressing arguments raised by defendants for the first time in their Reply to plaintiffs' Opposition to defendants' Motion for Reconsideration. *See* Pls.' Mot. Leave [321] 2, Apr. 19, 2012. Since plaintiffs' attached Sur-Reply addresses issues raised by defendants for the first time in their Reply, and because the Court finds that the Sur-Reply is helpful to the Court's resolution of defendants' Motion for Reconsideration, the Court will grant plaintiffs' Motion for Leave to File a Sur-Reply. *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).

## II. THIS COURT'S JURISDICTION TO MODIFY THE NOVEMBER 16, 2011 FINAL ORDER

The general rule is that "filing a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Jurisdiction is not regained until the court of appeals issues its mandate. *U.S. v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997). However, the Federal Rules state that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c); *see also Ayuda, Inc. v. Thornburgh*, 919 F.2d 153, 47 (D.C. Cir. 1990) (Wald, J., concurring in part and dissenting in part). Rule 62(c) "codifies the inherent power of a court to preserve the status quo where in its sound discretion, the court deems the circumstances so justify." *Christian Science Reading Room v. City & Cty. of San Francisco*, 784 F.2d 1010, 1017 (9th Cir. 1986) (citations omitted). It does not, however, "restore jurisdiction to the district court to adjudicate anew the merits of the case." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46*, *Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982).

## III. RECONSIDERATION UNDER RULE 54(b)

Rule 54(b) of the Federal Rules of Civil Procedure states that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." This rule authorizes a court to revise its interlocutory decisions any time prior to the entry of a final judgment. *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 9, 13 (D.D.C. 2010). Relief upon reconsideration under Rule 54(b) is available "as justice requires."

*Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010).  Justice may require reconsideration when (1) "there was a patent misunderstanding of the parties," (2) "where a decision was made that exceeded the issues presented," (3) "where a court failed to consider controlling law," or (4) "where a significant change in the law occurred after the decision was rendered."  *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009).

## IV. ANALYSIS

Defendants' Motion [307] for Reconsideration sought the following modifications of the Court's November 16, 2011 Final Order (ECF No. 295):

(1) Modifying paragraph A.1, which requires defendants to ensure that at least 8.5 percent of three- to five-year-olds are "enrolled" in special education and related services under IDEA Part B, to require defendants to ensure that such children are "identified as eligible," Defs.' Mot. Reconsideration [307] 1;[1]

(2) Modifying paragraph B.10, which requires defendants to assign each family served by Early Stages a "case manager" throughout the *screening*, evaluation, eligibility determination, and Individualized Education Plan ("IEP") process, to require defendants to assign a case manager only for the evaluation, eligibility determination, and IEP process, *id.* at 1–2;

(3) Modifying paragraph B.12, which requires defendants to open a satellite location for Early Stages in Southeast, D.C., to require defendants to open the location "East of the Anacostia River," *id.* at 2; and

(4) Modifying paragraph B.16, which requires defendants to accept all children exiting IDEA Part C with identified disabilities or developmental delays as "presumptively eligible" for Part B, to remove the "presumptively eligible" requirement while adding alternative language.

*Id.* at 2.

Over the course of briefing, defendants have dropped their request for reconsideration of certain issues, while plaintiffs have consented to certain other modifications.  Specifically, defendants have withdrawn their request to modify paragraph A.1 to refer to "eligibility" rather

---

[1] Defendants also sought revisions of the interim goals under subparagraphs A.1(a) and (b).  *See* Defs.' Mot. Reconsideration [307] 6–10.

4


than "enrollment." Defs.' Reply [317] 2. The parties agree that paragraphs B.10 and B.12 should be modified in accordance with defendants' request. *See* Pls.' Opposition [314] 1, Feb. 17, 2012; *see also* Defs.' Reply [317] 1. They also agree that subparagraph A.1(b) should be modified to reduce defendants' required percentage increase in IDEA Part B enrollment from 1 to ½ percent per year. Pls.' Sur-Reply [321-1] 6, Apr. 19, 2012. Finally, plaintiffs and defendants have agreed to a definition of the phrase "presumptive eligibility" in paragraph B.16. *Id.* at 6–7.

In sum, the parties have reached agreement on every one of defendants' proposed modifications to the November 16, 2011 Final Order, with a single exception. *See* Pls.' Sur-Reply [321-1] 1. As to those modifications on which the parties agree, the Court finds that it has jurisdiction to make these modifications pursuant to Rule 62(c) of the Federal Rules of Civil Procedure. None of these modifications would materially alter the status quo pending appeal, nor do they involve readjudication of the merits of the case. Therefore, in the interests of justice, and in light of the parties' agreement on these points, the Court will exercise its discretion and modify the Final Order as follows:

(1) Paragraph A.1(b) will be modified to state:

Increase the percentage of preschool children in the District of Columbia enrolled in Part B by .5 percent in the first full year, starting on the first of the next month after the date of this Order, and an additional .5 percent each subsequent year.

(2) Paragraph B.10 will be modified to state:

Defendants shall assign each family served by Early Stages a single staff member to act as its "case manager" throughout the evaluation, eligibility determination, and IEP process to ensure that families have the necessary information to understand the purposes and functions of all aspects of the Early Stages process and procedures.

(3) Paragraph B.12 will be modified to state:

> Defendants shall open a satellite location for Early Stages east of the Anacostia River that is able to perform the same functions of the central location in order to better serve an area that has been recognized as underserved, high-risk, and a potential source of a large number of referrals.

(4) Paragraph B.16 will be modified to state:

> Defendants shall accept all children exiting Part C who have identified disabilities or significant developmental delays as presumptively eligible for Part B in order to ensure that they do not experience a disruption in services. Presumptively eligible for preschool education means that the information available at the time of the referral of a child—when he or she is nearly three years old and is about to transition from Part C to Part B—shall be presumed to be sufficient to make a decision about the child's eligibility for Part B special education services, unless indicated otherwise by the Part B IEP Team. The Part B IEP Team may find, after reviewing the information available at the time of the referral of the child, that additional data is needed in order to make an eligibility determination. If the Part B IEP Team finds that additional data is needed in order to make an eligibility determination, the child may not begin receiving Part B services prior to an evaluation to determine the child's eligibility for such services. In all cases, including where the existing data are sufficient and where the Part B IEP Team determines that additional data are needed, defendants shall ensure that the Part B eligibility determination is completed prior to the child's third birthday, so that children eligible for Part B special education and related services experience no disruption in the receipt of services.

The only remaining dispute relates to subparagraph A.1(a) of the Order, which requires defendants, until the 8.5 percent Part B enrollment target is met, to "[i]ncrease the number of referrals of preschool children that defendants obtain by 25 percent in the first year, . . . and an additional 20 percent each subsequent year." Order [295] 2.

Defendants argue that subparagraph A.1(a)'s "singular focus on increasing referrals" is counterproductive and "would not necessarily yield an increase in . . . children [eligible for IDEA Part B]" because the relationship between referrals and eligibility "is not as direct as the Court's order presupposes . . . ." Defs.' Reply [317] 2–3. This referral requirement will also, defendants contend, "displace resources away from effective screenings done in conjunction with Defendants' community partners." *Id.* at 3. Finally, defendants argue that this provision of the Order is, at present, irrelevant because Early Stages "has implemented a new, better business

model where screenings, in additional to being conducted upon referral, may also be conducted *before* referral by Defendants' private and public partners." *Id.* at 3. Plaintiffs counter that defendants are asking the Court to "revisit the District's deficient referral procedures and policies, which were thoroughly litigated at trial by both sides." Pls.' Sur-Reply [321-1] 2. Defendants had "every opportunity at trial[] to offer evidence that satisfying paragraph A.1(a)'s numerical referral requirement would shift resources away from screenings done by community partners," but, plaintiffs contend, they did not offer such evidence and cannot explain why the referral requirement will operate as a barrier to their achievement of the 8.5 percent enrollment target. *Id.* at 4.

Upon consideration of the parties' arguments, the relevant law, and the entire record, the Court will deny defendants' Motion as to this issue. Defendants have not demonstrated that the Court's numerical referral requirement in paragraph A.1(a) is based upon a misunderstanding of the evidence presented to the Court in the parties' motions for summary judgment or at trial, that the Court's Order went beyond the issues presented, that the Court failed to consider controlling law, or that a significant change in the law has occurred that warrants revision of this requirement. *See Pueschel*, 606 F. Supp. 2d at 85. In sum, justice does not require reconsideration of this provision of the Final Order. Furthermore, the Court's decision to require defendants, as a means of achieving its enrollment target, to demonstrate a required percentage increase in the number of referrals each year was based upon substantial evidence in the record, indicating both that defendants' referral practices were inadequate and that these inadequate practices played a substantial role in the District's low enrollment rate. However, to the extent that defendants believe that changed circumstances warrant a modification of this, or another, aspect of the injunction, the proper path to proceed is for defendants, once the Court of Appeals issues its mandate to the Court, to file a motion to modify or dissolve the injunction. At that

time, the Court will permit limited discovery to evaluate the propriety of a modification of the injunction's numerical, or other, requirements.

## V. CONCLUSION

Accordingly, it is hereby

ORDERED that plaintiffs' Motion [321] for Leave to File a Sur-Reply Brief to Defendants' Reply in Further Support of Motion for Reconsideration is GRANTED; and it is further

ORDERED that defendants' Motion [307] for Reconsideration is GRANTED IN PART AND DENIED IN PART.  Specifically, defendants' Motion is GRANTED as to the requested modifications to paragraphs A.1(b), B.10, B.12, and B.16.  As to defendants' request for reconsideration of paragraph A.1(a) of the Final Order, defendants' Motion is DENIED.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on April 25, 2012.