**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                           |   |                                |
|---------------------------|---|--------------------------------|
| **DL, _et al._,**         | ) |                                |
|                           | ) |                                |
| **Plaintiffs,**           | ) |                                |
|                           | ) |                                |
| **v.**                    | ) |   **Civil Case No. 05-1437 (RCL)** |
|                           | ) |                                |
| **DISTRICT OF COLUMBIA, _et al._,** | ) |                      |
|                           | ) |                                |
| **Defendants.**           | ) |                                |
|                           | ) |                                |
| _____ | ) |                                |

**MEMORANDUM OPINION**

Currently before the Court is defendants' motion [510] to dismiss as moot plaintiffs' Rehabilitation Act claims for the period before March 22, 2010. On June 10, 2015, the Court granted summary judgment for defendants with respect to plaintiffs' Rehabilitation Act claims for the period after March 22, 2010, finding that even if the District were in violation of the Individual with Disabilities Education Act, the city's actions during this time did not "rise to the level of bad faith or misjudgment." Mem. Op. 42, ECF No. 444. After this ruling, all that remained for trial under the Rehabilitation Act were plaintiffs' claims for the period prior to March 22, 2010.

The defendants now argue that these pre-2010 claims are moot because in light of the defendants' favorable ruling for March 22, 2010 to the present, it is "impossible for the court to grant any effectual relief whatever to [the] prevailing party." Defs.' Mot. to Dismiss the "Second Claim" of the Second Am. Compl. 1, ECF No. 510 (citing _City of Erie v. Pap's A.M._, 529 U.S. 277, 287 (2000)). The Court will now reject this argument, finding that the "voluntary cessation" exception to the mootness doctrine applies in this case. Upon consideration of the motion,

plaintiffs' opposition, defendants' reply, and the entire record herein, the Court will DENY
defendants' motion to dismiss as moot what remains of plaintiffs' Rehabilitation Act claims.

## I.   BACKGROUND

At the heart of this case is the Individuals with Disabilities Education Act ("IDEA") and
section 504 of the Rehabilitation Act. Plaintiffs are residents of the District of Columbia and former
preschool-age children with various disabilities who allege that the District failed to provide them
a "free and appropriate public education" ("FAPE") as is required by law. The IDEA requires,
among other things, that states accepting certain federal government funds must provide disabled
children with a FAPE. 20 U.S.C. § 1412(a)(1); *see also Mark H. v. Lemahieu*, 513 F.3d 922, 925
(9th Cir. 2008) (describing how the IDEA and the Rehabilitation Act's implementing regulations
each require states to provide a FAPE to all disabled children). Section 504 of the Rehabilitation
Act, on the other hand, is not limited solely to educational settings. It provides, more broadly, that
"no otherwise qualified individual with a disability in the United States . . . shall, solely by reason
of her or his disability, be excluded from the participation in, be denied the benefits of, or be
subjected to discrimination under any program or activity receiving Federal financial assistance."
29 U.S.C. § 794(a); *see also* Mem. Op. 3, ECF No. 55. Indeed, in order to prevail on a section 504
claim, "plaintiffs must show that 'something more than a mere failure to provide the 'free and
appropriate education' required by the [IDEA]' has occurred." Mem. Op. 3–4, ECF No. 55
(quoting *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2011)). As this Court has
previously ruled, section 504 requires that plaintiffs show that defendants engaged in either "bad
faith or gross misjudgment." *Id.* at 4 (citing *Walker*, 157 F. Supp. 2d at 38).

The procedural history of this matter is lengthy and presented in detail in the Court's
Memorandum Opinion dated June 10, 2015. *See* Mem. Op. 3–8, ECF No. 444. The Court need not

rehash it here, but for the purposes of the present motion, it is important to highlight two features

of the record. First, after conducting a trial in 2011, the Court found that the District of Columbia

had violated both the IDEA and the Rehabilitation Act and issued an array of remedies. *Id.* at 5–

6. Among them was a declaratory judgment stating:

> Defendants violated Section 504 of the Rehabilitation Act for the period January 1,
> 2008 to April 6, 2011 (the first day of trial) because, in violating the IDEA, defendants
> failed to exercise professional judgment in such a way as not to depart grossly from
> accepted standards among educational professionals and thus demonstrated bad faith
> or gross misjudgment.

Mem. Op. & Findings of Fact and Conclusions of Law ¶ 137, ECF No. 294.

This ruling further extended the Court's August 10, 2010 summary judgment ruling, which

found the defendants had violated the Rehabilitation Act "at least through and including the year

2007." Mem. Op. 23, ECF No. 198.  Ultimately, the opinions and orders that ruled the defendants

had violated the Rehabilitation Act were vacated by the D.C. Circuit on class certification grounds.

*See DL v. District of Columbia*, 713 F.3d 120 (D.C. Cir. 2013).

Later, after the D.C. Circuit vacated the Court's orders and remanded the case, the plaintiffs

submitted a second amended complaint, proposing to separate the plaintiff class into four

subclasses and reasserting their claims under the IDEA and the Rehabilitation Act. *See* Second

Am. Compl. ¶¶ 79, 110–114, 115–119. The Court certified the four subclasses on November 8,

2013, *see* Order, ECF No. 388, and on June 10, 2015, the Court issued a summary judgment order

ruling for the defendants on the plaintiffs' Rehabilitation Act claims for the period after May 22,

2010. *See* Order 2, ECF No. 445. Essentially, on March 22, 2010, the District issued

comprehensive policies to comply with its Child Find and FAPE obligations. Mem. Op. 33, ECF

No. 444. In doing so, the Court found that the District was "no longer responding to its failures

with indifference and inaction," and therefore ruled for the defendants on summary judgment for

the period after March 22, 2010. *Id.* at 39. With respect to the Rehabilitation Act, plaintiffs' claims for the period prior to March 22, 2010 were all that remained for trial. *Id.* at 40.

In its current motion, the District argues that the plaintiffs' Rehabilitation Act claims for the period preceding March 22, 2010 are moot because a "declaratory judgment based on the earlier period would have no operative effect on the parties' rights and relations." Defs.' Mot. 1, ECF No. 510. In response, plaintiffs argue that the voluntary cessation exception to the mootness doctrine applies and that a declaratory judgment for that time period would otherwise provide the plaintiffs with effective relief. *See generally* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. 516.

## II.   LEGAL STANDARD

A motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1). *See Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 94 (D.D.C. 2014) (citing *Flores v. District of Columbia*, 437 F. Supp. 2d 22, 25 n.4 (D.D.C. 2006)). The rule imposes on the Court "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id.* at 94–95 (citing *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 5 (D.D.C. 2004)). Indeed, mootness carries jurisdictional significance, as the "case or controversy" requirement of Article III permits courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). To elaborate, a case becomes moot when "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted); *see also Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 631 (D.C. Cir. 2002) ("[A case is moot when] events have so transpired that the decision will neither presently affect the parties' rights nor have a more than speculative chance of affecting them in the future." (citation omitted)), or when "intervening events makes it impossible to grant the prevailing party effective relief." *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008); *see*

*also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (stating that mootness deprives the Court of jurisdiction because "there is nothing for [the court] to remedy, even if [it] were disposed to do so").

Although the mootness doctrine generally requires a case to present an " actual, ongoing controvers[y]," *Honig v. Doe*, 484 U.S. 305, 317 (1988), an exception exists where a party has extinguished the controversy by voluntarily changing its allegedly unlawful conduct after the commencement of a lawsuit. *See Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot."). Known as the "voluntary cessation exception," this rule responds to the imperative that "federal courts [] not leave a wily defendant 'free to return to his old ways'" after a lawsuit is terminated. *Sharp v. Rosa Mexicano, D.C.*, 496 F. Supp. 93, 98–99 (D.D.C. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). That said, a Court may "nonetheless conclude that voluntary cessation has rendered a case moot if (1) there is no reasonable expectation that the alleged violation will recur . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 96 (D.D.C. 2014) (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). Importantly, demonstrating the first prong, that "the challenged conduct cannot reasonably be expected to start up again," is a "heavy burden." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)); *see also id.* at 170 ("Thus, the standard for determining whether a case has been mooted by the defendants' voluntary conduct is stringent: A case might become moot if subsequent events make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." (emphasis added)).

As stated, in addition to the requirement that there be an actual ongoing controversy, a case is moot if the Court is not in a position to provide the prevailing party "any effectual relief whatever." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). For the purposes of mootness analysis, "'any effective relief whatever' is expansively defined." *Ctr. for Food Safety v. Salazar*, 900 F. Supp. 2d 1, 5 (D.D.C. 2012) (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

Although these two requirements are often discussed separately, they are related. As such, when considering the mootness doctrine's requirement that a court be in the position to provide effectual relief, it is important to consider that requirement's relationship to the voluntary cessation exception and to the mootness doctrine more broadly. As the Supreme Court has put it:

> The underlying concern is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to [the] prevailing party. In that case, any opinion as to the legality of the challenged action would be advisory.

*City of Erie*, 529 U.S. at 287 (internal quotation marks and citations omitted).

In the Court's view, the words "when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated" invoke the voluntary cessation exception. *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 683–84 (2016) (Alito, J., dissenting) (discussing how the voluntary cessation exception ties into the requirement for effectual relief, stating: "In the language of our mootness cases, [cases involving voluntary cessation] would *not* be moot because a court could still grant the plaintiff 'effectual relief'—namely, the relief sought in the first place" (citing *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) (emphasis in original)). Therefore, this Court interprets *City of Erie* to mean that if a party claims that a court is unable to provide effectual relief *because* that party has ceased its allegedly unlawful conduct, then the party must show it has satisfied the two necessary conditions that block the

application of the voluntary cessation exception. That is, to prevail on such an argument, the defendant must demonstrate "there is no reasonable expectation that the alleged violation will recur . . . and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979).

## III.   DISCUSSION

The Court finds that because the District voluntary changed its behavior after the commencement of this lawsuit, mootness questions regarding the plaintiffs' outstanding Rehabilitation Act claims must be analyzed under the voluntary cessation exception. Further, the Court finds these claims are not moot because defendants have not met the first prong of their burden to show that there could be "no reasonable expectation that the alleged violation will recur." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979).

Additionally, the Court finds that a declaratory judgment stating the District had violated the Rehabilitation Act for the period preceding March 22, 2010 is an effective remedy because it could be used to provide the basis for future litigation. Indeed, issuing a declaratory judgment that related to pre-2010 conduct today would be just as effective as it was in 2011, when the Court issued its first declaratory judgment. *See* Mem. Op. & Findings of Fact and Conclusions of Law ¶ 137, ECF No. 294. What follows is a summary of the parties' briefs and the Court's mootness analysis.

### 1.   Defendants' motion to dismiss for mootness and the accompanying brief

In their motion, the defendants argue the voluntary cessation exception does not apply in this case and that the Rehabilitation claims are moot because "it is impossible for the court to grant any effectual relief whatever to the prevailing party." Defs.' Mot. to Dismiss 1, ECF No. 510 (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). The District focuses on the Court's

ruling to grant summary judgment to the District on the plaintiffs' Rehabilitation Act claim for the period of March 22, 2010 to the present. *See* Mem. Op. 39–42, ECF No. 444. Specifically, the District argues that in light of this ruling, "a declaratory judgment based on the earlier period would have no operative effect on the parties' rights or relations." Defs.' Mot. to Dismiss 1.

After presenting its main arguments for mootness, the defendants' opening brief proceeds in three parts. First, the District states that "due to defendants' drastic programmatic changes, a declaratory judgment over the dismantled pre-2010 system would have nothing on which to operate." *Id.* at 5. In other words, because defendants have been in compliance with the Rehabilitation Act for five years, there is no longer a "genuine claim of injury or possible injury of sufficient immediacy and reality to warrant the issuance of a declaratory judgement." *Id.* (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)). Next, the District argues that the voluntary cessation exception does not apply to plaintiffs' claims because there is no reasonable expectation that bad faith or gross mismanagement will resume. It references several examples of "the continuing success of the District's special education professionals" (e.g., stating that the city currently has in place policies to track and screen disabled children and that the data it provides is accurate) to argue that the possibility of reversion to pre-2010 dysfunction is remote. *Id.* at 7.

Lastly, the defendants dispute the general effectiveness of a declaratory judgment. Defendants' reference the plaintiffs' previous argument that a declaratory judgment constitutes effective relief because it would provide "the basis for renewed litigation in this case or a new case." *Id.* at 8 (quoting Pls.' Opp'n to Defs.' Mot. to Dismiss 21, ECF No. 471). The District then contends that because the argument's rationale "rests upon contingent future events that may not occur as anticipated," it presents insurmountable ripeness issues and is therefore invalid. *Id.* at 8 (quoting *Shaffer v. Def. Intelligence Agency*, 601 F. Supp. 2d 16, 23 (D.D.C. 2009)). Defendants

state, in summary, "[the] [p]laintiffs' unfounded fear [of future litigation] does not support declaratory relief, and entertaining such speculation would run afoul of the ripeness doctrine." *Id.* at 9.

### 2.  Plaintiffs' Response

Plaintiffs begin their response brief by highlighting the legal standard governing voluntary cessation: Mootness can be found only if the "defendant can meet its 'heavy burden' of showing that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Pls.' Opp'n to Defs.' Mot. to Dismiss 5, ECF No. 516 (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). Plaintiffs' brief then proceeds in two overarching sections.

First, plaintiffs argue that defendants changed their behavior in response to plaintiffs' lawsuit. Plaintiffs highlight several examples, including emails and a practice manual, to support its position. *See id.* at 7–9. After claiming that the defendants reformed in an effort to escape liability, plaintiffs contend that the defendants have not shown and cannot show that it is absolutely clear there could be no reasonable expectation the allegedly wrongful behavior will recur. Not only have that, but plaintiffs claim the District may actually be prone to backslide. In making this argument, the plaintiffs look to, among other things, the District's failure to meet the Court's previous (now-vacated) targets, the fact the district is no longer operating under an enrollment benchmark, and the District's "extremely long and well-documented history of violations identified by OSEP." *Id.* at 17.

Second, plaintiffs argue that their request for declaratory relief poses no ripeness problems and that declaratory relief is otherwise an effective and meaningful remedy. Plaintiffs claim the defendants raise ripeness issues as an attempt to shift their own burden of showing that the

allegedly wrongful activity cannot be reasonably expected to recur. Further, plaintiffs contend that because the declaratory judgment would relate to a finding of liability for past, not future behavior, there can be no issue over the claims' ripeness. *Id.* at 21. Additionally, plaintiffs reiterate that a declaratory judgment "would provide the basis for renewed litigation in this case or a new case," and therefore offers the plaintiffs some measure of effective relief. *Id.* at 23. Finally, plaintiffs argue that a declaratory judgment would be effective because it would potentially deter future misconduct by the District and more broadly serve the public interest. *Id.* at 24–26.

### 3. Defendants' Reply

Defendants begin their reply brief by arguing that the evidence plaintiffs use to show violations of the Rehabilitation Act could be reasonably expected to recur is irrelevant to the statute's requirement for a showing "bad faith" or "gross misjudgment." Defs.' Reply 1, ECF No. 517. Any recent violations, defendants argue, speak only to non-compliance with the IDEA and are therefore unrelated to the mootness analysis for plaintiffs' claims under the Rehabilitation Act. *See id.* at 2. Next, defendants discuss three cases that plaintiffs reference in their brief and attempt to distinguish the facts of those cases from the facts in the present one. First, defendants discuss *Young v. District of Columbia Housing Authority*, 31 F. Supp. 3d 90 (D.D.C. 2014), where hearing-impaired plaintiffs sued the housing authority for failing to make its voucher programs accessible to people with hearing disabilities. After the commencement of legal action, the defendant put in place a "notice system," which it claimed would ensure that a sign language interpreter would be present at all scheduled housing voucher appointments, and thereafter submitted a motion to dismiss for mootness. The Court denied that motion under the voluntary cessation exception, finding the defendant could not show an unlikelihood of recurrence in part because the relief provided "could easily be undone." Defs.' Reply 2 (citing *Young*, 31 F. Supp. 3d at 96). The

defendants then argue this matter is distinguishable from *Young* because the "District's special education system would require multiple intentional efforts to dismantle." *Id.* at 2–3.

After discussing *Young*, defendants reference and attempt to distinguish *Environmental Defense Fund, Inc. v. Gorsuch*, 713 F.2d 802 (D.C. Cir. 1982) and *In re Center for Auto Safety*, 793 F.2d 1346 (D.C. Cir. 1986), two cases where courts found the voluntary cessation exception to apply. For *Gorsuch*, the District highlights that the defendant in that case had violated the statute "36 other instances in the last two years," which they claim contrasts sharply with the present situation where the Court has ruled the defendants have fully complied with the Rehabilitation Act since March 2010. *Id.* at 3 (citing *Gorsuch*, 713 F.2d at 811 n.20). In addressing *In re Center for Auto Safety*, the District emphasizes that no structures had been put in place to ensure future compliance; defendants in that case offered only a "bald assertion" that they would continue to follow the statutory mandate to timely issue regulations after seven years of non-compliance. *Id.* at 3–4 (citing *In re Ctr. for Auto Safety*, 793 F.2d at 1352–53). The District suggests that, unlike in *Center for Auto Safety*, the web of policies, safeguards, and personnel the District now has in place (and that have secured compliance with the Rehabilitation Act for the last five years) provides additional assurances that the alleged past violations of the Rehabilitation Act will not recur. *Id.* at 4.

### 4.  Analysis

To determine if plaintiffs' Rehabilitation claims are moot, the Court must decide two independent though related questions: First, whether or not there is an actual, ongoing controversy, and second, whether the requested declaratory judgment would provide the plaintiffs with an

effectual remedy. As discussed, the voluntary cessation exception applies with equal force to each of these requirements.

After considering the parties' arguments, the Court finds that plaintiffs' claims are not moot because the voluntary cessation exception does apply. Further, the Court finds that a declaratory judgment would provide effectual relief because a definitive ruling could provide the basis for renewed litigation or a related dispute. This benefit is particularly given that "the parties are involved in an ongoing relationship that may present the opportunity for future disagreement." *Halkin v. Helms*, 690 F.2d 977, 1007 (D.C. Cir. 1982).

## A.  Existence of an actual, ongoing controversy and the voluntary cessation exception

The Court conclusively finds that the defendants have not met their "heavy burden," *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979), to make "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170 (2000) (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)); *see also Kifafi v. Hilton Hotels Retirement Plan*, 701 F.3d 718, 725 (D.C. Cir. 2012) (citing to the standard in *Laidlaw*). The baseline rule is that "the voluntary cessation of challenged conduct does not ordinarily render a case moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Following this directive: For a case to be moot after a defendant voluntary changes its allegedly wrongful conduct, the defendant must show its case is somehow out of the ordinary; some event or factor must make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 170; *see also id.* ("[T]he standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent.").

The somewhat recent case of *Sharp v. Rosa Mexicano, D.C.* provides an illustrative example of how a defendant may satisfy this heavy burden. 496 F. Supp. 2d 93 (D.D.C. 2007). In *Sharp*, a disabled restaurant customer brought an action against the restaurant's owner, alleging that the men's restroom "contain[ed] several barriers to wheelchair access that fail[ed] to meet the minimum ADA requirements." *Id.* at 95. Although the parties disputed the condition of the bathroom at the time the complaint was filed, the defendant later moved to dismiss on the theory that the restroom basin at issue was "*presently* in compliance with the ADA." *Id.* at 96 (emphasis in original). Indeed, when that motion was filed, plaintiff and defendant were in agreement that a wheelchair-accessible sink then existed "in a private, handicap-accessible stall in the men's restroom." *Id.* at 98. The Court ruled that after the defendant remedied this deficiency, no case or controversy existed (plaintiff sought only prospective relief) and therefore found plaintiff's claim to be moot. *Id.* at 95.

In conducting its voluntary cessation analysis, the Court in *Sharp* found the "allegedly unlawful conduct could not have been reasonably be expected to recur" because "structural modifications are unlikely to be altered in the future." *Id.* at 99. Indeed, the defendant installed a "fixture within the restaurant." *Id.* At that point, to remove the fixture and return to a state of non-compliance would be more costly than to simply maintain the status quo and comply with the ADA. Recurrence, therefore, could not be reasonably expected.

Although the compliance measures presented in *Sharp* were inherently durable, there is no firm rule that efforts to achieve compliance must be obviously fixed or permanent to demonstrate it is absolutely clear there could be no reasonable expectation the conduct will recur. *See Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 198 (2000) ("[The defendant's] earlier achievement of substantial compliance with its permit requirements, might moot the case,

but—we once more reiterate—only if [the substantial compliance] made it absolutely clear that [the defendant's] permit violations could not reasonably be expected to recur."). *But see id.* at 190 ("[W]e noted that a citywide moratorium on police chokeholds—an action that surely diminished the already slim likelihood that any particular individual would be choked by police—would not have mooted an otherwise valid claim for injunctive relief, because the moratorium by its terms was not *permanent*." (emphasis added)).

Indeed, whether or not defendants have met their burden is a factual inquiry, and courts have found that under certain circumstances, a broad change in policy or a period of sustained compliance may go a long way to assist the defendant in meeting its heavy burden. *See Colo. River Cutthroat Trout v. Salazar*, 898 F. Supp. 2d 191, 212 (D.D.C. 2012) (finding that a challenge to a legal memorandum was mooted after the defendants withdrew the memorandum and "announced their intention to develop a new policy in accordance with the [Endangered Species Act] and initiated a transparent rulemaking process"); *D.C. Prof'l Taxicab Drivers Assoc. v. District of Columbia*, 880 F. Supp. 2d 67, 75 (D.D.C. 2012) (finding a claim moot after the District of Columbia Taxicab Commission issued a rule providing the "same relief that the plaintiffs [sought] in the Amended Complaint" and demonstrated there was no reasonable expectation the rule would be retracted). *But see Lake Pilots Ass'n v. U.S. Coast Guard*, 257 F. Supp. 2d 148, 157 (D.D.C. 2003) (finding that defendants had not shown that it is absolutely clear there could be no reasonable expectation that the alleged violation would recur even after the defendants "conceded that they erred" and issued a temporary final rule designed to resolve plaintiffs' claims); *see also Steinberg v. District of Columbia*, 901 F. Supp. 2d 63, 70 (D.D.C 2012) (finding that a letter reinstating the plaintiff did not moot plaintiff's request for injunctive relief in part because "the letter leaves several aspects of defendants' compliance open and contingent on [plaintiff]'s future actions").

In conducting this factual inquiry, the Court finds that in spite of defendants' recent period of sustained compliance, it is not absolutely clear there could be no reasonable expectation of recurrence. The Court comes to this conclusion by considering that defendants began to comply with the Rehabilitation Act *because of* this litigation; have a long history of violations and an ongoing conflict with the plaintiffs; and have consistently and completely contested liability under the Rehabilitation Act. To counter this general finding, defendants make two basic arguments: (i) five years of compliance with the Rehabilitation Act make it exceedingly unlikely that the defendants will once again engage in bad faith or gross mismanagement and (ii) the complexity of their special education systems provides additional protection for plaintiffs. To the degree these arguments are valid, they do not overcome the other, more commanding considerations that lead to the Court to believe that it is not absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

First, the Court finds that the District came into compliance with the Rehabilitation Act in direct response to this litigation, a finding makes it more difficult for the District to demonstrate recurrence is unlikely. Whether the defendants' cessation was timed in anticipation of a lawsuit or motivated by a genuine change of heart is relevant to the voluntary cessation analysis. The former can show either that a defendant has not actually ceased their objectionable conduct, thus eliminating mootness concerns, *see Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 865 (10th Cir. 2001) ("When defendants are shown to have settled into a continuing practice . . . courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." (quoting *United States v. W.T. Grant Co.*, 73 S. Ct. 894, 897 n. 5 (1953))), or that the conduct could be

reasonably expected to start again. *See Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 98 (D.D.C. 2014) (finding that defendant's failure to engage in any remedial activity "prior to the commencement of litigation" contributed to a finding that it did not meet its "heavy burden of showing that the challenged conduct could not reasonably be expected to recur").

Plaintiffs offer several pages of evidence to demonstrate defendants ceased their allegedly unlawful behavior in direct response to this lawsuit. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss 7–9, ECF No. 516. For example, they reference an email from the Mayor's office to a staff member at the Office of State Superintendent of Education ("OSSE") in 2007 stating, "Relating to the class action lawsuit on Child Find, I am forwarding to you the draft Child Find policy manual currently being review for submission to the Court as part of the District's response to the suit." *Id.* at 7 (citing Pls.' Trial Ex. 113, p. 1). A separate email in 2008 from staff at DC Public Schools to OSSE stated, similarly, "Location. This is currently the most critical issue since most of our planning for *DL* hinges on securing a good location for the CARE Center." *Id.* (citing Pls.' Trial Ex. 115, p. 1). Yet another states, "I had hoped to be operational in a new Child Find site this month so as to demonstrate to the Court that we are well on our way to totally re-engineering our Child Find." *Id.* (citing Pls.' Trial Ex. 116, p. 1).

The evidence goes beyond emails, however. For example, plaintiffs cite to the District's Family Care manual, which states "The discovery period of the lawsuit ended in November 2009, so it was crucial that DCPS have demonstrated its commitment to increase the identification rate, increase the timeliness of evaluations, and increase placement options for families by that deadline." *Id.* at 8 (citing Pl. Trial Ex. 72, p. DL2014 204). In light of these statements and the District's failure to meaningfully address them in their briefing, the Court finds that the District

voluntarily changed its conduct during this litigation in an effort to escape liability, a finding that, as discussed, makes it more difficult for the defendants to rebut the presumptions against them.

In addition to ceasing its allegedly wrongful behavior as a direct response to this litigation, the District's period of prior non-compliance with the Rehabilitation Act spans over a decade. Of course, this long period of uninterrupted violations weighs heavily against the defendants. *See In re Center for Auto Safety*, 793 F.2d 1346, 1352–53 (D.C. Cir. 1986) (finding that "chronic" violations over a period of seven years contributed to the Circuit's finding that there was "some cognizable danger of recurrent violation"); *Young v. D.C. Hous. Auth.*, 31 F Supp. 3d 90, 98 (D.D.C. 2014) ("Plaintiffs make a strong argument that DCHA's lengthy history of failing to provide effective communications to hearing impaired individuals . . . undercuts any reasonable expectation that the violation will not reoccur."). Indeed, the Court has previously found that up until five years ago, the defendant had "demonstrated bad faith or gross misjudgment, by knowingly failing to provide a FAPE to eligible preschool-age children and by failing to bring themselves into compliance with their Child Find obligations." *See* Mem. Op. & Findings of Fact and Conclusions of Law ¶ 131, ECF No. 294. Somewhat strikingly, evidence of these violations stretch back to at least 1997, when "OSEP began to inform the DCPS of its ongoing failure to identify, locate, and provide Part B services to eligible children ages three through five." *Id.* at ¶ 52.

Lastly, the District's decision to contest liability also makes it more difficult to show there could be no reasonable expectation of recurrence. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) ("[S]ince the union continues to defend the legality of the Political Fight–Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."); *In re Center for Auto Safety*, 793 F.2d 1346, 1353 (D.C. Cir. 1986) ("This refusal

to admit the illegality of its past conduct heightens the probability that the agency will once again fail to meet statutory deadlines in the future."). For the ten years that these claims have been pending, the District has fought liability under the Rehabilitation for the period before March 22, 2010 time and again. Indeed, the defendant argued against a finding of liability twice at the summary judgment phase, *see* Defs.' Mem. in Opp'n to Pls.' Partial Mot. for Summ. J. 19, Apr. 19, 2010, ECF No. 180 ("Because Plaintiffs have not shown, and cannot show, that the District has violated the IDEA, they clearly cannot meet the higher burden of proof applicable to their § 504 claim."); Mem. in Opp'n to Pls.' Mot. for Partial Summ. J. and J. Pursuant to Rule 52(c) 12, Nov. 21, 2014, ECF No. 424 ("Plaintiffs' request for summary judgment for the period of July 21, 2005 to December 31, 2007, must be denied, designed [sic] as it is for a finding of liability that simply does not fit Plaintiffs' individual subclass claims."), and once at trial, *see* Defs.' Proposed Findings of Fact and Conclusions of Law 38-39, June 3, 2011, ECF No. 254 ("Because the text of Section 504 emphasizes discrimination 'solely by reason of [an individual's] disability,' a plaintiff must show more than simple negligence or incompetence. The instant class of plaintiffs has made no such showing.").

Looking back to the baseline standard that "voluntary cessation of challenged conduct does not ordinarily render a case moot," *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012), it is important to note how the present case differs from *Sharp*, a case where it was in fact absolutely clear there could be no reasonable expectation of recurrence. 496 F. Supp. 2d 93 (D.D.C. 2007). First, in *Sharp* and unlike in the present case, the Court did not find that the fixture was installed *because of* the plaintiffs' legal action. In fact, the *Sharp* defendant maintained that the fixture was installed before the legal action even began, and the Court never ruled on the issue. 496 F. Supp. 2d at 98. In contrast and as discussed, the Court found in this case that the District's

various emails and materials showed that its improvements were a direct result of this litigation. This finding is consistent with the Court's prior, though now-vacated ruling, Mem. Op. & Findings of Fact and Conclusion of Law ¶ 140, ECF No. 294 ("This Court finds that reforms to the District of Columbia's Child Find-related policies and procedures, including the restructuring and reorganization of the Early Stages Center, occurred during and because of this lawsuit."), and favors a finding that conduct cannot be reasonably expected to recur.

Second, the restaurant in *Sharp* was alleged to have violated the ADA in a single instance. In our case, violations of the Rehabilitation Act are not alleged as a single infraction or isolated occurrence. Quite the opposite: Plaintiffs allege (and the Court has previously found) pervasive and systemic "gross mismanagement" for a long and continuous period of time, the evidence of which dates back to the 1990s. *See* Mem. Op. & Findings of Fact and Conclusions of Law ¶ 52, ECF No. 294.

Third, unlike in *Sharp*, there is no fixed guarantee that could objectively be seen to prevent backslide. That is, in the present matter, there is nothing inherently permanent that would make compliance less costly or burdensome now than it was in the past when non-compliance was widespread. Indeed, in *Sharp*, it would have been more expensive for the defendant to uninstall the handicap accessible fixtures and regress into a state of non-compliance with the ADA than it would have been to simply comply with the law. In our case, although the District has implemented policies to identify and educate disabled children, there is nothing obviously permanent about these programs, a finding which weighs against the defendants. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) ("[W]e noted that a citywide moratorium on police chokeholds—an action that surely diminished the already slim likelihood that any particular individual would be choked by police—would not have mooted an otherwise valid claim for

injunctive relief, because the moratorium by its terms was not *permanent*." (emphasis added)); *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (finding the voluntary cessation exception applied after a city repealed an allegedly unconstitutionally vague statute because the "city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated"). Unlike in *Sharp*, if defendants are successful in the future, it will be due to the hard work and planning of city's employees, not because their solutions are inherently permanent or compliance is somehow less burdensome now than it was in the past.[1]

The defendants offer two main arguments to support their position that there can be no reasonable expectation of recurrence, neither of which is entirely persuasive. First, defendants point to the strides that the District has made in developing Child Find systems designed to fully comply with its obligations to identify and provide a FAPE to disabled children. *See* Mem. of Points and Authorities in Supp. of Defs.' Mot. to Dismiss 3 ("The complex safety mechanisms integrated into this system and the people whose daily efforts bring it to life will not quit working."); *id.* at 6 ("The District's data is accurate, and its business rules for reporting are aligned with federal law." (citing Noel Test. at ¶¶ 4–6; Maisterra Test.at ¶¶ 14–15)).

To support this argument, the defendants draw out differences between the IDEA and the Rehabilitation Act to suggest that under the Rehabilitation Act's "bad faith or gross mismanagement," standard recurrence is extremely unlikely. *See* Defs.' Reply 1. Defendants essentially claim that their current efforts to comply with the IDEA go well beyond the baseline

---

[1] This is as true for the Rehabilitation Act as it is for the IDEA. Of course, for the purposes of this litigation, the IDEA's standards are higher, but there is substantial overlap between the two statutes. *See Mark H. v. Lemahieu*, 513 F.3d 922, 925 (9th Cir. 2008) (describing the Rehabilitation Act's implementing regulations that require states receiving certain public funds to provide all disabled children with a FAPE).

requirements of the Rehabilitation Act, and as such, there can be no reasonable expectation that Rehabilitation Act violations will recur. As stated, for the purposes of this litigation, section 504 of the Rehabilitation Act requires that plaintiffs "show that 'something more than a mere failure to provide the 'free and appropriate education' required by the [IDEA]' has occurred." Mem. Op. 3–4, ECF No. 55 (quoting *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2011)). Indeed, plaintiffs must demonstrate that defendants acted in bad faith or engaged in gross mismanagement, *id.* at 4, something the defendants have not done in at least five years.

The Court agrees that defendants' five-year span of sustained, if not robust, compliance may indeed support a finding that recurrence is unlikely; however, it is insufficient to outweigh the factors that pull the Court in the opposite direction. Additionally, in making this argument, defendants do not properly consider that simply making good faith efforts to identify and educate all disabled children in the District still takes great amounts of work, planning, and coordination. Even accepting the premise that the District is currently doing far more than is required under the Rehabilitation Act, sustained compliance with the Rehabilitation Act nevertheless requires continued, deliberate commitment. In contrast to *D.C. Professional Taxicab Drivers Assoc.*, where recurrence would have taken place only if the defendant illegally and affirmatively retracted a final rule, 880 F. Supp. 2d 67, 75 (D.D.C. 2012), violations under the Rehabilitation Act can and often do occur through gross indifference or inaction. In the court's opinion, credible commitment is generally more difficult to demonstrate when a law requires the defendant to affirmatively take certain actions, rather than to refrain from engaging in proscribed behavior.

And importantly, there is nothing inherently durable about the changes the District made to its special education policies that would suggest recurrence is unlikely. Unlike a case such as *Sharp*, there is no easy solution or one-off investment that the District can make to ensure it

satisfies the Rehabilitation Act for the years to come. Although it is only in the "rarest of cases" that a plaintiff will "be able to prove that a school system's conduct . . . warrant[s] such a unique remedy [under the Rehabilitation Act] not otherwise provided for by the IDEA itself . . ." Mem. Op. 40, ECF No. 444 (citing *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 36 (D.D.C. 2001)), that fact alone does block the application of the voluntary cessation exception where a long history of Rehabilitation Act violations makes it otherwise appropriate.

Lastly, it is important to emphasize that if a defendant begins to comply with a law only after a plaintiff has brought an enforcement action, then that compliance alone is typically insufficient to block the application of the voluntary cessation exception. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) ("[T]he voluntary cessation of challenged conduct does not ordinarily render a case moot."). On the contrary: Such a finding should in many cases trigger analysis under the voluntary cessation exception to ensure that a party has not taken action in an effort to divest the Court of jurisdiction and "be free to return to [its] old ways." *Sharp v. Rosa Mexicano, D.C.*, 496 F. Supp. 2d 93, 98–99 (D.D.C. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)). After over ten years of constant violations, pointing to the existence of compliance policies that were created and implemented *during this litigation* does not meaningfully contribute to a finding that future violations are unlikely to recur.[2]

---

[2] Of course, courts must conduct a case-by-case analysis. *See D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia*, 880 F. Supp. 2d 67, 75-76 (D.D.C. 2012) (finding that a "broad policy change" and "recently adopted formal regulations" made it clear there was no reasonable expectation of recurrence, but noting other cases where the "voluntary cessation of challenged conditions by a government actor" did not moot a case). As discussed, the Court has analyzed the specific facts of this case and finds that the voluntary cessation exception does apply because defendants changed their behavior in response to this lawsuit, were in a state of non-compliance for over a decade before this lawsuit was initiated, and have without exception contested liability.

In addition to recent compliance efforts, defendants argue that the complexity of their special education systems provides additional protection for plaintiffs. Because the current educational policies and systems "would require multiple intentional efforts to dismantle," there is less of a chance that violations would recur, i.e., that those systems would be grossly mismanaged. Defs.' Reply 2–3. The Court disagrees, and finds that the scope of the challenge and complexity of the District's education systems may in fact increase the possibility of recurrence. Indeed, in many ways, the complexity of the District's systems simply reflects the somewhat daunting nature of the obligations they face. But in any event, the more complex a system is, the more effort and planning it takes to administer properly, which may in turn present a greater opportunity for future mismanagement—or for the purposes of the Rehabilitation Act, gross mismanagement. In short, the complexity of the present systems does not contribute to a finding that recurrence is less likely because it is not clear how such complexity reduces the likelihood of gross mismanagement or other future violations.[3]

In sum, defendants argue that after the Court ruled for them on summary judgment with respect to plaintiffs' Rehabilitation Act claim for the period from 2010 to the present, there is no longer any actual ongoing controversy under the Rehabilitation Act. But to the extent there is no longer an ongoing controversy, it is only because the defendants voluntarily ceased the conduct that gave rise to the controversy in the first place. Under such circumstances, they bear a heavy burden to show "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged

---

[3] To be clear, identifying all disabled children in the District and providing them with a free and appropriate education is a demanding task that does not lend itself to a simple solution. Although the law's requirements may call for the implementation of complex systems, the Court does not see how that complexity necessarily reduces the likelihood of recurrence.

violation." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) For the reasons stated in this opinion, they have failed to do so.

Lastly, the second prong of the voluntary cessation standard—that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation"—merits brief discussion. *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979). Because the Court has already found that the defendants have not shown it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur, the Court need not and will not determine whether all of the effects are eviscerated. It is important to note, however, that these prongs are conjunctive, meaning that if the defendant has altered its behavior during litigation in a way that extinguishes the live controversy, it must satisfy *both* conditions to block the application of the voluntary cessation exception. *See, e.g., D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia*, 880 F. Supp. 2d 67, 76 (D.D.C. 2012) (discussing these two requirements separately); *Lake Pilots Ass'n v. U.S. Coast Guard*, 257 F. Supp. 2d 148, 158 (D.D.C. 2003) (same).

### B.  Effective remedy

After ruling that the voluntary cessation exception applies, the Court finds that the plaintiffs' requested declaratory judgment would provide some form of effective relief. As discussed, a case becomes moot if "intervening events make it impossible to grant the prevailing party effective relief." *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008). For the purposes of this analysis, "'any effectual relief whatever' is expansively defined." *Ctr. for Food Safety v. Salazar*, 900 F. Supp. 2d 1, 5 (D.D.C. 2012) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). Although a court may not be able "'to return the parties to the *status quo ante*,' a court's ability to 'effectuate a partial remedy' is 'sufficient to prevent [a] case from mootness, even

if the party cannot 'prove that the requested relief is *certain* to alleviate their injury.'" *Id.* (emphasis in original) (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13 (1992)).

In arguing that any declaratory judgment the Court could issue would be ineffective, the defendants focus on the Court's previous summary judgment ruling that the District has complied with the Rehabilitation Act beginning March 22, 2010. Essentially, the defendant argue that after the Court "resolved liability in Defendants' favor for March 22, 2010 to the present, a declaratory judgment based on the earlier period would have no operative effect on the parties' rights or relations." Defs.' Mot. to Dismiss 1, ECF No. 510. In other words, they argue that the proposed remedy would be ineffectual.

This argument, however, runs counter the Court's previous determination that the defendants have not shown that there could be no reasonable expectation the alleged wrongdoing will recur. It bears repeating that in *City of Erie v. Pap's A.M.*, the Supreme Court explained how the requirement for effectual relief fits into the mootness doctrine and is intertwined with the voluntary cessation exception:

> The underlying concern is that, when the challenged conduct ceases such that *there is no reasonable expectation that the wrong will be repeated*, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party. In that case, any opinion as to the legality of the challenged action would be advisory.

529 U.S. 277, 287 (2000) (emphasis added) (quotations and citations omitted).

This Supreme Court precedent makes it clear that when, as here, defendants argue that a period of compliance would render requested relief ineffective, defendants must show "there is no reasonable expectation that the wrong will be repeated" in order to prevail. For the reasons already discussed, defendants have failed to meet that burden.

In determining that the defendants' recent compliance with the Rehabilitation Act does not deprive the court of jurisdiction, the Court also finds that a declaratory judgment would otherwise provide plaintiffs with an effective form of relief. Plaintiffs argue that the declaratory relief they request will "provide the basis for renewed litigation in this case or a new case," Pls.' Opp'n to Defs.' Mot. to Dismiss 23, and the Court agrees. Of course, to obtain declaratory relief, it is insufficient to show only past injury. *See, e.g.*, *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). Indeed, as the Supreme Court has explained, courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). With that in mind, this Court acknowledges that in many cases, the argument that a declaratory judgement would provide effective relief by setting the stage for future litigation would be unpersuasive. That would especially be so if liability under the law were easy to demonstrate, a defendant committed a single unlawful act, or, most critically, if recurrence were generally shown to be unlikely.

But that is not the case in the present matter. As plaintiffs suggest, a history of unlawful behavior can be an important factor for a court to consider as it exercises its broad discretion to remedy violations of the Rehabilitation Act. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss 23; *Pa. Prot. & Advocacy, Inc. v. Pa. Dept. of Public Welfare*, 403 F.3d 374, 380 n.5 (3rd Cir. 2005) (stating that district courts have "broad discretion in crafting an appropriate remedy when liability [under section 504] is established"). Partially for that reason, other courts have considered the complexity of a law or difficulty in establishing liability when determining whether or not to issue a declaratory judgment. *See, e.g.*, *Padres Hacia Una Vida Mejor v. Jackson*, 922 F. Supp. 2d 1057, 1070 (E.D. Cal. 2013) (finding that a declaratory judgment would not provide any effective relief in part because in potential future litigation, "[d]efendants will not be able to contest that it took

an astounding 17 years to meet the 180 day deadline in Plaintiffs' prior Title VI complaint, irrespective of any declaration"). Unlike a legal violation that can be demonstrated by a single infraction (e.g., a missed deadline), the Rehabilitation Act's gross mismanagement or bad faith standard is imprecise and demanding. It centers on a subjective inquiry, which can be difficult to prove and easy for a defendant to contest. Requiring plaintiffs to prove previous Rehabilitation Act violations in a potential future lawsuit would demand a serious investment of time and resources, not to mention, place a strain the judicial system. Because a court may consider previous violations when shaping a remedy in a potential future lawsuit and because Rehabilitation Act violations are especially difficult to prove, a declaratory judgment stating that defendants have violated the Rehabilitation Act would provide the plaintiffs with some form of effectual relief.

This remedy is all the more valuable in light of the longstanding relationship between these parties and the District's extensive history of failing to properly identify and appropriately educate disabled students. Because this lawsuit was originally filed in 2005 and has been active ever since, it is safe to say that "[t]he parties are involved in an ongoing relationship that may present the opportunity for future disagreement." *Halkin v. Helms*, 690 F.2d 977, 1007 (D.C. Cir. 1982). And as the D.C. Circuit has noted, such a finding can help to justify adjudication and the issuance of a declaratory judgment. *Id.*

Additionally, these considerations relate to the most critical factor in the Court's analysis, that the defendants are unable to show there could be no reasonable expectation that the wrongful conduct will recur. In arguing against the effectiveness of a declaratory judgment, defendants instead emphasize that the plaintiffs' core theory raises ripeness concerns and is therefore invalid. The defendants argue that the notion a declaratory judgment would provide effective relief by setting the stage for potential future litigation "rests upon contingent future events that may not

occur as anticipated, or indeed may not occur at all." Defs.' Mot. 10 (citing *Shaffer v. Def.*
*Intelligence Agency*, 601 F. Supp. 2d 16, 23 (D.D.C. 2009)). Although it is true that future litigation
may never occur, defendants cite to the incorrect standard. The proper standard centers on whether
there could be no reasonable expectation that the wrong will be repeated. *City of Erie*, 529 U.S. at
287.

Importantly, a declaratory judgment in this case would adjudicate facts that have already
occurred. Although the full impact of declaratory judgment rests on contingent future events, that
alone does not mean that the remedy provides no "effectual relief whatever." *Id.* (emphasis added).
In this case, the Court is declaring that past actions were unlawful, and in doing so, the Court need
only find that the declaration provides some form of effectual relief; it need not determine the full
extent of that relief. If, on the other hand, the Court were to declare that future events were
unlawful, that may present ripeness issues, as defendants argue. Defs.' Mot. to Dismiss 8.

As discussed, in a case such as this, where the challenged conduct has ceased during the
litigation, courts will be unable to grant "any effectual relief whatever" when "*there is no*
*reasonable expectation that the wrong will be repeated*." *Id.* (emphasis added). If the defendants
had shown there was no reasonable expectation of recurrence, the declaratory judgment would
become ineffective—it could not be used as a tool in any future litigation because future litigation
could not be reasonably expected to occur. As stated, however, there has been no such showing in
this case. In sum, the defendants' failure to satisfy its burden of showing that recurrence could not
be reasonably expected is critical in the Court's determination that a declaratory judgment
represents effective relief.

**IV.    Conclusion**

      The Court recognizes that the District has come a long way since this lawsuit was initiated. Moreover, the Court today has made no finding that future violations of the Rehabilitation Act are likely. It only declares that the mootness analysis is governed by the voluntary cessation exception and defendants have failed to carry their burden to show it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 170.

      For the reasons stated herein, the Court will DENY defendants' motion to dismiss as moot what remains of plaintiffs' Rehabilitation Act claims.

      **IT IS SO ORDERED** this _15th_ day of May, 2016.

The Honorable Royce C. Lamberth
U.S. District Court Judge