UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DL,[1] *et al.*, on behalf of themselves and all others similarly situated,  )<br>)<br>)<br>Plaintiffs,                                )<br>)<br>)<br>v.                                              )<br>)<br>THE DISTRICT OF COLUMBIA,       )<br>*et al.*,                                         )<br>)<br>Defendants.                           )<br>) | **Plaintiffs' Exhibit 27**<br>Civ. No. 05-1437 (RCL)<br><br>Civil Action No. 05-1437 (RCL) |

DECLARATION OF MICHAEL KAVANAUGH

Michael Kavanaugh affirms and states:

1. My name is Michael Kavanaugh. I am an economist in private practice at 19-4231 Road E, PO Box 1228, Volcano Hawaii, 96785.

2. I hold a Ph.D. in economics from the University of Cincinnati (1975) and a BA in economics from Xavier University (1970). I have taught economics at the University of Cincinnati and at Northern Kentucky University. For over 35 years, I have worked as an economist for a variety of clients including the U.S. Department of Justice, the U.S. Environmental Protection Agency, the U.S. Department of the Interior, the States of Ohio, California, and Alaska, citizen groups, and private industry.  I have been qualified as an expert in Federal court in financial and economic matters many times. Attachment 1 is a copy of my resume with a listing of sworn federal testimony in the last five years and all publications published in the last ten years.

3. In 1983, the plaintiffs in *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), affirmed in part, reversed in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert.

---

[1] Pursuant to Local Rule 5.4(f)(2), minors are identified by their initials.

        denied, 472 U.S. 1021 (1985), overruled in part on other grounds, *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)(*en banc*) sought an award of attorneys' fees under the applicable law.  Those plaintiffs collected information on the hourly billing rates charged to fee-paying clients in 1981-1982 in Washington, D.C., by attorneys engaged in complex federal litigation and created a composite of those rates, which has become known as the *Laffey* Matrix.  The 1981-1982 *Laffey* Matrix was updated to 1988-1989 rates with a new survey in connection with the *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)(*en banc*) litigation at the urging of the D.C. Circuit.  See Declaration of Joseph A. Yablonski, Pl. Ex. 33.

4.     The *Laffey* Matrix has been updated over the years using two different price indices.  The first uses a component of the Consumer Price Index (CPI) known as the Legal Services Index (LSI).[2]  I use this index.[3]  The second uses the All-Items Regional CPI for metropolitan Washington, D.C.  Until 2015, the United States Attorney's Office (USAO) used the All-Items Regional CPI to update the *Laffey* Matrix.  I refer to the former as the LSI *Laffey* Matrix and the latter as the USAO *Laffey* Matrix.[4]

5.     Beginning in the period 2015-2016, the USAO adopted a new matrix that is not based on a sample of rates for performing complex federal litigation.  I refer to the new USAO matrix as the USAO Matrix 2015-2017.[5]  The USAO Matrix 2015-2017 uses the Producer Price Index-Offices of Lawyers (PPI-OL) index for adjustment purposes.[6]  I

---

[2] Consumer Price Index for U.S. City Average, Legal Services.

[3] The *Laffey* matrix updated using the LSI is set forth in Plaintiffs' Exhibit 23.

[4] These are the labels used by the Court of Appeals for the D.C. Circuit in its two 2015 decisions addressing the two matrices.  Salazar *v. District of Columbia*, 809 F. 3d 58 (D.C. Cir. 2015)("*Salazar V*"); *Eley v. District of Columbia,* 793 F.3d 97 (D.C. Cir. 2015).

[5] The USAO Matrix 2015-2017 provides rates for two rate periods, 2015-2016 and 2016-2017.

[6] See: https://www.justice.gov/usao-dc/file/796471/download Explanatory Note #2.

discuss the USAO Matrix 2015-2017 and PPI-OL below.

6.  The first time I offered an opinion on the appropriate method for updating the *Laffey* Matrix was in a 1996 affidavit that the plaintiffs submitted in *Salazar v. District of Columbia,* 123 F. Supp. 2d 8 (D.D.C. 2000), in support of their first application for attorneys' fees.   I opined that using the LSI was the appropriate method for updating the *Laffey* Matrix.  I continue to hold that opinion today. The Court explicitly adopted my analysis in its decision.  *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000)("*Salazar I*").

7.  Since then, I have prepared declarations/affidavits on the same topic in several other cases. Although I do not maintain a complete list of all my work, I do know my analysis was adopted in the following decisions:  *Salazar v. District of Columbia*, 991 F. Supp. 2d 39 (D.D.C. 2014)("*Salazar III*"), affirmed, 809 F. 3d 58 (D.C. Cir. 2015)("*Salazar V*"); *Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014)("*Salazar IV*"), affirmed, 809 F. 3d 58 (D.C. Cir. 2015)("*Salazar V*"); *Eley v. District of Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013), reversed on other grounds, 793 F.3d 97 (D.C. Cir. 2015); *Hash v. United States of America* 1:99-CV-00324-MNW, 2012 WL 1252624, at *22 (D. Idaho Apr. 13, 2012); *Salazar v. District of Columbia*, 750 F. Supp. 2d 70 (D.D.C. 2011)("*Salazar II*"); *Interfaith Community Organization v. Honeywell*, 336 F. Supp. 2d 370 (D.N.J. 2004), affirmed, 426 F. 3d 694 (3d Cir. 2005); *PIRG v. Magnesium Elecktron, Inc.,* 1995 WL 866983, *2, 10 (D.N.J. Dec. 28, 1995), vacated on other grounds, 123 F.3d 111 (3d Cir. 1997).

8.  Plaintiffs' counsel asked me to compare the LSI index with the PPI-OL index and to address the USAO Matrix 2015-2017. My opinions are stated to a reasonable degree of certainty under the standards of my profession.

9.  As discussed in more detail below, indices observe the prices of selected goods and services over time and create

an index. This allows calculation of the rate of price change over various time intervals for the goods and services represented by the sample.  Once the rates of price change are established they may be used to make statements about the cost of living or to adjust past market prices to estimate prevailing market prices.

10. There are two bases for distinguishing among the LSI, PPI-OL and the All-Items Regional CPI.  They are: (1) the specific goods and services included in each index, and (2) the geographic reach of the sample.

11. All-item consumer price indices, including the All-Items Regional CPI, combine the price changes of over one hundred thousand (100,000) commodities into a single index value to measure the rate of price change in the overall cost of living for consumers.  In my opinion it is far better to update the *Laffey* survey of billing rates using an index specific to legal services rather than a broad index, such as the All-Items Regional CPI, because the latter contains components that are not relevant to the market for legal services.

12. Both the LSI and the PPI-OL measure the fees charged for providing specific legal services.  These services include, *inter alia*, preparing a brief, attending a deposition and representing parties in civil proceedings. These are services provided in complex federal litigation. Just as a national CPI does not include all items in the U.S. economy, neither the LSI nor the PPI-OL includes the fees charged for every possible service rendered by lawyers. [7] The size and complexity of the U.S. economy and the practice of law makes impossible the inclusion of every price in the economy or every service provided in a law

---

[7] The LSI and the PPI-OL data are the billing rates for legal services performed on behalf of individuals, households, non-profits and businesses, including proprietors, partnerships and corporations. There are slight differences between the two indices in the sampling used to measure the rate of change in the price of legal services. These differences are not relevant here.  For example, the PPI-OL index is evolving and may begin to reflect changes in product demand and the industry's use of technology.

4

        practice in an index.[8]

13. The use of an index specific to legal services is more likely to reflect the rate of change in the prevailing billing rates for legal services than a general consumer price index. A general CPI -- whether national, regional, or local -- includes items that are not relevant to the market for legal services. These other items, such as housing and transportation, are given much more weight than legal services. When an All-Items CPI is applied to the billing rates in the *Laffey* Matrix, this obfuscates the rate of price change of legal services.

14. In my opinion, resource mobility and low-cost communication combine to make the market for legal services in complex federal litigation in Washington, D.C., a national market not a local market. Therefore, it would be more appropriate to use the LSI or the PPI-OL, which capture supply and demand factors particular to the legal services markets nationally and not the All-Items Regional CPI, which captures local price changes of over 100,000 items.

15. In other words, Washington, D.C., area law firms *compete* with law firms in other areas such as New York, Philadelphia, Chicago, Dallas, and San Francisco. Plaintiffs' legal market experts, Michael Downey and Bruce MacEwen, agree that the Washington, D.C., market for complex federal litigation is a national market. Pl. Exs. 28-29. The geographic extent of the market for complex legal services provides another reason why the LSI or the PPI-OL produces adjusted rates that are more reflective of the marketplace than the All Items Regional CPI. They more accurately reflect the conditions of competition in the

---

[8] It is common practice in economics to make prices for part of an industry stand for prices in the whole industry. This is what the Department of Commerce does when it prepares estimates of an industry's contribution to gross domestic product (GDP). For example, when measurements of the legal industry's contribution to the output of the nation are made, the legal services component of the Consumer Price Index is used; when the contribution to GDP of all physicians' services is calculated, the medical care services component of the Consumer Price Index is used; and when the contributions to GDP of radio, or TV, or air conditioning repair services are calculated, the specific component indices of the Consumer Price Index are used.

5

       Washington, D.C., marketplace.

16. Since Washington, D.C., firms compete in a national market, their rates must be competitive. Since their rates must be competitive, the rate of change in their rates is also likely to be similar.

17. The USAO is now using the PPI-OL instead of the All-Item Regional CPI to adjust for the passage of time. So, I compared the LSI with the PPI-OL. As discussed above, both the LSI and the PPI-OL measure a national rate of change of prices for legal services. The Bureau of Labor Statistics has maintained the LSI since 1987 and the PPI-OL since 1997. For the years they have in common, these two indices report comparable rates of price change for legal services.[9] This means that when the same hourly rate is adjusted with the LSI compared to the PPI-OL, the resulting LSI hourly rate is about the same as the PPI-OL.

18. Although both indices are for legal services and are national in scope, characteristics which are important to updating the *Laffey* Matrix, I prefer the LSI over the PPI-OL to adjust the *Laffey* Matrix. The adjustment for the passage of time needs to run from 1989 to present. However, the PPI-OL does not run from 1989 to present. The first full year of index values for the PPI-OL is 1997 and 1998 is the first year an annual price change can be observed (e.g. June 1997 to June 1998). This means that in order to adjust the *Laffey* Matrix, the LSI must be used for the period from 1989 through 1998 and the PPI-OL used to continue from 1998 to present. Unless there is a material difference in using different price indexes to adjust for the passage of time, it is a better practice to adjust values using a single index rather than to switch indices when adjusting for the passage of time.

---

[9] Attachment 2 shows the annual adjustment for the LSI and for the PPI-OL since 1997. The adjustment is the value by which the sample or baseline hourly rate is multiplied each year to produce the updated rate. The adjustment is calculated by dividing the index value for June of the current year by the value for June of the previous year. This is the rate of price change from one year to the next. Attachment 2 also shows the difference in the adjustment between the two indices. The PPI-OL adjustment exceeds the LSI adjustment in twelve of the nineteen years.

6

19. In *Heller v. District of Columbia,* 832 F. Supp. 2d 32 (2011), the Court adopted the USAO *Laffey* Matrix over the LSI *Laffey* Matrix based on an assumption that the LSI update represents large law firms and the attorneys who represented the plaintiffs were from small law firms.

20. Market prices for a specific good or service cannot be expected to vary by firm size. A barrel of oil sells for the same price whether it is produced by a small well in Eastern Ohio or the world's largest well in Saudi Arabia. The auto market is not divided into a large automaker market and a small automaker market. Regardless of size automakers compete against each other in the marketplace. The same is true of law firms. Small, medium and large firms compete with one another for clients in the complex federal litigation market. From that competition a market price emerges.[10]

21. When the USAO created its new matrix it not only changed the price index (it switched to the PPI-OL), but also it changed the sample that underlies the hourly rate data. The USAO Matrix 2015-2017 is no longer based on a sample of rates for complex federal litigation. It is based on ALM Legal Intelligence survey data from 2010 and 2011.[11] The USAO does not describe its new sample but its consultant has described the 2011 ALM Survey as consisting of "billing rates of attorneys in the Washington, DC area from law offices *of all sizes and types*" (emphasis added).[12]

---

[10] While casual observation or firm-wide averages might suggest that small firms charge less than large firms, what I think is being observed is that smaller firms are providing a product mix that contains a larger share of simple services. Since simple services are billed at a lower rate than the rate for complex federal litigation services, firms with product mixes that have a large share of simple services will *appear* to have lower billing rates. Nevertheless, when a small firm provides complex federal litigation services, market forces will allow it to bill at the prevailing market rates for complex federal litigation services. So, when conducting a rate survey, the better question to ask is not about firm size but product mix (i.e. simple versus complex).

[11] See: https://www.justice.gov/usao-dc/file/796471/download Explanatory Note #2.

[12] See Declaration of Dr. Laura A. Malowane, para. ¶12 in *Makray v. Perez* (U.S. Secretary of Labor) Civil Action No. 12-0520 (BAH)(ECF No. 88-1).

7

22. The USAO's adoption of the PPI-OL, which is similar to the LSI, ends the discussion over the appropriate index to update the *Laffey* Matrix. USAO's adoption of the ALM survey changes the discussion to whether the ALM survey is appropriate to use to find prevailing billing rates for complex federal litigation.

23. It is my understanding that the goal is to produce a matrix of hourly rates that reflect prevailing market rates for complex federal litigation in Washington, D.C.

24. I reviewed the summary of affidavits and court documents collected by plaintiffs' counsel of prevailing market billing rates charged by Washington, D.C., firms in 2015 and 2016 (Pl. Exs. 47-49 ). These materials show that the LSI *Laffey* Matrix produces a better approximation of prevailing billing rates for complex federal litigation in the Washington, D.C., market than the USAO Matrix 2015-2017.

25. Since the LSI *Laffey* Matrix and USAO Matrix 2015-2017 use nearly identical price indices, the more probable reason why the USAO Matrix 2015-2017 makes an inferior estimate of prevailing market rates for complex federal litigation is because the USAO Matrix 2015-2017 applies its national price index for legal services to a sample that does not represent the billing rates for performing complex federal litigation.[13]

26. Adjusting the ALM survey for the passage of time will not correct this defect in the data. So, it is simply incorrect to use the USAO Matrix 2015-2017 to find prevailing hourly billing rates for complex federal litigation.

---

[13] Previously, the USAO *Laffey* Matrix was updated with an improper price index, namely, a cost of living index, the All-Item Regional CPI, that gave almost no weight to the fees for legal services.

27. My billing rate for the preparation of this affidavit is $250/hour.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. This document executed on September 24, 2016.

*mkavanaugh*
_____
MICHAEL KAVANAUGH, PhD

**Attachment 1**

**MICHAEL KAVANAUGH**
**Research Economist**
Phone: 808 985 7031
E-mail:  M.Kavanaugh@att.net

P.O. Box 1228
19-4231 Road E
Volcano, Hawaii 96785

**PRESENT POSITION:** Private Practice since 1985
Volcano, Hawaii 2008 to present
Batavia, Ohio 1993–2008
Washington, DC 1985-1993

**PREVIOUS POSITIONS**:
- Senior Economist, ICF Incorporated, 1983-85, Washington, D.C.
- Research Director, Public Interest Economics, 1976-1983, Washington, D.C. and San Francisco, CA.
- Assistant Professor, Northern Kentucky University, 1975-76

**EDUCATION**:
- PhD., Economics, University of Cincinnati, 1975
- BA. Economics, Xavier University, 1970

**EXPERIENCE**
- An independent research economist with years of experience;
- A national expert in the economic aspects of environmental enforcement and policies for controlling pollution;
- Experienced in regional economic analysis;
- Experienced in the use of economic indices;
- Experienced in valuing damages to persons, households, and commercial enterprises;
- Experienced in assessing natural resource damages; and,
- An author of groundwater management and climate change papers.

Short descriptions of selected projects follow.

**ECONOMICS & FINANCE**

I applied economics to many of the environmental changes of the last thirty years including:

- Estimating the ability of defendants to pay a penalty and the financial effects of penalties in enforcement cases;
- Estimating the benefits of cleaner beaches and rivers;

- Developing methods to determine the effects of water quality policies on agricultural output, employment and income;
- Developing methods to estimate the benefits of preserving groundwater quality;
- Advised on the adequacy of financial assurance mechanisms;
- Estimating expected and realized benefits of irrigation projects; and,
- Critiquing efforts to regulate effluents from several industries.

Designed and used financial after-tax, cash flow models to:

- Measure the ability to pay a penalty and the effects of penalties on financial position;

- Estimate the economic benefit gained by entities that violate law and regulation; and,

- Estimate the burden on the residential sector from municipal compliance with law and regulation.

Provided expert economic and litigation support services to the United States (and others) in Clean Water Act, Clean Air Act, Superfund, RCRA and groundwater quality cases.

*Exxon Valdez* – Estimated the employment and income effects from spending the civil settlement. The work involved characterizing the options in the restoration plan in term of input/output models.

For an environmental group, wrote a declaration on the economic studies needed to establish that a spillover effect was reasonably certain to result from a National Marine Fishery Service proposal to allow an expansion of the Hawaii-based fishing fleet. In the absence of a spillover effect, the expansion of the Hawaii-based fleet would jeopardized an endangered turtle species.

**Natural resource damage assessments**

- Ohio River – valued public resource damages from spills from tugs and barges. The work combined results from Natural Resource Damage Assessment models, studies of the costs of reducing risks to drinking water, and restoration costs.

- Kailua Beach State Park – valued a three-mile beach based on recreational use and estimated the damage from wastewater treatment plant effluent. The work involved reviewing, updating and synthesizing a variety of studies that valued recreation.

- Florida Beaches – valued beach closures from pollution at several beaches. The work involved extensive use of the Natural Resource

11

      Damage Assessment models for coastal and marine environments.

**Energy & Environment**

- Commented on economic impacts to employment and structures of planned, utility-scale photovoltaic projects in Southern California.

- Conducted several analyses of U.S. energy industry to estimate current and future energy production and consequences in wetlands and in the North Aleutian Basin.

- Estimated the cost effectiveness of technologies to control produced water discharges in wetlands.

- Estimated the impact of produced water controls on production, royalties and returns from coal bed methane production.

- Estimated the change in rates needed to pay for adopting cooling water intake controls at a nuclear power plant.

- Advised environmental groups on methods to fund the WV acid mine drainage reclamation fund.

- Design team member to size and fund the Superfund.

- Estimated onshore economic impacts of outer continental shelf oil and gas development in California.

- Examined the efficiency and equity of federal leasing policies for oil and gas on public lands

**Global Climate**

- Estimated current and future greenhouse gas emissions by fuel, sector and region.  The work involved estimating long-term energy using an economic model based on prices, income and combustion technology.

- Estimated greenhouse gas emissions by jets at altitude by region and the change in emissions from adopting advanced jet technology.

- Modeled current and future emission from the US automobile fleet under various assumptions about future fuel efficiency.

- Analyzed the benefits of substituting hydrocarbon propellants for CFC propellants in aerosol products.  The results showed the same level of consumer satisfaction could be obtained without CFCs and without increasing prices.

**Publications since 2005**
none

**Federal Court Trial Testimony since September 2011**

Sierra Club v. Virginia Electric and Power Company d/b/a Dominion Virginia Power; United States District Court for the Eastern District of Virginia, Richmond, Virginia  Civil Case No. 2:15-CV-112-RAJ-DRM-JAG (6/16)

**Deposition Testimony since September 2011**

Little Hocking Water Association v. Dupont (5/14) 2:09-cv-010Bl-GCS-NMK

Ohio Valley Environmental Coalition, et al. v.  Consol of Kentucky, Inc., (10/14)   cv: 2:13-5005

PennEnvironment and Sierra Club v. PPG, Inc. et al. (1/15)  2:12-cv-00342-RCM

Hawai'i Wildlife Fund, Sierra Club - Maui Group, Surfrider Foundation, and West Maui Preservation Association v. County of Maui  (5/15) Civil Case No. 12-00198 SOM, BMK

California Communities Against Toxics v. Armorcast  Products Company, Inc. et al. (10/15) Civil Case No. Case No.  2:14-cv-05728-PA-FFM

Sierra Club v. Virginia Electric and Power Company d/b/a Dominion Virginia Power; United States District Court for the Eastern District of Virginia, Richmond, Virginia  (5/16) Civil Case No. 2:15-CV-112-RAJ-DRM-JAG

**Attachment 2**

| Comparison of the LSI Adjustment Factor and the PPI-OL Adjustment Factor | | | | |
|---|---|---|---|---|
| Rate Year | | LSI Adjustment | PPI-OL Adjustment | PPI-OL Differential |
| 6/1/2016 | 5/31/2017 | 1.036943 | 1.017474 | -0.019469 |
| 6/1/2015 | 5/31/2016 | 1.008873 | 1.030350 | 0.021477 |
| 6/1/2014 | 5/31/2015 | 1.023459 | 1.034043 | 0.010584 |
| 6/1/2013 | 5/31/2014 | 1.024383 | 1.027884 | 0.003501 |
| 6/1/2012 | 5/31/2013 | 1.025790 | 1.027528 | 0.001738 |
| 6/1/2011 | 5/31/2012 | 1.035168 | 1.037901 | 0.002733 |
| 6/1/2010 | 5/31/2011 | 1.033724 | 1.031269 | -0.002455 |
| 6/1/2009 | 5/31/2010 | 1.021848 | 1.032278 | 0.010430 |
| 6/1/2008 | 5/31/2009 | 1.040127 | 1.050196 | 0.010069 |
| 6/1/2007 | 5/31/2008 | 1.051500 | 1.059392 | 0.007892 |
| 6/1/2006 | 5/31/2007 | 1.025641 | 1.046999 | 0.021358 |
| 6/1/2005 | 5/31/2006 | 1.042691 | 1.049317 | 0.006626 |
| 6/1/2004 | 5/31/2005 | 1.045537 | 1.051875 | 0.006338 |
| 6/1/2003 | 5/31/2004 | 1.050687 | 1.031276 | -0.019411 |
| 6/1/2002 | 5/31/2003 | 1.072663 | 1.031409 | -0.041254 |
| 6/1/2001 | 5/31/2002 | 1.040719 | 1.051786 | 0.011067 |
| 6/1/2000 | 5/31/2001 | 1.052895 | 1.030359 | -0.022536 |
| 6/1/1999 | 5/31/2000 | 1.049065 | 1.024505 | -0.024560 |
| 6/1/1998 | 5/31/1999 | 1.043902 | 1.038160 | -0.005742 |

