UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Plaintiffs' Exhibit 35**
Civ. No. 05-1437 (RCL)

NATIONAL WILDLIFE FEDERATION, ET AL.,   )
                                          )
                            Plaintiffs,  )
                                          )
        v.                                )   C. A. No. 82-0320
                                          )
JAMES G. WATT,                            )
SECRETARY OF THE INTERIOR, ET AL.,        )
                                          )
                            Defendants.   )

PLAINTIFFS' APPLICATION FOR
AN AWARD OF FEES AND EXPENSES

                                Daniel B. Edelman
                                Yablonski, Both & Edelman
                                1140 Connecticut Avenue, NW
                                Suite 800
                                Washington, DC  20036

L. Thomas Galloway
Harmon & Weiss
1725 I Street, NW
Suite 506
Washington, DC  20006

Norman L. Dean, Jr.
National Wildlife Federation
1412 16th Street, NW
Washington, DC  20036

Dated:  May 28, 1982

INDEX OF ATTACHMENTS TO FEE APPLICATION

| Tab | Description |
|---|---|
| A | Affidavit of L. Thomas Galloway, with attached time statements and statements of expenses and retainer agreement |
| B | Affidavit of Norman L. Dean, Jr., with attached time statements and statements of expenses |
| C | Press accounts of Settlement Agreement |
| D | Account in Mine & Productivity Report of Settlement Agreement and in The Energy Daily |
| E | Affidavit of David N. Webster |
| F | Affidavit of Jane Lang McGrew |
| G | Affidavit of David S. Tatel |
| H | Declaration of Eldon Greenberg |
| I | Affidavit of Sanford Sagalkin |
| J | Affidavit of Angus MacBeth |
| K | Affidavit of Martin Lobel |
| L | Fee Application of Shea & Gardner in Hansen v. Federal Bureau of Investigation, EEOC Complaint No. 033-079-X3070 and attachment to Application indicating normal billing rates of attorneys in that firm with levels of experience similar to fee applicants in this case |
| M | Affidavit of David Tatel of April 20, 1981 filed with Fee Application of Hogan & Hartson and other attorneys in McKenzie v. Saylor, C.A. No. 73-974 (D.D.C.) and Attachment 3 to Affidavit indicating Hogan & Hartson's billing rates for attorneys of various levels of experience |
| N | Affidavit of Marjory Fisher, a law clerk employed by Yablonski, Both and Edelman, with attached charts summarizing Attachment 3 to David Tatel Affidavit of April 20, 1981 and reciting Hogan & Hartson's billing rates as of April 1981 for attorneys with 0 to 14 years of experience |
| O | Affidavit of Daniel B. Edelman with attached statements of time and expenses and letters |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

NATIONAL WILDLIFE FEDERATION, )
et al., )
 )
 )
            Plaintiffs,       )     Civil Action No. 82-0230
 )
v. )
 )
JAMES G. WATT, et al., )
 )
            Defendants.       )

## AFFIDAVIT

I, L. Thomas Galloway, being duly sworn, do hereby depose and say:

1. I am currently a member of the Bar of the District of Columbia and have been since 1974. I, along with Norman Dean, represented the Plaintiffs in the instant proceeding.

2. I graduated from Florida State University in 1967, with a major in history (classical) and a minor in Latin. I am a member of Phi Beta Kappa.

3. I graduated from the University of Virginia Law School in 1972, where I was Articles Editor of the Virginia Law Review (1971-2).

4. I clerked in 1972-73 for Judge Paul R. Hays of the United States Court of Appeals for the Second Circuit in New York, New York.

5. Between 1973-75, I practiced law as an associate with the firm of Jones, Day, Reavis & Pogue, 1100 Connecticut Avenue, Washington.

D.C. During my association with the firm, I had a general regulatory practice, including administrative and court litigation, mainly in the area of the regulation of coal mining, particularly the health and safety regulation of coal mines. My coal-related work at the firm was on behalf of large coal mining companies.

6. In 1975, I founded the Mining Project at the Center for Law & Social Policy, a public interest law firm, located at 1751 N Street, N.W., Washington, D.C. I worked on mining issues for the Center for Law and Social Policy from 1975-1981. My work involved primarily regulatory matters falling under the Federal Mine Health and Safety Act (as amended), and the Surface Mining Control and Reclamation Act. Perhaps 60 percent of my work involved litigation under these two acts in all major coal regions in the United States on behalf of miners or citizen and environmental groups concerned with the impacts of mining. In my work for the Mining Project for the Center, I served as counsel for citizen and environmental groups on every major national surface mining case since 1977 in both administrative and federal court proceedings.

These cases include:

1) UMWA, District 12, v. Kleppe (D.D.C.) Suit to force Secretary of the Interior to investigate complaints by miners that they were discriminated against because of safety activity. (Lead counsel)

2) Adkins v. Deskins Branch Coal Company (Office of Hearings and Appeals) A § 110(b) action under Federal Coal Mine Health and Safety Act involving discharge of miners over alleged safety action in Pike County, Kentucky. (Lead counsel)

-2-

3) Ratliff v. Standard Sign & Signal (Office of Hearings and Appeals) A § 110(b) action under Federal Coal Mine Health and Safety Act involving discharge of foreman for refusal to take men past federal closure order (Pike County, Kentucky). (Lead counsel)

4) Council of Southern Mountains, Inc., v. Donovan (D.C. Cir.) A review of actions of Secretary of Labor in refusing to require that self rescuers be placed in all coal mines in United States.

5) Council of Southern Mountains, Inc., v. Donovan (D.D.C.) Mandamus action to force Secretary of Labor to issue unwarrantable failure sanctions against thousands of coal operators. (Lead counsel)

6) Rogers v. Anshutz Coal Company (Federal Mine Safety Commission). A 110(b) discrimination claim involving discharge of a shift of miners in Colorado for refusing to work in unsafe conditions. (Lead counsel)

7) Council of Southern Mountains, Inc., v. Martin County Coal Company (Federal Mine Safety Commission) A § 105(c) discrimination action in which coal operator refused to allow representative of miners onto mine property for safety training purposes. (Lead counsel)

8) In re Surface Mining Regulation Litigation (D.D.C. & D.C. Cir.) A massive (over 40 issues) challenge to Department of the Interior surface mining regulations. Acted as both plaintiff and defendant-intervenor. (Lead counsel)

9) In re Permanent Surface Mining Regulation Litigation. (D.D.C. and D.C. Cir. en banc). A massive (100 issues) challenge to permanent surface mining regulations. Acted as both plaintiff and defendant-intervenor. (Lead counsel)

10) Council of Southern Mountains, Inc., v. Andrus (D.D.C.) A citizens' suit over nationwide failure to inspect and enforce at some 17,000 mines and related facilities. (Lead counsel)

11) Save Our Cumberland Mountains, Inc., v. Watt (D.D.C.) A citizen's suit to compel Secretary Watt to assess some 40 million dollars against coal operators who have violated the Surface Mining Act.

12) NRDC v. Schultze (D.D.C.) Action to preclude the President's Council of Economic Advisers from interfering in Department of Interior rulemaking.

13) NRDC v. OSM (Interior Board of Surface Mining Appeals) First permit challenge under the Surface Mining Act, involving a permit issued to Atlantic Richfield Company in Gunnison County, Colorado. (Lead counsel)

14) Council of Southern Mountains, Inc., v. Highland Coal Company (Office of Hearings and Appeals, and D.E.KY) Challenge to coal company in East Kentucky for failure to comply with Surface Mining Act.

15) Virginia Citizens for Better Reclamation v. Watt (D.D.C.) Citizens' suit under Surface Mining Act for failure to enforce "2-acre" exemption.

16) Illinois South, et al, v. OSM (Office of Hearings and Appeals) Administrative challenge for failure to enforce blasting responsibilities at mine in Illinois.

17) St. Charles Coal Company v. OSM (Office of Hearings and Appeals) Administrative challenge for failure to enforce highwall elimination under Surface Mining Act. (Lead counsel)

18) Sierra Club v. Watt (D.D.C.) Challenge to regulation issued by Secretary Watt establishing standard for approval of state programs under Surface Mining Act. (Lead counsel)

19) National Wildlife Federation v. Watt (D.D.C.) Challenge to action of Secretary Watt in deleting cutoff date for grandfather exemptions for prime farmlands under Surface Mining Act.

20) National Wildlife Federation v. Watt (D.D.C.) NEPA challenge to re-write of permanent program regulations.

In the course of my work for the Center, I received several attorney fee awards from the federal courts and from administrative agencies. These include:

-4-

1) Ratliff v. Standard Sign & Signal Co. (Office of Hearings and Appeals, DOI)

2) Rogers V. Anshutz Coal Company (Office of Hearings and Appeals, DOI)

3) Council of Southern Mountains, Inc., v. Andrus, (D.D.C.)

4) Council of Southern Mountains, Inc., v. Martin County Coal Company (Federal Mine Safety Review Commission)

5) Council of Southern Mountains, Inc., v. Highland Coal Company (Board of Surface Mining Appeals)

In the ten years of my practice, as the above cases reflect, I have spent the great majority of my time in coal-related issues, mainly under the Federal Mine Safety Act and the Surface Mining Control and Reclamation Act. During my practice in coal-related issues, my responsibilities gradually increased from those of junior associate to now, when I am lead counsel on most federal court and administrative actions involving coal-related issues.

7. In 1981, I left the Center to become Of Counsel to a private public interest law firm, Harmon & Weiss. I have continued at Harmon & Weiss to represent miners, or other workers at mines and representatives of miners and citizens and environmental groups across the United States in matters relating to the environmental or health and safety impacts of coal mining. My clients include Appalachian citizen groups such as the Council of Southern Mountains, Inc., Save Our Cumberland Mountains, national environmental and conservation organizations such as the National

-5-

Wildlife Federation, Sierra Club, and Natural Resources Defense Council, Inc.; and widows of mine disasters and individual miners and workers at mines.

8. Because these organizations and individuals do not have sufficient resources, it is my practice to represent them at rates significantly below the commercial rate for work done in the field of coal regulation, whether in health and safety or environmental impact. I determine the level of the reduced rate based on the groups' and individuals' ability to pay. In some cases, because the group or individual has practically no resources, such as when miners are fired because of alleged safety protests, I will represent the individual and group without fee. For national environmental and conservation groups, the reduced rate ranges from $50 to $60 per hour. My retainer agreement with the National Wildlife Federation for the instant case is attached.

9. In the numerous coal regulation cases in which I have participated, the attorneys who have regularly appeared, (other than government attorneys) include, inter alia, attorneys from the firms of Crowell & Moring, Shea & Gardner, Covington & Burling, Hogan & Hartson, and Kilcullen, Smith & Heenan. In the instant case, attorneys from Crowell & Moring represented the National Coal Association/American Mining Congress who intervened in the proceeding.

10. The time I expended on the instant case is accurately reflected on the time statements which are attached hereto. These time statements reflect my billing judgment. I do not include time in the time sheets if, in my judgment, the time was unproductively spent. This judgment is made by me each day as I record time for my various cases. For example, my time statement includes no time before January, although I worked with NWF counsel in developing the initial stages of the case.

11. As far as my role in the case is concerned, I was primarily responsible for surface mining issues where a detailed and expert knowledge of mining and of the regulations for mining was necessary. The thrust of our case was that Secretary Watt was proposing significant changes in the regulations, and that these changes would cause significant environmental impact. To prove this, we first needed a detailed knowledge of the current regulations; second, a knowledge of the proposed changes; and third, expertise to determine the possible environmental impact of the changes. I had worked extensively on the development of the regulations, and before that on the act itself. This knowledge allowed me to perform the work quickly and efficiently.

There was little or no duplication between the activities of Mr. Dean and myself. He was primarily responsible for NEPA matters in which he is expert, and I was primarily responsible for the

-7-

technical surface mining issues. We both participated in settlement negotiations as the government regularly brought six to ten lawyers to the negotiations.

I did preliminary work on both discovery and injunction papers. This work was halted when it appeared settlement was a serious possibility.

12. In accepting the case, I was aware that any attorney fee petition would be vigorously opposed by Secretary Watt. I have been told on several occasions by both lawyers and policy persons within the Department of the Interior that any fee request by me in any case will be vigorously opposed.

13. During the previous Administration, a far greater portion of my time was spent in regulatory matters, as opposed to litigation. The previous Administration proved willing to consider ideas and proposals from all interested groups, including affected citizens and environmental organizations. This Administration has proved far less willing to listen to and accept ideas of citizens and therefore has forced more litigation, as occurred in this case.

14. This case lies at the heart of the efforts of Secretary Watt to alter strip mine regulations in the United States. Secretary Watt has proposed drastic changes in the regulations, which in my view would have caused significant environmental harm.

The requirement that the environmental impact of the proposed changes be examined should show, if the analysis is done properly, the environmental harm that will occur, and thus alter the Secretary's proposals.

Dated this _____ day of May, 1982.

_____
L. THOMAS GALLOWAY

Subscribed and sworn to before me this 25th day of May, 1982.

My commission expires 3/13/92

_____
Notary Public