UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Plaintiffs' Exhibit 37**
Civ. No. 05-1437 (RCL)

JUNE CHEWNING, et al.,　　　　:
　　　　　　　　　　　　　　:
　　　　Plaintiffs,　　　　　:
　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　:　　C.A. No. 76-0334
　　　　　　　　　　　　　　:
JAMES B. EDWARDS,　　　　　 :
　　　　　　　　　　　　　　:
　　　　Defendant.　　　　　 :

AFFIDAVIT OF DAVID N. WEBSTER

CITY OF WASHINGTON　　)
　　　　　　　　　　　 ) ss.:
DISTRICT OF COLUMBIA )

　　　　　Before me, the undersigned authority, personally
appeared David N. Webster, who after having been sworn did state
the following:

　　　　　1.  I am a partner in the firm of Nussbaum, Owen &
Webster.  I was admitted to the Bar of this Court in 1958 and
have been engaged in the active practice of law in this city
since 1959.  I have been a member of the Legal Ethics Committee
of the District of Columbia Bar since 1978.  I served a three-
year term as a member of the Legal Ethics Committee of the Bar
Association of the District of Columbia from 1971 to 1974, and
in the third year I chaired the Committee.  I was a member of
the Board of Directors of the Bar Association of the District of
Columbia from 1972 to 1975, and served as its President from
1975 to 1976.  I was a partner in the firm of Williams &
Connolly from 1967 to 1981, when I became a partner in my
present firm.  Previously, from 1959 to 1967, I was associated
with the firm of Hogan & Hartson.

2.   On November 3, 1978, subsequent to the Consent
Order which concluded the liability stage of this litigation, I
entered my appearance along with those of other attorneys from
Williams & Connolly.  I was actively involved in the initial
phases of the remedy proceedings which culminated in the Second
Amended Order of Reference to Special Master and Protocol of
October 31, 1979.  Since that time, I have remained involved in
the litigation, participated in major decisions regarding its
conduct and settlement, and have appeared at hearings and
conferences before the Court and the Magistrate on numerous
occasions.  Attorneys from Williams & Connolly, along with Gary
H. Simpson, represented the First Flight of class members
employed in Defendant's Personnel Department in extensive
proceedings before Special Master Howard A. Glickstein in 1980.
Along with Mr. Simpson, I took the lead in May and June 1981 in
recruiting additional firms to represent class members in the
remaining 15 Flights.  Incident to my appearance in November
1978 and thereafter, I became quite familiar with the liability
stage proceedings.  In connection with preparing this Affidavit,
I reviewed drafts of Plaintiff's Applications for final fee
awards for liability stage services and remedy stage services
from July 14, 1978 through March 31, 1981.

3.   During the last seventeen years of my practice, I
have been involved almost continuously in large, complex
litigation.  I spent the seven years after joining Hogan &
Hartson doing civil trials in the courts of the District of
Columbia, mainly on the defense side.  During 1965 and 1966, I
worked very closely with the late Paul R. Connolly on some
large, complex civil cases in the areas of securities fraud
(defense), airplane crashes (plaintiff), products liability drug
cases (defense), a corporate takeover fight (plaintiff), and

- 2 -

and a muilti-million dollar breach of contract matter for two
oil companies (defense). After joining in the foundation of
Williams & Connolly in 1967, I handled civil and criminal cases
(more civil than criminal) about evenly divided between plain-
tiffs and defendants, in state and federal courts located in
Rhode Island, Connecticut, New York, New Jersey, Delaware,
Maryland, Virginia, the District of Columbia, West Virginia,
North Carolina, Georgia, Florida, Texas, Illinois, Ohio and
Montana. Many of these cases were large, complex cases with
real case management problems in which new modes had to be
designed to ease the loads imposed on the court system. For
example, I represented over 1,100 children in their individual
claims for psychic injury arising out of the bursting of a dam
in Buffalo Creek, West Virginia, on February 26, 1972. In
another case, I represented over 50 persons, all residents of a
rural West Virginia community, in their claims arising out of
the pollution caused by a continuously burning coal seam inside
an adjoining mountain. Cases such as these and others,
including this one, have tested the outer limits of the judicial
system in terms of accommodating different litigating and
settlement modes. In the context of litigation in which I have
participated, I would say that the problems of discovery
management and structuring of statistical proof posed during the
liability stage of this proceeding were of the highest order of
difficulty and complexity.

        4. I understand that lodestar hourly rates are to be
requested for liability stage work and remedy stage work through
March 31, 1981 based on the hourly rates set in North Slope
Borough v. Andrus, 511 F. Supp. 961, 966-70 (D.D.C. 1981);
Environmental Defense Fund v. Environmental Protection Agency,
___ U.S. App. D.C. ___, 672 F.2d 42, 58, n. 11 (1982), and

- 3 -

Sierra Club v. Gorsuch, No. 79-1565 (C.A.D.C. July 16, 1982).
These rates -- $125 an hour for an attorney such as myself with
more than twenty years experience; $110 an hour for attorneys
such as Gary Simpson with nine to twenty years of experience;
$80 for those attorneys with four to eight years experience; and
$65 for those with less than four years experience -- are less
than the billing rates which my firm routinely bills for
attorneys of comparable experience and are less than rates for
attorneys of comparable experience which have prevailed in the
District of Columbia for the past several years.  In my opinion,
the requested rates are reasonable for attorneys of the
qualifications and ability of those involved in this case and
are fair figures for the quality of the work with which I am
familiar.

        5.  In my experience, the rates for handling complex
federal civil litigation, which this case surely represents,
currently range from $135 to $185 per hour depending on the
experience of the advocate, with some lawyers charging more and
a few charging less. As of 1980, the range was $125 to $175; as
of 1978, $110 to $160. My own standard rate in my present firm
is $180 an hour; at Williams & Connolly in 1981 it was $220 an
hour.  My firm's current rates for attorneys with various levels
of experience are as follows:

| Year of Experience | Rate |
|---|---|
| First | $ 70 |
| Third | $ 90 |
| Fifth | $100 |
| Seventh | $125 |
| Tenth | $135 |
| Thirteenth | $150 |

Our standard rate for paralegals is $25 an hour.

- 4 -

6.   The practice of my present firm and my immediately
prior firm was and is to assign a billing rate to each attorney
based upon his or her individual experience. This rate would be
charged irrespective of the subject of the particular matter
being litigated (e.g., employment discrimination as opposed to
other kinds of litigation) and without regard to the specific
type of legal activity being carried on in a matter.  With the
exception of some firms doing primarily insurance defense work,
I do not know of any Washington law firms assigning different
billing rates for different litigation activities, e.g.,
preparing pleadings, attendance at depositions, argument of
motions, etc.  I have not encountered any attorneys with
different billing rates depending upon the subject matter of the
particular litigation.  The rates stated are those which would
be charged by my firm to clients regularly billed at hourly
rates and would apply to work of the sort done in the liability
stage of this case.

7.   My firm's rates are based on our knowledge of
prevailing community rates and are generally within the range of
those rates.  While I would certainly agree that those rates are
not always collected because of various reasons -- including
free or reduced-rate representation, a complaint about the size
of a bill, my feeling that the total is too high given the
result, and other reasons -- those rates are our standard
billing rates and represent what we would charge a client,
personal or corporate, for litigation type work, in the absence
of some special circumstances such as I have outlined in this
paragraph.

8.   In a case in which counsel face the risk of
receiving no compensation if their clients are unsuccessful, it
is traditional that the fee will be larger than if counsel were

- 5 -

being compensated on an ongoing basis whether they win or lose.
In lawsuits for damages, the degree of risk of non-recovery
assumed by the attorney is frequently reflected in the percent-
age of the recovery which will be paid to the attorney as his
fee in the event of success.  The greater the uncertainty of
result, the greater the percentage fee may be, albeit always
within the limit of reasonableness.  In a lawsuit in which the
court is awarding fees based on an Act of Congress, it is
appropriate to accomplish the same result by awarding a con-
tingency bonus on top of the amount which would be obtained by
multiplication of a reasonble hourly rate by a reasonble number
of hours.  Court-awarded fees in antitrust cases have used
multiples of 3 to 4 times the product of a reasonble rate and a
reasonable number of hours.

9.  I understand that Defendant has entered into a
Stipulation accepting the time spent in the liability stage as
reasonable.  In my opinion, the fees requested for work in the
liability stage of this case are reasonable and in conformance
with recognized and acceptable practices within the legal
profession.  I believe that the fees requested for remedy stage
work through March 31, 1981 by Mr. Simpson's office and my
former firm, Williams & Connolly, are also fair and reasonable.
The requested award would not enrich counsel unduly, and an
award substantially below that requested may lead other counsel,
of comparable qualifications, to avoid plaintiff's Title VII
work and to concentrate instead on commercial cases.  This would
tend to defeat the purposes of Congress in enacting the fee-
award provisions of Title VII.

10.  Neither I, my present firm, nor Williams &
Connolly has any interest in the amount of the fee awarded for
work done in the liability stage of the litigation.  Williams

& Connolly received an interim fee pursuant to the Report and Recommendation of Special Master Howard A. Glickstein of November 19, 1981 which was approved by the Court on January 15, 1982 for work done through March 31, 1981. Final application will be made on behalf of Williams & Connolly for time which I expended while still at that firm. Since joining my present firm, I have spent 52.20 hours, for which compensation will also be sought. The sole financial interest of my firm in this case lies in obtaining compensation for my rather small time expenditure and in reimbursement of related costs. I have previously been asked to provide Affidvits in support of fee applications in three other cases -- Roberts v. Solomon, C.A. No. 77-2188 (D.D.C.); National Wildlife Federation v. Watt, C.A. No. 82-0320 (D.D.C.); and Natural Resources Defense Council v. Environmental Protection Agency, C.A. No. 81-2068 (D.D.C.) -- in which neither I nor my firm had participated. The recita- tions here are identical to those in my previous Affidvits with the exception that the range of prevailing rates has risen somewhat since my Affidvit of July 29, 1980 in Roberts.

DAVID N. WEBSTER

Subscribed and sworn to before me this 26ᵗʰ day of September, 1982, in Washington, D.C.

Notary Public

My Commission Expires January 1, 1985

- 7 -