UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DL, *et al.*, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>THE DISTRICT OF COLUMBIA, *et al.*,<br><br>          Defendants. | Civil Action No. 05-1437 (RCL) |

**PLAINTIFFS' MOTION FOR THE BALANCE OF FEES DUE ON
THEIR 2016 FEE APPLICATION (ECF 537)**

This case was brought to force the District of Columbia to timely provide special education services to preschool-aged children in the District in accordance with federal and local law. Plaintiffs overwhelmingly prevailed and the District is now subject to this Court's injunction requiring it to make needed improvements. *See DL v. District of Columbia*, 194 F.Supp.3d 30 (D.D.C. 2016) (ECF 533, corrected trial decision); Order, dated May 15, 2016, ECF 521 (injunction). After an appeal by the District, the decision and injunction were "affirm[ed] in all respects." *DL v. District of Columbia*, 860 F.3d 713, 717 (D.C. Cir. 2017).

This Court held the District liable to plaintiffs for their attorneys' fees and expenses reasonably accrued with regard to this action. *See DL*, 194 F.Supp.3d 30 at 104 ("Plaintiffs have prevailed on both IDEA [Individuals with Disabilities Education Act] and Rehabilitation Act claims. Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I) (IDEA) and [29] U.S.C. § 794a(b) (Rehabilitation Act), the District shall pay plaintiffs' reasonable attorneys' fees and related nontaxable expenses associated with litigating this suit"); ECF 533, para. 318.

On September 28, 2016, plaintiffs moved for the award of attorneys' fees and expenses accrued from the outset of this case through June 22, 2016.  ECF 537.  Plaintiffs requested payment at the hourly rates in the LSI *Laffey* Matrix.  ECF 537, 566, 571.  The District argued that plaintiffs should be paid at the hourly rates in the matrix newly developed by the United States Attorney's Office for the District of Columbia ("USAO").  ECF 554.  The United States, which is not a party to this case, filed two briefs to support its newly developed matrix.  ECF 564, 574.

On August 25, 2017, this Court adjudicated the fee application and awarded plaintiffs fees calculated at the hourly rates from the newly developed USAO matrix.  Memorandum Opinion, ECF 580, pp. 15-19; Order, ECF 579.  Pursuant to the Court's order, plaintiffs re-calculated their fees at the new USAO matrix rates and applied other Court-ordered reductions related to time and expenses.  Plaintiffs' Calculation of Fees and Expenses Pursuant to the Court's Fees Decision, ECF 585.  On December 15, 2017, this Court awarded plaintiffs their fees re-calculated at those rates.  Order, ECF 590.

Plaintiffs appealed the hourly rates element of this Court's decision.  On May 21, 2019, plaintiffs prevailed in their appeal.  *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019); ECF 598 (mandate).  The court of appeals concluded that plaintiffs met their burden as to the LSI *Laffey* Matrix and that the District failed to meet its burden as to the new USAO matrix.[1]  *DL,* 924 F.3d at 591-593.  The court of appeals rejected the new USAO matrix because it is based on data for the wrong type of work in the wrong jurisdiction.  *Ibid*.  It remanded for further proceedings.  *Id*. at 595.

---

[1] In prior briefing before this Court, plaintiffs referred to the new USAO matrix as the USAO Matrix 2015-2017, as it was titled at that time.  In the court of appeals, plaintiffs referred to it as the USAO-ALM Matrix because it was no longer limited to the 2015-2017 period and to distinguish it from the USAO *Laffey* Matrix.  Plaintiffs refer to it here as the new USAO matrix, consistent with the descriptions in the recent court of appeals decision.

The court of appeals left open the possibility that, despite having rejected the new USAO matrix, the District could show on remand that the rates in the new USAO matrix are nonetheless market rates for complex federal litigation in the District of Columbia. *DL*, 924 F.3d at 593. As described below, that would be impossible because the facts do not support it. Moreover, the court of appeals explained that the District forfeited any contention that rates between the LSI *Laffey* Matrix and the new USAO matrix should be awarded. *Id.* at 594. Accordingly, plaintiffs submit that all that remains on plaintiffs' 2016 fee application is for this Court to award the balance of fees due once the fees are calculated at LSI *Laffey* Matrix rates, with appropriate post-judgment interest. Plaintiffs hereby request an award of that amount.[2]

Pursuant to Local Rule 7(m), plaintiffs addressed this request with the District. *See* Affidavit of Todd A. Gluckman, dated August 26, 2019 ("Gluckman Aff."), Pl. Ex. 1, para. 2.[3] The District does not consent. *Ibid.*

## APPELLATE DECISION

The court of appeals held that plaintiffs met their burden to support the LSI *Laffey* Matrix through their submission of extensive evidence related to market rates for complex federal litigation in D.C. (*DL*, 924 F.3d at 591):

> We begin with the District's argument that plaintiffs failed to meet their initial burden to support with specific evidence their claim that the LSI *Laffey* rates satisfy the statute's command. Our recent opinion in *Salazar v. District of Columbia*, however, all but compels the conclusion that plaintiffs cleared that bar. The *Salazar* plaintiffs relied on the same types of evidence in essentially the same level of detail to support the same rate matrix (for a slightly earlier year). 809 F.3d [58] at 64-65 [(D.C. Cir. 2015)]. That evidence, we concluded, was more than enough to pass

---

[2] This motion relates to the fees on remand, but does not relate to other fees accrued, including fees accrued defending against the District's 2017 appeal of the injunction, work monitoring the District's compliance with the injunction, and fees on fees related to the 2016 fee application and the corresponding appeal. Plaintiffs are hopeful that they can amicably resolve such other fee requests with the District.

[3] Plaintiffs' exhibits are listed on a table at the end of this motion.

3

the burden onto the District. *Id.* at 65 ("With these numbers and submissions in the record, the district court's point that the LSI-adjusted matrix is probably a *conservative* estimate of the actual cost of legal services in this area, does not appear illogical." (internal quotation marks omitted)). The District has given us no reason to reach a different conclusion on such a similar record.

In contrast, the court of appeals rejected the new USAO matrix because it was not based on rates for complex federal litigation from D.C.—it was based on an irrelevant survey of rates for all types of legal services (including a wide variety of non-litigation work, such as wills, divorces, and real estate closings) in a four-state area including D.C. and parts of Maryland, Virginia, and West Virginia. *DL*, 924 F.3d at 591-592. The court of appeals explained (*ibid.*):

> The District contends that the USAO's more recent raw data and statistically significant sample size make its matrix superior to plaintiffs' favored LSI *Laffey* matrix. Crucially, however, those traits matter only if the data surveys the relevant population. As plaintiffs' expert, Dr. Michael Kavanaugh, put it, "comparable prices are found by observing comparable goods." Second Kavanaugh Declaration ¶ 8, *DL v. District of Columbia*, 1:05-cv-01437-RCL, ECF No. 566-11 (Apr. 26, 2017), J.A. 1380. For example, for someone house hunting in Memphis, a survey of real estate prices in Seattle—even one with a perfect response rate updated daily—would be of no use. The same is true here. The USAO's matrix is helpful only if it canvasses the relevant type of lawyer, which it does not.
>
> To begin with, the USAO's matrix incorporates rates for the wrong types of practitioner. The parties and the district court agree that this case qualifies as "complex federal litigation." *DL*, 267 F. Supp. 3d at 69. Yet rather than confine its data to rates charged by attorneys practicing that genre of litigation—or even just litigators in general—the survey that the USAO drew from incorporates rates from *all* types of lawyers. Respondents include real estate lawyers, family lawyers, and insurance lawyers—lawyers manifestly not offering "the kind and quality of services furnished" by these plaintiffs' attorneys, as the statute requires of comparators. 20 U.S.C. § 1415(i)(3)(C); *accord Eley* [*v. District of Columbia*], 793 F.3d [97] at 105 [(D.C. Cir. 2015)] (fee analysis should focus on "lawyers . . . doing the same type of litigation" (emphasis omitted)). It is obvious that the rates charged for, say, simple wills are lower than those for complex federal litigation. Worse still, nothing in the record reveals what percentage of respondents in the USAO's custom cross-section of the ALM data were litigators. For all we know, the number could be anywhere from zero to all 350.
>
> Compounding this first error, the USAO's custom-ordered dataset surveys lawyers far beyond the "community in which th[is] action . . . arose." 20 U.S.C. § 1415(i)(3)(C). Plaintiffs brought this case on behalf of District of Columbia residents regarding District of Columbia schools against the District of Columbia. Yet the

4

USAO matrix draws from lawyers who practice in the entire "metro area" as
defined by the United States Census Bureau.  The phrase "metro area" suggests
proximity, but—according to the Census Bureau's definition—that area stretches
well beyond the District to cover thousands of square miles over three states, from
rural Madison County, Virginia, to the eastern shore of Maryland, back to the
foothills of Jefferson County, West Virginia.  Needless to say, this case has no
connection to most of those areas.  Our court has held that ordinarily "the relevant
community is the one in which the district court sits."  *Donnell v. United States*,
682 F.2d 240, 251 (D.C. Cir. 1982).  Accordingly, our decisions refer to the relevant
community as the District of Columbia.  *See, e.g., Salazar*, 809 F.3d at 64
(discussing "prices for legal services in Washington, D.C."); *Covington* [*v. District
of Columbia*], 57 F.3d [1101] at 1104 [(D.C. Cir. 1995)] (discussing evidence of
rates "in the District of Columbia").  That general rule fits comfortably with the
facts of this case.  Yet here, more than half the data in the USAO's customized
dataset comes from outside the District of Columbia, *see* Appellant's Br. 20, and
District counsel acknowledges that it includes data from *throughout* the three
neighboring states, *see* Oral Arg. Rec. 28:04–28:22.  Again, it is obvious, as District
counsel recognizes, that fees are lower in rural areas than in the District.  *See* Oral
Arg. Rec. 31:04–31:30.  Indeed, the District's own evidence shows that rates for
legal services in the District of Columbia are among the highest anywhere.
National Law Journal & ALM Legal Intelligence, *The Survey of Law Firm
Economics*, 139–41 (2011 ed.), J.A. 1485–87.

Although it rejected the new USAO matrix, the court of appeals did not simply order this

Court to award LSI *Laffey* Matrix rates.  It gave the District an additional opportunity to attempt

to show, through "equally specific countervailing evidence" that, although the rates in the new

USAO matrix are based upon data for the wrong type of work in the wrong location, they still

reflect the prevailing market rates for complex federal litigation in the District of Columbia.  *DL*,

924 F.3d at 591, 593.  In doing so, it expressed substantial skepticism that this would be possible

(*Id*. at 593):

> Despite the evidentiary defects in the record, the District offers an alternative basis
> for affirming: its supplemental proof demonstrates that the USAO's matrix
> accurately reflects complex litigation rates in the District of Columbia.  But the
> district court made no findings about the evidence the District uses to back up that
> claim, and some of that data appears to be of dubious value.  For example, the
> District's primary redoubt comprises two sets of nationwide data from the 2014
> ALM survey.  But it is not at all obvious that these *nationwide* datasets are useful
> comparators for rates in the District.  *See* National Law Journal & ALM Legal
> Intelligence, *The Survey of Law Firm Economics* 139–41 (2011 ed.), J.A. 1485–87
> (showing that rates in the District substantially exceed those in most other

jurisdictions). Nonetheless, mindful of the district court's primary factfinding role, we leave it for that court to assess on remand the impact, if any, of the District's remaining market evidence and to take further evidence if necessary to arrive at a "reasonable rate."

Finally, the court of appeals underscored that it was not opening up a new battle between the LSI *Laffey* Matrix and some new measure of rates (*DL*, 924 F.3d at 593):

> To be sure, the district court identified other concerns regarding the LSI *Laffey* matrix, including (1) the age of the raw data; (2) whether it captures a truly representative sample of complex federal litigators; and (3) the grouping of attorneys into just five experience bands. *DL*, 267 F. Supp. 3d at 69–70. These observations suggest that as time passes, the *Laffey* matrix may well—like shoulder pads, eight-tracks, and other '80s fads before it—be losing its shine. In this particular case, however, the District raised no argument that these issues justify rates somewhere between the two matrices. *See* Appellee's Br. 25. Therefore, it has forfeited any such contention. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."). [emphases added]

To summarize, the court of appeals (1) determined that plaintiffs met their burden to support the LSI *Laffey* Matrix rates; (2) rejected the new USAO matrix; (3) remanded to the District Court to assess whether the additional market evidence that the District previously submitted satisfied its burden to produce equally specific countervailing evidence and allowed the Court to request further evidence if necessary; and (4) explained that the District forfeited any argument that the rate awarded should be between the two matrices. The question presented on remand is therefore narrow—whether the District has presented compelling and equally specific countervailing evidence supporting the rates in the new USAO matrix.

6

## ARGUMENT

## I

## PLAINTIFFS ARE ENTITLED TO AN AWARD OF FEES CALCULATED AT LSI *LAFFEY* MATRIX RATES

**A.   THE LSI *LAFFEY* MATRIX RATES ARE PRESUMPTIVELY APPLICABLE AND THE DISTRICT CANNOT PROVE THAT THE NEW USAO MATRIX RATES ARE PREVAILING MARKET RATES FOR COMPLEX FEDERAL LITIGATION IN THE DISTRICT OF COLUMBIA**

As explained above, the court of appeals concluded that plaintiffs met their burden of justifying the reasonableness of the LSI *Laffey* Matrix rates. They did so by submitting substantial market evidence showing that the LSI *Laffey* Matrix is near to, but below, the prevailing market rates in D.C. for complex federal litigation. *DL*, 924 F.3d at 591; ECF 537-1, pp. 81-88; ECF 537-40 through 537-68; ECF 566-12; ECF 566-13.

Since plaintiffs met their burden of justifying the reasonableness of the LSI *Laffey* Matrix rates, those rates are "presumed to be . . . reasonable," and "the burden shifts to the [District] to present 'equally specific countervailing evidence'" demonstrating that the rates in the new USAO matrix reflect prevailing market rates for complex federal litigation in the District of Columbia. *See DL*, 924 F.3d at 588-589, 591 (quoting *Covington*, 57 F.3d at 1107, 1109). Accordingly, the question is whether the District has equally specific countervailing evidence proving that the rates in the new USAO matrix still happen to reflect the prevailing market for complex federal litigation in D.C., despite the court of appeals' rejection of the underlying data. *DL*, 924 F.3d at 591-593.[4]

---

[4] We note that, after this case was argued before the court of appeals, but before the court of appeals' decision issued, this Court issued a decision in another case in which the United States Justice Department, which had developed the new USAO matrix, did "not challenge the use of the [LSI *Laffey*] Matrix" there and, rather, "accept[ed] [those rates] as reasonable." *American Oversight v. U.S. Department of Justice*, 375 F.Supp.3d 50, 70 (D.D.C. 2019). Judge Moss based his decision on declarations from the attorneys seeking LSI *Laffey* rates, who had formerly

Plaintiffs submit that, even if this Court allows the District to submit additional evidence, the District cannot meet its rebuttal burden because, if sufficient evidence existed, it would have presented it earlier. Indeed, despite repeated inquiries, the District identified for plaintiffs no additional evidence to support the new USAO matrix. *See* Gluckman Aff., Pl. Ex. 1, para. 2.

Since the District is unable to present the required evidence, plaintiffs are entitled to be paid at the presumptively applicable LSI *Laffey* Matrix rates.

## B.   CALCULATION OF FEES DUE ON PLAINTIFFS' 2016 FEE APPLICATION

On December 15, 2017, this Court ordered the District to pay plaintiffs for their fees and expenses requested in their 2016 fee application, with the reductions pursuant to this Court's order, and calculated at current USAO matrix rates (then, rates as of 2017-2018). ECF 590. Plaintiffs have now calculated the difference between that total and the total calculated at the LSI *Laffey* Matrix rates for the same time period (2017-2018). The difference is $2,701,208.40. *See* Calculation of Additional Fees Due, Pl. Ex. 5; Gluckman Aff., Pl. Ex. 1, paras. 3-6.

Plaintiffs are entitled to that amount, as well as post-judgment interest on that amount, accruing from December 15, 2017 (the date of the order), until payment. *See* 28 U.S.C. 1961.

## II

### THE STATUTORY FEE CAP DOES NOT LIMIT
### THE REQUESTED AWARD

Fees awarded in this case are subject to a fee cap for IDEA actions. Memorandum Opinion, dated August 25, 2017, ECF 580, pp. 5-6; Omnibus Appropriations Act, Pub. L. No. 111-8, Section 814, 123 Stat. 524 (2009). The cap would prevent an award that is "greater than $4,000 multiplied by the number of class members." ECF 580, p. 6.

---

conducted complex federal litigation at Washington, DC law firms, averring that the LSI *Laffey* rates "represent fair-market rates for each based on his or her relevant experience." *Ibid*.

In 2017, this Court explained that plaintiffs sought, in their 2016 application, approximately $9.76 million in fees and expenses, and that, subtracting from that total the amount of expert fees that would not apply to the cap (approximately $121,000), and dividing by $4,000, yields 2,410. Therefore, at that time, there had to "be less than 2,410 children in the class for the fee caps to be applicable." ECF 580, p. 9. In that opinion, this Court also calculated the size of the subclasses using different methods. ECF 580, pp. 9-11. Each method showed that the size of the class, multiplied by $4,000, is greater—or far greater—than the amount of fees that plaintiffs requested. *Ibid*. Accordingly, the Court concluded that "[t]he fee caps are inapplicable based on the subclass sizes." ECF 580, p. 9.

That conclusion is equally applicable today because the amount sought now, added to the amount that the District paid as a result of the 2017 fee award, is <u>less</u> than the amount that the Court was considering in 2017 when it concluded that the fee cap was inapplicable.[5] Moreover, since the Court reached that conclusion in 2017, there have been additional years of children who are not timely receiving needed services,[6] all of whom are members of the subclasses, and each of whom increases the fee cap by $4,000. Accordingly, the fee cap does not limit the award to plaintiffs' counsel.

---

[5] In 2017, the Court concluded that the fee cap did not apply to a fee <u>request</u> of $9.64 million given the number of subclass members. *See* ECF 580, p. 9 (total request of approximately $9.76 million; $121,207.82 not subject to the cap). The fees requested now, added to the fees paid following the 2017 fee award, total approximately $9.5 million, which is less than the $9.64 initially requested. *See* Pl. Ex. 4 (total of approximately $9.66 million, which still includes the same $121,207.82 that is not subject to the cap, *see* ECF 580, p. 35). *See* Gluckman Aff., Pl. Ex. 1, para. 7.

[6] *See* District of Columbia's August 2018 Report on Numeric and Programmatic Requirements, ECF 594-1, p. 2 (*e.g.*, reporting that D.C. served, in different years 6.5%, 6.6%, and 7.2% of preschool-aged children although 8.5% is required (*see* ECF 521, p. 3)).

## CONCLUSION

For the reasons stated above, plaintiffs request an award of the balance of fees due on plaintiffs' 2016 fee application in the following amounts (Pl. Ex. 5; Gluckman Aff., Pl. Ex. 1, para. 6):

| | |
|---|---:|
| Attorneys' Fees of Terris, Pravlik & Millian, LLP | $2,540,224.21 |
| Attorneys' Fees of Jeffrey Gutman and his law students on behalf of The George Washington University | $37,713.40 |
| Attorneys' Fees of Margaret A. Kohn | $115,596.22 |
| Attorneys' Fees of Mehri & Skalet PLLC | $7,674.57 |
| **Total** | $2,701,208.40 |

Plaintiffs request that this Court direct the District to pay these amounts within 60 days of the entry of the order, plus interest in accordance with 28 U.S.C. 1961, accruing from December 15, 2017 (*see* ECF 590) until payment is made. A proposed order is attached.

Respectfully submitted,

/s/ *Todd A. Gluckman*
CAROLYN SMITH PRAVLIK (D.C. Bar No. 334102)
KATHLEEN L. MILLIAN (D.C. Bar No. 412350)
TODD A. GLUCKMAN (D.C. Bar No. 1004129)
Terris, Pravlik & Millian, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009-4422
(202) 682-2100

MARGARET A. KOHN (D.C. Bar No. 174227)
Attorney at Law
619 Pennsylvania Avenue, SE
Washington, DC 20003
(202) 544-1200

CYRUS MEHRI (D.C. Bar No. 420970)
Mehri & Skalet, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
(202) 822-5100

August 26, 2019                    *Counsel for Plaintiffs*

## TABLE OF EXHIBITS

| Exhibit Number | Descriptions |
|---|---|
| 1 | Affidavit of Todd A. Gluckman |
| 2 | U.S. Department of Commerce, Bureau of Labor Statistics, Legal Services Component of the Consumer Price Index |
| 3 | LSI *Laffey* Matrix |
| 4 | Summary of Fees and Expenses Related to Plaintiffs' 2016 Fee Application |
| 5 | Calculation of Additional Fees Due |